UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
                          :

AMERICAN STEAMSHIP OWNERS     :       04 Civ. 04309 (LAK)
MUTUAL PROTECTION AND          :
INDEMNITY ASSOCIATION, INC.,    :
                           :
              Plaintiff,     :
                           :
   - against -             :
                           :
Alcoa Steamship Co., Inc.         :
and the Other Entities Listed on Exhibit A  :
to Second Amended Complaint     :
                           :
            Defendants.   :
                           :
-----------------------------------------------------X


PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO THE
MARITIME CLAIMANTS' INTERVENTION MOTION


Nourse & Bowles, LLP
Attorneys for Plaintiff
One Exchange Plaza
at 55 Broadway
New York, New York 10004
(212) 952-6200

## TABLE OF CONTENTS

Background.................................................................................................. 3

   A.  The Parties To this Action........................................................... 3
   B.  The Insurance Policies................................................................. 3
   C.  The Issues in Dispute ................................................................. 4
   D.  The Relief Sought........................................................................ 8
   E.  Defendants' Opposition................................................................ 8

Argument...................................................................................................... 9

I  THE MOVANTS HAVE FAILED TO PROVE THEIR RIGHT TO EITHER
MANDATORY OR PERMISSIVE INTERVENTION ........................................... 9

   A.  Movants Cannot Establish a Right to Mandatory Intervention ................ 10

      1a.  Movants Cannot Prove they have a Direct or Substantial Interest
      in the Subject Matter of the Litigation. ............................................ 11

      1b.  Any "Interest" Movants May Have in the Subject Matter of this
      Litigation is Subject to Multiple Contingencies and Thus Remote .... 14

      2.  Movants Cannot Prove that Absent Intervention their Interests will
      be impaired or impeded ...................................................................... 17

      3.  Movants Cannot Prove That the Existing Parties to this Action will
      not adequately represent their Alleged Interests .................................. 18

      4.  Intervention in a Prior Proceeding Pursuant to a Bankruptcy Plan's
      Authorization Does Not Justify or Require Intervention in This
      Proceeding ......................................................................................... 19

   B.  Movants Cannot Establish a Right to Permissive Intervention ................ 20

Conclusions ................................................................................................... 22

# TABLE OF AUTHORITIES

## FEDERAL CASES

Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179 (2d Cir. 2001)18

City of Stillwell v. Ozarks Rural Electric Cooperative Corp., 79 F.3d 1038, 1042 (10th Cir. 1996).................................................................................. 14

Hartford Fire Co. v. Mitlof, 123 F. Supp. 2d 762, 769, 770 (S.D.N.Y. 1999) ............................................................................. 12

In Re Prudential Lines, 158 F.3d 65 (2d Cir. 1998) ...................... 2, 11, 12, 20

In re Prudential Lines, Inc., 148 B.R. 730, 735 (Bankr. S.D.N.Y. 1992)..................................................................................... 13, 16

In re Prudential Lines Inc., 170 BR 222, 229 (S.D.N.Y. 1994).................... 16

Liman v. United Kingdom Mutual Steamship Assurance Association, 1971 AMC 727 (S.D.N.Y. Bankr. 1970) ................................ 16

NAP, Inc. v. Shuttletex, Inc., 112 F. Supp. 2d 369 (S.D.N.Y. 2000) .......... 13

Richards v. Select Ins. Co., 40 F. Supp. 2d 163 (S.D.N.Y. 1999) ............... 13

United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994)............. 11

U.S. Lines Inc v. U.S. Lines Reorganization Trust, , 262 B.R. 223, 229 (S.D.N.Y. 2001) aff'd, 318 F.3d 432, 434 (2d Cir. 2003)................ 15 (fn)

Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Elec. Co., 922 F.2d 92, 96-97 (2d Cir. 1990) ........................ 14

## STATE CASES

Meridian Trading Corp. v. National Automobile and Casualty Insurance Co., 45 Misc. 2d 847; 258 N.Y. 2d 16 (Sup. Ct. N.Y. County, 1964)............ 12

## STATE STATUES

N.Y. Ins. Law §2117(b)(3) ............................................................... 12

N.Y. Ins. Law §3420(a)(2) .............................................................. 12

N.Y. Ins. Law §3420(i) .................................................................. 12

## OTHER

Federal Rule of Civil Procedure 24(a) ...................................... 9, 22

Federal Rule of Civil Procedure 24(b) ............................... 10, 20, 22

Moores Federal Practice, 3rd Section 24.03(1)[a] ........................ 11

Moores Federal Practice, 3d Section 24.10[1] ............................. 21

Moores Federal Practice, 3d Section 24.10[2]b ........................... 21

Lester Brickman, On the Theory Class's Theories of Asbestos Litigation:
   The Disconnect Between Scholarship and Reality, 31 Pepp L.R. 33
   (2004) ................................................................................. 2 (fn)

Nourse & Bowles, LLP
Attorneys for Plaintiff
Lawrence J. Bowles, Esq. (LB 5950)
One Exchange Plaza
New York, New York 10006
(212) 952-6200
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
                                :

AMERICAN STEAMSHIP OWNERS     :        04 Civ. 04309 (LAK)
MUTUAL PROTECTION AND          :
INDEMNITY ASSOCIATION, INC.,    :

                  Plaintiff,     :

    - against -                  :

Alcoa Steamship Co., Inc.            :
and the Other Entities Listed on Exhibit A    :
to Second Amended Complaint         :

                 Defendants.     :

-------------------------------------------------X

PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO THE
MARITIME CLAIMANTS' INTERVENTION MOTION

      Plaintiff American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club" or "Club" or "Association"), by its attorneys, Nourse & Bowles, LLP, submits this memorandum and the accompanying affidavit of Lawrence J. Bowles dated October 4, 2004 (the "Bowles Aff."), together with the exhibits annexed thereto, in opposition to the

intervention motion submitted by the Maritime Claimants ("Movants" or "MALC").

The Movants, who allege they were employees of Grace Lines, Inc. and Prudential Lines, Inc., former shipowner members of the American Club, have unsuccessfully sued those entities' successor, the PLI Disbursement Trust (the Trust") in Bankruptcy Court in New York and the Eastern District of Pennsylvania for alleged asbestos related personal injuries. The Trust is one of over 100 Defendants named in this action.

The Movants' long undocumented and therefore administratively <u>dismissed</u> almost twenty year old suits against the Trust are, as a result of the Second Circuit's 1998 decision in <u>In Re Prudential Lines</u>, 158 F.3d 65 (2d Cir. 1998), and other procedural developments, subject to far too many contingencies, objective evidentiary doubts[*], and outright time bars to give rise to a "direct" and "substantial" interest in this litigation. Moreover, a direct suit by the Movants against the American Club is barred by New York law. Whatever interest the Movants may have in this case is more than adequately represented by the Trust and numerous shipowner Defendants, whose sole objective is to establish the very insurance coverage which the Movants' claim their intervention is needed to

---

[*] The massive asbestos litigation arising out of claims such as the Movants' has been likened to "such great American Scandals as the Yazoo land scandals ... Teapot Dome ... and Enron". Lester Brickman, <u>On the Theory Class's Theories of Asbestos Litigation: The Disconnect Between Scholarship and Reality</u>, 31 Pepp L.R. 33 (2004).

2

establish. Lastly, there is no overlap between the questions of law and fact at issue in the Movants' tort based personal injury suit(s) against the Trust and the contractual matters at issue between the Club and its former members, the Defendants, in the instant litigation. In these circumstances, intervention is neither warranted nor desirable as it would cause unnecessary multiplication of parties and inject as unnecessary arguments regarding irrelevant issues.

### Background

The background of this matter is set forth in the Second Amended Complaint, a copy of which is annexed to the Bowles Affidavit as Exhibit No. 1. It may be summarized as follows:

**A.    The Parties To this Action**

The American Club is a non-profit mutual indemnity insurance association of shipowners organized and existing under the laws of the State of New York. Each of the named Defendants or its predecessor was a shipowner member of the American Club for one or more insurance years between about 1940 and February 20, 1989. (Second Amended Complaint ¶¶ 14 and 15)

**B.    The Insurance Policies**

The American Club issues one-year, fully assessable, marine protection and indemnity insurance policies (covering defined marine risks) to the participating

shipowner members in each separate insurance year. (Second Amended Complaint ¶ 24) A specimen of a typical policy is attached as Exhibit No. 2 to the Bowles Aff. Those policies and the Club's procedures thereunder are discussed inter alia in paragraphs 25 – 29 of the Second Amended Complaint.

## C.    The Issues in Dispute

The American Club, on behalf of its current members has filed this action against the members in the years before February 20, 1989 seeking a Declaratory Judgment that it has no liability to its former members for alleged asbestos related and other occupational disease claims arising in "closed" insurance years, which were neither reported nor reserved for in any fashion by those members at the time those years were closed. In this action, the Club seeks judicial approval of (i) its right to halt a discretionary practice commenced in the 1980's by the Defendants who then controlled the Club, for their own benefit, of indemnifying themselves for such claims from the Club's general reserves or (ii) approval of other steps by the Club to restore the mutuality required by the Club's By Laws and New York law between the Defendants and the Club's current members. A more detailed statement of the case is set forth in paragraphs 1 – 13 of the Second Amended Complaint, which provide as follows:

> 1. This is an action brought by the American Club, a non-profit mutual indemnity insurance association, pursuant to 28 U.S.C. §2201 for a Declaratory Judgment that as those Defendants who

4

were members of the Club before the Insurance Year that
commenced on February 20, 1977 and for the Insurance Year that
began on February 20, 1978 did not pay any amounts in premiums
or assessments to the Club with respect to claims for incurred but
not reported occupational diseases of seamen and others (hereinafter
"IBNR") during those years, and as those Defendants who were
members of the American Club in the Insurance Year that
commenced on February 20, 1977 and in the Insurance Years
between February 20, 1979 and February 20, 1989 paid assessments
to the Club for IBNR which they knew or should have known might
be inadequate to cover such claims and which now have proved to
be inadequate, they are not entitled to any further indemnifications
from the Club with respect to their payments to seamen and others
regarding IBNR occupational disease claims or regarding any other
claims arising in the Insurance Years before February 20, 1989.

2. The above relief is necessary to restore and preserve the requisite
mutuality under the Club's By-Laws and applicable New York law
between and among the members of the Club before February 20,
1989 and the members thereafter.

3. The fundamental requirement underpinning a non-profit mutual
indemnity insurance association such as the American Club is that
its members operate the Club for their own exclusive benefit to
provide indemnity insurance to each other at cost. They do this by
paying premiums and assessments to the Club, under the members'
fully assessable indemnity insurance policies sufficient to provide
the funds necessary to indemnify or reimburse each other with
regard to reported occurrences which give rise to claims against the
members in each separate Insurance Year. That is, when claims
against members are reported to the Club, the members must
contribute to the Club the funds needed to pay such claims. In most
instances, the reported claims are not paid during the Insurance Year
in which the alleged injuries occurred. Accordingly, specific
reserves are established to indemnify the members with respect to
each reported claim (hereinafter "case" reserves), after they resolve
and pay those claims.

4. When the costs of insurance in each Insurance Year have been
determined on the basis of known claims, the Year's members are
assessed a final amount to cover or reserve against each reported
claim, or may be given a refund of any amounts collected in excess

5

of the amount needed to pay or reserve against such claims and this process is generally referred to as "closing" a year.

5. In connection with the closing of the Insurance Years between 1946 and 1976, the Defendants received refunds of assessments of more than $16 million.

6. After "closing" an Insurance Year, the Club has no right to seek further assessments from the members for that Year and correlatively those members have no right to obtain further funds from the Club to the extent not covered by the case reserves established for that Year.

7. After an Insurance Year is closed the Club's reserves, including the case reserves, become the property of the members of the Club in the open years and those members have an obligation to indemnify the closed years' members for their payments of reported claims from the case reserves. In view of the requirement for mutuality, the members in the open years have no legal obligation to indemnify members in closed years for any unreserved or inadequately reserved IBNR claims that may be made against them.

8. In about the early 1980s, seamen and others working on or about the members' vessels began to assert they had been injured by exposure to asbestos many years earlier, in some cases going back to the 1940s, and by the mid 1980s the assertion of such claims was accelerating, and was expected to continue.

9. Despite the fact that in the Insurance Years before 1977 the Defendants did not report any such IBNR claims or pay any premiums or assessments to the Club to establish any case or IBNR reserves to cover for amounts they might pay to seamen and others with respect to IBNR claims arising in those long closed years, in about 1980, those Defendants, who were largely the same members of the Club as those in the 1940s and thereafter, developed a practice (which is discretionary, in that it is not provided for in the Club's Charter, By-Laws or insurance policies or in the principle of full mutuality under New York law), of indemnifying each other for IBNR claims from the Club's general reserves. They did so notwithstanding that such reserves were not the property of the members in the closed Years. This discretionary practice included allocating each seaman's or other's claim over the years in which he

6

worked on or about the members' vessels, applying the members' deductibles for each of those years, and indemnifying each other for the balance, if any (the "Discretionary Practice"). At the same time, the Defendants did not assess each other any amounts to establish any reserves for their continued indemnifications regarding such IBNR claims arising before the Insurance Year that commenced on February 20, 1977.

10.  In 1988, with the closing of the Insurance Year that commenced on February 20, 1977, the Club's directors decided to assess that Year's members the sum of $100,000 for IBNR claims arising in that Year and to make the same assessments in future Years (except for the 1978 Year which had previously been closed).

11.  Through December 31, 2003 the Club's reimbursements to its members regarding occupational disease claims attributable to alleged exposure as far back as the 1940s totaled almost $6 million, while the members' actual contributions to the IBNR reserves have been only $2.2 million.

12.  Thousands of claims by seamen and others are still pending in the Courts; and new claims are being filed and the Club's current members, who, as such, have no obligations to indemnify the Defendants in respect of unreserved or inadequately reserved IBNR claims that arose from occurrences before February 20, 1989, have been inequitably prejudiced by the Discretionary Practice the Defendants developed in about 1980 of indemnifying each other from the Club's general reserves for such claims. The Discretionary Practice has now become unsustainable and the Club's current members will be further inequitably prejudiced if this Discretionary Practice continues, which it should not.

13.  The Club has informed the Defendants that it has terminated this Discretionary Practice and will no longer indemnify them with respect to IBNR claims arising before February 20, 1989.  To date several Defendants have objected to the Club's position and threatened litigation, and other Defendants may do the same. Several Defendants also object to that part of the Discretionary Practice involving allocation of claims to the Years the seamen worked on the members' vessels and requiring the members to absorb multiple deductibles.  Several have commenced or have

7

threatened to commence litigation regarding the Club's position on this also. Accordingly, actual justiciable controversies exist.

Additional details regarding the issues in dispute are provided in paragraphs 14-61 of the Second Amended Complaint.

## D.    The Relief Sought

The relief sought by the American Club is outlined in paragraphs 62 – 71 of the Second Amended Complaint, including termination of the Discretionary Practice described above or, in the alternative, other steps to restore the required mutuality between the Club's current members and the Defendants by, *inter alia*, re-opening closed insurance years before February 20, 1989 and assessing those years' members for their fair shares of future claims against the members arising in those years, or in the further alternative, if the court holds that the Discretionary Practice must continue, then continuing that part of the Discretionary Practice regarding allocating claims to the insurance years in question and applying the members' deductible for each of those years, pursuant to New York law.

## E.    Defendants' Opposition

The Defendants have a direct and substantial interest in the outcome of this action and to date, a number of them have either answered the Second Amended Complaint, or stated an intention to do so. The Keystone Defendants, who have previously sued the Club on these same issues have stated they will oppose the

8

Club's right to the relief it seeks and the Club expects that many of the other Defendants will also oppose its right to the relief sought. Some of the Defendants have supported or are expected to support the Club's position or parts thereof in this action. The Court is respectfully referred to Exhibit 3 to the Bowles Aff. which lists the Defendants and their attorneys who, to date, have appeared or are expected to appear.

Efforts are continuing to locate and serve all of the Defendants named in this action. While some appear to have gone out of business and/or for other reasons will not likely appear in this action, it is possible that some additional Defendants will appear in due course and defend their interests.

## **Argument**

### **I**

### **THE MOVANTS HAVE FAILED TO PROVE THEIR RIGHT TO EITHER MANDATORY OR PERMISSIVE INTERVENTION**

Rule 24 Fed. R. Civ. P. provides as follows:

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's

9

ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

## A.    Movants Cannot Establish a Right to Mandatory Intervention

In the absence of statutory authority granting a right to intervene, an applicant must make a timely application and satisfy all three of the following criteria in order to qualify for intervention as of right:

1.    The applicant must have an interest in the subject matter of the litigation;

2.    Absent intervention, the applicant's interest will be impaired or impeded; and

10

3.    The existing parties to the action inadequately represent the applicant's interest.

The applicant bears the burden of establishing its right to intervene.  These three criteria are mandatory.  Failure to satisfy any of the criteria justifies denial of the application to intervene.  <u>Moore's Federal Practice</u>, 3rd Section 24.03(1)[a]; <u>United States v. Pitney Bowes, Inc.</u>, 25 F.3d 66, 70 (2d Cir. 1994).

**1a.    Movants Cannot Prove they have a Direct or Substantial Interest in the Subject Matter of the Litigation.**

While there is a possibility that the Movants could, in theory, in certain circumstances, indirectly benefit from the insurance in question, the Second Circuit has recognized that, as a matter of New York law, the Movants are not the "beneficiaries" of those policies, they have no direct rights under the policies and thus, they have no standing to directly sue the Club under the policies.  <u>See, In Re Prudential Lines</u>, 158 F.3d 65, 74 (2d Cir. 1998).  Consequently, Movants can claim no "direct", "substantial" interest in the dispute between the Club and the Defendants over continuing coverage under the Discretionary Practice.

The law concerning standing to sue maritime P&I insurers has been summarized by the New York Courts as follows:

> The general rule prevents suits on insurance policies by those not a party to the insurance contract, <u>save where a contrary result is dictated by statute</u> (citations omitted).

11

> No such statute is here operative, for Section 167[*] of the Insurance Law, which does extend the right to sue on the policy to certain other parties [including those injured in automobile accidents], excludes marine protection and indemnity policies from its scope.
>
> <u>Meridian Trading Corp. v. National Automobile and Casualty Insurance Co.</u>, 45 Misc. 2d 847; 258 N.Y. 2d 16 (Sup. Ct. N.Y. County, 1964).

The consequence of this bar against direct actions is that claimants, such as the Movants, have no right of recovery against marine P&I insurers in the event of the insolvency of the insured, such as Prudential.  As stated by the Second Circuit Court of Appeals in related litigation involving Movants and the American Club:

> Thus, as the law stood under New York Common Law – and as it still stands in relation to marine insurance notices – the insured's lack of assets to satisfy claims against the bankrupt estate typically leaves the insured unable to sustain a loss and pay the claim.  <u>This is simply one consequence of purchasing a marine policy of indemnity rather than a liability policy</u>.  158 F. 3d at 74-75.
>
> (emphasis added)

The weight of authority in this District is that personal injury claimants have no right to intervene in a declaratory judgment proceeding commenced by a marine insurer against an insured.  <u>Hartford Fire Co. v. Mitlof</u>, 123 F. Supp. 2d 762, 769, 770 (S.D.N.Y. 1999) (holding an insurer is "immune from suit by strangers to its

---

[*] The current version of this statute is NY Insurance Law §3420(a)(2), which is limited by §3420(i).  See also NY Insurance Law §2117(b)(3), which delineates the types of marine insurance excluded by §3420(i).

marine P&I policy"); <u>NAP, Inc. v. Shuttletex, Inc.</u>, 112 F. Supp. 2d 369 (S.D.N.Y. 2000); <u>Richards v. Select Ins. Co.</u>, 40 F. Supp. 2d 163 (S.D.N.Y. 1999).

While Bankruptcy Judge Conrad may in a prior opinion have loosely characterized the Maritime Claimants as "the real parties in interest", or "beneficiaries" of the insurance policies, <u>In re Prudential Lines, Inc.</u>, 148 B.R. 730, 735 (Bankr. S.D.N.Y. 1992), the American Club respectfully submits he overlooked the substantial differences between liability insurance policies regarding automobiles, etc. (which are covered by a statute which specifically extends the right to directly sue the liability insurer to the injured persons) and marine protection and indemnity policies (which are expressly excluded from that statute's scope).

Accordingly, under New York law the only legal beneficiaries of the marine indemnity insurance policies Plaintiff issued are the Defendants, all of whom were shipowner members of the American Club or their successors. Movants, who are "strangers to the contract" have no interest in this litigation cognizable in law within the meaning of Rule 24 Fed. R. Civ. P. Therefore, the motion for intervention should be denied.

13

**1b.  Any "Interest" Movants May Have in the Subject Matter of this Litigation is Subject to Multiple Contingencies and Thus Remote**

For the reasons set forth below, intervention is unwarranted because the Movants have, at most, claims that are subject to multiple contingencies.

A contingent financial interest is insufficiently direct or substantial to justify intervention.  Washington Electric Coop, Inc. v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92, 96-97 (2d Cir. 1990); City of Stillwell v. Ozark's Rural Elec. Coop Corp., 79 F.3d 1038, 1042 (10th Cir. 1996) (contingent financial interest in subject of action was too attenuated to justify intervention).

As a fundamental matter, the Movants have never established that the Trust is liable to them.  While Movants' counsel have filed more than 10,000 suits on behalf of Maritime Claimants against the Trust (and against many of the Defendants herein) the Movants concede that all of their cases against the Trust have been administratively dismissed by the Honorable Charles R. Weiner, United States District Judge, Eastern District of Pennsylvania (not Michigan as Movants erroneously suggest). (Memorandum p. 2) Those dismissals were prompted by Movants' repeated failure to comply with the court's orders or provide adequate

14

documentation to support their claims.[*]  (Copies of Judge Weiner's decision and order dated May 2, 1996 are annexed to the Bowles' Aff. as Exhibits 4 and 5.)

None of MALC's cases have been reinstated and most, if not all, of them are also time barred.  The procedural history of the Prudential bankruptcy proceedings in New York and related asbestos litigation in the Eastern District of Pennsylvania giving rise to the time bar is long, complex and of no necessary concern to this Court.  It should suffice to say that there are substantial grounds on which the Club can maintain that the Movants' claims against the Trust are time barred and those issues are presently, again, before the Bankruptcy Court in New York and the Eastern District of Pennsylvania in connection with pending motions in those Courts.  Copies of Plaintiff's counsel's letters to Judge Weiner and Bankruptcy Judge Gonzalez in connection with those motions, addressing the time bar issue and others in the above courts are attached to the Bowles Aff. as Exhibits 6 and 7.  Copies of the briefs, etc. can be supplied if the Court wishes.  For present purposes, the significant point is that Movants' suits against the Trust, if they are ever reinstated and prosecuted, are subject to a dispositive defense and are, for the above reasons, highly contingent at best.

---

[*] In the U.S. Lines Bankruptcy proceeding, Judge Gonzalez expunged 23,963 of MALC's claims for similar reasons noting that MALC "chose to pursue a path that was apparently premised on the theory that the sheer volume of its claim would force a settlement without the necessity of providing the additional documentation as provided in the June 1993 Order." U.S. Lines Inc v. U.S. Lines Reorganization Trust,  262 B.R. 223, 229 (S.D.N.Y. 2001) aff'd, 318 F.3d 432, 434 (2dCir. 2003).

15

If Movants can avoid the time bar defense, which is not likely, their claims are subject to the following additional contingencies.

(i)    before the Trust can seek indemnity from the American Club, the Trust must establish not only that it has "become liable to pay" but has, in good faith, actually paid claims such as those of the Maritime Claimants. In re Prudential Lines Inc., 148 B.R. 730, 748-49 (S.D.N.Y. Bankr. 1992); 170 BR 222, 229 (SDNY 1994); 158 F.3d at 75. (These requirements stem from the indemnity insurance policies issued by the Club to its members. (Please refer to Exhibit "2"to the Bowles Aff., p.2, second full paragraph.

(ii)   the American Club is entitled to set off amounts owed by the Trust to it against any claims the Trust has actually and in good faith paid. Id., 148 BR at 730. See also: Liman v. United Kingdom Mutual Steamship Assurance Association, 1971 AMC 727 (S.D.N.Y. Bankr. 1970).

Accordingly, even under the pre-existing Discretionary Practice, before the Maritime Claimants could make any recoveries from the Trust, they must first establish that the Trust is liable to them. If they succeed, then the Trust must "in good faith" pay them and before the Trust could seek indemnity from the Club, it

16

must pay the Claimants an amount sufficient to exceed the Club's set off. Movants and the Trust have not and cannot meet any of those requirements.

As to the Club's defense of set-off, it is undisputed that the Trust owes the American Club $1,270,980 for unpaid insurance premiums and assessments billed to its predecessor Prudential Line, while the Trust now has less than $300,000 in Available Cash. (Bowles Aff. Exhibit 7, ¶2)  As the Trust simply cannot, in good faith, actually pay claims in amounts sufficient to overcome the Club's set off, even under the prior Discretionary Practice, the Trust would not legally be entitled to seek indemnity from the Club.

Under the law of the <u>Prudential Lines</u> case, if Movants had an interest in the subject matter of this action, which they do not, their interest would be subject to all of these contingencies.

In conclusion the Movants have failed to demonstrate they are possessed of a substantial non-contingent interest in the litigation sufficient to warrant intervention.

## 2.    Movants Cannot Prove that Absent Intervention their Interests will be impaired or impeded

Given that Movants have not and cannot establish that they have an interest, let alone a right, to protect, they cannot show any impairment or impediment. In

17

other words, regardless of whether this Court grants or denies Plaintiff the relief it seeks, it will make no difference to Movants.

**3.      Movants Cannot Prove That the Existing Parties to this Action will not adequately represent their Alleged Interests**

Assuming without conceding that the Movants could satisfy 1 and 2 above, in any event, they cannot prove that those Defendants who may be liable to persons such as the Maritime Claimants in the first instance, and who are, therefore, eager to establish their right to the insurance coverage in issue, would not, by extension, adequately represent their interests. The only legitimate interest Movants have in this proceeding is to argue that the Club must continue the Discretionary Practice and that interest is identical to the interest of many of the Defendants. Where the intervenor and the parties to an action have the same objective, the Movant must rebut a presumption that the party will adequately represent the interest of the proposed intervenor. Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179 (2d Cir. 2001). Here, the Movants cannot rebut that presumption.

The Defendants in this action who have either appeared or stated they will appear, include the 47 shipping companies listed on Exhibit 3 to the Bowles Affidavit. Those defendants are represented by the over 20 law firms also listed on Exhibit 3 to the Bowles Affidavit, including, inter alia, Proskauer Rose.

18

Additional shipowner defendants and attorneys are expected to appear and answer the complaint in this action.

Each of the viable Defendants has a direct and substantial interest in this court's decisions regarding the interpretation of the indemnity insurance contracts in question and the Plaintiff's and Defendants' rights and obligations thereunder. It is expected that the majority of the Defendants, including the Keystone entities who have previously sued Plaintiff on these issues, and who are represented by Proskauer Rose will vigorously contest the relief Plaintiff seeks.

As Movants cannot prove any of the three points necessary to establish a right to intervene in this action, their motion should be denied.

**4.    Intervention in a Prior Proceeding Pursuant to a Bankruptcy Plan's Authorization Does Not Justify or Require Intervention in This Proceeding**

Movants argue that the fact that they were allowed to intervene in a prior proceeding justifies their intervention in this case. However, the reality is that the parties to this case and the parties in the prior proceedings are not similarly situated. In the Prudential Lines case, the only party seeking a declaration of coverage was the Trust, which had limited assets. In those circumstances, the Bankruptcy Plan provided that it was appropriate for persons such as the Movants to intervene. In contrast, in this case there are a number of shipowner Defendants

19

in addition to the Trust, including Keystone, who are each fully capable of pressing the case for coverage and as the Second Circuit has made clear, the Defendants are the only parties with standing in law to do so.

Whatever "authorization" was contained in the Second Amended Joint Plan, it was subject to the language "unless such action cannot be maintained consistent with settled law," and the Second Circuit has since then expressly found that the Maritime Claimants <u>cannot</u> maintain a direct action against the Club under settled New York law.   <u>In Re Prudential Lines</u>, 158 F. 3d at 74.   The Movants' prior interventions are, therefore, irrelevant and immaterial.

## B.    Movants Cannot Establish a Right to Permissive Intervention

Federal Rule of Civil Procedure 24(b) permits anyone to intervene in an action:

> (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

Rule 24(b) specifically vests discretion in district courts to consider whether intervention will unduly delay or prejudice the adjudication of rights of the original parties.   Thus, the decision regarding whether to grant permissive intervention is always subject to the inherently discretionary considerations of equity and judicial economy.   In essence, considerations of trial convenience dominate the question of

whether to allow permissive intervention.  <u>Moore's Federal Practice</u>, 3d Section 24.10[1].

In deciding a motion for permissive intervention, a court will consider whether the applicant's input is likely to make a significant and useful contribution to the development of the underlying factual and legal issues or, alternatively, is likely to be counter productive.  <u>Id.</u> Section 24.10[2]b.

There is no question of fact or law in common between the Maritime Claimants' alleged right to recover from the Trust (tort based claims, negligence, etc.) and the Trust's right to seek indemnity from the Club (contract claims). Also, Movants were not members of the American Club, had no representatives on its Board of Directors, and are not parties to any of the contracts in question.  They thus have no first hand knowledge as to the day to day course of dealings between the Club and its shipowner members.   In these circumstances, Movants have no evidence to offer that will assist the Court in resolving the contract issues in dispute between Plaintiff and Defendants, while the Defendants do.

Movants' input is thus not likely to make a significant or useful contribution to the development of the underlying factual or legal issues relating to the interpretation of the contracts.  To the contrary, their input is likely to be counterproductive, because it will necessarily inject into this case collateral issues

21

concerning their tort based claims against the Trust, none of which are this Court's concern in this action.

The motion for permissive intervention should be denied.

## Conclusions

As Movants cannot satisfy any of the requirements of Rules 24(a) or (b), their motion should be denied; and costs, including legal fees, should be allowed to the American Club.


Dated:      New York, New York
            October 4, 2004

                                    Respectfully submitted,

                                    NOURSE & BOWLES, LLP
                                    Attorneys for Plaintiff

                                    By:_____
                                        Lawrence J. Bowles (LB 5950)
                                        One Exchange Plaza
                                        New York, New York 10006
                                        (212) 952-6200


Of Counsel:  Shaun F. Carroll