HOLLAND & KNIGHT LLP
195 Broadway, 24th Floor
New York, NY 10007
(212) 513-3200

Attorneys for Defendants
American President Lines, Ltd., and
American President Lines, Ltd. as Successor to American Mail Line

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY ASSOCIATION,
INC.,

         Plaintiff,

      -against-

ALCOA STEAMSHIP CO., INC., et al.,

         Defendants.

------------------------------------------------------------

04 Civ. 04309 (LAK)

**ANSWER TO
SECOND AMENDED
COMPLAINT**

Defendants American President Lines, Ltd. ("American President Lines"),

sued herein as American President Lines, Inc., and American President Lines, Ltd.

as Successor to American Mail Line ("AML") (collectively, "APL"), sued herein as

APL, Ltd. as successor to AML, by and through their attorneys, Holland & Knight

LLP, as and for their Answer to the Second Amended Complaint ("Complaint") by

plaintiff American Steamship Owners Mutual Protection and Indemnity

Association, Inc. ("American Club"), as and for its Counterclaims, state upon

information and belief as follows:

1.    Denies each and every allegation of Paragraph 1, except denies having knowledge or information sufficient to form a belief as to the allegation that the American Club is a non-profit mutual indemnity insurance association.

2.    Denies each and every allegation of Paragraph 2.

3.    Denies each and every allegations of Paragraph 3.

4.    Denies having knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 4.

5.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5.

6.    Denies each and every allegation of Paragraph 6; except admits that after "closing" an insurance year, the American Club has no right to seek further assessments from the members for that Year.

7.    Denies each and every allegation of Paragraph 7.

8.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8.

9.    Denies each and every allegation of Paragraph 9, except admits that the American Club has paid IBNR claims arising during closed years to its members, denies having knowledge or information sufficient to form a belief as to the truth of the allegation that defendants did not assess each other any amounts to establish any reserves for their continued indemnifications regarding such IBNR claims arising before the insurance year that commenced on February 20, 1977, and

respectfully refers the Court to the American Club's Charter, By-Laws and insurance policies for terms thereof.

10.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10.

11.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11.

12.    Denies each and every allegation of Paragraph 12, except denies having knowledge or information sufficient to form a belief as to the number of asbestos exposure claims filed or still pending against members or former members.

13.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13.

14.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14.

15.    Admits the allegations of Paragraph 15 to the extent they relate to APL; except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding any defendant other than APL.

16.    Admits the allegations of Paragraph 16.

17.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17.

18.    Denies having knowledge or information sufficient to form a belief as to truth of the allegations in Paragraph 18.

19.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19.

20.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20.

21.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21.

22.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22.

23.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23.

24.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, except admits that American Club has issued assessable protection and indemnity policies to APL covering a one-year period, in consideration of premiums paid by APL.

25.     Denies each and every allegation of Paragraph 25.

26.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26.

27.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27.

28.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28.

29.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29.

30.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 30.

31.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31.

32.    Denies each and every allegation of paragraph 32.

33.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33.

34.    Denies the allegations in Paragraph 34.

35.    Denies the allegations in Paragraph 35.

36.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36.

37.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37.

38.    Answering Paragraph 38, APL states that the terms of the American Club's policies speak for themselves and therefore the Court is respectfully referred to these documents for the full and complete terms thereof.   To the extent a response is required, APL denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38.

39.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39.

40.     Answering Paragraph 40, APL states that the terms of the American Club's By-Laws speak for themselves and therefore the Court is respectfully referred to these documents for the full and complete terms thereof. To the extent a response is required, APL denies having knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 40.

41.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 41.

42.     Denies  the allegations of Paragraph 42.

43.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43.

44.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44.

45.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45.

46.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46.

47.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47.

48.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48.

49.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49.

50.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50.

51.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51.

52.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52.

53.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53.

54.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54.

55.    Denies each and every allegation of Paragraph 55; except admits that it is unknown how many seaman will succeed on filed or new claims against the American Club's members in the insurance years prior to February 20, 1989; except denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 regarding the amount of the IBNR reserves and the adequacy of such reserves.

56.    Denies each and every allegation of Paragraph 56.

57.    Denies each and every allegation of Paragraph 57; except denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 regarding whether the Board of Directors resolved that the American Club would terminate the practice of indemnifying defendants with

respect to IBNR claims for occupational diseases arising in closed insurance years before February 20, 1989.

58.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58.

59.    Denies each and every allegation of Paragraph 59.

60.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60.

61.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61.

## AS AND FOR AN
## ANSWER TO THE FIRST CAUSE OF ACTION

62.    In response to the allegations of Paragraph 62, APL repeats and realleges its responses contained in the preceding paragraphs with the same force and effect as if set forth at length herein.

63.    Admits the allegation of Paragraph 63.

64.    Denies each and every allegation of Paragraph 64, except admits that the American Club is seeking a judicial declaration.

## AS AND FOR AN
## ANSWER TO THE SECOND CAUSE OF ACTION

65.    In response to the allegations of Paragraph 65, APL repeats and realleges its responses contained in the preceding paragraphs with the same force and effect as if set forth at length herein.

66.    Denies each and every allegation of Paragraph 66.

67.    Admits the allegation of Paragraph 67

68.    Denies each and every allegation of Paragraph 68, except admits that the American Club is seeking a judicial declaration.

**AS AND FOR AN**
**ANSWER TO THE THIRD CAUSE OF ACTION**

69.    In response to the allegations of Paragraph 69, APL repeats and realleges its responses contained in the preceding paragraphs with the same force and effect as if set forth at length herein.

70.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70.

71.    Admits the allegation of Paragraph 71.

**AS AND FOR A FIRST DEFENSE**

72.    The Complaint fails to state a claim upon which relief may be granted.

**AS AND FOR A SECOND DEFENSE**

73.    The American Club's claims in the Complaint are time barred, in whole or in part, by the statute of limitations.

**AS AND FOR A THIRD DEFENSE**

74.    The American Club's claims in the Complaint are time barred, in whole or in part, by laches in that the American Club has since on or about 1980 consistently recognized its legal obligations to indemnify policyholders, including

defendants, for occupational disease claims arising from injuries in closed insurance years and has delayed without excuse or justification in announcing that it will no longer pay such indemnification.  Defendants have been prejudiced by such delay.

## AS AND FOR A FOURTH DEFENSE

75.    The American Club's claims in the Complaint are barred, in whole or in part, by waiver in that the American Club has waived its right to now seek further assessments from policy holders and it has waived its right to deny policyholders coverage on its inability to further assess them.

## AS AND FOR A FIFTH DEFENSE

76.    The American Club's claims in the Complaint are barred, in whole or in part, by estoppel in that the American Club has since on or about 1980 consistently indemnified policyholders, including defendants, for occupational disease claims arising from injuries in closed insurance years and has consistently represented to defendants, that it had a legal obligation to do so.

## AS AND FOR A SIXTH DEFENSE

77.    The American Club's claims in the Complaint are barred, in whole or in part, by the terms, conditions and limitations contained in the policies.

## AS AND FOR A SEVENTH DEFENSE

78.     The American Club's claims in the Complaint are barred, in whole or in part, by the terms of the American Club's By-Laws applicable to the policies, and documented actions of the American Club's Board of Directors, including the American Club's Board of Directors' actions in closing policy years prior to February 20, 1989 with "final assessments."

## AS AND FOR A EIGHTH DEFENSE

79.     The American Club's claims in the Complaint are barred, in whole or in part, by the doctrine of *res judicata* and/or collateral estoppel.

## AS AND FOR A NINTH DEFENSE

80.     The declaratory relief sought by the American Club would, in whole or in part, result in inequitable treatment of members and former members of the American Club, including defendants, contrary to the principles of mutuality asserted by the American Club.

## AS AND FOR A TENTH DEFENSE

81.     To the extent that the American Club's claims are based on the failure of its Board of Directors to set adequate reserves for unreported claims before closing an insurance year with a "final assessment" in accordance with the American Club's By-Laws, the American Club has the sole responsibility for such inadequacy and such inadequacy is not a defense to the rights of defendants under their respective

American Club policies to indemnification for payments they have made for occupational disease claims.

## AS AND FOR A ELEVENTH DEFENSE

82.    This affirmative defense is asserted only to the extent that the American Club's claims are based on the premise that defendants remained members of the American Club on May 25, 2004 and on June 7, 2004, long after the expiration of the policy years under all of their respective American Club policies.  Defendants continue to assert that they were not members of the American Club as of either of those dates and ceased to be members after they stopped purchasing insurance policies from the American Club.  The American Club's actions taken on those respective dates in determining that it will no longer indemnify defendants with respect to IBNR claims arising before February 20, 1989 are null and void because defendants and others similarly situated were not afforded the right to vote for the American Club's directors who approved such actions or to exercise other incidents of membership in connection with such actions and any related actions.

## AS AND FOR A TWELFTH DEFENSE

83.    The American Club's claims in the Complaint are barred by the terms of the releases given to members in connection with closing policy years and/or the releases given to former members in connection with their withdrawal from membership.

## AS AND FOR A THIRTEENTH DEFENSE

84.    To the extent that the American Club seeks to disclaim coverage for claims previously reported to the American Club under any of the American Club policies, such disclaimer is untimely and in violation of N.Y. Insurance Law § 3420(d), and California insurance law, including Cal. Ins. Code § 790.03.

## AS AND FOR A FOURTEENTH DEFENSE

85.    To the extent that the American Club failed to assert coverage defenses within the time limitations set forth under applicable law or failed to reserve rights with respect to indemnification, the American Club waived those defenses to indemnification for the affected claims.

## AS AND FOR A FIFTEENTH DEFENSE

86.    To the extent that the American Club bases any of its claims on the cancellation of further coverage under any of the policies, the American Club has failed to comply with the required notice of cancellation required by N.Y. Insurance Law § 3426, and California law.

## AS AND FOR A SIXTEENTH DEFENSE

87.    The Club's claims are barred, in whole or in part, by the doctrine of promissory estoppel, in that Defendants reasonably relied on the express and implied promise of the Club with respect to the existence of coverage for occupational disease claims and express and implied promise of the Club to release policyholders from further assessment when it closed a year with a "final assessment." This reliance was forseeable.

## ADDITIONAL DEFENSES

88.    APL respectfully requests leave to assert additional defenses which it deems necessary to its defense during or upon conclusion of its investigation and discovery of the American Club's claims.

## COUNTERCLAIM AGAINST THE AMERICAN CLUB

89.    The counterclaims alleged below seek (a) a declaratory judgment, adjudicating Defendant's rights and the Club's obligations under Pre-1989 Policies issued by the Club to Defendants, their predecessors, successors and/or affiliated companies, with respect to Occupational Disease Claims and Defendant's freedom from further assessments under any such Policies, and (b) for damages for breach of contract, breach of the covenant of good faith and fair dealing, violation of California's Unfair Competition law, violation of New York General Business Law §349, and other relief arising out of the Club's unjustified refusal to pay any Occupational Disease Claims under Pre-1989 Policies on and after June 7, 2004.

### The Parties

90.    APL is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Oakland, California.

91.    The American Club is a non-profit mutual indemnity insurance company organized and existing under the laws of the State of New York with its principal place of business in New York, New York.

14

## Jurisdiction and Venue

92.    This Court has jurisdiction over the subject matter of these counter-claims pursuant to 28 U.S.C § 1333(1) because it is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.  This Court has supplemental jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1367(a).

93.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## Insurance Policies and By-Laws

94.    The Club issued insurance policies to APL from 1958 through 1986 and issued policies covering various APL vessels from 1986 through 1990 ("the Pre-1989 Policies").  These policies were each issued for a one-year period and created a contractual obligation between the parties.

95.    Upon information and belief, APL paid the Club all premiums and deductibles as required by the policies.

96.    The indemnification provisions of the Pre-1989 policies provide in relevant part:

> The [Club] agrees to indemnify the Assured against any loss, damage or expense which the Assured shall become liable to pay and shall pay by reason of the fact that the Assured is the owner (or operator, manager, charterer, mortgagee, trustee, receiver or agent, as the case may be) of the insured vessel and which shall result from the following liabilities, risks, events, occurrences and expenditures:  Liability for . . . loss of life of, or personal injury to, or illness of any person….

97.    The Pre-1989 Policies provide that every holder of a policy issued by the [Club] shall be a member of the [Club] during the period while such policy is effective to insure risks, and as such member shall be entitled to vote and to share in dividends as hereinafter provided.

98.    The Pre-1989 Policies are assessable policies issued according to the Club's By-Laws.    The Club's By-Laws govern the Club's authority to issue assessable policies, to make assessments thereunder, and to terminate the Assured's liability for further assessments thereunder.    In particular, these policies provide:

> The Assured are subject to a contingent liability hereunder for assessment without limit of amount for the proportionate share of any deficiency or impairment as provided by law and fixed in accordance with the by-laws of the [Club]; provided however, that any such assessment shall be for the exclusive benefit of holders of policies which provide for such a contingent liability, and the holders of policies subject to assessment shall not be liable to assessment in an amount greater in proportion to the total deficiency than the ratio that the deficiency attributable to the assessable business bears to the total deficiency.

99.    Relevant By-Law provisions of the Club, which appear to have remained substantially similar through all relevant policy years, provide:

> For the purposes of declaring dividends and making assessments the business of the [Club] shall be divided into insurance years.

100.    The insurance years referred to in this By-Law have coincided with the policy periods under the insurance policies issued by the Club during all relevant times.

101.    The By-Laws, Article VI, Section 4 provide for the closing of insurance years and final assessments:

16

> From time to time after the termination of each insurance year, when the manager shall determine that it is practicable to estimate with a reasonable degree of certainty the minimum, probable or final surplus or deficiency resulting from all of the Corporation's insurances in effect during such insurance year, the manager shall place before the board of directors a statement of such financial results of insurances . . . . After receipt of any such statement, the board of directors from time to time may (a) fix and determine an amount to be declared and paid as a partial or the final dividend, after retaining such sums as they may deem necessary *to meet outstanding policy obligations or for the maintenance of reserves and surplus of the Corporation*, or (b) order an interim or *the final assessment to be made against the holders of assessable policies*, fix the due date of such assessment, determine the rate of interest that shall be added to and become a part of any delinquent assessment, and otherwise provide for enforcement and collection thereof. (Emphasis added.)

102.    The Pre-1989 Policies provide occurrence-based coverage and therefore permit claims to be made thereunder without any time limitation as to when claims can first be made against the insured and still be covered by the policy.

103.    The Pre-1989 Policies have no aggregate limit, only a per-claim limit, and contain no language or provision limiting the Club's liability thereunder, and thus appear to be a full expression of the policyholder's rights under the Policies.

104.    The Pre-1989 Policies do not limit the recourse of the policyholders against any assets of the Club or to the amount collected by way of premiums and assessments from holders of policies issued to all policyholders for the same policy year.

### Board of Director's Management Responsibilities

105.    The responsibility for the proper management of the Club rests with its Board of Directors ("the Board"). Article II, Section I of the policies provide:

> The policies provide that the business of the Corporation shall be conducted by a board of directors who shall arrange for a suitable

17

principal office for the Corporation ...shall employ a manager as
hereinafter provided, shall select depositories for the Corporation's
funds, shall adopt a seal for the Corporation, and shall have all other
powers necessary or proper for the management and conduct of the
business and affairs of the Corporation that are not by law or these
bylaws required to be exercised otherwise.

106.    Assessments made by the Board for any policy year were made against
all policyholders for the year in issue.    These assessments were prorated among
policyholders for that policy year.

107.    The Board has the discretionary authority under the By-Law, Article VI,
Section 4 to levy additional assessments on the policyholders should the aggregate
claims paid by the Club for an open year exceed the amounts paid by the
policyholders.    The Board also has the authority to pay dividends to the
policyholders.

108.    Thus, while a policy year is kept open by the Club, the Club may assess
the policyholders for aggregate deficiency for that year.

109.    Once the Board accepts the managers' estimate with a reasonable degree
of certainty of the probable surplus or deficiency and orders a final, rather than
interim assessment or dividend, no further premium or assessment can be levied
upon the policyholders with respect to that policy year, even if the operations for
that year result in an ultimate deficiency to the Club.

110.    After a policy year has been closed, the Club's balance sheet is updated
to transfer all amounts received by way of premiums and assessments after
payment of claims for that year into either case reserves for that year, reserves for
incurred but not reported losses ("IBNR") for that year, or general reserves not

dedicated to any particular policy year. These reserves, however, do not result in the imposition of any security interest or charge on specified assets or the segregation of any assets. All funds collected from the assessment of policyholders are assets of the Club, subject to the claims of all of its creditors including but not limited to policyholders for claims payments under their respective policies.

111.    The Board's determination to close a policy year does not terminate the Club's continuing obligations under the policies for that policy year, unless the policyholder agrees to a full policy release. Upon information and belief, the Club has neither sought nor obtained any policy releases for any of the Pre-1989 Policies from APL.

## Occupational Disease Claims Coverage

112.    Plaintiff seamen have sought and continue to seek damages resulting from their alleged exposure to asbestos, benzene, noise, and other substances or conditions on board or working in or about vessels owned, chartered, operated, or managed by APL and one or more other Defendants during the Pre-1989 Years ("Occupational Disease Claims").

113.    Until June 7, 2004, the Club provided continuing coverage for Occupational Disease Claims arising during closed insurance years and did not assess members for any deficiencies. Upon information and belief, the Club paid IBNR claims arising during closed years to its members from its general reserves. APL has relied upon this policy by, among other things, not seeking available

coverage alternatives and proceeding with its corporate and business affairs on the basis of this continuing coverage for Occupational Disease Claims..

114.    Upon information and belief, in 1988 for all then open insurance years, the Board decided to put $100,000 per insurance year into an IBNR reserve to cover anticipated occupational disease claims that were not yet reported when insurance years would be closed.

### The Prudential Lines Case

115.    In *Dicola v. American S.S. Owners Mutual Protection and Indemnity Association, Inc. (In re Prudential Lines, Inc.)* the United States Court of Appeals for the Second Circuit held that, policyholders under Pre-1989 Policies could select the Policy year to apply Occupational Disease Claims involving exposures occurring over multiple policy years, subject only to the one deductible for that policy year. 158 F.3d 65 (2d Cir. 1998).   In this litigation, the Club acknowledged that it was obligated to provide coverage for Occupational Disease Claims in closed years and never asserted that its obligation to provide such coverage was "discretionary."

### The Club's Recent Decision to Terminate Coverage

116.    On or about June 7, 2004, the Club announced in its June 7, 2004 Circular that the Club no longer intended to make payments to policyholders with respect to Occupational Disease Claims under any Pre-1989 Policies with respect to such claims as had not been reported by the time each such year was closed or for such claims that had been under-reserved or unreserved by the Club.   In so doing,

the Club claimed that its payment of such claims for over twenty years was merely a "discretionary practice."

117.    At no time prior to June 7, 2004 has the Club advised its policyholders that the payment of valid claims under any Pre-1989 Policy was "discretionary" or subject to termination if the amount of the Club's reserves for closed policy year were deemed insufficient or for any other reason.

## FIRST CLAIM FOR RELIEF
### (Declaratory and Injunctive Relief)

118.    APL incorporates by reference paragraphs 88 through 116 of these counterclaims with the same force and effect as if set forth at length herein.

119.    The Club issued Pre-1989 Policies obligating them to indemnify APL in full for any loss, damage or expense that APL became liable to pay, subject to deductibles.

120.    These Pre-1989 Policies include coverage for Occupational Disease Claims resulting from exposures occurring during one or more years.

121.    The Club now asserts that it is no longer obligated to provide continuing coverage for Occupational Disease Claims and that it has the right to make additional assessments under Pre-1989 Policies to cover claims not covered by reserves established as of June 7, 2004.

122.    Therefore, an actual and justiciable controversy exists between APL and the Club with respect to (a) the duties and obligations of the Club under one or more of their respective Pre-1989 Policies to provide continuing coverage to Defendants

for Occupational Disease Claims resulting from claimants' exposures occurring during one or more of the Pre-1989 Years, and (b) the Club's right to make assessments under the Pre-1989 Policies to cover losses not covered by reserves established as of June 7, 2004.

123.    Accordingly, this Court should (a) declare that APL has the right under their respective Pre-1989 Policies to continuing coverage for Occupational Disease Claims resulting from claimants' exposures occurring during any one or more of the Pre-1989 Years, subject only to a single applicable deductible, and that the Club has no right to make any further assessment or assessments against any Defendants under any Pre-1989 Policies; (b) grant APL a mandatory injunction compelling the Club to provide such coverage and a negative injunction barring, restraining and prohibiting the Club from making, or seeking to make, any such assessment or assessments; (c) award APL its attorneys' fees and other costs and expenses incurred in connection with this action to fullest extent permitted by applicable law; and (d) grant APL such other and further relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

124.    APL incorporates by reference paragraphs 88 through 122 of these counterclaims with the same force and effect as if set forth at length herein.

125.    The Pre-1989 Policies entered into by APL and the Club are enforceable agreements.

126.   The Club breached its obligations to APL by failing to provide coverage for Occupational Disease Claims resulting from claimants' exposures during one or more of the Pre-1989 Years and (b) reducing its indemnification payments to Defendants otherwise due and payable under the Pre-1989 Policies by applying multiple deductibles for Occupational Disease Claims based upon the number of years that the claimant served on one or more of Defendant's vessels.

127.   Upon information and belief, APL complied with its duties under the Pre-1989 Policies, including the full payment of all required premiums and deductibles.

128.   As a direct and foreseeable result of these breaches, APL has been damaged and continues to be damaged in an amount to be determined at trial.


**THIRD CLAIM FOR RELIEF**
**(Violation of California Business and Professional Code § 17200**
**"California's Unfair Practices Act")**

129.   APL incorporates by reference paragraphs 88 through 127 of these counterclaims with the same force and effect as if set forth at length herein.

130.   APL is an intended beneficiary of the Pre-1989 Policies.

131.   The Club represented to APL that it would be covered for Occupational Disease Claims arising during any of the Pre-1989 years.

132.   APL relied on these representations and has and will sustain damages as a result of the Club's refusal to provide coverage under the Pre-1989 Policies.

133.   The Club's conduct constitutes a fraudulent business act or practice within the meaning of California's Unfair Practices Act.

134.   As a result of these violations of California's Unfair Practices Act, APL requests damages, attorneys' fees and costs and other expenses.

### FOURTH CLAIM FOR RELIEF
**(Breach of Implied Covenant of Good Faith)**

135.   APL incorporates by reference paragraphs 88 through 133 of these counterclaims with the same force and effect as if set forth at length herein.

136.   As a policyholder of the Club, the Club owed APL an obligation to act reasonably and in good faith and to deal fairly with APL in connection with its rights to the benefit of the Pre-1989 Policies.

137.   The Club, in breach of the covenant of good faith and fair dealing, has unreasonably refused to provide the insurance coverage to which it agreed in the Pre-1989 Policies.

138.   As a proximate result of the Club's wrongful conduct, APL has suffered damages in an amount to be proven at trial, including but not limited to attorneys' fees, and is further entitled to claim and recover damages from the Club.

### FIFTH CLAIM FOR RELIEF
**(Release)**

139.   APL incorporates by reference paragraphs 88 through 137 of these counterclaims with the same force and effect as if set forth at length herein.

140.   In connection with the closing of insurance years and the levying of "final" assessments, the Club granted APL releases from any liability for further assessments under one or more the Pre-1989 Policies.

141.   APL seeks a declaration that any further assessments are barred against APL with respect to the Pre-1989 Years covered by such releases.

## SIXTH CLAIM FOR RELIEF
### (Violation of New York General Business Law §349)

142.   APL incorporates by reference paragraphs 88 through 140 of these counterclaims with the same force and effect as if set forth at length herein.

143.   The Club has continually represented to its policyholders that it would indemnify its members for claims arising during any one or more of Pre-1989 Years.

144.   APL reasonably relied on the Club's representations and continually contracted with the Club each year for more than thirty years.

145.   APL and the other members and policyholders of the American Club have been damaged and will continue to be damaged by the Club's refusal to honor its legal obligation of providing the benefit of these policies.

146.   The Club's unjust refusal to provide coverage for Occupational Disease Claims arising during any one or more of the Pre-1989 Years constitutes deceptive acts or practices within the meaning of New York General Business Law §349.

147.   As a result of the Club's violation of New York General Business Law §349, the Club is liable to APL for damages, attorneys' fees and other costs and expenses and should be enjoined from continuing those deceptive acts or practices.

WHEREFORE, having fully answered the Complaint, APL requests that said Complaint be dismissed, with prejudice, and that it be awarded its costs of suit, and that judgment be entered in its favor on its counterclaims as follows:

a. declaring that (i) APL has the right under their respective Pre-1989 Policies to continuing coverage for Occupational Disease Claims resulting from claimants' exposures occurring during any one or more of the Pre-1989 Years, subject only to a single deductible, and (ii) the Club has no right to make any further assessment or assessments against APL under any Pre-1989 Policies;

b. granting APL an injunction compelling the Club to provide the coverage described in (b) above and barring, restraining and prohibiting the Club from making, or seeking to make, any assessment or assessments under any Pre-1989 Policies;

c. granting APL damages against the Club, in such amount as is determined at trial, together with such pre-judgment interest;

d. granting APL their reasonable attorneys' fees and other costs and expenses incurred in this action;

e. granting such other and further relief as this Court deems just and proper.

Dated: October 8, 2004
      New York, New York

                                     HOLLAND & KNIGHT LLP
                                     Attorneys for APL

                                 By _____
                                   John M. Toriello (JT1822)

                                   195 Broadway
                                   New York, NY   10007
                                   (212) 513-3200

# 2243960_v3

26

CERTIFICATE OF SERVICE

I hereby certify, pursuant to Title 28 U.S.C.§1746, that on October 8, 2004,
I served a true and correct copy of the Defendants' Rule 7.1 Disclosure Statement
and Answer to Second Amended Complaint, by mailing it in a sealed envelope, with
postage prepaid thereon, in an official depository of the U.S. Postal Service, to be
delivered by First Class Mail to:

NORSE & BOWLES, LLP
Lawrence J. Bowles
One Exchange Plaza
New York, New York 10006
(212) 952-6200
Attorney for Plaintiff American Steamship Owners
Mutual Protection and Indemnity Association, Inc.

PROSKAUER ROSE LLP
Dale A. Schreiber (DS-9211)
Seth B. Schafler (SS-5993)
1585 Broadway
New York, New York 10036-8229
(212) 969-3000
Attorneys for Defendant Keystone
Shipping Co., and related entities,
Marine Transport Lines, Inc. and
related entities, BP America Inc. and
related entities, Cleveland-Cliffs,
Inc., and Amerada Hess Corporation

PIPER RUDNICK
Stanley McDermott, III (SM-0530)
Camilo Cardozo (CC-9710)
1251 Avenue of the Americas
New York, NY  10020
(212) 835-6123
(212) 835-6001 (fax)
*Attorneys for Defendant Ispat*

GARAN LUCOW MILLER, P.C.
Thomas W. Emery, Esq.
1000 Woodbridge Street
Detroit, MI 48207-3192
(313) 446-5525
Attorneys for Defendant American Steamship

HOWREY SIMON ARNOLD & WHITE LLP
Mindy G. Davis
Christine Davis
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
Tel: 202-783-0800
Attorneys for Defendant Amerada Hess Corporation

O'HARE PARNAGIAN LLP
Robert O'Hare Jr.
Chrstopher P. Parnagian
63 Wall Street, Suite 1801
New York, N.Y. 10005-3001
(212) 425-1401
Attorneys for Central Gulf Lines
(as Successor to Central Gulf Lighters/
Waterman Steamship Corporation)

RAY, ROBINSON, CARLE & DAVIES P.L.L.
Gene B. George
Julia R. Brouhard
1717 East 9th Street, Ste. 1650
Cleveland, OH 44114-2898
Tel: 216-861-4533
Attorneys for Cleveland-Cliffs, Inc.,
(as Successor to Cleveland-Cliffs Steamship Co.)

DICKSTEIN SHAPIRO MORIN & OSHINSKY, LLP
Stacey Saiontz, Esq. (SS-1705)
David Elkind, Esq.
1177 Avenue of the Americas
New York, NY  10036
(212) 835-1400
Attorneys for Defendant
Keyspan Corporation
(as Successor to Eastern Gas and Fuel
Associates and Mystic Steamship)

TISDALE & LENNON, LLC
Patrick F. Lennon
36 West 44th Street, Suite 1111
New York, New York 10036
(212) 354-0025
Attorneys for Defendant
Bridgeport & Port Jefferson
Steamboat Co.

GARVEY SCHUBERT BARER
Mario Aieta
599 Broadway, 8th Floor
New York, New York 10012
(212) 431-8700
Attorneys for Defendant
Foss Maritime Company, c/o
Saltchuk Resources, Inc.


MORGAN, LEWIS & BOCKIUS LLP
Lisa M. Campisi
101 Park Avenue
New York, New York 10178
(212) 309-10178
Attorneys for Defendant
Kimberly-Clark Corporation
(as Successor to Scott Paper Company)

BROWN RUDNICK BERLACK ISRAELS LLP
Andrew S. Dash
Peter Adelman
120 West 45th Street
New York, New York 10036
(212) 209-4811
Attorneys for Defendants
Royal P&O Nedlloyd N.V.,
Farrell Lines, Inc., Farrell Lines (Lighters)

HOLLSTEIN KEATING CATTELL
JOHNSON & GOLSTEIN, P.C.
Edward v. Cattell, Jr.
8 Penn Center, 1628 JFK Blvd., Suite 2000
Philadelphia, PA 19103
(215) 320-2073
Attorneys for Defendant
S.C. Loveland Co., Inc.

NAGEL RICE & MAZIE, LLP
Herbert I. Waldman
301 S. Livingston Avenue, Ste. 201
Livingston, NJ 07039-3991
(973) 535-3100
Attorneys for Defendant
United States Lines, Inc.
(Reorganization Trust x/o John T.
Paulyson, Trustee)

DECHERT LLP
Robert A. Cohen
30 Rockefeller Plaza
New York, NY 10112
(212) 698-3501
Attorneys for Defendant
American Atlantic Company
(as Successor to American Dredging Company)

JASPAN SCHLESINGER HOFFMAN LLP
Scott B. Fisher
300 Garden City Plaza
Garden City, NY 11530
(516) 746-8000
Attorneys for Defendant
Prudential Lines Disbursement Trust

SHAKED & POSNER
Dan Shaked
225 West 34th St., Suite 705
New York, NY 10122
(212) 494-0035
Attorneys for Defendant
William F. Higgins

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 8, 2004.

Elvin Ramos

Holland & Knight LLP
195 Broadway
New York, NY 10007

# 2309608_v1