O'HARE PARNAGIAN LLP
Robert A. O'Hare Jr. (RO 6644)
Michael G. Zarocostas (MZ 0044)
82 Wall Street, Suite 300
New York, NY 10005
(212) 425-1401
(212) 425-1421 (f)

Attorneys for Defendants
Central Gulf Lines, Inc. and Waterman Steamship Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
AMERICAN STEAMSHIP OWNERS MUTUAL                    :
PROTECTION AND INDEMNITY                            :
ASSOCIATION, INC.,                                  :
                              Plaintiff,            :    **ANSWER AND**
                                                    :    **COUNTERCLAIMS**
                                                    :
     - against -                                    :    (ECF Case)
                                                    :
ALCOA STEAMSHIP CO., INC., et al.,                  :    04 Civ. 04309 (LAK)
                                                    :
                              Defendants.           :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


       Defendants Central Gulf Lines, Inc. ("Central Gulf"), sued herein as Central Gulf Lines

as Successor to Central Gulf Lighters, and Waterman Steamship Corporation ("Waterman"),

sued herein as Waterman Steamship Corp. (together, the "Answering Defendants"), by and

through their counsel O'Hare Parnagian LLP, as and for their answer to the Second Amended

Complaint dated July 8, 2004 of plaintiff American Steamship Owners Mutual Protection and

Indemnity Association, Inc. (the "American Club" or the "Club") (the "Complaint"), state upon

knowledge with respect to themselves, and upon information and belief with respect to all others,

as follows:

1.      Deny the allegations of Paragraph 1, except denies having knowledge or information sufficient to form a belief as to the allegation that the American Club is a non-profit mutual indemnity insurance association.

2.      Deny the allegations of Paragraph 2.

3.      Deny the allegations of Paragraph 3.

4.      Deny the allegations of Paragraph 4.

5.      Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5.

6.      Deny the allegations of Paragraph 6; except admit that after "closing" an insurance year, the Club has no right to seek further assessments from the members or policy holders for any given year.

7.      Deny the allegations of Paragraph 7.

8.      Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8.

9.      Deny the allegations of Paragraph 9, except admit that the Club has paid IBNR claims arising during closed years to policy holders, deny having knowledge or information sufficient to form a belief as to the truth of the allegation that defendants did not assess each other any amounts to establish any reserves for their continued indemnifications regarding such IBNR claims arising before the insurance year that commenced on February 20, 1977, and respectfully refer the Court to the Club's Charter, applicable By-Laws and the respective marine protection and indemnity ("P & I") insurance policies for an accurate and in context recitation of their contents.

10.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10.

11.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11.

12.     Deny the allegations of paragraph 12 of the Complaint, except deny knowledge or information sufficient to form a belief as to the number of occupational disease claims filed or still pending against members or former members of the Club.

13.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13, except admit that Waterman asserted certain counterclaims against the Club in the actions captioned SL Service, Inc. et al. v. The Protection and Indemnity Underwriting Syndicate, et al., 00 Civ. 0038 (LAK) (S.D.N.Y.) and SL Service, Inc. et al. v. Marine Office of America Corporation et al., 01 Civ. 0038 (LAK) (S.D.N.Y.), for breach of the Club's P & I policies issued to Waterman in connection with the Club's application of multiple deductibles to single claims for indemnification, and that such counterclaims were dismissed without prejudice.

14.      Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14.

15.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15, except admit that the Central Gulf is a Delaware corporation and Waterman is a New York corporation and each are holders of P & I policies issued by the Club and were members of the Club in the years associated with said policies.

16.     Admit the allegations contained in Paragraph 16.

3

17.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17.

18.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18.

19.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19.

20.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20.

21.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21.

22.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22.

23.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23.

24.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24, except admit that the Club has issued certain P & I policies to each of the Answering Defendants in consideration for premiums paid by each of them and respectfully refer the Court to the respective P & I policies for an accurate and in context recitation of their contents.

25.     Deny the allegations of paragraph 25.

26.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26, and respectfully refer the Court to each of the respective P & I policies for an accurate and in context recitation of their contents.

27.     Deny the allegations of paragraph 27.

28.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28, except deny the allegations of the last sentence thereof.

29.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29, and respectfully refer the Court to each of the respective P & I policies for an accurate and in context recitation of their contents.

30.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30, and respectfully refer the Court to each of the respective P & I policies for an accurate and in context recitation of their contents.

31.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31, and respectfully refer the Court to each of the respective P & I policies for an accurate and in context recitation of their contents.

32.     Deny the allegations of paragraph 32.

33.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33.

34.     Deny the allegations of paragraph 34, and respectfully refer the Court the referenced provision of law for an accurate and in context recitation of its contents.

35.     Deny the allegations of paragraph 35, and respectfully refer the Court the referenced provision of law for an accurate and in context recitation of its contents.

36.     Deny the allegations of paragraph 36, and respectfully refer the Court to the respective By-Laws for their applicability and an accurate and in context recitation of their contents.

37.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37.

38.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38, and respectfully refer the Court to each of the respective P & I policies for an accurate and in context recitation of their contents.

39.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39.

40.     Deny the allegations of paragraph 40, and respectfully refer the Court to the respective By-Laws for their applicability and an accurate and in context recitation of their contents.

41.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41, and respectfully refer the Court to the respective By-Laws for their applicability and an accurate and in context recitation of their contents.

42.     Deny the allegations of paragraph 42.

43.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43.

44.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44.

45.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45.

46.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 46.

47.     Deny the allegations of paragraph 47.

48.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48.

49.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49.

50.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50.

51.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 51.

52.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52.

53.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53.

54.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54.

55.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 55, except deny the allegations of the last sentence thereof.

56.     Deny the allegations of paragraph 56.

57.     Deny the allegations of paragraph 57, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe the actions, if any, taken by the Club's Board of Directors on May 25, 2004.

58.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 58, except admit that Waterman asserted certain counterclaims against the Club in the actions captioned SL Service, Inc. et al. v. The Protection and Indemnity Underwriting Syndicate, et al., 00 Civ. 0038 (LAK) (S.D.N.Y.) and SL Service, Inc. et al. v. Marine Office of America Corporation et al., 01 Civ. 0038 (LAK) (S.D.N.Y.), for breach of the Club's P & I policies issued to Waterman in connection with the Club's application of multiple deductibles to single claims for indemnification, and that such counterclaims were dismissed without prejudice.

59.     Deny the allegations of paragraph 59.

60.     Deny the allegations of paragraph 60.

61.     Deny the allegations of paragraph 61.

**AS AND FOR AN
ANSWER TO THE FIRST CAUSE OF ACTION**

62.     In response to the allegations of Paragraph 62, the Answering Defendants repeat and reallege their responses contained in the preceding paragraphs with the same force and effect as if set forth at length herein.

63.     Admit the allegation of Paragraph 63.

64.     Deny the allegations of Paragraph 64, except admit that the Club is seeking a judicial declaration.

## AS AND FOR AN
## ANSWER TO THE SECOND CAUSE OF ACTION

65.     In response to the allegations of Paragraph 65, the Answering Defendants repeat and reallege their responses contained in the preceding paragraphs with the same force and effect as if set forth at length herein.

66.     Deny the allegations of Paragraph 66.

67.     Admit the allegation of Paragraph 67.

68.     Deny the allegations of Paragraph 68, except admit that the Club is seeking a judicial declaration.

## AS AND FOR AN
## ANSWER TO THE THIRD CAUSE OF ACTION

69.     In response to the allegations of Paragraph 69, the Answering Defendants repeat and reallege their responses contained in the preceding paragraphs with the same force and effect as if set forth at length herein.

70.     Deny the allegations of Paragraph 70.

71.     Admit the allegation of Paragraph 71.

## AFFIRMATIVE DEFENSES

As and for their affirmative defenses, the Answering Defendants allege as follows:

**First Affirmative Defense**
**(Failure to State a Claim)**

72.      The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

**Second Affirmative Defense**
**(Policy Terms and Limitations)**

73.      The Complaint is barred in whole or in part by the terms and limitations contained in the applicable P & I policies.

**Third Affirmative Defense**
**(Estoppels)**

74.      The Complaint is barred in whole or in part by the doctrine of estoppels.

**Fourth Affirmative Defense**
**(Laches)**

75.      The Complaint is barred in whole or in part by the doctrine of laches.

**Fifth Affirmative Defense**
**(Waiver)**

76.      The Complaint is barred in whole or in part by the doctrine of waiver.

**Sixth Affirmative Defense**
**(Statute of Limitations)**

77.      The Complaint is barred in whole or in part by the applicable statute of limitations.

**Seventh Affirmative Defense**
**(Res Judicata)**

78.      The Complaint is barred in whole or in part by the doctrine of res judicata.

**Eighth Affirmative Defense**
**(Collateral Estoppel)**

79.     The Complaint is barred in whole or in part by the doctrine of collateral estoppel.

**Ninth Affirmative Defense**
**(Charter and By-Laws)**

80.     The Complaint is barred in whole or in part by the American Club's Charter and By-Laws applicable to the respective P & I policies.

**Tenth Affirmative Defense**
**(Purported Mutuality)**

81.     Part or all of the declaratory relief sought by the American Club would, in whole or in part, result in inequitable treatment of members and former members of the American Club, including the Answering Defendants, contrary to principles of mutuality asserted by the American Club.

**Eleventh Affirmative Defense**
**(Board of Directors' Actions)**

82.     To the extent that the American Club's claims are based on the failure of its Board of Directors to set adequate reserves for unreported claims before closing an insurance year in accordance with the Club's By-Laws, applicable law, or otherwise, the American Club has sole responsibility for such inadequacy and such inadequacy is not a defense to the rights of the Answering Defendants under their respective P & I policies to indemnification for payments that they have made or will make for occupational disease claims.

## Twelfth Affirmative Defense
### (Denial of Membership Rights)

83.     This affirmative defense is asserted only to the extent that the American Club's claims are based on the premise that the Answering Defendants remained members of the American Club on May 25, 2004 and on June 7, 2004, long after the expiration of the policy years under all of their respective American Club policies.  The Answering Defendants continue to assert that they were not members of the American Club as of either of those dates and ceased to be members following the last day the last P & I policy owned by the Answering Defendants was effective to insure risks.  The American Club's actions taken on those respective dates in determining that it will no longer indemnify the Answering Defendants with respect to IBNR claims arising before February 20, 1989 are null and void because the Answering Defendants and others similarly situated were not afforded the right to vote for the American Club's directors who approved such actions or to exercise other incidents of membership in connection with such actions and any related actions.

## Thirteenth Affirmative Defense
### (Release)

84.     The American Club's claims are barred by the express and/or implied terms of the releases to members, and/or actions taken by the American Club, in connection with the closing of policy years and/or the releases given to former members in connection with their withdrawal from membership.

## Fourteenth Affirmative Defense
### (Untimely Notice of Disclaimer)

85.     To the extent that the American Club seeks to disclaim coverage for claims previously reported to the American Club under any of the American Club policies, such

disclaimer is untimely and in violation of applicable law, including N.Y. Insurance Law §

3420(d).

### Fifteenth Affirmative Defense
### (Failure to Assert Coverage Defenses)

86.    To the extent that the American Club failed to assert coverage defenses within the

time limitations set forth under applicable law or failed to reserve rights with respect to

indemnification, the American Club waived those defenses to indemnification for the affected

claims.

### Sixteenth Affirmative Defense
### (Failure to Provide Notice of Cancellation of Coverage)

87.    To the extent that the American Club bases any of its claims on the cancellation

of further coverage under any of the P & I policies, the Club has failed to comply with the

required notice of cancellation required by applicable law, including N.Y. Insurance Law § 3426.

### Additional Defenses

88.    The Answering Defendants respectfully request leave to assert additional defenses

which they deem necessary to their defense during or upon conclusion of their investigation and

discovery of the American Club's claims.

### COUNTERCLAIMS

The Answering Defendants, as and for their counterclaims against American

Club, upon knowledge with respect to themselves and their own acts and upon information and

belief as to all other matters, allege as follows:

**The Parties**

89.     Central Gulf is a Delaware corporation having a principal place of business in New Orleans, Louisiana.  At all relevant times, Central Gulf has been an owner and charterer of vessels engaged in marine commerce.

90.     Waterman is a New York corporation having a principal place of business in New Orleans, Louisiana.  At all relevant times, Waterman has been an owner and charterer of vessels engaged in marine commerce.

91.     The American Club is a New York corporation organized and existing under the New York Not-for-Profit Corporation Law and having its principal place of business in New York, New York.  The American Club is and has been for many years subject to regulation under Article 41 of the New York Insurance Law as a mutual company and in that capacity has issued marine P&I policies to vessel owners and charterers engaged in marine commerce.

**Marine P & I Insurance Coverage Through The American Club**

92.     Each of the Answering Defendants purchased marine P & I insurance from the American Club prior to 1989.

93.     Generally, the P & I policies issued by the American Club covered one-year periods.  Owners of P & I policies issued by the American Club became members thereof only during the respective periods of coverage.

94.     Each P & I policy issued by the American Club before 1989 ("Pre 1989 Policies") contains an indemnity provision which provides coverage for all loss, damage, or expense for which each of the Answering Defendants is liable as a result of loss of life, personal injury or illness, of any person.

95.    The relevant policy language provides:

> [AMERICAN CLUB] AGREES TO INDEMNIFY
> THE ASSURED AGAINST ANY LOSS,
> DAMAGE OR EXPENSE WHICH THE
> ASSURED SHALL BECOME LIABLE TO PAY
> AND SHALL PAY BY REASON OF THE FACT
> THAT THE ASSURED IS THE OWNER . . . OF
> THE INSURED VESSEL AND WHICH SHALL
> RESULT FROM THE FOLLOWING
> LIABILITIES, RISKS, EVENTS, OR
> OCCURRENCES AND EXPENDITURES:
>
> (1)  LIABILITY FOR LIFE SALVAGE, LOSS OF
> LIFE OF, OR PERSONAL INJURY TO, OR
> ILLNESS OF ANY PERSON . . .

96.    On this language, each of the Answering Defendants reasonably relied and believed that it would be covered by marine P & I insurance issued by the American Club for any and all seamen's claims for loss of life and personal injury.

97.    All Pre-1989 Policies provide occurrence-based coverage and therefore permit claims for indemnification to be made thereunder without any time limitation as to when the underlying claims are first be made against the insured.

98.    Under the P & I Policies, claims made to the American Club are subject to a single deductible per claim.

99.    All Pre-1989 Policies have no aggregate limit and therefore contain no language or provision limiting the American Club's liability thereunder.

100.    The Pre-1989 Policies do not limit the recourse of the policyholders against any assets of the American Club or to the amount collected by way of premiums, assessments, or otherwise, from holders of policies issued to all policyholders for the same policy year.

101.    The Pre-1989 Policies are assessable policies issued under the Club's Charter, By-Laws and applicable law, which govern the Club's authority to issue assessable policies, to make assessments thereunder, and to terminate the policy holder's liability for further assessments thereunder.

102.    In particular, the Answering Defendants' policies provide:

> ASSESSABILITY.  The Assured are subject to a contingent liability hereunder for assessment without limit of amount for their proportionate share of any deficiency or impairment as provided by law and fixed in accordance with the by-laws of the [Club]; provided, however, that any such assessment shall be for the exclusive benefit of holders of policies which provide for such a contingent liability, and the holders of policies subject to assessment shall not be liable to assessment in an amount greater in proportion to the total deficiency than the ratio that the deficiency attributable to the assessable business bears to the total deficiency.

103.    Relevant By-Law provisions of the Club, which appear to be substantially similar in form over time, provide:

> For the purposes of declaring dividends and making assessments the business of the [Club] shall be divided into insurance years.

The insurance years referred to in this By-Law have coincided with the policy periods under the insurance policies issued by the Club during all relevant times.

104.    Moreover, other relevant By-Law provisions of the Club, which appear substantially similar in form over time provide:

> From time to time after the termination of each insurance year, when the manager shall determine that it is practicable to estimate with a reasonable degree of certainty the minimum, probable or final surplus or deficiency resulting from all of the Corporation's insurances in effect during such insurance year, the manager shall place before the board of directors a statement of such financial results of insurances . . . .  After receipt of any such statement, the board of directors from time to time may (a) fix and determine an amount to be declared and paid as a partial or the final

16

dividend, after retaining such sums as them may deem necessary <u>to meet outstanding policy obligations or for the maintenance of reserves and surplus of the Corporation</u>, or (b) order an interim or <u>the final assessment to be made against the holders of assessable policies</u>, fix the due date of such assessment, determine the rate of interest that shall be added to and become a part of any delinquent assessment, and otherwise provide for enforcement and collection thereof. . . . (Emphasis added.)

### Final Assessments On Policy Holders

105.    In the event that the aggregate losses paid by the Club under all Pre-1989 Policies for any open policy year exceed the amounts collected from policyholders for that year through premiums and assessments, the Club, acting through its Board of Directors, has the discretionary authority under relevant By-Laws to levy additional assessments on the policyholders for that year to cover the deficiency on an interim or final basis. Likewise, if such amounts collected from policyholders exceed such losses, the Club, again acting through its Board of Directors, has discretionary authority under the same applicable By-Law provision to refund some or all of the surplus to those policyholders or to decide not to do so.

106.    If the Club's Board of Directors determines to make an assessment for any policy year, the assessments are made against all policyholders for the policy year in issue and are prorated on the basis of the relative amounts of the initial premiums paid under such policies by each policyholder for such policy year. In other words, assessments for a particular policyholder are not predicated upon claims experience of that policyholder standing alone, but upon the basis of the aggregate claims experience of all policyholders for that policy year.

107.    Thus, as long as a policy year is kept open by the Club, the Club may assess policyholders for the aggregate deficiency for that year.

108.    As noted, applicable By-Laws provide for the closing of policy years with so-called "final assessments" by action of the Club's Board of Directors based upon a report and recommendation from the Club's professional claims manager.  However, once a policy year has been declared closed by the Club's Board of Directors, in accordance with the applicable By-Laws, no further premium or assessment can be levied upon the policyholders with respect to that policy year, even if the operations for that year result in an ultimate deficiency to the Club.

109.    After a policy year has been closed, the Club's balance sheet is updated to transfer all amounts received by way of premiums and assessments after payment of claims for the year into either case reserves for that year, reserves for incurred but not reported losses ("IBNR") for that year, or general reserves not dedicated to any particular policy year.  These reserves, however, do not result in the imposition of any security interest or charge on specified assets or the segregation of any assets.  All funds collected from the assessment of policyholders are assets of the Club, subject to the claims of all of its creditors including but not limited to policyholders for claims payments under their respective policies.

110.    The Club's Board of Directors' determination to close a policy year with a "final" assessment or dividend does not terminate the Club's continuing obligations under the policies for that policy year, unless the policyholder agrees to releases of policy coverage.  Upon information and belief, the Club has neither sought nor obtained any releases of policy coverage for any of the Pre-1989 Policies.

### <u>Decades Of Paying Claims In Connection With Occupational Disease</u>

111.    In or around the early 1980s, Plaintiff seamen have brought suit against many of the defendants in this action seeking damages from their alleged exposure to asbestos, benzene, noise, and other substances or conditions on board or working in or about vessels owned,

chartered, operated, or managed by one or more defendants during one or more of the Pre-1989

Years ("Occupational Disease Claims").

112.    For over twenty years the Club has consistently recognized that it is legally

obligated to pay for Occupational Disease Claims arising from the Pre-1989 Years, despite the

fact that each such year had been closed with a "final assessment," and, in recognition of its

obligation to the policyholders, has paid hundreds, if not thousands, of such claims to

policyholders.  Upon information and belief, the Club has submitted claims for reimbursement

for some payments to its own re-insurers under its own reinsurance and stop-loss policies and in

so doing represented to such re-insurers that the Club had become legally obligated to make such

payments under one or more of the Pre-1989 Policies.

113.    The Club has also acted to affirm its contractual obligations by, inter alia,

asserting its rights to receive cooperation from policyholders under one or more of the Pre-1989

Policies and its right to consent to the policyholders' settlement of Occupational Disease Claims.

114.    The Club never reserved its rights to deny coverage under the Policies based on

insufficiency of reserves set when an insurance year was closed, or on the basis that its

obligation to provide such coverage was a "discretionary" practice that could be "terminated."

115.    The Answering Defendants have relied on this course of conduct by the Club.

### Earlier Attempts By The American Club To Limit Coverage Were Rejected By The Second Circuit in the In Re Prudential Lines Case

116.    While the American Club has, in fact, acknowledged its contractual obligation to

provide insurance coverage under its P & I Polices for closed years, it has simultaneously

attempted to limit its liability by applying multiple deductibles to single claims.  In so doing,

when a claim is tendered to the American Club for payment in connection with a seaman's claim for personal injury or death, the Club has (i) allocated the claim among all American Club policies held by the assured covering the period in which the seaman sailed with the assured and (ii) applied a full deductible for each policy period for each policy covering that period. This so-called practice is known as "stacking deductibles."

117. The American Club's practice of stacking deductibles has had the drastic effect of practically eliminating coverage for seamen's claims of occupational disease.

118. Based on this unlawful practice, an adverse judgment was entered against the Club in the action entitled <u>Dicola v. American S.S. Owners Mutual Protection and Indemnity Association, Inc. (In re Prudential Lines, Inc.)</u>, 158 F.3d 65 (2d Cir. 1998), the United States Court of Appeals for the Second Circuit held that, for Occupational Disease Claims involving exposures occurring over multiple policy years, the Pre-1989 Policies entitle a policyholder to designate the Policy for one of those policy years for payment of its claim, subject to only the one deductible for that policy year. 158 F.3d 65 (2d Cir. 1998). In the <u>Prudential Lines</u> litigation, the Club acknowledged that it was obligated to provide coverage for Occupational Disease Claims in closed years and never asserted that its obligation to provide such coverage was in any way "discretionary."

119. Notwithstanding this adverse ruling, among other things, the Club continued to require that its insureds absorb multiple deductibles for a single claim filed with the Club where the underlying claimant has alleged exposure or injury during multiple years of sea service aboard a vessel entered with the Club.

**The American Club's Decision To Disclaim Coverage**

120.    In or about June 7, 2004, the Club announced through its June 7, 2004 Circular that the Club no longer intended to make payments to policyholders with respect to Occupational Disease Claims under any Pre-1989 Policies with respect to which such claims had not been reported by the time each such year was closed or for such claims that had been under-reserved or unreserved by the Club.  In so doing, the Club claimed that its payment of such claims over decades was merely a "discretionary practice."

121.    At no time prior to June 7, 2004, had the Club advised its policyholders that the payment of valid claims under any Pre-1989 Policy was "discretionary" or subject to termination if the amount of the Club's reserves for a closed policy year were deemed insufficient or for any other reason.

**FIRST CLAIM FOR RELIEF**
**(Declaratory and Injunctive Relief)**

122.    The Answering Defendants incorporate by reference the preceding paragraphs of these counterclaims with the same force and effect as if set forth at length herein.

123.    The Answering Defendants have incurred and will likely incur in the future "loss, damage or expense" in connection with Occupational Disease Claims that are still pending and that are not yet asserted or resolved, resulting from underlying claimants' exposures occurring during one or more of the Pre-1989 Years and for reimbursement of which the Answering Defendants have coverage under one or more Pre-1989 Policies.

124.    The Club is obligated to indemnify the Answering Defendants under the Pre-1989 Policies in full for any loss, damage or expense that the Answering Defendants become liable to pay, subject to the applicable deductible, in connection with Occupational Disease Claims

resulting from exposures occurring during one or more of the Pre-1989 Years, without any time limitation as to when such claims are first made under any one or more of such policies.

125.    The Club has disputed and is likely to continue to dispute its obligations under the Pre-1989 Policies to so indemnify the Answering Defendants with respect to Occupational Disease Claims, now pending or made in the future and the Club has asserted the right, which the Answering Defendants have disputed and will continue to dispute, to make future assessments under the Pre-1989 Policies to cover losses not covered by reserves established as of June 7, 2004.

126.    As a result of the foregoing, an actual and justiciable controversy exists between the Answering Defendants and the Club with respect to (a) the duties and obligations of the Club under one or more of their respective Pre-1989 Policies to provide continuing coverage to the Answering Defendants for Occupational Disease Claims occurring during one or more of the Pre-1989 Years, and (b) the Club's right to make assessments under the Pre-1989 Policies to cover losses not covered by reserves established as of June 7, 2004.

127.    Accordingly, this Court should (a) declare that the Answering Defendants have the right under their respective Pre-1989 Policies to continuing coverage for Occupational Disease Claims occurring during any one or more of the Pre-1989 Years, subject only to an applicable deductible, and that the Club has no right to make any further assessment or assessments against any Defendants under any Pre-1989 Policies; (b) grant the Answering Defendants a mandatory injunction compelling the Club to provide such coverage and a negative injunction barring, restraining and prohibiting the Club from making, or seeking to make, any such assessment or assessments; (c) award the Answering Defendants their attorneys' fees and other costs and expenses incurred in connection with this action to fullest extent permitted by

applicable law; and (d) grant the Answering Defendants such other and further relief as this

Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

128.    The Answering Defendants incorporate by reference the preceding paragraphs of

these counterclaims with the same force and effect as if set forth at length herein.

129.    The Answering Defendants have complied with all applicable conditions of the

Pre-1989 Policies that have arisen to date with respect to all pending Occupational Disease

Claims.

130.    The Club has breached, and threatens in the future to continue to breach, its

obligations to the Answering Defendants under one or more of the Pre-1989 Policies by, among

other things, (a) refusing on and after June 7, 2004, to make claim payments under Pre-1989

Policies for Occupational Disease Claims resulting from claimants' exposures occurring during

one or more of the Pre-1989 Years and (b) reducing its indemnification payments to the

Answering Defendants otherwise due and payable under the Pre-1989 Policies by applying

multiple deductibles for Occupational Disease Claims based upon the number of years that the

underlying claimant served on one or more of Defendant's vessels.

131.    In so doing, the Club has also breached, and threatens to continue to breach, its

duty under such Pre-1989 Policies to settle claims in good faith, as well as the warranty of

utmost good faith and fair dealing implied in every marine insurance policy.

132.    As a direct and foreseeable result of these breaches, the Answering Defendants

have been damaged and continue to be damaged in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

**(Violation of New York's General Business Law Section 349)**

133.     The Answering Defendants incorporate by reference the preceding paragraphs of these counterclaims with the same force and effect as if set forth at length herein.

134.     The Club represented to policyholders of all Pre-1989 Policies that such policyholders would continue to be covered by their respective Pre-1989 Policies for Occupational Disease Claims arising during any one or more of the Pre-1989 Years.

135.     The Answering Defendants reasonably relied on such representations and have sustained and will continue to sustain damages as a result of the Club's attempt to renege on its obligations to the Answering Defendants under their respective Pre-1989 Policies.

136.     As a result of the these violations of New York General Business Law § 349, the Club is liable to the Answering Defendants for damages, attorneys' fees and other costs and expenses and should be enjoined from continuing those deceptive acts or practices.

## FOURTH CLAIM FOR RELIEF

**(Declaratory Relief – Release)**

137.     The Answering Defendants incorporates by reference the preceding paragraphs of these counterclaims with the same force and effect as if set forth at length herein.

138.     In connection with the closing of insurance years and the levying of "final" assessments, the Club granted the Answering Defendants releases from any liability for further assessments under one or more the Pre-1989 Policies.

139.     The Answering Defendants seek a declaration that any further assessments are barred against the Answering Defendants with respect to the Pre-1989 Years covered by such releases.

## FIFTH CLAIM FOR RELIEF
### (Promissory Estoppel)

140.    The Answering Defendants incorporates by reference the preceding paragraphs of these counterclaims with the same force and effect as if set forth at length herein.

141.    The Answering Defendants reasonably relied on the expressed and implied promises of the American Club with respect to the existence of marine P & I coverage for claims of loss of life or personal injury.  The Answering Defendants' reliance was foreseeable.

142.    The American Club has issued a blanket disclaimer of coverage under Pre 1989 Polices.

143.    By reason of the forgoing, the Answering Defendants have suffered damages.

## SIXTH CLAIM FOR RELIEF
### (Breach of the Covenant of Good Faith and Fair Dealing)

144.    The Answering Defendants incorporates by reference the preceding paragraphs of these counterclaims with the same force and effect as if set forth at length herein.

145.    The American Club issued P & I Policies to the Answering Defendants under which the American Club obligated itself to indemnify the Answering Defendants for "loss damage and expense" incurred in connection with "loss of life of, or personal injury to, or illness of any person" occurring during the policy period.

146.    As a policyholder, the American Club owed the Answering Defendants an obligation to act reasonably and in good faith and to deal fairly with the Answering Defendants in connection with their rights or benefits under the P & I Policies.

147.    The American Club's blanket denial of coverage for claims occurring prior to 1989 had the direct effect of destroying the ability of the Answering Defendants to receive their

rights or benefits under the P & I Policies in breach of covenant of good faith and fair dealing implied in every contract.

148.     By reason of the foregoing, the Answering Defendants have suffered damages.

WHEREFORE, the Answering Defendants demand judgment:

(a)     dismissing all claims in the Complaint with prejudice and costs;

(b)     declaring that (i) the Answering Defendants have the right under their respective Pre-1989 Policies to continuing coverage for Occupational Disease Claims resulting from claimants' exposures occurring during any one or more of the Pre-1989 Years, subject only to the applicable deductible, (ii) the Club has no right to make any further assessment or assessments against any defendants under any Pre-1989 Policies; and (iii) the Answering Defendants have the right under their respective Pre-1989 Policies to designate one of such Policies to indemnify such defendant for the payment a particular Occupational Disease Claim, subject to only the deductible under that Policy and no other;

(c)     granting the Answering Defendants a mandatory injunction compelling the Club to provide the coverage described in (b) above;

(d)     barring, restraining and prohibiting the Club from making, or seeking to make, any assessment or assessments under any Pre-1989 Policies;

(e)     granting the Answering Defendants damages against the Club, in such amount as is determined at trial, together with pre-judgment interest;

(f)     granting Defendant their reasonable attorneys' fees and other costs and expenses incurred in this action;

(g)     granting such other and further relief as this Court deems just and proper.

Dated: October 8, 2004
       New York, New York

                                    O'HARE PARNAGIAN LLP


                                    /s/ Robert A. O'Hare Jr.
                                    Robert A. O'Hare Jr. (RO 6644)
                                    Michael G. Zarocostas (MZ 0044)
                                    82 Wall Street, Suite 300
                                    New York, NY 10005-3686
                                    (212) 425-1401
                                    (212) 425-1421 (f)

                                    Attorneys for Defendants
                                    Central Gulf Lines, Inc. and
                                    Waterman Steamship Corporation