PROSKAUER ROSE LLP
Dale A. Schreiber (DS-9211)
Colin A. Underwood (CU-3445)
Seth B. Schafler (SS-5993)
1585 Broadway
New York, New York 10036-8299
(212) 969-3000
(212) 969-2900 (fax)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., <br><br> Plaintiff, <br><br> -against- <br><br> ALCOA STEAMSHIP CO., INC., et al., <br><br> Defendants. | Case No. 04 CV 4309 (LAK) <br><br> **(ECF Case)** |

## MEMORANDUM IN OPPOSITION TO THE
## MARITIME CLAIMANTS' MOTION TO INTERVENE

Defendants Keystone Shipping Company[1]; BP America, Inc. ("BP")[2], Marine Transport Lines, Inc. ("MTL")[3], and The Cleveland-Cliffs Steamship Company ("Cleveland-Cliffs")[4]

---

[1] Plaintiff has named Keystone Shipping Co. and several entities listed under Keystone Shipping Co. as defendants on Ex. A to its Second Amended Complaint, dated July 8, 2004. Those entities are: (1) Chas. Kurz & Co., Inc.; (2) several wholly owned subsidiaries of Chas. Kurz & Co., Inc., all managed by Keystone Shipping Co., Baldbutte Shipping Company, Chestnut Shipping Corporation, Chilbar Shipping Company, Fredericksburg Shipping Company, and Margate Shipping Company; (3) Keystone Tankship Corporation, an affiliate managed by Keystone Shipping Co.; (4) Timbo Shipping Ltd., and Calendar Navigation Corporation, which have been dissolved; and (5) New England Collier Company, a joint venture which has been dissolved, and which was managed by Keystone Shipping Co., and (6) Paco Tankers, Inc., an entity which was managed by Keystone Shipping Co. but was not and is now related to or controlled by any Keystone entity. At various times each of these entities is believed to have been insured by the AC. To the extent these entities are required to respond, they and the other entities listed under Keystone Shipping Co. will be referred to as "Keystone."

("Defendants"), oppose the motion for an order under Rule 24(a) or (b), Fed. R. Civ. P., either for mandatory or permissive intervention brought by various former employees of Prudential Lines, Inc. and Grace Lines, Inc. (the "Maritime Claimants").

The Maritime Claimants seek to intervene in this action purportedly to support the interests of two insolvent companies, Prudential Lines, Inc. and Grace Lines, Inc., both of which have been named by the plaintiff ("AC" or the "Club") as defendants in this action through the PLI Disbursement Trustee. Although the Maritime Claimants may have a contingent and indirect financial, as opposed to legal, interest in recovery of insurance proceeds of AC insurance policies, they are not parties to and have no rights under the insurance contracts in issue.

The threshold issue in this action is whether the AC is entitled to unilaterally terminate insurance coverage for occupational disease claims under occurrence-based insurance policies issued to shipowner defendants covering liability for injury or damage in years prior to 1989.

---

[2]  BP was erroneously named as BP and as successor to several entities on Ex. A to the Second Amended Complaint. Its proper name is BP America Inc. and it responds on behalf of (1) named Defendants Atlantic Richfield Co., American Oil Co., and Standard Oil Co. (Ohio) which are wholly owned by BP America Inc.; (2) on behalf of named Defendants Sohio Alaskan Petroleum Co., which is now called BP Exploration (Alaska) Inc., and SPC Shipping, Inc. which is now called BP Oil Shipping Co., which are wholly owned by Standard Oil Co. (Ohio); and (3) on behalf of named Defendant Atlantic Richfield Indonesia Inc., which was properly called Atlantic Richfield Indonesia Co., is now called BP West Java Ltd. and is owned indirectly owned by BP America Inc.

[3]  Plaintiff named Marine Transport Lines, Inc. as manager and agent of several entities on Ex. A to its Second Amended Complaint. Marine Transport Lines, Inc. is neither the manager nor the agent of the entities but responds on behalf of itself and the other named entities to the extent that they are required to respond at all. The other named entities are as follows: (1) Marine Interests Corporation which has been dissolved; (2) Union Marine Transport Co., which has been dissolved; (3) Marine Chemical Navigation Corp., which is now named Marine Chemical Navigation Co. LLC; (4) Marine Sulphur Shipping Corporation, which is now Marine Sulphur Shipping Co. LLC; and (5) Oswego Tanker Corp. which has been dissolved.

[4]  Plaintiff erroneously named Cleveland-Cliffs, Inc. as successor to The Cleveland-Cliffs Steamship Company on Ex. A to its Second Amended Complaint. By stipulation, The Cleveland-Cliffs Steamship Company has been substituted for Cleveland-Cliffs, Inc.

2

The Defendants contend the AC policies provide continuing coverage that may not be unilaterally terminated by the AC, and that the AC's recent action purporting to do so is invalid and a breach of the insurance contracts. This is an issue of straightforward contract law that will be fully and adequately litigated, not only by the PLI Disbursement Trustee, but by the more than 80 other solvent shipowner defendants. There is no reason to add yet more parties to the case to adjudicate this issue.

The second issue in this case is whether, assuming, as Defendants contend, shipowner defendants are entitled to continuing coverage for occupational disease claims under pre-1989 AC insurance policies, the AC is entitled to reopen years of account that have long been duly and finally closed to further assessment by the AC. The Maritime Claimants have no interest whatsoever in the outcome of this issue because they are not and have never been members of the Club and the shipowner against whom they are asserting claims are insolvent.

The third issue is whether the AC is legally entitled, contrary to the Second Circuit's ruling in *Dicola v. American S.S. Owners Mut. Protection & Indem. Ass'n* (*In Re Prudential Lines*), 158 F. 3d 65 (2d Cir. 1998) ("*Prudential*"), to "stack" deductibles for occupational disease claims involving multiple years of AC coverage. This too is an issue of straightforward contract interpretation that was already ruled on by the Second Circuit in *Prudential*. This issue can be fully and fairly litigated without adding the Maritime Claimants as additional parties. The addition of thousands of claimants as parties would only delay and complicate resolution of this case. Accordingly, the Maritime Claimants motion to intervene should be denied.

3

### I. The Maritime Claimants Are Not Entitled to Intervene as of Right and Should not be Permitted to Intervene

The Maritime Claimants should not be permitted to intervene as of right because their interest in the outcome of this insurance dispute is contingent and indirect. As set forth in the AC's Opposition to the Maritime Claimant's Intervention Motion, at p. 14 *et seq.*, Maritime Claimants will have no interest in recovery under AC insurance policies unless they can first satisfy the "pay first" provisions of the policies – an issue currently being adjudicated in pending Bankruptcy Court proceedings. Moreover, to the extent Maritime Claimants may have financial interests in recovery under AC policies, such interests are adequately represented, not only by the PLI Disbursement Trustee, but by numerous solvent defendants in this action who will vigorously present their entitlement to continuing coverage under pre-1989 AC policies. Permissive intervention should likewise be denied because Maritime Claimants do not have common questions of law or fact with this case and their presence threatens to unduly delay and prejudice the adjudication of this action.

    A.    <u>The Maritime Claimants Should Not be Permitted to Intervene as of Right</u>

Under Fed. R. Civ. P. 24(a), a party may intervene as of right only when (1) a statute confers an unconditional right to intervene or (2) the "applicant claims *an interest relating to the property or transaction* which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, *unless the applicant's interest is adequately represented by existing parties.*" (Emphasis added.) No statute confers an unconditional right to intervene on the Maritime Claimants.

4

The Maritime Claimants have no direct rights under the AC policies. Claimants do not have standing under New York law to bring an action directly against a marine insurer. *See* N.Y. Ins. L. §3420(i) (referencing §2117(b)(3) exempting marine insurers from direct actions); *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 159 (S.D.N.Y. 2000) (where the insurer sued for a declaration voiding a marine policy another insurer of certain named defendants was permitted to intervene and the court distinguished the intervening insurer from personal injury claimants or judgment creditors); *WABCO Trade Co. v. S.S. Inger Skou*, 663 F.2d 369, 371 (2d Cir. 1981) (claimant who won judgment against shipper could not bring direct action against shipper's insurer); *Becker v. Allcity Ins. Co.*, 2000 WL 33179289, *5 (E.D.N.Y. June 2, 2000) ("The rule in New York is clear: marine protection and indemnity insurance contracts for oceangoing vessels are exempt from all direct action suits."); *Miller v. American S.S. Owners Mut. Protection & Indem. Co.*, 509 F. Supp. 1047, 1049 (S.D.N.Y. 1981) (refusing to allow claimants to bring a direct action against the Club); *Dunn v. American Home Assurance Co.*, 158 A.D.2d 505, 507, 551 N.Y.S.2d 268, 270 (2d Dep't 1990) ("strangers to a policy of marine protection and indemnity insurance are precluded from bringing an action for a declaratory judgment against insurers.").[5]

---

[5] While Maritime Claimants and other claimants similarly situated were allowed to intervene in both the *In re Prudential Lines* and *In re U.S. Lines* case, both of these cases are distinguishable. *See Prudential*, 158 F.3d at 74-75; *United States Lines v. American S.S. Owners Mut. Protection & Indem. Ass'n (In re United States Lines)*, 169 B.R. 804, 829-30 (S.D.N.Y. 1994) *reversed on other grounds* 220 B.R. 5 (S.D.N.Y. 1997) and at 197 F.3d 631 (2d Cir. 2000). In both cases, the claimants intervened in an action where the parties were the bankrupt policyholder and the Club, and it was a proceeding in the bankruptcy action. No other policyholders were there to represent the claimants' interests or litigate the coverage issues. That is not the case here. The interests of the Maritime Claimants will be adequately represented by the multitude of solvent policyholders which are named as defendants. *See, e.g., Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (where both the party to the action and the potential interveners sought a recovery of certain monies, the potential interveners'

Moreover, Maritime Claimants' rights under the AC policies, if any, are contingent upon their being able to satisfy the "pay first" provision of the policies – an issue currently being adjudicated in Bankruptcy Court. Unless Maritime Claimants are able to surmount this (and possibly other) obstacles they will have no right to receive proceeds from the AC policies.

To the extent Maritime Claimants have a contingent and indirect financial interest in adjudication of continuing coverage under pre-1989 AC policies, that interest will be adequately represented by over 80 solvent shipowner defendants. This action is not about the Jones Act or whether Maritime Claimants are entitled to compensation for their injuries. In fact, it is not about a denial of coverage on any individual claimant's claims or for any reason factually related to their alleged injuries. It is about the straight-forward interpretation of the pre-1989 AC Policies issued by the Club and the effect of the unequivocal action the AC took in finally closing years of account to further assessment. Other defendants with strong and direct interests in the outcome of these issues can be relied upon to litigate the issues vigorously.[6]

Maritime Claimants argue that they have defenses of *res judicata* and law of the case to present which other defendants may not. Defendants filed their Answer and Counterclaims on October 8, 2004 and did allege the affirmative defense of *res judicata* (as well as did several

---

interests were adequately represented and the fact that the underlying motives for the recovery of the monies were different did not give the potential interveners a basis for intervention as of right).

[6] Maritime Claimants' reliance upon the Prudential Lines Bankruptcy Plan is misplaced. The bankruptcy plan approved in the *Prudential Lines* proceedings acknowledges that claimants are only allowed to enforce the insurance rights of *Prudential Lines* if permitted by law. The plan merely states, "to the extent not to [sic] prohibited by applicable law, the Asbestos Creditors' Committee and any holder of a Class 5C Claim shall be authorized to intervene in such an action." (Memorandum in Support of the Maritime Claimants' Motion to Intervene ("Mem." at 4). As noted above, applicable law prohibits direct actions by claimants against marine insurers and principles of intervention law mandate that they be prohibited from intervening here.

other defendants not represented by Proskauer). In any event, the Prudential Lines Trustee has raised this issue as an affirmative defense in its answer of September 28 and has sought to confirm coverage, and Maritime Claimants can adjudicate this issue in the pending Prudential Lines bankruptcy litigation. The claimants' attempt to be present in this case to do the same is redundant.

      B.      <u>The Maritime Claimants Should Not be Permitted to Intervene</u>

Fed. R. Civ. P., 24(b) provides for permissive intervention, "when an applicant's claim or defense and the main action have a question of law or fact in common." Moreover, the Court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

As argued above, any financial interest Maritime Claimants may have in recovery under the AC policies is contingent and indirect. In addition, any interests the Maritime Claimants may have are limited to a determination of the shipowner defendant insureds' rights to continued coverage under the pre-1989 AC policies and the application of deductibles. Adding Maritime Claimants as parties is not needed to resolve these issues. Indeed, the Second Circuit already ruled in *Prudential* that the AC policies provide for continuing occurrence-based coverage, and that deductibles may not be stacked. Maritime Claimants' presence is not required to adjudicate the meaning of the AC policies or the legal impact of *Prudential*. With respect to the issue of "reopening" closed years, as claimants against insolvent shipowners, Maritime Claimants have no interest in the outcome.

7

Moreover, intervention of Maritime Claimants threatens to unduly delay and prejudice the adjudication of the rights of the policyholders. *See Washington Electric Coop.*, 922 F.2d at 98 (affirming a denial of permissive intervention where the interveners would interject complicated issues of state regulatory law into a contract dispute). This action does not involve the actual merits of the Maritime Claimants' claims. Since those claims number in the several thousands, interjecting those issues would create undue delay.[7] Maritime Claimants have indicated that they may also seek to interject extraneous bankruptcy issues into the case, further complicating the issues. (Mem. at 8). In view of the number of solvent defendants and the PLI Disbursement Trustee present in this case, there is no need to add yet additional parties whose participation will only further delay and complicate resolution of the case. Thus, the Maritime Claimants should not be permitted to intervene permissively.

## CONCLUSION

Accordingly, the Maritime Claimants' motion to intervene should be denied.

Dated: October 12, 2004
New York, NY

PROSKAUER ROSE LLP

By:   /s/Dale A. Schreiber
Dale A. Schreiber (DS-9211)
Colin A. Underwood (CU-3445)
Seth B. Schafler (SS-5993)
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
(212) 969-3000

---

[7] This was a basis for the intervention permitted in the *U.S. Lines* case, but does not provide a basis for intervention here in a proceeding which does not involve the merits of the claimants' claims. *See In re U.S. Lines*, 169 B.R. at 829-30; *see also Washington Electric Coop.*, 922 F.2d at 97 ("Intervenors must take the pleadings in a case as they find them.").

(212) 969-2900 (fax)

*Attorneys for Defendants Keystone, BP, MTL and Cleveland-Cliffs*

RAY, ROBINSON, CARLE & DAVIES P.L.L.
Gene B. George
Julia R. Brouhard
1717 East 9th Street, Ste. 1650
Cleveland, OH 44114-2898
(216) 861-4533
(216) 861-4568 (fax)

*Attorneys for Defendant Cleveland-Cliffs*