```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
AMERICAN STEAMSHIP OWNERS            :
MUTUAL PROTECTIONS AND               :   04 Civ. 04309 (LAK)
INDEMNITY ASSOCIATION, INC.,         :
                                     :
            Plaintiff,               :
                                     :
      -against-                      :
                                     :
Alcoa Steamship Co., Inc., et al.    :
                                     :
            Defendants.              :
-----------------------------------------------------------------X
```

**MARITIME CLAIMANTS' REPLY TO
INTERVENTION OPPOSITION**

The Maritime Claimants, through their counsel undersigned, reply to the intervention opposition of American Steamship Owners Mutual Protections and Indemnity Association Inc.'s (hereafter the American Club) and the Shipowner Defendants, as follows:

**FACTUAL STATEMENTS AND
ASSUMPTIONS ARE NOT CORRECT**

A number of arguments are set forth which are not factually accurate. For example, those opposing intervention argue the PLI Disbursement Trustee will be able to litigate the various issues. The Trustee has joined in and supports the intervention moiton in large part because he does not have the resources necessary to fully participate and litigate. His limitations in this regard are a matter of record and not contested.

With regard to the second issue in the case (whether the American Club can reopen closed years and assess Club members), it is argued that the Claimants have "no interest whatsoever in the

outcome of this issue . . . ." See Defendants' Memorandum, p. 7. This is not true. In the event closed years are reopened and the Trust, standing in the shoes of Prudential Lines, Inc., is assessed, the issues which arise are more than complex and would ultimately impact Claimants. For example, would such an assessment become a "claim" in the underlying Chapter 11 (obviously the Club would need to obtain permission to file a later claim) and would such a "claim" be used as a set-off with regard to indemnifying the Trustee for approved personal injury, cargo and asbestos claims? Clearly, the Club would seek to make use of or take advantage of this in such a way that it would impact on the Trust's ability to process and pay claims and seek indemnification.

It is also suggested that having the Claimants as parties would in someway delay, complicate and prejudice the adjudication of the rights of the policyholders. These conclusory statements are not supported by any facts or explanations as to how or why this would come about. This is simply not the case as can be seen by the Maritime Claimants' proposed answer and affirmative defenses. The Claimants' interest in this case is to simply preserve the insurance and not let it erode to the point where for all practical purposes it does not exist.

To the extent that there are relevant bankruptcy issues, they should be raised. The Defendants summarily conclude they are or would be "extraneous." It is far too early to be jumping to such a conclusion and moreover this argument further demonstrates that they will not be in fact representing the interests of the Trust, as is claimed. It is also argued that this action is not about the Jones Act or whether the Claimants are entitled to compensation. Claimants have not indicated they will and do not intend to make the merit of their claims an issue in this proceeding.

**VIABLE SHIPOWNER DEFENDANTS DO NOT
REPRESENT THE INTEREST OF THE PLI TRUST**

With regard to the other Defendants representing the Trust's interest, such, on its face, is more than questionable. The Defendants are viable entities, not limited fund Trusts. They have, obviously, their own economic interests and will act accordingly. What a viable shipowner may be willing to settle for and what the Trustees may be able to settle for and still fulfill the Trust's purpose could very well not align.

The Butler case, cited by the American Club, involved a discharged law firm seeking to intervene to protect a multiple million dollar charging lien, a situation not at all comparable. Butler, Fitzgerald & Potter v. Sequa Corp., 250 F3d 171 (2nd Cir. 2001).

**THE CLAIMS ARE NOT AS CONTINGENT AS SUGGESTED**

A brief clarification of certain statements set forth in the American Club's Background Section portion of the opposition is necessary to provide the Court with a fuller context and understanding of the underlying civil actions, as the American Club speaks to the contingencies of the claims. Reference is made to the administratively dismissed cases of the Claimants. The status and meaning of the administrative dismissal is set forth in Judge Weiner's January 15, 2002 Administrative Order #8, which applies to cases pending in the MDL "including MARDOC, FELA, and tire worker cases." (The MARDOC acronym is referring to the Maritime Docket of cases filed in the United States District Court, N.D. of Ohio.) This order provides in relevant part that:

> 2. Once a case is administratively dismissed, the case will remain <u>active</u> for the Court to continue to entertain settlement motions and orders, motions for amendments to the pleadings, substitutions, and other routine matters not requiring a full hearing. (A copy of this order is attached.)

A settlement program covering the Prudential claims /civil actions pending has been proposed. It is the subject of a motion presently pending before Jude Weiner. All pleadings have been filed and Judge Weiner's heard argument in July, 2004. A decision is anticipated in the near future.[1] The contingencies are not remote. Indeed, the filing of the Declaratory Judgment in and of itself belies this argument.

## ARGUMENT

### I

### RES JUDICATA BARS THE AMERICAN CLUB'S OBJECTION

In 1990 the PLI Disbursement Trustee filed a Declaratory Judgement Action seeking to address and resolve insurance issues/disputes with the American Club.  The Maritime Claimants sought to intervene. The Bankruptcy Court allowed the intervention over the objection of the American Club.

> By Order dated February 26, 1991 Asbestos Claimants were given permission to intervene in the Trustee's Adversary Proceeding as the real parties in interest. In re: Prudential Lines (DiCola v American Steamship Owners Mutual Protection and Indemnity Association, Inc.) 148 BR 720, 735 (Bankr.Ct., SDNY 1992).

The American Club is thus barred by the doctrine of res judicata from seeking to have this question re-litigated, at least with respect to the Trust and the Claimants. To determine whether or not the doctrine of res judicata applies there are four factors to consider:

1. Whether the prior decision was a final judgment;
2. Are the litigants the same parties;

---

[1] The American Club makes reference to these claims being time barred. This issue was previously argued and decided in favor of the Claimants when Judge Weiner allowed the PLI Disbursement Trust to be added as a party defendant to the previously filed cases.

      3.      Whether the prior court was a court of competent jurisdiction; and

      4.      Are the causes of action the same.

Corbit v McDonald Moving Services, Inc., 124 F3d 82, 88 (2nd Cir. 1997); NBN Broadcasting, Inc. v Sheridan Broadcasting, 107 F3d 72 (2nd Cir. 1997). Here the decision on intervention was made by the Bankruptcy Court back in 1991 and not appealed by the American Club. The litigants are the same as intervention is sought here on behalf of Claimants with claims filed with the PLI Disbursement Trust. Finally, at least in significant part, the causes of action (the allocation and deductible issues) are the same. See In re Prudential Lines, Inc. (DiCola, Plaintiff. Asbestosis Claimants Intervenors v. American Steamship Owner Mutual Protection and Indemnity, 158 F3d 65, 83-87 (2nd Cir., 1998); Plaintiffs Second Amended Complaint, Third Cause of Action.

## II

### NEW YORK LAW DOES NOT PRECLUDE INTERVENTION

While the Court need not go beyond the res judicata argument, the substantive argument, will be addressed, in the event the Court should reach it. It is argued that the Maritime Claimants "are not 'beneficiaries' of [the] policies." To argue that the Claimants do not have an interest is to ignore the reality of their situations and how critical the litigation to their obtaining compensation for the injuries sustained, with regard to the Prudential Lines and U. S. Lines cases. Indeed, the Second Circuit, recognized this:

> "It is obvious for reasons previously stated that the claimants are the only persons with an interest in the indemnification from American Club." In re Prudential Lines, 158 F3d 65, 74 (2nd Cir.1998).

The American Club argues that the "weight of authority in this District" precludes

intervention, citing Hartford Fire Co. v. Netlof, 123 F.Supp.2nd 762 (S.D.N.Y. 1999); Nap, Inc. v. Suttletex, 112 F.Supp. 2d 369 (S.D.N.Y. 2000); Richards v. Select Ins. Co., 40 F.Supp. 2d 163 (S.D.N.Y. 1999). The Defendants rely on the same authority. In fact, the District Court in Hartford noted that this was "a case of first impression", as the maritime insurer had initiated the declaration judgment order, which distinguished it from other cases. Hartford Fire co. v. Netlof, 123 F.Supp.2nd at 760.

The present matter is also factually distinguishable from Hartford. According to the American Club's Second Amended Complaint, the "discretionary practice" they are seeking to eliminate began in 1980, at which time Prudential Lines was not in bankruptcy. See Second Amended Complaint #9. The Chapter 11 was filed in November 1986. Case No. 86-B-11713 (Bankr. Ct. S.D.N.Y.) During and throughout the entire bankruptcy proceeding, according to the American Club, this discretionary practice continued. No mention of the now proposed elimination was mentioned or contemplated. The Court approved the reorganization plan, the creation of the Trust and the vote by the Claimants did not take into account that the American Club would change its practice. Whether the Club will obtain the Court's approval, of course, is the subject of this litigation and remains to be seen. But the fact of the matter is, the entire bankruptcy process was premised on the American Club policies being in play. All of this, coupled with the Trusts limited resources, makes this situation far different than the Hartford facts.

Nap Inc. v. Shuttletex, Inc., 112 F2nd 369 (S.D.N.Y. 2000), did not involve an insurer commencing a declaratory judgment. In fact the Nap Court took an extensive look at deBruyne, which did allow intervention, and distinguished it on this basis.

> In *deBruyne*, the court examined the divergence between the two
> State Appellate Departments and expressed the view that the State

6

>Court of Appeals would allow a third-party plaintiff to maintain an action directly against an insurer. However, in that case, the insurer had already commenced its own declaratory judgment action in state court seeking a determination of its obligations. Accordingly, the *deBrune* court qualified the scope of the issue it considered and decided more narrowly to encompass the particular fact that the insurer "has itself instituted a declaratory judgment action with respect to coverage issues relating that party's claims against one of its insureds". *Id*. At *3. *See also Gravatt*, 1998 WL 842351 at *2. Nap v. Shuttletex, 112 F.Supp 2d at 377.

In deBruyne the Court stated,

>While the majority decision in Mount Vernon indicated that the Appellate Division, First Department would not permit a third party to sue an insurance carrier to establish coverage of its claim against one of the carrier's insureds, even though the insured itself commenced a similar declaratory judgment action, the Appellate Division, Second Department held in Tepedinov v. Zurich-American Ins. group, 220 A.D. 2nd 579, 632. N.Y. S. 2nd 604, 605 (1995): A party who is not privy to an insurance contract but would nevertheless benefit from an insurance policy may bring a declaratory judgment action to determine whether the insurer owes a duty of defense and/or coverage under the policy. . .

>To the extent this Court is called on to predict how the highest court in the State of New York would decide this issue, the Court is of the view that it would allow a party, such as Plaintiffs in this action, to maintain an action against an insurer that has instituted a declaratory judgment action with respect to coverage issues relating to that party's claims against one of its insurers. . . A.P. de Bruyne v. Clay, 1997 WL 471039, p.2-3 (S.D.N.Y., 1997).

While Richards did concern a bankrupt entity, there, the insurer did not commence the action. Richards v. Select Insurance Company, Inc., 40 F. Supp.2d 163 (S.D. NY). It is understood that the Courts differ on this issue. Under the facts and circumstances of this case where intervention is requested on behalf of a Trustee with limited funds, where the insurer commenced the action some fourteen years after Plan confirmation, where claimants have already successfully litigated the issue raised, granting this relief is warranted.

Wherefore, it is prayed that the intervention sought be allowed.

> Respectfully Submitted:
>
> s/ Dan Shaked
> DAN SHAKED (DS3331)
> SHAKED & POSNER
> Attorneys for Asbestos Claimants
> 255 West 34th Street, Suite 705
> New York, New York 10122
> (212) 494-0035
>
> and
>
> ALAN KELLMAN
> MARITIME ASBESTOSIS LEGAL CLINIC, a division of
> THE JAQUES ADMIRALTY LAW FIRM, P.C.
> Attorneys for Asbestos Claimants
> 645 Griswold, Ste. 1570
> Detroit, Michigan 48226
> (313) 961-1080

Dated: October 15, 2004