Lawrence J. Bowles (LB 5950)
NOURSE & BOWLES, LLP
Attorneys for Plaintiff
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

AMERICAN STEAMSHIP OWNERS    :   04 Civ. 4309 (LAK)(FMM)
MUTUAL PROTECTION AND    :
INDEMNITY ASSOCIATION, INC.,    :   **AFFIDAVIT OF**
    :   **KARLENE S. JACKSON**
    Plaintiff,    :   **IN SUPPORT OF MOTION**
    :   **FOR ORDER OF SERVICE**
   - against -    :   **BY PUBLICATION WITH**
    :   **BAR DATE**
Alcoa Steamship Co., Inc.    :
and the Other Entities Listed on Exhibit A    :
to the Second Amended Complaint.    :
    :
    :
    Defendants.    :
    :

-----------------------------------------------------X

STATE OF NEW YORK    )
    )ss.:
COUNTY OF NEW YORK    )


    KARLENE S. JACKSON, being duly sworn, deposes and says:

    1.    I am a paralegal/employee of the firm of Nourse & Bowles, LLP, attorneys

for the plaintiff in this action.

2.    I was given the responsibility to effect service of the Second Amended Summons and Second Amended Complaint upon all of the defendants in this matter.

3.    A copy of the Second Amended Complaint is attached hereto as Exhibit 1.

4.    A list of all defendants to be served is Exhibit "A" to Exhibit 1.  Waivers of service were sent out to all defendants listed on Exhibit A to Exhibit 1 on or about July 12, 2004.  Attached as Exhibit 2 hereto is a list of all defendants as to whom the mailed envelopes were either returned by the post office as undeliverable or from whom no response has been received (the "Named Defendants").

5.    Two of the Named Defendants, American Maritime Holdings and Barber Asphalt, are domestic, inactive corporations.  The remaining Named Defendants are foreign state or foreign country corporations who cannot be found in New York.  All attempts to serve Named Defendants have been returned with the advice either that the company is inactive, or can no longer be found at its last known address, and that no forwarding or current address is known, or there has simply been no response.  Copies of several sample service returns are annexed hereto as Exhibit 3.

6.    Throughout August, September and October, I have conducted numerous internet searches to ascertain the correct addresses for these defendants, without success. I have written to postmasters in Florida and Texas seeking forwarding addresses; contacted the plaintiff's agents in Argentina, Brazil, Chile, Ecuador, Greece, Mexico and The Netherlands asking them to check local government and other records and contacted

the Secretaries of State in New York, California, Texas, Florida, Louisiana and Delaware

– all in diligent attempts to locate these defendants.

7.     Despite these efforts I have not, to date, been to locate current addresses for

the thirty defendants listed on Exhibit 2 hereto; and I believe further efforts would be

futile.

8.     I respectfully submit that the only feasible method of service on these

defendants is by publication.

Karlene S. Jackson

Sworn to before me this
*19* day of October, 2004.

Notary Public

MARY T. BANNON
Notary Public, State of New York
31-4785995
New York County
Commission Expires February 28, *2006*

*Exhibit 1*
*to KSJ Affidavit*

Nourse & Bowles, LLP
Attorneys for Plaintiff
Lawrence J. Bowles, Esq. (LB 5950)
One Exchange Plaza
New York, New York 10006
(212) 952-6200
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
                                            :
                                            :
· AMERICAN STEAMSHIP OWNERS                 :
MUTUAL PROTECTION AND                       :       04 CV. 04309 (LAK)
INDEMNITY ASSOCIATION, INC.,                :
                                            :       SECOND AMENDED
                 Plaintiff,                 :       COMPLAINT
                                            :
        - against -                         :
                                            :
                                            :
                                            :
                                            :
                                            :
Alcoa Steamship Co., Inc.                   :
and the Other Entities Listed on Exhibit A  :
hereto,                                     :
                                            :
                 Defendants.                :
                                            :
-------------------------------------------------X

Plaintiff American Steamship Owners Mutual Protection and Indemnity

Association, Inc. ("American Club" or "Club" or "Association" or "Corporation")

by and through its attorneys, Nourse & Bowles, LLP, as and for its complaint

against defendant Alcoa Steamship Co., Inc. and the other entities listed on Exhibit

A hereto, who were members of the American Club before February 20, 1989

(collectively "Defendants"), alleges on information and belief as follows:

## Introduction and Background

1.    This is an action brought by the American Club, a non-profit mutual

indemnity insurance association, pursuant to 28 U.S.C. §2201 for a Declaratory

Judgment that as those Defendants who were members of the Club before the

Insurance Year that commenced on February 20, 1977 and for the Insurance Year

that began on February 20, 1978 did not pay any amounts in premiums or

assessments to the Club with respect to claims for incurred but not reported

occupational diseases of seamen and others (hereinafter "IBNR") during those

years, and as those Defendants who were members of the American Club in the

Insurance Year that commenced on February 20, 1977 and in the Insurance Years

between February 20, 1979 and February 20, 1989 paid assessments to the Club for

IBNR which they knew or should have known might be inadequate to cover such

claims and which now have proved to be inadequate, they are not entitled to any

further indemnifications from the Club with respect to their payments to seamen

and others regarding IBNR occupational disease claims or regarding any other

claims arising in the Insurance Years before February 20, 1989.

2

2.    The above relief is necessary to restore and preserve the requisite mutuality under the Club's By-Laws and applicable New York law between and among the members of the Club before February 20, 1989 and the members thereafter.

3.    The fundamental requirement underpinning a non-profit mutual indemnity insurance association such as the American Club is that its members operate the Club for their own exclusive benefit to provide indemnity insurance to each other at cost. They do this by paying premiums and assessments to the Club, under the members' fully assessable indemnity insurance policies sufficient to provide the funds necessary to indemnify or reimburse each other with regard to reported occurrences which give rise to claims against the members in each separate Insurance Year. That is, when claims against members are reported to the Club, the members must contribute to the Club the funds needed to pay such claims. In most instances, the reported claims are not paid during the Insurance Year in which the alleged injuries occurred. Accordingly, specific reserves are established to indemnify the members with respect to each reported claim (hereinafter "case" reserves), after they resolve and pay those claims.

4.    When the costs of insurance in each Insurance Year have been determined on the basis of known claims, the Year's members are assessed a final

3

amount to cover or reserve against each reported claim, or may be given a refund of any amounts collected in excess of the amount needed to pay or reserve against such claims and this process is generally referred to as "closing" a year.

5.      In connection with the closing of the Insurance Years between 1946 and 1976, the Defendants received refunds of assessments of more than $16 million.

6.      After "closing" an Insurance Year, the Club has no right to seek further assessments from the members for that Year and correlatively those members have no right to obtain further funds from the Club to the extent not covered by the case reserves established for that Year.

7.      After an Insurance Year is closed the Club's reserves, including the case reserves, become the property of the members of the Club in the open years and those members have an obligation to indemnify the closed years' members for their payments of reported claims from the case reserves.  In view of the requirement for mutuality, the members in the open years have no legal obligation to indemnify members in closed years for any unreserved or inadequately reserved IBNR claims that may be made against them.

4

8.    In about the early 1980s, seamen and others working on or about the members' vessels began to assert they had been injured by exposure to asbestos many years earlier, in some cases going back to the 1940s, and by the mid 1980s the assertion of such claims was accelerating, and was expected to continue.

9.    Despite the fact that in the Insurance Years before 1977 the Defendants did not report any such IBNR claims or pay any premiums or assessments to the Club to establish any case or IBNR reserves to cover for amounts they might pay to seamen and others with respect to IBNR claims arising in those long closed years, in about 1980, those Defendants, who were largely the same members of the Club as those in the 1940s and thereafter, developed a practice (which is discretionary, in that it is not provided for in the Club's Charter, By-Laws or insurance policies or in the principle of full mutuality under New York law), of indemnifying each other for IBNR claims from the Club's general reserves. They did so notwithstanding that such reserves were not the property of the members in the closed Years. This discretionary practice included allocating each seaman's or other's claim over the years in which he worked on or about the members' vessels, applying the members' deductibles for each of those years, and indemnifying each other for the balance, if any (the "Discretionary Practice"). At the same time, the Defendants did not assess each other any amounts to establish

any reserves for their continued indemnifications regarding such IBNR claims arising before the Insurance Year that commenced on February 20, 1977.

10.    In 1988, with the closing of the Insurance Year that commenced on February 20, 1977, the Club's directors decided to assess that Year's members the sum of $100,000 for IBNR claims arising in that Year and to make the same assessments in future Years (except for the 1978 Year which had previously been closed).

11.    Through December 31, 2003 the Club's reimbursements to its members regarding occupational disease claims attributable to alleged exposure as far back as the 1940s totaled almost $6 million, while the members' actual contributions to the IBNR reserves have been only $2.2 million.

12.    Thousands of claims by seamen and others are still pending in the Courts; and new claims are being filed and the Club's current members, who, as such, have no obligations to indemnify the Defendants in respect of unreserved or inadequately reserved IBNR claims that arose from occurrences before February 20, 1989, have been inequitably prejudiced by the Discretionary Practice the Defendants developed in about 1980 of indemnifying each other from the Club's general reserves for such claims.  The Discretionary Practice has now become

6

unsustainable and the Club's current members will be further inequitably prejudiced if this Discretionary Practice continues, which it should not.

13.    The Club has informed the Defendants that it has terminated this Discretionary Practice and will no longer indemnify them with respect to IBNR claims arising before February 20, 1989.   To date several Defendants have objected to the Club's position and threatened litigation, and other Defendants may do the same.  Several Defendants also object to that part of the Discretionary Practice involving allocation of claims to the Years the seamen worked on the members' vessels and requiring the members to absorb multiple deductibles. Several have commenced or have threatened to commence litigation regarding the Club's position on this also.  Accordingly, actual justiciable controversies exist.

## The Parties

14.    The American Club is a non-profit mutual indemnity insurance association of shipowners organized and existing under laws of the State of New York with its principal place of business in New York, New York.

15.    The Defendants listed on Exhibit A hereto are corporations or other business entities organized and existing under the laws of various states. Defendants were members of the Club at various times between about 1940 and February 20, 1989.

7

## Jurisdiction and Venue

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1333(1) because it is an admiralty or maritime claim (involving marine insurance contracts) within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.  In addition, the Court has supplemental jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1367(a).

17.     Venue in this judicial district is proper because: (a) at all relevant times, Defendants were and are doing business in this judicial district; (b) the policies were negotiated and delivered in this judicial district; and (c) some of the policies issued to the Defendants specifically require the application of New York law.

## Managing the Club

18.     Pursuant to its Charter and By-Laws, the business of the American Club is conducted by its Board of Directors.

19.     A majority of the Board members must be either members of the Club or officers of members.  Board members may have equity interests in their shipowning/operating companies and/or hold senior executive positions therein. Directors are elected by the membership each year at the Club's annual meeting.

8

20.     The Chairman of the Board of Directors, who must be a member or an officer of a member, is elected at each annual meeting of the members.  He is the chief executive officer of the Club.  He presides at all meetings of the members and directors and has general charge and oversight of the business of the Club and its affairs.

21.     To assist the Chairman and the Board of Directors in carrying out their duties, the Board of Directors appoints a Finance Committee of its members.  The Finance Committee functions as an executive committee and makes recommendations to the Chairman and the Board of Directors.

22.     The American Club's day to day affairs are managed by Shipowners Claims Bureau, Inc., (the "Managers" or "SCB").  The Managers provide underwriting, claims handling, accounting and related services to the Club.

23.     The Managers, who are appointed by the Board of Directors and paid by the Club's members, are subject to the direction and control of the members through the Board of Directors.

### Insurance Policies

24.     The American Club issues one-year fully assessable marine protection and indemnity insurance policies (covering defined marine risks) to each of that Insurance Year's participating members (the "Policies").

### Mutuality – Contingent Liability for Assessment of All Insurance Costs

25.     The members of the American Club, through their payments to the Club under their fully assessable Policies, collectively and mutually indemnify each other for all known and reserved claims occurring in each Insurance Year, except for catastrophic claims which are covered by reinsurance collectively purchased by those members.

26.     Each Policy issued prior to February 20, 1989 contained substantially the following provision:

> ASSESSABILITY.   The Assured are subject to a contingent liability hereunder for assessment without limit of amount for their proportionate share of any deficiency or impairment as provided by law and fixed in accordance with the By-Laws of the Association; provided, however, that any such assessment shall be for the exclusive benefit of holders of policies which provide for such a contingent liability, and the holders of policies subject to assessment shall not be liable to assessment in the amount greater in proportion to the total deficiency than the ratio that the deficiency attributable to the assessable business bears to the total deficiency. (Emphasis added)

10

27.    Under New York law and pursuant to the American Club's By-Laws, members (who are both insurers and insureds) remain members while the Policies are effective to insure risks.  They are entitled and required to be treated by, and to treat, the Club on a mutually fair and equitable basis so that (a) all members for an Insurance Year pay their fair share of the liabilities incurred in that Insurance Year, (b) no member for any Insurance Year receives inequitably different treatment than any other member for that Insurance Year, and (c) the members individually and as a whole for any Insurance Year do not receive inequitably different treatment than the members individually and as a whole for any other Insurance Year.

28.    Prior to the commencement of each Insurance Year, the American Club, through its Managers, and in conjunction with each member, estimates the estimated total cost ("ETC") of insurance for each member for the forthcoming Insurance Year.  The ETC is based principally upon the member's historical loss experience as reported by each member or prospective member.  Each member's ETC represents its share of the Club's aggregate ETC for that policy year and is charged to them in the form of an advance call and subsequent assessments.  The ratio of each member's ETC to the aggregate ETC determines that member's proportion of the aggregate ETC, advance call, and subsequent assessments.  Accordingly, the higher any member's ETC is, the higher will be its proportion of the aggregate Club ETC, advance calls, and assessments.  Since each member's

11

liability for and proportion of the ETC, advance calls and assessments is based

principally on that member's reported loss experience, it is fundamental to the

requisite mutuality that such loss experience, including all claims which may result

in loss, etc., for which the Club may become liable, be promptly reported to the

Club to permit proper evaluation and the determination of the appropriate ETC for

each relevant Insurance Year.

### Other Relevant Policy Provisions

29.    Each Policy contained substantially the following additional

provisions:

> Prompt Notice of Claim.
>
> In the event of any happening which may result in loss, damage or expense for which the Association may become liable, prompt notice thereof, on being known to the Assured, shall be given by the Assured to the Association.
>
> Time Bar.
>
> (a)  The Association shall not be liable for any claim not presented to the Association with proper proofs of loss within one year after payment by the Assured.
>
> (b)  In no event shall suit on any claim be maintainable against the Association unless commenced within two yeas after the loss, damage or expense resulting from liabilities, risks, events, occurrences and expenditures specified under this policy shall have been paid by the Assured.

12

30.     Each Policy also contained endorsements stating the sum insured or policy limit as well as the amount of the "deductions" or deductibles or self insured retentions for different classes of claims.  (The higher the deductibles, the lower the member's ETC.)

31.     Until 1972, the policies were issued for a calendar year or part thereof. In 1972 and thereafter, the policy years commenced at 1201 GMT on February 20th, running to 1200 GMT February 20th the following year (the "Insurance Year" or "Policy Year").

32.     By accepting membership in the Club, members agree to be bound by all of the terms and conditions of the Policies, the Club's Charter, its By-Laws, and applicable New York law.

## Regulating the Club

33.     The American Club is regulated by the Insurance Department of the State of New York and must comply with all relevant provisions of New York law, including, without limitation, Insurance Law Sections 1211 and 4111.

34.     Insurance Law Section 1211 states in material part:

> (a)  Every domestic mutual insurance corporation shall be organized, maintained and operated for the benefit of its members as a non-stock corporation.  Every policy

13

holder shall be a member of such corporation and shall
... be entitled to vote at any regular or special meeting of
such corporation, to notice thereof pursuant to the By-
Laws and to share equitably in dividends declared by the
Board of Directors.

35.    Insurance Law Section 4111 states in material part:

(a)... every domestic mutual property/casualty insurance
company shall in its by-laws and policies prescribe the
contingent mutual liability of its members for the
payment of assessments, in such a way that each member
shall be liable to pay the member's proportionate share
... of the amount of any assessment or assessments
permitted for any purpose under any provisions of this
chapter ... or necessary to make good any impairment of
the minimum surplus of such company.

36.    The Club's By-Laws, as required by New York law, contain the

following provisions:

Article V.   Policies, Dividends and Assessments

SECTION 1.  All policies issued by the Corporation shall
either be assessable or non-assessable, and every policy
shall clearly state whether or not the holder of such
policy is subject to a liability for assessment.   The
policies which are subject to a liability for assessment
shall contain a clear statement of the liability of the
policy-holder for the payment of his proportionate share
of any deficiency or impairment as provided by law
within the limit provided by the policy, and shall further
state that any assessment shall be for the exclusive
benefit of holders of policies which provide for such a
contingent liability, and the holders of policies subject to
assessment shall not be liable to assessment in an amount
greater in proportion to the total deficiency than the ratio

14

> that the deficiency attributable to the assessable business bears to the total deficiency. \*\*\*
>
> SECTION 2.  The assessable policies of the Corporation may be issued without any maximum or limit of the Corporation's total liability thereunder to the member. \*\*\*
>
> SECTION 3.  For the purposes of declaring dividends and making assessments the business of the Corporation shall be divided into insurance years ... and the financial results of the insurance years shall be segregated as to business under assessable policies and business under non-assessable policies.

37.    Each Insurance Year is thus a separate accounting unit which typically involves different members and/or members with different proportionate shares of the total ETC premiums and assessments paid that year.

### Notification of Claims

38.    As noted above, in the event of any happening which may result in loss, damage or expense for which the Club may become liable under the Policy terms, each member is obligated to give prompt notice thereof to the American Club.

39.    Claims against shipowner members of the Club by seamen and other claims by other persons or entities frequently are first asserted after the termination of the Insurance Year(s) in which the alleged injury or illness or incident occurred. If the Insurance Year is "open", a reserve for each such claim must be established,

15

and the members in that Insurance Year must be assessed to provide such reserve,

i.e. case reserves.  Each such claim will also be included in the member's loss

record and considered in determining his ETC premiums and assessments in future

Insurance Years.

### "Closing" Insurance Years

40.    The Club's By-Laws contain the following or substantially similar

provisions regarding "closing" Insurance Years:

> Article V.   Policies, Dividends and Assessments
>
> SECTION 4.  From time to time after the termination of each insurance year, when the Manager shall determine that it is practicable to estimate with a reasonable degree of certainty the minimum, probable or final surplus or deficiency resulting from all of the Corporation's insurances in effect during such insurance year, the Manager shall place before the Board of Directors a statement of such financial results of such insurances, segregated between assessable and non-assessable business.  After receipt of any such statement, the Board of Directors from time to time may (a) fix and determine an amount to be declared and paid as a partial or final dividend, after retaining such sums as they may deem necessary to meet outstanding policy obligations or for the maintenance of reserves and surplus of the Corporation, or (b) order an interim or the final assessment to be made against the holders of assessable policies, fix the due date of such assessment, determine the rate of interest that shall be added to and become a part of any delinquent assessment, and otherwise provide for enforcement or collection thereof.  Any dividend declared or any assessment levied shall be based solely

16

on such surplus or such deficiency, respectively, resulting from the assessable business for the insurance year. All dividends declared and all assessments levied shall be distributed or spread in the ratio that the net premiums paid by the holder of an assessable policy bear to the net premiums paid by all holders of assessable policies for the insurance year. ... In any case, however, all actions of the Board of Directors in respect of dividends or assessments shall conform with the Law and with the Charter and By-Laws of the Corporation.

41.    The process described in Article V, Section 4 of the Club's By-Laws is generally referred to as "closing" a Policy or Insurance Year.

42.    After "retaining such sums as" the Board "deems necessary to meet outstanding policy obligations", i.e., obligations regarding known claims for a designated Insurance Year or "case" reserves, "or for the maintenance of reserves and surplus" of the Club, the Board may declare a "dividend" to be returned to the members, or an "assessment" to be "made" or levied upon them.

43.    Until about 1989, Insurance Years were typically "closed" up to about 10 years after their terminations.

44.    Between Insurance Years 1946 and 1976, the members in those years received refunds of assessments or dividends from the Club of more than $16 million, and the only case reserves were those established for reported claims - no IBNR reserves were established.

### Assertion of Late Manifesting Occupational Injury Claims

45.    Asbestos disease claims of seamen, and others based on alleged exposure to asbestos while employed on or about members' vessels first came to the Club's attention in about the early 1980s.

46.    Those claims usually involved more than one Insurance Year and frequently involved alleged exposure to asbestos during the seaman's employment on members' vessels many years earlier, in the 1940s, 50s and 60s. By the mid 1980s, thousands of such cases had been filed in the courts, including many against the Club's shipowner members.

### The Club's Discretionary Practices

47.    Notwithstanding that no case or IBNR reserves had been established to indemnify the members regarding payments to seamen and others for occupational disease claims allegedly resulting from exposures during closed Insurance Years, the Club's membership, which had changed relatively little since the 1940s, requested indemnifications for their costs of resolving these claims. In about 1980 the Discretionary Practice was developed to indemnify the members from the Club's general reserves including (a) allocating the amounts paid by the members to each seaman proportionately over the Insurance Years during which the seaman worked on the members' vessel(s), based upon the seaman's sea

18

service each year, (b) applying to each year's proportion of the claim the
applicable deductible for each such Insurance Year, and (c) reimbursing or
indemnifying the member for the amounts it paid to the seaman and for legal
expenses, less the deductibles as thus applied.

48.    After the potential seriousness of these late manifesting claims began
to become known, in about the mid 1980s, proposals were made by the Managers
and Board members to set aside funds as each open Insurance Year was closed to
provide reserves for such Years to cover these newly discovered IBNR claims that
they expected would be asserted in future years.

49.    In connection with the closing of Insurance Year 1977, the Board of
Directors ordered that a reserve of $100,000 per year be established to cover
possible IBNR occupational disease claims arising in that Year.  The Managers,
who had recommended a larger yearly reserve, also recommended that the amount
be reconsidered periodically for adequacy.

50.    When the decision to reserve $100,000 for IBNR per closed Insurance
Year was made, the 1978 Insurance Year had already been closed and no IBNR
reserve had been established for that year.  The same assessment has been made as
each Insurance Year from 1979 through February 20, 1999 has been closed.  No

19

effort was made to assess members to establish IBNR reserves for previously closed Insurance Years.

51.    For exposures to seamen allegedly occurring entirely after February 20, 1989, the Board, in late 1989, also decided that the allocation and multiple deductible parts of the Discretionary Practice would no longer apply, as the American Club had joined the International Group of P&I Clubs, effective that date, and by doing so, the American Club obtained access to reinsurance for its members on more favorable terms than were previously available. However, as the International Group is also a mutual insurance association of P&I Clubs, the Club was required to conform to the International Group's practice in dealing with members' claims resulting from settling the occupational injury claims of seamen.

52.    The International Group's practice was, and is, to apply the single deductible from the most recent indemnity policy held by the shipowner member, even if the alleged exposure overlapped more than one Insurance Year. As deductibles have generally increased over time, the most recent deductible was likely to be the largest deductible in any indemnity policy held by a Club's member.

**Continued Indemnifications to Defendants
Under the Discretionary Practice for Insurance Years
Before February 20, 1989 Will Inequitably Reduce
the Club's General Reserves in an Unsustainable Amount**

53.    Since about 1980, Defendants have sought and received

indemnifications from the American Club regarding their resolutions of the IBNR

claims of hundreds of seamen who worked on their vessels since about 1940.

Those reimbursements, as of December 31, 2003, totaled almost $6 million.  The

bulk of that sum relates to alleged exposures of seamen to asbestos on members'

vessels prior to Insurance Year 1977.  Meanwhile, for the closed Insurance Years

through February 20, 2000, the members contributed only $2.2 million to the

Club's reserve for IBNR.

54.    Over 6,000 seamen's asbestos cases are pending in the courts in

Cleveland and Detroit, alone.  Many other such cases are pending in other courts

around the United States and additional cases are anticipated.  Other forms of

occupational disease claims have been asserted by seamen and others and will

likely continue to be asserted in the future for occupational diseases/injuries

allegedly occurring in closed Insurance Years, including claims for (a) alleged

hearing losses (b) leukemia arising from alleged exposure to benzene, (c) other

diseases related to exposures to other chemical products, (d) exposures to lead,

21

sandblasting grit and fumes from welding operations, and (e) other types presently unknown.

55.     It is unknown how many more seamen and others will succeed on previously filed or new claims against the American Club's members in the Insurance Years prior to February 20, 1989; and as no case or IBNR reserves were established for the Insurance Years prior to 1977 and the limited reserves established for IBNR claims for the Insurance Year 1977 and the Insurance Years 1979 through February 20, 1989 are now known to be plainly inadequate, it is obvious that if the current drain on the Club's general reserves continues, the Club's general reserves, at least those accumulated before February 20, 1989, will continue to decrease and could be depleted.  Such drain is inequitably prejudicing the Club's members in the currently open Insurance Years and will continue to do so in future Insurance Years.   Such members who are largely different entities from those in the Insurance Years before February 20, 1989, had and have no legal or other obligation to indemnify or reimburse the Defendants for unreserved or inadequately reserved IBNR occupational disease claims attributable to the closed Insurance Years prior to February 20, 1989.

56.     Not only are there no provisions for the Discretionary Practice in the Club's Charter, By-Laws, Policies or New York law, such practice if further

continued would be contrary to the applicable provisions of the By-Laws and New York law as outlined above.

57.    On May 25, 2004 the Board of Directors resolved that the Club would terminate the Discretionary Practice, effective immediately, and will no longer indemnify Defendants with respect to IBNR claims for occupational diseases arising in closed Insurance Years before February 20, 1989. This will ameliorate the prior inequitable situation and fairly avoid the further inequitable drain created thereby upon the Club's general reserves. The Defendants were promptly informed of the Club's decision and, to date several have objected thereto.

## Other Issues in Dispute

58.    In the meantime, several of the Defendants, including Keystone Shipping Company and its related entities ("Keystone") and other defendants have demanded a retroactive partial modification of the Discretionary Practice in that instead of allocating the seamen's claims over the years in which they worked on the members' vessels, applying the members' deductibles for those years and then reimbursing the members for the balance, if any, they have demanded the right to designate one Insurance Year's policy to cover each seaman's entire claim and absorb only one deductible (presumably an Insurance Year with the lowest deductible) and be reimbursed in respect of the deductibles in excess of one which

23

they have applied with respect to each of numerous such claims resolved to date and also apply this approach with regard to future seamen's claims. Keystone has sued the Club with respect to this part of the Discretionary Practice and other former members have threatened litigation also.

59.    If the Court approves the termination of the Discretionary Practice, as it should, the Club will have no obligation to indemnify the Defendants for any parts of such claims, and the demands of those Defendants seeking the retroactive and future partial modifications of the Discretionary Practice described above will become moot.

60.    If the Court holds that the Discretionary Practice must continue, which it should not, the Club should be permitted to continue that part thereof regarding allocation of claims and application of multiple deductibles, as that part of the Discretionary Practice is consistent with New York law. See, e.g., Consolidated Edison Co. of NY v. Allstate Insurance Company, et al., 746 NYS 2d 622 (NY 2002).

61.    In any event, the retroactive partial modification of the Discretionary Practice demanded by some Defendants is barred in whole or in part by the applicable statute of limitations and/or by the doctrines of laches and/or waiver.

# FIRST CAUSE OF ACTION

## Declaratory Judgment

### (The Club is Entitled to Terminate
### The Discretionary Practice)

62.     The American Club repeats and realleges the allegations contained in

paragraphs 1 through 57 as if fully set forth herein.

63.     As a result of the foregoing and the objections of some of the

Defendants with respect thereto, an actual and justiciable controversy exists

between the American Club and Defendants with respect to the termination of the

Discretionary Practice.

64.     The American Club seeks a judicial declaration by this Court that it is

entitled to terminate the Discretionary Practice with respect to IBNR claims arising

in closed Insurance Years before February 20, 1989 to restore and preserve the

mutuality between its members before that date and thereafter as required by the

Club's By-Laws and New York law.

WHEREFORE, the American Club requests that this Court (a) declare that it

is entitled to terminate the Discretionary Practice as to IBNR claims arising in

closed Insurance Years prior to February 20, 1989 for the reasons as described

above, and (b) award the Club its attorneys' fees and costs expended in connection

with this action and such other and further relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION

### (Alternative Declaratory Judgment)

### (Action to Restore Mutuality)

65.    The American Club repeats and realleges the allegations contained in paragraphs 1 through 57 as if fully set forth herein.

66.    If, hypothetically, Defendants are held entitled to any further indemnifications with respect to alleged IBNR occurring during the Insurance Years before February 20, 1989, which should be denied, there would result gross inequities between the members of the Club before that date and after that date unless the Club may take appropriate steps to restore the requisite mutuality among all of its members in all Insurance Years as its Board of Directors may reasonably determine.  Such steps, *inter alia*, would in substance include ordering "closed" Insurance Years "reopened" for the limited purpose of achieving equitable reimbursement as to each Defendant's claim for indemnification for IBNR claims arising before February 20, 1989 by calculating the amounts in which each relevant Insurance Year should respond to such Defendant's claim, levying the appropriate assessments against each member for that Year (including such Defendant),

26

collecting those assessments to the extent reasonably possible, and reimbursing such Defendant from such collections, less a debit against such Defendant in the amount of the assessment against it plus the administrative cost to the Club of the process.

67.    As a result of the foregoing, an actual and justiciable controversy exists between the American Club and Defendants with respect to the rights and obligations of each.

68.    The American Club seeks a judicial declaration by this Court that if, hypothetically, Defendants are held entitled to any further indemnifications with respect to alleged IBNR occurring during the Insurance Years before February 20, 1989, which should be denied, then the American Club is entitled and required to restore the requisite mutuality and equities between and among all of its members in all Insurance Years in the manner outlined above.

WHEREFORE, the American Club requests that this Court (a) declare that if Defendants are held entitled to any further indemnifications with respect to alleged IBNR occurring during the insurance years before February 20, 1989, that the American Club is entitled and required to restore the requisite mutuality and equities in the manner outlined above and (b) award the American Club its

27

attorneys' fees and costs expended in connection with this action and such other

and further relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION

### (Further Alternative Declaratory Judgment)

### (Allocation of Claims and Application of Multiple Deductibles)

69.     The American Club repeats and realleges the allegations contained in

paragraphs 1 through 61 as if fully set forth herein.

70.     If, hypothetically, Defendants are held entitled to any further

indemnifications with respect to alleged IBNR occurring during the Insurance

Years before February 20, 1989, which should be denied, the Club should also be

held entitled to continue its current Discretionary Practice, as more fully described

above, of allocating each seaman's or other's claim over the years he worked on or

about the members' vessels, applying the members' deductibles for each of those

years and indemnifying the members for the balance, if any.

71.     As a result of the foregoing, and the objections and actions of some of

the Defendants with respect thereto, an actual and justiciable controversy exists

between the American Club and some of the Defendants with respect to the rights

and obligations of each.

28

WHEREFORE, the American Club requests that this Court (a) declare that if Defendants are held entitled to any further indemnifications with respect to alleged IBNR occurring during the Insurance Years before February 20, 1989, that the American Club is also entitled to continue its current Discretionary Practice in the manner outlined above and (b) award the American Club its attorneys' fees and costs expended in connection with this action and such and other further relief as this Court deems just and proper.

Dated:     New York, New York
           July 8, 2004

                              NOURSE & BOWLES, LLP
                              Attorneys for Plaintiff


                    By:_____
                              Lawrence J. Bowles, Esq. (LB 5950)
                              One Exchange Plaza
                              New York, New York 10006
                              (212) 952-6200


TO:   Defendants Listed on
      Exhibit "A" Hereto

EXHIBIT "A"

To the following Defendants and each of their predecessors and related companies who were members of the American Steamship Owners Mutual Protection and Indemnity Association, Inc. between 1946 and February 20, 1989:

Academy Tankers Inc.
Canterbury Shipping Corp.
National Oil Transport Co.
c/o Secretary of State
Townsend Building
Dover, DE  19901

Alcoa Steamship Co., Inc. as Successor to
Lib-Ore Steamship Company, Inc.
Pan-Ore Transportation, Inc.
Reynolds Metals Company
201 Isabella Street
Pittsburgh, PA  15212

Amerada Hess as Successor to
Hess Oil and Chemical Corp.
1185 Avenue of the Americas
New York, NY  10036

American Maritime Holdings Inc.
39 Broadway
New York, New York  10006

American Maritime Holdings Inc.
Sea Mobility Inc.
World Wide Tankers Inc.
c/o US Corporation Company
2711 Centerville Road, Suite 400
Wilmington, DE  19808

APL, Ltd. as Successor to
American Mail Line
American President Lines, Inc.
1111 Broadway Street, 6th floor
Oakland, CA  94607

American Steamship Company
500 Essjay Road
Williamsville, NY 14221

Apex Oil Co., Inc.
8182 Maryland Avenue
St. Louis, MO  63105

Apex Oil Co., Inc.
3314 River Road
P.O. Box 3127
Wilmington, NC  28403

Aremar C.I.F.S.A
Viamonte 494
9 Piso
1053 Buenos Aires, Argentina

Argosy Offshore Ltd.
1010 Milam
Houston, TX  77002

Argosy Offshore Ltd.
c/o CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA  70809

Arpez S.A.
Calle Venezuela 110
1095 Buenos Aires, Argentina

Astra Compania Argentina de Petroleo S.A.
Tucuman 744
11th floor
1049 Buenos Aires, Argentina

Atlantic Richfield Company
515 South Flower Street
P.O. Box 2679
Los Angeles, CA  90071

Atlantic Richfield Indonesia Inc.
Landmark Center Tower B
Jl. Jenderal Sudirman Kav. 70A
P.O. Box 1063
12910 Jakarta Java, Indonesia

Avila y Pizarro Compania Ltda.
Agents for Van Gogh Inversiones SA
Blanco 570
Valparaiso Chile

Avon Steamship Co. Inc.
Agents for Amherst Shipping Inc.
410 Lakeville Road, Rm. 201
Lake Success, NY  11040

Barber Asphalt Corp.
c/o CT Corporation System
277 Park Avenue
New York, NY  10017

Barge Transport Company
P.O. Box 2569
1812 Durham Drive
Houston, TX  77252-2569

Bermuda Atlantic Line Ltd.
P.O. Box 1198
Hamilton 5, Bermuda

Bermuda Atlantic Line Ltd.
760 N.E. 7th Avenue
Dania, FL  33004

Bessemer Trust Co. as Successor to
Howard Phipps, Ogden Phipps,
David Layman, Jr., Bessemer Trust Co.,
Bessemer Securities Corp.
Grosvenor-Dale Co., Inc.
630 Fifth Avenue
New York, New York 10111-0333

BP as Successor to
American Oil Company
Standard Oil Company
Sohio Alaskan Petroleum Co. and
SPC Shipping Inc.
28100 Torch Parkway
Warrenville, IL 60555

Bridgeport & Port Jefferson Steamboat Co.
102 West Broadway
Port Jefferson, NY  11777

Brokerage & Management Corp.
90 Broad Street, 24th floor
New York, NY  10004

Caribbean Steamship Co. S.A.
P.O. Box 2568
Corpus Christi, TX  78403

Central Gulf Lines as Successor to
Central Gulf Lighters
Poydras Center
650 Poydras Street, Suite 1700
P.O. Box 53366
New Orleans, LA  70153

ChevronTexaco Corporation as Successor to
California Oil Company
6001 Bollinger Canyon Rd.
San Ramon, CA 94583

Cleveland-Cliffs, Inc. as Successor to
Cleveland-Cliffs Steamship Company
1100 Superior Avenue
Cleveland, OH  44114

Coal Logistics Corporation
30 Skyline Drive
Lake Mary, FL  32795

Coastal Carriers Inc.
1607 Belle Chasse Highway
Belle Chasse, LA  70037

Coastal Carriers Inc.
c/o Clayton Ragas
216 Ft. Jackson Street
Belle Chasse, LA 70037

Companhia de Navegacao Maritima Netumar
Avenida Presidente Vargas 482
22 Andar
Rio de Janeiro, 2000RJ Brazil

Crest Tankers Inc.
8182 Maryland Avenue
St. Louis, MO 63105

Dillingham Construction World Headquarters
1020 Serpentine Lane Suite 110
Pleasanton, CA 94566

Dillingham Construction Corporation
5960 Inglewood Drive
P.O. Box 1089
Pleasanton, CA 94566

The Dow Chemical Company
2030 Dow Center
Midland, MI 48674

Carolyn S. Schwartz, Esq.
Office of United States Trustee
Of Enron Corporation
33 Whitehall Street
21st Floor
New York, N. Y. 10004

Empresa de Navegacion El Faro
Calle Lavalle 388
1047 Buenos Aires, Argentina

Equistar Chemicals, LP as Successor to
Cuba Distilling  Company
National Distillers Products Corp.
300 Doremus Avenue
Newark, NJ 07105

Euro Gulf International
c/o Diamond State Corp. Agents Inc.
1200 North Broom Street
Wilmington, DE 19806

Federal Transport Company, Inc.
c/o Del Monte Fresh Produce Company
P.O. Box 149222
Coral Gables, FL 33114

Foss Maritime Company
c/o Saltchuk Resources, Inc.
660 West Ewing St.
Seattle, WA 98119

Georgia-Pacific Corporation
133 Peachtree Street, NE
Atlanta, GA  30303

Georgia-Pacific Corp.
P.O. Box 105605
Atlanta. GA  30348

Global Bulk Transport Inc.
280 Park Avenue
New York, New York  10017

Grace Lines, Inc./Prudential Lines, Inc.
c/o PLI Disbursement Trustee
Lee J. DiCola, Esq.
2800 Carrington Street NW
North Canton, OH 44720

Gulf International Marine Inc.
c/o Gil Anthony Hebert
437 Menard Road
Houma, LA  70360

Hendry Corporation
P.O. Box 13228
Tampa, Florida 33681-3228

Inland Lakes Management Inc.
112 West Chisolm
P.O. Box 646
Alpena, MI  49707

Ispat Inland Inc.
3210 Watling Street
East Chicago, IN  46312

Keyspan Corporation as Successor to
Eastern Gas and Fuel Associates and
1 Metrotech Center
Brooklyn, NY  11201

Keystone Shipping Co.
1 Bala Plaza East, Suite 600
Bala Cynwyd, PA  19004

    Baldbutte Shipping Company
    1 Bala Plaza East, Suite 600
    Bala Cynwyd, PA  19004

    Calendar Navigation Corp.
    1 Bala Plaza East, Suite 600
    Bala Cynwyd, PA  19004

    Chas. Kurz & Co., Inc.
    1 Bala Plaza East, Suite 600
    Bala Cynwyd, PA  19004

    Chestnut Shipping Corp.
    1 Bala Plaza East, Suite 600
    Bala Cynwyd, PA  19004

    Chilbar Shipping Co.
    1 Bala Plaza East, Suite 600
    Bala Cynwyd, PA  19004

    Fredericksburg Shipping Co.
    1 Bala Plaza East, Suite 600
    Bala Cynwyd, PA  19004

    Keystone Tankship Corporation
    1 Bala Plaza East, Suite 600
    Bala Cynwyd, PA  19004

    Margate Shipping Co.
    1 Bala Plaza East, Suite 600
    Bala Cynwyd, PA  19004

    New England Collier Co.
    1 Bala Plaza East, Suite 600
    Bala Cynwyd, PA  19004

    Paco Tankers Inc.
    1 Bala Plaza East, Suite 600
    Bala Cynwyd, PA 19004

Timbo Shipping Ltd.
1 Bala Plaza East, Suite 600
Bala Cynwyd, PA  19004

Kimberly-Clark Corporation as Successor to
Scott Paper Company
Dept. INT
P.O. Box 2020
Neenah, WI 54957-2020

Kirby Inland Marine, Inc. as Successor to
Hollywood Marine, Inc.
55 Waugh Drive, Suite 1000
Houston, TX  77007

Lafarge North America Inc. as Successor to
Huron Transportation, Inc.
12950 Worldgate Drive, Suite 600
Herndon, Virginia 20170

Marifran International S.A.
Calle Paraguay 577
4 Piso
Buenos Aires, 1057 Argentina

Marifran International S.A.
Avenida 25 de Mayo 401
1002 Buenos Aires, Argentina

Marine Transport Lines, Inc.
Managers for Marine Interests Corp. and
Union Marine Transport Co.
Agents for Marine Chemical Navigation Corp.,
Marine Sulphur Shipping Corp. and Oswego
Tanker Corp.
1200 Harbor Blvd., C-901
Weehawken, NJ  0708

Mathiasen's Tanker Industry Inc.
8182 Maryland Avenue
St. Louis, MO  63105

McAllister Brothers Inc. as Successor to
Outreach Marine Corporation
17 Battery Place, 15th floor
New York, NY  10004

Mu-Petco Shipping Co. Inc.
New Jersey Barging Corp. (Del.)
Texas City Refining Inc.
c/o The Corporation Trust Co.
Corporation Trust Center
1209 Orange Street
Wilmington, DE  19801

National Gypsum Co.
2001 Rexford Rd.
Charlotte, NC 28211

Nedbarges Sublift BV
Westmolenstraat 1
Lange Haven, 3111 BS Schiedam
Netherlands

Nicor Inc. as Successor to
National Marine Service Inc.
Lake Tankers Corporation
1209 Orange Street
Wilmington, DE 19801

Companhia de Navegacao Maritima Netumar
d/b/a Netumar Lines
c/o Stacey L. Meisel, Esq.
Trustee in Bankruptcy
Becker Meisel LLC
Eisenhower Plaza II
345 Eisenhower Parkway
Suite 2800
Livingston, NJ 07039

Offshore Express Inc.
438 Menard Road
P.O. Box 2666
Houma, LA  70361

Oglebay Norton as Successor to
Columbia Steamship Company Inc.
North Point Tower
1001 Lakeside Avenue, 15th Floor
Cleveland, OH 44114

Ormet Corporation
1233 Main Street, Suite 4000
Wheeling, WV  26003

Oscar Transportation Group
97, Akti Miaouli
185 38 Piraeus, Greece

Puerto Rico Maritime Shipping Authority
Building No. 123
Fleet and Bombay Streets
Elizabeth, NJ  07208

Resolve Maritime Corporation
436 SW 8th Street, Suite 206
Miami, FL  33130

Resolve Maritime Corporation
c/o Charles Lea Hume
25 W. Flagler Street
5th fl., City National Bank Building
Miami, FL  33130
Royal P&O Nedlloyd N.V. as Successor to
Farrell Lines Inc.
Farrell Lines (Lighters)
One Meadowlands Parkway
East Rutherford, NJ 07073

S.C. Loveland Co., Inc.
P.O. Box 368
Supawna Road
Pennsville, NJ  08070

Sabine Towing & Transportation Co., Inc.
7200 Highway 87 East
Port Arthur, TX  77642

SEI II Equipment Inc.
(f/k/a Shearson Equipment Management)
745 7th Avenue
New York, New York  10019

Seaport Harbor Cruise Lines, Inc.
17 Battery Place
New York, NY  10004

Tecomar S.A.
Avenida 39 Ote. No. 1204A
Col Anzures
Puebla, 72530 Mexico

Tecomar S.A.
Benjamin Franklin 232
Mexico DF 11800

Texas City Refining Inc.
P.O. Box 1271
Texas City, TX  77592-1271

Trade & Transport Inc.
61-65, Filonos Street
P.O. Box 104
Piraeus Greece

Trafluen Compania Armadora SA
7° Piso, Oficina 52
San Martin 50
1004 Buenos Aires
Argentina

Transfrimar SA
6° Piso
Colon 602
Guayaquil, Ecuador

Trinidad Corporation
8182 Maryland Avenue
St. Louis, MO  63105

Tropigas Inc.
2151 LeJune Road
Coral Gables, FL 33134

Union Carbide Corporation,
A Subsidiary of The Dow Chemical Company
P.O. Box 4393
Houston, Texas 77210

Union Carbide Corp.
100 Lighting Way, Suire 402
Secaucus, NJ  07094

United States Maritime Administration
U.S. Department of Transportation
400 7th Street, SW
Washington, D.C. 20590

John T. Paulyson, Trustee
United States Lines, Inc. &
United States Lines (S.A.) Inc.
184-186 North Avenue East, Suite 103
Cranford, NJ 07015-2488

Verizon Communications as Successor to
New York Telephone
1095 Avenue of the Americas,
New York, New York  10036

Waterman Steamship Corp.
One Whitehall Street
New York, NY  10004

Weeks Marine Inc. as Successor to
American Dredging Company
4 Commerce Drive
Cranford, NJ 07016

West India Shipping Co., Inc.
Agents for West India Industries, Inc.
18th fl., Great Southwest Building
1314 Texas Street
Houston, TX  77002

# *Exhibit 2*
# *to KSJ Affidavit*

## LAST KNOWN ADDRESS

| | |
|---|---|
| Academy Tankers Inc.<br>C/o Secretary of State<br>Townsend Building<br>Dover, DE 19901 | American Maritime Holdings Inc.<br>39 Broadway<br>New York, NY 10036 |
| American Maritime Holdings Inc.<br>C/o US Corporation Company<br>2711 Centerville Road, Suite 400<br>Wilmington, DE 19808 | Argosy Offshore Ltd.<br>c/o CT Corporation System<br>8550 United Plaza Blvd.<br>Baton Rouge, LA 70809 |
| Argosy Offshore Ltd.<br>1010 Milam<br>Houston, TX 77002 | Arpez S.A.<br>Calle Venezuela 110<br>1095 Buenos Aires, Argentina |
| Astra Compania Argentina de Petroleo S.A.<br>Tucuman 744<br>11th Floor<br>1049 Buenos Aires, Argentina | Avila y Pizarro Compania Ltda.<br>Agents for Van Gogh Inversiones SA<br>Blanco 570<br>Valparaiso  Chile |
| Barber Asphalt Corp.<br>c/o CT Corporation System<br>277 Park Avenue<br>New York, NY 10017 | Barge Transport Company<br>P.O. Box 2569<br>1812 Durham Drive<br>Houston, TX 77252-2569 |
| Canterbury Shipping Corp.<br>C/o Secretary of State<br>Townsend Building<br>Dover, DE 19901 | Caribbean Steamship Co. S.A.<br>P.O. Box 2568<br>Corpus Christi, TX 78403 |
| Coal Logistics Corporation<br>30 Skyline Drive<br>Lake Mary, FL 32795 | Empresa de Navegacion El Faro<br>Calle Lavalle 388<br>1047 Buenos Aires<br>Argentina |

| | |
|---|---|
| Euro Gulf International<br>c/o Diamond State Corp. Agents Inc.<br>1200 North Broom Street<br>Wilmington, DE 19806 | Gulf International Marine Inc.<br>c/o Gil Anthony Hebert<br>437 Menard Road<br>Houma, LA 70360 |
| Marifran International S.A.<br>Calle Paraguay 577<br>4 Piso<br>Buenos Aires, 1057 Argentina | Marifran International S.A.<br>Avenida 25 de Mayo 401<br>1002 Buenos Aires, Argentina |
| National Oil Transport Co.<br>c/o Secretary of State<br>Townsend Building<br>Dover, DE 19901 | Nedbarges Sublift BV<br>Westmolenstraat 1<br>Lange Haven, 3111 BS Schiedam<br>Netherlands |
| New Jersey Barging Corp. (Del.)<br>c/o The Corporation Trust Co.<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington DE 19801 | Oscar Transportation Group<br>97, Akti Miaouli<br>185 38 Piraeus, Greece |
| Puerto Rico Maritime Shipping Authority<br>Building No. 123<br>Fleet and Bombay Streets<br>Elizabeth, NJ 07208 | Seaport Harbor Cruise Lines, Inc.<br>17 Battery Place<br>New York, New York 10019 |
| Tecomar S.A.<br>Benjamin Franklin 232<br>Mexico DF 11800 | Texas City Refining Inc.<br>P.O. Box 1271<br>Texas City, TX 77592-1271 |
| Texas City Refining Inc.<br>c/o The Corporation Trust Co.<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington DE 19801 | Trafluen Compania Armadora SA<br>7° Piso, Oficina 52<br>San Martin 50<br>1004 Buenos Aires<br>Argentina |

| | |
|---|---|
| Transfrimar SA<br>6° Piso<br>Colon 602<br>Guayaquil, Ecuador | Tropigas Inc.<br>2151 LeJune Road<br>Coral Gables, FL 33134 |
| West India Shipping Co., Inc.<br>Agents for West India Industries, Inc.<br>18th Floor, Great Southwest Building<br>1314 Texas Street<br>Houston, TX 77002 | World Wide Tankers Inc.<br>C/o US Corporation Company<br>2711 Centerville Road, Suite 400<br>Wilmington, DE 19808 |

# *Exhibit 3
to KSJ Affidavit*

NOURSE & BOWLES, LLP
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030



RETURN TO SENDER

( ) ATTEMPTED, UNKNOWN
( ) MOVED, UNABLE TO FORWARD
( ) INSUFFICIENT ADDRESS
( ) UNDELIVERABLE AS ADDRESSED
( ) MOVED, LEFT NO ADDRESS
( ) FORWARDING ORDER EXPIRED
( ) OUT OF BUSINESS
RTE. #____ DATE____ INITS.____

American Maritime Holdings Inc.
39 Broadway
New York, NY 10036



9999

U.S. POSTAGE
PAID
NEW YORK, NY
JUL 14, '04
AMOUNT
$1.36
000-0287-06



NOURSE & BOWLES, LLP
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030

RETOUR
DEVOLUCION
ZURUCK
Guayaquil - Ecuador

AIR MAIL



Transfrimar SA
6° Piso
Colon 602
Guayaquil, Ecuador

First Class Mail
First Class Mail

AIR MAIL








FIRST CLASS
FIRST CLASS
FIRST CLASS
FIRST CLASS
FIRST CLASS
FIRST CLASS
FIRST CLASS



## CSC.

CORPORATION SERVICE COMPANY·

# Return of Service of Process

**Return to Sender Information:**

Noures   & Bowles, LLP
Noures & Bowles, LLP
One Exchange Plaza
55 Broadway
New York, NY 10006-3030

**ALB**
**Transmittal Number: 3673987**

RECEIVED

SEP 27 2004

NOURSE & BOWLES, LLP

| | |
|---|---|
| **Date:** | 09/24/2004 |
| **Entity:** | World Wide Tankers Inc. |
| **Title of Action:** | American Steamship Owners Mutual Protection and Indemnity Association, Inc. vs. Alcoa Steamship Co., Inc. |
| **Court:** | U.S. District Court, Southern District , New York |
| **Case Number:** | 04-cv-04309 (LAK) |

Service of Process has been received from you on behalf of one of the defendants named in the above action.

The service of process received from you is being returned. We cannot receive this service as registered agent due to the reason(s) listed below.

The company against whom service is directed has been dissolved in this State and its winding up period has expired. Accordingly, we no longer are the registered agent.

Our client records are confidential. We do not release any information on our clients, agent representation or service received. We suggest you contact the Secretary of State, or other appropriate agency, for more information.

2711 Centerville Road   Wilmington, DE 19808
(888) 690-2882   |   sop@cscinfo.com