PROSKAUER ROSE LLP
Dale A. Schreiber (DS-9211)
Colin A. Underwood (CU-3445)
Seth B. Schafler (SS-5993)
1585 Broadway
New York, New York 10036-8299
(212) 969-3000
(212) 969-2900 (fax)
*Attorneys for Defendant SEI II Equipment Inc.*
*(f/k/a Shearson Equipment Management Corporation)*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., <br><br> Plaintiff, <br><br> -against- <br><br> ALCOA STEAMSHIP CO., INC., et al., <br><br> Defendant. | Case No. 04 CV 4309 (LAK) <br><br> **ANSWER AND COUNTERCLAIMS** <br><br> (ECF Case) |

Defendant SEI II Equipment Inc. (f/k/a/ Shearson Equipment Management Corporation) ("SEI II" or "Defendant"), by its undersigned counsel, for its answer to the Second Amended Complaint dated July 8, 2004 of American Steamship Owners Mutual Protection and Indemnity Association, Inc. ("the Club") ("the Complaint"):

1. Denies the allegations of paragraph 1 of the Complaint, except to the extent the allegations of that paragraph purport to be a statement of the Club's position in this action to which no response is required.

2. Denies the allegations of paragraphs 2, 3 and 4 of the Complaint.

3. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5 of the Complaint.

4. Denies the allegations of paragraph 6 of the Complaint, except admits that the Club has no right to assess policyholders, members or former members for years closed with a "final assessment."

5. Denies the allegations of paragraph 7 of the Complaint.

6. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8 of the Complaint, except admits that seamen and others who had worked on the vessels owned or chartered by members or former members began asserting occupational disease claims based upon their asserted exposure to asbestos or other substances during their years of service.

7. Denies the allegations of paragraphs 9 and 10 of the Complaint.

8. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11 of the Complaint and denies that payments under insurance policies issued by the Club to Defendant provide for any payments to Defendant as "members" of the Club (as opposed to policyholders of such policies) and further denies that payments made under such policies, by way of premiums and/or assessments, are standing alone a valid measure of whether or not the Club has sustained a loss or deficiency with respect to any particular policy year under such policies.

9. Denies the allegations of paragraph 12 of the Complaint, except denies knowledge or information sufficient to form a belief as to the number of occupational disease claims filed or still pending against members or former members of the Club.

2

10.     Denies the allegations of paragraph 13 of the Complaint, except avers that, in or about June 7, 2004, the Club breached the insurance policies issued to the answering Defendant for policy years ended February 20, 1989 ("the Pre-1989 Years") by announcing that it would no longer pay indemnity claims of the holders under any policies that the Club had issued for any of the Pre-1989 Years ("the Pre-1989 Policies") based upon occupational disease claims and denies knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations of paragraph 13 of the Complaint.

11.     Denies the allegations of paragraph 14 of the Complaint, except admits that the Club is incorporated under the laws of the State of New York.

12.     In response to paragraph 15 of the Complaint, admits that it was a corporation organized and existing under the laws of the State of Delaware.

13.     In further response to paragraph 15, Defendant admits that it was a member of the Club from in or about 1985 to in or about 1988 and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 15 of the Complaint.

14.     Admits that, in response to the allegations of paragraph 16 of the Complaint, this Court has subject matter jurisdiction over this action.

15.     Admits that, in response to the allegations of paragraph 17 of the Complaint that venue is proper in this District and Defendant otherwise denies the allegations in paragraph 17.

16.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 18, 19, 20 and 21 of the Complaint, except admits that the Club's Charter and By-Laws, as well as applicable New York corporate law, generally delegate to the Club's Board of Directors the responsibility to manage the Club's affairs and conduct its

3

business, that the Club's Board of Directors may in some circumstances reasonably rely upon recommendations of the Club's professional manager, that members of the Club's Board of Directors and its officers are subject to eligibility requirements provided, among other places, in the Club's Charter and By-Laws, and that the duties and role of the Club's Chairman are referred to in the Club's Charter and By-Laws, but respectfully refers to the Club's Charter and By-Laws, as they have been amended from time to time, for their respective contents.

17. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 22 and 23 of the Complaint, except admits that Shipowners Claims Bureau, Inc. has acted for many years as a professional manager for the Club and has had responsibility for underwriting, claims handling, and accounting services for the Club.

18. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 of the Complaint, except avers that, at various times during the 1980's, in consideration of the premiums paid to the Club by Defendant, the Club issued Policies to Defendant providing what is generally known as protection and indemnity ("P&I") insurance on an occurrence basis during the stated policy period for covered vessels under terms providing for possible future assessments ("the Policies") and respectfully refers to the original or true copy of each of such Policies for their respective terms and conditions.

19. Denies the allegations of paragraph 25 of the Complaint.

20. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 of the Complaint, except respectfully refers to the originals or true copies of the Policies for their respective terms.

21. Denies the allegations of paragraph 27 of the Complaint.

4

22. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28 of the Complaint, except denies the allegations of the last sentence thereof.

23. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 29, 30 and 31 of the Complaint, except respectfully refers to the originals or true copies of the Policies for their respective terms and conditions.

24. Denies the allegations of paragraph 32 of the Complaint.

25. Denies the allegations of paragraphs 33, 34 and 35 of the Complaint, except respectfully refers to relevant provisions of the New York Insurance Law for their contents.

26. Denies the allegations of paragraph 36 of the Complaint, except refers to the original or a true copy of the Club's By-Laws (as amended from time to time) applicable to the rights and obligations, if any, of Defendant under their respective Policies in issue in this action.

27. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 37 of the Complaint.

28. Denies the allegations of paragraph 38 of the Complaint, except respectfully refers to the originals or true copies of the Policies for their respective terms and conditions.

29. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39 of the Complaint.

30. Denies the allegations of paragraph 40 of the Complaint, except refers to the original or a true copy of the Club's By-Laws (as amended from time to time) applicable to the rights and obligations, if any, of Defendant under their respective Policies in issue in this action.

31. Denies the allegations of paragraph 41 of the Complaint.

32. Denies the allegations of paragraph 42 of the Complaint, except refers to the original or a true copy of the Club's By-Laws (as amended from time to time) applicable to the rights and obligations, if any, of Defendant under their respective Policies in issue in this action.

33. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 43, 44, 45 and 46 of the Complaint.

34. Denies the allegations of paragraph 47 of the Complaint.

35. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 48, 49, 50, 51, 52, 53 and 54 of the Complaint.

36. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 55 of the Complaint, except denies the allegations of the last sentence thereof.

37. Denies the allegations of paragraph 56 of the Complaint.

38. Denies the allegations of paragraph 57 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of allegations in that paragraph purporting to describe the actions, if any, taken by the Club's Board of Directors on May 25, 2004 with respect to Pre-1989 Policies or the subjective motivations for such actions and admits that Defendant objected to the Club's Board of Directors' actions to the extent described in a Circular dated June 7, 2004 and in the Club's various complaints in this action.

39. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 58 of the Complaint.

40. Denies the allegations of paragraphs 59, 60 and 61 of the Complaint.

41. Refers to its respective responses to the allegations incorporated by reference into paragraph 62 of the Complaint.

42. Admits the allegations of paragraph 63 of the Complaint.

43. Denies the allegations of paragraph 64 of the Complaint.

44. Refers to its respective responses to the allegations incorporated by reference into paragraph 65 of the Complaint.

45. Denies the allegations of paragraph 66 of the Complaint.

46. Admits the allegations of paragraph 67 of the Complaint.

47. Denies the allegations of paragraph 68 of the Complaint.

48. Refers to its respective responses to the allegations incorporated by reference into paragraph 69 of the Complaint.

49. Denies the allegations of paragraph 70 of the Complaint.

50. Admits the allegations of paragraph 71 of the Complaint.

**First Affirmative Defense**
**(Insurance Policies)**

51. The Club's claims are barred, in whole or in part, by the terms of the Policies, all of the obligations of which Defendant has fulfilled and which provide occurrence-based coverage for liability-incurring occurrences transpiring, in whole or in part, during the policy period of each such Policy, without any aggregate limit on losses payable thereunder, any time deadline for the making of claims thereunder, or any limitation on recourse against the Club.

7

## Second Affirmative Defense
### (By-Laws)

52. The Club's claims are barred, in whole or in part, by the terms of the By-Laws applicable to the Policies, and documented actions thereunder of the Club's Board of Directors, including but not limited to the Club's Board of Directors' actions in closing policy years under all Pre-1989 Years with "final assessments" pursuant to By-Laws, Article VI, Section 4.

## Third Affirmative Defense
### (Estoppel and Waiver)

53. The Club's claims are barred, in whole or in part, by the doctrine of estoppel, in that the Club, among other things, has since at least 1980 consistently indemnified policyholders for occupational disease claims arising from injuries in closed insurance years and has consistently represented to Defendant that the Club had a legal obligation to do so and upon information and belief has acted to affirm its contractual obligation by asserting its rights to receive cooperation from policyholders under one or more of the Pre-1989 Policies and its right to consent to the policyholders' settlement of occupational disease claims.  Defendant has relied on the Club's conduct and representations to their detriment.  Moreover, the Club has waived its right to now deny coverage and seek further assessments from policyholders and has waived its right to deny policyholders coverage based on the inability to further assess them.

## Fourth Affirmative Defense
### (Laches)

54. The Club's claims are barred, in whole or part, by the doctrine of laches, in that the Club has since at least 1980 consistently recognized its legal obligation to indemnify policyholders, including Defendant, for occupational disease claims arising from injuries in closed insurance years and has delayed announcing that it will no longer pay such

8

indemnification, without excuse or justification, until June 7, 2004. Defendant has been prejudiced by that delay.

### Fifth Affirmative Defense
### (Res Judicata)

55. The Club's claims are barred, in whole or in part, by the doctrines of *res judicata* and/or collateral estoppel because the issues the Club now seeks to raise were either fully litigated or necessary to the judgment entered against the Club in *Dicola v. American S.S. Owners Mutual Protection and Indemnity Association, Inc.,(In re Prudential Lines)*, 158 F.3d 65 (2d cir. 1998). These issues include but are not limited to (a) the continuing rights of holders of Pre-1989 Policies, including Defendant, to make claims for indemnity payments under these occurrence-based policies after the policy year for which they were issued and without any time limitation as to when claims can first be made against the insured and still be covered by the policy, (b) the rights of the holders of Pre-1989 Policies, including Defendant, to seek indemnity payments under the Pre-1989 Policy providing the lowest per-claim deductible for occupational disease claims spanning multiple, consecutive policy years. The Club had a full and fair opportunity to litigate those issues in that litigation and the issues were decided adversely to the Club.

### Sixth Affirmative Defense
### (Mutuality)

56. The declaratory relief sought by the Club would, in whole or in part, result in inequitable treatment of members and former members of the Club, including Defendant, contrary to principles of mutuality asserted by the Club in that, among other things, (a) the Club would be treating the holders under Pre-1989 Policies differently from holders of its policies for

policy years after the Pre-1989 Years by denying the former and granting the latter indemnity payments for years closed with "final assessments," despite the fact that the total losses for each such year exceeded total premiums and assessments ("Policyholder Payments") (with or without allocating income earned by the Club to such amounts), (b) the Club has aggregated all Policyholder Payments for all Pre-1989 Years (with or without allocating income earned by the Club to such amounts) and all losses for such years to deny policyholders, including, upon information and belief, Defendant, indemnity payments for some such years where the losses do not exceed Policyholder Payments (with or without allocating income earned by the Club to such amounts), (c) the Club has created a first-come, first-serve system for paying losses under Pre-1989 Policies in violation of mutuality principles, and (d) the Club has illegally transferred its assets in amounts reflected by its general reserves, if not more, to current members by refusing to make indemnity payments to holders of Pre-1989 Policies on the spurious ground that those general corporate assets "belong" to current members only.

### Seventh Affirmative Defense
### (Reserves)

57.    To the extent that the Club's claims are based on the failure of its Board of Directors to set adequate reserves for unreported claims before closing an insurance year with a "final assessment" in accordance with the Club's By-Laws, Article VI, Section 4, the Club has sole responsibility for any such inadequacy and such inadequacy is not a defense to the rights of Defendant under its respective Policies to indemnification for payments that they have made for occupational disease claims for any of the Pre-1989 Years.

10

**Eighth Affirmative Defense**
**(Disregard of Membership Rights)**

58. This affirmative defense is asserted only to the extent that the Club's claims are based on the premise that Defendant remained a member of the Club on May 25, 2004 and/or June 7, 2004, long after the expiration of the policy years under all of its respective Policies and long after it had formally resigned as a member. Defendant continues to assert that it was not a member of the Club as of either of those dates and ceased to be a member after it ceased purchasing insurance policies from the Club and resigned as a member. The Club's actions taken on those dates in determining not to honor any future claims under Pre-1989 Policies for indemnity payments to reimburse Defendant with respect to seamen's occupational disease claims, subject only to applicable deductibles, are null and void because Defendant and others similarly situated were not afforded the right to vote for the Club's Directors who approved such actions or to exercise other incidents of membership in connection with such actions. Defendant nevertheless retained all rights as an insured and policyholder under its respective Pre-1989 Policies.

**Ninth Affirmative Defense**
**(Release)**

59. The Club's claims are barred by the terms of releases given to members in connection with closing policy years and/or the releases given to former members in connection with their withdrawal from membership in the Club.

**Tenth Affirmative Defense**
**(Untimely Notice of Disclaimer)**

60.     To the extent that the Club seeks to disclaim coverage for claims previously reported to the Club under any of the Policies, such disclaimer is untimely and in violation of N.Y. Insurance Law §3420(d).

**Eleventh Affirmative Defense**
**(Failure to Provide Notice of Cancellation of Coverage)**

61.     To the extent that the Club bases any of its claims on the cancellation of further coverage under any of the Policies at the time an insurance year is closed, the Club has failed to comply with the notice of cancellation requirement of N.Y. Insurance Law §3426.

**Twelfth Affirmative Defense**
**(Dissolution of Entities)**

62.     To the extent Defendant is an entity which has been duly dissolved, the applicable limitations periods for suits against such entity bars the Club's claims in whole or in part.

**Thirteenth Affirmative Defense**
**(Failure to State a Claim)**

63.     The Complaint fails to state a claim upon which relief may be granted.

**Fourteenth Affirmative Defense**
**(Statute of Limitations)**

64.     The Club's claims in the Complaint are time barred, in whole or in part, by the statute of limitations.

**Fifteenth Affirmative Defense**
**(Failure to Reserve Rights)**

65.     To the extent that the Club failed to assert coverage defenses within the time limitations set forth under the applicable claims statute or failed to reserve rights with respect to indemnification, the Club waived those defenses to indemnification for the affected claims.

**Sixteenth Affirmative Defense**
**(Promissory Estoppel)**

66.    The Club's claims are barred, in whole or in part, by the doctrine of promissory estoppel, in that Defendant reasonably relied on the express and implied promise of the Club with respect to the existence of coverage for occupational disease claims and express and implied promise of the Club to release policyholders from further assessment when it closed a year with a "final assessment." This reliance was foreseeable.

**Seventeenth Affirmative Defense**
**(Defendant Not Responsible for Certain Entities)**

67.    To the extent the AC seeks to assess Defendant, which it does not have the authority to do, for the *pro rata* shares of other policyholders who are insolvent, have been dissolved, or have merged with other entities, or for any shares that should be allocated to them, those claims are barred against Defendant because Defendant is not legally responsible for those entities.

68.    Defendant respectfully requests leave to assert additional defenses which it deems necessary to its defense during or upon conclusion of its investigation and discovery of the Club's claims.

## COUNTERCLAIMS

69.    The counterclaim alleged below seeks a declaratory judgment, adjudicating Defendant's freedom from further assessments under any of the Policies issued to Defendant by the AC.

### The Parties

70. Defendant was a corporation organized and existing under the laws of the State of Delaware. Defendant was an owner and operator of shipping vessels.

71. The Club is a corporation organized pursuant to and existing under the New York Insurance Law Article 41 as a mutual company and in that capacity has issued marine P&I policies to shipowners and charterers that become members of the Club under assessable policies in more or less the same form. Pursuant to New York Insurance Law §108, the Club is also subject to the New York Business Corporation Law and maintains a principal place of business in New York, New York.

### Jurisdiction and Venue

72. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1333(1) because it is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. In addition, this Court has supplemental jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1367(a).

73. Venue in this judicial district is proper under 28 U.S.C. §§1391(b)(1) and 1391(b)(2) because the Club resides in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

### Defendant's Insurance Coverage

74. Defendant ceased being a member of the Club in or about 1988.

75. The Pre-1989 Policies are assessable policies issued under the Club's By-Laws, which govern the Club's authority to issue assessable policies, to make assessments thereunder, and to terminate the Assured's liability for further assessments thereunder.

76. In particular, the policies provide:

> The Assured are subject to a contingent liability hereunder for assessment without limit of amount for their proportionate share of any deficiency or impairment as provided by law and fixed in accordance with the by-laws of the [Club]; provided, however, that any such assessment shall be for the exclusive benefit of holders of policies which provide for such a contingent liability, and the holders of policies subject to assessment shall not be liable to assessment in an amount greater in proportion to the total deficiency than the ratio that the deficiency attributable to the assessable business bears to the total deficiency.

77. Article VI, Section 3 of the By-Laws (as amended September 18, 1987) (the By-Laws have been amended over time but the sections quoted herein, although at times renumbered, upon information and belief, do not appear to have substantially changed) provides:

> For the purposes of declaring dividends and making assessments the business of the [Club] shall be divided into insurance years . . .

The insurance years referred to in this By-Law have coincided with the policy periods under the insurance policies issued by the Club during all relevant times.

78. Article VI, Section 4 of the By-Laws provides:

> From time to time after the termination of each insurance year, when the manager shall determine that it is practicable to estimate with a reasonable degree of certainty the minimum, probable or final surplus or deficiency resulting from all of the [Club's] insurances in effect during such insurance year, the manager shall place before the board of directors a statement of such financial results of insurances, segregated between assessable and non-assessable business. After receipt of any such statement, the board of directors from time to time may (a) fix and determine an amount to be declared and paid as a partial or the final dividend, after retaining such sums as they may deem necessary to meet outstanding policy obligations or for the maintenance of reserves and surplus of the [Club], or (b) order an interim or *the final assessment to be made against the holders of assessable policies*, fix the due date of such assessment, determine the rate of interest that shall be added to and become a part of any delinquent assessment, and otherwise provide for enforcement and collection thereof. (Emphasis added.)

15

### The Club's "Final Assessment" Practices

79.    In the event that the aggregate losses paid by the Club under all Pre-1989 Policies for any open policy year exceed the amounts collected from policyholders for that year through premiums and assessments, the Club, acting through its Board of Directors, has the discretionary authority under the By-Law, Article VI, Section 4 to levy additional assessments on the policyholders for that year to cover the deficiency on an interim or final basis. Likewise, if such amounts collected from policyholders exceed such losses, the Club, again acting through its Board of Directors, has discretionary authority under the same By-Law provision to refund some or all of the surplus to those policyholders or to decide not to do so.

80.    If the Club's Board of Directors determines to make an assessment for any policy year, the assessments are made against all policyholders for the policy year in issue and are prorated on the basis of the relative amounts of the initial premiums paid under such policies by each policyholder for such policy year. In other words, assessments for a particular policyholder are not predicated upon claims experience of that policyholder standing alone, but upon the basis of the aggregate claims experience of all policyholders for that policy year.

81.    Thus, as long as a policy year is kept open by the Club, the Club is fully protected against any aggregate deficiency resulting from all claims payments to all policyholders for that year. In so doing, the Club can protect itself against losses caused by claims arising many years after the policy year in question has passed by making additional assessments of policyholders for that year based on the continuing aggregate claims experience of all policyholders for that policy year.

16

82. The Club's Board of Directors' business decision to keep a policy year open for assessment purposes can also be a benefit for policyholders because assessments can be deferred until they are actually needed to pay claims under the policies in issue. If the assessments in hindsight are larger than necessary to pay all losses for the policy year, the Club, acting through its Board of Directors, may decline to refund any resulting surplus and instead retain the surplus as capital for the Club's operations including the payment of claims for other policy years. By deferring the closing of a policy year and the making of a final assessment, policyholders can avoid concerns about being over-assessed and therefore making payments not needed to cover payment of actual claims and earn investment income on their funds that would otherwise be used for payment of assessments.

83. However, the Club's Board of Directors' business decision to keep a policy year open may not always be viewed as advantageous to the Club's business interest in maintaining its existing members and in attracting new members, because both constituencies do not want to have exposures for contingent liabilities under their policies by way of assessments for the indefinite future.

84. Thus, as noted, the By-Laws provide for the closing of policy years with so-called "final assessments" by action of the Club's Board of Directors based upon a report and recommendation from the Club's professional claims manager that it is practicable to estimate the losses for the policy year in issue. Once a policy year has been declared closed by the Club's Board of Directors, under the By-Laws, no further premium or assessment can be levied upon the policyholders with respect to that policy year, even if the operations for that year result in an ultimate deficiency to the Club.

85.     After a policy year has been closed, the Club's balance sheet is updated to transfer all amounts received by way of premiums and assessments after payment of claims for that year into either case reserves for that year, reserves for incurred but not reported losses ("IBNR") for that year, or general reserves not dedicated to any particular policy year.  These reserves, however, do not result in the imposition of any security interest or charge on specified assets or the segregation of any assets.  All funds collected from the assessment of policyholders are assets of the Club, subject to the claims of all of its creditors including but not limited to policyholders for claims payments under their respective policies.

## CLAIM FOR RELIEF
### (Release)

86.     Defendant incorporates by reference into this counterclaim the allegations of paragraphs 69 through 85 of these counterclaims.

87.     In connection with the closing of insurance years and the levying of "final" assessments, the Club granted Defendant releases from any liability for further assessments under one or more the Pre-1989 Policies.

88.     Defendant seeks a declaration that any further assessments are barred against Defendant with respect to the Pre-1989 Years covered by such releases.

WHEREFORE, Defendant demands judgment:

(a)     dismissing all claims in the Complaint with prejudice and costs;

(b)     declaring that the Club has no right to make any further assessment or assessments against any Defendant under any Pre-1989 Policies;

  (c) barring, restraining and prohibiting the Club from making, or seeking to make, any assessment or assessments under any Pre-1989 Policies;

  (d) granting Defendant its reasonable attorneys' fees and other costs and expenses incurred in this action;

  (e) granting such other and further relief as this Court deems just and proper.


Dated:  December 1, 2004  
   New York, NY

PROSKAUER ROSE LLP

By: /s/ Dale A. Schreiber  
  Dale A. Schreiber (DS-9211)  
  Colin A. Underwood (CU-3445)  
  Seth B. Schafler (SS-5993)  
  PROSKAUER ROSE LLP  
  1585 Broadway  
  New York, NY 10036-8299  
  (212) 969-3000  
  (212) 969-2900 (fax)

*Attorneys for Defendant SEI II Equipment Inc. (f/k/a Shearson Equipment Management Corporation)*