UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

AMERICAN STEAMSHIP OWNERS          :
MUTUAL PROTECTION AND
INDEMNITY ASSOCIATION, INC.,       :

                        Plaintiff,  :

            -against-               :

ALCOA STEAMSHIP CO., et al.,       :

                        Defendants. :

------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/22/05

**OPINION AND ORDER**

04 Civ. 4309 (LAK)(FM)

**FRANK MAAS**, United States Magistrate Judge.

        In this declaratory judgment action pursuant to 28 U.S.C. § 2201, plaintiff

American Steamship Owners Mutual Protection and Indemnity Association, Inc. ("Club")

principally seeks a determination that it need not indemnify certain of its members for

occupational disease claims which were not reported to the Club prior to February 20,

1989.

        William F. Higgins and approximately 10,000 other seamen and other

employees of two vessel lines (or their estates) ("Movants" or "Maritime Claimants")

have moved to intervene in the suit in an effort to ensure that they receive compensation

for their asbestosis claims.  The motion is supported by the trustee of the two vessel

owners, which are in reorganization, and opposed by both the Club and certain other

vessel-owner defendants ("Keystone Defendants").  For the reasons set forth below,

intervention is denied.  The Movants' counsel may, however, participate in this action as

amici curiae.

I.      Factual Background

        A.      Underlying Action

                The Second Amended Complaint ("Complaint" or "Compl.") alleges as

follows:

                The Club is a non-profit mutual indemnity insurance association organized

under the laws of the State of New York.  (Compl. ¶¶ 1, 14).  The defendants were

members of the Club for some or all of the period between about 1940 and February 20,

1989.  (See id. ¶ 15).  During that period, the Club issued to each member who

participated in each Insurance Year a one-year fully assessable marine protection and

indemnity insurance policy.  (Id. ¶ 24).  Prior to the inception of each Insurance Year, the

Club assessed each member an amount that was primarily determined by its historical loss

experience.  (Id. ¶ 28).  The policies at issue also required the payment of certain

deductibles by the members.  (Id. ¶ 30).  Through these payments, the Club members

mutually indemnified each other for claims in each Insurance Year, except for

catastrophic claims, which were covered through reinsurance.  (Id. ¶ 25).

                Until about 1989, each Insurance Year typically would be "closed" some

ten years after its actual termination.  (Id. ¶ 43).  In closing an Insurance Year, the Club's

Board of Directors would determine whether any of the members owed final assessments or were owed dividends. (Id. ¶ 40). The Board of Directors also could establish reserves to pay additional claims arising out of that Insurance Year. (Id.). Once the Insurance Year was closed, however, the Club could not seek further assessments from its members for that Insurance Year; nor were members eligible for additional dividends for that Insurance Year. (Id. ¶ 6).

When the Board of Directors closed the Insurance Years between 1946 and 1976, the Club set aside reserves for reported claims ("case reserves"), but not for incurred but not reported ("IBNR") claims. (Id. ¶ 44). The reserves became the property of the members of the Club for years that remained open, but those members had an obligation to use case reserves to indemnify members of closed years for "their payments of reported claims." (See id. ¶ 7).

In the early 1980s, seamen began to assert claims for diseases relating to asbestos exposure which often arose out of their employment on vessels during the 1940s, 1950s, and 1960s. (Id. ¶¶ 45-46). While no IBNR reserves had been established for such claims when the Insurance Years closed, around 1980 the Club adopted an informal practice of indemnifying members for asbestos-related IBNR claims from the Club's general reserves. (Id. ¶ 47). The Club alleges that this practice was discretionary, because it was not set forth in the Club's charter, by-laws, or policies, and was not required by New York law. (Id. ¶ 56). Although the Board of Directors ordered that a

3

reserve be set aside to cover disease-related IBNR claims at the time that it closed Insurance Year 1977, and Insurance Years 1979-1999, it did not make any assessments to establish IBNR reserves for previously-closed Insurance Years. (Id. ¶¶ 49-50). The Board also took other steps to reduce the exposure of members and former members for IBNR claims arising out of closed years, including a decision to apply only the deductible for the most recent policy held by a member even if the exposure was alleged to have spanned multiple Insurance Years. (Id. ¶¶ 51-52).

On May 25, 2004, the Board of Directors voted to discontinue its discretionary practice, deciding that the Club would no longer indemnify the defendants for IBNR claims for occupational diseases that arose in closed Insurance Years prior to February 29, 1989. (Id. ¶ 57). Because some of the defendants have objected to this change, the Club seeks a declaratory judgment that it is entitled to end its discretionary practice of using general reserves for IBNR claims arising from closed Insurance Years prior to February 20, 1989. (Id. ¶ 64). In the event such relief is not awarded, the Club seeks leave to reopen closed Insurance Years and levy the assessments appropriate to "restore the requisite mutuality among all of its members in all Insurance Years." (Id. ¶ 66). The Club also seeks a declaration that it may, in such circumstances, assess asbestos claims against each of the Insurance Years implicated by the claims and apply the members' deductibles anew for each such year. (Id. ¶ 70).

4

B.    Proposed Intervenors

The Movants seek compensation for a number of asbestos-related diseases, and, in some instances, for wrongful death. (Movants' Mem. at 1). They were formerly employed as seamen or in other capacities by Prudential Lines, Inc. ("Prudential") or Grace Lines, Inc. ("Grace"). (Id.).

C.    PLI Disbursement Trust

After Prudential consented to an involuntary Chapter 11 bankruptcy petition on November 4, 1989, a Second Amended Joint Plan of Reorganization ("Plan") was confirmed on October 4, 1990. (Id. at 2). The Plan provided for the creation of a PLI Disbursement Trust ("Trust"), which was charged with the tasks of liquidating claims and "insurance preservation." (Id.). Although the Trust was established as part of the Prudential reorganization, it appears undisputed that it also represents Grace's interests. (See id.; Compl. Ex. A). The Trust is a member of the Club and has been named as a defendant in the current action. (Compl. Ex. A).

II.    Discussion

A third-party's right to intervene in an action, either as of right or permissively, is controlled by Rule 24 of the Federal Rules of Civil Procedure. The Movants contend that they meet the requirements for both types of Rule 24 intervention. In addition, they argue that a prior order issued by the Bankruptcy Court of this District

should be given res judicata effect, thereby barring the Club from objecting to the intervention motion. I will address the somewhat novel res judicata claim first.

A.    Res Judicata

In Dicola v. American Steamship Owners Mutual Protection and Indemnity Ass'n, Inc. (In re Prudential Lines, Inc.), 148 B.R. 730, 735-36 (S.D.N.Y. 1992), rev'd on other grounds, 158 F.3d 65 (2d Cir. 1998), the Bankruptcy Court permitted the Maritime Claimants to intervene in a declaratory judgment action against the Club, filed by the trustee of the Trust ("Trustee") in an effort to determine the scope of the Club's indemnity obligation under its insurance policies. (See Movants' Mem. at 3). The Movants note that the parties in Dicola did not appeal the order granting intervention, that Dicola involved the same parties as this action, and that there are issues related to the allocation and payment of deductibles common to both suits. (Movants' Reply Mem. at 4-5).

To invoke the res judicata doctrine, the Movants must show that (i) the prior decision was a final judgment on the merits; (ii) the parties in both actions are the same; (iii) the prior decision was rendered by a court of competent jurisdiction; and (iv) the causes of action are the same. Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82, 87-88 (2d Cir. 1997) (citing In re Teltronics Servs., Inc., 762 F.2d 185, 190 (2d Cir. 1985)). Although the Bankruptcy Court's ultimate decision was appealed, see Dicola v. Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. (In re Prudential Lines, Inc.), 158

6

F.3d 65, 74 (2d Cir. 1998), the Court of Appeals was not asked to consider the ruling on intervention. Moreover, the decision to grant intervention obviously was rendered by a court of competent jurisdiction. The first two prongs of res judicata therefore are satisfied.

The Movants still must establish that the parties and issues in the two actions are the same. However, in Dicola, the trustee brought a declaratory judgment action against the Club, and the Maritime Claimants later were permitted to intervene. Dicola, 148 B.R. at 735-36. Here, on the other hand, the Club has initiated a declaratory judgment against its members. Thus, there is no commonality of parties between the two suits. Moreover, because the members of the Club may change with each new Insurance Year, even if one were to assume that the Club is the alter ego of its members, the defendants in this action may not be the ones who comprised the Club at the time Dicola was decided.

In certain circumstances, entities that are in privity with the party to an earlier action have been deemed to be bound despite their absence from that action. See, e.g., Ferris v. Cuevas, 118 F.3d 122, 128 (2d Cir. 1997) (res judicata binds a party to the prior action who "continue[d] to control the present action"); see also Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (for res judicata to apply, the first action need only have "involved the [parties] or those in privity with them") (brackets in original) (quoting Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284-85 (2d Cir. 2000)); United

States v. State of New York, No. 98 Civ. 1326 (JCF), 2002 WL 31045940, at *6

(S.D.N.Y. June 21, 2002) ("In determining whether there is privity between parties,

courts examine the degree of control exerted by the non-party and the degree to which the

interests involved in the prior litigation are similar to those in the later litigation."). In

this case, there is no need to address this alternative basis for finding common parties

because the Movants plainly fail to fulfill the fourth res judicata prong, which requires

that the claims in both suits be the same.

In Dicola, the Trustee sought to clarify the Club's obligations with respect

to three specific coverage issues:  (i) when liability arose under the Club's policies; (ii)

the proper allocation of coverage where more than one policy was implicated; and (iii)

whether multiple deductibles were warranted or, alternatively, the asbestos condition on

all of the Prudential vessels constituted a single occurrence.  Id. at 740-47.

By comparison, two of the three claims for relief in the current lawsuit

center on the Club's practice of indemnifying its members from general reserves for

IBNR claims arising out of closed Insurance Years.  These claims were neither asserted

nor litigated in Dicola.  Moreover, even the claim concerning deductibles differs from the

deductible issue adjudicated in Dicola.  In Dicola, the Bankruptcy Court was asked

whether asbestos contamination on the Prudential vessels constituted a single

"occurrence" within the meaning of the policy, or multiple occurrences on separate

vessels that necessitated the payment of multiple deductibles.  Dicola, 148 B.R. at 745-47.

8

Here, however, the deductible issue is whether Club members may be assessed a separate deductible for each Insurance Year implicated by a given claim. While the two claims both relate to the issue of deductibles, they plainly are not the same.

Accordingly, because the claims raised in <u>Dicola</u> and this action are different, res judicata is inapplicable.

B.    <u>Intervention as of Right</u>

Under Rule 24(a) of the Federal Rules of Procedure, a party may intervene as of right, upon timely application, when

> (1) . . . a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).

The Movants do not contend that their intervention is required by any federal statute. (<u>See</u> Movants' Mem. at 6-8). The Movants consequently may intervene as of right only if they "(1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) [are] so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." <u>Butler, Fitzgerald &</u>

9

Potter v. Sequa Corp., 250 F.3d 171, 176 (2d Cir. 2001). Intervention as of right will be denied if the moving party cannot satisfy all of these requirements. Id.

There is no dispute that the motion to intervene is timely, having been filed only a few months after the Club filed its complaint in this multi-party action on June 7, 2004. (See Docket Nos. 1, 69). As such, the Movants have satisfied the first requirement for intervention as of right.

The Movants argue that they meet the second requirement because they are the ultimate beneficiaries of the Club's insurance policies and the reserves that the Club has established. (See Movants' Mem. at 6). Regarding the third requirement, the Movants argue that the fund established through the Trust has only approximately $100,000 available to pay disease-related claims, which means that the Trustee lacks the resources to litigate this case.[1] (Id. at 7). The Movants attempt to satisfy the fourth requirement by postulating that the defendants in this litigation may not assert precisely the same interests or defenses. (Id. at 8).

---

[1]    The Club's policies contain a "pay first" clause which requires a Club member to make payment to a claimant before the Club's duty of indemnification arises. Dicola, 158 F.3d at 67-68. Given the Trust's lack of funds, the Plan authorized the Trustee to enter into an arrangement pursuant to which the Trust would pay Claimant "A," who would immediately return the funds to the Trust via a non-recourse loan so that Claimant "B" could be paid. In practice, the payment to Claimant "A" was held in escrow by counsel so Claimant "A" never actually received the funds. Id. at 68-69 & n.1. The district court held that this procedure, which was approved by the bankruptcy judge, violated the Club's pay first requirement. Dicola, 170 B.R. 222, 242 (S.D.N.Y. 1994).

For their part, the Club and Keystone Defendants argue that the Movants have no interest to vindicate here because they have neither standing to pursue a direct action against the Club nor the right to intervene under New York law.  (See Keystone Mem. at 5).  They further contend that the Movants' interest in this action is contingent in at least two ways.  First, they argue that the Movants' ability to secure indemnity from the Club for any claims is by no means secure, because the Club's insurance policies contain a "pay first" provision, (see supra n. 1; Pl.'s Mem. at 16), and the Trust allegedly owes the Club $1,270,980 in unpaid premiums and assessments on behalf of Prudential, but has far less money at its disposal to honor claims and preserve its coverage.  (Pl.'s Mem. at 17).  Second, they maintain that the Movants have never established that the Trust is, in fact, liable to the Club, noting that all of the Movants' cases against the Trust have been dismissed by Judge Charles R. Weiner, before whom they were pending in the Eastern District of Pennsylvania, on the basis of the Movant's "repeated failure to comply with the court's orders or provide adequate documentation to support their claims."  (Id. at 14-15).[2]

> a.    Interest in the Property:  Direct Right of Action

This action concerns maritime insurance contracts, over which this Court has jurisdiction pursuant to its admiralty jurisdiction.  See Hartford Fire Ins. Co. v. Mitlof, 123 F. Supp. 2d 762, 764 n.2 (S.D.N.Y. 2000) (citing Advani Enters., Inc. v.

---

[2]    The Movants maintain that, notwithstanding this dismissal, the cases actually remain active, and that a settlement has been proposed.  (Movants' Reply Mem. at 3-4).

Underwriters at Lloyds, 140 F.3d 157, 161 (2d Cir. 1998) ("[M]arine cargo insurance policies fall within the federal court's admiralty jurisdiction.")). General federal maritime law thus applies, with the court "determin[ing] 'the scope and validity of the . . . policy provisions' . . . by looking to state law." Mitlof, 123 F. Supp. 2d at 764 n.2 (quoting Royal Ins. Co. of Am. v. Sportswear Group, LLC, 85 F. Supp. 2d 275, 278 (S.D.N.Y. 2000)). The Complaint alleges that the defendants did and continue to do business in New York, the contracts were negotiated and delivered here, and some of those contracts specifically require the application of New York law. Accordingly, New York law determines whether the Movants have a claim against the Club.

The relevant provision of New York law is Section 3420 of the New York Insurance Law. That section permits a party to commence a direct action for damages against an insurer if a damages award against the insured "shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer." N.Y. Ins. Law § 3420(a)(2) (McKinney 2002). The amount recoverable, however, may not exceed the limit of the insurance policy's coverage. Id. These requirements "are not waivable procedures, but integral predicates for stating and sustaining a cause of action under the statute." NAP, Inc. v. Shuttletex, Inc., 112 F. Supp. 2d 369, 373 (S.D.N.Y. 2000). Thus, the Movants could not bring a direct action against the Club without having first obtained a judgment against the Trust that remains unsatisfied for thirty days. The Movants do not dispute that

12

this has yet to occur.  (See Movants' Reply Mem. at 3-4).  For that reason, at least as of

now, the Movants are unable to assert a direct cause of action against the Club under New

York law.  See Brady v. United Airways Group, Inc., No. 01 Civ. 6224, 2004 WL

1570264, at *3 (W.D.N.Y. May 24, 2004); Mitlof, 123 F. Supp. 2d at 765.

   Several courts have concluded that an injured party similarly may not

initiate a declaratory judgment action against an insurer until that party has obtained a

judgment against the insured that remains unsatisfied.  See, e.g., Abdalla v. Yehia, 667

N.Y.S.2d 736, 737 (1st Dep't 1998); Hershberger v. Schwartz, 604 N.Y.S.2d 428, 429

(4th Dep't 1993).  Although there is contrary authority, see, e.g., Watson v. Aetna Cas.

and Sur. Co., 675 N.Y.S.2d 367, 370 (2d Dep't 1998); Tepedino v. Zurich-Am. Ins.

Group, 632 N.Y.S.2d 604, 605 (2d Dep't 1995), two judges in this District have held that

the first line of cases sets forth the proper New York rule.  See NAP, Inc. v. Shuttletex,

Inc., 112 F. Supp. 2d 369, 378 (S.D.N.Y. 2000) (Marrero, J.); Richards v. Select Ins. Co.,

40 F. Supp. 2d 163, 170 (S.D.N.Y. 1999) (Mukasey, J.); cf. Abigail deBruyne v. Clay,

No. 94 Civ. 4707 (JSM), 1997 WL 471039, at *3 (S.D.N.Y. Aug. 18, 1997) (opining that

the New York Court of Appeals would allow an injured party to maintain a declaratory

judgment action against "an insurer that has itself instituted a declaratory judgment action

with respect to . . . that [injured] party's claims against one of its insureds").

   More importantly, even if certain of the Movants were able to show that

they had an unsatisfied judgment against a member-insured, the New York Insurance Law

expressly precludes certain kinds of maritime insurance described in Section 2117 of the Insurance Law from direct action suits.  See N.Y. Ins. Law § 3420(i) (McKinney 2002); Miller v. Am. S.S. Owners Mut. Prot. and Indem. Co., 509 F. Supp. 1047, 1049 (S.D.N.Y. 1981) ("New York law provides for a direct action against insurers on both liability and indemnity policies, but no direct action is allowed on any marine insurance policy, whether it is one of liability or indemnity.").  One such category relates to "insurance in connection with ocean going vessels against any of the risks specified" in Section 1113 of the Insurance Law.  Id. § 2117(b)(3)(B) (McKinney 2001).  These risks include

> legal liability of the insured for . . . loss, damage or expense arising out of, or incident to, the ownership, operation, chartering, maintenance, use, repair or construction of any vessel, craft or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness or death or for loss of or damage to the property of another person.

Id. § 1113(a)(21) (McKinney 2001).

The first question therefore is whether the vessels that the Movants worked on are ocean-going.  See Mitlof, 123 F. Supp. 2d at 767 (finding insurance policy not subject to maritime exception to direct action suits because the vessel was "clearly not an ocean going vessel").  Although the parties have not specifically addressed this point, the Club has furnished the Court with a specimen of the types of marine protection and indemnity policies that it issued to its members prior to February 20, 1989.  (See Aff. of

14

Lawrence J. Bowles, dated Oct. 4, 2004, Ex. 2). That sample policy states, inter alia, that

it provides coverage for employees who are "engaged by the insured vessel or its Master

to perform stevedoring work in connection with the vessel's cargo at ports in Alaska and

ports outside the Continental United States." (Id. at 3). It is therefore reasonable to

presume that the vessels – and consequently their employees – were intended to traverse

the high seas. Cf. Progressive Northeastern Ins. Co. v. The Am. Ins. Co., No. 99 Civ.

8998 (SHS), 2001 WL 959183, at *4 (S.D.N.Y. Aug. 21, 2001) (concluding that vessel

was not ocean going where the policy specifically disclaimed coverage for operation "in

coastal waters, oceans, seas or gulfs"). It follows that the vessels covered by the Club's

policies fall within the maritime exception to New York's direct action statute. See

Becker v. Allcity Ins. Co., 99 Civ. 2371, 2000 WL 33179289, at **2-3 (E.D.N.Y. June 2,

2000) (vessel deemed exempt from declaratory judgment suit despite plaintiffs'

allegations that it was a small, disabled barge docked inland because the subject policy

was a marine protection and indemnity policy within the meaning of section 1113(a)(21)

if the Insurance Law). The Movants consequently may not initiate a direct action against

the Club. Dicola v. Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. (In re Prudential

Lines, Inc.), 158 F.3d 65, 74 (2d Cir. 1998); Mitlof, 123 F. Supp. 2d at 765; Becker, 2000

WL 33179289, at *3.

The New York Court of Appeals has yet to consider whether a plaintiff

barred from bringing a direct action suit may initiate a declaratory judgment action

15

against a marine insurer. Several lower courts have held, however, that such suits may not be brought. See, e.g., Dunn v. Am. Home Assurance Co., 551 N.Y.S.2d 268, 270 (2d Dep't 1990); Cowan v. Cont'l Ins. Co., 446 N.Y.S.2d 412, 413-14 (2d Dep't 1982). Judges in this District and the Eastern District have also held that the state cases that bar plaintiffs from initiating declaratory judgment actions against marine insurers reach the proper result. See Hartford Fire Ins. Co. v. Mitlof, 193 F.R.D. 154, 158 (S.D.N.Y. 2000) (the New York law barring declaratory actions initiated by personal injury plaintiffs against marine insurers "is clear"); Becker, 2000 WL 33179289, at *4 ("New York Insurance Law § 3420(i) has consistently been held to bar personal injury claimants and judgment creditors from bringing declaratory judgment actions to determine coverage under marine indemnity policies.").

Here, of course, what the Movants seek to do is one step removed from bringing a declaratory judgment action. They seek instead merely to intervene in a declaratory judgment action that the insurer itself has commenced. Although this would appear to be an obscure issue, three Judges in this District have considered it at some length, with two of them concluding that intervention should not be allowed.

In Hartford Fire Insurance Co. v. Mitlof, 123 F. Supp. 2d 762 (S.D.N.Y. 2000), the insurer of a capsized vessel brought a declaratory judgment action against its insured to clarify the scope of a marine insurance policy. Id. at 763. The proposed intervenors, who had been injured during the incident and were asserting state tort claims,

sought to intervene pursuant to Rule 24. Id. Despite the lack of Jones Act claims, Judge Conner determined that the action arose under admiralty jurisdiction, which triggered the use of New York state law to interpret the insurance contract. Id. at 764. After reviewing the relevant case law, Judge Conner denied the proposed intervenors' request to intervene either as of right or permissively. Id. at 769. As the Judge explained, New York law afforded the insurer certain rights, including immunity "from suit by strangers to its . . . policy," that should not be altered by the intervenors "merely because they would enter the case as defendants." Id. at 770.[3]

Similarly, in Kheel v. American Steamship Owners Mutual Protection and Indemnity Association, 45 F.R.D. 281 (S.D.N.Y. 1968), a group of longshoremen brought

---

[3]    Earlier in his opinion, Judge Conner found that the vessel in question was not ocean going, and thus was not covered by the maritime exception to direct action suits. Mitlof, 123 F. Supp. 2d at 767. Thus, while he concluded that a tort plaintiff may not intervene in a declaratory judgment action initiated by an insurer against its insured, the rationale for the decision is that the intervenors had yet to obtain a judgment against the insured, not that the maritime exclusion to direct action suits applied. Id. at 771.

     In an earlier opinion arising from the same incident, Judge Conner allowed a co-insurer to intervene in another declaratory judgment action initiated by the Hartford Fire Insurance Company. See Hartford Fire Ins. Co. v. Mitlof, 193 F.R.D. 154, 162 (S.D.N.Y. 2000) ("Mitlof I"). In arriving at this decision, Judge Conner noted that the prospective intervenor was a co-insurer involved in defending the underlying personal injury actions; as such, he found that cases barring personal injury claimants and judgment creditors from intervening were not wholly applicable. Id. at 159. Moreover, citing Watson v. Aetna Casualty & Surety Co., 675 N.Y.S.2d 367, 370 (2d Dep't 1998), Judge Conner concluded that section 3420(i) should be narrowly construed, banning only direct actions prior to judgment, and not "intervention as a defendant in a declaratory judgment action commenced by the insurer itself." Mitlof I, 193 F.R.D. at 158-59. While the present suit involves a declaratory judgment action commenced by the insurer, the proposed intervenors here are personal injury claimants. Judge Conner's reasoning in Mitlof I is therefore inapplicable.

17

personal injury claims against their employer.  After the Club declined to pay certain claims or assume the defense of others until the company had paid its deductible, the trustees of the then-bankrupt insured filed a declaratory judgment against the Club.  Id. at 282.  Then District Judge Mansfield denied the application of several of the longshoremen to intervene in that suit on several grounds.  Id. at 284-85.  First, he concluded that the longshoremen's claims, which had yet to be reduced to judgment, were "insufficient to warrant intervention."  Id. at 284.  Second, he relied on the absence of any indication that the trustees would "fail to prosecute the instant action diligently."  Id. Third, he noted that the longshoremen did not appear to have a direct right of action against the Club.  Id.  Finally, Judge Mansfield observed that the additional court filings that would accompany intervention would shed "no substantial additional light" on the legal questions at issue since the essential facts were not in dispute.  Id. at 284.

The third decision rejects the proposition, accepted in both Mitlof and Kheel, that the lack of a direct right of action should preclude intervention.  See United States Lines, Inc. et al. v. Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc., et al. (In re United States Lines, Inc.), 169 B.R. 804, 829 (S.D.N.Y. 1994), rev'd on other grounds, 197 F.3d 631 (2d Cir. 1999).  In that case, the bankruptcy court allowed asbestos claimants to intervene in a declaratory judgment action filed by the trustee of United States Lines against the Club.  Id.  The court concluded that, even if the claimants lacked standing to sue the Club directly under New York law, they did not need standing for

purposes of intervention under Rule 24(a) if "an actual case or controversy exist[ed] between the initial, ongoing litigants." Id. at 830. As there was a justiciable controversy between the trustee and the Club, the court held that the claimants could "stand on the [t]rust's broad shoulders for purposes of this core proceeding." Id. at 831. In arriving at this determination, the court relied on the "broad remedial purpose" of the Jones Act, which it believed arguably pre-empted New York's marine insurance law. Id. The court also noted the Supreme Court's observation that "'the judiciary has traditionally taken the lead in formulating flexible and fair remedies in the law of maritime.'" Id. (quoting McDermott, Inc. v. AmClyde, 511 U.S. 202, 207 (1994)).

Notwithstanding the lofty principles cited in United States Lines, the fact remains that the Movants cannot maintain a direct action against the Club under New York law. Even if that reality should ordinarily be overlooked in the context of Jones Act claims, as the Bankruptcy Court suggests, the outcome of the Movant's claims against the insured in this case is subject to a double contingency. As noted earlier, the Movants brought their claims in the Eastern District of Pennsylvania against Prudential Lines and Grace Lines – now the PLI Trust – rather than the Club. Thus, in order for the Movants to recover on their claims, the Movants, whose cases have been dismissed, (see n. 2, supra), will first have to enter into a settlement with the Trustee, something which they concede has yet to happen. Second, the Trustee will have to recover money from the

Club. It is far from certain that such a recovery will ever occur in light of the "pay first" requirement in the Club's policies. (See n. 1, supra).

In Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co., 922 F.2d 92 (2d Cir. 1990), the Second Circuit affirmed the denial of a proposed intervenor's motion to intervene in similar circumstances. There, several Vermont municipalities and electrical cooperatives contracted with the Massachusetts Municipal Wholesale Electric Company ("Massachusetts") to purchase shares of electrical capacity. Id. at 94. After the Vermont Supreme Court declared those contracts void, one of the participants filed a suit to recover the money it had paid under those contracts, which was removed to federal court. Id. at 94-95. The Vermont Department of Public Service, which regulated electrical cooperatives in the state of Vermont, then sought to intervene on behalf of ratepayers. Id. at 95. In its decision, the Second Circuit noted that the interest of the Department was subject to a double contingency: not only would the participant have to prevail against Massachusetts in its suit for a refund, but another state agency, the Vermont Public Service Board, would then have to determine whether ratepayers were entitled to a portion of that recovery. Id. at 97. The court concluded that intervention as of right was properly denied because the interest of the Department could not "be described as direct or substantial." Id.

The Movants also fail to meet the two remaining requirements for intervention as of right: that their interest in the litigation will be harmed unless they are

permitted to intervene, and that their interests will not adequately be represented by the current defendants. The Movants cannot make the first showing because their interest in this litigation is, at best, contingent. They also have not made a persuasive showing that the defendants are unsatisfactory surrogates.

Although a proposed intervenor generally must make only a minimal showing of inadequate representation, a "more rigorous showing of inadequacy [is required] in cases where the putative intervenor and a named party have the same ultimate objective." Butler, 250 F.3d at 179. In such cases, the Movant "must rebut the presumption of adequate representation by the party already in the action." Id. at 180. Among the factors that may be considered in overcoming this presumption are "evidence of collusion, adversity of interest, nonfeasance, or incompetence." Id.

Here, the Movants' proposed answer confirms that the Movants and the defendants share the same ultimate goal in this litigation – namely, obtaining a declaratory judgment that the Club's practice of indemnifying members for asbestos-related IBNR claims incurred during closed Insurance Years is proper. Thus, the Movants must rebut the presumption that the current defendants will inadequately represent their interests. The only scenario that they were able to posit during oral argument was that the defendants may have different monetary thresholds for settling this litigation, which, of course, assumes that a settlement is a likely outcome. Even if that were shown, the Movants' wholly speculative assertion is not enough to overcome the

presumption that they will be adequately represented by the existing defendants.

Accordingly, intervention as of right must be denied.

      C.    <u>Permissive Intervention</u>

      The Movants also argue that they should be granted permissive

intervention. Under Rule 24(b) of the Federal Rules of Civil Procedure:

> Upon timely application anyone may be permitted to intervene
> in an action: (1) when a statute of the United States confers a
> conditional right to intervene; or (2) when an applicant's
> claim or defense and the main action have a question of law
> or fact in common.
>
> . . . .
>
> In exercising its discretion the court shall consider whether
> the intervention will unduly delay or prejudice the
> adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b).

      Pursuant to the Rule, a district court has broad discretion in determining

whether to grant permissive intervention. <u>SEC v. Bear, Stearns & Co.</u>, No. 03 Civ. 2937

(WHP), 2003 WL 22000340, at *2 (S.D.N.Y. Aug. 25, 2003). In arriving at its

determination, the court may consider substantially the same factors as when evaluating a

motion to intervene as of right. <u>In re Bank of New York Derivative Litig.</u>, 320 F.3d 291,

300 n.5 (2d Cir. 2003).

      In the absence of any statutory right to intervene, the Movants must show

that their claims against the Trust, and the Club's claims against its members, have

questions of law or fact in common. At a macro level, it is obviously true that the Movants and insureds share an interest in maximizing the available insurance funds by defeating the Club's claims in this suit. Nevertheless, their claims are decidedly different: the Movants' claims against the Trust are tort claims brought pursuant to the Jones Act, while the members' focus in this case is the proper scope and application of insurance policies issued by the Club to which the Movants are not parties. Given the narrow focus of this suit, there is no reason to believe that the Movants' presence in this case would further illuminate any issues of fact or law. See United States v. City of New York, 179 F.R.D. 373, 381 (E.D.N.Y. 1998) (denying permissive intervention where "the claimed interests of the proposed intervenors, although broadly related to the subject matter of this action, are extraneous to the issues before the court"), aff'd, 198 F.3d 360 (2d Cir. 1999); Kheel, 45 F.R.D. at 284 (concluding that intervenors' additional court filings would shed "no substantial additional light" on the legal questions).

A court may also deny permissive intervention when it would cause "undue delay, complexity or confusion in a case." Bear, Stearns, 2003 WL 22000340, at *2. Here, in the papers and at oral argument, the parties and Movants have debated whether the incorporation of 10,000 Maritime Claimants into an already factually complicated contract action would lead to unnecessary complexity, particularly where the Movants' other actions arise in the context of a bankruptcy proceeding. (See, e.g., Keystone Defs' Mem. at 8; Reply Mem. at 2). Even if the case would be manageable despite the

23

Movants' presence, there are at least two additional factors which augur against permissive intervention. First, while it is generally true that the Movants and defendants share an interest in maximizing the funds available to pay claims under the Club's policies, that common goal only arises after the Movants have proved their underlying Jones Act claims. Until then, the Movants and the defendants in this action are, in reality, adverse parties. To allow the Movants to participate in discovery which might not be particularly controversial as between the Club and its members might therefore necessitate detailed procedures to protect the rights of the original parties. As counsel noted at oral argument, the Court might also be required to address questions of attorney-client privilege which could otherwise be amicably resolved. Second, the resolution of questions such as these would likely lead to delay. See Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc., 725 F.2d 871, 877 (2d Cir. 1984) (denial of permissive intervention proper where it might "deter a settlement and . . . exacerbate a potential conflict of interest").

For these reasons, the motion for permissive intervention is denied.

D.     Amicus Curiae Role

Although the Movants have not made the showing necessary to intervene in this action, they and their counsel are extremely knowledgeable about many of the issues that the Court will be asked to consider. In Kheel, Judge Mansfield adopted an intermediate position which strikes me as equally appropriate here. Accordingly, as in Kheel, the

24

Movants will be permitted to participate in this declaratory judgment action as <u>amici curiae</u>, and copies of all pleadings and papers are to be served on them. Additionally, the Movants may renew their application to intervene if circumstances change and a more adequate showing can be made. <u>See</u> <u>Kheel</u>, 45 F.R.D. at 285.

III.    <u>Conclusion</u>

For the reasons set forth above, the Movants' application to intervene as of right or permissively is denied without prejudice to a later application. Additionally, the Movants may participate in this action as <u>amici curiae</u>, and copies of all pleadings and papers are to be served on them.

SO ORDERED.

Dated:    New York, New York
February 22, 2005

FRANK MAAS
United States Magistrate Judge

25

Copies to:

Honorable Lewis A. Kaplan
United States District Judge

Lawrence J. Bowles, Esq.
Nourse & Bowles, LLP
Attorneys for Plaintiff

Dan Shaked, Esq.
Shaked & Posner
Attorneys for Movants

Allan Kellman, Esq.
Maritime Asbestosis Legal Clinic
Attorneys for Movants

Seth B. Schlafer, Esq.
Proskauer Rose, LLP
Attorneys for Keystone Defendants