John M. Toriello (JT1822)
James V. Marks (JM6257)
HOLLAND & KNIGHT LLP
195 Broadway, 24th Floor
New York, NY 10007
(212) 513-3200

Attorneys for Defendants
American President Lines, Ltd., and
American President Lines, Ltd. as Successor to American Mail Line

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.,

Plaintiff,

-against-

ALCOA STEAMSHIP CO., INC., et al.,

Defendants.

---

04 Civ. 4309 (LAK) (JCF)

**MEMORANDUM OF LAW OF DEFENDANT APL IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND TO COMPEL PRODUCTION OF DOCUMENTS IDENTIFIED IN APL'S PRIVILEGE LOG**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

SUMMARY OF ARGUMENT .......... 1

STATEMENT OF FACTS .......... 3

ARGUMENT .......... 4

APL SHOULD NOT BE ORDERED TO PRODUCE ANY OF THE DOCUMENTS IDENTIFIED IN ITS PRIVILEGE LOG BECAUSE THE *GARNER* DOCTRINE IS NOT APPLICABLE .......... 4

A. The Subject Documents Are Privileged .......... 4

B. The *Garner* Doctrine is Not Applicable .......... 6

1. APL Itself Did Not Have a Fiduciary Relationship with the Club .......... 7

2. The Purported Fiduciary Duties of APL's Representatives on the Club's board is Not a Basis to Pierce APL's Privilege .......... 9

3. The Cases Relied Upon by the Club are Readily Distinguishable .......... 11

4. The Club Cannot Show Good Cause for Use of the *Garner* Doctrine .......... 12

CONCLUSION .......... 14

## TABLE OF AUTHORITIES

## FEDERAL CASES

Asian Vegetable Research & Dev. Ctr. v. Institute of Int'l Educ., No. 94-6551, 1996 WL 14448 (S.D.N.Y. Jan. 16, 1996) ....................................7, 9

Bairnco Corp. Sec. Litig. v. Keene Corp., 148 F.R.D. 91 (S.D.N.Y. 1993)..........................................................................2, 10, 11,

In re Colocotronis Tanker Sec. Litig., 449 F. Supp. 828 (S.D.N.Y. 1978) ....................9

Freeman v. MBL Life Assur. Corp., 60 F. Supp. 2d 259 (S.D.N.Y. 1999)....................8

Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970).........................2, 7, 10, 11, 12

In re Grand Jury Investigation, 399 F.3d 527 (2d Cir. 2005).....................................5

In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d 1032 (2d Cir. 1984)...........................................................................5

Henry v. Champlain Enter., 212 F.R.D. 73 (N.D.N.Y. 2003) ...................................12

In re Int'l Bus. Mach. Corp. Sec. Litig., No. 92 Civ. 9076, 1993 WL. 760214 (S.D.N.Y. Nov. 30, 1993) ..................................................................11, 13

Lugosch v. Congel, 219 F.R.D. 220 (N.D.N.Y. 2003)................................................12

In Re Metro. Life Derivative Litig., 935 F. Supp. 286 (S.D.N.Y. 1996) .......................8

Miller v. Genesco, Inc., No. 93-0096, 1994 WL 698287 (S.D.N.Y. Dec. 13, 1994)......13

Mui v. Union of Needletrades, Indus. and Textile Employees, AFL-CIO, No. 97-7270, 1998 WL 915901 (S.D.N.Y. Dec. 30, 1998)...............................................13

In re Pfizer Inc. Sec. Litig., No. 90-1260, 1993 WL 561125 (S.D.N.Y. Dec. 23, 1993)........................................................................13

Quintel Corp. v. Citibank, 567 F. Supp. 1357 (S.D.N.Y. 1983) ................................12

RMED Int'l, Inc. v. Sloan's Supermarkets, Inc., No. 94-5587, 2003 WL 41996 (S.D.N.Y. Jan.6, 2003)..........................................................................7

In re Six Grand Jury Witnesses, 979 F.2d 939 (2d Cir. 1992) ...................................5

Swidler & Berlin v. United States, 524 U.S. 399 (1998)....5

**STATE CASES**

Acquista v. New York Life Ins. Co., 730 N.Y.S.2d 272 (1st Dep't 2001)....8

Batas v. Prudential Ins. Co. of America, 724 N.Y.S.2d 3 (1st Dep't 2001)....8

Fidelity & Casualty Co. of New York v. Metropolitan Life Ins. Co., 248 N.Y.S.2d 559, 42 Misc. 2d 616 (N.Y. Sup. Ct., N.Y. Cty. 1963)....8

Shah v. Metropolitan Life Ins. Co., No. 108887/00, 2003 WL 728869 (N.Y. Sup. Feb. 21, 2003)....8, 10

**TREATISE**

N.Y. Jur. Insurance § 157....8

Defendant APL[1] respectfully submits this memorandum of law in opposition to the American Club's motion for a protective order and to compel the production of all documents identified in APL's privilege log ("Motion").

## SUMMARY OF ARGUMENT

Through its Motion, the American Club unabashedly seeks to selectively shield from production some of its purported privileged documents while simultaneously compelling APL to produce all documents identified in its privilege log.[2] See AC Brf.[3] at 1-2, 20-22. The latter portion of the Motion seeks an unprecedented finding – that APL is not entitled to any privileged communications with its own counsel simply because it was a member of the Club and its representatives were former directors of it. This is not, and cannot be, the law. The American Club's argument is premised upon its erroneous and unsupported assumption that APL itself had a fiduciary relationship with the Club. Under New York law, however, APL's relationship with the Club was not of a fiduciary nature. As such, the Garner Doctrine invoked by the Club cannot be used as a basis to compel the production of APL's privileged documents.

---

[1] "APL" refers to "American President Lines, Ltd.," which was sued in this action as "American President Lines, Inc. and American President Lines, Ltd. as Successor to American Mail Line." The "American Club" or "Club" refers to the plaintiff American Steamship Owners Mutual Protection and Indemnity Association, Inc.

[2] APL takes no position at this time regarding the American Club's motion for a protective order with respect to the two documents it claims to have produced inadvertently. Upon receiving Farrell Lines' counsel's request to return these documents, APL promptly returned them to the producing party (Farrell) without reviewing them.

[3] "AC Brf." refers to the American Club's moving brief.

Even if APL's representatives who served as directors of the American Club had fiduciary duties to the Club, as the Club asserts, the directors' own personal duties would not form a basis for piercing APL's attorney-client privilege. APL itself, not its representatives, holds the privilege the Club now seeks to shatter. In this regard, all of the documents identified in APL's privilege log are documents to which APL alone asserts a privilege. In its brief, the Club acknowledges the different "hats" worn by its directors and uses that fact as a basis to shield from disclosure information provided to them. See AC Brf. at 13 ("Mr. Agresti received that letter solely in his capacity as a director and fiduciary of the Club, not as an officer of Farrell Lines.") (emphasis in original). The Club, therefore, cannot now pretend that its former directors did not wear different "hats" to argue that there was an abrogation of APL's privilege. APL received the privileged documents, not for the Club's use or because APL had representatives on the Club's Board, but solely for its own purposes.

The American Club's principal reliance upon the Garner and Bairnco decisions[4] is also misplaced for other reasons. For example, even if these decisions were binding on this Court, which they are not, they are readily distinguishable. Unlike the case at bar, both decisions involved securities fraud cases that raised questions of fraudulent intent and implicated the crime-fraud exception to the attorney-client privilege. In stark contrast, the contract claims in this action concern whether APL is entitled to receive the benefits of its insurance contracts

---

[4] Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970); Bairnco Corp. Sec. Litig. v. Keene Corp., 148 F.R.D. 91 (S.D.N.Y. 1993).

with the American Club, which contracts the Club had honored for decades. See Exs. 1 and 3 to Carroll Aff.[5] Notably, the Club did not assert fraud or breach of fiduciary duty claims against APL or its former directors. See Ex. 1 to Carroll Aff. Given the contract-based claims asserted in the Complaint and the American Club's knowledge and access to relevant information from many other sources, the Garner and Bairnco decisions are simply inapplicable. The Club also cannot show good cause for obtaining APL's privileged documents.

For these reasons, and the reasons set forth below, APL respectfully submits that the motion to compel should be denied in its entirety.

## STATEMENT OF FACTS

For sake of judicial economy, APL respectfully incorporates by reference the Preliminary Statement and Counterstatement of the Facts set forth in the memoranda of law of defendants Keystone and Farrell Lines submitted in opposition to the Motion. But see supra note 2.

In sum, APL rejects the American Club's unsubstantiated and largely fictional account of the supposed "facts" of the case. APL also strongly disagrees with the Club's conclusory and unsupported statements regarding the applicable law. Given the limited discovery issues actually presented by the Motion, APL questions the American Club's motives for droning on for thirteen (13) pages about the purported merits of its claims. It is as if the Club desperately hopes that the

---

[5] "Carroll Aff." refers to the May 27, 2005 Affidavit of Shaun F. Carroll submitted with the Club's moving papers.

more it repeats its unsupported allegations, the more someone will believe them. The American Club's frantic grasp for APL's privileged communications only further highlights the weaknesses of the Club's claims.

## ARGUMENT

## APL SHOULD NOT BE ORDERED TO PRODUCE ANY OF THE DOCUMENTS IDENTIFIED IN ITS PRIVILEGE LOG BECAUSE THE *GARNER* DOCTRINE IS NOT APPLICABLE.

As mentioned, the American Club seeks an Order compelling APL to produce all documents – without exception – that are identified in APL's privilege log. See AC Brf. at 2, 20. The Club makes no attempt whatsoever to distinguish between (i) the nature of the withheld documents, (ii) the persons who authored and/or received those documents, and/or (iii) the privileges asserted with respect to each document.[6] It simply announces "we want them all." The Club is not entitled to any of these documents, however, because they are privileged.

### A. The Subject Documents Are Privileged.

APL's privilege log indicates that the documents identified in it have been withheld on the basis of the attorney-client privilege and/or work product doctrine. See Ex. 10 to Carroll Aff. Through its Motion, however, the American Club appears to solely challenge APL's assertion of the attorney-client privilege. See AC Brf. at

[6] The documents identified in the log include APL's communications with in-house counsel (e.g., Tavrow, Sevekow, Cattani), as well as its communications with outside counsel. See Ex. 10 to Carroll Aff. The communications with outside counsel include those with counsel approved by the Club to defend the underlying asbestos actions (e.g., Binzley) and communications with counsel retained by APL for other matters (e.g., Molloy, Mirsky). See id.

15-16, 21 (stating, *inter alia*, "the Defendants have no right to assert an attorney client privilege in respect of documents...."). Thus, APL will focus its discussion on that privilege.

The attorney-client privilege exists "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1036 (2d Cir. 1984) (emphasis added). In the case of a corporation, "the privilege extends to communications between a lawyer and his or her client – both information provided to the lawyer by the client and professional advice given by an attorney that discloses such information." In re Six Grand Jury Witnesses, 979 F.2d 939, 944 (2d Cir. 1992).

The attorney-client privilege is "'one of the oldest recognized privileges for confidential communications' ... that for centuries has been a part of the common law, in one form or another." In re Grand Jury Investigation, 399 F.3d 527, 530 (2d Cir. 2005) (quoting Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998)). Although its rationale has shifted over time, "[t]oday, the generally acknowledged purpose of the privilege is 'to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."'" Id. at 531. Courts have strictly adhered to the rule because "consistent application of the privilege over time is

necessary to promote the rule of law by encouraging consultation with lawyers, and ensuring that lawyers, once consulted, are able to render to their clients fully informed legal advice." Id. Thus, courts have found "it best to proceed cautiously when asked to narrow the privilege's protections in a particular category of cases." Id. In short, the party who seeks to pierce the attorney-client privilege must clear a high hurdle.

The documents identified in APL's log satisfy the privilege requirements outlined above. Notably, the American Club does not dispute that the documents are confidential communications to or from counsel for the purpose of obtaining legal advice. Thus, the Club concedes they are subject to the attorney-client privilege. Moreover, the American Club does not argue that APL has waived the privilege.[7] In fact, it says the opposite in its brief. See AC Brf. at 16 ("defendants have refused to waive the attorney-client privilege...."). Thus, the documents should remain privileged unless one of the few exceptions to the general rule applies.

B. The *Garner* Doctrine is Not Applicable.

The American Club asserts that the Garner Doctrine, enunciated by the Fifth Circuit, entitles it to all of APL's privileged documents. That Doctrine holds that where corporate shareholders bring a derivative action against the corporation on charges of acting inimically to shareholder interests, the need to protect those

[7] In a letter dated June 9, 2005, the American Club's counsel withdrew the Club's argument that APL had waived the attorney-client privilege with respect to the "Molloy legal opinion." The Court, therefore, should ignore the Club's waiver arguments in its brief (Point III).

interests may justify overcoming the corporation's attorney-client privilege with respect to communications between the corporation (i.e., its officers and directors) and the corporation's counsel -- if the shareholders can show good cause as to why the privilege should not apply. Garner, 430 F.2d at 1103-04. Garner turns on the fact that a corporation's management "does not manage for itself," rather the beneficiaries of management's actions are the corporation's shareholders; management "has duties which run to the benefit ultimately of the stockholders," thus "management judgment must stand on its merits, not behind an ironclad veil of secrecy which under all circumstances preserves it from being questioned by those for whom it is, at least in part, exercised." Id. at 1101.

The Second Circuit "has never expressly adopted or applied" the Garner Doctrine.[8] RMED Int'l, Inc. v. Sloan's Supermarkets, Inc., No. 94-5587, 2003 WL 41996, at *4 (S.D.N.Y. Jan.6, 2003). Moreover, the Garner Doctrine apparently has never been applied in the context of a mutual insurance company. Even if the Garner Doctrine were the law in this Circuit and applied to mutual insurance companies, it nevertheless would not apply in this case for several reasons.

1. APL Itself Did Not Have a Fiduciary Relationship with the Club.

In its Motion, the Club acknowledges that a fiduciary relationship must exist in order for the Garner Doctrine to apply. See AC Brf. at 20; see also Asian Vegetable Research & Dev. Ctr. v. Institute of Int'l Educ., No. 94-6551, 1996 WL

[8] Courts in this District have applied the Doctrine under circumstances much different than those presented in this case.

14448, at *17-18 (S.D.N.Y. Jan. 16, 1996). The Club then asserts that APL itself served as a fiduciary of the Club. See AC Brf. at 20, Heading for Point II ("DEFENDANTS ... WHILE SERVING AS FIDUCIARIES OF THE CLUB.").

In New York, the legal relationship between the mutual insurance company and its members has been described as follows:

> A mutual insurance company is a cooperative enterprise in which the policyholders constitute the members for whose benefit the company is organized, maintained and operated.... As an incident of membership in such company, the policyholder acquires certain specified proprietary interests therein, but, apart from these, the relationship is not of a fiduciary nature nor is the policyholder in any sense a partner of the corporation, and the relationship between the company and its policyholder is essentially that of debtor and creditor measured by the contractual terms of the policy....

Fidelity & Cas. Co. of New York v. Metropolitan Life Ins. Co., 248 N.Y.S.2d 559, 565, 42 Misc. 2d 616, 623 (N.Y. Sup. Ct., N.Y. Cty. 1963) (internal citations omitted) (emphasis added); see also In Re Metropolitan Life Derivative Litig., 935 F. Supp. 286, 293 (S.D.N.Y. 1996) ("the relationship between a mutual insurer and a policyholder 'is not of a fiduciary nature' but is instead that of a debtor and creditor"); Shah v. Metropolitan Life Ins. Co., No. 108887/00, 2003 WL 728869, at *15 (N.Y. Sup. Feb. 21, 2003) (noting that "the relationship between policyholders and a mutual life insurer is generally one of contract, and does not give rise to a fiduciary relationship"); N.Y. Jur. Insurance § 157.[9] Given this authority, APL

[9] Other insurance relationships also do not give rise to a fiduciary relationship. See Acquista v. New York Life Ins. Co., 730 N.Y.S.2d 272 (1st Dep't 2001) (holding that the duties and obligations of the parties to an insurance policy are contractual rather than fiduciary); Batas v. Prudential Ins. Co. of Am., 724 N.Y.S.2d 3 (1st Dep't 2001) (holding that no special relationship of trust or confidence arises out of an insurance contract between the insured and the insurer, but that the relationship is

clearly did not have a fiduciary relationship with the American Club during the time it was a member. The Club's former counsel, William Fallon, admitted as much in his February 14, 1979 opinion. See Ex. 11 to Carroll Aff. at 5 (quoting Uhlman that stated "in a mutual company...the relation of the policyholder and the [insurance] company was one of contract...."). Thus, the Garner Doctrine is wholly inapplicable in this case. See, e.g., In re Colocotronis Tanker Secs. Litig., 449 F. Supp. 828 (S.D.N.Y. 1978) (holding Garner Doctrine did not apply because the key element of a fiduciary relationship was absent); Asian Vegetable, 1996 WL 14448 (same).

2. The Purported Fiduciary Duties of APL's Representatives on the Club's Board is Not a Basis to Pierce APL's Privilege.

In its brief, the American Club also argues that APL's representatives "acted as fiduciaries of the Club" (see AC Brf. at 20) and then seemingly tries to impute this alleged relationship to APL in an effort to circumvent APL's privilege. Tellingly, the Club has not cited any authority to support its efforts to impute this relationship to APL. This is not surprising because, if by merely sitting on the Board of Company X a representative of Company Y could waive Company Y's attorney-client privilege, then why would Company Y allow its representative to serve as a Director of Company X? The answer is simple – it would not.

---

legal rather than equitable); Freeman v. MBL Life Assur. Corp., 60 F. Supp. 2d 259 (S.D.N.Y. 1999) (holding that under New York law, the relationship between an insurance company and a policyholder is a contractual relationship, not a fiduciary one).

The Club's assertion that APL's representatives "acted as a fiduciaries" and, therefore, APL itself is not entitled to any privileged communications, confuses the issue of who has the privilege the Club now seeks to push aside. The issue is clear. The privileged documents identified in APL's log belong to APL, not its representatives who happened to be directors of the Club's Board. Thus, even if APL's representatives may themselves have had certain fiduciary duties to the Club[10] and the Garner Doctrine could be applied to them, the Club could not pierce APL's attorney-client privilege to obtain APL's documents. In its brief, the Club acknowledges the different "hats" worn by its directors and uses that fact as a basis to shield from disclosure information provided to them. See AC Brf. at 13 ("Mr. Agresti received that letter solely in his capacity as a director and fiduciary of the Club, not as an officer of Farrell Lines.") (emphasis in original). The Club simply cannot have it both ways – protecting its privilege documents because one of its member's representatives was acting solely for the Club as a director but then obtaining that same members' privileged documents because the representative was acting as both a director and employee of the member. Not surprisingly, the Club previously recognized the difference in the directors' duties when it directed the members to obtain an opinion of "their own counsel." See Ex. 12 to Carroll Aff. Having directed APL to obtain an opinion from its "own counsel," the Club cannot now claim that such opinion is not privileged and must be given to it.

---

[10] The Shah case states that any fiduciary obligations that a director of a mutual insurance company might have to policyholders "would be based not on common law, but on statute." Shah, 2003 WL 728869, at *14. In its brief, the American Club does not cite any statute that sets forth the fiduciary duties of its former directors.

3. The Cases Relied Upon by the Club are Readily Distinguishable.

The Garner and Bairnco decisions cited by the American Club in support of its position are readily distinguishable. First, unlike the case at bar, both Garner and Bairnco involved suits by shareholders of corporations against their corporations. See Garner, 430 F.2d at 1095; Bairnco, 148 F.R.D. at 94. Although some courts have found that the Garner Doctrine is not limited to these types of claims, other courts have found that, where the suit is not a derivative action against a corporation, the Garner Doctrine is less likely to be applied. See In re Int'l Bus. Mach. Corp. Secs. Litig., No. 92-9076, 1993 WL 760214, at *3 (S.D.N.Y. Nov. 30, 1993).

Second, both the Garner and Bairnco Courts thought the serious circumstances of those cases possibly implicated the crime-fraud exception to the attorney-client privilege. See Garner, 430 F.2d at 1103; Bairnco, 148 F.R.D. at 101. In this case, the Club has not alleged, nor could it, that the crime-fraud exception to the attorney-client privilege is implicated. In fact, in its Complaint the Club did not even assert fraud or breach of fiduciary duty claims, let alone criminal allegations. See Ex. 1 to Carroll Aff.

Third, unlike in Bairnco, in this case the American Club seeks "wholesale production of all applicable documents," which fact alone counsels against applying the Garner Doctrine. Bairnco, 148 F.R.D. at 99.

Fourth, contrary to the Club's conclusory assertions (see AC Brf. at 22), the documents identified in APL's privilege log are of a substantially different nature

than the statistical data, charts and invoices at issue in Bairnco, 148 F.R.D. at 97. APL's privileged documents seek and/or impart legal advice from both APL's in-house and outside counsel on a variety of issues. In any event, the Bairnco court specifically stated that it was not compelling the production of the subject documents because the nature of the documents involved, i.e., legal or business related, could not be "readily categorized." Id. at 97.

The other cases cited by the American Club are similarly distinguishable. For example, Henry v. Champlain Enters., 212 F.R.D. 73 (N.D.N.Y. 2003) was an ERISA case involving much different relationships between the parties. Quintel Corp. v. Citibank, 567 F. Supp. 1357 (S.D.N.Y. 1983) involved an action between a bank and its client where the testimony of the bank's attorney was the only available source for the information sought. In Lugosch v. Congel, 219 F.R.D. 220 (N.D.N.Y. 2003), the Court actually found that the defendants sustained their burden of establishing the attorney-client privilege and work product doctrine over the vast majority of documents at issue, largely because the communications pertained to non-fiduciary matters.

4. The Club Cannot Show Good Cause for Use of the *Garner* Doctrine.

Even if the Garner Doctrine were possibly applicable under the facts of this case, it should not be applied because the American Club cannot show "good cause" for overcoming APL's attorney-client privilege. Showing "good cause" includes establishing that there is a need for the documents, that the documents cannot be

obtained relatively easily from another source, and that obtaining the documents will not cause undue prejudice to the defendants. Garner, 430 F.2d at 1104. The Club cannot show any of these requirements. The fact that a party is "blindly fishing" for information to prop up its claims, like the Club is doing with its Motion, militates against a finding of "good cause." See id. at 1104.

The allegations in the Complaint reveal that the Club believes the language of the relevant policies and the Club's by-laws, coupled with the application of New York law, are alone a sufficient bases for the relief sought by it. See Ex. 1 to Carroll Aff. Most of the language in the Club's brief also supports this conclusion. See AC Brf. at 8 ("This practice ... is not only not provided for in the Club's By-Laws, insurance policies or New York law, it is plainly contrary to the core concepts of mutuality....). Given the contractual nature of the claims involved, the "knowledge," "intent" and "motivation" of APL and its representatives are irrelevant in this case, despite what the Club now asserts. See AC Brf. at 16, 22.[11] For these reasons, the American Club has not and cannot demonstrate a need for APL's privileged documents in order to prosecute its contract-based claims against APL. The Garner Doctrine, therefore, is not applicable. See, e.g., Miller v. Genesco, Inc., No. 93-0096, 1994 WL 698287, at *1 (S.D.N.Y. Dec. 13, 1994); In re Pfizer Inc. Secs. Litig., No. 90-1260, 1993 WL 561125, at *13 (S.D.N.Y. Dec. 23, 1993); In re Int'l Bus. Machines Corp. Secs. Litig., No. 92-9076, 1993 WL 760214, at *6 (S.D.N.Y.

---

[11] As demonstrated in Keystone's opposition papers, the American Club and its Managers, Shipowners Claims Bureau, had the exact same knowledge of the nature and extent of the asbestos litigation as did the Club's membership.

Nov. 30, 1993) Mui v. Union of Needletrades, Industrial and Textile Employees, AFL-CIO, No. 97-7270, 1998 WL 915901, at *3 (S.D.N.Y. Dec. 30, 1998).

## CONCLUSION

Based upon the foregoing, APL respectfully requests that the American Club's motion to compel the production of all documents identified in APL's privilege log be denied in its entirety.[12]

Dated: New York, New York
June 10, 2005

HOLLAND & KNIGHT LLP

By ______________________
John M. Toriello (JT1822)
James V. Marks (JM6257)
195 Broadway
New York, NY 10007
(212) 513-3200

Attorneys for Defendants
American President Lines, Ltd., and
American President Lines, Ltd. as
Successor to American Mail Line

[12] The Motion also seeks to compel APL to produce its counsel for depositions. The American Club, however, has never asked APL to produce its former counsel for depositions. Even if it had, APL would have advised the Club that it has no power to compel its former attorneys to appear for depositions. If its counsel's depositions are taken, APL plans to object to any and all questions that infringe upon its attorney-client and/or work product privileges.

**ATTORNEY'S AFFIRMATION OF SERVICE VIA MAIL**

State of New York )<br>
) SS.:<br>
County of New York )

RUDY D. GREEN, an attorney admitted to practice in the Courts of the State of New York, affirms under penalty of perjury:

That on June 10, 2005, I served true copies of the attached Memo, by mailing the same in a duly enclosed and sealed wrapper with first-class postage prepaid thereon and addressed to:

Lawrence J. Bowles, Esq.<br>
Shaun Carroll, Esq.<br>
Nourse & Bowles, LLP<br>
One Exchange Plaza at 55 Broadway<br>
New York, New York 10006-3030

RUDY D. GREEN

Dated: June 10, 2005