UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
AMERICAN STEAMSHIP OWNERS MUTUAL         :
PROTECTION AND INDEMNITY                 :
ASSOCIATION, INC.,                       :     04-CV-04309
                                         :     (LAK) (JCF)
                      Plaintiff,  :
                                         :     ECF CASE
   – against –                           :
                                         :
ALCOA STEAMSHIP CO., INC., et al.,       :
                                         :
                     Defendants.  :
-------------------------------------------------------------------x

**MEMORANDUM OF LAW OF DEFENDANT FARRELL LINES, INC.
IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE
<u>ORDER AND ORDER COMPELLING PRODUCTION OF DOCUMENTS</u>**

*B<small>ROWN</small> R<small>UDNICK</small> B<small>ERLACK</small> I<small>SRAELS</small> LLP*
*Seven Times Square*
*New York, New York 10036*
*(212) 704-0100*

## **Table of Contents**

                                                                                                                    Page

Table of Authorities ................................................................................................ ii

Preliminary Statement ........................................................................................... 1

Background and Context of this Motion............................................................... 1

Argument............................................................................................................... 7

    I.    Plaintiff Has Waived The Right To
        Withhold Its Opinion Letters as Privileged ................................................... 7

    II.    The Club Has No Entitlement To
        Farrell's Privileged Documents ................................................... 10

Conclusion ........................................................................................................... 13

## Table Of Authorities

**Federal Cases**

Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970) .................................................. 10

Haymes v. Smith, 73 F.R.D. 572 (W.D.N.Y. 1976).......................................................... 8

In re Bairnco Corp. Sec. Litig. (Ivers v. Keene Corp.),
    148 F.R.D. 91 (S.D.N.Y. 1993) ....................................................................... 10, 11, 12

In re Sealed Case, 676 F.2d 793 (D.C. Cir. 1982) ....................................................... 7, 8

Madanes v. Madanes, 199 F.R.D. 135 (S.D.N.Y. 2001).............................................. 7, 8

North River Ins. Co. v. Columbia Cas. Co., No. 90 Civ.2518 (MJL),
    1995 WL 5792 (S.D.N.Y Jan. 5, 1995) ...................................................................... 12

Smith v. Alyesak Pipeline Serv. Co., 538 F. Supp. 977,
    aff'd, 758 F.2d 668 (Fed. Cir. 1984).............................................................................. 9

United States v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991) ........................................ 7, 8, 9

**State Cases**

Fidelity & Cas. Co. of New York v. Metropolitan Life Ins. Co., 42 Misc. 2d 616,
    248 N.Y.S.2d 559 (Sup. Ct. New York County 1963) ................................................ 12

Defendant Farrell Lines, Inc. ("Farrell"), by its attorneys, Brown Rudnick Berlack Israels LLP, respectfully submits this memorandum of law in opposition to Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Protective Order and Order Compelling Production of Documents.

## PRELIMINARY STATEMENT

In its motion, Plaintiff American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "Club") seeks to manufacture a purportedly "flagrant" violation of its attorney-client privilege from Farrell's unintentional and limited disclosure of two Club documents that Plaintiff claims are privileged. The Club also seeks to turn the law of waiver on its head by producing many of its own counsel's legal opinions and introducing at least four of them as deposition exhibits, while simultaneously claiming an entitlement to withhold the two opinion letters in question and attempting to deny Farrell (and certain of the other co-defendants) the very attorney-client protections the Club claims for itself. In doing so, the Club argues the purported merits of its case through a one-sided, self-serving "facts" section, replete with dubious (and, in some cases, blatantly incorrect) legal and factual conclusions, most of which are entirely bereft of citation to legal authority or evidence. The Club's motion should be denied in its entirety.

## BACKGROUND AND CONTEXT OF THIS MOTION

The Club's motion was ostensibly brought on, in part, by Farrell's unintended disclosure of two opinion letters prepared by the Club's counsel (the "Bowles Letters"), which were provided to Robert Agresti, Farrell's Executive Vice

President, during his tenure as a member of the Club's board of directors.[1] Farrell inadvertently included the Bowles Letters among the approximately 6,400 pages of documents it produced in response to the Club's discovery requests, to the Club and the seven counsel for co-defendants who requested copies of Farrell's production. Conspicuously absent from the Club's papers is any mention of the fact that Farrell immediately disclosed this inadvertent production upon learning of it (from a co-defendant), and immediately (and without prompting) set upon curing the unintended disclosure. Also unmentioned in the Club's papers is the fact that Farrell promptly advised the seven recipients that they should return or destroy the letters and not make use of their content pending a privilege determination by this Court. (Counsel for each of the seven defendants who received Farrell's production represented that they were complying with this request, and six confirmed that they had not examined the letters in question at all.) Farrell's immediate disclosure of the inadvertent production and prompt steps to return to the status quo pending resolution of this dispute belie the Club's suggestion that the disclosure was somehow intentional or otherwise untoward.[2]

---

[1] While Farrell does not concede that, under the circumstances here, the two Bowles Letters were, as a matter of law, privileged, given the Club's claim of privilege, it did not intend to release the documents absent an agreement with the Club or an appropriate Order of the Court.

[2] The Club engages in blatant hyperbole when it characterizes Farrell's unintentional disclosure of the Bowles letters as "flagrant" and claims that "[t]here [was] nothing inadvertent about th[e] production," even after Farrell Lines represented to the Club that the production was unintended. Pl. Mem. at 14. ("Pl. Mem. at __" refers to pages in Plaintiff's memorandum of law.) Farrell categorically rejects any implication that it has been anything other than forthright with the Club, and similarly rejects the Club's unsupported – and unsupportable – charge that the production of the Bowles Letters was intentional.

The Club is equally selective in presenting facts in support of its argument that Farrell has no entitlement to the Bowles Letters. It claims that the Club produced the Bowles Letters not to Farrell, but to Mr. Agresti, whose fiduciary duties prohibited him from sharing the letters with Farrell. The Club neglects to mention, however, that, when it served its needs, it was quick to release similar legal opinions dealing with the same subject matter – coverage, the Club's assessment policies, the application of deductibles, and reserve issues – both in the ordinary course to its directors, with the understanding and likely the expectation that they would be shared with the non-fiduciary members the directors represented, but also <u>in this very litigation</u>, where it not only produced a substantial number of opinion letters on these issues without any claim of privilege, but affirmatively used a number of those opinions as exhibits in depositions conducted by the Club. Thus, the Club has waived the attorney-client privilege as to <u>all</u> legal opinions concerning coverage, the Club's assessment policies, the application of deductibles, and the use of the Club's reserve account – including the Bowles Letters at issue.

The Club fares no better when it attempts to argue that documents containing advice from Farrell's attorneys are unprotected by the attorney-client privilege. In order to get around the bar of the privilege and obtain these plainly privileged documents, the Club attempts to avail itself of the narrow exception to the attorney-client privilege where a showing of good cause can be made – here the alleged need for knowledge and intent evidence that purportedly is nowhere else readily available. This narrow exception, however, is inapplicable here because it is the

insurance contracts and other applicable writings – and not the intent or knowledge of the Club's directors – that govern the obligation of the Club to provide coverage that lies at the core of this dispute.  Moreover, to the extent the Club is seeking information on Farrell's knowledge of the likely scope of asbestos-related liability claims, the Club, which was, inter alia, in direct contact with the firms handling the defense of these cases, was otherwise fully aware of the trends in asbestos-related claims, and thus cannot show any need to invade Farrell's attorney client privilege.  Nor should the Club be heard to claim that the privilege does not apply to legal advice obtained by Farrell during the period that Mr. Agresti sat on the Club's board of directors.  The attorney-client privilege belongs to Farrell, in its capacity as a member, and is unaffected by an fiduciary duties owed by Mr. Agresti to the Club.

        Finally, the Court should discount, if not outright reject, Plaintiff's statement of purported facts and assertions of the alleged state of the law.  No fewer than thirteen pages of Plaintiff's motion are devoted to a self-serving essay, largely immaterial to the privilege determinations at issue, based on unsupported (and unsworn) statements of fact and entirely bereft of meaningful legal support.  This Court should recognize this skewed recitation of facts and assertions of law for the self-serving editorial that they are, and reject the Club's transparent and inappropriate attempt to shoehorn a merits argument into a discovery application.

        A prime example of the kind of sophistry employed by Plaintiff in its memorandum of law is its explanation of the Club's practice of drawing on its reserves to indemnify members for incurred, but not reported ("IBNR") occupational disease

claims from "closed" insurance years. Drawing on reserves to indemnify such claims, explains the Club, "c[ame] to be called "the discretionary practice." Pl. Mem. at 8. In fact, the <u>only</u> party to call this practice "discretionary" is the Club itself, which coined the phrase for the purposes of this litigation. Indemnifying IBNR claims was and is an <u>obligatory</u> practice mandated by the operative insurance contracts, and one whose threatened discontinuation is one of the central issues in this litigation.[3]

Numerous other assertions are made by the Club without legal support or factual basis. For example, the Club claims "[t]hough it is the named plaintiff, the reality is that the American Club is the defendant and the named or nominal defendants are in reality the plaintiffs." Pl. Mem. at 3. But it is <u>the Club</u> that is seeking to disclaim what until recently was regarded as a clear contractual obligation to indemnify its members for covered liabilities including occupational disease claims (regardless of whether it has closed its books on (<u>i.e.</u>, "closed") an insurance year). It is <u>the Club</u> that brought this declaratory action in an attempt to avoid that obligation. That many of the member defendants in response brought counterclaims seeking relief for the anticipated breach

---

[3] Upon information and belief, the phrase "discretionary practice" first appeared in a June 7, 2004 Club circular (a copy of which is annexed to the Declaration of Lisa A. Bauer in Support of Defendants' Opposition to Plaintiff's Motion for Protective Order and Order Compelling Production of Documents (the "Bauer Decl.," as Exhibit EE). (In the interest of not overburdening the Court by supplying duplicative exhibits, Farrell will rely on the exhibits appended to the Bauer Declaration.) Indeed, Martin Rechuitte, a Club director at the time of the decision to bring the instant action, conceded at deposition that the phrase "discretionary practice" was "coined at the beginning of 2004" by Larry Bowles (the Club's lead counsel) or him. <u>See</u> February 9, 2005 transcript of Martin Rechuitte deposition at page 57, lines 4-19 (Bauer Decl., Exh. G). Moreover, Thomas McGowan, the president of Shipowners' Claims Bureau, the Club's manager, testified that he had never heard or used the term "discretionary practice" until July 2004. <u>See</u> February 2, 2005 transcript of Richard McGowan deposition at 14, lines 15-17) (Bauer Decl., Exh. F).

by the Club of its obligations does not make them plaintiffs; absent the Club's unprecedented lawsuit, and its attempt to reverse decades of settled Club practice, the parties would not be before the Court.

Other examples of unsupported assertions abound. The Club claims (without citation) that, "[u]nder the principles of mutuality under New York law, the members in any one year cannot be assessed to cover the liabilities of members in any other year(s). Each year must stand on its own, and the Club, in effect, is a different entity each year." Pl. Mem. at 5. The Club does not even attempt to provide legal support for this theory, nor can it. In any event, such argument is immaterial to the privilege considerations at issue, and improperly included in the Club's motion papers.

Finally, the Club makes a sweeping and unsupported generalization as to when an "avalanche" of occupational disease claims came to light (Pl. Mem. at 7), offers a wholly speculative explanation as to why the Club's directors issued refunds to members in certain years (id.), and opines on concepts of mutuality under New York law without even attempting to offer legal authority for their conclusions (Pl. Mem. at 8). None of this should be deemed determined, and none of this is germane to the privilege issues in question.

In short, Farrell respectfully requests that the Court reject the inappropriate, unsupported, and misleading assertions of fact and conclusions of law contained in the Club's statement of facts. This Court should consider only such facts as necessary to make the privilege determinations at issue in this motion.

# ARGUMENT

## I

## PLAINTIFF HAS WAIVED THE RIGHT TO WITHHOLD ITS OPINION LETTERS AS PRIVILEGED

It is a fundamental principle of law that "the attorney-client privilege cannot at once be used as a shield and a sword." United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991). Yet this is precisely what the Club seeks to do in disclosing selected legal opinion letters for its own benefit while simultaneously claiming entitlement to attorney-client privilege as to others concerning the same subjects. As such, the Club has waived any attorney-client privilege as to the Bowles Letters, as well as any other privileged communications relating to the subjects of the disclosed opinion letters.

A claim of privilege cannot be waived selectively. "When a party reveals part of a privileged communication in order to gain an advantage in litigation, it waives the privilege as to all other communications relating to the same subject matter because the privilege of secret consultation is intended only as an incidental means of defense and not as an independent means of attack, and to use it in the latter character is to abandon it in the former." In re Sealed Case, 676 F.2d 793, 818 (D.C. Cir. 1982) (citation and internal quotations omitted) (emphasis supplied); Madanes v. Madanes, 199 F.R.D. 135, 152 (S.D.N.Y. 2001) (where selective disclosure results in privilege being used as sword as well as shield, remedy is to declare privilege waived as to all

other communications concerning same subject matter) (citation omitted) (Francis, J.); see also Haymes v. Smith, 73 F.R.D. 572, 577 (W.D.N.Y. 1976) (disclosure of single privileged letter concerning legality of disputed practice waives privilege as to all letters concerning same practice). It is plain that Plaintiff cannot waive the privilege selectively, and opportunistically.

Yet Plaintiff has done just that. Where it has served the Club's interests, the Club has been quick to produce legal advice from its counsel. Indeed, Plaintiff has produced numerous opinion letters in this litigation that arguably would be otherwise privileged. (Selected copies of these letters are annexed to the Bauer Decl. as Exhs. C and L through P.) Included among the opinion letters released by the Club are opinion letters providing legal advice concerning deductibles and coverage in 1987 and 1991 (Bauer Decl., Exh. O); closing insurance years and the Club's assessment power (Bauer Decl., Exh. L); coverage for occupational disease claims (Bauer Decl., Exh. M); and the reserve account and its uses (Bauer Decl., Exh. N). Significantly, the Club has introduced a number of these opinion letters at depositions in this case. See Bauer Decl., Exhs. L(e), (h) and (m) and N(g). Despite this, the Club now takes the position that the two Bowles Letters on these same subjects are privileged. Its position is unsustainable under Bilzerian, In re Sealed Case, Madanes, and Haymes.

Moreover, the Club has freely distributed opinion letters with the understanding (and very likely the expectation) that they would be shared with the non-fiduciary members the directors represented. Entirely apart from the common sense notion that a director would not sequester a document from the very company he

represents on the board, documentary evidence attached to the Club's own motion papers demonstrates the Club's expectation that at least one legal opinion would be disseminated to the counsel of the Club's non-fiduciary members. See Exh. 12 to Carroll Affidavit (May 4, 1995 letter from Thomas McGowan expressing Finance Committee members' desire to share April 20, 1995 opinion letter with their own counsel).

The waiver of the privilege as to the Bowles Letters is clear and unquestionable. The Club has selectively disclosed opinion letters concerning coverage, the application of deductibles, and the use of the Club's reserve account. By selectively choosing which letters to produce and which to claim as privileged, the plaintiff seeks to use the privilege both offensively and defensively. This is plainly impermissible under Second Circuit law. See Bilzerian, 926 F.2d at 1293-94 (impermissible to introduce certain attorney-client communications but not others where disclosure of selected communications is for self-serving purposes); see also Smith v. Alyesak Pipeline Serv. Co., 538 F. Supp. 977, 979, aff'd, 758 F.2d 668 (Fed. Cir. 1984) (D. Del. 1982) (unfair to permit party to shield disclosure of damaging communications while allowing party to disclose other selected communications solely for self-serving purposes).

The Club has waived the attorney-client privilege as to the Bowles Letters, as well as any legal opinion letters concerning coverage, the Club's assessment power,

the application of deductibles, and the use of the Club's reserve account. Farrell should be permitted to discover and use in this litigation all such opinion letters.[4]

II

### THE CLUB HAS NO ENTITLEMENT TO FARRELL'S PRIVILEGED DOCUMENTS

The Club argues that documents containing legal advice from Farrell's attorneys are unprotected by the attorney-client privilege. Because Farrell's CEO had a fiduciary duty to the Club in his capacity as a member of the Club's board of directors, claims the Club, an exception to the general rule of attorney-client privilege applies. Pl. Mem. at 17-22. As a matter of law, the Club is wrong.

The exception of which the Club attempts to avail itself was derived from the Fifth Circuit's decision in Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970). Garner held that the availability of the attorney-client privilege to a corporation is subject to the right of stockholders to show good cause for its abrogation. See id. at 1103-04. Significantly, research has uncovered no case where Garner was applied in the context of a mutual insurance company. The Club also cites In re Bairnco Corp. Sec. Litig. (Ivers v. Keene Corp.), 148 F.R.D. 91, 97 (S.D.N.Y. 1993). Bairnco applied the Garner doctrine in the context of a shareholder class action suit, and held that, in narrow circumstances, the abrogation of the attorney-client privilege is appropriate where a party seeking documents can show good cause.

---

[4] To the extent the Court concludes such relief should be requested affirmatively, Farrell respectfully requests that the Court deem these papers a cross-motion.

This is a showing the Club cannot make. The Club claims it seeks documents that "pertain to the knowledge and intent of the defendants' representatives on the American Club's Board of Directors" in authorizing the indemnification of IBNR claims. Pl. Mem. at 4; see also Pl. Mem. at 21 (seeking "documents bearing directly on the knowledge and intent of the Club's former directors"). But the terms of the relevant insurance contracts – not the knowledge of the directors, or their intent in authorizing indemnification, or authorizing refunds of surpluses – govern the obligation to provide coverage. The "need" for evidence on such immaterial subjects cannot constitute good cause sufficient to merit the abrogation of Farrell's attorney-client privilege. Cf., Bairnco at 100 (permitting abrogation of attorney-client privilege where withheld information clearly relevant to issue of scienter in fraud case).

Even if the Court were to find that the intent or knowledge of the directors were relevant to the Club's obligation to provide coverage, the Club could still not avail itself of the Bairnco exception. To justify the abrogation of the privilege, the party seeking discovery must show "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Bairnco, 148 F.R.D. at 102 (citations and internal quotations omitted). Indeed, the Bairnco Court explicitly found that the evidence there sought was not readily available from alternate sources. See Bairnco, 148 F.R.D. at 99. By contrast, the Club already has in its possession numerous documents concerning the scope of asbestos-related liability claims. See Bauer Decl., Exh. T (collecting Club documents demonstrating knowledge of scope of

possible asbestos claims). There is absolutely no basis for taking the extraordinary step of invading the attorney-client privilege for generic state of mind evidence easily obtained through routine discovery.[5]

In any event, the Club cannot argue that it is entitled to Farrell's privileged documents, because they contain advice rendered by attorneys not to the Club, but to Farrell in its capacity as a Club member. The Club itself recognized this distinction in 1996 when it invited members to obtain their own legal advice with respect to the Club's proposal to reopen closed insurance years, with the full knowledge that such advice would be rendered not to the Club but to its members. See Exh. 12 to Carroll Affidavit (May 4, 1995 letter from Thomas McGowan expressing Finance Committee members' desire to share April 20, 1995 opinion letter with their own counsel). The privilege the Club seeks to invade is not its privilege, but that of Farrell, which owes no fiduciary obligations to the Club. See Fidelity & Cas. Co. of New York v. Metropolitan Life Ins. Co., 42 Misc. 2d 616, 623, 248 N.Y.S.2d 559, 565 (Sup. Ct. New York County 1963) (relationship between mutual insurance company and its members not fiduciary in nature); see also North River Ins. Co. v. Columbia Cas. Co., No. 90 Civ.2518 (MJL), 1995 WL 5792, at *4 (S.D.N.Y Jan. 5, 1995) (unless counsel retained by insurer, no common interest between insurer and insured so as to waive attorney-client privilege of

---

[5]  The Bairnco Court also found that many of the documents withheld under the work product immunity were "more in the nature of records of facts and statistics, or updates of claims status, costs and exposure, than the traditional work-product of attorneys." Bairnco at 103. To the extent that it is not plain on the face of Farrell's privilege log that Farrell has withheld traditional work product and privileged documents, Farrell is prepared to submit its withheld documents to the Court for in camera review.

insured) (Francis, J.). That Mr. Agresti owed a fiduciary obligation to the Club is immaterial to the existence, and viability, of Farrell's attorney-client privilege.

There is no legitimate basis for abrogating Farrell's attorney-client privilege. The Club's request that Farrell produce documents withheld as privileged should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion should in all respects be denied.

Dated: New York, New York
      June 10, 2005

                      Respectfully submitted,

                      BROWN RUDNICK BERLACK ISRAELS LLP

                      By: /s Andrew Dash_____
                          Andrew Dash (AD-7913)
                          Peter Adelman (PA-1562)
                          John J.W. Inkeles (JI-1632)

                          Seven Times Square
                          New York, NY 10036
                          Tel: (212) 209-4800
                          Fax: (212) 209-4801

                          Counsel to Defendant to Farrell Lines, Inc.

Andrew S. Dash (AD-7913)
Peter Adelman (PA-1562)
Brown Rudnick Berlack Israels LLP
Seven Times Square
New York, New York 10036
(212) 704-0100
Attorneys for Farrell Lines, Inc.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | |
|---|---|
| AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., :<br><br>Plaintiff, :<br><br>– against – :<br><br>ALCOA STEAMSHIP CO., INC., et al., :<br><br>Defendants. : | 04-CV-04309<br>(LAK) (FM)<br><br>ECF Case |

---------------------------------------------------------------x

**Certificate of Service**

       I, PETER ADELMAN, an attorney with the law firm Brown Rudnick Berlack Israels LLP, hereby certify that, on June 10, 2005, I caused true and correct copies of the Memorandum of Law of Defendant Farrell Lines, Inc. in Opposition To Plaintiff's Motion for Protective Order and Order Compelling Production Of Documents to be served by First Class Mail, postage pre-paid, to all listed on Exhibit A.


                                      By:   /s/ Peter Adelman
                                                    Peter Adelman

Dated: June 10, 2005

**EXHIBIT A**

Donald I. Stauber
Counsel for Bessemer Securities Corp.
as Successor to Grosvenor-Dale Co., Inc.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

Dillingham Construction Corporation
1020 Serpetntine Lane, Suite 110
Pleasanton, CA 94566

Oglebay Norton, as Successor to
Columbia Steamship Company Inc.
North Point Tower
1001 Lakeside Ave., 15th Floor
Cleveland, OH 44114
Garden City, NY 11530

Coastal Carriers Inc.
c/o Clayton Ragas
216 Ft. Jackson Street
Belle Chasse, LA 70037
Dillingham Construction World
Headquarters
1020 Serpentine Lane, Suite 110
Pleasanton, CA 94566

Offshore Express Inc.
438 Menard Road
P.O. Box 2666
Houma, LA 70361

Resolve Maritime Corporation
c/o Charles Lea Hume
25 W. Flagler Street
5th Floor, City National Bank Building
Miami, FL 33130
Aremar C.I.F.S.A.
Viamonte 494
9 Piso
1053 Buenos Aires, Argentina