Nourse & Bowles, LLP
Attorneys for Plaintiff
One Exchange Plaza
At 55 Broadway
New York, New York 10006
(212) 952-6200
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY
ASSOCIATION, INC.,

                Plaintiff,    :   04 Civ. 04309 (LAK)(JCF)

                   v.         :   **ECF CASE**

ALCOA STEAMSHIP CO., INC., et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR PROTECTIVE ORDER,
AND ORDER COMPELLING PRODUCTION OF DOCUMENTS**

      Plaintiff, American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club" or "Club"), by its attorneys, Nourse & Bowles, LLP, respectfully submits this Reply Memorandum of Law, together with the accompanying Reply Affidavit of Shaun F. Carroll, Esq., dated June 22, 2005 ("Carroll Reply Aff."), in further support of the Club's motion for protective order and order compelling production of documents.

{N0043982; 5}

**Preliminary Statement**

Realizing that their decades-old effort to extract free insurance coverage from the Club for occupational disease claims has been uncovered and exposed for what it is, Defendants strike the pose of the aggrieved insured abandoned by the greedy institutional insurer, a posture entirely unjustified in the context of the Club as a mutual indemnity insurer which at the relevant time was controlled by the Defendants.

At issue in this case are certain decisions made by Defendants' officers and employees in years past while they were members of the Club's Board of Directors. Those directors made decisions providing Defendants with "mutual" insurance coverage for occupational disease claims for which Defendants never paid, while not accidentally (but unsuccessfully) attempting to deny the Club the ability to assess the Defendants for such coverage under the mutual policies issued by the Club, each of which by its terms is fully assessable.

The Club contends that the former directors effectively saddled the Club's future members with enormous liabilities that ought not to be their financial burden. On behalf of its current members, the Club seeks to inquire into the former directors' knowledge of the extent of their companies' exposure to occupational disease liability, and to that end seeks discovery of Defendants' purportedly "privileged" corporate records that will show what the directors really knew.

The former directors owed fiduciary duties to the Club, and under the circumstances their employers should not be permitted to assert a "privilege" to block the Club's discovery. The Court should order the materials produced.

# ARGUMENT

## I.

### DEFENDANTS HAVE FAILED TO SHOW THAT THEY SHOULD NOT BE PROHIBITED FROM USING OR DISSEMINATING CLUB COUNSEL'S OPINION LETTERS

Defendants Keystone and Farrell assert that the Club is using the attorney-client privilege as a "sword and a shield." (Keystone Opp. Brief at 8; Farrell Opp. Brief at 7.)[1] This assertion is plainly incorrect. The Club has not raised advice of counsel as a defense. Accordingly, this is not a case of "selective disclosure," contrary to Defendants' contention. Citations to *Madanes v. Madanes*, 199 F.R.D. 135, 152 (S.D.N.Y. 2001), and similar cases, are inapposite. Not surprisingly, defendant Keystone cites no authority for its "sword and shield" attack, nor could it do so, because no "sword and shield" case can be found with facts similar to those at issue here.

Keystone implies there has been "selective disclosure" by referring to a statement by the Club's counsel "that the Club is pursuing an 'ad hoc' strategy in its privilege assertions." (Keystone Opp. Brief at 8; Bauer Decl. Ex. J.) The Club's counsel, Shaun Carroll, explains in his Reply Affidavit that what he meant by "ad hoc" is simply that the Club's documents are being reviewed on a document-by-document basis.[2] (Carroll Reply Aff. ¶ 2.) Indeed, as Mr. Carroll explains, all pre-Keystone litigation correspondence from Club counsel to the Club's then directors, *i.e.*, those employed by Defendants, have been produced regardless of their content. The Court should not be persuaded by Keystone's effort to attribute a different meaning to Mr. Carroll's statement.

---

[1] Defendant APL takes no position on the Club's motion for a protective order. (APL Opp. Brief at 1 n.2.) Defendants Apex, Mathiesen's, Trinidad and Crest simply adopt the arguments of Keystone and Farrell. (Apex, et al. Opp. Brief at 1-2.)

[2] In fact, it appears that counsel for Keystone is taking a similar approach. Keystone states it has revised and reduced its privilege log, producing documents it had previously claimed to be privileged. (Keystone Opp. Brief at 12 n.17.)

The distinction the Club has made in producing documents is this: all requested documents, including prior opinions of counsel on a broad range of topics, issued or prepared *before* January 2000, when the relationship between the Club and its former members (now Defendants) was not adversarial, have been produced, regardless of their content. Only privileged documents issued or prepared in or *after* January 2000, when the relationship between the Club and Keystone was or was about to become adversarial, have been withheld as privileged and/or work product. Contrary to counsel's assertion, there is nothing "strategic" or "selective" about the privilege review process; it is governed by this principled distinction. (Carroll Reply Aff. ¶ 3.) Keystone apparently acknowledges, as it must, that the more recent communications by attorney to client are protected by the doctrine of work product immunity.[3] There is no subject matter waiver on these facts.

As to the June 18, 2004 letter, the issue should be governed by the rules of inadvertent waiver. The parties apparently do not dispute the factors relevant to a determination of inadvertent disclosure. *See, e.g., SEC v. Cassano,* 189 F.R.D. 83, 85 (S.D.N.Y. 1999) (Kaplan, J.). The facts here, however, do not show the carelessness requisite to a determination of subject matter waiver. *See, e.g., Semi-Tech Litigation LLC v. Bankers Trust Co.*, 2002 WL 1751267 (S.D.N.Y. July 27, 2002) (Kaplan, J.); *Cassano, supra*. To the contrary, the facts show reasonable precautions and an immediate attempt to rectify the error when the production (by an agent and contrary to instructions) of counsel's June 18, 2004 letter was discovered. Again, the Defendants make no effort to analyze the relevant facts. They simply claim "disclosure" and

---

[3] *Convolve, Inc. v. Compaq Computer Corp.*, 224 F.R.D. 98 (S.D.N.Y. 2004) (Francis, M.J.), is not to the contrary, as it involves an "advice of counsel" defense. That decision holds a temporal distinction "illogical" where the defendant's thinking would have remained the same all the while it continued a patent infringement. *Id*. at 107. Here, the Club has not asserted an advice of counsel defense, and has not placed its thinking at issue. As discussed below, the only thinking at issue here is that of the Club's directors and their immediate constituents. The Defendants here claim they had a certain state of mind, and they are attempting to hide it behind a veil of privilege that simply cannot be asserted by fiduciaries.

suggest that is all that is needed for a waiver. This is not the law, and their conclusory arguments should be rejected.

Finally, the providing of the May 18, 2004 letter to Mr. Agresti is not inconsistent with the Club's intent to maintain the privilege, and once again, Defendants come up short on their analysis. Keystone simply defers to Farrell, and Farrell argues "selective disclosure," while refusing to relate that doctrine to the facts. (Keystone Opp. Brief at 9; Farrell Opp. Brief at 9.) "Selective disclosure" is quite the opposite of what took place with respect to this letter. Mr. Agresti was provided the letter because he was a director of the Club; the providing of the letter to him shows he was treated the same as the other directors. Mr. Agresti received the document while serving in a fiduciary capacity and should not be allowed to use it to prejudice the Club in any way. Defendants have made no effort whatever to distinguish the authority cited by the Club in support of a protective order for this document.

## II.

### DEFENDANTS HAVE FAILED TO SUPPORT THEIR ATTEMPT TO WITHHOLD RELEVANT DOCUMENTS OBTAINED WHILE SERVING AS FIDUCIARIES OF THE CLUB

Defendants devote the greater part of their oppositions to arguments against producing documents that would demonstrate what the Club's directors during the relevant period really knew of the extent of Defendants' exposure. These arguments are artfully drafted and warrant significantly close scrutiny. The Club explains and debunks all these arguments below.

The Club leaves aside the question whether the documents Defendants claim to be privileged are, in fact, protected by a privilege. As Farrell admits, an in camera review may be necessary to make that determination. (Farrell Opp. Brief at 12 n.5.) The Club's argument assumes, but does not concede, privilege: it proceeds from Defendants' assertion of privilege and shows why such claims, even if legitimate, cannot protect the subject documents from disclosure.

In its opening brief, the Club demonstrated that the doctrine announced in *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970) (the "*Garner* Doctrine"), and applied in *In re Bairnco Corp. Secs. Litig.*, 148 F.R.D. 91 (S.D.N.Y. 1993), prevents the Defendants from withholding the subject information from the Club. Defendants have raised a number of arguments against application of the *Garner* Doctrine here, all to no avail.

The first argument Defendants advance is legerdemain. They insist that the Defendant companies did not have a fiduciary relationship with the Club, and therefore, the companies themselves held the privilege, and their representative directors' knowledge and use of those documents cannot be grounds for setting aside the privilege to reach the documents. (Keystone Opp. Brief at 10; Farrell Opp. Brief at 12; APL Opp. Brief at 7-9.) The Oppositions are replete with authorities supporting the contractual, rather than fiduciary, relationship between insurer and insured. *See, e.g.*, *In re Metropolitan Life Derivative Litig.*, 935 F. Supp. 286, 293 (S.D.N.Y. 1996); *Fidelity & Cas. Co. v. Metropolitan Life Ins. Co.*, 42 Misc. 2d 616, 623, 248 N.Y.S.2d 559, 565 (Sup. Ct. N.Y. Co. 1963). This attempt to shift the focus away from the Club's directors during the relevant period is transparent. The contractual relationship of insured and insurer is beside the point. What is relevant is that the Club was controlled by directors who were representatives of the Defendants, and those directors owed the Club fiduciary duties. ***Defendants have cited no authority holding that the directors did not owe fiduciary duties to the Club.*** They cannot escape this dispositive point.[4]

The well-settled rule that directors of a corporation "stand in a fiduciary relationship to the corporation and owe their undivided and unqualified loyalty to the corporation," *Howard v. Carr*, 222 A.D.2d 843, 845, 635 N.Y.S.2d 326, 328 (3d Dep't 1995), applies as well to directors of insurance companies. For example, in *Matter of Ideal Mut. Ins. Co.*, 140 A.D.2d 62, 532

---

[4] Defendant Farrell admits that its director, Mr. Agresti, "owed a fiduciary obligation to the Club . . . ." (Farrell Opp. Brief at 13.)

N.Y.S.2d 371 (1st Dep't 1988), the Superintendent of Insurance, as liquidator of an insolvent mutual insurance company, sued officers and directors of the company , charging that they breached their duty to the company "by mismanaging its affairs." 532 N.Y.S.2d at 373[5]. Mismanagement is essentially what the Club's directors are alleged to have committed.

Defendants' argument that the employer's privilege can be used to shield the thinking of the Club's directors from scrutiny by the Club is unsupported by case law and contrary to the reasoning of *Garner*. That directors are chargeable with knowledge from whatever source and in whatever capacity they obtain it is fundamental. This principle is set out in *Pebble Cove Homeowners' Ass'n v. Shoratlantic Dev. Co.,* 191 A.D.2d 544, 595 N.Y.S.2d 92 (2d Dep't 1993), authority that Defendants have uniformly failed to address. Here the Club should be entitled to explore the depth of that knowledge, even if the source(s) is or are Defendants' records.

The argument that *Garner* and *Bairnco* are both derivative cases and both involved the crime-fraud exception to the attorney-client privilege (APL Opp. Brief at 11) does not prevent application of the *Garner* Doctrine in this case. *Garner* is so not limited.[6] The *Garner* Doctrine has been applied to a wide variety of situations, including, but not limited to: subrogation, *Dome Petroleum Ltd. v. Employers Mut. Liability Ins. Co. of Wisconsin,* 131 F.R.D. 63 (D.N.J. 1990); a bank-client relationship in a real estate transaction, *Quintel Corp. v. Citibank,* 567 F. Supp. 1357 (S.D.N.Y. 1983); union management and membership, *Arcuri v. Trump Taj Mahal Assocs.*, 154

---

[5] *See also American Fed. Group, Ltd. v. Rotherberg,* 2003 WL 22349673 (S.D.N.Y. Oct. 14, 2003), holding a former officer of a wholesale insurance company breached his fiduciary duty to the company.

[6] The argument that the instant case is not a derivative action actually proves too much. A derivative action is brought *on behalf of* a corporate entity by one or more shareholders *because the entity has failed or refused to do so.* It is brought against officers or directors "who place other interests ahead of those of the corporation." *Bansbach v. Zinn,* 1 N.Y.3d 1, 8, 769 N.Y.S.2d 175 (2003). In the instant case, the Club has brought a declaratory judgment action to end a practice put in place by directors who placed the interests of their own member companies (the Defendants) ahead of the interests of the Club as a whole. If a single shareholder suing on behalf of a corporate entity that will not do so can obtain the directors' documents through application of *Garner,* then *a fortiori,* the Club itself may do so.

F.R.D. 97 (D.N.J. 1994); among ESOP participants, *Martin v. Valley Nat'l Bank of Arizona*, 140 F.R.D. 291 (S.D.N.Y. 1991), *Burghart v. Landau,* No. 82 Civ. 2181, 1985 WL 209, *4-*7 (S.D.N.Y. Jan. 23, 1985); ERISA, *Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73 (N.D.N.Y. 2003); and will execution, *Lawrence v. Cohn*, No. 90 Civ. 2396, 2002 WL 109530 (S.D.N.Y. Jan. 25, 2002).[7]

In *Dome Petroleum v. Employers Mutual,* the court said the relationship there did not rise to a fiduciary one, but did provide the "commonality of interest" that concerned the *Garner* court. *Dome Petroleum,* 131 F.R.D. at 68-69. Similarly, in *Quintel*, the court spoke of the "mutuality of interest between the parties." *Quintel,* 567 F. Supp. at 1363. *Henry* referred to the elements of a fiduciary relationship "which obligates the fiduciary to safeguard his or her beneficiaries' interest ***without obscuring his or her reason from the legitimate inquiries of the beneficiaries.***" *Henry,* 212 F.R.D. at 84 (emphasis added). In like manner, *Lawrence* refused to permit invocation of the privilege to shield attorney advice relating to the management of a trust. *Lawrence,* 2002 WL 109530 at *4.

Defendants therefore misplace their reliance on the contention that the "*Garner* Doctrine" has never been applied to a mutual insurance company. (APL Opp. Brief at 7.) The doctrine's application is continually being expanded, and all the important factors for its application exist here. Defendants' blinkered argument is no basis for denying *Garner's* application to the documents the Club seeks. The Club is perhaps the only true "mutual" insurance company in existence today. This case is unique in that regard, and the absence of cases directly on point should not be surprising. What matters is the reasoning of *Garner*, not a particular context.

---

[7] The contention that the Second Circuit has not adopted *Garner* (APL Opp. Brief at 7) is misleading. That Court, in *In re Dow Corning Corp.*, 261 F.3d 280 (2d Cir. 2001), stated that it was unable to determine from the record whether grounds such as "good cause" under *Garner* existed. *Id.* at 286. It left consideration of that and other issues to the district court on remand. *Id.* This ruling very plainly indicates the Second Circuit's recognition and approval of the *Garner* doctrine.

{N0043982; 5}

The assertion that the Club cannot show "special need" or "good cause" for obtaining the subject documents is also wrong-headed. (Keystone Opp. Brief at 10-11; APL Opp. Brief at 12.) That the Club likely received the documents referred to in the Bauer Affidavit Exhibit T does not mean the Club knows the directors' knowledge at the relevant times. The documents contained in Defendants' privilege logs, which were not contemporaneously produced to the Club, are necessary to the litigation, and the Club has no other means of accessing this information except by obtaining those documents. This is especially true in the case of APL's various updated studies of its exposure in or about April-June 1995. (Carroll Reply Aff. ¶ 4.) The facile argument that the Club "was aware of the status of asbestos litigation" (Keystone Opp. Brief 11 n.16) is a blatant evasion. The issue is not whether the Club was aware of asbestos litigation generally, but whether its directors, chargeable with knowledge of their companies' activities, used their specific information to pursue the interests of individual member companies rather than the interests of the Club. The Club is entitled to this information, and the *Garner* Doctrine supports the Club's position. The Defendants' adamant yet evasive efforts to shield such information from disclosure speaks volumes about their representatives' past actions.

{N0043982; 5}

## **CONCLUSION**

The American Club's motion should be granted.

Dated: New York, New York
June 22, 2005

                                    NOURSE & BOWLES, LLP

                                    By:       /s/
                                        Shaun F. Carroll    SC 9898
                                    Attorneys for Plaintiff
                                    One Exchange Plaza
                                    At 55 Broadway
                                    New York, NY 10006
                                    212-952-6200

Of Counsel:

Lawrence J. Bowles