UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
AMERICAN STEAMSHIP OWNERS MUTUAL   :   04 Civ. 4309 (LAK) (JCF)
PROTECTION AND INDEMNITY           :
ASSOCIATION, INC.,                 :       MEMORANDUM
                                   :       AND  ORDER
                  Plaintiff,       :
                                   :
      - against -                  :
                                   :
ALCOA STEAMSHIP CO., INC.,         :
et al.,                            :
                                   :
                  Defendants.      :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

The American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club" or the "Club") has brought this action pursuant to 28 U.S.C. § 2201, seeking a determination that it is not obligated to indemnify its members for certain occupational disease claims that were not reported to the Club prior to February 20, 1989.  The American Club now moves under Rule 26(c) of the Federal Rules of Civil Procedure for a protective order foreclosing the defendants from access to two opinion letters, dated May 18 and June 18, 2004, provided to the Club by its counsel, Nourse & Bowles LLP ("Nourse & Bowles").  The Club also moves pursuant to Rule 37 for an order compelling defendants Keystone Shipping Co. ("Keystone"), Farrell Lines, Inc. ("Farrell"), and American President Lines, Ltd. ("APL") to: (1) produce all opinions and reports of counsel concerning pending and anticipated occupational disease claims and lawsuits as well as the

1

issue of reopening closed insurance years; (2) make available a number of their former counsel for deposition; and (3) produce all internal corporate reports and analyses concerning actual and anticipated liability for occupational disease claims.[1]  For the reasons that follow, the motion for a protective order is granted in part and denied in part and the motion to compel is denied in its entirety.

Background[2]

The American Club is a mutual indemnity insurance association organized under the laws of New York State.  (Second Amended Complaint ("SAC"), ¶¶ 1, 14).  The defendants are vessel owners and related entities that were members of the Club prior to February 20, 1989.  (SAC, ¶ 15).  During each year, the American Club would issue to each of its members a fully assessable marine protection

---

[1] The American Club also initially sought an order directing APL to produce an opinion provided to APL by Joseph K. Molloy, Esq. in May 1995, on the basis that APL had waived the attorney-client privilege by showing the opinion letter to counsel for the Club. The American Club has abandoned that argument but continues to contend that this letter, along with other opinions provided to the defendants that relate to the Club's practices, has been placed "at issue" by the defendants' allegations that they acted in reliance on those practices.  (Letter of Lawrence J. Bowles dated July 11, 2005, at 3-4).

[2] The general background of this case is set forth at length in a prior decision by the Honorable Frank Maas, U.S.M.J., to whom the case was then assigned.  American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., No. 04 Civ. 4309, 2005 WL 427593 (S.D.N.Y. Feb. 22, 2005). The facts will be summarized here only to the extent necessary for an understanding of the pending discovery disputes.

and indemnity insurance policy. (SAC, ¶ 24). Premiums for each member were based primarily on its historical loss experience. (SAC, ¶ 28). On the basis of these payments, the members mutually indemnified each other except for catastrophic claims, which were covered by reinsurance. (SAC, ¶ 25).

Prior to 1989, the club typically closed each policy year about ten years after the actual end of that year, at which time the Board of Directors would determine which members owed final assessments and which were entitled to dividends. (SAC, ¶¶ 40, 43). The Board also established reserves to pay additional claims that might arise out of a given year, but once the year was closed, it neither sought additional assessments nor paid additional dividends. (SAC, ¶¶ 6, 40). Between 1946 and 1976, case reserves were set aside for claims that were reported but unresolved, but no funds were reserved for claims that were incurred but not reported ("IBNR" claims). (SAC, ¶ 44).

By the early 1980's, members of the American Club began to receive claims from seamen for occupational diseases that allegedly resulted from exposure to asbestos aboard vessels as early as the 1940's. (SAC, ¶¶ 45, 46). No IBNR reserves had been established for these claims when the relevant policy years had been closed, but the Club nevertheless began indemnifying its members for asbestos-related diseases from its general reserves. (SAC, ¶ 47). The American Club characterizes this policy as discretionary and

contends that the payments were not required by its charter or by-laws or by New York law. (SAC, ¶ 56).

On May 25, 2004, the Board of Directors discontinued this practice and determined that the American Club would not indemnify its members for IBNR claims that arose in closed policy years prior to February 20, 1989. (SAC, ¶ 57). This determination had a disparate impact on Club members both because members had varying levels of exposure for occupational disease claims and because the Club's membership had changed over time as some members terminated their relationship while new members joined. Certain members adversely affected by this decision objected, and the Club therefore initiated this declaratory judgment proceeding seeking a determination that it is entitled to decline to use its general reserves to pay IBNR claims for closed years. (SAC, ¶ 64). To the extent this argument is rejected, the Club requests a determination that it may reopen closed years in order to levy the assessments necessary to pay for the IBNR claims for that year. (SAC, ¶ 60).

Shortly before the Board voted to discontinue the American Club's discretionary practice, its counsel, Nourse & Bowles, provided it with an opinion letter dated May 18, 2004. That letter was circulated to each member of the Board of Directors, including Robert Agresti, who was an officer of Farrell Lines, one of the members of the Club. The letter bore a legend indicating that it was a confidential attorney-client communication.

4

After the Board vote, and after this litigation had been commenced, Nourse & Bowles provided the Board with a second opinion letter dated June 18, 2004. That letter was also identified as an attorney-client communication. It was intended to be circulated to all Board members except Mr. Agresti but, according to the American Club, was inadvertently delivered to him as well. Immediately thereafter, the Club notified Mr. Agresti of its error and requested that the letter be returned or destroyed.

In February 2005, Nourse & Bowles notified counsel for Farrell Lines that both the May 18 and June 18, 2004 letters were attorney-client communications and demanded their return. Farrell, however, mistakenly circulated these opinions to its co-defendants on a computer disk containing discovery materials in this case. All defendants then agreed not to utilize the letters until their status had been determined by the Court. The American Club seeks a ruling that these letters are privileged.

The second set of documents at issue consists of "internal documentation concerning [the defendants'] exposure to occupational disease claims[.]" (Memorandum of Law in Support of Plaintiff's Motion for Protective Order, and Order Compelling Production of Documents ("Pl. Memo.") at 15). To the extent that such documents reflect communications with counsel, the defendants have identified them as privileged. Although the American Club has not itemized the documents that it considers as falling into this category, it

has identified one representative example.  After a $6 million judgment was entered against the American Club on an asbestos claim, Club counsel suggested in April 1995 that closed policy years be reopened and the members in those years be required to pay additional assessments.  Prior to responding to that recommendation, the Directors were given the opportunity to confer with their own counsel.  Accordingly, Ben Gleason, a member of the American Club's Board and an officer of APL, solicited the advice of an attorney, James Molloy, who provided a written opinion.  The Club now seeks disclosure of that letter as well as similar communications between each of the defendants and their respective counsel.

<u>Discussion</u>

     A. <u>Choice of Law</u>

     The parties have not addressed what law should govern the privilege issues in this action, though they have generally relied on federal case law.  The starting point for any choice-of-law analysis relating to an issue of privilege is Rule 501 of the Federal Rules of Evidence, which provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.  However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness . . . shall be

6

determined in accordance with State law.

At first glance, this framework would appear to call for the application of state privilege law here. In a case brought in admiralty, federal choice-of-law rules apply. <u>See</u> <u>Advani Enterprises, Inc. v. Underwriters at Lloyds</u>, 140 F.3d 157, 162 (2d Cir. 1998); <u>Sundance Cruises Corp. v. American Bureau of Shipping</u>, 7 F.3d 1077, 1080 (2d Cir. 1993). Those rules, in turn, provide that in cases construing marine insurance contracts, the law of the state with the greatest weight of contacts with the transaction at issue will govern. <u>See</u> <u>Advani</u>, 140 F.3d at 162; <u>Hartford Fire Insurance Co. v. Mitlof</u>, 193 F.R.D. 154, 157 (S.D.N.Y. 2000); <u>Royal Insurance Co. of America v. Sportswear Group, LLC</u>, 85 F. Supp. 2d 275, 278 (S.D.N.Y. 2000). And, although this case concerns the general obligations of the American Club to its members rather than any specific policy of insurance, it is still likely that those obligations will be determined in accordance with New York law: the Club is organized under New York law, it holds its annual meeting in New York City (American Club By-Laws, Rules & List of Correspondents ("By-Laws and Rules"), Art. I, § 2, attached as Exh. D to Declaration of Lisa A. Bauer dated June 10, 2005 ("Bauer Decl."), at AC0083421), and, according to the American Club's rules, both the rules themselves and any insurance policies that are issued by the Club are governed by New York law. (By-Laws and Rules, Rule 1.4.45, attached as Exh. D to Bauer Decl., at

AC0083453).  New York State law, then would seem to supply the "rule of decision" for the substantive claims and therefore to govern privilege issues as well.

Such an analysis, however, fails to give sufficient weight to the well-documented legislative history of Rule 501, which supports the conclusion that Congress intended federal privilege law to apply in cases such as this, where the state substantive law is operative not of its own force, but as adopted by the federal common law.  In 1971, the Advisory Committee on the Federal Rules of Evidence recommended that common law privileges be abolished for any case brought in federal court; the only privileges that would remain would be those established by the Constitution or federal statute or specifically enumerated in the proposed rules.  This proposal was highly controversial because it did not provide for the application of state privilege law in diversity cases, and Congress consequently became actively involved  in the rulemaking process.  See 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5421 (1980).  The House Judiciary Committee drafted what is now Rule 501, designing the state law proviso to require the application of state privilege law in proceedings governed by Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).  H.R. Rep. No. 650, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 7075.  The Senate Judiciary Committee was concerned that the House draft could be construed to require the

application of state privilege law not only in diversity cases but also in those federal question cases where courts use state substantive law to fill in the gaps of federal common law.  See 23 Wright & Graham § 5433.  To give the rule greater precision, the Senate Judiciary Committee drafted, and the Senate adopted, an amendment limiting the use of state privilege law to diversity cases.  23 Wright & Graham § 5433.  While the Conference Committee declined to replace the House proviso with the Senate language, it did indicate its endorsement of the Senate view by explaining the final version of the Rule as follows:

> In nondiversity jurisdiction civil cases, federal privilege law will generally apply.  In those situations where a federal court adopts or incorporates a state law to fill the intersticies or gaps in federal statutory phrases, the court generally will apply federal privilege law. . . .  When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law.  Thus, state law does not supply the rule of decision (even though the federal court may apply a rule derived from state decisions), and state privilege law would not apply.

Conf. Rep. No. 1597, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 7098, 7101.  Accordingly, "[w]here the state substantive law is being used as part of the 'federal common law', the Conference Report makes it clear that state privilege law need not be applied under Rule 501." 23 Wright & Graham § 5433 at 857.

Thus, in cases arising under the Federal Tort Claims Act (the "FTCA"), for example, federal privilege rules apply because, although state law governs the substantive issues, it is only

because that law has been "absorbed" by the federal statute.  See
Tucker v. United States, 143 F. Supp. 2d 619, 622-23 (S.D. W. Va.
2001); Syposs v. United States, 179 F.R.D. 406, 410-11 (W.D.N.Y.
1998); Young v. United States, 149 F.R.D. 199, 204 (S.D. Cal.
1993).  But see Ellis v. United States, 922 F. Supp. 539, 540 (D.
Utah (1996)(characterized in Tucker, 143 F. Supp. at 624, as
"lacking in . . . awareness of the legislative history behind Rule
501"); Oslund v. United States, 128 F.R.D. 110, 113-14 (D. Minn.
1989) (same).  Similarly, courts have concluded that federal
privilege law applies in cases involving other federal statutes
that incorporate state law.  See, e.g., Crowe v. County of San
Diego, 242 F. Supp. 2d 740, 746-48 (S.D. Cal. 2003) (42 U.S.C. §
1983); Burrows v. Redbud Community Hospital District, 187 F.R.D.
606, 608 (N.D. Cal. 1998) (Emergency Medical Treatment and Active
Labor Act).

        The same result follows here.  Cases in admiralty are
generally governed by federal common law.  See Woodward Governor
Co. v. Curtiss-Wright Systems, Inc., 164 F.3d 123, 126 (2d Cir.
1999) ("[S]uits involving maritime claims are governed by the
venerable federal common law of admiralty."); Thomas J. Schoenbaum,
Admiralty and Maritime Law § 5-1 (4th ed. 2004).  State law
controls specific issues only to the extent that it is incorporated
or "absorbed" by federal maritime law.  Indeed, the case for
applying federal privileges in admiralty cases is even stronger

than it is in FTCA cases, because the incorporation of state jurisprudence into maritime law is a function of judicial creation of federal common law, while the FTCA specifically directs the application of state law. Cf. Crowe, 242 F. Supp. at 748 (argument for applying federal privilege stronger in § 1983 cases than in FTCA cases). Accordingly, federal privilege principles govern in this case. See Hartford Fire Insurance Co. v. Garvey, 109 F.R.D. 323, 327 (N.D. Cal. 1985) (applying federal privilege law in admiralty case, albeit without Rule 501 analysis).

B. Club Counsel's Opinion Letters

The American Club contends that the defendants should be prohibited from using or disseminating the Nourse & Bowles opinion letters because the May 18 letter was provided to Mr. Agresti in confidence solely in his capacity as a Director of the Club and because the June 18 letter was delivered to him inadvertently. The defendants respond, first, that the American Club had no expectation of confidentiality with respect to the letters.[3] Further, they argue that the Club has waived any privilege it might have had by affirmatively utilizing earlier opinion letters relating to the same subject matter in the course of this litigation. The Club replies that it has properly withheld only

_____

[3] Defendant APL has taken no position with respect to the American Club's motion for a protective order. (Memorandum of Defendant APL in Opposition to Plaintiff's Motion for a Protective Order and to Compel Production of Documents Identified in APL's Privilege Log at 1 n.2).

those attorney-client communications that were created after January 2000, because it was at that point that the relationship between the Club and some of its present or former members had become adversarial. In addition, the American Club contends that because it has not relied on an advice-of-counsel defense, its use of privileged documents in discovery in this case does not constitute a subject matter waiver.

### 1. The Privilege Generally

The attorney-client privilege protects from disclosure communications among clients and counsel made for the purpose of obtaining legal advice, provided that the communications were intended to be kept confidential and the privilege has not been waived. See United States v. International Brotherhood of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997); United States v. Doe (In re Six Grand Jury Witnesses), 979 F.2d 939, 943 (2d Cir. 1992); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 441 (S.D.N.Y. 1995). The burden of establishing each of the elements of the privilege rests on the party asserting it. See United States v. Doe (In re Grand Jury Proceedings), 219 F.3d 175, 182 (2d Cir. 2000); International Brotherhood of Teamsters, 119 F.3d at 214).

It is beyond question that corporations as well as individuals are entitled to assert the privilege. See Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 348 (1985); Upjohn

12

<u>Co. v. United States</u>, 449 U.S. 383, 386 (1991). As the Supreme
Court has observed, however,

> The administration of the attorney-client privilege in
> the case of corporations . . . presents special problems.
> As an inanimate entity, a corporation must act through
> its agents. A corporation cannot speak directly to its
> lawyers. Similarly, it cannot directly waive the
> privilege when disclosure is in its best interest. Each
> of these actions must necessarily be undertaken by
> individuals empowered to act on behalf of the
> corporation.

<u>Weintraub</u>, 471 U.S. at 348. Thus, for a solvent corporation,
corporate management, acting through its officers and directors,
has the authority to exercise the privilege, a power that must be
exercised consistent with management's fiduciary duties. <u>Id.</u> at
348-49.

2. <u>The Club's Assertion of the Privilege</u>

The individuals who serve as Directors of the American Club
are also officers or employees of the Club's constituent members.
Thus, for example, Mr. Agresti was not only a Director of the
American Club, but also an officer of Farrell Lines. Accordingly,
the defendants argue that a document provided by Club counsel to
Mr. Agresti cannot be considered confidential such that it could
not be disseminated to Farrell Lines; the defendants rely on "the
common sense notion that a director would not sequester a document
from the very company he represents on the board." (Memorandum of
Law of Defendant Farrell Lines, Inc. in Opposition to Plaintiff's
Motion for Protective Order and Order Compelling Production of

Documents ("Farrell Memo.") at 8-9).  They contend that "the Club has freely distributed opinion letters with the understanding (and very likely the expectation) that they would be shared with the non-fiduciary members the directors represented" (Farrell Memo. at 8), and the defendants cite as an example an instance in which the American Club acceded to the suggestion of certain of its Directors that they have the opportunity to review with their own attorneys a legal issue that had been raised in an opinion letter from Club counsel.  (Farrell Memo. at 9).

The example referred to by the defendants fails to support their position for two reasons.  First, the fact that the American Club might have chosen to waive confidentiality with respect to a single attorney-client communication hardly proves that it did not treat other such communications as privileged.  Second, the defendants mischaracterize the Club's handling of that particular communication.  There is no evidence that the American Club expected that its attorney's opinion "would be disseminated to the counsel of the Club's non-fiduciary members." (Farrell Memo. at 9).  Rather, the Club simply acknowledged that the Directors wished to obtain their own legal advice about the issue addressed in Club counsel's opinion.  (Letter of T.J. McGowan dated May 4, 1995, attached as Exh. 12 to Affidavit of Shaun F. Carroll dated May 27, 2005 ("Carroll Aff.")).  The Directors were perfectly capable of obtaining the desired input without disclosing the substance of the

opinion letter.

More generally, the defendants' argument raises the issue of whether the attorney-client privilege may be properly invoked by a corporation or similar entity against someone who was a director at the time that the document in question was created. Several cases have found that it may not. In Kirby v. Kirby, No. 8604, 1987 WL 14862 (Del. Ch. July 29, 1987), the plaintiffs, who had been ousted as directors of a charitable corporation, sought access to documents generated while they were in office but withheld by the defendants on the basis of the attorney-client privilege. The court reasoned as follows:

> The issue is not whether the documents are privileged or whether plaintiffs have shown sufficient cause to override the privilege. Rather, the issue is whether the directors, collectively, were the client at the time the legal advice was given. Defendants offer no basis on which to find otherwise, and I am aware of none. The directors are all responsible for the proper management of the corporation, and it seems consistent with their joint obligations that they be treated as the "joint client" when legal advice is rendered to the corporation through one of its officers or directors.

Id. at *7. Accordingly, the court rejected any claim of privilege and ordered disclosure of the documents created prior to the plaintiffs' ouster. Id.; see also Harris v. Wells, Nos. B-89-391, B-89-482, 1990 WL 150445, at *4 (D. Conn. Sept. 5, 1990) (requiring disclosure of documents based, in part, on Kirby).

Similarly, in Gottlieb v. Wiles, 143 F.R.D. 241 (D. Colo. 1992), the court found that a former chairman and CEO of a

corporation was not barred by the attorney-client privilege from obtaining documents generated during his tenure.  The court found that this was analogous to the situation in which "parties with a common interest retain a single attorney to represent them.  When they later become adverse, neither is permitted to assert the attorney-client privilege as to communications occurring during the period of common interest."  Id. at 247.

Other courts, however, have either refined or criticized the analysis advanced in these cases by drawing a distinction between former or dissident directors who are acting as individuals and those who are acting in their fiduciary capacity.  In Moore Business Forms, Inc. v. Cordant Holdings Corp., Civ. A. Nos. 13911, 14595, 1996 WL 307444 (Del. Ch. June 4, 1996), the Delaware Chancery Court clarified the rationale of Kirby:

> Although the Kirby Court described the directors as a "joint client," a more accurate description of the relationship is that there was a single "client," namely, the entire board, which includes all its members.  That is, a director seeking information furnished to the board that is the subject of the privilege claim is a "client" not in his or her individual capacity, but as a member of the collective body (the board) of which the director is one member.

Id. at *4 n.4.  Likewise, in Dexia Credit Local v. Rogan, No. 02 C. 8288, 2004 WL 3119026, at *10 (N.D. Ill. Dec. 21, 2004), the court rejected the common interest paradigm utilized by the court in Gottlieb, saying, "[t]hat model does not fit here, because during the time that he was in the control group, [the former director who

16

was seeking discovery] had no personal attorney-client privilege or relationship; that relationship rested solely in the corporation."

That distinction between a board member's personal role and his role as a director is critical in this case. As a matter of corporate law, any Director on the American Club's Board may have the right of access to attorney-client communications between the Club and its counsel generated during his or her tenure. But with that right comes the obligation to maintain the confidentiality of that communication, since the privilege belongs to the American Club and is not the Director's to waive. As the court reasoned in Genova v. Long Peak Emergency Physicians, P.C., 72 P.3d 454, 463 (Colo. Ct. App. 2003),

> Although plaintiff's status as a former director would have entitled him to learn privileged information when he was a director, he would then have been duty bound to keep such information confidential. He would not have been entitled alone to assert or waive the privilege on behalf of [the defendant corporation].

When a Director of the Club, then, is acting on behalf of the member entity of which he is an officer, he can neither disseminate confidential information he has received as a Board member nor pierce the privilege to obtain additional information. See Milroy v. Hanson, 875 F. Supp. 646, 650 (D. Neb. 1995) (denying access to director for privileged material sought to further personal goals in litigation rather than in fiduciary role). Thus, the fact that Mr. Agresti and other Directors of the American Club also had roles in the member entities does not undermine the Club's ability to

assert the privilege, since information shared with these directors was provided to them in their capacity as fiduciaries. This does not end the inquiry, however, because the defendants also argue that the Club has waived its privilege by disclosing protected communications during the course of this litigation.

    3. <u>Waiver</u>

It is well established that "the attorney-client privilege cannot at once be used as a shield and a sword." <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1292 (2d Cir. 1991) (citations omitted). Accordingly, if a party places advice that it has received from an attorney "at issue" in litigation, it has waived the privilege with respect to all such advice on the same topic. An "at issue" waiver occurs, for example, when a defendant raises a defense of advice of counsel, <u>see</u> <u>Bilzerian</u>, 926 F.2d at 1292; <u>Convolve, Inc. v. Compaq Computer Corp.</u>, 224 F.R.D. 98, 104 (S.D.N.Y. 2004); <u>In re Buspirone Patent Litigation</u>, 210 F.R.D. 43, 53 (S.D.N.Y. 2002); <u>Resolution Trust Corp. v. Massachusetts Mutual Life Insurance Co.</u>, 200 F.R.D. 183, 191 (W.D.N.Y. 2001), or when a plaintiff sues a former attorney for professional malpractice, <u>see</u> <u>Louima v. City of New York</u>, No. 98 CV 5083, 2004 WL 2359943, at *70 (E.D.N.Y. Oct. 18, 2004); <u>Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez</u>, No. 96 Civ. 7233, 2003 WL 21277139, at *2 (S.D.N.Y. June 2, 2003). Here, disclosure of the Nourse & Bowles opinion letters is not required by the "at issue" doctrine because the American Club has

never advanced a claim or defense as to which the opinion of counsel is a critical element.

However, reliance on advice of counsel is not the exclusive basis for finding waiver of the attorney-client privilege. "Fairness considerations may also come into play where the party asserting the privilege makes factual assertions, the truthfulness of which may be assessed only by an examination of the privileged communications or documents." Falise v. American Tobacco Co., 193 F.R.D. 73, 84 (E.D.N.Y. 2000)(citations omitted); see also In re Broadcom Corp. Securities Litigation, Nos. SA CV 1275, SA CV 2301, 2005 WL 1403516, at *1 (C.D. Cal. Feb. 10, 2005) ("A party waives the privilege if it injects into the case an issue that in fairness requires an examination of otherwise protected communications."). Furthermore, the "fairness doctrine" "aim[s] to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information." In re von Bulow, 828 F.2d 94, 101 (2d Cir. 1987). Thus,

> if a party's disclosure of a portion of a communication or of one among several related communications may be misleading because the party has disclosed only favorable material while concealing unfavorable information, waiver is likely to be found for so much of the withheld information "as will make the disclosure complete and not misleadingly one-sided."

Koster v. Chase Manhattan Bank, No. 81 Civ. 5018, 1984 WL 883, at *4 (S.D.N.Y. Sept. 18, 1984) (quoting Teachers Insurance and

19

Annuity Association v. Shamrock Broadcasting Co., 521 F. Supp. 638, 641 (S.D.N.Y. 1981)); see also Hercules, Inc. v. Exxon Corp., 434 F. Supp. 136, 156 (D. Del. 1977) (unfair to allow party to "disclose only those facts beneficial to its case and refuse to disclose, on the grounds of privilege, related facts adverse to its position"); Haymes v. Smith, 73 F.R.D. 572, 576 (W.D.N.Y. 1976) ("If a party-client chooses to disclose part of an otherwise privileged communication directed to his legal counsel, then he waives the privilege and the production of all the correspondence or the remainder of the consultations about the same subject can be demanded.").

In this case, the American Club has engaged in wholesale disclosure of apparently privileged documents. For example, it has produced in discovery sixteen different opinions of counsel, dated from 1955 to 2003, regarding the closing of insurance years and the Club's ability to assess members after a year has been closed. (Bauer Decl., Exh. L). It has also disclosed attorney-client communications relating to coverage for occupational disease claims (Bauer Decl., Exh. M), use of the Club's reserves (Bauer Decl., Exh. N), application of deductibles (Bauer Decl., Exh. O), and a variety of other topics. (Bauer Decl., Exh. P).

Moreover, the American Club has relied on those documents in conducting depositions. When, for instance, Keith Kennedy, a former Director and member of the Club's Finance Committee

testified to his understanding that the closing of an insurance year precluded the Club from making further assessments but did not relieve the American Club of its obligation to pay claims incurred in that year, counsel for the Club sought to have him reconcile his answer with an opinion letter provided to the Directors during Mr. Kennedy's tenure.  (Deposition of Keith Kennedy, attached as Exh. Q to Bauer Decl., at 140-47).  Similarly, during the deposition of another former Director, Richard Gronda, Club counsel presented the witness with an opinion letter and asked him if he would have questioned the author about it, since it appeared to express a legal opinion different from the witness' own.  (Deposition of Richard Gronda, attached as Exh. R to Bauer Decl., at 122-27). Finally, when deposing yet a third former Director, Charles Kurz, II, Club counsel proffered a letter from the American Club's attorney to the Board and asked whether the opinions it contained comported with the witness' understanding.  (Deposition of Charles Kurz, attached as Exh. S to Bauer Decl. at 296-311).

        The American Club argues that this conduct does not constitute a waiver of the privilege because it disclosed only those documents that were issued or prepared before January 2000, and withheld those created thereafter, when the relationship between the Club and at least some of its former members "was or was about to become adversarial."  (Reply Memorandum in Support of Plaintiff's Motion for Protective Order and Order Compelling Production of Documents

21

at 4). But this is precisely the type of selectivity that constitutes a waiver. The opinions of counsel were privileged regardless of when they were authored, and yet the American Club chose to divulge some and not others.

According to some case law, this alone is enough to trigger broad subject matter waiver. See United States v. Bernard, 877 F.2d 1463, 1465 (10th Cir. 1989); Lorenz v. Valley Forge Insurance Co., 815 F.2d 1095, 1099 (7th Cir. 1987); Hollins v. Powell, 773 F.2d 191, 196 (8th Cir. 1985); Weil v. Investment/Indicators, Reasearch & Management, Inc., 647 F.2d 18, 24 (9th Cir. 1981); and Bower v. Weisman, 669 F. Supp. 602, 204 (S.D.N.Y. 1987). One court has stated:

> It bears emphasis that these cases do not require the discovering party to demonstrate prejudice, such as, for example, proof that the privilege holder has disclosed only favorable materials. They also do not require the discovering party to demonstrate that the privilege holder is putting the privileged communications in issue in the litigation. It appears sufficient, for a waiver as to subjects discussed in the disclosed conversations, that the privilege holder has voluntarily revealed only some of the communications on the subject and has withheld others.

Bowne of N.Y. City, Inc. v. AmBase Corp., 150 F.R.D. 465, 485 (S.D.N.Y. 1993). Other courts have criticized Bowne for suggesting that subject matter waiver does not require a showing of tactical disclosure or other unfairness. See Falise, 193 F.R.D. at 85. That debate need not be resolved here, however, for the selective disclosure by the American Club was plainly tactical and operated

22

to the disadvantage of the defendants in the litigation.  While the Club has been able to suggest that certain deponents' testimony is inconsistent with legal advice that the Board received -- and with the position that these deponents may have adhered to while serving as Directors -- the defendants have been deprived of information about the extent to which that legal advice remained uniform over time.  To the extent that the American Club implicitly presents an argument that the Directors did follow or should have followed the opinions of counsel, the defendants are entitled to know what all of those opinions were.

The American Club, then, has waived the privilege.  The precise scope of that waiver need not now be determined, as only the May 18 and June 18, 2004 opinion letters are currently in question.  It is plain that the May 18 letter, which I have reviewed in camera, is "one among several related communications" along with  the opinions that the Club has already divulged in this litigation.  Koster, 1984 WL 883, at *4.  By contrast, the June 18 letter deals with two groups of issues -- a potential conflict of interest on the part of Club counsel and strategic considerations relating to ongoing litigation -- which are not closely enough related to the disclosed documents to warrant production under the fairness doctrine.  Therefore, while the May 18 letter shall be produced because the privilege has been waived, the June 18 letter

need not be.[4]

    C. <u>Opinions of Counsel Provided to the Defendants</u>

    The American Club's second application is for an order requiring Keystone, Farrell, and APL to produce "all opinions and reports from all counsel . . . concerning then pending and anticipated occupational disease claims and lawsuits . . . as well as the issue of reopening closed insurance years[.]" (Pl. Memo. at 2). The Club argues that certain officers and employees of these defendants were members of the Board and therefore were fiduciaries of the Club. Accordingly, the American Club contends that under the doctrine established in <u>Garner v. Wolfinbarger</u>, 430 F.2d 1093 (5th Cir. 1970), "[w]here a party has acted as a fiduciary of an opponent, the attorney client privilege may not be invoked to conceal documents and information obtained during the course of that relationship, where such documents and information are important to the opponent's case." (Pl. Memo. at 20).

    <u>Garner</u> was an action brought by stockholders against a corporation and its officers alleging violations of federal and state securities laws as well as common law fraud. When the plaintiffs sought information about advice given to the corporation by its counsel concerning the transactions at issue, the

---

[4] The defendants have not challenged the Club's position that the disclosure of the June 18 letter to Mr. Agresti does not create an independent basis for asserting that the privilege was waived because that disclosure was inadvertent.

corporation objected on grounds of attorney-client privilege. Garner, 430 F.2d at 1095-96. The Fifth Circuit concluded as follows:

> The attorney-client privilege still has viability for the corporation client. The corporation is not barred from asserting it merely because those demanding information enjoy the status of stockholders. But where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

Id. at 1103-04. The court went on to identify a variety of factors to be considered in determining whether the party seeking to pierce the corporation's privilege has demonstrated good cause:

> the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.

Id. at 1104.

Although the Garner doctrine arose in a shareholder derivative action, most courts have not limited it to that context. Compare Weil v. Investment/Indicators Research & Management, Inc., 647 F.2d

25

18, 23, (9th Cir. 1981) (restricting doctrine to derivative actions) with Fausek v. White, 965 F.2d 126, 130-31 (6th Cir. 1992) (rejecting restriction and applying Garner to non-derivative claims against corporation) and Ward v. Succession of Freemen, 854 F.2d 780, 786 (5th Cir. 1988) (same). Rather, it has been applied generally where there is "a fiduciary relationship which obligates the fiduciary to safeguard his or her beneficiaries' interest without obscuring his or her reason from the legitimate inquiries of the beneficiaries." Henry v. Champlain Enterprises, Inc., 212 F.R.D. 73, 84 (N.D.N.Y. 2003). Thus, Garner has been found applicable to relationships between an attorney and a client, In re Sunrise Securities Litigation, 130 F.R.D. 560, 596 & n.9 (E.D. Pa. 1989), between a union and its members, Aguinaga v. John Morrell & Co., 112 F.R.D. 671, 679-81 (D. Kan. 1986), between a bank and a party for which it was acting as fiduciary, Quintel Corp. v. Citibank, N.A., 567 F. Supp. 1357, 1362-63 (S.D.N.Y. 1983), and between a pension fund trustee and its members, Donovan v. Fitzsimmons, 90 F.R.D. 583, 586 (N.D. Ill. 1981). And, while the Second Circuit has never expressly adopted the Garner analysis, district courts within the circuit have regularly applied it. See Henry, 212 F.R.D. at 84 (collecting cases); RMED International, inc. v. Sloan's Supermarkets, Inc., No. 94 Civ. 5587, 2003 WL 41996, at *4 (S.D.N.Y. Jan. 6, 2003) (collecting cases and concluding that "the Court is confident that the Garner rationale

is alive and well in this Circuit").

Nevertheless, in the absence of a fiduciary relationship owed by the party asserting the privilege to the party seeking to abrogate it, the Garner doctrine has no application. See Henry, 212 F.R.D. at 84; Asian Vegetable Research & Development Center v. Institute of International Education, No. 94 Civ. 6551, 1996 WL 14448, at *6 (S.D.N.Y. Jan. 16, 1996); Quintel Corp., 567 F. Supp. at 1361. Here, while the Directors owed a fiduciary relationship to the American Club, the Club is not seeking documents from the Directors. Rather, it is demanding documents in the possession of those defendants whose employees or officers also acted as Directors. But the members themselves have no fiduciary duty to the American Club; the relationship between a mutual insurance association and its members is a contractual one. See In re Metropolitan Life Derivative Litigation, 935 F. Supp. 286, 293 (S.D.N.Y. 1996); Shah v. Metropolitan Life Insurance Co., Nos. 108887/00, 601181/00, 2003 WL 728869, at *14 (N.Y. Sup. Ct. Feb. 21, 2003); Fidelity and Casualty Co. of New York v. Metropolitan Life Insurance Co., 42 Misc. 2d 616, 623, 248 N.Y.S.2d 559, 565 (N.Y. Sup. Ct. 1963). Therefore, the Garner doctrine is simply inapplicable.

Indeed, even if the doctrine did apply in these circumstances, the American Club has failed to demonstrate good cause for piercing the attorney-client privilege. The Club contends that "[a] central

27

issue in this case concerns the good faith of decisions these individual directors [those employed by Keystone, Farrell, and APL] made on Defendants' behalf in respect of paying indemnities from the Club's reserves to defendants for unreported unreserved occupational disease claims[.]" (Pl. Memo. at 20). But that is plainly not the case. The complaint in this action asserts no claim remotely resembling breach of fiduciary duty, and no Director has been named as a defendant.[5]

Accordingly, the defendants need not produce the documents demanded by the Club.[6]

Conclusion

For the reasons set forth above, the American Club's application for a protective order is granted with respect to the June 18, 2004 opinion letter but denied with respect to the May 18,

---

[5] Pebble Cove Homeowners Association, Inc. v. Shoratlantic Development Co., 191 A.D.2d 544, 544-45, 595 N.Y.S.2d 92, 92-93 (2d Dep't 1993), upon which the Club relies, is therefore distinguishable. There, the court concluded that officers of a developer who sat on the board of a homeowners association could be held liable for breaching their fiduciary duty to the association by failing to disclose information about misconduct by the developer. Here, the complaint alleges no misconduct by the defendants, much less by the former Directors.

[6] In addition to seeking documents identified by Keystone, Farrell, and APL as privileged, the American Club sought the depositions of certain of their counsel and disclosure of internal reports and analyses. The demand to take the depositions of defendants' counsel has been rendered moot by the determination that the Club is not entitled to breach the defendants' attorney-client privilege. The demand for corporate analyses other than those identified as privileged was never addressed by the American Club in its briefing of this motion. (Pl. Memo. at 20-23).

2004 letter.  Its motion to compel disclosure of communications identified as privileged by Keystone, Farrell, and APL is denied.

SO ORDERED.

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       September 13, 2005


Copies mailed this date:

Lawrence J. Bowles, Esq.
Shaun F. Carroll, Esq.
Nourse & Bowles, LLP
One Exchange Plaza
At 55 Broadway
New York, New York  10006-3030

Franklin B. Velie, Esq.
Michael T. Sullivan, Esq.
Mitchell C. Stein, Esq.
Sullivan & Worcester
1290 Avenue of the Americas
New York, New York  10104

Dale A. Schreiber, Esq.
Seth Schafler, Esq.
Lisa Bauer, Esq.
Proskauer Rose LLP
1585 Broadway
New York, New York  10036

Peter Adelman, Esq.
Andrew S. Dash, Esq.
Brown Rudnick
Seven Times Square
New York, New York  10036

Mario Aieta, Esq.
Elizabeth L. Hubbard, Esq.
Garvey Schubert Barer
599 Broadway - 8th Floor
New York, New York  10012

Gene B. George, Esq.
Julia R. Brouhard, Esq.
Ray, Robinson, Carle & Davies, PLL
1717 East 9th Street, Suite 1650
Cleveland, Ohio  44114

David A. Luttinger, Jr. Esq.
Lisa M. Campisi, Esq.
Morgan Lewis and Bockius LLP
101 Park Avenue
New York, New York  10178

Edward V. Cattell, Jr., Esq.
Hollstein Keating Cattell
  Johnson & Goldstein PC
8 Penn Center, 1628 JFK Blvd.
Suite 2000
Philadelphia, PA  19103

Raymond A. Connell, Esq.
Maloof, Lebowitz Connahan & Oleske
299 Broadway - Suite 1700
New York, New York  10007

Christine S. Davis, Esq.
Mindy G. Davis, Esq.
Robert H. Shulman, Esq.
Howrey, Simon, Arnold & White LLP
1299 Pennsylvania Avenue NW
Washington, DC  20004

Adam Wofse, Esq.
Scott Fisher, Esq.
Jaspan Schlesinger Hoffman LLP
300 Garden City Plaza
Garden City, New York  11530

Steven I. Frenkel, Esq.
Cummings & Lockwood LLC
107 Elm Street
Four Stamford Plaza
Stamford, CT  06902

Nicholas P. Giuliano, Esq.
Bennett, Giuliano, McDonnell & Perrone LLP
225 West 34th Street
New York, New York  10122

Donald I. Strauber, Esq.
Melisa J. LaRocca, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York  10112

Edward A. Keane, Esq.
Mahoney & Keane, LLP
111 Broadway
New York, New York  10006

Nancy Ledy-Gurren, Esq.
Ledy-Gurren & Blumenstock LLP
475 Park Avenue South
New York, New York  10016

Patrick F. Lennon, Esq.
Tisdale & Lennon, LLC
36 West 44th Street
Suite 1111
New York, New York  10036

Robert A. O'Hare, Jr., Esq.
O'Hare Parnagian LLP
82 Wall Street - Suite 300
New York, New York  10005

Joseph D. Pizzurro, Esq.
Dora Straus, Esq.
Curtis, Mallet-Prevost,
  Colt & Mosle LLP
101 Park Avenue
New York, New York  10178

Stacey A. Saiontz, Esq.
Dickstein Shapiro Morin & Oshinsky
1177 Avenue of the Americas
New York, New York  10036

Deborah A. Silodor, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey  07068

Alissa Malone, Esq.
Lyn S. Concha, Esq.
Fields, Howell, Athans &
  McLaughlin, LLP
One Midtown Plaza
1360 Peachtree Street, NE
Suite 800
Atlanta, Georgia  30309

Allen von Spiegelfeld, Esq.
Fowler White Boggs Banker
501 E. Kennedy Boulevard
Suite 1700
Tampa, Florida  33602

Charles A. Stewart, III, Esq.
Stewart Occhipinti LLP
1350 Broadway - Suite 2200
New York, New York  10018

John G. Cameron, Jr., Esq.
Warner, Norcross & Judd, LLP
900 Fifth Third Center
111 Lyon Street N.W.
Grand Rapids, Michigan  49503

Camilo Cardozo, Esq.
DLA Piper Rudnick Gray Cary US LLP
1251 Avenue of the Americas
New York, New York  10020

John M. Toriello, Esq.
Holland & Knight LLP
195 Broadway
New York, New York  10007

Herbert I. Waldman, Esq.
Nagel, Rice & Mazie, LLP
301 S. Livingston Avenue
Suite 201
Livingston, New Jersey  07039

Rodney M. Zerbe, Esq.
Robert A. Cohen, Esq.
Brent A. Hannafan, Esq.
Dechert LLP
30 Rockefeller Plaza
New York, New York  10112

Alan Kellman, Esq.
The Maritime Asbestosis Legal Clinic
a division of The Jaques Admiralty
     Law Firm
645 Griswold - Suite 1570
Detroit, Michigan  48225

Dan Shaked, Esq.
Shaked & Posner
225 West 34th Street - Suite 705
New York, New York  10122

Terry L. Stoltz, Esq.
News America Incorporated
1211 Avenue of the Americas
New York, New York  10036

Ms. Melanie Callahan
Offshore Express Inc.
P.O. Box 1420
Houma, Louisiana  70361