UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                    :
AMERICAN STEAMSHIP OWNERS            :        04 Civ. 04309 (LAK)(JCF)
MUTUAL PROTECTION AND                    :
INDEMNITY ASSOCIATION, INC.,            :
                                                    :
                    Plaintiff,              :
                                                    :
        - against -                         :
                                                    :
ALCOA STEAMSHIP CO., INC., et al.        :
                                                    :
                    Defendants.             :
--------------------------------------------------------X


**PLAINTIFF'S OBJECTIONS
TO MAGISTRATE JUDGE'S ORDERS
DATED SEPTEMBER 13 AND 15, 2005
DIRECTING PRODUCTION OF
<u>ATTORNEY OPINION LETTER</u>**


Nourse & Bowles, LLP
Attorneys for Plaintiff

# TABLE OF AUTHORITIES

## FEDERAL CASES

*U.S. v. Skeddle*, 989 F.Supp. 905 (N.D. Ohio 1977) ........................ 11, 12, 13

*In Re Von Bulow*, 823 F.2d 94 (2d Cir. 1987) ................................................. 9

## FEDERAL STATUTES

28 U.S.C. §636(b)(1) ....................................................................................... 1

Nourse & Bowles, LLP
Attorneys for Plaintiff
One Exchange Plaza
At 55 Broadway
New York, New York 10006
(212) 952-6200
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                         :

AMERICAN STEAMSHIP OWNERS    :     04 Civ. 04309 (LAK)(JCF)
MUTUAL PROTECTION AND         :
INDEMNITY ASSOCIATION, INC.,    :
                                           :

                  Plaintiff,      :
                                         :

   - against -                   :
                                         :

ALCOA STEAMSHIP CO., INC., et al.   :
                                         :

               Defendants.    :
--------------------------------------------------------X

**PLAINTIFF'S OBJECTIONS
TO MAGISTRATE JUDGE'S ORDERS
DATED SEPTEMBER 13 AND 15, 2005
DIRECTING PRODUCTION OF
ATTORNEY OPINION LETTER**

     PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §636(b)(1) and Fed.

R.Civ.P. 72, Plaintiff, American Steamship Owners Mutual Protection and Indemnity

Association, Inc. (the "American Club" or the "Club"), hereby objects to two Orders of

Magistrate Judge James C. Francis, IV, dated September 13 and September 15, 2005

(collectively, the "Orders"), copies of which are annexed hereto as Exhibits "1" and "2".

Pursuant to the Orders, Magistrate Judge Francis concluded that the Club waived the

work-product protection otherwise applicable to the Club's counsel's written opinion letter dated May 18, 2004 (the "Opinion Letter"), which was provided to the Club's current Board and which concerned this very litigation. In particular, Magistrate Judge Francis concluded that the Opinion Letter was part of indivisible stream of communications with the defendants that began with other, older privileged communications that the Club had voluntarily disclosed. Thus, the Magistrate held. "fairness" requires that the Club disclose the Opinion Letter, prepared on the eve of this action.

Respectfully, the Magistrate Judge erred. The Opinion Letter was not part of a stream of communications. Rather it was prepared by different counsel for different audiences, at different times, in different circumstances, and for different purposes.

## Nature of this Action

The Club is a mutual insurance association that provides indemnity to its "members," various ship and transport companies. The defendants are the Club's members for and in the years prior to 1989. In all relevant years, the Club's Board was comprised almost entirely of officers and employees of the Defendants.

Pursuant to applicable terms and conditions set forth in the Club By-Laws and insurance policies, the Club indemnifies members for particular losses incurred within a given twelve month period, known as an "insurance year".

2

Generally speaking, the Club "opens" an insurance year at the outset of a given twelve month period and, historically "closed" that insurance year several years later. During the time the insurance year is open, the Club can assess its members for payments in addition to the premium in order to address actual or projected shortfalls in funds collected from the members of each year to provide indemnities to the members of those insurance years regarding their reported claims. In theory, the Club closed an insurance year after the passage of time sufficient for all members to learn of and report all losses (or claims that might lead to losses) for which they were entitled to seek indemnity. With this information, in theory, the Club was able to (1) impose the appropriate financial assessment on members and (2) establish appropriate reserves sufficient to satisfy all future, known claims.

In this action, the Club seeks a determination that, with respect to insurance years prior to 1989[1], it is not required to indemnify members for a type of occupational injury claims that were "incurred but not reported" to the Club before a given insurance year was closed (referred to by the parties as "IBNR claims"). Alternatively, the Club seeks a declaration that it is entitled to reopen those closed years to make further assessments of those members to satisfy IBNR claims[2].

---

[1] Insurance years 1989 and later are subject to a different rule regime and are not at issue in this case.
[2] For a more complete recitation of the factual background of this action, plaintiff respectfully refers the court to the factual recitation in Magistrate Judge Francis' September 13th Order.

3

The defendants contend that when they were the Directors of the Club in the past, it was always their intention and understanding that, in closing an insurance year, the Club would not make further assessments, but would remain liable to indemnify members for IBNR occupational disease claims. Defendants seek, in essence, unlimited insurance coverage for which they never paid.

### Facts Related to the Pending Discovery Issue

Opinions Produced and Used by the Club

During discovery, the Club produced all attorneys' opinion letters contained in its files dated prior to January 2000, that is, the date at which the relationship between the Club and its former members became or was about to become adversarial. In addition, the Club also produced several opinions dated after 2000 dealing with the closing of insurance years after 1989, but as the years after 1989 are not at issue in this case, those opinions are irrelevant. All of these opinions had previously been circulated to the Club's former Boards of Directors in the ordinary course of the Club's and the Director's business. At mentioned above, at that time, the Directors were largely comprised of defendants' officers and employees. The defendants, at the Club's request, produced their copies of the same documents.

The opinions used by the Club are those marked at the deposition of Charles Kurz as Club Exhibits 31, 36, 36A, 55, 56, 57, 58 and 61 (copies are annexed hereto as Ex. "3"). All of those opinions pre-date January 2000. Subjects discussed include the effects

4

of closing an insurance year, the use of the Club's Reserves and reopening of Closed Years. All of those opinions had previously been distributed to the Club's former Boards of Directors, some more than once.

The American Club's Investigation

In 2002, defendant Keystone filed a suit against the American Club, <u>Keystone Shipping Co. v American Steamship Owners Mutual Protection and Indemnity Association</u>, 02 Civ. 1477 (LAK) (S.D.N.Y.), in which Keystone challenged the American Club's policy of applying multiple deductibles to claims arising under policies over multiple closed claim years. Keystone sought a ruling that the American Club should be required only to apply a single deductible in such claims, the effect of which would be to provide greater insurance coverage to Keystone at the expense of the American Club and its current members. In response to Keystone's suit, <u>and relying in large part on documents produced by Keystone in that suit</u>, including American Club counsel opinions, the American Club's <u>current</u> Directors, only one of which (Robert Agresti of defendant Farrell Lines) represented a company that was a Club member prior to 1989, re-examined the entire matter. Upon finally learning the true facts, the Club's current Directors determined that, in fact, the Club had no obligation to indemnify members of closed insurance years for their unreported, unreserved or deliberately underreserved-for claims arising from long closed years. The prior practice was discretionary.

5

It was in this context that the American Club's current counsel, Nourse & Bowles, LLP, provided the Opinion Letter dated May 18, 2004. The American Club thereafter terminated the discretionary practice and filed the instant declaratory judgment action seeking a declaration of its right to terminate the practice and/or, alternatively, to reopen each of the insurance years in question, as authorized by New York law, on the ground of mutual mistake or other good and sufficient cause.

### Prior Proceedings

In or around early May, 2005, the American Club learned that defendant Farrell Lines, whose employee Robert Agresti had received a copy of the May 18, 2004 Opinion Letter in his capacity as a director of the American Club, had improperly produced copies as part of its document production. Such production by Farrell Lines was in direct contravention of notices sent by counsel to the American Club to Mr. Agresti personally (June, 2004) and to counsel for defendant Farrell Lines (February, 2005).

On May 11, 2005, in response to a request by counsel for the American Club, Magistrate Judge Francis issued a memorandum and endorsed order permitting the American Club to file a motion for protective order regarding, inter alia, the Opinion Letter, and ordering all defendants who had received copies to sequester the documents pending his ruling. The motion was duly briefed, and oral argument was held on the motion in connection with a status conference held before Magistrate Judge Francis on July 6, 2005.

In the September 13, 2005 Magistrate Judge Francis denied the protective order, ruling that attorney/client privilege was waived[3] because the Club had produced and used a number of the old opinion letters in deposing former Club members and directors, and the defendants, in "fairness," were entitled to obtain the Opinion Letter in order to determine whether the advice given to the former Board directors, the defendants' employees, "remained uniform over time," Opinion, Ex. "1", pg. 23.

The next day, counsel for the American Club asked the Court to reconsider certain portions of the September 13 Order, to consider the Club's work-product argument, and, in the alternative, to stay enforcement of the Order pending this appeal. By memorandum and order dated September 15, 2005, Magistrate Judge Francis granted the request for reconsideration in part and denying it in part, finding that his ruling with respect to waiver of attorney-client privilege applied equally to plaintiff's assertion of protection under the work product doctrine. The September 15 order, did, however, grant plaintiff's request for a stay.[4]

The American Club objects to these rulings on the ground that Nourse & Bowles' May 2004 Opinion Letter has no bearing on the uniformity of advice given to the former

---

[3] On July 11, 2005, counsel for the American Club wrote to the court and withdrew the claim of attorney client privilege with respect to the Opinion Letter, but maintained its assertion of work product. The Club abandoned its privilege argument because it learned, during the pendency of the protective order application, that that a copy of the Opinion Letter had been provided to its independent actuaries in connection with their preparation of state law-mandated reports.

[4] Counsel for certain defendants have also requested a further ruling from Magistrate Judge Francis that he expand the scope of his September 13 order to require the American Club to produce all documents appearing on the American Club's privilege log. By memo endorsed letter dated September 27, 2005, Magistrate Judge Francis deferred any ruling on defense counsel's request pending this Court's ruling on these objections.

Directors many years ago, and the only opinions needed to evaluate the uniformity of that advice are the old opinions already produced.  There are no others.

The Orders fail to recognize that, over time, the American Club's counsel has acted in different capacities as to the defendants: (1) as American Club counsel to the members in the years when the defendants were members of the American Club, (2) as American Club counsel to the current members in the years after the defendants left the American Club, and during which time the conduct of the former members was being investigated, and (3) as American Club counsel to the current members, adversarial to the former members after litigation was commenced by defendant Keystone in 2002.  The opinions of counsel in stage "1" are distinguishable from those in stages "2" and "3", and counsel's opinions and work product in stages "2" and "3" are entitled to protection.

In the circumstances of this case, it was an abuse of discretion and clearly erroneous and contrary to law for the Court below to rule that the American Club's production and use of the old opinion letters resulted in a broad, prospective subject matter waiver encompassing the May 18, 2004 opinion.

The Court should rule that the American Club has not waived the work-product immunity attached to the May 18, 2004 opinion letter by reason of its production and use of the old opinion letters.

## Argument

**The American Club's Production Of Opinion Letters
Was Not "Selective" Within The Meaning
Of The "Fairness" Doctrine Because Production
Of The May 18, 2004 Opinion Is Not Necessary For
A Full And Complete Understanding Of
The Legal Advice Given To Former Directors
Contemporaneously With Their Conduct**

The Club does not dispute the proposition that where a party discloses part of a privileged "conversation", it waives attorney-client and work-produce product protection as to the balance of that "conversation". See, In Re Von Bulow, 823 F.2d 94, 101-102 (2d Cir. 1987). The Club, however, does challenge the finding that the May 2004 Opinion Letter to the current Board of Directors forms any part of the prior "conversation" between former Club counsel and former Boards of Directors or relates in any way thereto.

The Court below ruled, in pertinent part:

\* \* \*

> In this case, the American Club has engaged in wholesale disclosure of apparently privileged documents. For example, it has produced in discovery sixteen different opinions of counsel, dated from 1955 to 2003, regarding the closing of insurance years and the Club's ability to assess members after a year has been closed. (Bauer Decl., Exh. L). It has also disclosed attorney-client communications relating to coverage for occupational disease claims (Bauer Decl., Exh. M), use of the Club's reserves (Bauer Decl.,Exh. N), application of deductibles (Bauer Decl., Exh. O), and a variety of other topics. (Bauer Decl., Exh. P).

9

Moreover, the American Club has relied on those documents in conducting depositions.

\*     \*     \*

The American Club argues that this conduct does not constitute a waiver of the privilege because it disclosed only those documents that were issued or prepared before January 2000, and withheld those created thereafter, when the relationship between the Club and at least some of its former members "was or was about to become adversarial." (Reply Memorandum in Support of Plaintiff's Motion for Protective Order and Order Compelling Production of Documents at 4). But this is precisely the type of selectivity that constitutes a waiver. The opinions of counsel were privileged regardless of when they were authored, and yet the American Club chose to divulge some and not others.

\*     \*     \*

[T]he disclosure by the American Club was plainly tactical and operated to the disadvantage of the defendants in the litigation. While the Club has been able to suggest that certain deponents testimony is inconsistent with legal advice that the Board received and with the position that these deponents may have adhered to while serving as Directors – the defendants have been deprived of information about the extent to which that legal advice remained uniform over time. To the extent that the American Club implicitly presents an argument that the Directors did follow or should have followed the opinions of counsel, the defendants are entitled to know what all of those opinions were.

The American Club, then, has waived the privilege.

See Ex. "1", pg. 22, 23

In so holding, the court implicitly and, the Club respectfully submits, incorrectly, treats the May 18, 2004 Opinion Letter as part and parcel of an indivisible stream of communication between counsel and the defendants which must be construed as a whole

in order to be understood. In fact, that is emphatically not the case because it is clear that a distinction must be drawn between opinions tendered to the former Board members when they were members, and opinions tendered to the present Board members at a time when the relationship between the Club and at least one former member Defendant had already become adversarial, and the relationship with the other defendants was in the process of becoming so. The pre-2000 and 2004 and later opinions are drafted by different counsel for different audiences, at different times, in different circumstances, and for different purposes. In these circumstances, there is no justification, legal or otherwise, for holding that production of the old opinion letters results in a broad prospective waiver of work product immunity for the May 18, 2004 opinion.

U.S. v. Skeddle, 989 F.Supp. 905 (N.D. Ohio 1977), recognized exactly this point. Skeddle dealt with the issue of subject matter waiver in connection with assertion of attorney-client privilege. Nonetheless, in this case the Court below held that issues of waiver are applicable to both work-product and attorney client privilege. See Ex. "2", p. 2. Thus, the principles of Skeddle are applicable to the issue of work-product immunity, and to the degree that work-product involved concerns somewhat different and broader than attorney-client privilege, the limitations discussed therein should apply with even greater force to a document protected by work product.

In Skeddle, former officers and employees of a corporation were charged with defrauding the corporation. Corporate counsel had early on communicated with the

11

former employees regarding the subject transactions. Thereafter, suspicions arose and counsel conducted an investigation. Subsequently, the corporation commenced suit against the former employees. The Corporation waived its claim of privilege as to the early communications, but maintained it as to the investigatory and litigation phases. The defendants argued that disclosure of the early communications waived the privilege as to all other communications on the same subject.

The Skeddle court found that the changing circumstances over time in the relationship between counsel and the defendants warranted a limited subject matter waiver of privileged materials and communications. The Skeddle Court stated:

*    *    *

> [4] Among the factors which appear to be pertinent in determining whether disclosed and undisclosed communications relate to the same subject matter are: 1) the general nature of the lawyer's assignment; 2) the extent to which the lawyer's activities in fulfilling that assignment are undifferentiated and unitary or are distinct and severable; 3) the extent to which the disclosed and undisclosed communications share, or do not share, a common nexus with a distinct activity; 4) the circumstances in and purposes for which disclosure originally was made; 5) the circumstances in and purposes for which further disclosure is sought; 6) the risks to the interests protected by the privilege if further disclosure were to occur; and 7) the prejudice which might result if disclosure were not to occur. By applying these factors, and such factors as may appear appropriate, a court may be able to comply with the mandate that it construe "same subject matter" narrowly while accommodating fundamental fairness.

989 F.Supp. at 909.

12

* * *

> If waiver of the privilege with regard to communications during the implementation phase were to lead to waiver with regard to communications during the investigatory and litigation phases, the interests protected by the attorney-client privilege would be placed at considerable risk. On the other hand, the risk of prejudice to the defendants from limiting the waiver to communications during the implementation phase appears nonexistent. Given the distinctive character of both Miller's activities and the lack of nexus between the earlier and the later communications there is no basis for concern that disclosure only of communications occurring before discovery of the alleged frauds is unfairly selective. By asserting the privilege with regard to communications after the implementation phase, LOF is not simultaneously using that claim as a sword and shield.

Id. at 910.

Thus, in Skeddle the court recognized that counsel's involvement with the defendants encompassed several distinct phases: (1) a phase in which they worked together in essence for a common purpose; (2) a phase in which a conflict of interest between the corporate principal and former management had arisen and investigations were underway; and (3) a phase in which the former management and counsel were adversarial due to the commencement of litigation. The Skeddle court ruled that disclosure of communications in the first stage where there was a commonality of interest between corporate counsel and the defendants did not warrant a subject matter waiver in the second and third phase where that commonality of interest was absent and, indeed, an adversarial relationship had begun.

13

Similarly, in this case, there is no justification for extending a waiver of work-product immunity due to disclosure of communications at a time when the American Club and former members, whose employees served as Directors, were apparently united in interest, to later periods when the relationship had become distant and adversarial. The issue in this case is what the former Directors knew and understood or should have understood when, among other things, they purported to rule out all further assessments when closing an insurance year[5]. The relevant inquiry, therefore, is what they were told when they were Directors. That evidence is found in the pre-2000 opinions, all of which the Club has produced, <u>not</u> in the May 18, 2004 letter. The Club's counsel's communications with the <u>current</u> Board in 2004 concerning this investigation, and his advice concerning this litigation has no bearing on the uniformity of advice given to prior Boards of Directors in years past. Counsel's communication in these later stages, including the May 18, 2004 opinion, are entitled to work-product protection.

<u>CONCLUSION</u>

For the foregoing reasons, the Magistrate Judge's discovery orders dated September 13 and 15, 2005 should be reversed to the extent the order denied plaintiff's motion for protective order with respect to the May 18, 2004 Opinion Letter. This Court should order that the Opinion Letter is protected from disclosure pursuant to the

---

[5] The Club disputes that this was ever actually done.

14

work-product doctrine, and should further order all defendants and their counsel to return

forthwith all copies of the Opinion Letter to plaintiff's counsel.

Dated:    New York, New York
          September 28, 2005

                                    Respectfully submitted,

                                    NOURSE & BOWLES, LLP
                                    Attorneys for Plaintiff

                                    By

                                        Shaun F. Carroll (SC 9898)
                                        One Exchange Plaza
                                        At 55 Broadway
                                        New York, New York 10006
                                        (212) 952-6200

Of Counsel
     Lawrence J. Bowles

SULLIVAN & WORCESTER LLP

                                    15

*Exhibit 1*

UNITED STATES DISTRICT COURT                 **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
AMERICAN STEAMSHIP OWNERS MUTUAL   :   04 Civ. 4309 (LAK) (JCF)
PROTECTION AND INDEMNITY           :
ASSOCIATION, INC.,                 :        MEMORANDUM
                                   :        AND  ORDER
                  Plaintiff,       :
                                   :
      - against -                  :
                                   :
ALCOA STEAMSHIP CO., INC.,         :
et al.,                            :
                                   :
                  Defendants.      :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

    The American Steamship Owners Mutual Protection and Indemnity
Association, Inc. (the "American Club" or the "Club") has brought
this action pursuant to 28 U.S.C. § 2201, seeking a determination
that it is not obligated to indemnify its members for certain
occupational disease claims that were not reported to the Club
prior to February 20, 1989.  The American Club now moves under Rule
26(c) of the Federal Rules of Civil Procedure for a protective
order foreclosing the defendants from access to two opinion
letters, dated May 18 and June 18, 2004, provided to the Club by
its counsel, Nourse & Bowles LLP ("Nourse & Bowles").  The Club
also moves pursuant to Rule 37 for an order compelling defendants
Keystone  Shipping  Co.  ("Keystone"),  Farrell  Lines,  Inc.
("Farrell"), and American President Lines, Ltd. ("APL") to: (1)
produce all opinions and reports of counsel concerning pending and
anticipated occupational disease claims and lawsuits as well as the

1

issue of reopening closed insurance years; (2) make available a number of their former counsel for deposition; and (3) produce all internal corporate reports and analyses concerning actual and anticipated liability for occupational disease claims.[1]  For the reasons that follow, the motion for a protective order is granted in part and denied in part and the motion to compel is denied in its entirety.

Background[2]

The American Club is a mutual indemnity insurance association organized under the laws of New York State.  (Second Amended Complaint ("SAC"), ¶¶ 1, 14).  The defendants are vessel owners and related entities that were members of the Club prior to February 20, 1989.  (SAC, ¶ 15).  During each year, the American Club would issue to each of its members a fully assessable marine protection

---

[1] The American Club also initially sought an order directing APL to produce an opinion provided to APL by Joseph K. Molloy, Esq. in May 1995, on the basis that APL had waived the attorney-client privilege by showing the opinion letter to counsel for the Club. The American Club has abandoned that argument but continues to contend that this letter, along with other opinions provided to the defendants that relate to the Club's practices, has been placed "at issue" by the defendants' allegations that they acted in reliance on those practices.  (Letter of Lawrence J. Bowles dated July 11, 2005, at 3-4).

[2] The general background of this case is set forth at length in a prior decision by the Honorable Frank Maas, U.S.M.J., to whom the case was then assigned.  American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., No. 04 Civ. 4309, 2005 WL 427593 (S.D.N.Y. Feb. 22, 2005). The facts will be summarized here only to the extent necessary for an understanding of the pending discovery disputes.

and indemnity insurance policy.  (SAC, ¶ 24).  Premiums for each member were based primarily on its historical loss experience. (SAC, ¶ 28).  On the basis of these payments, the members mutually indemnified each other except for catastrophic claims, which were covered by reinsurance.  (SAC, ¶ 25).

Prior to 1989, the club typically closed each policy year about ten years after the actual end of that year, at which time the Board of Directors would determine which members owed final assessments and which were entitled to dividends.  (SAC, ¶¶ 40, 43).  The Board also established reserves to pay additional claims that might arise out of a given year, but once the year was closed, it neither sought additional assessments nor paid additional dividends.  (SAC, ¶¶ 6, 40).  Between 1946 and 1976, case reserves were set aside for claims that were reported but unresolved, but no funds were reserved for claims that were incurred but not reported ("IBNR" claims).  (SAC, ¶ 44).

By the early 1980's, members of the American Club began to receive claims from seamen for occupational diseases that allegedly resulted from exposure to asbestos aboard vessels as early as the 1940's.  (SAC, ¶¶ 45, 46).  No IBNR reserves had been established for these claims when the relevant policy years had been closed, but the Club nevertheless began indemnifying its members for asbestos-related diseases from its general reserves.  (SAC, ¶ 47). The American Club characterizes this policy as discretionary and

contends that the payments were not required by its charter or by-laws or by New York law.  (SAC, ¶ 56).

On May 25, 2004, the Board of Directors discontinued this practice and determined that the American Club would not indemnify its members for IBNR claims that arose in closed policy years prior to February 20, 1989.  (SAC, ¶ 57).  This determination had a disparate impact on Club members both because members had varying levels of exposure for occupational disease claims and because the Club's membership had changed over time as some members terminated their relationship while new members joined.  Certain members adversely affected by this decision objected, and the Club therefore initiated this declaratory judgment proceeding seeking a determination that it is entitled to decline to use its general reserves to pay IBNR claims for closed years.  (SAC, ¶ 64).  To the extent this argument is rejected, the Club requests a determination that it may reopen closed years in order to levy the assessments necessary to pay for the IBNR claims for that year.  (SAC, ¶ 60).

Shortly before the Board voted to discontinue the American Club's discretionary practice, its counsel, Nourse & Bowles, provided it with an opinion letter dated May 18, 2004.  That letter was circulated to each member of the Board of Directors, including Robert Agresti, who was an officer of Farrell Lines, one of the members of the Club.  The letter bore a legend indicating that it was a confidential attorney-client communication.

4

After the Board vote, and after this litigation had been commenced, Nourse & Bowles provided the Board with a second opinion letter dated June 18, 2004. That letter was also identified as an attorney-client communication. It was intended to be circulated to all Board members except Mr. Agresti but, according to the American Club, was inadvertently delivered to him as well. Immediately thereafter, the Club notified Mr. Agresti of its error and requested that the letter be returned or destroyed.

In February 2005, Nourse & Bowles notified counsel for Farrell Lines that both the May 18 and June 18, 2004 letters were attorney-client communications and demanded their return. Farrell, however, mistakenly circulated these opinions to its co-defendants on a computer disk containing discovery materials in this case. All defendants then agreed not to utilize the letters until their status had been determined by the Court. The American Club seeks a ruling that these letters are privileged.

The second set of documents at issue consists of "internal documentation concerning [the defendants'] exposure to occupational disease claims[.]" (Memorandum of Law in Support of Plaintiff's Motion for Protective Order, and Order Compelling Production of Documents ("Pl. Memo.") at 15). To the extent that such documents reflect communications with counsel, the defendants have identified them as privileged. Although the American Club has not itemized the documents that it considers as falling into this category, it

5

has identified one representative example.  After a $6 million judgment was entered against the American Club on an asbestos claim, Club counsel suggested in April 1995 that closed policy years be reopened and the members in those years be required to pay additional assessments.  Prior to responding to that recommendation, the Directors were given the opportunity to confer with their own counsel.  Accordingly, Ben Gleason, a member of the American Club's Board and an officer of APL, solicited the advice of an attorney, James Molloy, who provided a written opinion.  The Club now seeks disclosure of that letter as well as similar communications between each of the defendants and their respective counsel.

Discussion

       A. Choice of Law

       The parties have not addressed what law should govern the privilege issues in this action, though they have generally relied on federal case law.  The starting point for any choice-of-law analysis relating to an issue of privilege is Rule 501 of the Federal Rules of Evidence, which provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.  However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness . . . shall be

6

determined in accordance with State law.

At first glance, this framework would appear to call for the application of state privilege law here.  In a case brought in admiralty, federal choice-of-law rules apply.  See Advani Enterprises, Inc. v. Underwriters at Lloyds, 140 F.3d 157, 162 (2d Cir. 1998); Sundance Cruises Corp. v. American Bureau of Shipping, 7 F.3d 1077, 1080 (2d Cir. 1993).  Those rules, in turn, provide that in cases construing marine insurance contracts, the law of the state with the greatest weight of contacts with the transaction at issue will govern.  See Advani, 140 F.3d at 162; Hartford Fire Insurance Co. v. Mitlof, 193 F.R.D. 154, 157 (S.D.N.Y. 2000); Royal Insurance Co. of America v. Sportswear Group, LLC, 85 F. Supp. 2d 275, 278 (S.D.N.Y. 2000).  And, although this case concerns the general obligations of the American Club to its members rather than any specific policy of insurance, it is still likely that those obligations will be determined in accordance with New York law: the Club is organized under New York law, it holds its annual meeting in New York City (American Club By-Laws, Rules & List of Correspondents ("By-Laws and Rules"), Art. I, § 2, attached as Exh. D to Declaration of Lisa A. Bauer dated June 10, 2005 ("Bauer Decl."), at AC0083421), and, according to the American Club's rules, both the rules themselves and any insurance policies that are issued by the Club are governed by New York law. (By-Laws and Rules, Rule 1.4.45, attached as Exh. D to Bauer Decl., at

7

AC0083453).  New York State law, then would seem to supply the
"rule of decision" for the substantive claims and therefore to
govern privilege issues as well.

Such an analysis, however, fails to give sufficient weight to
the well-documented legislative history of Rule 501, which supports
the conclusion that Congress intended federal privilege law to
apply in cases such as this, where the state substantive law is
operative not of its own force, but as adopted by the federal
common law.  In 1971, the Advisory Committee on the Federal Rules
of Evidence recommended that common law privileges be abolished for
any case brought in federal court; the only privileges that would
remain would be those established by the Constitution or federal
statute or specifically enumerated in the proposed rules.  This
proposal was highly controversial because it did not provide for
the application of state privilege law in diversity cases, and
Congress consequently became actively involved  in the rulemaking
process.  See 23 Charles Alan Wright & Kenneth W. Graham, Jr.,
Federal Practice and Procedure § 5421 (1980).  The House Judiciary
Committee drafted what is now Rule 501, designing the state law
proviso to require the application of state privilege law in
proceedings governed by Erie R. Co. v. Tompkins, 304 U.S. 64
(1938).  H.R. Rep. No. 650, 93d Cong., 2d Sess. (1974), reprinted
in 1974 U.S.C.C.A.N. 7075.  The Senate Judiciary Committee was
concerned that the House draft could be construed to require the

8

application of state privilege law not only in diversity cases but
also in those federal question cases where courts use state
substantive law to fill in the gaps of federal common law. See 23
Wright & Graham § 5433. To give the rule greater precision, the
Senate Judiciary Committee drafted, and the Senate adopted, an
amendment limiting the use of state privilege law to diversity
cases. 23 Wright & Graham § 5433. While the Conference Committee
declined to replace the House proviso with the Senate language, it
did indicate its endorsement of the Senate view by explaining the
final version of the Rule as follows:

> In nondiversity jurisdiction civil cases, federal
> privilege law will generally apply. In those
> situations where a federal court adopts or incorporates a state law
> to fill the intersticies or gaps in federal statutory
> phrases, the court generally will apply federal privilege
> law. . . . When a federal court chooses to absorb state
> law, it is applying the state law as a matter of federal
> common law. Thus, state law does not supply the rule of
> decision (even though the federal court may apply a rule
> derived from state decisions), and state privilege law
> would not apply.

Conf. Rep. No. 1597, 93d Cong., 2d Sess. (1974), reprinted in 1974
U.S.C.C.A.N. 7098, 7101. Accordingly, "[w]here the state
substantive law is being used as part of the 'federal common law',
the Conference Report makes it clear that state privilege law need
not be applied under Rule 501." 23 Wright & Graham § 5433 at 857.

Thus, in cases arising under the Federal Tort Claims Act (the
"FTCA"), for example, federal privilege rules apply because,
although state law governs the substantive issues, it is only

because that law has been "absorbed" by the federal statute.  <u>See</u> <u>Tucker v. United States</u>, 143 F. Supp. 2d 619, 622-23 (S.D. W. Va. 2001); <u>Syposs v. United States</u>, 179 F.R.D. 406, 410-11 (W.D.N.Y. 1998); <u>Young v. United States</u>, 149 F.R.D. 199, 204 (S.D. Cal. 1993).  <u>But see</u> <u>Ellis v. United States</u>, 922 F. Supp. 539, 540 (D. Utah (1996)(characterized in <u>Tucker</u>, 143 F. Supp. at 624, as "lacking in . . . awareness of the legislative history behind Rule 501"); <u>Oslund v. United States</u>, 128 F.R.D. 110, 113-14 (D. Minn. 1989) (same).  Similarly, courts have concluded that federal privilege law applies in cases involving other federal statutes that incorporate state law.  <u>See, e.g.,</u> <u>Crowe v. County of San Diego</u>, 242 F. Supp. 2d 740, 746-48 (S.D. Cal. 2003) (42 U.S.C. § 1983); <u>Burrows v. Redbud Community Hospital District</u>, 187 F.R.D. 606, 608 (N.D. Cal. 1998) (Emergency Medical Treatment and Active Labor Act).

The same result follows here.  Cases in admiralty are generally governed by federal common law.  <u>See</u> <u>Woodward Governor Co. v. Curtiss-Wright Systems, Inc.</u>, 164 F.3d 123, 126 (2d Cir. 1999) ("[S]uits involving maritime claims are governed by the venerable federal common law of admiralty."); Thomas J. Schoenbaum, <u>Admiralty and Maritime Law</u> § 5-1 (4th ed. 2004).  State law controls specific issues only to the extent that it is incorporated or "absorbed" by federal maritime law.  Indeed, the case for applying federal privileges in admiralty cases is even stronger

than it is in FTCA cases, because the incorporation of state jurisprudence into maritime law is a function of judicial creation of federal common law, while the FTCA specifically directs the application of state law. Cf. Crowe, 242 F. Supp. at 748 (argument for applying federal privilege stronger in § 1983 cases than in FTCA cases). Accordingly, federal privilege principles govern in this case. See Hartford Fire Insurance Co. v. Garvey, 109 F.R.D. 323, 327 (N.D. Cal. 1985) (applying federal privilege law in admiralty case, albeit without Rule 501 analysis).

    B. Club Counsel's Opinion Letters

    The American Club contends that the defendants should be prohibited from using or disseminating the Nourse & Bowles opinion letters because the May 18 letter was provided to Mr. Agresti in confidence solely in his capacity as a Director of the Club and because the June 18 letter was delivered to him inadvertently. The defendants respond, first, that the American Club had no expectation of confidentiality with respect to the letters.[3] Further, they argue that the Club has waived any privilege it might have had by affirmatively utilizing earlier opinion letters relating to the same subject matter in the course of this litigation. The Club replies that it has properly withheld only

---

[3] Defendant APL has taken no position with respect to the American Club's motion for a protective order. (Memorandum of Defendant APL in Opposition to Plaintiff's Motion for a Protective Order and to Compel Production of Documents Identified in APL's Privilege Log at 1 n.2).

those attorney-client communications that were created after January 2000, because it was at that point that the relationship between the Club and some of its present or former members had become adversarial.  In addition, the American Club contends that because it has not relied on an advice-of-counsel defense, its use of privileged documents in discovery in this case does not constitute a subject matter waiver.

      1. <u>The Privilege Generally</u>

The attorney-client privilege protects from disclosure communications among clients and counsel made for the purpose of obtaining legal advice, provided that the communications were intended to be kept confidential and the privilege has not been waived.  <u>See</u> <u>United States v. International Brotherhood of Teamsters</u>, 119 F.3d 210, 214 (2d Cir. 1997); <u>United States v. Doe (In re Six Grand Jury Witnesses)</u>, 979 F.2d 939, 943 (2d Cir. 1992); <u>Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.</u>, 160 F.R.D. 437, 441 (S.D.N.Y. 1995).  The burden of establishing each of the elements of the privilege rests on the party asserting it.  <u>See</u> <u>United States v. Doe (In re Grand Jury Proceedings)</u>, 219 F.3d 175, 182 (2d Cir. 2000); <u>International Brotherhood of Teamsters</u>, 119 F.3d at 214).

It is beyond question that corporations as well as individuals are entitled to assert the privilege.  <u>See</u> <u>Commodity Futures Trading Commission v. Weintraub</u>, 471 U.S. 343, 348 (1985); <u>Upjohn</u>

<u>Co. v. United States</u>, 449 U.S. 383, 386 (1991). As the Supreme Court has observed, however,

> The administration of the attorney-client privilege in the case of corporations . . . presents special problems. As an inanimate entity, a corporation must act through its agents. A corporation cannot speak directly to its lawyers. Similarly, it cannot directly waive the privilege when disclosure is in its best interest. Each of these actions must necessarily be undertaken by individuals empowered to act on behalf of the corporation.

<u>Weintraub</u>, 471 U.S. at 348. Thus, for a solvent corporation, corporate management, acting through its officers and directors, has the authority to exercise the privilege, a power that must be exercised consistent with management's fiduciary duties. <u>Id.</u> at 348-49.

### 2. <u>The Club's Assertion of the Privilege</u>

The individuals who serve as Directors of the American Club are also officers or employees of the Club's constituent members. Thus, for example, Mr. Agresti was not only a Director of the American Club, but also an officer of Farrell Lines. Accordingly, the defendants argue that a document provided by Club counsel to Mr. Agresti cannot be considered confidential such that it could not be disseminated to Farrell Lines; the defendants rely on "the common sense notion that a director would not sequester a document from the very company he represents on the board." (Memorandum of Law of Defendant Farrell Lines, Inc. in Opposition to Plaintiff's Motion for Protective Order and Order Compelling Production of

Documents ("Farrell Memo.") at 8-9). They contend that "the Club has freely distributed opinion letters with the understanding (and very likely the expectation) that they would be shared with the non-fiduciary members the directors represented" (Farrell Memo. at 8), and the defendants cite as an example an instance in which the American Club acceded to the suggestion of certain of its Directors that they have the opportunity to review with their own attorneys a legal issue that had been raised in an opinion letter from Club counsel. (Farrell Memo. at 9).

The example referred to by the defendants fails to support their position for two reasons. First, the fact that the American Club might have chosen to waive confidentiality with respect to a single attorney-client communication hardly proves that it did not treat other such communications as privileged. Second, the defendants mischaracterize the Club's handling of that particular communication. There is no evidence that the American Club expected that its attorney's opinion "would be disseminated to the counsel of the Club's non-fiduciary members." (Farrell Memo. at 9). Rather, the Club simply acknowledged that the Directors wished to obtain their own legal advice about the issue addressed in Club counsel's opinion. (Letter of T.J. McGowan dated May 4, 1995, attached as Exh. 12 to Affidavit of Shaun F. Carroll dated May 27, 2005 ("Carroll Aff.")). The Directors were perfectly capable of obtaining the desired input without disclosing the substance of the

opinion letter.

More generally, the defendants' argument raises the issue of whether the attorney-client privilege may be properly invoked by a corporation or similar entity against someone who was a director at the time that the document in question was created. Several cases have found that it may not. In Kirby v. Kirby, No. 8604, 1987 WL 14862 (Del. Ch. July 29, 1987), the plaintiffs, who had been ousted as directors of a charitable corporation, sought access to documents generated while they were in office but withheld by the defendants on the basis of the attorney-client privilege. The court reasoned as follows:

> The issue is not whether the documents are privileged or whether plaintiffs have shown sufficient cause to override the privilege. Rather, the issue is whether the directors, collectively, were the client at the time the legal advice was given. Defendants offer no basis on which to find otherwise, and I am aware of none. The directors are all responsible for the proper management of the corporation, and it seems consistent with their joint obligations that they be treated as the "joint client" when legal advice is rendered to the corporation through one of its officers or directors.

Id. at *7. Accordingly, the court rejected any claim of privilege and ordered disclosure of the documents created prior to the plaintiffs' ouster. Id.; see also Harris v. Wells, Nos. B-89-391, B-89-482, 1990 WL 150445, at *4 (D. Conn. Sept. 5, 1990) (requiring disclosure of documents based, in part, on Kirby).

Similarly, in Gottlieb v. Wiles, 143 F.R.D. 241 (D. Colo. 1992), the court found that a former chairman and CEO of a

15

corporation was not barred by the attorney-client privilege from obtaining documents generated during his tenure.  The court found that this was analogous to the situation in which "parties with a common interest retain a single attorney to represent them.  When they later become adverse, neither is permitted to assert the attorney-client privilege as to communications occurring during the period of common interest."  Id. at 247.

Other courts, however, have either refined or criticized the analysis advanced in these cases by drawing a distinction between former or dissident directors who are acting as individuals and those who are acting in their fiduciary capacity.  In Moore Business Forms, Inc. v. Cordant Holdings Corp., Civ. A. Nos. 13911, 14595, 1996 WL 307444 (Del. Ch. June 4, 1996), the Delaware Chancery Court clarified the rationale of Kirby:

> Although the Kirby Court described the directors as a "joint client," a more accurate description of the relationship is that there was a single "client," namely, the entire board, which includes all its members.  That is, a director seeking information furnished to the board that is the subject of the privilege claim is a "client" not in his or her individual capacity, but as a member of the collective body (the board) of which the director is one member.

Id. at *4 n.4.  Likewise, in Dexia Credit Local v. Rogan, No. 02 C. 8288, 2004 WL 3119026, at *10 (N.D. Ill. Dec. 21, 2004), the court rejected the common interest paradigm utilized by the court in Gottlieb, saying, "[t]hat model does not fit here, because during the time that he was in the control group, [the former director who

16

was seeking discovery] had no personal attorney-client privilege or relationship; that relationship rested solely in the corporation."

That distinction between a board member's personal role and his role as a director is critical in this case. As a matter of corporate law, any Director on the American Club's Board may have the right of access to attorney-client communications between the Club and its counsel generated during his or her tenure. But with that right comes the obligation to maintain the confidentiality of that communication, since the privilege belongs to the American Club and is not the Director's to waive. As the court reasoned in Genova v. Long Peak Emergency Physicians, P.C., 72 P.3d 454, 463 (Colo. Ct. App. 2003),

> Although plaintiff's status as a former director would have entitled him to learn privileged information when he was a director, he would then have been duty bound to keep such information confidential. He would not have been entitled alone to assert or waive the privilege on behalf of [the defendant corporation].

When a Director of the Club, then, is acting on behalf of the member entity of which he is an officer, he can neither disseminate confidential information he has received as a Board member nor pierce the privilege to obtain additional information. See Milroy v. Hanson, 875 F. Supp. 646, 650 (D. Neb. 1995) (denying access to director for privileged material sought to further personal goals in litigation rather than in fiduciary role). Thus, the fact that Mr. Agresti and other Directors of the American Club also had roles in the member entities does not undermine the Club's ability to

17

assert the privilege, since information shared with these directors was provided to them in their capacity as fiduciaries. This does not end the inquiry, however, because the defendants also argue that the Club has waived its privilege by disclosing protected communications during the course of this litigation.

        3. Waiver

     It is well established that "the attorney-client privilege cannot at once be used as a shield and a sword." United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) (citations omitted). Accordingly, if a party places advice that it has received from an attorney "at issue" in litigation, it has waived the privilege with respect to all such advice on the same topic. An "at issue" waiver occurs, for example, when a defendant raises a defense of advice of counsel, see Bilzerian, 926 F.2d at 1292; Convolve, Inc. v. Compaq Computer Corp., 224 F.R.D. 98, 104 (S.D.N.Y. 2004); In re Buspirone Patent Litigation, 210 F.R.D. 43, 53 (S.D.N.Y. 2002); Resolution Trust Corp. v. Massachusetts Mutual Life Insurance Co., 200 F.R.D. 183, 191 (W.D.N.Y. 2001), or when a plaintiff sues a former attorney for professional malpractice, see Louima v. City of New York, No. 98 CV 5083, 2004 WL 2359943, at *70 (E.D.N.Y. Oct. 18, 2004); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, No. 96 Civ. 7233, 2003 WL 21277139, at *2 (S.D.N.Y. June 2, 2003). Here, disclosure of the Nourse & Bowles opinion letters is not required by the "at issue" doctrine because the American Club has

18

never advanced a claim or defense as to which the opinion of counsel is a critical element.

However, reliance on advice of counsel is not the exclusive basis for finding waiver of the attorney-client privilege. "Fairness considerations may also come into play where the party asserting the privilege makes factual assertions, the truthfulness of which may be assessed only by an examination of the privileged communications or documents." <u>Falise v. American Tobacco Co.</u>, 193 F.R.D. 73, 84 (E.D.N.Y. 2000)(citations omitted); <u>see also</u> <u>In re Broadcom Corp. Securities Litigation</u>, Nos. SA CV 1275, SA CV 2301, 2005 WL 1403516, at *1 (C.D. Cal. Feb. 10, 2005) ("A party waives the privilege if it injects into the case an issue that in fairness requires an examination of otherwise protected communications."). Furthermore, the "fairness doctrine" "aim[s] to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information." <u>In re von Bulow</u>, 828 F.2d 94, 101 (2d Cir. 1987). Thus,

> if a party's disclosure of a portion of a communication or of one among several related communications may be misleading because the party has disclosed only favorable material while concealing unfavorable information, waiver is likely to be found for so much of the withheld information "as will make the disclosure complete and not misleadingly one-sided."

<u>Koster v. Chase Manhattan Bank</u>, No. 81 Civ. 5018, 1984 WL 883, at *4 (S.D.N.Y. Sept. 18, 1984) (quoting <u>Teachers Insurance and</u>

<u>Annuity Association v. Shamrock Broadcasting Co.</u>, 521 F. Supp. 638, 641 (S.D.N.Y. 1981)); <u>see also</u> <u>Hercules, Inc. v. Exxon Corp.</u>, 434 F. Supp. 136, 156 (D. Del. 1977) (unfair to allow party to "disclose only those facts beneficial to its case and refuse to disclose, on the grounds of privilege, related facts adverse to its position"); <u>Haymes v. Smith</u>, 73 F.R.D. 572, 576 (W.D.N.Y. 1976) ("If a party-client chooses to disclose part of an otherwise privileged communication directed to his legal counsel, then he waives the privilege and the production of all the correspondence or the remainder of the consultations about the same subject can be demanded.").

In this case, the American Club has engaged in wholesale disclosure of apparently privileged documents. For example, it has produced in discovery sixteen different opinions of counsel, dated from 1955 to 2003, regarding the closing of insurance years and the Club's ability to assess members after a year has been closed. (Bauer Decl., Exh. L). It has also disclosed attorney-client communications relating to coverage for occupational disease claims (Bauer Decl., Exh. M), use of the Club's reserves (Bauer Decl., Exh. N), application of deductibles (Bauer Decl., Exh. O), and a variety of other topics. (Bauer Decl., Exh. P).

Moreover, the American Club has relied on those documents in conducting depositions. When, for instance, Keith Kennedy, a former Director and member of the Club's Finance Committee

testified to his understanding that the closing of an insurance
year precluded the Club from making further assessments but did not
relieve the American Club of its obligation to pay claims incurred
in that year, counsel for the Club sought to have him reconcile his
answer with an opinion letter provided to the Directors during Mr.
Kennedy's tenure. (Deposition of Keith Kennedy, attached as Exh.
Q to Bauer Decl., at 140-47). Similarly, during the deposition of
another former Director, Richard Gronda, Club counsel presented the
witness with an opinion letter and asked him if he would have
questioned the author about it, since it appeared to express a
legal opinion different from the witness' own. (Deposition of
Richard Gronda, attached as Exh. R to Bauer Decl., at 122-27).
Finally, when deposing yet a third former Director, Charles Kurz,
II, Club counsel proffered a letter from the American Club's
attorney to the Board and asked whether the opinions it contained
comported with the witness' understanding. (Deposition of Charles
Kurz, attached as Exh. S to Bauer Decl. at 296-311).

The American Club argues that this conduct does not constitute
a waiver of the privilege because it disclosed only those documents
that were issued or prepared before January 2000, and withheld
those created thereafter, when the relationship between the Club
and at least some of its former members "was or was about to become
adversarial." (Reply Memorandum in Support of Plaintiff's Motion
for Protective Order and Order Compelling Production of Documents

at 4).   But this is precisely the type of selectivity that constitutes a waiver.   The opinions of counsel were privileged regardless of when they were authored, and yet the American Club chose to divulge some and not others.

According to some case law, this alone is enough to trigger broad subject matter waiver.   See United States v. Bernard, 877 F.2d 1463, 1465 (10th Cir. 1989); Lorenz v. Valley Forge Insurance Co., 815 F.2d 1095, 1099 (7th Cir. 1987); Hollins v. Powell, 773 F.2d 191, 196 (8th Cir. 1985); Weil v. Investment/Indicators, Reasearch & Management, Inc., 647 F.2d 18, 24 (9th Cir. 1981); and Bower v. Weisman, 669 F. Supp. 602, 204 (S.D.N.Y. 1987).   One court has stated:

> It bears emphasis that these cases do not require the discovering party to demonstrate prejudice, such as, for example, proof that the privilege holder has disclosed only favorable materials.   They also do not require the discovering party to demonstrate that the privilege holder is putting the privileged communications in issue in the litigation.   It appears sufficient, for a waiver as to subjects discussed in the disclosed conversations, that the privilege holder has voluntarily revealed only some of the communications on the subject and has withheld others.

Bowne of N.Y. City, Inc. v. AmBase Corp., 150 F.R.D. 465, 485 (S.D.N.Y. 1993).   Other courts have criticized Bowne for suggesting that subject matter waiver does not require a showing of tactical disclosure or other unfairness.   See Falise, 193 F.R.D. at 85. That debate need not be resolved here, however, for the selective disclosure by the American Club was plainly tactical and operated

22

to the disadvantage of the defendants in the litigation.  While the Club has been able to suggest that certain deponents' testimony is inconsistent with legal advice that the Board received -- and with the position that these deponents may have adhered to while serving as Directors -- the defendants have been deprived of information about the extent to which that legal advice remained uniform over time.  To the extent that the American Club implicitly presents an argument that the Directors did follow or should have followed the opinions of counsel, the defendants are entitled to know what all of those opinions were.

The American Club, then, has waived the privilege.  The precise scope of that waiver need not now be determined, as only the May 18 and June 18, 2004 opinion letters are currently in question.  It is plain that the May 18 letter, which I have reviewed <u>in</u> <u>camera</u>, is "one among several related communications" along with  the opinions that the Club has already divulged in this litigation.  <u>Koster</u>, 1984 WL 883, at *4.  By contrast, the June 18 letter deals with two groups of issues -- a potential conflict of interest on the part of Club counsel and strategic considerations relating to ongoing litigation -- which are not closely enough related to the disclosed documents to warrant production under the fairness doctrine.  Therefore, while the May 18 letter shall be produced because the privilege has been waived, the June 18 letter

need not be.[4]

C. Opinions of Counsel Provided to the Defendants

The American Club's second application is for an order requiring Keystone, Farrell, and APL to produce "all opinions and reports from all counsel . . . concerning then pending and anticipated occupational disease claims and lawsuits . . . as well as the issue of reopening closed insurance years[.]" (Pl. Memo. at 2). The Club argues that certain officers and employees of these defendants were members of the Board and therefore were fiduciaries of the Club. Accordingly, the American Club contends that under the doctrine established in Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970), "[w]here a party has acted as a fiduciary of an opponent, the attorney client privilege may not be invoked to conceal documents and information obtained during the course of that relationship, where such documents and information are important to the opponent's case." (Pl. Memo. at 20).

Garner was an action brought by stockholders against a corporation and its officers alleging violations of federal and state securities laws as well as common law fraud. When the plaintiffs sought information about advice given to the corporation by its counsel concerning the transactions at issue, the

---

[4] The defendants have not challenged the Club's position that the disclosure of the June 18 letter to Mr. Agresti does not create an independent basis for asserting that the privilege was waived because that disclosure was inadvertent.

24

corporation objected on grounds of attorney-client privilege.
Garner, 430 F.2d at 1095-96. The Fifth Circuit concluded as
follows:

> The attorney-client privilege still has viability for the
> corporate client. The corporation is not barred from
> asserting it merely because those demanding information
> enjoy the status of stockholders. But where the
> corporation is in suit against its stockholders on
> charges of acting inimically to stockholder interests,
> protection of those interests as well as those of the
> corporation and the public require that the availability
> of the privilege be subject to the right of the
> stockholders to show cause why it should not be invoked
> in the particular instance.

Id. at 1103-04. The court went on to identify a variety of factors
to be considered in determining whether the party seeking to pierce
the corporation's privilege has demonstrated good cause:

> the number of shareholders and the percentage of stock
> they represent; the bona fides of the shareholders; the
> nature of the shareholders' claim and whether it is
> obviously colorable; the apparent necessity or
> desirability of the shareholders having the information
> and the availability of it from other sources; whether,
> if the shareholders' claim is of wrongful action by the
> corporation, it is of action criminal, or illegal but not
> criminal, or of doubtful legality; whether the
> communication related to past or to prospective actions;
> whether the communication is of advice concerning the
> litigation itself; the extent to which the communication
> is identified versus the extent to which the shareholders
> are blindly fishing; the risk of revelation of trade
> secrets or other information in whose confidentiality the
> corporation has an interest for independent reasons.

Id. at 1104.

Although the Garner doctrine arose in a shareholder derivative
action, most courts have not limited it to that context. Compare
Weil v. Investment/Indicators Research & Management, Inc., 647 F.2d

18, 23, (9th Cir. 1981) (restricting doctrine to derivative actions) with Fausek v. White, 965 F.2d 126, 130-31 (6th Cir. 1992) (rejecting restriction and applying Garner to non-derivative claims against corporation) and Ward v. Succession of Freemen, 854 F.2d 780, 786 (5th Cir. 1988) (same). Rather, it has been applied generally where there is "a fiduciary relationship which obligates the fiduciary to safeguard his or her beneficiaries' interest without obscuring his or her reason from the legitimate inquiries of the beneficiaries." Henry v. Champlain Enterprises, Inc., 212 F.R.D. 73, 84 (N.D.N.Y. 2003). Thus, Garner has been found applicable to relationships between an attorney and a client, In re Sunrise Securities Litigation, 130 F.R.D. 560, 596 & n.9 (E.D. Pa. 1989), between a union and its members, Aguinaga v. John Morrell & Co., 112 F.R.D. 671, 679-81 (D. Kan. 1986), between a bank and a party for which it was acting as fiduciary, Quintel Corp. v. Citibank, N.A., 567 F. Supp. 1357, 1362-63 (S.D.N.Y. 1983), and between a pension fund trustee and its members, Donovan v. Fitzsimmons, 90 F.R.D. 583, 586 (N.D. Ill. 1981). And, while the Second Circuit has never expressly adopted the Garner analysis, district courts within the circuit have regularly applied it. See Henry, 212 F.R.D. at 84 (collecting cases); RMED International, inc. v. Sloan's Supermarkets, Inc., No. 94 Civ. 5587, 2003 WL 41996, at *4 (S.D.N.Y. Jan. 6, 2003) (collecting cases and concluding that "the Court is confident that the Garner rationale

26

is alive and well in this Circuit").

Nevertheless, in the absence of a fiduciary relationship owed by the party asserting the privilege to the party seeking to abrogate it, the Garner doctrine has no application. See Henry, 212 F.R.D. at 84; Asian Vegetable Research & Development Center v. Institute of International Education, No. 94 Civ. 6551, 1996 WL 14448, at *6 (S.D.N.Y. Jan. 16, 1996); Quintel Corp., 567 F. Supp. at 1361. Here, while the Directors owed a fiduciary relationship to the American Club, the Club is not seeking documents from the Directors. Rather, it is demanding documents in the possession of those defendants whose employees or officers also acted as Directors. But the members themselves have no fiduciary duty to the American Club; the relationship between a mutual insurance association and its members is a contractual one. See In re Metropolitan Life Derivative Litigation, 935 F. Supp. 286, 293 (S.D.N.Y. 1996); Shah v. Metropolitan Life Insurance Co., Nos. 108887/00, 601181/00, 2003 WL 728869, at *14 (N.Y. Sup. Ct. Feb. 21, 2003); Fidelity and Casualty Co. of New York v. Metropolitan Life Insurance Co., 42 Misc. 2d 616, 623, 248 N.Y.S.2d 559, 565 (N.Y. Sup. Ct. 1963). Therefore, the Garner doctrine is simply inapplicable.

Indeed, even if the doctrine did apply in these circumstances, the American Club has failed to demonstrate good cause for piercing the attorney-client privilege. The Club contends that "[a] central

27

issue in this case concerns the good faith of decisions these individual directors [those employed by Keystone, Farrell, and APL] made on Defendants' behalf in respect of paying indemnities from the Club's reserves to defendants for unreported unreserved occupational disease claims[.]" (Pl. Memo. at 20). But that is plainly not the case. The complaint in this action asserts no claim remotely resembling breach of fiduciary duty, and no Director has been named as a defendant.[5]

Accordingly, the defendants need not produce the documents demanded by the Club.[6]

Conclusion

For the reasons set forth above, the American Club's application for a protective order is granted with respect to the June 18, 2004 opinion letter but denied with respect to the May 18,

---

[5] Pebble Cove Homeowners Association, Inc. v. Shoratlantic Development Co., 191 A.D.2d 544, 544-45, 595 N.Y.S.2d 92, 92-93 (2d Dep't 1993), upon which the Club relies, is therefore distinguishable. There, the court concluded that officers of a developer who sat on the board of a homeowners association could be held liable for breaching their fiduciary duty to the association by failing to disclose information about misconduct by the developer. Here, the complaint alleges no misconduct by the defendants, much less by the former Directors.

[6] In addition to seeking documents identified by Keystone, Farrell, and APL as privileged, the American Club sought the depositions of certain of their counsel and disclosure of internal reports and analyses. The demand to take the depositions of defendants' counsel has been rendered moot by the determination that the Club is not entitled to breach the defendants' attorney-client privilege. The demand for corporate analyses other than those identified as privileged was never addressed by the American Club in its briefing of this motion. (Pl. Memo. at 20-23).

2004 letter.   Its motion to compel disclosure of communications identified as privileged by Keystone, Farrell, and APL is denied.

SO ORDERED.

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       September 13, 2005


Copies mailed this date:

Lawrence J. Bowles, Esq.
Shaun F. Carroll, Esq.
Nourse & Bowles, LLP
One Exchange Plaza
At 55 Broadway
New York, New York  10006-3030

Franklin B. Velie, Esq.
Michael T. Sullivan, Esq.
Mitchell C. Stein, Esq.
Sullivan & Worcester
1290 Avenue of the Americas
New York, New York  10104

Dale A. Schreiber, Esq.
Seth Schafler, Esq.
Lisa Bauer, Esq.
Proskauer Rose LLP
1585 Broadway
New York, New York  10036

Peter Adelman, Esq.
Andrew S. Dash, Esq.
Brown Rudnick
Seven Times Square
New York, New York  10036

Mario Aieta, Esq.
Elizabeth L. Hubbard, Esq.
Garvey Schubert Barer
599 Broadway - 8th Floor
New York, New York  10012

Gene B. George, Esq.
Julia R. Brouhard, Esq.
Ray, Robinson, Carle & Davies, PLL
1717 East 9th Street, Suite 1650
Cleveland, Ohio  44114

David A. Luttinger, Jr. Esq.
Lisa M. Campisi, Esq.
Morgan Lewis and Bockius LLP
101 Park Avenue
New York, New York  10178

Edward V. Cattell, Jr., Esq.
Hollstein Keating Cattell
  Johnson & Goldstein PC
8 Penn Center, 1628 JFK Blvd.
Suite 2000
Philadelphia, PA  19103

Raymond A. Connell, Esq.
Maloof, Lebowitz Connahan & Oleske
299 Broadway - Suite 1700
New York, New York  10007

Christine S. Davis, Esq.
Mindy G. Davis, Esq.
Robert H. Shulman, Esq.
Howrey, Simon, Arnold & White LLP
1299 Pennsylvania Avenue NW
Washington, DC  20004

Adam Wofse, Esq.
Scott Fisher, Esq.
Jaspan Schlesinger Hoffman LLP
300 Garden City Plaza
Garden City, New York  11530

Steven I. Frenkel, Esq.
Cummings & Lockwood LLC
107 Elm Street
Four Stamford Plaza
Stamford, CT   06902

Nicholas P. Giuliano, Esq.
Bennett, Giuliano, McDonnell & Perrone LLP
225 West 34th Street
New York, New York   10122

Donald I. Strauber, Esq.
Melisa J. LaRocca, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York   10112

Edward A. Keane, Esq.
Mahoney & Keane, LLP
111 Broadway
New York, New York   10006

Nancy Ledy-Gurren, Esq.
Ledy-Gurren & Blumenstock LLP
475 Park Avenue South
New York, New York   10016

Patrick F. Lennon, Esq.
Tisdale & Lennon, LLC
36 West 44th Street
Suite 1111
New York, New York   10036

Robert A. O'Hare, Jr., Esq.
O'Hare Parnagian LLP
82 Wall Street - Suite 300
New York, New York   10005

Joseph D. Pizzurro, Esq.
Dora Straus, Esq.
Curtis, Mallet-Prevost,
  Colt & Mosle LLP
101 Park Avenue
New York, New York   10178

Stacey A. Saiontz, Esq.
Dickstein Shapiro Morin & Oshinsky
1177 Avenue of the Americas
New York, New York  10036

Deborah A. Silodor, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey  07068

Alissa Malone, Esq.
Lyn S. Concha, Esq.
Fields, Howell, Athans &
  McLaughlin, LLP
One Midtown Plaza
1360 Peachtree Street, NE
Suite 800
Atlanta, Georgia  30309

Allen von Spiegelfeld, Esq.
Fowler White Boggs Banker
501 E. Kennedy Boulevard
Suite 1700
Tampa, Florida  33602

Charles A. Stewart, III, Esq.
Stewart Occhipinti LLP
1350 Broadway - Suite 2200
New York, New York  10018

John G. Cameron, Jr., Esq.
Warner, Norcross & Judd, LLP
900 Fifth Third Center
111 Lyon Street N.W.
Grand Rapids, Michigan  49503

Camilo Cardozo, Esq.
DLA Piper Rudnick Gray Cary US LLP
1251 Avenue of the Americas
New York, New York  10020

John M. Toriello, Esq.
Holland & Knight LLP
195 Broadway
New York, New York  10007

Herbert I. Waldman, Esq.
Nagel, Rice & Mazie, LLP
301 S. Livingston Avenue
Suite 201
Livingston, New Jersey  07039

Rodney M. Zerbe, Esq.
Robert A. Cohen, Esq.
Brent A. Hannafan, Esq.
Dechert LLP
30 Rockefeller Plaza
New York, New York  10112

Alan Kellman, Esq.
The Maritime Asbestosis Legal Clinic
a division of The Jaques Admiralty
     Law Firm
645 Griswold - Suite 1570
Detroit, Michigan  48225

Dan Shaked, Esq.
Shaked & Posner
225 West 34th Street - Suite 705
New York, New York  10122

Terry L. Stoltz, Esq.
News America Incorporated
1211 Avenue of the Americas
New York, New York  10036

Ms. Melanie Callahan
Offshore Express Inc.
P.O. Box 1420
Houma, Louisiana  70361

# *Exhibit 2*

UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
AMERICAN STEAMSHIP OWNERS MUTUAL    :   04 Civ. 4309 (LAK) (JCF)
PROTECTION AND INDEMNITY            :
ASSOCIATION, INC.,                  :       MEMORANDUM
                                    :       AND  ORDER
                    Plaintiff,      :
                                    :
        - against -                 :
                                    :
ALCOA STEAMSHIP CO., INC.,          :
et al.,                             :
                                    :
                    Defendants.     :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

In a Memorandum and Order dated September 13, 2005 (the "Order"), I determined, among other things, that the American Steamship Owners Protective and Indemnity Association (the "American Club" or the "Club") had waived the attorney-client privilege with respect to an opinion letter dated May 18, 2004, provided to the Club by its counsel, Nourse & Bowles LLP, because it had produced in the course of this litigation numerous opinion letters dealing with the same subject matter and had utilized them in depositions.  The American Club now seeks reconsideration of the Memorandum and Order on the grounds that: (1) the May 18, 2005 letter is shielded from disclosure by the work product doctrine; (2) the work product doctrine should also be held to protect an opinion letter dated July 29, 2004; and (3) waiver should not be found on the basis of the "fairness doctrine" because the Club was not selective in its disclosure of opinion letters.  The American

1

Club also asks that I stay enforcement of the Order until this application and any appeal has been heard. (Letter of Shaun F. Carroll dated September 14, 2005 ("Carroll Letter")). The Club's application is granted in part and denied in part.

First, reconsideration is granted with respect to the work product issue. Although no argument based on work product was advanced in the memoranda on the Club's motion, it was briefly raised by counsel on oral argument and alluded to, at least tangentially, in a subsequent letter. However, upon reconsideration, I adhere to my prior determination that the May 18 letter is subject to disclosure. The "fairness doctrine" analysis applies to waiver of work product protection just as it does to waiver of the attorney-client privilege. See In re Grand Jury Proceedings, 219 F.3d 175, 191 (2d Cir. 2000); In re Grand Jury Proceedings, No. M-11-189, 2001 WL 237377, at *12-13 (S.D.N.Y. March 2, 2001); ESPN, Inc. v. Office of the Commissioner of Baseball, 76 F. Supp. 2d 383, 416 n.34 (S.D.N.Y. 1999); Granite Partners, L.P. v. Bear, Stearns & Co., 184 F.R.D. 49, 54 (S.D.N.Y. 1999). Thus, to the extent that the Club introduced similar opinion letters offensively in this litigation, it waived the work product doctrine as well as the attorney-client privilege for the May 18 letter.

Reconsideration is denied with respect to the July 29, 2004 letter because the Order does not address it in the first place.

With respect to the issue of waiver, the Order was explicitly limited to the May 18, 2004 letter and to a second letter dated June 18, 2004. (Order at 23). The July 29 letter was not then considered, and if counsel now wish to present an application with respect to that document, they may.

Reconsideration is also denied with respect to my determination that the American Club engaged in selective disclosure of its opinion letters. The Club now suggests that it only produced letters relating to insurance years 1989 and before and that a letter authored in 2004 has no similar relevance. (Carroll Letter at 2-3). In fact, the Club has produced and relied on number opinion letters postdating 1989 which, like the May 18, 2004 letter, discuss issues central to this case (Declaration of Lisa A. Bauer dated June 10, 2005, Exhs. L(k), (m), (n), (o), (p)), and this was fully considered at the time the Order was issued.

Finally, it is appropriate to stay the effect of the Order insofar as it requires disclosure of the May 18 letter to give the Club an opportunity to appeal this decision. Otherwise, the Club's right to object would, in practical effect, be nullified.

Conclusion

For the reasons set forth above, reconsideration of my September 13, 2005 Memorandum and Order is granted to the extent that the Club's claim of work product protection for the May 18, 2004 letter is addressed and is otherwise denied. Upon

3

reconsideration, I adhere to my prior determination and find that, like the attorney-client privilege, work product protection for this letter has been waived. The Club's obligation to disclose the letter is stayed pending determination of a timely appeal of this decision.

SO ORDERED.

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
September 15, 2005

Copies mailed this date:

Lawrence J. Bowles, Esq.
Shaun F. Carroll, Esq.
Nourse & Bowles, LLP
One Exchange Plaza
At 55 Broadway
New York, New York  10006-3030

Franklin B. Velie, Esq.
Michael T. Sullivan, Esq.
Mitchell C. Stein, Esq.
Sullivan & Worcester
1290 Avenue of the Americas
New York, New York  10104

Dale A. Schreiber, Esq.
Seth Schafler, Esq.
Lisa Bauer, Esq.
Proskauer Rose LLP
1585 Broadway
New York, New York  10036

4

Peter Adelman, Esq.
Andrew S. Dash, Esq.
Brown Rudnick
Seven Times Square
New York, New York  10036

Mario Aieta, Esq.
Elizabeth L. Hubbard, Esq.
Garvey Schubert Barer
599 Broadway - 8th Floor
New York, New York  10012

Gene B. George, Esq.
Julia R. Brouhard, Esq.
Ray, Robinson, Carle & Davies, PLL
1717 East 9th Street, Suite 1650
Cleveland, Ohio  44114

David A. Luttinger, Jr. Esq.
Lisa M. Campisi, Esq.
Morgan Lewis and Bockius LLP
101 Park Avenue
New York, New York  10178

Edward V. Cattell, Jr., Esq.
Hollstein Keating Cattell
  Johnson & Goldstein PC
8 Penn Center, 1628 JFK Blvd.
Suite 2000
Philadelphia, PA  19103

Raymond A. Connell, Esq.
Maloof, Lebowitz Connahan & Oleske
299 Broadway - Suite 1700
New York, New York  10007

Christine S. Davis, Esq.
Mindy G. Davis, Esq.
Robert H. Shulman, Esq.
Howrey, Simon, Arnold & White LLP
1299 Pennsylvania Avenue NW
Washington, DC  20004

Adam Wofse, Esq.
Scott Fisher, Esq.
Jaspan Schlesinger Hoffman LLP
300 Garden City Plaza
Garden City, New York  11530

Steven I. Frenkel, Esq.
Cummings & Lockwood LLC
107 Elm Street
Four Stamford Plaza
Stamford, CT  06902

Nicholas P. Giuliano, Esq.
Bennett, Giuliano, McDonnell & Perrone LLP
225 West 34th Street
New York, New York  10122

Donald I. Strauber, Esq.
Melisa J. LaRocca, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York  10112

Edward A. Keane, Esq.
Mahoney & Keane, LLP
111 Broadway
New York, New York  10006

Nancy Ledy-Gurren, Esq.
Ledy-Gurren & Blumenstock LLP
475 Park Avenue South
New York, New York  10016

Patrick F. Lennon, Esq.
Tisdale & Lennon, LLC
36 West 44th Street
Suite 1111
New York, New York  10036

Robert A. O'Hare, Jr., Esq.
O'Hare Parnagian LLP
82 Wall Street - Suite 300
New York, New York  10005

Joseph D. Pizzurro, Esq.
Dora Straus, Esq.
Curtis, Mallet-Prevost,
  Colt & Mosle LLP
101 Park Avenue
New York, New York  10178

Stacey A. Saiontz, Esq.
Dickstein Shapiro Morin & Oshinsky
1177 Avenue of the Americas
New York, New York  10036

Deborah A. Silodor, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey  07068

Alissa Malone, Esq.
Lyn S. Concha, Esq.
Fields, Howell, Athans &
  McLaughlin, LLP
One Midtown Plaza
1360 Peachtree Street, NE
Suite 800
Atlanta, Georgia  30309

Allen von Spiegelfeld, Esq.
Fowler White Boggs Banker
501 E. Kennedy Boulevard
Suite 1700
Tampa, Florida  33602

Charles A. Stewart, III, Esq.
Stewart Occhipinti LLP
1350 Broadway - Suite 2200
New York, New York  10018

John G. Cameron, Jr., Esq.
Warner, Norcross & Judd, LLP
900 Fifth Third Center
111 Lyon Street N.W.
Grand Rapids, Michigan  49503

Camilo Cardozo, Esq.
DLA Piper Rudnick Gray Cary US LLP
1251 Avenue of the Americas
New York, New York  10020

John M. Toriello, Esq.
Holland & Knight LLP
195 Broadway
New York, New York  10007

Herbert I. Waldman, Esq.
Nagel, Rice & Mazie, LLP
301 S. Livingston Avenue
Suite 201
Livingston, New Jersey  07039

Rodney M. Zerbe, Esq.
Robert A. Cohen, Esq.
Brent A. Hannafan, Esq.
Dechert LLP
30 Rockefeller Plaza
New York, New York  10112

Alan Kellman, Esq.
The Maritime Asbestosis Legal Clinic
a division of The Jaques Admiralty
     Law Firm
645 Griswold - Suite 1570
Detroit, Michigan  48225

Dan Shaked, Esq.
Shaked & Posner
225 West 34th Street - Suite 705
New York, New York  10122

Terry L. Stoltz, Esq.
News America Incorporated
1211 Avenue of the Americas
New York, New York  10036

Melanie Callahan
Offshore Express Inc.
P.O. Box 1420
Houma, Louisiana  70361