Nourse & Bowles, LLP
Attorneys for Plaintiff
Lawrence J. Bowles (LB 5950)
One Exchange Plaza
New York, New York 10006
(212) 952-6200
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X

| | |
|---|---|
| AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., | 04 Civ. 04309 (LAK)(JCF) |
| Plaintiff, | |
| - against - | |
| Alcoa Steamship Co., Inc. and the Other Entities Listed on Exhibit A to Second Amended Complaint | |
| Defendants. | |

-------------------------------------------------X

PLAINTIFF'S
REPLY TO DEFENDANTS RESPONSE
TO PLAINTIFF'S OBJECTIONS TO
MAGISTRATE FRANCIS' ORDERS
DATED SEPTEMBER 13 AND 15, 2005

Plaintiff, the American Steamship Owners Mutual Protection and Indemnity Association, Inc., (the "American Club"), by its attorneys Nourse & Bowles LLP, pursuant to Local Rule 6.1(b)(3), respectfully submits this Reply to Defendants Response to Plaintiff's Objection to Magistrate Francis' Orders dated September 13 and 15, 2005.

1. **Defendants' Argument That There Are No Claims Of Breach of Fiduciary Duty Against the Former Directors Overlooks the Allegations of Wrongdoing Contained In the Pleadings.**

Contrary to Defendants' position set forth in page 3 of their response, and contrary to Magistrate Judge Francis' findings, plaintiff has alleged that Defendants, through their representatives on the club's Board of Directors, have violated their obligations to act in good faith and fair dealing, and has detailed the conduct the Club alleges to have been improper. See, Master Reply to Counterclaims, §§29-42, ¶87. Thus, there are <u>ultra vires</u> issues fairly presented in this case, and again the question is what the Defendants' representatives on the Club's Board knew or should have known about their ability to commit the Club to pay unreported unreserved for closed year claims <u>contemporaneously</u> in years prior to 2000. For that reason, the Club has produced <u>all</u> of the counsel's opinions requested by the Defendants which were prepared for past Club Boards <u>prior to</u> 2000, and withheld some of those prepared in 2000 and later. This was <u>not</u> "tactical" or "selective". The pre 2000 opinions were produced because they are relevant to the issue of what the former boards knew in years passed when they dealt with the insurance years in question.

2. **The Club Has Not Relied Upon Opinions Dated After 2000**

While Judge Francis found, and Defendants argue in their opposition papers, that the Club has "… produced and relied on a number of opinion letters post dating 1989 …", that statement confuses the issue of "insurance years" and the date of opinions dealing with insurance years.

2

While the Club did produce, at Defendants' request and subject to the Club's objections, certain opinion letters dated up to 2004, those dated after 2000 all relate solely to the closings of insurance years after 1989. As this civil action focuses only on those closed insurance years prior to 1989, the closing of insurance years 1989 and later is not relevant to any issue in this case. The Club did not "select" those opinions regarding closing of years after 1989 and has not relied upon them. On the contrary, all of the letters the Club used at the depositions to question former Directors are dated prior to 2000, they deal with insurance years prior to 1989, and they address issues for which the Club's Boards of Directors in the 1980s to 1996 were responsible. (See Ex. 3) Again, the production was not "tactical" or "selective". See Point 3 below.

3.  **The Club Boards Prior to 2000 Were a Different "Audience" from the Board in 2004 for Purposes of the Privilege Issues Presented**

Defendants' contention that the Club cannot "draw a line between its "current" and "former" membership and Directors" because there is some overlap in Board membership (Defendants Response p. 5.) ignores the point that the crucial decisions concerning the commencement of the practice of paying unreported occupational disease claims in closed years were made by the Club's prior Boards of Directors in the 1980s and early 1990s, before any of the present Board members joined the Club. The Club's questioning of Defendants' representatives, i.e., Charles Kurz, II, a senior executive/equity owner of Keystone Shipping Corporation; John DiPalermo, a senior executive of American President Lines; Ben Gleason, also a senior executive of

3

American President Lines and Richard Gronda, a senior executive/equity owner of Farrell Lines, all focused on opinions given to them between 1979 and 1996 which dealt with insurance years prior to 1989.

Moreover, Mr. Kurz left the Board in February 1997 when Keystone left the Club. Mr. DiPalermo left the Board in 1988 when he retired. Mr. Gleason left the Board in 1998 when American President Lines left the Club and Mr. Gronda left the Board in 2002 when he retired from Farrell Lines. In these circumstances, there was no continuous stream of related communications between Club counsel and Messrs. Kurz, DiPalermo, Gleason or Gronda encompassing the May 2004 letter because they were long gone from the Club's Board by May 18, 2004. They could not be and were not interrogated regarding any counsel's opinions other than those provided to them during their terms on the Club's Boards of Directors, i.e., the opinions provided between about 1979 and 1996. Thus, for purposes of this action, it is entirely proper to consider the former Boards a different audience in assessing any work product privilege attached to counsels' advice to the current Board in May 2004.

For all of the foregoing reasons, Defendants attempt to distinguish U.S. v. Skeddle, 989 F.Supp. 905 (N.D. Ohio 1997) on the ground that Skeddle did not involve a "selective", "tactical" production whereas this case allegedly does, fails. In substance, it is precisely the Magistrate's finding that the Club's production of counsels' opinions was a "tactical" production of "selected" opinions out of a single, continuous stream of related communications that the Club challenges on this appeal. There were, in fact, distinct

4

phases of communication, and those distinctions bear on the issue of subject matter waiver insofar as the May 18, 2004 letter is concerned.

    For all of the reasons set forth in the Club's Objections, the Court should rule that the May 18, 2004 opinion letter is protected by work product privilege.

Dated:    New York, New York
           October 24, 2005

                              Respectfully submitted,
                              NOURSE & BOWLES, LLP
                              Attorneys for Plaintiff

                              By: _____
                              Shaun F. Carroll (SC 9898)
                              One Exchange Plaza
                              New York, New York 10006
                              (212) 952-6200

cc:    All Counsel