UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY
ASSOCIATION, INC.,

                              Plaintiff,

        - v -

ALCOA STEAMSHIP CO., INC., *et al*

                              Defendants.

No. 04 Civ. 04309 (LAK) (JCF)

(ECF Case)

## JOINT PRETRIAL ORDER

The parties having conferred among themselves and with the Court pursuant to

Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the

Pretrial Order herein.

I.    NATURE OF THE CASE

Plaintiff, the American Steamship Owners Mutual Protection and Indemnity

Association, Inc., (the "American Club" or "Club") filed this declaratory judgment action

on June 7, 2004.  In its first cause of action the American Club seeks declaratory relief

that it was entitled to terminate making indemnity payments to defendants for their

payment of certain occupational disease claims ("ODCs").  In its second cause of action,

the American Club seeks declaratory relief that, should it be required to indemnify the

defendants regarding the ODCs, it should have the right to levy assessments against

defendants for the costs of such indemnities.  In its third cause of action, the American

Club seeks declaratory relief that, if defendants are entitled to indemnification for the

ODCs, then with respect to each claim, the Club has the right to continue allocating the amount of each indemnity claim over each year of alleged exposure, and applying the member's deductible in each such year in calculating the indemnity.

Defendants' counterclaims, among other things, seek declaratory relief that the Club is obligated to provide insurance coverage to defendants regarding their payments of the aforementioned ODCs. Defendants also assert that the Club is not permitted to levy assessments against defendants in connection with the aforementioned ODCs. Further, defendants assert that in calculating the indemnities, the Club may only allocate a single policy year's deductible for any one claim. In addition, certain defendants seek to have indemnity claims regarding ODCs previously paid to them by the Club on the basis of the Club's application of multiple deductibles recalculated on the basis of a single deductible and a refund of the difference.

The American Club and the defendants deny each other's right to the relief requested and raise defenses thereto; and the parties each seek certain damages including their legal fees and their costs of this action.

## II.    JURY/NON-JURY

This is a case within the Court's admiralty and maritime jurisdiction, and, accordingly, the parties are not entitled to a trial by jury. The parties estimate that, assuming all witnesses identified below are cross-examined, trial of this matter will take five (5) to ten (10) trial days.

## III.    STIPULATED FACTS

2

1.      The American Club is a non-profit mutual indemnity insurance association of ship owners organized and existing under the laws of New York State with its principal place of business in New York City.

2.      The defendants, which are merchant vessel owners and/or operators, or successors thereto, were members of the Club in various years prior to February 20, 1989.

3.      The American Club is licensed and regulated by the Insurance Department of the State of New York and must comply with all relevant provisions of New York law, including, without limitation, Insurance Law Sections 1211 and 4111.

4.      The insurance policy attached hereto as Exhibit 1 is representative of all of the policies issued by the American Club to its members in the period between about 1940 and February 20, 1988.

5.      Until 1972, the Club's insurance policies were issued for a calendar year or part thereof. In 1972 and thereafter, the policy years commenced at 1201 GMT on February 20th, running to 1200 GMT February 20th the following year (the "Insurance Year" or "Policy Year").

## IV.    PARTIES' CONTENTIONS

The pleading are deemed amended to embrace the following, and only the following, contentions of the parties:

3

**I    Contentions of Plaintiff**

A.    Preliminary Statement

The central issue in this case is whether the defendants are entitled to mutual indemnity insurance from the American Club for which they never paid.

This dispute arose because seamen and others who worked on or about defendants' merchant ships between the 1940s and 1980s very belatedly asserted that they were exposed to asbestos and other hazardous substances on defendants' ships in those years. These claims were unknown until asserted long after the Club's accounts for those insurance years, each of which was kept separate, were "closed" without the members of those years having been assessed for such claims (the "Closed Year ODCs"). As the American Club will show at trial, upon the "closing" of an insurance year, the Club issued a "final" assessment with respect to only those claims for which it was "practicable to estimate with a reasonable degree of certainty" – *i.e.*, only claims that, unlike Closed Year ODCs, were reported and reserved for at the time of closing. As a result, either the mutual indemnity insurance policies in issue are not effective to require the Club to pay any indemnities to defendants regarding Closed Year ODCs, or if indemnities are to be paid, the defendants must be assessed to provide all funds with which to do so, as they agreed to when they entered into the contract.

Defendants' arguments that the American Club "breached" its contracts ignore the unique nature of the mutual indemnity insurance provided by the American Club,

particularly defendants' express obligation to pay "assessments without limit of amount" to the American Club to provide its members (the defendants) with the very same mutual indemnity insurance they seek.

Defendants' contention that the Club must indemnify them regarding Closed Year ODCs because the Club previously and, for a period of time, provided such indemnities, ignores the fact that the practice of paying Closed Year ODCs was discretionary, in that they were not provided for under the applicable insurance policies or the Club's by-laws, and were started at a time when defendants acting through their senior executives and equity owners then serving as Club directors, controlled the Club, and they initiated the practice for their own economic benefit. In other words, defendants seek to take advantage of actions of their own senior executives which were *ultra vires*, arbitrary and made in bad faith as to the Club.

The applicable insurance policies and by-laws further rule out defendants' claim that the American Club has no right to assess defendants to pay indemnities regarding the Closed Year ODCs. Defendants seek to transform fully assessable mutual indemnity insurance policies into unlimited liability policies, the cost of which defendants seek to shift to the Club's current and future members without their consent.

Defendants were never exempted from their agreed assessment obligations and the Club's current and future members never agreed to bear any responsibility for defendants' liabilities. As outlined in the Club's Second Amended Complaint and Master

Reply to Counter Claims, this action was filed to protect the Club's current and future members from the inequitable effects of the self-serving actions of defendant's own senior executives when they were running the American Club.

B.    Contentions

1.    This is an admiralty and maritime case within the meaning of Rule 9 (h) of the Federal Rules of Civil Procedure, as the case concerns the interpretation of marine insurance contracts.  The Court has jurisdiction pursuant to 28 U.S.C. § 1333.  Venue is proper in the Southern District of New York.

2.    Plaintiff, the American Steamship Owners Mutual Protection and Indemnity Association, Inc., (the "American Club" or "Club"), is a mutual indemnity insurance association of shipowners that exists to provide mutual marine indemnity insurance to its members at cost.

3.    The American Club is incorporated in New York, its principle office is in New York and of the applicable policies were issued in New York, and are governed by New York law.

4.    The defendants, which are shipowners and operators and/or their successors in interest, were members of the Club in various years before February 20, 1989.

5.    Contrary to the approach of commercial insurers, the American Club's mutual members do not simply "buy" insurance from the Club as defendants pretend. Rather, the Club's mutual members each year agree to pay not only premiums but

assessments without limit of amount. The premiums and assessments the members pay to the Club are the sole source of funds to pay the mutual indemnity insurance claims of the Club's members at cost.

6.     The Club's members are, for all practical purposes, insurers as well as insureds. Each member's right to indemnity payments from the Club is contingent upon each member also paying his proportionate share of all premiums and assessments required each year to pay all indemnities to the members of that year, and the expenses of operating the Club that year.

7.     The Club's membership each year is different as is each member's proportionate share of assessments.

8.     The Club's members operate the Club through the directors they elect each year.

9.     Under the Club's insurance policies, each member agrees promptly to report each claim asserted against it for which indemnity might be sought. The Club thereupon establishes a reserve for each such claim, making assessments on all of that year's members to provide sufficient funds with which to pay an indemnity for each reported claim after it is resolved.

10.     The accounts of each year, which were kept totally separate for assessment purposes, were kept open, at times up to 10 to 11 years until the Club and its members believed that all claims against all members each year had been reported and reserved for.

11.     At a time when the Club's manager could estimate "with a reasonable degree of certainty the minimum probable or final surplus or deficiency resulting from all of the Club's insurances in effect for the year", the accounts for that year were "closed" and were "zeroed out".

12.     At each closing, all income and expenses regarding each year were tallied and, at least until 1988, with the closing of the 1977 insurance year, the only reserves retained by the Club were for reported claims which had not yet been resolved (the "pending" claims) with respect to which there was sufficient information that the claims' likely costs could be and were estimated with a reasonable degree of certainty.  Until 1988 nothing was reserved for the possibility that after the accounts for a year were closed, additional claims might be asserted against that insurance year's members.

13.     Upon closing, if the statement of account showed a deficiency, the Club's directors levied a "final" assessment on the members of that year sufficient to bring the account balance to zero.  On the other hand, if the statement of account showed a "surplus", the directors ordered a "final" refund of that surplus, again, to bring the account balance to zero.

14.     Over the years, because the Club was required to refund to the members all surplus caused by assessments, the members of the pre-1989 years, received over $31 million in refunds.  However, that approach prevented the Club from building up large reserves.

8

15.     After insurance years were closed, if any claim that was reported and pending at the time a year was closed was ultimately settled for more than the amount reserved, in the absence of fraud and mutual mistake regarding the facts of that claim, the Club could not further assess the members of that year regarding such claim, but would be required to pay the excess from its general reserves.

16.     Conversely, if a claim that had been reported and reserved for was ultimately settled for less than the amount reserved, the Club had no obligation to refund such excess to the members of that year, and the excess, if any, was retained in the Club's general reserves.

17.     All funds in the Club's reserve account, including those that may represent the occasional excess regarding pending claims, are the Club's property and are not the property of the members of any year.

18.     If a member has reported a claim while a year is open and reserves are established for such a claim, that member has a legal right to an indemnity from the Club regarding that claim. But if a claim is not reported and reserved for prior to closing the accounts of a year, the Club cannot have any liability to the member or anyone else regarding any such claim.

19.     All uses of all funds in the Club's reserve account are discretionary as no member has any legal right to any part thereof, except with respect to claims that have been reported while a year was open and properly reserved for.

9

20.    Under the Club's By-Laws, a primary duty of the directors is to ensure that sufficient funds are collected by way of premiums and assessments on each year's members to provide indemnities to those members regarding all claims asserted against them.

21.    Under the Club's By-Laws, it is also a duty of the directors to ensure that only proper claims are paid.

22.    The pre-1989 members of the Club were never exempted or excused from their assessment obligations and no member of any other year has ever consented to be assessed for claims asserted with respect to closed pre-1989 years which claims had not been reported and reserved for before those years' account were closed.

23.    In the early 1980s, members of the Club in the 1940s, 1950s, and 1960s, began receiving claims from seamen and others who had worked on or about their ships in those years asserting Closed Year ODCs relating to exposures to asbestos on the closed year members' vessels in those years.

24.    If those claims had been reported while those years were open, those members would have been assessed to provide all funds with which to pay all indemnities regarding the Closed Year ODCs.

25.    None of those claims were reported while the accounts for those years were open and thus: (i)  no assessments were made on those members, (ii) no reserves were established to pay indemnities regarding those claims at the time the accounts for those

years were closed and "zeroed" out. Instead, large refunds were mistakenly paid to those same members as "surplus."

26.     Additionally the premiums negotiated between the Club and defendants, which were based on the members' loss records, did not reflect the cost of Closed Year ODCs. This is because premiums were based on a member's losses and indemnities paid by the Club only within the period five (5) years prior to the insurance year for which premiums were being negotiated (referred to as a member's "five-year loss record"), and the Closed Year ODCs at issue arose well prior to that five-year period.

27.     In the early 1980s, in the belief that these claims were a "trickle" of small claims, a practice developed of indemnifying the closed years members with regard to those belatedly asserted Closed Year ODCs. As the Club had no legal obligation to indemnify members for such claims, any payment thereof was discretionary (the "Discretionary Practice").

28.     The indemnities were based upon allocating the members' requested indemnities over the years of alleged exposure on the members' vessels, based on the number of days of sea service on each vessel each year and the member's chosen deductibles were applied for each such year.

29.     Neither the Club's Manager, nor the members of the Boards of Directors in those years either consulted with the Clubs counsel as to whether the Club had any

obligation to pay the Closed Year ODCs, and the matter was not brought before the Board for any discussion and no resolutions were discussed or passed on that subject.

30.     In fact, as the directors at the time knew or should have known, the Club had no obligation whatsoever to indemnify any member regarding any claim that was not reported and properly reserved for while the insurance years in question were open, and the Club had no legal obligation to utilize the Club's modest reserves for that purpose. In this regard, the claims in question were primarily those of the companies whose senior executives were also Club directors in the 1980s, and those directors frequently held an equity interest in those member companies.

31.     It was not in the financial interest of either those directors or their companies to challenge the Discretionary Practice, and they did not do so. In effect, the closed year members received indemnity insurance for which they never paid and to which they were not legally entitled, all of which benefited the companies that employed those directors, but prejudiced the Club and its future members.

32.     The decisions or lack of decisions by the directors in the 1980s in failing to address the Discretionary Practice were *ultra vires*, arbitrary and not made in good faith.

33.     In 1988, with the closing of the 1977 year, the Club's manager, as a matter of prudence, proposed to the then directors, that a reserve be established to provide funds with which to pay indemnities to the 1977 year's members in the future, should Closed Year ODC claims be asserted against that year's members in the future.

12

34.    The credit balance for the 1977 year was then over $1.5 million and the Club's manager made three proposal to the then directors:

> Reserve the entire credit balance of more than $1.5 million;
>
> Reserve approximately half of the credit balance or $750,000,00; or
>
> Reserve the credit balance up to, but not exceeding, $250,000.

35.    Initially, the then directors refused to set any reserve for future occupational disease claims against the members of 1977 and later years.

36.    The manager consulted with several prominent attorneys who were representing the defendants in connection with the asbestos claims.  One of them, who was counsel for defendants in extensive asbestos litigation in Cleveland, opined that even $250,000 "could be low".

37.    As a compromise, the then-directors agreed to set aside only $100,000 toward future closed year ODCs that might be asserted against the 1977 year's members.

38.    As was predicted in 1988, the reserve of only $100,000 per year has turned out to be insufficient to cover all ODC claims arising in the 1977 and later insurance years.

39.    The $100,000 "reserve" was not the product of an estimate made "with a reasonable degree of certainty" as required by the Club's By-Laws.  There were no studies made to support that number.  Defendants' representatives admit that at that time, they knew nothing about when, in the future, Closed Year ODCs would be asserted

against the members of the 1977 and later years, the type of claims, the number of claims, or the quantum of each claim or the aggregate of all such claims.

40.    Setting a nominal reserve was very different from the procedure involving setting a reserve for each "pending claim" when the accounts of a year were closed.  In that case, all necessary information was available on which to set a proper reserve, including the name of each claimant, the date and type of his injury, medical reports, experts' reports, lawyers' reports, and estimates as to all damages in each individual case, including loss of income, pain and suffering, etc. on which an estimate of cost could be based with a reasonable degree of certainty.

41.    The $100,000 "reserve", which defendants' representatives concede was "nominal", was not based on any actuarial or other reliable data or calculations, it was arbitrary, not made in good faith, *ultra vires* and is not binding on the Club's current and future members.

42.    Indeed, the defendants were taking a substantial risk that the nominal amount the directors they employed reserved might prove inadequate (which is now the case). In so doing, the members of the 1977 year, enabled themselves to receive a refund from that year's credit balance of over $1.4 million, after deducting $100,000 for the arbitrary reserve.

43.    There is simply no justification for burdening the Club's current or future members, who received no benefit from defendants' gamble, with the huge costs of

providing indemnity insurance to the defendants sufficient to cover an unlimited number

of their unknown future claims of unlimited unknown value, as defendants' demand. In

essence, defendants argue that each closing somehow transformed each mutual indemnity

insurance policy, under which the members agreed to provide all of the necessary funds

to pay all indemnities, into unlimited liability insurance policies the costs of which must

be borne by the Club's future members. A reserve of nothing or a reserve of a mere

$100,000 per year provided by defendants simply does not justify defendants' demand.

At most, the members of the 1977 and 1979-1988 years purchased $100,000 per year of

indemnity insurance which, to date, has been expended by the Club on defendants'

Closed Year ODCs for the 1977 and later years. In total, while the Discretionary Practice

was in effect, the defendants received over $6.7 million in indemnity insurance. During

the same time, at $100,000 per year, defendants contributed only $1.1 million to the Club

for the 1977 and 1979-1988 years. In other words, up to the termination of the

Discretionary Practice in May 2004, the defendants received over $5.6 million in

indemnity insurance for which they never paid.

    44.    In June 1996, the American Club switched from issuing insurance policies

to a Rulebook format. One of the new Rules exempted members of the 1997 and later

insurance years from assessments following the close of those insurance years.

    45.    In 2004, under pressure from the International Group of P&I Clubs, of

which the American Club became a member in 1998, the American Club adopted a new

rule effective for the 2005 and future years under which, the 2005 and future Club

members agreed to be responsible for deficiencies arising in closed years from February 20, 1989, forward.

46.    Neither of these Rule changes were made retroactive to cover the pre-1989 years, which are the subject of the disputes in this action.

47.    Defendants' arguments, relying upon contract changes made in 1997 and 2005, on a prospective basis, are irrelevant to the issues in this action.

48.    Defendants also rely on the alleged "practices" of other P&I clubs, but other Club's practices, based upon their unique rules/contracts are irrelevant.

49.    Another new Rule which became effective on February 20, 1997 for that year and future years, was the provision for "Release Calls". A "Release Call" is a payment that may be made by a member leaving the Club at a time when the accounts of one or more years are still "open" for assessment purposes. By paying a "Release Call", set at approximately 25% of the "Advance Call" or initial premium, the member would be released from further assessments with respect to each of those then open years. That Release Call Rule did not purport to have and could not have any effect regarding insurance years before February 20, 1997.

50.    Defendants' arguments suggesting that the Club made various "admissions" and engaged in certain conduct that requires the Court to order the Club to continue providing indemnities for Closed Year ODCs are meritless. All of the alleged "admissions", "representations" and conduct identified by defendants occurred while the

16

Discretionary Practice was in effect and are based upon the same mistake that caused the

Club to commence the Discretionary Practice, which practice was exploited by

defendants through the self-serving efforts of their employees who were serving as

directors of the Club during the relevant time period.

51.    The issue of whether the American Club had any liability to defendants

regarding the unreported, unreserved claims from Closed Year ODCs was reviewed for

the first time in 2004, after defendant Keystone Shipping Co. sued the Club seeking

further indemnity payments to which Keystone was not entitled. Upon review, the

Club's directors in May 2004 determined that the Club did not have and never had any

obligation to indemnify defendants regarding the Closed Year ODCs and immediately

terminated the Discretionary Practice.

52.    The termination of the Discretionary Practice was appropriate, as the Club

never had a legal obligation to pay any such claims from its reserve account, and, as the

defendants had never been charged premiums and were never assessed or properly

assessed to provide full and proper reserves with respect to the Closed Year ODCs.

53.    In the alternative, if the Club is required to pay indemnities to the

defendants regarding the Closed Year ODCs, it seeks the right to now assess the

members of each closed year with respect to each ODC claim which may be asserted by

the pre 1989 closed year members. If the indemnity insurance policies are effective to

require the Club to pay any indemnities to defendants regarding the Closed Year ODCs,

17

the same policies are effective to require the defendants to pay assessments without limit of amount to provide the funding for those indemnities, just as defendants agreed to do.

54.    The defendants assert that if such assessments are allowed, the Club must "re-open" each of the implicated insurance years back to that date of its closure to determine if the accounts for those years are currently in deficiency or surplus.  Such a step is not appropriate.  There is no dispute that the only factor missing from the accounting when each pre-1989 year was closed, was the Closed Year ODCs.  More specifically, there is no dispute regarding any of the other accounting factors regarding the Club's income or expenses in each of those years or with respect to any of the then "pending claims."  The defendants were given all credits deemed appropriate at the time when each of those years were closed, including large refunds based upon the incomplete facts that were known at the time of each closing.  Defendants are not entitled to another accounting regarding these known matters.  Each closing was a final settlement of accounts regarding the known expenses, and all funds now in its reserve account are the Club's.

55.    The defendants are not entitled to an accounting of the Club's funds, as they have no legal claims to those funds.

56.    Defendants claims are time-barred.

57.    If the Club is required to indemnify the pre-1989 Closed Year members, the Club should be permitted to assess each member of each relevant year with respect to

18

each currently pending occupational disease claim and those requested in the future. The Club should be authorized to remit the amount recovered in the assessment process to the defendant seeking the indemnity, less the Club's reasonable expenses in conducting the assessments. The Club is not liable for any shortfall, if some of those closed year members do not pay their shares of the assessments.

58.    In the assessment process, as before, the Club, seeks to allocate each claim over the years of alleged exposure and apply the members' deductible for each such year (an allocation defendants refer to as "multiple" or "stacked" deductibles). The Club's practice is consistent with the terms of each of the policies which repeatedly refer to "liabilities hereunder," and regarding deductibles repeatedly refers to "claims hereunder." The term "hereunder" must refer to injuries occurring within each policy period, not outside of it.

59.    It is improper to attempt, as defendants demand, to "shoehorn" all liability for injuries that spanned several policy years into any one year of a defendant's choice – i.e. apply a "single deductible" to claims for injuries spanning multiple policy years. Such attempt presupposes that an ODC involving a person's alleged exposure to asbestos, etc. over a number of policy years can be allocated with certainty to any one particular year. In fact, no one can say with certainty when the injury-producing event or events occurred, and a reasonable practice, approved by the New York Court of Appeals, is to allocate the claims over all periods of alleged exposure. The American Club has followed this approach as to claims asserted against its members. The defendants, who

19

are occasionally sued by seamen along with other shipowners, have also utilized the same approach when they are joined with other shipowners as defendants in suits by seamen, namely allocating the seamen's claims over the entire period of alleged exposure on the different owners' vessels, with each shipowner then bearing his proportionate share of any judgment/settlement.

60.    If the Club is required to pay any indemnities to the pre-1989 members, it should be entitled to continue that part of the Discretionary Practice regarding allocating the claims to the years of employment by sea service days and apply the member's chosen deductible for each such year.

61.    As to the defendants' contentions that they are entitled to recalculations of the indemnity claims previously paid by the Club to them on a "multiple deductible" basis to a "single deductible" basis and the payment of the difference, that relief is not justified. Many of the defendants repeatedly acquiesced in that part of the practice of the Club providing indemnities to members regarding Closed Year ODCs on the basis of allocating each such claim over the years of service and applying a deductible for each such year. Further, given the passage of time, the claims for recalculation are time barred. Other defenses include final settlement, accord and satisfaction, estoppel, and waiver.

62.    The defendants' contention that the Club must continue to provide indemnities to them regarding the Closed Year ODCs are barred by the following:

20

(a)   Failure of condition precedent, as the defendants have refused to pay their agreed to liability for assessments to provide the necessary funds to the Club to pay those indemnity claims.

(b)   Final settlements of account and mutual releases.

(c)   Failure of consideration in that defendants never paid for the indemnity insurance they seek.

(d)   Mutual mistake in the sense that no one knew that long after the years were closed, the Closed Year ODCs would be asserted.

(e)   Intentional assumption of risk in failure to set aside adequate funds for the 1977 and later years.

(f)   Estoppel, waiver, and failure to state a claim.

(g)   Unjust enrichment.

(h)   The bad faith, arbitrary, and *ultra vires* actions of defendants' executives while they were responsible for operating the American Club.

63.   Nothing done or said by the Club's representatives while the Discretionary Practice was in effect binds the Club or its current and future members, who never consented thereto.

64.   To the extent defendants' allege that plaintiff is bound by anything stated in any alleged "agreement" or "representation" while the Discretionary Practice was in effect, defendants' claims are barred because the actions of directors who allegedly made any such agreements on behalf of the Club's future members were *ultra vires*, arbitrary and made in bad faith;

65.   The defendants' claims are also barred by lack of good faith and fair dealing throughout the 1980s and 1990s.

66.    The defendants' claim that American Club acted in bad faith in terminating the discretionary practice in May 2004 is meritless. The Club acted appropriately to protect its current and future members from the inequitable actions of the directors representing the defendants when those directors controlled the Club in the 1980s and 1990s.

67.    In July 2004, the American Club and defendant Keystone entered into an agreement under which the American Club made an "advance" to Keystone regarding its settlement of Mr. Timothy Farley's Closed Year ODC. The parties agreed that their rights regarding that advance would be decided in this action.

68.    The American Club is entitled to a full refund of the advance it paid to Keystone regarding Mr. Farley's claims.

69.    No defendant was ever released from its obligations to pay assessments for unreported, unreserved for pre-1989 Closed Year ODCs including, without limitation, Union Carbide Corporation.

70.    No current or future Club members ever agreed to be assessed regarding defendants' liabilities arising from occurrences in long closed years and not asserted until after the years were closed.

71.    The American Club denies each and every contention asserted by defendants that are inconsistent with the above or with the allegations in the American

Club's Second Amended Complaint and Master and Supplemental Replies to Defendants' Counter Claims.

C.    Plaintiff's Statement of Issues to be Tried

This is a contract action in which the defendants assert that the plaintiff has breached certain contracts with them.  Plaintiff filed this action seeking declarations that it did not breach any contracts with defendants and for declarations of both parties' rights and obligations under the contracts.

1.    The primary issue is, do the pre-1989 assessable, mutual indemnity insurance contracts issued by the Club require the American Club to provide mutual indemnity insurance to its pre-1989 members for which those members never paid?

2.    If those policies require the American Club to provide mutual indemnity insurance to its pre-1989 members, must those members comply with their assessment obligations in each of the same contracts and may the Club assess those members to provide the indemnities to those year's members?

3.    If the assessments mentioned above are permissible, may the Club treat each pending or future Closed Year ODC as constituting a deficiency that may be assessed in full to the relevant years' members?

4.      If indemnities must paid to the Closed Year members, may the Club continue its practice of allocating each indemnity claim over the years of alleged exposure by sea service days and apply one deductible with respect to each such year?

5.      Do the defendants' have any legal right to any funds in the Club's reserve accounts?  And do the defendants have any right to accountings with respect to such funds?

6.      Does a Board of Directors of a mutual indemnity insurance association, such as the American Club, have the power to limit closed years' members liability for assessment for late-arising claims in closed years which were unknown and unreserved for or inadequately reserved for at the time the accounts for the years in question were closed, thereby shifting responsibility for funding those claims to members of future open insurance years without the open-year members' consent?

7.      Were the actions of the Club Directors in the 1980s and 1990s, who were senior executives of, and holders of equity interests in, defendants *ultra vires*, arbitrary and made in bad faith?

8.      Are the defendants' demands for recalculations of the indemnities previously paid by the Club regarding deductibles barred on the grounds of acquiescence, time bar, estoppel, waiver, and/or other defense presented by the Club?

9.      If the Court permits the recalculation of prior indemnity payments (which it should not), may the Club assess the members of the applicable insurance years to

provide the funds with which to make any required additional payments to the defendants?

10.    Is the American Club is entitled to a refund of the advance it provided to Keystone Shipping Company in or about August 2004 in connection with Keystone's settlement of the Closed Year ODC of Mr. Timothy Farley, one of Keystone's former employees, and may the Club include that claim in the assessments referred to above?

11.    Are the release calls paid by defendant, Union Carbide Corp. in 2001 with respect to its future assessment obligations regarding the 1997, 1998, 1999 and 2000 years, which years were still open when Union Carbide Corp. terminated its membership in the American Club, effective to release Union Carbide Corp. from its liability for assessments regarding the 1940 – 1988 years?

12.    Plaintiff reserves all of its positions and defenses as stated in its Second Amended Complaint and Master Reply and Supplemental Replies to Defendants' Counter-Claims whether or not specifically stated herein.

D.    Injunctions

Plaintiff also seeks certain injunctions against the defendants. These injunctions are noted in Section XI, Relief Sought, and Proposed Orders granting same are attached as Exhibits 2 and 3.

**II    Contentions of Defendants**

1.      Defendants purchased insurance coverage under protection and indemnity

(P&I) insurance policies issued by the Plaintiff, a licensed insurance company organized

under New York law and regulated by the Insurance Department of the State of New

York, in one or more years prior to 1989 (the "Policies"). The Policies provide (under

Clause 1) that the Club will indemnify the policyholder for: "Liability for life salvage,

loss of life of, or personal injury to, or illness of any person…." Occupational disease

claims (ODC) fall squarely within the scope of insurance coverage under Clause 1 of the

Policies. As with any insurance contract, the scope of coverage is spelled out in the terms

of the Policy.

2.      The Policies provide occurrence-based coverage, such that insurance

coverage under the Policies is triggered by an occurrence that takes place in whole or in

part during one or more years covered by an American Club Policy, regardless of when a

liability claim is asserted.   In the context of ODCs, this means that coverage is triggered

by the exposure of a claimant to asbestos or other hazardous substance during one or

more Policy years, regardless of when an ODC may be reported to the Club or asserted

by a claimant.

3.      Defendants paid all premiums due and owing to the Club under the

Policies, and insurance coverage attached upon inception of the Policy period.

4.      The Policies and By-Laws of the Club authorized the Club, acting through

its Board of Directors, to levy assessments against Policyholders "for their proportionate

share of any deficiency or impairment as provided by law and fixed in accordance with the By-Laws of the Association ….." Any assessment by the Club was required to be based on the aggregate results of the Policy year, rather than the results for a particular claim or category of claims. The Club's By-Laws also authorized the Club acting through its Board of Directors, to close the accounts of Policy years and thereby terminate the Club's power to further assess the Policyholders of such Policy years and at the same time to terminate the right of the Policyholders of those years to seek a refund of any excess assessments from the Club.

5.     The closing of Policy years did not, as the Club contends, involve a bilateral agreement between the Club and the Policyholders of a Policy year concerning the adequacy and scope of reserves or coverage for future claims, and did not and was never intended to have any impact on the scope of coverage provided for any claim. Rather the closure of a Policy year was a unilateral decision of the Club, acting through its duly appointed Board of Directors, to close the accounts of a Policy year, solely with respect to the Club's power to issue further assessment orders or its obligation to refund excess assessments. Decisions concerning the setting of reserves and closure of Policy years were made by the Club on terms the Club and its managers felt appropriate, without seeking or obtaining the consent of individual Policyholders.

6.     The closing of a Policy year did not affect in any way the continuation of insurance coverage for claims, whenever asserted, arising from occurrences taking place during the Policy year, which had already triggered the Club's Policies. At no time prior

27

to May 2004, when it terminated what it then, for the first time, disingenuously labeled the "discretionary practice," did the Club inform its Policyholders that the closing of Policy years would have any impact on the continuation of coverage.  To the contrary, the Club, by setting reserves and paying for ODCs, without reservation of rights for over 20 years, clearly communicated to its Policyholders that coverage existed and would continue to be provided after Policy years were closed.  In closing Policy years the Club knew of the possibility and assumed the risk that ODCs or other claims might be asserted after a Policy year was closed to further assessment, and expected the Club's reserves to be used to pay for such claims.

7.    At the time of closing a Policy year, the Club, acting through its Board of Directors, could if it chose, order a refund of excess premiums to the Policyholders of a Policy year, something it rarely if ever did.  In contrast, according to the opinion of the Club's then counsel, the Club was obligated at the time of closing a Policy year, to refund any assessments deemed as excess to the Policyholders of the Policy year.  The Club could also order a final assessment as permitted by New York law and to the extent authorized by the Club's By-Laws.

8.    A "final" refund or "final" assessment was intended to mean just what the word says, to be the last assessment and, as such, to preclude further assessments.  The closure of a Policy year constituted a release of the Policyholders for the Policy year from any future assessment obligation to the Club.

9.      Certain seaman employed by Defendants, or employed by others aboard vessels owned by Defendants, as well as other employees of Defendants and longshoreman, have alleged and will likely in the future assert ODCs alleging that they were injured by exposure to dangerous substances, mostly, although not exclusively, asbestos.  Defendants have incurred losses as a result of payment of judgments and settlements of such claims and expenses incident to their investigation and defense, and will likely continue to do so.  Defendants reasonably relied upon the existence of insurance coverage under Club policies for payment of such losses.

10.      Although neither the Club nor its Policyholders anticipated ODCs when Policy years prior to the late 1970s were closed, the Club and its managers were always aware of the possibility that claims could be asserted after a Policy year was closed, and knew that the Club was obligated to provide coverage for such claims, whether or not specifically reserved for prior to closure of the accounts for the Policy year.  The Club's general and/or closed year reserves were maintained to pay for such claims.

11.      In addition, since the late 1970s, the Club knew of the existence of ODCs and of the potential for future ODCs; knew that the Club was obligated to pay for such claims, whether or not reserved for prior to closure of the accounts of the Policy year; and, with intent to make provision for this obligation, set reserves for potential ODCs that might emerge after Policy years were closed beginning in 1988 when the 1977-78 Policy year was closed.  Such reserves were intended to pay for ODCs resulting from

occurrences in any Policy year before or after 1988, and were not earmarked for a particular Policy year.

12.     At no time prior to the closure of any pre-1989 Policy year did the Club advise any Policyholder that it had the "discretion" to deny payment of claims falling within the Policy coverage -- an invention of the Club's current counsel -- or to "reopen" such Policy year for further assessment, for any reason.

13.     The Club is legally obligated, pursuant to the terms of its Policies, to indemnify Defendants in full for any loss, damage or expense that Defendants become liable to pay, subject to the applicable deductible, in connection with ODCs resulting from exposures taking place in whole or in part during the pre-1989 insurance years.

14.     The Club's reliance on principles of "mutuality" to justify its denial of insurance coverage is baseless. Nothing in New York law justifies the Club's breach of its insurance contracts. Indeed, contradicting the very principles it purports to espouse, the Club recognizes that it is legally obligated to provide insurance coverage for Policy years from 1989 onward, even though these Policy years were closed and reserved for on the exact same basis as Policy years prior to 1989. The Club's attempt to justify this discriminatory treatment based on membership in the International Group, an organization of mutual P&I Clubs participating in a reinsurance pool, is merely a cover for the Club's decision to protect what it perceives to be its present members' interests while shirking its contractual obligations to prior members.

15.     In or about 1996, the Club's then counsel, Richard Brown, erroneously argued that closed years, under certain circumstances, might be reopened so that bankrupt former members could be further assessed.  Rejecting this proposition, the Club reaffirmed the existence of insurance coverage for ODCs, and explicitly recognized at a June 1996 Board of Directors meeting that closed years could not be reopened for further assessment unless mandated by statute.  In doing so, the Club waived any right it might otherwise have had to reopen previously closed years.

16.     The Policies contain no limitation on a Policyholder's recourse against the Club to particular assets of the Club for payment of the Club's contractual obligations. Thus, the Club's attempt to bar use of its reserves from payment of pre-1989 contractual obligations is meritless.

17.     There is no requirement in either the Policies or applicable By-Laws that claims must be reported before closure of the relevant policy period in order for the claims to be covered or that claims must be specifically reserved-for in order to be covered.  The Club's attempt to rewrite the Policies to impose such a requirement is untenable.

18.     The Club, like other corporations, acts through its Board of Directors and is bound by actions taken by its Board.

19.     From time to time some of Defendants' employees served as members of the Board of Directors of the American Club, as did its counsel.  However, not every

Defendant had an employee elected to the Board of Directors. Further, to the extent employees of Defendants were members of the Board of Directors, they acted on behalf of the American Club and not their individual employers, and the American Club explicitly deemed the employment of such member of the Board of Directors by an American Club insured not to be a conflict of interest.

20.    To the extent there is any ambiguity as to whether closure of a Policy year terminates coverage under the Policies, both the Club and its Policyholders understood and recognized by their conduct in submitting and paying for ODCs that coverage continues for claims reported after closure of a Policy year.

21.    To the extent there is any ambiguity as to whether closing of an insurance year terminates coverage under the Policies, in the mutual P&I industry, it is understood that coverage continues for claims reported after closure of a Policy year.

22.    The Policies do not have any applicable termination provision. Coverage has not been terminated or cancelled by the Club, nor have Defendants otherwise released the Club from its coverage obligations.

23.    The Policies have not been surrendered.

24.    To the extent the Club bases any of its claim on the cancellation of further coverage under any of the Policies at the time an insurance year is closed, the Club has failed to comply with the notice of cancellation requirement of N.Y. Insurance Law § 3426.

25.    To the extent the Club seeks to disclaim coverage for claims previously reported to the Club under any of the Policies, such disclaimer is untimely and in violation of N.Y. Insurance Law § 3420(d).

26.    The Club has waived any alleged right to deny coverage under the Policies as to ODCs. Such waiver is demonstrated by, among other things, (a) the Club's payment without any reservation of rights of ODCs over a period of more than 20 years in a total amount of approximately $6,700,000 and (b) the Club's reserving monies for such claims. In addition, the Club waived its right to deny coverage for ODCs by asserting control over the defense of such claims, requiring its policyholders to obtain the Club's approval of settlements, and repeatedly acknowledging that such claims were covered.

27.    Current Club directors Paul Sa, James Sweeney, and Martin Recchuite each have voted in favor of paying various ODCs during their tenures as directors.

28.    The doctrine of estoppel bars the Club from denying coverage under the Policies as to ODCs. The Club consistently recognized its obligation to pay such claims, and Defendants relied upon such representations by, among other things, continuing to buy insurance from the Club and not purchasing alternative insurance to cover ODCs.

29.    The doctrine of laches bars the Club from denying coverage under the Policies as to ODCs. There is no excuse for the Club's delay in disclaiming coverage as to pre-1989 ODCs, and Defendants have been prejudiced by such delay by, among other

things, continuing to buy insurance from the Club and not purchasing alternative insurance to cover ODCs.

30.     The Club had the opportunity to litigate the issue of coverage in *Dicola v. American S.S. Owners Mutual Protection and Indemnity Association, Inc. (In re Prudential Lines, Inc.)*, 158 F.3d 65 (2d Cir. 1998), and the Second Circuit determined that there was coverage for ODCs under the Policies.  The Club is, therefore, barred by the doctrines of *res judicata* and/or collateral estoppel from litigating the issue of coverage under the Policies without any time limitation as to when claims can first be made against the insured and still be covered under the Policies.

31.     All pre-1989 insurance years have been "closed" by the American Club. For each such year, the Club's Board of Directors, pursuant to the By-Laws of the Club issued a resolution fixing and/or determining the amount of a final assessment or final dividend payment applicable to policyholders for that insurance year.

32.     As to all Defendants, the Club is not entitled to "reopen" closed insurance years to further assess Defendants.  There is no contractual or legal basis for such action. In addition, certain Defendants including The Dow Chemical Company were issued non-assessable policies by the Club which may not be reopened for further assessments. Certain additional policies were issued on a "named assured" basis which may not be reopened for reassessment.

33.     The applicable By-Laws do not allow for the assessment of policyholders after an insurance year has been closed.

34.     To the extent there is any ambiguity with respect to the Club's assessment power under the relevant By-Laws, both the Club and its policyholders understood that the closing of an insurance year terminated the policyholders' liability for further assessments.

35.     To the extent there is any ambiguity with respect to the Club's assessment power under the relevant By-Laws, custom and practice within the mutual P&I industry is that policyholders' liability for further assessments is terminated by the closure of the insurance year.

36.     New York Insurance Law does not permit assessments against the Defendants.  The Insurance Law limits the Club's assessment power to assessing current *members* of the Club, except if the company is impaired, which the Club is not.  Even during impairment, the New York Insurance Law only permits the assessment of former members in the year before the impairment.  The Defendants are no longer members of the American Club and do not fall within the limited category of former members that may be assessed.

37.     To the extent the Club's claims are based on the premise that Defendants are "members" of the Club, the Club's purported denial of coverage as to pre-1989 ODCs is null and void because Defendants were not afforded the right to vote for the Directors

who approved such action or to exercise other incidents of membership in connection with such action.

38.     Current Club directors Paul Sa, James Sweeney and Martin Recchuite were members of the Board that reaffirmed that closed years could not be reopened in June 1996.

39.     The Club has released some or all Defendants from any further liability for assessments in the relevant insurance years.  As to all Defendants, the Club demonstrated the requisite intent to release Defendants from further assessment both at the time the relevant insurance years were closed and subsequently, including but not limited to its affirmation on June 13, 1996 when its Board reaffirmed that closed insurance years were not to be further assessed, and each time it paid a pre-1989 ODC.

40.     As to Defendant Union Carbide Corporation (as variously sued), the Club has specifically released it by issuing its Release Letter in exchange for payment of premium therefor.

41.     The Club has waived any alleged right to seek further assessments from Defendants.  The Club's intent to waive such alleged right is demonstrated by (a) its payment of ODCs without "reopening" insurance years, (b) its reserving practices for ODCs (without any "reopening"), and (c) its decision on June 13, 1996 to reaffirm the closures of the insurance years in question.

42.    In accordance with a recommendation from its outside auditors, Deloitte and Touche, the Club included in its reserves and annual statements for 1996 a provision of $1,000,000 for payment of asbestos claims occurring in insurance years prior to 1981. The Club later increased this amount to $2,500,000 and reported such amounts in its annual reports and its statutory filings with the New York State Insurance Department.

43.    Until bringing this action, the Club continued to include provisions in its reserves for the payment of asbestos claims in pre-1989 insurance years.

44.    The Club is barred by the doctrine of estoppel from "reopening" closed insurance years and further assessing Defendants. The Club represented to Defendants that Closed Years could not be reopened, and Defendants relied on these representations by, among other things, continuing to purchase insurance from the Club and by making representations to third parties regarding their lack of exposure to further assessments.

45.    The Club is barred by the doctrines of *res judicata* and/or collateral estoppel from litigating the rights of the Club to issue further assessments against holders of the Policies.

46.    With respect to the Defendants Mathiasen's Tanker Industries, Inc. and Trinidad Corporation, the Order Approving Stipulation Between Trinidad Corporation and Mathiasen's Tanker Industries, Inc. and American Steamship Owners Mutual Protection and Indemnity Association, Inc., dated April 4, 1991, estops, bars and waives the Club's claims in whole or in part.

47.     If the Court decides that the Club is permitted to reopen insurance years, any assessments against Defendants should be limited to proven deficiencies in particular insurance years.  In determining whether a deficiency exists in a particular insurance year, investment income derived from sums the Club retained when closing the particular year must be included in the calculation.

48.     If the Court decides that the Club is permitted to reopen insurance years, the Club alone bears the risk that insolvent policyholders will be unable to pay their share(s) of assessments.  Defendants may not be charged additional assessments to cover assessments that insolvent policyholders are unable to pay, and indemnity payments due Defendants may not be reduced due to the inability of an insolvent policyholder to pay assessments.

49.     The closing of an insurance year is not a bilateral agreement negotiated between the Club and its members.  Therefore, the doctrine of mutual mistake is inapplicable to the Club's unilateral action in closing insurance years.

50.     Any alleged "mistake" made in connection with closing the relevant insurance years was a unilateral mistake and, thus, insufficient to reform any alleged agreement between the Club and its members.

51.     The closing of insurance years was explicitly authorized to be based on estimates of the final results for the insurance year.  Thus, there has been no mistake of fact to warrant reformation of the closed insurance years.

52.    The so-called "mistakes" alleged by the Club occurred many years ago and in all instances before 1993. Thus, the Club is barred by CPLR § 213(6) from bringing an action for reformation based on mutual mistake.

53.    In accordance with the Second Circuit's holding in *Dicola v. American S.S. Owners Mutual Protection and Indemnity Association, Inc. (In re Prudential Lines, Inc.)*, when receiving indemnity payments from the Club for ODCs, Defendants are obligated to pay only a single policy's deductible (chosen by the relevant Defendant) for any one claim presented to the Club.

54.    To the extent Defendants have previously been indemnified by the Club or denied indemnification altogether for ODCs on the basis of multiple deductibles, Defendants are entitled to have such payments recalculated on the basis of a single deductible.

55.    The Club is barred by the doctrines of *res judicata* and/or collateral estoppel from litigating the rights of the holders of Policies, including Defendants, to indemnification under the pre-1989 Policies subject to the application of more than one deductible.

56.    Certain Defendants objected to the Club's indemnification of ODCs on the basis of applying multiple deductibles.

57.     The American Club did not have a good faith basis for denying coverage as to the ODCs in question in this action.  Thus, Defendants are entitled to their attorneys' fees and costs incurred in this action.

58.     The conduct of the Club in purporting to withdraw coverage for ODCs constitutes deceptive acts or practices within the meaning of New York General Business Law § 349.

59.     The Club is liable to certain Defendants for damages, attorneys' fees and other costs and expenses as a result of violating New York General Business Law § 349.

60.     The Club's representations to APL that it would be covered for ODCs and its purported withdrawal of such coverage constitutes a fraudulent business act or practice within the meaning of California's Unfair Practices Act.

61.     As a result of the Club's unfair and unlawful violations of California's Unfair Practices Act, APL is entitled to damages, attorneys' fees and costs and expenses.

62.     Defendant Union Carbide Corporation is entitled to judgment on its Affirmative Defense of Release on all Causes of Action asserted by Plaintiff.

63.     That all causes of action must be  dismissed as to The Dow Chemical Company ("TDCC") for the years, *inter alia*, 1952, 1953, 1954, 1955, and 1956 as any policies actually issued TDCC by the plaintiff for those years were on a non-assessable basis.

64.    That all other years TDCC is alleged to have been a member of plaintiff any policies issued concerning TDCC refer to TDCC, if at all, as a "named insured" only. As a result, TDCC is entitled to dismissal of all causes of action asserted by the plaintiff.

65.    The sample Plaintiff Insurance Policy used as a representative Policy of Insurance at trial, by agreement between the parties, is not accurate as to the discrete issues referred to in the above two contentions as to TDCC and TDCC reserves its right rely upon any actual TDCC polices of insurance involved.

**Contention Submitted by Defendant S.C. Loveland, Co., Inc. n/k/a Loveland Holding Company ("Loveland"):**

66.    Loveland contends that it is entitled to coverage by the American Club for policy years in which Loveland was a member, including for ODCs incurred prior to February 20, 1989, which were not reported prior to the closure of the pre-1989 Policy Years.  Loveland further contends it is not responsible to pay any assessments for any of those years, said assessments having been paid to the Club as part of the Club's claim against Loveland in Loveland's 1993 bankruptcy action.

## V.    ISSUES TO BE TRIED

1.    Is the American Club obligated to indemnify defendants for the ODCs?

2.    If the American Club is obligated to indemnify any defendants with respect to the ODCs, may the Club assess defendants to satisfy those claims?

3.    If assessments as set forth above in 2 are permissible, how are they to be calculated?

4.    If indemnities are to be paid by the American Club to the defendants regarding their payments to claimants of the ODCs, what deductible or deductibles will the defendants be required to absorb?

5.    Whether any of the defendants are entitled to payments from the American Club, if a change in the American Club's deductible approach is ordered by the Court?

6.    Whether the parties are entitled to recover their legal fees and expenses from the other?

OTHER ISSUES TO BE TRIED ARE CONTAINED IN THE PARTIES' CONTENTIONS IN PART IV.

## VI.    PLAINTIFF'S EXHIBITS

No exhibit not listed below may be used at trial except (a) for cross-examination purposes or (b) for rebuttal purposes or (c) if good cause for its exclusion from the pretrial order is shown.

See Appendix 1 attached hereto, Plaintiff's List of Exhibits with Defendants' Objections.

## VII.    DEFENDANTS' EXHIBITS

No exhibit not listed below may be used at trial except (a) for cross-examination purposes or (b) or rebuttal purposes or (c) if good cause for its exclusion from the pretrial order is shown.

See Appendix 2 attached hereto, Defendants' List of Exhibits with Plaintiff's Objections.

## VIII.    STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

Any objections not set forth herein will be considered waived absent good cause shown.

1. The parties hereto stipulate that, to the extent a document has been authenticated through deposition testimony, no party shall be required to designate such testimony in the pre-trial order. Any such documents authenticated in this manner shall be deemed authenticated for any such purposes in this litigation.

2. In order to avoid burdening the Court with a voluminous exhibit list of pre-marked American Club insurance policies, the parties hereto stipulate to waive any and all hearsay and authenticity objections to the extent that any party wishes to use any such policies at trial. Should any party wish to introduce a particular American Club policy or policies at trial, an exhibit number will be supplied to such policy or policies at that time.

3. The parties hereto stipulate to waive any objections regarding any documents that (a) are supporting documentation underlying a party's summary charts, and (b) do not appear on the exhibit list of the party seeking admission ("Supporting Documents") on

the grounds that the Supporting Documents have not been so identified on the exhibit list. The parties also agree to waive authenticity and hearsay objections to the Supporting Documents, but all other objections with respect to Supporting Documents are hereby reserved.

4. Each party reserves the right to offer any of the exhibits listed on any other party's exhibit list or contained in deposition testimony designated by any other party, as well as such designated testimony. Each party reserves the right to introduce exhibits in graphic form.

The parties' objections to Exhibits may be found at Appendices 1 and 2, each of which is hereby incorporated by reference into this section.

## IX.     PLAINTIFF'S WITNESS LIST

The witnesses listed below may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown.

Peter Bernie

Richard Brown

John Cassedy

David Martin-Clark

William Craig

Joseph Hughes

Thomas McGowan

Martin Recchuite

John Sandercock

Robert Seward

Vincent Solarino

James Sweeney

Designations of Deposition Testimony to be used as part of Plaintiff's case in chief with Defendants' Objections and Counterdesignations and Plaintiff's Objections to the Counterdesignations are annexed hereto as Appendix 3.

Plaintiff hereby reserves the right to call as a witness any person appearing on defendants' witness list.

## X.    DEFENDANTS' WITNESS LIST

The witnesses listed below may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown.

Charles Achuff

Carissa Barletta

Richard Bihn

Terence Coghlin

Christopher Conley

Kathy Cronin

Linda Daniels

Charles K. Dougherty

David Ekaitis

Philip Fisher

Michael Formoso

C. Bennett Gleason

Marty Gordon

Richard Gronda

John Hendrickson

Keith Kennedy

Charles Kurz, II

S.C. Loveland, III

Steven Lowson

Buckley McAllister

Neil Miller

Marc Pearl

Mark Peterson

Louis E. Piernik

Peter Popov

Andrea St. Paul Bland

Steven Valerius

Raymond J. Van Eperen

Deborah Weedman

Ellen Wiese

Designations of Deposition Testimony to be used as part of defendants' case in chief, Plaintiff's Objections and Counterdesignations and Defendants' Objections to Plaintiff's Counterdesignations are annexed hereto as Appendix 4.

Defendants hereby reserve the right to call as a witness any person appearing on plaintiff's witness list.

## XI.    RELIEF SOUGHT

**A.    Relief Sought by Plaintiff**

Plaintiff seeks judgments

    (1)   Declaring that plaintiff has not breached any contracts with defendants;

    (2)   Dismissing defendants' affirmative defenses and counterclaims, with prejudice;

    (3)   Declaring that the pre-1989 mutual indemnity insurance policies in issue do not require the American Club to pay indemnities to defendants for any claims that were not reported and properly reserved for before the accounts for the pre-1989 insurance years were closed ( i.e., that defendants are not entitled to insurance for which they never paid), and that plaintiff was entitled to terminate the Discretionary Practice;

    (4)   Declaring that if those pre-1989 mutual indemnity insurance policies require the American Club to provide indemnities regarding the Closed

Year ODCs, defendants must now comply with their assessment obligations included in each of those same contracts, and that the members of each year implicated in each claim may now be assessed by the Club regarding each such indemnity claim presented by any member of those years;

(5)   Declaring that each such assessment may be based upon allocating each indemnity claim over the insurance years of alleged exposure and applying the member's deductible for each such year;

(6)   Declaring that the defendants have no legal right to any funds in the Club's reserve accounts, and that they have no right to accountings with respect to such funds either;

(7)   Declaring that the Club may remit to the defendants making the claims the sums collected by each assessment less the Club's reasonable expenses of the assessments;

(8)   Declaring that no Board of Directors of the American Club had the power to limit closed years' members' liability for assessments for Closed Year ODCs thereby shifting responsibility for funding those indemnity claims to members of open insurance years without their consent.

(9)   Declaring that actions of members of the American Club's Boards of Directors in the 1980s and 1990s in commencing or permitting the

commencement of the Discretionary Practice which benefited defendants were *ultra vires*, arbitrary and made in bad faith.

(10)  Declaring that if defendants are entitled to recalculations of indemnities previously paid by the Club under the multiple deductible approach to a single deductible approach, which plaintiff denies, that plaintiff may assess the members of the relevant Closed Years to provide the funds to pay the difference;

(11)  Declaring that plaintiff may recover from defendant Keystone the advance provided to Keystone in connection with the Closed Year ODC of Mr. Timothy Farley;

(12)  Declaring that no defendant was released from its assessment obligations under the pre-1989 policies including, but not limited to, Union Carbide Corporation;

(13)  Declaring that plaintiff recover from the defendants all of its costs and expenses of this litigation and such further or different relief as may be appropriate and just.

Plaintiff also seeks certain injunctions against defendants and attached hereto as Exhibits 2 and 3 are Orders containing the alternative injunctions proposed by Plaintiff.

B.    **Relief Sought by Defendants**[1]

I.    **As to Defendants' First Claim For Relief (Declaratory and Injunctive Relief)**, an Order:

    A.    declaring that Defendants have the right under their respective Pre-1989 Policies to continuing coverage for occupational disease claims resulting from claimants' exposures occurring during any one or more of the Pre-1989 Years, subject only to the applicable deductible;

    B.    declaring that Defendants have the right under their respective Pre-1989 Policies to designate one of such Policies to indemnify such Defendant for the payment of a particular occupational disease claim, subject only to the deductible under that Policy and no other;

    C.    declaring that the Club has no right to make any further assessment or assessments against any Defendants under any Pre-1989 Policies;

    D.    granting Defendants a mandatory injunction barring, restraining and prohibiting the Club from making, or seeking to make, any such assessment or assessments;

    E.    granting Defendants their reasonable attorneys' fees and other costs and expenses incurred in this action;

    F.    ordering the Club to provide the Defendants with payment, subject to the applicable deductible, for all Pre-1989 ODCs which Defendants have

---

[1]    Not all Defendants have sought all of the relief described in this section.

submitted to the Club as of the date of such Order but for which the Club

has not provided indemnification, in an amount to be determined at trial.

Current lists of such claims and amounts owed by the Club have been

submitted by various Defendants as Trial Exhibits. Defendants reserve the

right to update or supplement their lists of such claims.

II.    **As to Defendants' Second Claim For Relief (Breach of Contract)**, an Order:

    A.    granting compensatory damages for claims that were partially paid on the

        basis of applying multiple deductibles, in an amount to be determined at

        trial. Lists of such claims and amounts owed by the Club have been

        submitted by various Defendants as Trial Exhibits. Defendants reserve the

        right to update or supplement their lists of such claims.

III.    **As to Defendants' Third Claim For Relief (Violation of New York General**

    **Business Law §349)**, an Order:

    A.    granting compensatory damages in an amount to be determined at trial,

        including but not limited to attorneys' fees and costs incurred in defending

        this action.

IV.    **As to Defendants' Fourth Claim For Relief (Release)**, an Order:

    A.    barring any further assessments of policyholders in the Pre-1989 insurance

        years.

V.    **As to Defendants' Fifth Claim For Relief (Breach of Implied Covenant of**

    **Good Faith)**, an Order:

    A.    granting compensatory damages in an amount to be determined at trial,

including but not limited to attorneys' fees and costs incurred in defending this action.

VI.   **As to Defendants' Sixth Claim For Relief (Promissory Estoppel)**, an Order:

A.    dismissing all claims in the Complaint with prejudice and costs;

B.    declaring that (i) Defendants have the right under their respective Pre-1989 Policies to continuing coverage for occupational disease claims resulting from claimants' exposures occurring during any one or more of the Pre-1989 insurance years, subject only to the applicable deductible and (ii) the Club has no right to make any further assessments against any Defendants under any Pre-1989 Policies;

C.    granting Defendants a mandatory injunction compelling the Club to provide the coverage described in (B) above;

D.    barring, restraining and prohibiting the Club from making, or seeking to make, any assessment or assessments as described in (B) above;

E.    ordering the Club to provide the Defendants with payment, subject to the applicable deductible, for all Pre-1989 ODCs which Defendants have submitted to the Club as of the date of such Order, in an amount to be determined at trial.  Current lists of such claims and amounts owed by the Club have been submitted by various Defendants as Trial Exhibits. Defendants reserve the right to update or supplement their lists of such claims.

F.    granting Defendants their reasonable attorneys' fees and other costs and

expenses incurred in this action;

G.     granting such other and further relief as this Court deems just and proper.

VII.   **As to Defendant APL's Claim For Relief for Violations of "California's Unfair Practices Act,"** an Order:

A.     granting defendant APL its reasonable attorneys' fees and other costs and expenses incurred in this action.

Attached hereto as Exhibit 4 is an Order containing the injunctions proposed by defendants.

Dated: New York, New York
          April 14, 2006

                                          Respectfully submitted,

                                          For Plaintiff, The American Steamship
                                          Owners Mutual Protection and
                                          Indemnity Association, Inc.

                                          NOURSE & BOWLES, LLP
                                          SULLIVAN & WORCESTER, LLP

                  By:

                                          Lawrence J. Bowles (LB 5950)
                                          One Exchange Plaza @ 55 Broadway
                                          New York, New York 10006
                                          (212) 952-6200

For Defendants, as indicated below

PROSKAUER ROSE LLP

By: _____

    Dale A. Schreiber (DS–9211)
    Seth B. Schafler (SS–5993)
    Lisa A. Bauer (LB–4057)
    Nathan R. Lander (NL–6276)
    1585 Broadway
    New York, New York 10036-8229
    (212) 969-3000

*Attorneys for Defendants Keystone, BP,
MTL, Kirby Inland Marine, LP
(as successor to Hollywood Marine Inc.),
American Steamship Company,
The Cleveland-Cliffs Steamship
Company, Ispat, Amerada Hess
Corporation,
Sea Mobility, Alcoa, and Sabine*

| | |
|---|---|
| HOWREY, LLP | DLA PIPER RUDNICK GRAY CARY US LLP |
|    Robert H. Shulman |    Stanley McDermott, III |
|    Mindy G. Davis |    Camilo Cardozo |
|    Christine Davis |    1251 Avenue of the Americas |
|    Averitt Buttry |    New York, NY 10020 |
|    1299 Pennsylvania Avenue, NW |    (212) 835-6123 |
|    Washington, DC 20004-2402 |    (212) 884-8523 (fax) |
|    (202) 783-0800 |    camilo.cardozo@piperrudnick.com |
|    (202) 383-6610 (fax) |    *Attorneys for Defendant Ispat Inland Inc.* |
|    *Attorneys for Defendant Amerada Hess* |    *(formerly called Inland Steel Co.)* |

RAY, ROBINSON, CARLE & DAVIES, P.L.L.
   Gene B. George
   Julia R. Brouhard
   1717 East 9th Street, Ste. 1650
   Cleveland, OH 44114-2898
   (216) 861-4533
   (216) 861-4568 (fax)
   ggeorge@rayrobcle.com
   jbrouhard@rayrobcle.com
   *Attorneys for Defendant The*
   *Cleveland-Cliffs Steamship Company*

***---and by proxy for the following Defendants and their counsel of record---***

| | |
|---|---|
| HOLLAND & KNIGHT | BROWN RUDNICK BERLACK ISRAELS, |
|    John Toriello | LLP |
|    195 Broadway, 24th Floor |    Andrew Dash |
|    New York, NY  10007 |    Peter Adelman |
|    (212) 513-3200 |    Seven Times Square |
|    (212) 385-9010 (fax) |    New York, New York 10036 |
| |    (212) 209-4811 |
| *Attorneys for Defendant* |    (212) 938-2811 (fax) |
| *American President Lines, Ltd.* | |
| *(sued herein as American President Lines,* | *Attorneys for Defendant* |
| *Inc. and as APL Ltd. as Successor to* | *Farrell Lines* |
| *American Mail Line)* | |

CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP
    Joseph D. Pizzurro
    Robert J. Gruerdel
    Dora Straus
    101 Park Avenue
    New York, NY  10178
    (212) 696-6000
    (212) 697-1559 (fax)

*Attorneys for Defendants*
*Apex Oil Company, Inc., Trinidad*
*Corporation, Mathiasen's Tanker Industries,*
*Inc. and Crest Tankers, Inc.*

DICKSTEIN SHAPIRO MORIN &
OSHINSKY LLP
David L. Elkind
Dorothy Thomas
1177 Avenue of the Americas
New York, NY 10036
Tel.: (212) 835-1400
Fax: (212) 997-9880

*Attorneys for Defendant Keyspan*
*Corporation (as Successor to Eastern Gas*
*and Fuel Associates and Mystic Steamship)*

O'HARE PARNAGIAN LLP
    Robert A. O'Hare Jr.
    82 Wall Street, Suite 300
    New York, NY 10005
    (212) 425-1401
    (212) 425-1421 (fax)

*Attorneys for Defendants*
*Central Gulf Lines, Inc. and Waterman Steamship*
*Corporation*

CUMMINGS & LOCKWOOD LLC
Steven Frenkel
John W. Cannavino
Six Landmark Square
Stamford, CT 06901
main: (203) 327-1700
fax: (203) 351-4534
sfrenkel@cl-law.com

*Attorneys for Defendant Chevron U.S.A. (as*
*successor to California Oil Company)*

MAHONEY & KEANE
Edward A. Keane
111 Broadway, 10th Fl.
New York, NY 10006
Tel.: (203) 222-1019
ekeane@mahoneykeane.com

*Attorneys for Defendants The Dow Chemical
Company and Union Carbide Corporation*


PATRICK F. LENNON, ESQ.
11 West 42nd Street, Suite 900
New York, NY 10036
Tel.: (212) 354-0025
Fax: (212) 869-0067
plennon@tisdale-lennon.com


*Attorneys for Defendants Bridgeport & Port
Jefferson Steamboat Co.; Brokerage &
Management Corp.; McAllister Towing and
Transportation Company, Inc.; (as Successor
to Outreach Marine Corp.) and Trade &
Transport Inc.*

FIELDS, HOWELL, ATHANS &
MCLAUGHLIN, LLP
Alissa C. Malone
Lynn Concha
One Midtown Plaza, Suite 800
1360 Peachtree Street, NE
Atlanta, GA 30309
(404) 214-1250
lconcha@fieldshowell.com

*Attorneys for Defendant Georgia Pacific Corp.*


HOLLSTEIN KEATING CATTELL JOHNSON
& GOLDSTEIN, PC
Edward V. Cattell, Jr.
Aaron Moody
8 Penn Center, 20th Floor
1628 J.F. Kennedy Blvd.
Philadelphia, PA 19103
Tel: (215) 320-2073

*Attorneys for Defendant Loveland Holding
Company, Inc., f/k/a S.C. Loveland Co., Inc.*


**Appendices to Joint Pre-Trial Order:**

　　1.　　Plaintiff's List of Exhibits with Defendants' Objections.


　　2.　　Defendants' List of Exhibits with Plaintiff's Objections.

3.     Designations of Deposition Testimony to be used as part of Plaintiff's case in chief with Defendants' Objections and Counterdesignations and Plaintiff's Objections to the Counterdesignations.

4.     Designations of Deposition Testimony to be used as part of Defendants' case in chief with Plaintiff's Objections and Counterdesignations and Defendants' Objections to Plaintiff's Counterdesignations.

**Exhibits to Joint Pre-Trial Order:**

Exhibit 1 – Representative Insurance Policy Issued by the American Club to its Members

Exhibit 2 – Proposed Order containing injunctions submitted by Plaintiff, Version 1

Exhibit 3 – Proposed Order containing injunctions submitted by Plaintiff, Version 2

Exhibit 4 – Proposed Order containing injunctions submitted by Defendants

\* \* \* \* \* \* \* \* \* \*

Dated: New York, New York
         April ____, 2006

Form Approved:

_____
U.S.D.J

# *Appendix 1*

**Plaintiff's List of Exhibits with Defendants' Objections**

**Appendix 1**

**American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., 04 Civ. 04309 (LAK)(JCF)**
**Plaintiff's Trial Exhibit List**
**Annotated with Defendants' Objections**

| Trial Ex # | Dep Ex # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-1 | | AC3005538-45; AC3055682-6 | 08/14/45 | Board Minutes | | | Board of Directors Meeting, June 14, 1945 | |
| PX-2 | | AC3006868-81; AC3006893-94; AC3006895-7 | 11/13/47 | Board Minutes | | | Board of Directors Meeting, November 13, 1947 | |
| PX-3 | | AC3011191-6; AC3011243-50; AC3011258 | 11/08/51 | Board Minutes | | | Board of Directors Meeting, November 8, 1951 | |
| PX-4 | | AC3010403-10; AC3010494-528 | 12/08/55 | Board Minutes | | | Board of Directors Meeting, December 8, 1955 | |
| PX-5 | | AC3010529-33; AC3010534-52 | 12/20/55 | Board Minutes | | | Board of Directors Meeting, December 20, 1955 | |
| PX-6 | | AC3015892-908; AC3016214; AC3016217-20; AC3016234-47 | 04/09/59 | Board Minutes | | | Board of Directors Meeting, April 9, 1959 | |
| PX-7 | COGHLIN 15 | KEY027465 - KEY027469 | 09/30/61 | Corporation Document | American Steamship Owners Mutual Protection and Indemnity Association Inc | | Amended Charter of the American Steamship Owners Mutual Protection and Indemnity Association Inc | |
| PX-8 | AC0026 | AC3021156 - AC3021164 | 10/23/62 | Surplus Statements | | | Surplus for Insurance Years 1955 - 1962 | Relevance (FRE 402) |
| PX-9 | | AC3021009-AC3021323 | 11/08/62 | | | | Board of Directors Meetings, November 8, 1962 and December 13, 1962, with all schedules | |
| PX-10 | AC0027 | KEY027117 - KEY027127 | 11/25/62 | Letter | Fridlund, HM | Williamson, C. | Re: Wartimepandl Agreements Treatment of Net Profits | Cumulative (FRE 403)--contained in prior exhibit as attachment. Relevance (FRE 402) |
| PX-11 | AC0024 | AC3021173 - AC3021185 | 12/13/62 | Board Minutes | Williamson, C. | | Minutes of the Regular Monthly Meeting of the Board of Directors of the American Steamship Owners Mutual Protection and Indemnity Association, Inc. Held at 25 Broad Street, New York City, December 13, 1962 | |
| PX-12 | AC0025 | AC3021301 - AC3021303 | 12/13/62 | Corporation Document | None | | Memorandum for Directors Meeting – December 13, 1962 Wartimepandi Agreements December 1, 1942 to March 1, 1948 | Relevance (FRE 402) |
| PX-13 | | AC3021476-90; AC3021633-52 | 03/14/63 | Board Minutes | | | Board of Directors Meeting, March 14, 1963 | |
| PX-14 | | AC3023097-115; AC3023239-52 | 03/12/64 | Board Minutes | | | Board of Directors Meeting, March 12, 1964 | |
| PX-15 | | AC3023241; AC3023250-8 | 07/02/64 | Letter | Fridlund, HM | Williamson, C. | Re: Association's Surplus | Relevance (FRE 402) |
| PX-16 | | AC0051464 - AC0051472 | 01/01/65 | Rules | UK Club | | 1965 Rules of the United Kingdom Mutual Steamship Assurance Association Limited | Lacks authenticity/foundation (FRE 901); Violates Best Evidence Rule (and see e.g., FRE 106, 1002) (document is incomplete); Relevance (FRE 402); |
| PX-17 | | AC3024741-55; AC3024820-34 | 05/13/65 | Board Minutes | | | Board of Directors Meeting, May 13, 1965 | |
| PX-18 | COGHLIN 24 | | 12/28/65 | Corporation Document | Donald, William | | Special Resolution of the United Kingdom Mutual Steam Ship Assurance Association, Limited | Hearsay (FRE 802); Relevance (FRE 402) |
| PX-19 | | AC0086449 - AC0086474 | 02/20/66 | Corporate Document | UK Club | | 1966 Rules of the United Kingdom Mutual Steamship Assurance Association Limited | Lacks authenticity/foundation (FRE 901); Relevance (FRE 402) |

**American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., 04 Civ. 04309 (LAK)(JCF)**
**Plaintiff's Trial Exhibit List**
**Annotated with Defendants' Objections**

| Trial Ex # | Dep Ex # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-20 | | AC086425-AC086448 | 02/20/66 | Corporate Document UK Club | | | 1966 Annual Report of the UK Club | Lacks authenticity/foundation (FRE 901); Relevance (FRE 402); Hearsay (FRE 802) |
| PX-21 | | AC3026733-50; AC3026950-7; AC3026958-64; AC3026965-73 | 11/10/66 | Board Minutes | | | Board of Directors Meeting November 10, 1966 | |
| PX-22 | | AC086475 - AC086498 | 01/01/67 | Rules | The Britannia Steam Ship Insurance Association Limited | | 1967 Rules of The Britannia Steam Ship Insurance Association Limited | |
| PX-23 | AC0028 | AC3028100 - AC3028117 | 06/15/67 | Letter | Fridlund, HM | Williamson, C. | Re: Wartimepandi Agreements Dec. 1, 1942 to March 1, 1948 (Proposed Closing Accord and Final Settlement) | Relevance (FRE 402) |
| PX-24 | | AC3033112-26; AC3030453-73 | 10/10/68 | Board Minutes | | | Board of Directors Meeting, October 10, 1968 | |
| PX-25 | | AC3030458; AC3030461-73 | 02/20/69 | Corporate Document UK Club | UK Club | | 1969 Rules of the United Kingdom Mutual Steamship Assurance Association Limited | Lacks authenticity/foundation (FRE 901); Relevance (FRE 402) |
| PX-26 | | AC3033801-12; AC3033904 | 05/14/70 | Board Minutes | | | Board of Directors Meeting May 14, 1970 | Relevance (FRE 402) |
| PX-27 | | AC3501616-17; AC3501638-40 | 05/11/72 | Board Minutes | | | Board of Directors Meeting, May 11, 1972 | |
| PX-28 | | AC3038171-70; AC3038171-4; AC3038177; AC3038189-207 | 03/31/73 | Memorandum | | Board of Directors | Re: Memorandum for Directors: Members' Loss and Cost Experience, Insurance Years 1968-1972-1973 Inclusive as at March 31, 1973 | |
| PX-29 | AC0029 | AC3502353 - AC3502355 | 08/08/75 | Memorandum | Cassedy, John H. | Finance Committee | Re: Upon Review of the Associations Open Insurance Years, the Board Should Consider Closing the 1966 Insurance Year | |
| PX-30 | AC0015 | AC004916 - AC004945 | 11/25/75 | Letter | Henry, James M. | Achuff, Charles B. | Re: Keystone Shipping Co., Keystone Tankship Corporation, Chas. Kurz & Co., Inc., Margate Shipping Company, Paco Tankers, Inc., Timbo Shipping, Ltd. Renewal - P & I Insurance | |
| PX-31 | | AC3044064-82; AC3044154; AC3044155-62; AC3044036 | 12/11/75 | Board Minutes | | | Board of Directors Meeting, December 11, 1975 | |
| PX-32 | AC0016 | AC0004855; AC0004868 | 12/30/75 | Letter | Sullivan, A M | Shipowners Claims Bureau, Inc. | Re: Loss Reserves Keystone Shipping Co., et al with attachments | |
| PX-33 | D0182 | KEY001977 - KEY001987 | 03/26/76 | Speech | Cassedy, John H. | | Address Delivered to Board of Marine Underwriters of San Francisco Incorporated | |
| PX-34 | | AC3045253-68; AC3045377-95; AC3045235 | 10/14/76 | Board Minutes | | | Board of Directors Meeting, October 14, 1976 | |
| PX-35 | | AC3045396-413; AC3046552-4; AC3046555-69; AC3046572 | 06/17/77 | Board Minutes | | | Board of Directors Meeting, June 17, 1977 | |
| PX-36 | | AC3046591 | 06/08/78 | Board Minutes | | | Board of Directors Meetings, June 8, 1978, with all schedules | |
| PX-37 | AC0031 | AC3048033 - AC3048191 | 02/14/79 | Letter | Fallon, William F. | Cassedy, John H. | Re: Associations Reserve Account | Relevance (FRE 402); Cumulative (FRE 403); Relevance (FRE 402); |
| PX-38 | AC0130 | APL006644 - APL006659 | 02/14/79 | Letter | Fallon, William F. | Cassedy, John H. | Re: Associations Reserve Account | Cumulative (FRE 402) |
| PX-39 | | FAR01602 - FAR01617 | 02/14/79 | Letter | Fallon, William F.. | Cassedy, John H. | Re: Associations Reserve Account | Cumulative (FRE 403); Relevance (FRE 402); |

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Aloca Steamship Co., 04 Civ. 04309 (LAK)(JCF)
Plaintiff's Trial Exhibit List
Annotated with Defendants' Objections

| Trial Ex # | Dep Ex # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-40 | | KEY02384 - KEY02399 | 02/14/79 | Letter | Fallon, William F. | Cassedy, John H. | Re: Associations Reserve Account | Cumulative (FRE 403); Relevance (FRE 402) |
| PX-41 | AC0033 | AC3502486 - AC3502490 | 05/10/79 | Finance Committee Minutes | Cassedy, John H. | | Finance Committee Meeting Minutes May 10, 1979 | |
| PX-42 | | AC3049697-715; AC3049801; AC3049817-9; AC3049820-34 | 06/14/79 | Board Minutes | | | Board of Directors Meeting, June 14, 1979 | |
| PX-43 | AC0069 | | 01/01/80 | Corporation Document | None | | UK P&I Club Rules 80 | Lacks authenticity/foundation (FRE 901); Violates Best Evidence Rule-and see e.g. FRE 106, 1002) as it contains multiple documents combined; Relevance (FRE 402) |
| PX-44 | | AC3051127-47; AC3051243-66; AC3051285 | 06/12/80 | Board Minutes | | | Board of Directors Meeting, June 12, 1980 | |
| PX-45 | AC0131 | AC3502576 - AC3502577 | 09/11/80 | Finance Committee Minutes | Cassedy, John H. | | Finance Committee Meeting Minutes September 11, 1980 | |
| PX-46 | | AC3051845 - AC3051847 | 10/30/80 | Letter | Di Palermo, John T. | Cassedy, John H | Re: Reserve Account | Relevance (FRE 402) |
| PX-47 | | AC005481 | 11/07/80 | Letter | Smith, Chris | Johnson & Higgins | Re Federal Transport Shipping Company, Inc. Amherst Shipping, Inc., | Relevance (FRE 402) |
| PX-48 | AC0034 | AC3051748 - AC0051767, AC3051840 - AC3051847, AC0051582 - AC0051597 | 12/11/80 | Board Minutes | Fallon, William F. | | Minutes of the Regular Meeting of the Board of Directors of the American Steamship Owners Mutual Protection and Indemnity Association, Inc., Held at Seven Hanover Park, New York City, December 11, 1980. | Relevance (FRE 402); Cumulative (FRE 403) of other evidence and exhibits offered |
| PX-49 | | AC0088515 - AC0088557 | 02/20/81 | Rules | UK Club | | 1981 UK P&I Club Rules | Lacks authenticity/foundation (FRE 901); Relevance (FRE 402) |
| PX-50 | | AC3052296-321; AC3052573-5, AC3052591-5, AC3052596-615 | 06/11/81 | Board Minutes | | | Board of Directors Meeting, June 11, 1981 | |
| PX-51 | | AC3053179-95, AC3053283 | 12/10/81 | Board Minutes | | | Board of Directors Meetings, December 10, 1981 | |
| PX-52 | AC0098A | AC3053283 | 12/31/81 | Financial Document | Chas. Kurz & Co Inc | | List of Chas. Kurz & Co., Inc. Stockholders As of 12/31/81 | Relevance (FRE 402) |
| PX-53 | AC0099B | KEY040855 | 02/10/82 | Financial Document | Chas. Kurz & Co Inc | | List of Chas. Kurz & Co., Inc. Stockholders February 10, 1982 | Relevance (FRE 402) |
| PX-54 | | AC0051681 - AC0051581 | 03/01/82 | Letter | Henry, James M. | Kurz, Adolph B. | Re: Four copies Messrs Kirlin, Campbell & Keatings opinion dated February 14, 1979 concerning the Associations Reserve Account. | Relevance (FRE 402); Cumulative (FRE 403) of other evidence and exhibits offered |
| PX-55 | | AC3053703-14 | 04/15/82 | Board Minutes | | | Board of Directors Meeting, April 15, 1982 | |
| PX-56 | | AC3053777-99; AC3054004-05, AC3054021-23; AC3054031-48 | 06/10/82 | Board Minutes | | | Board of Directors Meeting, June 10, 1982 | |
| PX-57 | | KEY000192 - KEY000193 | 08/11/82 | Letter | Martowski, David | Kurz, Charles | Re: Asbestosis | Relevance (FRE 402); Hearsay (FRE 802) as to attached article |
| PX-58 | | KEY000185 - KEY000186 | 09/17/82 | Memorandum | Kurz, Charles F. | JFY, HWR, PHB | Re: P and I American Club Matters | Relevance (FRE 402) |
| PX-59 | AC0127 | APL006327 - APL006330 | 09/22/82 | Memorandum | DiPalermo, John T. | Bunch, D. Stephens, S. | Re: Asbestosis Claims | Relevance (FRE 402) |
| PX-60 | | KEY000181 - KEY000183 | 09/27/82 | Letter | Boiles, John A. | Campbell, James R. | Re: Asbestosis Claims Our File: 21383 | Relevance (FRE 402); Hearsay (FRE 802) |
| PX-61 | | KEY000173 | 12/01/82 | Publication / News | New York Times | | "4,000 Asbestos Suits Revived" New York Times, December 1, 1982 | Relevance (FRE 402); Hearsay (FRE 802) |

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., 04 Civ. 04309 (LAK)(JCF)
Plaintiff's Trial Exhibit List
Annotated with Defendants' Objections

| Trial Ex # | Dep Ex # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-62 | | KEYO000079 - KEYO000080 | 03/16/83 | Publication / News | Richards, Bill | | "UNR Case May Set Legal History With Effort to Limit Asbestos Suits." Wall Street Journal, March 16, 1983 | Hearsay (FRE 802) |
| PX-63 | | AC3056058-78; AC3056263-64 | 06/09/83 | Board Minutes | | | Board of Directors Meeting, June 9, 1983 | |
| PX-64 | | KEYO000075 - KEYO000076 | 07/28/83 | Publication / News | Taylor, Stuart | | "Focus Put on Fees in Asbestos Cases." New York Times July 28, 1983 and "Two Asbestos Suits Settled." Journal of Commerce, 6/22/83 | Violates Best Evidence Rule, two documents not together; Relevance (FRE 402); Hearsay (FRE 802) |
| PX-65 | | KEY 000073-KEY 000074 | 08/02/83 | Letter | Kurz, Adolph B. | Kurz, Charles | Re: Asbestos, attaching New York Times article dated 7/30/83 | Relevance (FRE 402) as to attached article (FRE 802) |
| PX-66 | | KEY028583 - KEY000072 | 08/25/83 | Publication / News | Lueck, Thomas J. | | "Manville Thriving in Bankruptcy Shielded From Asbestos Lawsuits." New York Times, August 25, 1983 | Relevance (FRE 402); Hearsay (FRE 802) |
| PX-67 | | KEY 000068-KEY 000070 | 09/30/83 | Letter | Hart, Charles C. | Kurz, Charles | Re: Asbestos Claims, with attachment | Relevance (FRE 402); Hearsay (FRE 802) as to attachment |
| PX-68 | | KEYO000065 - KEYO000067 | 10/19/83 | Report | | | Outstanding Asbestos Claims | |
| PX-69 | | RHBO00875-82 | 12/19/83 | Letter | Murphy, J.J. | Pietropola, Fred | Re: Charles Kurz & Co. | |
| PX-70 | | KEYO40854 | 12/30/83 | Financial Document | Chas. Kurz & Co. Inc | | List of Chas. Kurz & Co., Inc. Stockholders December 30, 1983 | |
| PX-71 | AC0089C | KEYO000047 - KEYO000048 | 02/28/84 | Letter | Fischer, Lou F. | Kurz, Charles | Re: Asbestos Case John Hannon | Relevance (FRE 402) |
| PX-72 | | AC3056191-AC0036205 | 06/07/84 | Letter | Fallon, William F. | McGowan, Thomas J. | Re: Proposed Closing of Insurance Year 1974/75 Proposed Additional Interim Assessments for Insurance Years 1980/81 1981/82 and 1982/83 and Proposed Interim Assessment for Insurance Year 1983/84 | |
| PX-73 | | AC3056447-65; AC3056708-25, AC3056726-27 | 06/14/84 | Board Minutes | | | Board of Directors Meeting, June 14, 1984 | |
| PX-74 | | KEYO00043 - KEYO00044 | 08/31/84 | Letter | Hamilton, James S. | Kurz, Charles | Re: Asbestosis Claims by American Seamen | Relevance (FRE 402) |
| PX-75 | | KEYO00045 | 08/31/84 | Other | | | Asbestosis - New York Sub-Committee Recommended Defense Counsel (Attachment to 8/31/84 letter from Hamilton to Kurz) | |
| PX-76 | | AC3057131 - AC3057390 | 12/13/84 | Board Minutes | | | Board of Directors Meeting, December 13, 1984, with all schedules | |
| PX-77 | | KEYO40853 | 12/31/84 | Financial Document | | | List of Chas. Kurz & Co. Stockholders December 31, 1984 | |
| PX-78 | AC0087A | KEYO41123 - KEYO41132 | 12/31/84 | Report | KMG Main Hurdman | | Keystone Tankship Corporation Financial Statements Years Ended December 31, 1984 and 1983, and Report of Certified Public Accountants | Relevance (FRE 402) |
| PX-79 | | KEYO40852 | 01/17/85 | Financial Document | Chas. Kurz & Co Inc | | List of Chas. Kurz & Co., Inc. Stockholders January 17, 1985 | Relevance (FRE 402) |
| PX-80 | AC0089E | AC0086306 - AC0086308 | 02/10/85 | Insurance Circular Letter | New York State Insurance Department | | Re: Filing of the Property/Casualty Risk-Based Capital Report | |
| PX-81 | | AC3057793-815; AC3058023; AC3058043-59 | 06/13/85 | Board Minutes | | | Board of Directors Meeting, June 13, 1985 | |
| PX-82 | | AC0083053 | 06/17/85 | Letter | McGowan, Thomas | Gronda, Richard F. | Re: Calculations Regarding Your Questions on the Closing of the 1975/76 Year | |
| PX-83 | AC0128 | APL006283 - APL006286 | 08/30/85 | Letter | Ray, H. | DiPalermo, John T. | Re: Asbestosis Claims International P & I Club Practices | Hearsay (FRE 802, 805) |
| PX-84 | | AC0035495 - AC0035500 | 09/30/85 | Letter | Smith, Thomas J. | McGowan, Thomas | Re: Request for Figures Checked | Hearsay (FRE 802, 805) |
| PX-85 | D0064 | KEYO00007 - KEYO00011 | 10/18/85 | Letter | Bolles, John A. | Campbell, James R. | Re: Asbestosis General, Our File: 21383 | |
| PX-86 | | KEYO00004 - KEYO00006 | 11/25/85 | Letter | Bolles, John A. | Grosso, Edward R. | Re: Asbestosis General, Our File: 21383 | Relevance (FRE 402) |
| PX-87 | | KEYO00002 - KEYO00003 | 12/05/85 | Memorandum | Grosso, Edward R. | McGowan, Thomas J. | Re: Asbestosis Claims | |
| PX-88 | | AC3058523-31; AC3058533-35 | 01/09/86 | Board Minutes | | | Board of Directors Meeting, January 9, 1986 | |

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., 04 Civ. 04309 (LAK)(JCF)

Plaintiff's Trial Exhibit List

Annotated with Defendants' Objections

| Trial Ex # | Dep Ex # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-89 | | AC0066410-AC0066411 | 04/01/86 | Report | | | Association Reserve Account | Lacks authenticity (FRE 901); Violates Best Evidence Rule (and see e.g., FRE 106, 1002) (unclear if document is complete), Hearsay (FRE 802) |
| PX-90 | AC0041 | AC0036155 - AC0036171 | 05/27/86 | Letter | Brown Jr., Richard H. J. | McGowan, Thomas | Re: Proposed Partial Refunds of Assessments for Insurance Years 1976/77 and 1977/78, Proposed Additional Interim Assessments for Insurance Years 1979/80, 1983/84, and, 1984/85, and Proposed Interim Assessment for Insurance Year 1985/86 | |
| PX-91 | | AC3058917-35, AC3059076-98 | 06/12/86 | Board Minutes | | | Board of Directors Meeting Minutes, 6/12/86 | |
| PX-92 | AC0089F | KEYO40850 - KEYO40851 | 12/31/86 | Financial Document | Chas. Kurz & Co Inc | | List of Chas. Kurz & Co., Inc. Stockholders December 31, 1986 | Relevance (FRE 402) |
| PX-93 | AC0088A | KEYO40985 - KEYO40999 | 12/31/86 | Report | KPMG Peat Marwick | | Chas. Kurz & Co., Inc. and Subsidiaries Supplemental Consolidating Financial Statements Year Ended December 31, 1986 and Report of Certified Public Accountants | Relevance (FRE 402) |
| PX-94 | AC0087B | KEY41114 - KEY041122 | 12/31/86 | Report | KMG Main Hurdman | | Keystone Tankship Corporation Financial Statements Years Ended December 31, 1986 and 1985 and Report of Certified Public Accountants | Relevance (FRE 402) |
| PX-95 | | BP001094 - BP001143 | 01/01/87 | Report | Johnson & Higgins | | Protection & Indemnity Report 1987 - 1988 | |
| PX-96 | AC0049 | FAR00289 - FAR00291 | 02/24/87 | Letter | LaPage, Richard N. | McGowan, Thomas | Re: Asbestosis - Application of Deductible | Relevance (FRE 402) |
| PX-97 | D0099 | AC0042215 - AC0042218 | 03/06/87 | Letter | McGowan, Thomas J. | Smith, Thomas J.; DiPalermo, John T.; Kurz, Charles F.; Gronda, Richard F.; Gemer, Edgar H.; Kennedy, Keith S.; Brown, Richard H.; Kurz, Adolph B. | Re: Finance Committee Meeting at Broad Street Club | |
| PX-98 | AC0129 | KEYO03726 - KEYO03727 | 03/12/87 | Memorandum | Kurz, Charles F. | | Re: P&I | |
| PX-99 | DO039 | KEYO12517 - KEYO12524, AC3059872-89, AC3060021-43, AC3060046 | 04/02/87 | Financial Document | Kurz, Charles F. TJM | | Financial Considerations Regarding Assessments and Reserve Account | |
| PX-100 | AC0060 | AC3060046 | 06/11/87 | Board Minutes | | | Board of Directors Meeting, June 11, 1987 | |
| PX-101 | AC0042 | KEYO00287 | 06/14/87 | Publication / News | Horowitz, Rose A. | | "Asbestos Claims Skyrocket." Journal of Commerce, June 14, 1987 | Relevance (FRE 402); Hearsay (FRE 802) |
| PX-102 | AC0126 | KEYO21844 - KEYO21845 | 06/22/87 | Publication / News | Horowitz, Rose A. | | "Asbestos Suits Worry Maritime Companies." Journal of Commerce, June 22, 1987 | Violates Best Evidence Rule, two documents put together; Relevance (FRE 402); Hearsay (FRE 802) |
| PX-103 | | KEYO04951 - KEYO04953 | 06/30/87 | Letter | JRC | Kurz, Charles | Re: Asbestos Litigation | |
| PX-104 | AC0044 | KEYO00278 | 07/23/87 | Publication / News | Fairplay | | "Concern mounts over increasing incidence of asbestosis claims." Fairplay, July 23, 1987 | Violates Best Evidence Rule (and see e.g., FRE 106); unclear if document is complete; Relevance (FRE 402); Hearsay (FRE 802) |
| PX-105 | AC0050 | KEYO02561 - KEYO02563 | 08/19/87 | Finance Committee Minutes | Kurz, Charles F. | | American Club Finance Committee Meeting Minutes, August 18, 1987 | Hearsay (FRE 802) |
| PX-106 | DI0180 | AC0083320 - AC0083323 | 09/03/87 | Letter | Cassedy, John H. | File | Re: Asbestos Litigation | Hearsay (FRE 802) |
| PX-107 | AC0051 | AC0017528 - AC0017553 | 09/16/87 | Memorandum Board Minutes | McGowan, Thomas J. | Board of Directors | Re: Method of Settlement of 127 Asbestos Related Cases Submitted by Members Memorandum to the Board of Directors | Hearsay (FRE 802 and 805) |

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., 04 Civ. 04309 (LAK)(JCF)
Plaintiff's Trial Exhibit List
Annotated with Defendants' Objections

| Trial Ex. # | Dep Ex. # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-108 | AC0052 | AC3060215 - AC3060231 | 09/17/87 | Board Minutes | McGowan, Thomas J. | | Minutes of the Regular Monthly Meeting of the Board of Directors of the American Steamship Owners Mutual Protection and Indemnity Association, Inc., Held at Five Hanover Square, 20th Floor, New York City on September 17, 1987 | |
| PX-109 | AC0010 | BP001420 - BP001432 | 09/17/87 | Corporation Document | Shipowners Claims Bureau Inc. American Steamship Owners Mutual Protection and Indemnity Association Inc | | American Steamship Owners Mutual Protection and Indemnity Association, Inc. By-Laws as Amended September 17, 1987 | |
| PX-110 | | KEY 000220-KEY 000225 | 10/22/87 | Letter | Murphy, Thomas O. | Grosso, Edward R. | Re: Ohio Maritime Asbestos Litigation Keystone Shipping Estimates | |
| PX-111 | | AC0080594 | 12/17/87 | Memorandum | McGowan, Thomas J. | Board of Directors | Re: Verdict on the K.C. Torrens case | |
| PX-112 | | KEY003800 - KEY003802 | 12/21/87 | Memorandum | Kurz, Charles F. | Kurz, Adolph B. | Re: American P and I Club | Relevance (FRE 402) |
| PX-113 | AC0089G | KEY040849 | 12/31/87 | Financial Document | Chas. Kurz & Co Inc | | Re: Chas. Kurz & Co., Inc. Stockholders, December 31, 1987 | |
| PX-114 | AC0088B | KEY040973 - KEY040984 | 12/31/87 | Report | KPMG Peat Marwick | | List Chas. Kurz & Co., Inc. and Subsidiaries Consolidating Financial Statements December 31, 1987 (With Audit Report Thereon) | Relevance (FRE 402) |
| PX-115 | AC0087C | KEY041105 - KEY041113 | 12/31/87 | Report | KPMG Peat Marwick | | Keystone Tankship Corporation Financial Statements December 31, 1987 and 1986 (With Audit Report Thereon) | Relevance (FRE 402) |
| PX-116 | AC0082 | KEY024067 - KEY024070 | 02/11/88 | Letter | Achurh, Charles B. | Diamond, Harry J. | Re: Keystone Shipping Co. et al., Protection & Indemnity Insurance Renewal February 20, 1988 | Relevance (FRE 402) |
| PX-117 | | AC4053451 - AC4053475 | 02/20/88 | Insurance Policy | American Steamship Owner Mutual Protection and Indemnity Association, Inc., Shipowners Claims Bureau, Inc. | | American Steamship Owners Mutual Protection and Indemnity Association, Inc. Insurance Policy | |
| PX-118 | AC0013 | KEY03551 - KEY003568 | 02/21/88 | Letter | Gallagher, Elizabeth | Diamond, Harry J. | Re: Protection and Indemnity Insurance Renewal February 20, 1986-87 | |
| PX-119 | | AC0077542 - AC0077550 | 03/07/88 | Financial Document | | | Torrens v. Farrell Lines Incorporated--Settlement Papers | |
| PX-120 | AC0012 | KEY002728 - KEY002746 | 03/08/88 | Letter | McGowan, Thomas J. | DiPalermo, John T. Germer, EH Gronda, RF Kennedy, KS Kurz, C | Re: "[M]aterial Relative to Our Planned Discussion Concerning the Closing of Insurance Years" | |
| PX-121 | DD040 | KEY002699 - KEY002706 | 03/15/88 | Finance Committee Minutes | Kurz, Charles F. | | Handwritten Notes re: American Club Finance Committee Meeting of March 15, 1988 | |
| PX-122 | DD040 | KEY011086 - KEY011099 | 03/16/88 | Board Minutes | McGowan, Thomas J. | | Minutes of the Regular Monthly Meeting of the Board of Directors of the American Steamship Owners Mutual Protection and Indemnity Association Inc Held at Five Hanover Square 20th Floor New York City on March 16, 1988 | |
| PX-123 | DD041 | KEY030933 - KEY030934 | 03/16/88 | Letter | Gronda, Richard F. | DiPalermo, John T. | Re: Alternative Proposals Regarding Decrease in Reserves, Need for Contingency Reserve and Closure of Four Open Credit Years | Relevance (FRE 402) |

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., 04 Civ. 04309 (LAK)(JCF)
Plaintiff's Trial Exhibit List
Annotated with Defendants' Objections

| Trial Ex # | Dep Ex # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-124 | AC0048 | KEY001582, KEY002719 | 03/21/88 | Letter | Cassedy, John H.; McGowan, Thomas J. | Kurz, Adolph B. | Re: Assessments | Relevance (FRE 402); Hearsay (FRE 802, 805) No objection to the document itself being a business record |
| PX-125 | | KEY002692 | 03/22/88 | Notes | Kurz, Charles F. | | Handwritten Notes re: Teleconference with Lanzalotto and McGowan and Telex Regarding Assessments | |
| PX-126 | | AC3061076 - AC3061080 | 04/11/88 | Letter | LePage, Richard N. | McGowan, Thomas J. | Re: Torrens v. Farrell Lines Proposal for Funding Settlement/Judgment | |
| PX-127 | | AC3061040-54; AC3061169-88; AC3060867 | 04/14/88 | Report | | | Board of Directors Meeting, April 14, 1988 | |
| PX-128 | AC003C | AC0083129 - AC0083130; AC0083135 - AC0083136 | 05/26/88 | Finance Committee Minutes | McGowan, Thomas J. | | Finance Committee Meeting Minutes May 26, 1988 | |
| PX-129 | AC0036 | KEY002382 - KEY002383 | 06/13/88 | Letter | Brown, Richard H. | | Re: Associations Reserve Account | Relevance (FRE 402) |
| PX-130 | AC0089H | KEY040848 | 12/23/88 | Financial Document | Chas. Kurz & Co. Inc. | | List of Chas. Kurz & Co., Inc. Stockholders December 23, 1988 | Relevance (FRE 402) |
| PX-131 | AC0088C | KEY040958 - KEY040972 | 12/31/88 | Report | KPMG Peat Marwick | | Chas. Kurz & Co., Inc. and Subsidiaries Consolidating Financial Statements and Statement of Revenue and Expense - Real Estate Operations December 31, 1988 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-132 | AC0087D | KEY041089 - KEY041104 | 12/31/88 | Report | KPMG Peat Marwick | | Keystone Tankship Corporation and Subsidiary Consolidated Financial Statements and Supplementary Schedules December 31, 1988 and 1987 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-133 | D0195 | AC0065670 - AC0065728 | 02/08/89 | Report | | | International Group of P & I Associations The 1989 Pooling Agreement | Relevance (FRE 402) |
| PX-134 | AC0207 | APL007125 - APL007145 | 03/02/89 | Contract / Agreement | Bunch, D.I. | | American President Lines, Ltd. Claims Handling Procedures, Crew Asbestosis Claims and Litigation | Relevance (FRE 402) |
| PX-135 | | AC0086353 - AC0086389 | 03/20/89 | Insurance Policy | London Steam-ship Owners' Mutual | | General Excess Loss Reinsurance Contract issued by the London Steam-Ship Owners Mutual Insurance Association Limited Issued to the American Club | Violates Best Evidence Rule (and see e.g., FRE 106, 1002)--document is incomplete |
| PX-136 | | APL007848 | 04/06/89 | Financial | American President Lines | | P 'n' L Crew Claims 2/20/86-2/20/86 | |
| PX-137 | | APL007851 | 04/06/89 | Financial | American President Lines | | P 'n' L Crew Claims 2/20/87-2/20/88 | |
| PX-138 | | APL007854 | 04/06/89 | Financial | American President Lines | | P 'n' L Crew Claims 2/20/88-2/20/89 | |
| PX-139 | | AC3062013-25; AC3062125-40 | 04/20/89 | Board Minutes | | | Board of Directors Meeting, April 20, 1989 | |
| PX-140 | | KEY002853 - KEY002855 | 09/13/89 | Finance Committee Agenda and Notes | American Club | | Finance Committee Meeting September 13, 1989 Preliminary Agenda and Handwritten Notes | |
| PX-141 | KEY004407 | | 09/18/89 | Publication / News | Ion, Edward | | "American Club Refund as 'Years Close,'" Lloyd's List, September 18, 1989 | Relevance (FRE 402); Violates Best Evidence Rule (and see e.g., FRE 106) (not clear that it is a complete document); Cumulative (FRE 403); Hearsay (FRE 802) |
| PX-142 | D0187 | AC0083098 - 0083094 | 10/01/89 | Press Release | Cassedy, John H. | | "The American Club Joins the International Group, Nation's Sole Mutual Shipowners' P&I Club Becomes Member of International Group of P&I Clubs" | |

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., 04 Civ. 04309 (LAK)(JCF)
Plaintiff's Trial Exhibit List
Annotated with Defendants' Objections

| Trial Ex # | Dep Ex # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-143 | AC0036-A | KEY002929 - KEY002947 | 11/07/89 | Memorandum | McGowan, Thomas J. | Finance Committee | Re: Attached Letters from Kirin Campbell & Keating Dealing with the London Steam Account | Relevance (FRE 402); Cumulative |
| PX-144 | | KEY002924 - KEY002927 | 11/14/89 | Letter | Brown, Richard H. | McGowan, Thomas J. | Re: Associations Reserve Account use in Connection with the London Steam-Ship Owners Mutual Insurance Associations Reinsurance Calls for 1988 / 1989 and 1989 / 1990 | |
| PX-145 | AC0054 | AC3062705 - AC3072717, AC3062818, KEY004005 | 12/14/89 | Board Minutes | McGowan, Thomas J. | | Minutes of the Regular Monthly Meeting of the Board of Directors of the American Steamship Owners Mutual Protection and Indemnity Association, Inc. Held at Five Hanover Square, 20th Floor, New York City on December 14, 1989 | Relevance (FRE 402) |
| PX-146 | AC0009I | KEY040846 | 12/31/89 | Financial Document | Chas. Kurz & Co Inc | | List of Chas. Kurz & Co., Inc. Stockholders December 31, 1989 | Relevance (FRE 402) |
| PX-147 | AC0008D | KEY040948 - KEY040957 | 12/31/89 | Report | KPMG Peat Marwick | | Chas. Kurz & Co., Inc. and Subsidiaries Supplemental Consolidating Statements and Statement of Revenue and Expense - Real Estate Operations December 31, 1989 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-148 | | AC3063171-88; AC3063349-50; AC3062929, AC3063345; AC30633353-67 | 06/14/90 | Board Minutes | | | Board of Directors Meeting, June 14, 1990 | |
| PX-149 | D0191 | KEY004471 - KEY004483 | 11/15/90 | Board Minutes | Cassedy, John H. | | Address to The Hong Kong Shipowners Association Ltd. | |
| PX-150 | | AC3063713-24 | 12/13/90 | Board Minutes | | | Board of Directors Meeting, December 13, 1990 | |
| PX-151 | AC0089J | KEY040844 - KEY040845 | 12/31/90 | Financial Document | Chas. Kurz & Co Inc | | List of Chas. Kurz & Co., Inc. Stockholders December 31, 1990 | Relevance (FRE 402) |
| PX-152 | AC0088E | KEY040939 - KEY040947 | 12/31/90 | Report | KPMG Peat Marwick | | Chas. Kurz & Co., Inc. and Subsidiaries Consolidating Schedules - Financial Statement Information Schedule of Revenue and Expense - Real Estate Operations December 31, 1990 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-153 | AC0087E | KEY041071 - KEY041088 | 12/31/90 | Report | KPMG Peat Marwick | | Keystone Tankship Corporation and Subsidiary Consolidated Financial Statements and Supplementary Schedules December 31, 1990 and 1989 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-154 | | KEY040843 | 02/21/91 | Financial Document | Chas. Kurz & Co. Inc. | | List of Chas. Kurz & Co., Inc. Stockholders February 21, 1991 | Relevance (FRE 402) |
| PX-155 | AC0089K | KEY021155-KEY021159 AC3064131-54; AC3064249; AC3064255-71 | 05/30/91 | Letter | Achuff, Charles B. | Diamond, Harry J. | Re: Timbo Shipping Ltd | Relevance (FRE 402) |
| PX-156 | | AC3064482-96 | 06/13/91 | Board Minutes | | | Board of Directors Meeting, September 13, 1991 | |
| PX-157 | | KEY004548 - KEY004551 | 12/12/91 | Letter | Smith, Thomas J. | All Members | Board of Directors Meeting, December 12, 1991 | |
| PX-158 | | | 12/17/91 | Letter | | | Re: 1992 Renewal Rates | |
| PX-159 | AC0088F | KEY040930 - KEY040938 | 12/31/91 | Report | KPMG Peat Marwick | | Chas. Kurz & Co., Inc. and Subsidiaries Consolidating Schedules - Financial Statement Information and Schedule of Revenue and Expense - Real Estate Operations December 31, 1991 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-160 | AC0087F | KEY041054 - KEY041070 | 12/31/91 | Report | KPMG Peat Marwick | | Keystone Tankship Corporation and Subsidiary Consolidated Financial Statements and Supplementary Schedules December 31, 1991 and 1990 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-161 | AC0053B | KEY021996 - KEY021997 | 01/02/92 | Fax | Craig, William A. | Campbell, R. James | Re: Cleveland Asbestos Litigation Legal Fees - October 1, 1990 to September 30, 1991 | |
| PX-162 | D0129 | AC0025546 - AC0025555 | 02/19/92 | Fax | Paul Seeth | Sandercock, John P. | Re: Response to Shipowners Claims Bureau letter of February 11, 1992 | |

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., 04 Civ. 04309 (LAK)(JCF)
Plaintiff's Trial Exhibit List
Annotated with Defendants' Objections

| Trial Ex # | Dep Ex # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-163 | | AC3065098-113; AC30652648; AC3055255-57; AC3065258-72 | 06/11/92 | Board Minutes | | | Board of Directors Meeting, June 11, 1992 | |
| PX-164 | AC0089L | KEY040841 - KEY040842 | 12/31/92 | Financial Document | Chas. Kurz & Co. Inc. | | List of Chas. Kurz & Co., Inc. Stockholders December 31, 1992 | Relevance (FRE 402) |
| PX-165 | AC0088G | KEY040921 - KEY040929 | 12/31/92 | Report | KPMG Peat Marwick | | Chas. Kurz & Co., Inc. and Subsidiaries Consolidating Schedules - Financial Statement Information and Schedule of Revenue and Expense - Real Estate Operations December 31, 1992 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-166 | AC0087G | KEY041036 - KEY041053 | 12/31/92 | Report | KPMG Peat Marwick | | Keystone Tankship Corporation and Subsidiary Consolidated Financial Statements and Supplementary Schedules December 31, 1992 and 1991 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-167 | AC0012 | KC314 - KC316 | 01/01/93 | Brochure | American Club | | The American Club Fact Sheet 1993 | |
| PX-168 | | AC3065669-77; AC3065941-9 | 01/04/93 | Board Minutes | | | Board of Directors Meeting, January 1, 1993 | |
| PX-169 | AC01140 | APL006625 - APL006643 | 05/14/93 | Letter | McGowan, Thomas J. | Finance Committee | Re: Reserve Account | |
| PX-170 | AC0070 | FAR01599 - FAR01617 | 05/14/93 | Letter | McGowan, Thomas J. | Finance Committee | Re: Reserve Account | |
| PX-171 | | BP004573 - BP004574 | 05/27/93 | Letter | Brown, Richard H. | McGowan, Thomas J. | Re: Association's Reserve Account - Use in Connection With Closing an Insurance Year (1987 / 1988) | |
| PX-172 | | AC0032997-AC0033004 | 05/28/93 | Memorandum | McGowan, Thomas J. | Finance Committee | Re: 1993 Assessment | |
| PX-173 | | AC3066196-208; AC3066224-36; AC3066378; AC3066383-89; AC3066390-93 | 06/10/93 | Board Minutes | | | Board of Directors Meeting, June 10, 1993 | |
| PX-174 | AC0080 | AC0053224 - AC0053225 | 07/16/93 | Letter | Flynn, Edward J. | Achuff, Charles B. | Re: Keystone Shipping Company et al, 1993 Interim Assessments | |
| PX-175 | D0108 | BP0027721 - BP002752 | 11/02/93 | Letter | Brown, Richard H. | McGowan, Thomas J. | Re: Prudential Lines, Inc. | |
| PX-176 | AC0022 | AC3066778 - AC3066777 | 11/03/93 | Letter | McGowan, Thomas J. | Board of Directors | Re: Loss Reserves for Claims Designated as Incurred but Not Reported | |
| PX-177 | | KEY000421 - KEY000431 | 11/03/93 | Letter | Brown, Richard H. | McGowan, Thomas J. | Re: Prudential Lines, Inc. | |
| PX-178 | D0048 | AC0086195 - AC0086251 | 11/09/93 | Legal Document | Brown, Richard H. | | Brief of Judgment Debtor and Defendant-Applicant American Steamship Owners Mutual Protection and Indemnity Association, Inc. | |
| PX-179 | | KEY022299 - KEY002304 | 12/28/93 | Legal Document | Kurz, Adolph B. | United States Bankruptcy Court Souther District of New York | Affidavits of Adolph Kurz and Charles Kurz, dated December 28, 1993, In re: Prudential Lines, Inc., Debtor, Case No. 86-B-11773(FCC) | Relevance (FRE 402); Hearsay (FRE 802) |
| PX-180 | AC0089M | KEY040839 - KEY040840 | 12/31/93 | Biographical / Personal | Chas. Kurz & Co. | | Names and Addresses | Relevance (FRE 402) |
| PX-181 | AC0088H | KEY040907 - KEY040920 | 12/31/93 | Report | KPMG Peat Marwick | | Chas. Kurz & Co., Inc. and Subsidiaries Consolidating Schedules - Financial Statement Information and Schedule of Revenue and Expense - Real Estate Operations December 31, 1993 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-182 | AC0087H | KEY041019 - KEY041035 | 12/31/93 | Report | KPMG Peat Marwick | | Keystone Tankship Corporation and Subsidiary Consolidated Financial Statements and Supplementary Schedules December 31, 1993 and 1992 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-183 | | KEY026372-KEY026379 | 01/07/94 | Memorandum | | Finance Committee | Re: Risk Based Capital (RBC) | |

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., 04 Civ. 04309 (LAK)(JCF)
Plaintiff's Trial Exhibit List
Annotated with Defendants' Objections

| Trial Ex. # | Dep Ex. # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-184 | AC0202 | APL000590 - APL000596 | 02/20/94 | Report | | | P & I Renewal | |
| PX-185 | | RHB000596 - RHB000960 | 03/09/94 | Fax | Sandercock, John P. | McGowan, Thomas J. | Re: American President Lines, Ltd. | Lacks authenticity (FRE 901) (as to handwritten portions) |
| PX-186 | AC0148 | APL006525 - APL006526 | 03/21/94 | Fax | Seeth, Paul D. | | Re: APL | |
| PX-187 | | APL006545 | 03/31/94 | Chart | American Club | | The American Club Advance Call History, 1958-1993 | |
| PX-188 | | AC0084436 | 04/01/94 | Fax | Flynn, Ed | | Re: APL - Asbestos Exposure | |
| PX-189 | | AC0053339 - AC0053350 | 11/04/94 | Letter | Brown, Richard H. | McGowan, Thomas J. | Re: Proposed Closing of Insurance Year 1989/90 Without Assessment, Final Assessment for Insurance Year 1990/91, Additional Interim Assessments for Insurance Years 1991/92, 1992/93, 1993/94, and Interim Assessment for Insurance Year 1994/95 | |
| PX-190 | | AC0086252 - AC0086253 | 11/04/94 | Letter | Velie, Franklin B; Brown, Richard H.; Kurz, Charles (American Club)/McGowan, Thomas J (American Association) | Dicola, Lee | Re: American Steamship | |
| PX-191 | | AC3503858 - AC3503859 | 12/09/94 | Letter | | Members of the Association | Vision 2000 Members of the Association | |
| PX-192 | AC0057 | APL006703 - APL006704 | 12/27/94 | Letter | Brown, Richard H. | Mirsky, Ellis R. | Re: Asbestos Claims - American Club Asbestos Claims | Hearsay (FRE 802 and 805) |
| PX-193 | | AC01940-41 | 12/28/94 | Letter | Brown, Richard H. | Mirsky, Ellis R. | Re: Asbestos Claims - American Club Asbestos Claims | Hearsay (FRE 802 and 805) |
| PX-194 | AC00809N | KEY040837 - KEY040838 | 12/31/94 | Financial Document | None | | List of Common Stockholders of Chas. Kurz & Co., Info Dec 31, 1994 | |
| PX-195 | AC00881 | KEY040894 - KEY040906 | 12/31/94 | Report | KPMG | Board of Directors | Chas. Kurz & Co., Inc. and Subsidiaries Consolidating Schedules - Financial Statement Information and Schedule of Revenue and Expense - Real Estate Operations December 31, 1994 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-196 | AC00871 | KEY041151 - KEY041167 | 12/31/94 | Report | KPMG | | Keystone Tankship Corporation and Subsidiary Consolidated Financial Statements and Supplementary Schedules December 31, 1994 and 1993 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-197 | AC008071 | AC0049138 - AC0049285 | 01/31/95 | Report | Mercer Management Consulting | American Club Shipowners Claims Bureau | Strategic Planning Project Final Report, January 31, 1995 (Vision 2000) | |
| PX-198 | AC0141 | APL006660 - APL006668, APL006557 - APL006574, KEY000356 KEY036045 - KEY036060 | 04/20/95 | Letter | McGowan, Thomas J. | Board of Directors | Re: U.S. Lines Bankruptcy | |
| PX-199 | D0053 | | 04/20/95 | Letter | McGowan, Thomas J. | | Re: U.S. Lines Bankruptcy | |
| PX-200 | D0112 | AC3503804 - AC3503805 | 05/02/95 | Finance Committee Minutes | McGowan, Thomas J. | | Finance Committee Meeting, May 2, 1995 | |
| PX-201 | AC0059 | KEY002258 - KEY002259 | 05/04/95 | Fax | American Club/American Steamship Owners Mutual Protection and Indemnity Association Inc); Shipowners Claims Bureau Inc | Brown, RH Gale, RA, Gleason, CB, Gronda, RF, Kurz, AB, Kurz, C, Lowman, GF McAllister, BA Recchiute, MC, Sa, P, Sweeney, JP, VanDwark, TV | Re: U.S. Lines Bankruptcy | Relevance (FRE 402) |

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., 04 Civ. 04309 (LAK)(JCF)
Plaintiff's Trial Exhibit List
Annotated with Defendants' Objections

| Trial Ex # | Dep Ex # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-202 | | AC0054294 - AC0054301 | 11/03/95 | Fax | Gaze, B C | McGowan, Thomas J. | Re: Closure of Policy Years--Calls Equalisation Account | Hearsay (FRE 802) as to attachment |
| PX-203 | D0074 | AC0054291 - AC0054293, AC3504104 - AC3504106, AC0083702 - AC0083710 | 12/22/95 | Memorandum | None | Finance Committee | Re: Contingency Fund | Lacks authenticity/foundation (FRE 901) |
| PX-204 | | AC0086309 - AC0086352 | 12/31/95 | Report | NAIC | | 1995 NAIC Property/Casualty Risk-Based Capital Report Including Overview and Instructions for Companies | Relevance (FRE 402) |
| PX-205 | AC0086O | KEY040835 - KEY040836 | 12/31/95 | Financial Document | None | | List of Common Stockholders Into December 31, 1995 | |
| PX-206 | AC0088J | KEY040881 - KEY040893 | 12/31/95 | Report | KPMG | | Chas Kurz & Co., Inc. and Subsidiaries Consolidating Schedules - Financial Statement Information and Schedule of Revenue and Expense - Real Estate Operations December 31, 1995 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-207 | | AC0063530 - AC0063533 | 01/01/96 | Report | American Club | | Re: The American Clubs Application to Become a Party to the Pooling Agreement-- Observations on the Coopers and Lybrand Report, the Recent Decision of the Membership Sub-Committee, and Other General Issues | Relevance (FRE 402) |
| PX-208 | D0083 | KEY037553 - KEY037580 | 01/05/96 | Memorandum | American Steamship Owners Mutual Protection and Indemnity Association Incl;Shipowners Claims Bureau,Inc. | Finance Committee | Re: Contingency Fund | |
| PX-209 | | RHB00983 - RHB000992 | 01/10/96 | Corporation Document | American Club/American Steamship Owners Mutual Protection and Indemnity Association Incl;Shipowners Claims Bureau,Inc. | | Finance Committee Meeting Agenda and Minutes, January 10, 1996 | |
| PX-210 | AC0060 | AC3504163 - AC3504164 | 01/22/96 | Letter | Gleason, CB | Brown, Richard H. | Re: American Club Reserve Account | Hearsay (FRE 802 and 805) |
| PX-211 | AC0143 | APL006616 - APL006617 | 01/22/96 | Letter | Gleason, CB | Brown, Richard H. | Re: American Club Reserve Account | Hearsay (FRE 802 and 805) |
| PX-212 | AC0061 | AC0066530 - AC0066570 | 02/01/96 | Letter | Brown, Richard H. | Gleason, CB | Re: Response to Points in January 22, 1996 Letter | Hearsay (FRE 802 and 805) |
| PX-213 | AC0144 | APL006611 - APL006615 | 02/01/96 | Letter | Brown, Richard H. | Gleason, CB | Re: Response to Letter Sent on January 22, 1996 | Hearsay (FRE 802 and 805) |
| PX-214 | AC0145 | KEY000339 | 02/27/96 | Letter | Bobb, Gerry | Kurz, Charles | Re: American Club Reserve Account | Hearsay (FRE 802 and 805) |
| PX-215 | D0017 | KEY030915 - KEY030931 | 03/08/96 | Letter | McGowan, Thomas J. | Finance Committee | Re: Contingency Fund | |
| PX-216 | D0116 | KEY037305 - KEY037308 | 04/25/96 | Finance Committee Minutes | Kurz, Charles F. | | Charles Kurz's handwritten notes re: April 25, 1996 P&I Finance Committee Meeting | Lacks authenticity (FRE 901); Violates Best Evidence Rule (and see e.g., FRE 106) (unclear if document is complete); |
| PX-217 | D0117 | KEY040207 - KEY040212 | 05/20/96 | Memorandum | McGowan, Thomas J. | Brown, RH; Gale, RA; Gleason, CB; Gronda, RF; Kurz, C | Re: Contingency Fund | Hearsay (FRE 802 and 805) |
| PX-218 | AC0063A | AC3069073 - AC3069077 | 05/30/96 | Letter | Finance Committee | Board of Directors | Re: Contingency Fund | |
| PX-219 | D0034 | AC3069023 - AC3069059 | 06/05/96 | Letter | Sandercock, John | Directors | Re: Proposed revisions to the Associations By-Laws | |
| PX-220 | D0095 | AC3069080 - AC3069088 | 06/06/96 | Letter | Brown, Richard H. J. | McGowan, Thomas J. | Re: Proposed Closing of Insurance Year 1992/93 | |

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., 04 Civ. 04309 (LAK)(JCF)
Plaintiff's Trial Exhibit List
Annotated with Defendants' Objections

| Trial Ex # | Dep Ex # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-221 | | AC3068996-AC3069269 | 06/13/96 | Board Minutes | | | Board of Directors Meeting, June 13, 1996, with all schedules Minutes of the Regular Meeting of the Board of Directors of the American Steamship Owners Mutual Protection and Indemnity Association, Inc., Held at the New York Yacht Club 37 West 44th Street, New York City, on June 13, 1996 | Cumulative (FRE 403) of below exhibit |
| PX-222 | AC063 | AC3068999 - AC3069093 | 06/13/96 | Board Minutes | McGowan, Thomas J. | | | |
| PX-223 | | AC063548 | 10/23/96 | Fax | Comer, David | Hughes, Joseph E. | Re: Application of the American Club for Full Membership of the Pool | |
| PX-224 | D0209 | AC032804 - AC032805 | 10/25/96 | Fax | Hughes, Joseph E. | Comer, David D.S. | Re: Message of October 23 Raising Two Technical Issues on the Club's Proposed By-Laws | |
| PX-225 | AC0089P | KEY040833 - KEY040834 | 12/31/96 | Financial Document | Chas. Kurz & Co Inc | | Consolidated Stockholders Info December 31, 1996 | Relevance (FRE 402) |
| PX-226 | AC0088K | KEY040871 - KEY040880 | 12/31/96 | Report | KPMG | | Chas. Kurz & Co., and Subsidiaries Consolidating Schedules - Financial Statement Information December 31, 1996 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-227 | AC0087J | KEY041133 - KEY041150 | 12/31/96 | Report | KPMG | | Keystone Tankship Corporation and Subsidiary Consolidated Financial Statements and Supplementary Schedules December 31, 1996 and 1995 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-228 | AC0089Q | KEY040831 - KEY040832 | 12/31/97 | Financial Document | Chas. Kurz & Co Inc | | List of Chas. Kurz & Co., Inc. Stockholders Common Stock Dec. 31, 1997 | Relevance (FRE 402) |
| PX-229 | AC0088L | KEY040864 - KEY040870 | 12/31/97 | Report | KPMG | | Chas. Kurz & Co., Inc. and Subsidiaries Consolidating Schedules - Financial Statement Information December 31, 1997 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-230 | AC0087K | KEY041000 - KEY041018 | 12/31/97 | Report | KPMG | | Keystone Tankship Corporation and Subsidiary Consolidated Financial Statements and Supplementary Schedules December 31, 1997 and 1996 (With Independent Auditors Report Thereon) | Relevance (FRE 402) |
| PX-231 | AC0204 | APL000336 - APL000337 | 07/28/98 | Letter | Manske, Irene | Craig, William | Re: John T. Hannon et al c/w Fredrick Naumann Flight No. 33 Case Nos. 80-2275(E2) and 91-0804 | |
| PX-232 | AC0205 | APL000480 - APL000481 | 08/28/98 | Letter | Manske, Irene | Craig, William | Re: Robert (William) Fisher v. APL SFSC Case No. 963843 (Brayton) | |
| PX-233 | | AC048989 - AC048998 | 11/11/98 | Letter | Brown, Richard H. | McGowan, Thomas J. | Re: Proposed Closing of Insurance Year 1995/96, Proposed Additional Interim Assessment for Insurance Year 1996/97, and Proposed Interim Assessment for Insurance Year 1998/99 | |
| PX-234 | D0059 | | 12/31/98 | Corporation Document | American Club | | 1997-98 By-Laws and Rules | |
| PX-235 | | AC0070722 - AC0070765 | 01/01/99 | Corporation Document | American Steamship Owners Mutual Protection and Indemnity Association Inc | | By-Laws of the American Steamship Owners Mutual Protection and Indemnity Association Inc, 1998-1999 | |
| PX-236 | | AC0070766 - AC0070842 | 01/01/99 | Corporation Document | American Steamship Owners Mutual Protection and Indemnity Association Inc | | By-Laws and Rules 1999-2000 | |
| PX-237 | | AC0033508 - AC0033511 | 02/12/99 | Letter | Schaller, Seth B. | Fisher, Phil | Re: Letter attaching Article 'When Losses Span Several Policy Years - Second Circuit Rejects Allocation in Asbestos Cases | Relevance (FRE 402) |
| PX-238 | AC0084 | AC0086558 - AC0086634 | 02/20/00 | Rules | The American Club | | 2000-2001 By-Laws and Rules | |
| PX-239 | | AC0086635 - AC0086746 | 02/20/00 | Rules | | | 2000 Rules and By-Laws of the UK P&I Club | Lacks authenticity/foundation (FRE 901); Relevance (FRE 402) |

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., Inc, 04 Civ. 04309 (LAK)(JCF)
Plaintiff's Trial Exhibit List
Annotated with Defendants' Objections

| Trial Ex # | Dep Ex # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-240 | | AC0032599-AC0032605 | 06/08/00 | Letter | Brown, Richard H. | McGowan, Thomas J. | Re: Proposed Closing of Insurance Year 1996 / 1997 Without Further Assessment and With a Refund | |
| PX-241 | | AC0081771 | 05/02/01 | Billing / Invoice | American Steamship Owners Mutual Protection and Indemnity Association Inc | Union Carbide Corporation c/o Aon Risk Services Inc of New York | Invoice Number 199700702 in the Amount of $121,917.96 for Release Call $487,671.84 X 25% | |
| PX-242 | | AC0081772 | 05/02/01 | Billing / Invoice | American Steamship Owners Mutual Protection and Indemnity Association Inc | Union Carbide Corporation c/o Aon Risk Services Inc of New York | Invoice Number 199801481 in the Amount of $17,189.19 for Release Call $68,756.75 x 25% | |
| PX-243 | | AC0081773 | 05/02/01 | Billing / Invoice | American Steamship Owners Mutual Protection and Indemnity Association Inc | Union Carbide Corporation c/o Aon Risk Services Inc of New York | Invoice Number 199902436 in the Amount of $25,674.30 for Release Call $102,697.20 x 25% | |
| PX-244 | | AC0081774 | 05/02/01 | Billing / Invoice | American Steamship Owners Mutual Protection and Indemnity Association Inc | Union Carbide Corporation c/o Aon Risk Services Inc of New York | Invoice Number 200004166 in the Amount of $24,864.08 for Release Call $99,456.34 x 25% | |
| PX-245 | | AC0047094 - AC0047129 | 06/01/01 | Report | Brown, Richard H. | Hughes, Joseph E. | A strategy for the American Club in succession to Vision 2000 | |
| PX-246 | | AC0065979-AC0065985 | 06/08/01 | Letter | Ratti, J., Dougherty, CK | Union Carbide Corporation | Re: Proposed Closing of Insurance Year 1997/98 With Assessment or a Refund | |
| PX-247 | | 000015 | 06/20/01 | Billing/Invoice | Ratti, J., Dougherty, CK | Union Carbide Corporation | Invoice Number 1000000287010 | |
| PX-248 | | 000016 | 06/20/01 | Billing/Invoice | Ratti, J., Dougherty, CK | Union Carbide Corporation | Invoice Number 1000000287000 | |
| PX-249 | | 000017 | 06/20/01 | Billing/Invoice | Ratti, J., Dougherty, CK | Union Carbide Corporation | Invoice Number 1000000287180 | |
| PX-250 | | 000018 | 06/20/01 | Billing/Invoice | Ratti, J., Dougherty, CK | Union Carbide Corporation | Invoice Number 1000000287130 | |
| PX-251 | D0252 | AC0084369 - AC0084377 | 01/15/02 | Memorandum | Acquistion, Raymer, Foley, Vincent J. | Agresti, Bob | Re: Farrell Lines Inc. - Meeting With American Club Concerning Asbestos Claims Coverage and Potential Liability File No. 508178.00032 | Hearsay (FRE 802) |
| PX-252 | AC0090 | | 02/25/02 | Legal Document | Schafer, Seth B. ☐Han, Marjorie Proskauer, Rose | United States District Court Southern District of New York | Complaint, Keystone Shipping Co. v. American Steamship Owners Mutual Protection and Indemnity Association, Inc. Case No 02 cv 1477 (LAK) | |
| PX-253 | AC0091 | | 03/01/02 | Legal Document | Brown, Richard H. | United States District Court Southern District of New York | Answer and Counterclaims, Keystone Shipping Co. v. American Steamship Owners Mutual Protection and Indemnity Association, Inc. Case No 02 cv 1477 (LAK) | |
| PX-254 | | AC0070014 - AC0070016 | 02/23/04 | Letter | Mattioni, Dante | Belinske, Frank | Re: Timothy J. Farley v Keystone Shipping et al | |
| PX-255 | | AC0070006 - AC0070007 | 02/26/04 | Letter | Mattioni, Dante | Belinske, Frank | Re: Timothy J. Farley v Keystone Shipping et al | |

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., 04 Civ. 04309 (LAK)(JCF)
Plaintiff's Trial Exhibit List
Annotated with Defendants' Objections

| Trial Ex # | Dep Ex # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-256 | D0025 | AC0071321 - AC0071325 | 05/18/04 | Letter | Hughes, Joseph E. | American Steamship Owners Mutual Protection and Indemnity Association, Inc | Re: Notice of Special Meeting to Consider Changing the Clubs Discretionary Practice of Reimbursing Members With Respect to Unknown and Unreserved Claims Arising in Closed Insurance Years before February 20, 1989 | |
| PX-257 | | AC0085775 - AC0085817 | 05/18/04 | Letter | Bowles, Lawrence J. | Hughes, Joseph E. | Re: Keystone Shipping Co. v. American Club and Changing the Clubs Discretionary Practice of Reimbursing Members with Respect to Unknown and Unreserved Claims Arising in Closed Insurance Years Before February 20, 1989, with enclosures | |
| PX-258 | D0026 | KEY024167 - KEY024172 | 06/07/04 | Letter | Hughes, Joseph E. | Members of the Association | Re: Circular No. 14/04 Changing the Clubs Discretionary Practice of Reimbursing Members in Respect of Unknown and Unreserved Claims Arising in Closed Policy Years Prior to 1989 | |
| PX-259 | AC0053A | KEY007935 - KEY007936 | 06/17/04 | Letter | Brodskaya, Anna | Bowles, Lawrence J. | Re: Keystone Shipping Co. v. American Steamship Owners Mutual Protection and Indemnity Association, Inc., S.D.N.Y. Case No. 02-CV-1477 (LAK) | |
| PX-260 | | AC0089548 - AC0089553 | 07/08/04 | Contract / Agreement | American Steamship Owners Mutual Protection and Indemnity Association Inc.; Bowles, Lawrence J (Nourse and Bowles) | | Confidential Agreement between the American Steamship Owners Mutual Protection and Indemnity Association Inc and Keystone Shipping Company and its Related Entities | Inadmissible as settlement agreement (FRE 408) |
| PX-261 | D0210 | AC0032153 - AC0032158 | 07/09/04 | Letter | Hughes, Joseph E. | Groom, AJ | Re: The American Club's Declaratory Judgment Action | Relevance (FRE 402) |
| PX-262 | D0211 | AC0032162 - AC0032164 | 10/07/04 | Memorandum | Hughes, Joseph E. | The Finance Committee | Re: The Payment of Unreported and Unreserved Claims in Closed Policy Years from Funds in the Open Policy Years - A Rule Change | |
| PX-263 | D0212 | AC0043285 - AC0043289 | 10/26/04 | Memorandum | Hughes, Joseph E. | The Board of Directors | Re: Rule Changes for the 2005 Policy Year | |
| PX-264 | D0214 | AC0043290 - AC0043291 | 10/29/04 | Memorandum | Hughes, Joseph E. | The Board of Directors | Re: Rule Changes 2005 Policy Year | |
| PX-265 | D0213 | AC0077218 | 12/16/04 | E-mail | Hughes, Joseph E.; Metzroth, Veit | | Re: American Club Circular No. 27/04 | |
| PX-266 | D0071 | AC0083702 - AC0083710 | 12/31/04 | Surplus Statements | American Steamship Owners Mutual Protection and Indemnity Association Inc | | Surplus Statement For the Quarter Ended December 31, 2004 Preliminary | |
| PX-267 | D0021 | AC0083411 - AC0083701 | 01/01/05 | Corporation Document | American Club | | 2005/06 The American Club By-Laws, Rules & List of Correspondents | |
| PX-268 | | RHB000674 - RHB000675 | 03/21/05 | Email | Hughes, Joseph E. | Bowles, Lawrence J | Re: Asbestosis claims etc | Relevance (FRE 402) |
| PX-269 | | RHB000432 - RHB000434 | 04/08/05 | Letter | Hughes, Joseph E. | Groom, AJ | Re: Asbestosis Claims etc | Relevance (FRE 402) |
| PX-270 | | AC0080935 - AC0081215 | 04/14/05 | Chart | American Steamship Owners Mutual Protection and Indemnity Association Inc. | | American Steamship Owners Mutual Protection and Indemnity Association, Inc. Summary of Policies from December 31, 1944 through December 31, 1945 | Lacks Foundation; Inaccurately reflects the underlying documentation |
| PX-271 | D0215 | | 05/09/05 | E-mail | Groom, Alistair | Hughes, Joseph E. | Re: Asbestos Claims Etc. | Relevance (FRE 402) |

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., 04 Civ. 04309 (LAK)(JCF)
Plaintiff's Trial Exhibit List
Annotated with Defendants' Objections

| Trial Ex # | Dep Ex # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-272 | D0216 | | 05/12/05 | Letter | Hughes, Joseph E. | Groom, AJ | Re: Asbestosis Claims, Etc. | Relevance (FRE 402) |
| PX-273 | | AC0084353 | 05/24/05 | Email | Groom, Alistair | Hughes, Joseph E. | Re: asbestosis etc | Relevance (FRE 402) |
| PX-274 | | | 06/01/05 | Circular | Liverpool & London P & I Management Limited | | Review of Policy Years | Lacks authenticity (FRE 901); Relevance (FRE 402); Hearsay (FRE 802) |
| PX-275 | AC0085 | AC0086390 | 06/14/05 | Pleading | Sullivan, Michael T. Stein, Mitchell C. | | Notice of Deposition of Defendant Keystone Shipping Co. | |
| PX-276 | AC0092 | | 06/14/05 | Financial Document | American Steamship Owners Mutual Protection and Indemnity Assoc Inc | | Surplus Balance for Policy Years 1940 - 1988 | Lacks Foundation; inaccurately reflects the underlying documentation |
| PX-277 | AC0208 | APL006873 - APL006874 | 07/22/05 | Financial Document | | | American President Lines - Claims Summary Report From 1/1/1960 to 7/22/2005 | |
| PX-278 | | | 10/31/05 | Pleading | Bowles, Lawrence J. (Nourse & Bowles, LLP) | | Plaintiff's Second Supplemental Request For Production of Documents to Defendant American President Lines | Relevance (FRE 402) |
| PX-279 | | | 10/31/05 | Pleading | Bowles, Lawrence J. (Nourse & Bowles, LLP) | | Plaintiff's Supplemental Interrogatories Addressed To Defendant American President Lines, Inc. | Relevance (FRE 402) |
| PX-280 | | | 12/09/05 | Pleading | Marks, James V. (Holland & Knight, LLP) | | Defendant's American President Lines, Ltd.'s Response to Plaintiff's Second Supplemental Request for Production of Documents | Relevance (FRE 402) |
| PX-281 | | | 12/09/05 | Pleading | Marks, James V. (Holland & Knight, LLP) | | Defendant's American President Lines, Ltd.'s Responses and Objections to Plaintiff's Supplemental Interrogatories | Relevance (FRE 402) |
| PX-282 | | AC0086801-921 | 12/31/05 | Report | The American Club | | Annual Statement of the American Club to the Insurance Department of the State of New York | |
| PX-283 | | AC0085981 - AC0086194 | 01/01/06 | Rules | The American Club | | 2006/2007 The American Club By-Laws, Rules & List Of Correspondents | |
| PX-284 | | AC0086255A, AC0086255 - AC0086294 | 02/20/06 | Chart | The American Club | | American Club List of Members, 2/20/89-2/20/06 | Lacks Foundation (and see FRE1006); Relevance (FRE 402) |
| PX-285 | | AC0086264 | 03/06/06 | Article | Surowieki, James; The New Yorker | | Asbestos, Inc. The New Yorker, March 6, 2006 | Relevance (FRE 402) |
| PX-286 | | AC0086295 - AC0086296 | 03/20/06 | Financial | Kevin G. Maher, S&P | | "American Steamship Owners Mutual P & I Assoc. Inc. Rating lowered to B+ and placed on CreditWatch Negative due to losses reported in 2005" | Relevance (FRE 402); Hearsay (FRE 802) |
| PX-287 | AC0086747 | | 03/29/06 | Chart | American Steamship Owners Mutual Protection and Indemnity Association, Inc. | | Income from Non-Assessable Business | Lacks Foundation (and see FRE1006); Relevance (FRE 402) |

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., 04 Civ. 04309 (LAK)(JCF)
Plaintiff's Trial Exhibit List
Annotated with Defendants' Objections

| Trial Ex # | Dep Ex # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-288 | | AC0086748 | 03/29/06 | Chart | American Steamship Owners Mutual Protection and Indemnity Association, Inc. | | Defendants' Responses to Plaintiff's First and Second Set of Interrogatories Concerning Pending Occupational Disease Claims | Chart is vague and ambiguous as it is not clear what is meant by "Pending"; Chart lacks foundation and is inaccurate as it inaccurately reflects the underlying documentation, "711" for example, without limitation, "711" for Alcoa, which is inaccurate, "2,356" for MTL, which should be "2,536"; "17" listed for Apex is also inaccurate, there is also a blank for U.S. Lines which is unclear as to whether it should be "0", ... |
| PX-289 | | AC0086753 | 03/29/06 | Chart | American Steamship Owners Mutual Protection and Indemnity Association, Inc. | | Dates of Membership of Certain Pre-February 20, 1989 Members | Lacks Foundation (and see FRE1006); Lacks authenticity (FRE 901); Relevance (FRE 402) |
| PX-290 | | AC0086754 - AC0086755 | 03/29/06 | Chart | American Steamship Owners Mutual Protection and Indemnity Association, Inc. | | Assessments and Refunds to Pre-1989 Members | Lacks Foundation (and see FRE1006); (FRE 901); Relevance (FRE 402) |
| PX-291 | | AC0086756 | 03/29/06 | Chart | American Steamship Owners Mutual Protection and Indemnity Association, Inc. | | Use of Reserve Account for Stoploss Provisions | Chart is inaccurate and does not include all payments for stop loss premiums from the reserve account, for example, the premium payment of 1989/90 is not listed, see AC 3061692 ff. |
| PX-292 | | AC0086757 - AC0086769 | 03/29/06 | Chart | American Steamship Owners Mutual Protection and Indemnity Association, Inc. | | Occupational Disease Claims for Policy Years 1940-1988 Paid After Years were Closed Based on Available Data through 12/31/04 (Sorted by Member) (Updated) | Lacks Foundation (and see FRE1006) |
| PX-293 | | AC0086770 - AC0086780 | 03/29/06 | Chart | American Steamship Owners Mutual Protection and Indemnity Association, Inc. | | Occupational Disease Claims for Policy Years 1940-1988 Paid After Years were Closed Based on Available Data through 12/31/04 (Sorted by Claimant) (Updated) | Lacks Foundation (and see FRE1006) |
| PX-294 | | AC0086781 - AC0086794 | 03/29/06 | Chart | American Steamship Owners Mutual Protection and Indemnity Association, Inc. | | Occupational Disease Claims for Policy Years 1940-1988 Paid After Years were Closed Based on Available Data through 12/31/04 (Sorted by Policy Year) (Updated) | Lacks Foundation (and see FRE1006) |

American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Co., 04 Civ. 04309 (LAK)(JCF)

Plaintiff's Trial Exhibit List

Annotated with Defendants' Objections

| Trial Ex # | Dep Ex # | Bates Range | Document Date | Document Type | Author | Recipient | Document Subject/Title | Objections |
|---|---|---|---|---|---|---|---|---|
| PX-295 | | AC086795 | 04/03/06 | Chart | American Steamship Owners Mutual Protection and Indemnity Association, Inc. | | Positions Held by Members of the Kurz Family on the American Club Board and Finance Committee -- 1937-1997 | Lacks foundation and is inaccurate |
| PX-296 | | AC086796 | 04/03/06 | Chart | American Steamship Owners Mutual Protection and Indemnity Association, Inc. | | Farrell Lines Executives on the American Club Board and Finance Committee in the 1980s | Lacks foundation and is inaccurate |
| PX-297 | | AC086797-99 | 04/05/06 | Chart | American Steamship Owners Mutual Protection and Indemnity Association, Inc. | | Accumulation of American Club Reserves and Certain Payments Therefrom | Lacks foundation, inaccurate as to the amount for 1947, vague as to various descriptions/headings of chart, confusing, incomplete and thus violates Best Evidence Rule, Relevance (FRE 402) |
| PX-298 | | AC086800 | 04/05/06 | Chart | American Steamship Owners Mutual Protection and Indemnity Association, Inc. | | Transfer of Funds To and From the Contingency Fund in Connection with the Closing of Policy Years 1989-2001 | Lacks Foundation (and see FRE 1006) |
| PX-299 | AC0229 | AC008431-239 | | Report | American Steamship Owners Mutual Protection and Indemnity Association, Inc. | | Treaty Reinsurer Report | |
| PX-300 | | ACI400001-ACI4057645 | | | | | American Club Insurance Policies 1944-1989 | |
| PX-301 | AC0209 | APL006872 | | Financial Document | | | American Club Recoveries | |
| PX-302 | | | | Privilege Log | | | Privilege Log of Defendant American President Lines, American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Alcoa Steamship Company, 04 CV 4309 (LAK)(JCF) | Relevance (FRE 402) |

# *Appendix 2*

**Defendants' List of Exhibits with Plaintiff's Objections**

**Appendix 2**

*Am. Steamship Owners Mut. Protection & Ind. Ass'n Inc. v. Alcoa Steamship et al.,*
*Case No. 04-CV-4309 (S.D.N.Y.)(LAK) (FM)*

**Defendants' Trial Exhibits**

LEGEND TO PLAINTIFF'S OBJECTIONS

1. Authenticity
2. Foundation
3. Hearsay
4. Relevance & Materiality
5. Cumulative

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) of Plaintiff |
|---|---|---|---|---|---|
| DX-A | | 03/09/17 | AC By-Laws | AC0051792-820 | 4 |
| DX-B | | 04/01/18 | AC By-Laws | AC0051753-91 | 4 |
| DX-C | | 06/09/24 | AC By-Laws | AC0079986-80002 | 4 |
| DX-D | | 02/20/34 | AC By-Laws | AC0051836-73 | 4 |
| DX-E | | 02/20/35 | AC By-Laws | AC0051922-63 | 4 |
| DX-F | | 07/15/36 | AC By-Laws | AC0051964-2002 | 4 |
| DX-G | | 07/08/37 | Minutes of Board Meeting | AC303093-8 | 4 |
| DX-H | | 02/20/38 | AC By-Laws | AC0052003-41 | |
| DX-I | | 10/13/39 | Minutes of Board Meeting | AC3005538-45 | |
| | | | | AC305582-6 | |
| DX-J | | 02/20/40 | AC By-Laws | AC0052042-80 | |
| DX-K | | 02/20/41 | AC By-Laws | AC0052081-120 | |
| DX-L | | 07/10/41 | AC By-Laws | AC0052121-60 | |
| DX-M | | 06/20/42 | AC By-Laws | AC0052456-72 | |
| DX-N | | 10/13/42 | AC By-Laws | AC0052161-74 | |
| DX-O | | 01/05/56 | Kirlin opinion re: non-assessable business (financing) | AC3010618-25 | |
| DX-P | | 02/09/56 | AC By-Laws | AC0051821-35 | |
| DX-Q | | 04/08/57 | Kirlin opinion re: closing of years; excess of assessment (requirement as to refunds) | AC0034990-5 | |
| DX-R | | 07/06/57 | AC By-Laws | AC0080165-77 | |
| DX-S | | 11/20/57 | AC By-Laws | AC0051892-905 | |

1

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) of Plaintiff |
|---|---|---|---|---|---|
| DX-T | | 05/08/58 | AC By-Laws | AC0080152-64 | |
| DX-U | | 11/12/59 | Kirlin opinion re: proposed interim assessments for 1957 and 1958 | AC3017068-75 | |
| DX-V | | 03/31/60 | Kirlin opinion re: WARTIMEPANDI agreements, proposed closing accord (treatment of net profits) | AC3500537-46 | |
| DX-W | | 09/30/61 | AC By-Laws | AC0070580-7 | |
| DX-X | | 03/16/65 | AC By-Laws | AC0079972-84 | |
| DX-Y | | 1968 | The Britannia Steamship Insurance Assoc. Ltd. Rules | | |
| DX-Z | | 01/12/68 | The Britannia Steamship Insurance Assoc. Ltd. Memo | | 1, 2, 3, 4 |
| DX-AA | | 01/12/68 | The Britannia Steamship Insurance Assoc. Ltd.'s Memorandum and Articles of Association Rules of Class 3-Protection and Indemnity (Circular) | | 1, 2, 3, 4 |
| DX-AB | | 10/16/68 | Britannia Steam Ship Insurance Assoc. Ltd. Meeting Agenda | | 1, 2, 3, 4 |
| DX-AC | Def. Ex. 4 | 03/27/69 | Letter from NY Insurance Dept. to AC | KEY001300 | 4 |
| DX-AD | | 02/18/72 | AC By-Laws | AC0070588-95 | 4 |
| DX-AE | Def. Ex. 177 | 02/74 | Booklet "Meet Shipowners Claims Bureau" | KEY026996-7004 | 2,4 |
| DX-AF | Def. Ex. 179 | 06/22/78 | L. Gusmano memo to W. Fallon attaching 06/25/75 opinion re: reserve account | AC0039978-88 | 4 |
| DX-AG | | 1978 | 1978 Rules of the Liverpool and London Steamship Company | | 1, 2, 3, 4 |
| DX-AH | | 1980 | 1980 Rules of the Liverpool and London Steamship Company | | 1, 2, 3, 4 |
| DX-AI | | 11/13/80 | J. Cassedy memo for the Board meeting re: proposed use of reserve account to cover premiums for stop loss program | AC 3051840-4 | 4 |

2

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) of Plaintiff |
|---|---|---|---|---|---|
| DX-AJ | | 02/05/81 | AC By-Laws | AC0034875-87 | 4 |
| DX-AK | AC Ex. 124 | 04/30/81 | J. Cassedy letter to R. Tavrow attaching statement of policy on conflict of interest | APL003142-6 | 4 |
| DX-AL | Def. Ex. 6 | 09/09/82 | Minutes of Board Meeting and attached Memo on Asbestos Claims | KEY010547-64 | 4 |
| DX-AM | Def. Ex. 94 | 10/15/85 | Kirlin letter to T. McGowan re: reconsideration of 06/12/85 opinion re: effects and consequences of proposed 1975/76 closing | AC0035453-6 | 4 |
| DX-AN | Def. Ex. 38 | 03/25/86 | J. Di Palermo letter to T. McGowan re: advice re: Charter and By-Laws and recommendation of amendments | KEY031523-4 | 4 |
| DX-AO | Brown Ex. 13 | 03/31/86 | Memo re: Association Reserve Account | RHB00883-4 | |
| DX-AP | | 04/30/86 | AC statement of policy on conflict of interest with attached declaration signed by C. Kurz II and cover letter from T. McGowan | KEY018002-6 | 4 |
| DX-AQ | Def. Ex. 100 | 03/20/87 | R. Brown memo re: coverage Torrens case | AC0040172-3 | 4 |
| DX-AR | Def. Ex. 11 | 09/11/87 | Kirlin opinion on asbestosis coverage and deductibles | KEY004726-49 | |
| DX-AS | Def. Ex. 10 | 09/16/87 | T. McGowan memo to the Board re: multiple deductible approach | | |
| DX-AT | Def. Ex. 43 | 09/17/87 | AC By-Laws | BP001420-32 | |
| DX-AU | Def. Ex. 91 | 12/31/87 | Surplus statement | BP001493-509 | |
| DX-AV | Def. Ex. 46 | 1988 | Coopers & Lybrand Report re: recommended IBNR reserves | KEY002843-9 | 4 |
| DX-AW | Def. Ex. 42 | 03/21/88 | J. Cassedy and T. McGowan telex to Finance Comm. | KEY032000 | |
| DX-AX | Def. Ex. 184 | 04/08/88 | C. Kurz, II letter to J. Cassedy re: reserve for occupational / health hazard claims, enclosing April-May 1988 issue of PROCEEDINGS published by the USCG | KEY000205-15 | |
| DX-AY | Def. Ex. 44, 92 | 04/29/88 | T. McGowan letter, attaching minutes of 04/14/88 Board Meeting | KEY019117-52 | 4 |

3

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) of Plaintiff |
|---|---|---|---|---|---|
| DX-AZ | | 05/24/88 | Johnson & Higgins letter to D. Davies with attached 05/18/88 Ray, Robinson report re: C. Bombok claim | CLIFFS0164-5 | 4 |
| DX-BA | AC Ex. 36-D | 06/16/88 | Minutes of Board Meeting | AC3060895-907 | 4 |
| DX-BB | Def. Ex. 185 | 07/07/88 | C. Kurz, II letter to J. Cassedy, attaching article in The Marine Journal, "Mishandled asbestos suits dismissed" and other materials | KEY000202-15 | 4 |
| DX-BC | Def. Ex. 160 | 10/05/88 | J. Scalia letter to W. Craig re: M. Stewart asbestosis claim | AC0083333 | 4 |
| DX-BD | | 10/26/88 | T. Murphy letter to E. Grosso | KEY 000514-515 | 1, 2, 3, 4 |
| DX-BE | Def. Ex. 101 | 11/30/88 | T. McGowan letter to S. Skouras re: Prudential indebtedness | AC0039174-5 | 4 |
| DX-BF | | 1988-89 | Example of 1988-89 Policy (without endorsements) | AC4053847-58 | |
| DX-BG | Def. Ex. 126 | 05/25/89 | J. Sandercock letter to Prudential re: 1989 interim assessments and assessment refunds | AC0036307-8 | 4 |
| DX-BH | AC Ex. 72 | 09/13/89 | Minutes of Finance Comm. Meeting | AC3503249 AC004041-2 | |
| DX-BI | Def. Ex. 183 | 09/13/89 | J. Cassedy letter to K. Patteson (Britannia) re: financial impact of asbestosis cases | AC0083327 | |
| DX-BJ | Def. Ex. 127 | 10/12/89 | Minutes of Finance Comm. Meeting with attachments | AC3503242-8 | |
| DX-BK | Def. Ex. 128 | 10/12/89 | C. Kurz II handwritten notes from Finance Comm. Meeting | KEY002948-50 | |
| DX-BL | Def. Ex. 102 | 05/29/90 | Kirlin letter to Wilmer, Cutler re: AC's position in connection with Prudential Lines bankruptcy | AC0033947-9 | |
| DX-BM | | 10/18/90 | Johnson & Higgins letter to Cleveland-Cliffs re: C. Bombok and R. Minton asbestosis claims | CLIFFS0266 | 4 |
| DX-BN | Def. Ex. 61 | 12/13/90 | T. McGowan deposition in *Mathiasen v. AC* | AC0065841-74; AC0065886-925 | 4 |

4

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) of Plaintiff |
|---|---|---|---|---|---|
| DX-BO | | 12/31/90 | AC Financial Statements as of 12/31/90 and 12/31/89 by Deloitte & Touche | AC0016830-43 | |
| DX-BP | AC Ex. 11 | 02/20/91 | AC policy (Specimen) | | |
| DX-BQ | Def. Ex. 104 | 03/13/91 | Manager's memo to the Board, attaching Kirlin opinion re: Trinidad/Mathiasen (Apex) asbestos claims | AC3064109-25 | 4 |
| DX-BR | Def. Ex. 103 | 03/21/91 | Minutes of Board meeting | AC3063936-51 | |
| DX-BS | Def. Ex. 93 | 04/04/91 | Order approving attached stipulation between Trinidad Corporation and Mathiasen's Tanker Industries, Inc. and AC | AMT 00001-36 | 4 |
| DX-BT | | 05/31/91 | Kirlin opinion re: closing of insurance year 1985/86 | AC3064258-71 | |
| DX-BU | AC Ex. 136 | 06/13/91 | Minutes of Board Meeting with various attachments | AC3064131-54 AC3064255-71 | |
| DX-BV | Def. Ex. 111 | 11/12/91 | A. Kellman letter to R. Brown re: Prudential Lines, comments on draft of agreed statement of facts | AC003788-90 | |
| DX-BW | Def. Ex. 109 | 11/13/91 | R. Brown fax to A. Kellman re: Prudential Lines, attaching redraft of agreed statement of facts | AC003774-87 | 4 |
| DX-BX | | 11/20/91 | Agreed statement of facts in *In re Prudential Lines* | | 4 |
| DX-BY | Def. Ex. 5 | 11/20/91 | T. McGowan affidavit in *In re Prudential Lines* | | 4 |
| DX-BZ | Def. Ex. 130 | 06/01/92; 05/29/92 | R. Brown faxes to J. Sandercock re: proposed revisions to the assessment letter | AC0033104-5 | 4 |
| DX-CA | Def. Ex. 163 | 06/01/92 | W. Craig memo re: meeting on present status of asbestosis cases | KEY000467 | |
| DX-CB | Def. Ex. 106 | 05/27/93 | R. Brown fax to T. McGowan attaching suggested letter re: AC reserve account use in connection with closing 1987/88 | AC0032965-88 | |
| DX-CC | Def. Ex. 47 | 05/28/93 | T. McGowan fax to Finance Comm. re: 1993 assessment | KEY001502-8 | |
| DX-CD | Def. Ex. 146 | 06/30/93 | T. McGowan letter, attaching minutes of 6/10/93 Board Meeting | KEY015564-77 | |

5

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) of Plaintiff |
|---|---|---|---|---|---|
| DX-CE | Def. Ex. 167 | 02/25/94 | W. Craig memo to file re: asbestosis lawsuits | AC0019404-9 | 4 |
| DX-CF | | 04/26/94 | J. Sandercock letter to Deloitte & Touche re: AC's exposure to environmental liabilities | AC0079512-5 | 4 |
| DX-CG | | 11/10/94 | Minutes of Board Meeting | AC3067647-58 | |
| DX-CH | Def. Ex. 193 | 11/10/94 | Strategic Planning Project by Mercer Management – draft final presentation to AC Board | KEY032283-316 | 4 |
| DX-CI | Def. Ex. 50 | 12/12/94 | Willcox letter to T. McGowan re: AC loss reserve portfolio transfer | KEY039638-41 | |
| DX-CJ | AC Ex. 56 | 01/06/95 | Kirlin letter to T. McGowan and W. Craig re: USL Reorganization Trust | AC3068013-8 | |
| DX-CK | | 01/12/95 | AC By-Laws | AC0051879-91 | |
| DX-CL | Def. Ex. 49 | 01/12/95 | Minutes of Board Meeting | KEY034999-5009 | |
| DX-CM | Def. Ex. 14 | 01/12/95 | Minutes of Special Members' Meeting | KEY004153-64 | |
| DX-CN | AC Ex. 143 | 01/22/95 | B. Gleason letter to R. Brown re: AC reserve account | APL 006616-7 | |
| DX-CO | Def. Ex. 133 | 01/29/95 | J. Sandercock letter to Deloitte re: 1995 statement of actuarial opinion | AC0075724-33 | 4 |
| DX-CP | Def. Ex. 55 | 03/95 | Coopers & Lybrand draft financial review (Version 1.3) | AC0075380-471 | 4 |
| DX-CQ | Def. Ex. 51 | 04/27/95 | Willcox letter to T. McGowan re: AC loss reserve portfolio transfer in respect of the 1989 and prior underwriting years | AC3503829-32 | 4 |
| DX-CR | Def. Ex. 134 | 05/18/95 | J. Sandercock letter to Deloitte & Touche re: exposure to environmental liabilities, attaching 4/26/94 letter | AC0079947-52 | 4 |
| DX-CS | Def. Ex. 54 | 06/08/95 | Minutes of Board Meeting | KEY004143-52 | |

6

04/14/2006 10:49 AM

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) of Plaintiff |
|---|---|---|---|---|---|
| DX-CT | AC Ex. 139 | 07/19/95 | Deloitte & Touche presentation to the Board | APL003093-141 | 4 |
| DX-CU | | 11/09/95 | Kirlin opinion re: closing of insurance year 1991/92 | AC3068697-707 | |
| DX-CV | | 11/09/95 | Minutes of Board Meeting | AC30688561-71 | |
| DX-CW | | 12/22/95 | Memo to the Finance Comm. re: contingency fund recommendations | AC0054291-301 | |
| DX-CX | Def. Ex. 221 | 12/31/95 | Deloitte & Touche actuarial analysis as of 12/31/95 | AC0079526-621 | |
| DX-CY | Def. Ex. 13 | 01/05/96 | Memo to the Finance Comm. re: contingency fund | | |
| DX-CZ | Def. Ex. 168 | 01/30/96 | W. Craig letter to D. Klaben re: Ohio asbestos litigation – legal expenses | AC0020017 | |
| DX-DA | | 02/20/96 | BP Oil Shipping 1996/97 policy | BP003148-84 | |
| DX-DB | AC Ex. 62 | 03/08/96 | T. McGowan memo to the Finance Comm. re: attached correspondence between B. Gleason and R. Brown re: AC reserve account | AC3504162-4 AC0066530-4; AC005I582-97; AC0066546-70 | |
| DX-DC | | 03/15/96 | AC Circular No. 2/96 re: cover for charterers' liability | AC0082753 | 4 |
| DX-DD | Def. Ex. 32 | 04/25/96 | Agenda and Minutes of Finance Comm. Meeting | AC3504104-6 | |
| DX-DE | Def. Ex. 33 | 05/30/96 | Finance Comm. Memo to the Board re: contingency fund | AC3069073-93 | |
| DX-DF | Def. Ex. 118 | 06/12/96 | Minutes and Agenda of the Finance Comm. Meeting | AC3504101-3 | |
| DX-DG | Def. Ex. 119 | 06/12/96 | C. Kurz, II notes from Finance Comm. Meeting | KEY040295-7 | |
| DX-DH | Def. Ex. 15 | 06/13/96 | Minutes of Board Meeting | KEY004111-9 | |
| DX-DI | Def. Ex. 76 | 06/25/96 | T. McGowan memo to Finance Comm. attaching revised memorandum re: contingency fund | AC0032834-8 | |
| DX-DJ | Def. Ex. 88 | 06/30/96 | Deloitte & Touche actuarial analysis | AC0079743-806 | |
| DX-DK | Def. Ex. 136 | 07/15/96 | J. Sandercock letter to Deloitte & Touche re: midyear 1996 review | DT000211-6 | |
| DX-DL | Def. Ex. 115 | 08/21/96 | J. Sandercock memo to the Board re: revision of the By-Laws | AC3069443-70 | |
| DX-DM | Def. Ex. 120 | 09/11/96 | C. Kurz, II handwritten notes from Finance Comm. Meeting | KEY040583 | |
| DX-DN | Def. Ex. 196 | 09/13/96 | Coopers & Lybrand draft report re: AC | AC0079916-963 | |
| DX-DO | | 09/18/96 | T. McGowan fax to J. Hughes and V. Solarino re: comments | AC008933-41 | |

7

5817/20271-004 Current/8435155v2

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) of Plaintiff |
|---|---|---|---|---|---|
| | | | on Coopers & Lybrand draft report | | |
| DX-DP | Def. Ex. 147 | 09/18/96 | AC confidential memorandum concerning application to join the Pool | AC0036384-416 | |
| DX-DQ | | 09/19/96 | J. Hughes letter to Coopers & Lybrand re: AC draft report | AC008932 | |
| DX-DR | Def. Ex. 139 | 10/08/96 | J. Sandercock memo to J. Hughes re: discussion with Coopers & Lybrand re: asbestos reserves recommended by Deloitte & Touche | AC0063578 | |
| DX-DS | Def. Ex. 140 | 10/09/96 | J. Sandercock letter to Coopers & Lybrand re: IBNR loss reserves for asbestos claims | AC0075562 | |
| DX-DT | Def. Ex. 148 | 10/14/96 | Coopers & Lybrand financial review of AC for pool application | AC0036459-519 | |
| DX-DU | Def. Ex. 89 | 10/15/96 | W. Craig memo to V. Solarino re: asbestosis cases in connection with Int'l Group's request for information | AC0076457-90 | |
| DX-DV | Def. Ex. 113 | 10/23/96 | D. Comer fax to J. Hughes re: AC full membership in the Pool | AC0032814 | |
| DX-DW | Def. Ex. 114 | 10/24/96 | R. Brown fax to J. Sandercock, attaching draft response to D. Comer | AC0032806-13 | |
| DX-DX | Def. Ex. 209 | 10/25/96 | J. Hughes letter to D. Comer | AC0032804-5 | |
| DX-DY | Def. Ex. 208 | 12/17/96 | AC Circular No. 10/96 re: premium rating for the 1997 policy year | AC0082763-4 | 4 |
| DX-DZ | Def. Ex. 194 | 12/31/96 | Financial Report by Deloitte & Touche | AC0024325-42 | |
| DX-EA | Def. Ex. 240 | 12/31/96 | Deloitte & Touche actuarial analysis | AC0079622-742 | |
| DX-EB | Def. Ex. 62 | 1997 | AC Annual Report | AC0052752-774 | |
| DX-EC | Def. Ex. 57 | 1997 | V. Solarino handwritten notes | AC0076217-8 | |
| DX-ED | Def. Ex. 20 | 03/11/97 | AC Circular 4/97 re: AC renewal 1997 | KEY022672-3 | |
| DX-EE | | 06/06/97 | Kirlin opinion re: closing of insurance year 1993/94 | AC3070092-9 | |
| DX-EF | | 06/12/97 | Minutes of Board Meeting | AC3069902-9 | |
| DX-EG | | 06/12/97 | Johnson & Higgins letter to Cleveland-Cliffs re: H. Hodges benzene claim with attachments | CLIFFS0267-70 | |

8

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) of Plaintiff |
|---|---|---|---|---|---|
| DX-EH | Def. Ex. 175 | 06/14/97 | D. Weedman letter to W. Craig re: O. Kelley mesothelioma claim | AC0017988-90 | |
| DX-EI | Def. Ex. 172 | 06/18/97 | W. Craig fax to Apex re: O. Kelley mesothelioma claim | AC0017992 | |
| DX-EJ | Def. Ex. 77 | 08/30/97 | Coopers & Lybrand letter enclosing draft report of review of AC | AC0076199-216 | |
| DX-EK | Def. Ex. 226 | 1998 | AC Annual Report | AC0052714-751 | |
| DX-EL | Def. Ex. 173 | 03/11/98 | W. Craig fax to D. Weedman re: O. Kelley mesothelioma claim | AMT 04397-8 | |
| DX-EM | Def. Ex. 149 | 03/12/98 | Minutes of Board meeting | AC3076620-9 | |
| DX-EN | Def. Ex. 150 | 03/12/98 | Memo for the Board's meeting re: emergency authority – illness of A. Corbett, attaching 2/18/98 Kirlin's letter re: US Lines bankruptcy – Corbett estate | AC3070754-7 | |
| DX-EO | Def. Ex. 75 | 03/31/98 | Surplus statement | AC0057122-32 | |
| DX-EP | | 06/04/98 | Kirlin opinion re: closing of insurance year 1994/95 | AC3070927-33 | |
| DX-EQ | | 06/11/98 | Minutes of Board Meeting | 3070789-96 | |
| DX-ER | | 11/11/98 | Kirlin opinion re: closing of insurance year 1995/96 | AC3071535-50 | |
| DX-ES | | 11/12/98 | Minutes of Board Meeting | AC3071240-8 | |
| DX-ET | Def. Ex. 121 | 12/17/98 | Kirlin letter to T. McGowan re: Prudential Lines bankruptcy | AC0033482-5 | |
| DX-EU | | 1999 | Int'l Group Agreement | AC0076505-33 | |
| DX-EV | Def. Ex. 85 | 02/10/99 | J. Sandercock memo to J. Hughes re: IBNR loss reserves at 12/31/98 | AC0056357-9 | 4 |
| DX-EW | Def. Ex. 176 | 04/05/99 | A. St. Paul Bland letter to W. Craig re: *Prudential v. AC*, submission of L. Lassiter claim for reimbursement | CGL/WSC 000169 | |

9

04/14/2006 10:49 AM

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) of Plaintiff |
|---|---|---|---|---|---|
| DX-EX | | 07/08/99 | W. Craig to M. Taddeo re: requesting copies of file for for Elbridge K. Mann- Asbestosis Case | | 1, 2, 3, 4 |
| DX-EY | | 07/15/99 | A. St. Paul Bland letter to W. Craig re: submission of Shaw claim for reimbursement based on *Prudential Lines* case, with attachment | CGL/WSC 000335-40 | 2, 4 |
| DX-EZ | Def. Ex. 169 | 07/23/99 | W. Craig letter to A. St. Paul Bland re: "Green Wave"/"Green Forest" asbestosis clase – W. Shaw | CGL/WSC 000333-4 | 2, 4 |
| DX-FA | | 08/02/99 | Letter from M. Taddeo to W. Craig re: enclosing complete file for Elbridge K. Mann- Asbestosis Case | | 1, 2, 3, 4 |
| DX-FB | Def. Ex. 107 | 10/20/99 | Kirlin letter to T. McGowan re: allocation of contingency fund investment income with attached investment portfolio summary as of 9/20/99 | AC3072409-25 | |
| DX-FC | | 11/01/99 | J. Sandercock letter to NY Insurance Department | AC0032650-1 | 4 |
| DX-FD | Def. Ex. 79 | 11/11/99 | Minutes of Board Meeting | AC3072356-68 | 4 |
| DX-FE | Def. Ex. 151 | 12/22/99 | AC Circular 18/99 re: development of closed and open policy years and treatment of investment income | KEY022814-6 | 4 |
| DX-FF | | 2000 | Memo from J. Cassedy to the Finance Comm. re: use of reserve account | AC3051840-4 | |
| DX-FG | | 04/25/00 | R. Brown letter to S. Schafler re: Keystone asbestosis claims | | 1, 2, 3, 4 |
| DX-FH | Def. Ex. 203 | 06/07/00 | Memo to directors, attaching Kirlin opinion re: closing of 1996 insurance year | AC0048090-7 | 4 |
| DX-FI | | 06/07/00 | L. Daniels letter to W. Craig re: recalculation of billing for Lassiter claim, with attachments | CGL/WSC 000163-5 | 2, 4 |
| DX-FJ | | 06/07/00 | L. Daniels letter to W. Craig re: recalculation of billing for Shaw claim, with attachment | CGL/WSC 000328-32 | 2, 4 |
| DX-FK | Def. Ex. 132 | 06/13/00 | R. Brown letter to J. Sandercock attaching draft letter to Farrell re: pending asbestosis cases | AC0032595-8 | 4 |
| DX-FL | Def. Ex. 202 | 06/15/00 | Minutes of Board Meeting | AC3072827-35 | 4 |
| DX-FM | | 06/22/00 | Letter from M. Taddeo to W. Craig re: status of reimbursement for Elbridge K. Mann- Asbestosis Case | | 1, 2, 3, 4 |
| DX-FN | | 06/27/00 | Kirlin opinion re: closing of insurance year 1996/97 | AC3073055-6 | 4 |
| DX-FO | Def. Ex. 153 | 03/08/01 | Memo for directors' meeting re: recommended settlement of | AC3073952-66 | 4 |

10

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) of Plaintiff |
|---|---|---|---|---|---|
| | | | H. Watkins mesothelioma suit, attaching Kaye, Rose letter re: same | | |
| DX-FP | | 04/23/01 | L. Daniels letter to G. Strevell re: payment of invoices for Lassiter and Shaw claims, with attachments | CGL/WSC 000161-2 | |
| DX-FQ | | 06/07/01 | D. Weedman letter to G. Strevell re: Asbestos Claim – Watkins v. Trinidad Corporation, with V. Solarino telefax cover sheet to R. Brown | AC0065976-8 | |
| DX-FR | | 06/14/01 | Minutes of Board Meeting | AC3074040-51 | |
| DX-FS | | 07/03/01 | L. Daniels letter to G. Strevell re: submission of Elmer claim for reimbursement, with attachments | CGL/WSC 000190-4 | |
| DX-FT | | 07/26/01 | L. Daniels letter to G. Strevell re: submission of Tagliaferri claim for reimbursement, with attachments | CGL/WSC 000295-302 | |
| DX-FU | | 09/25/01 | L. Daniels letter to W. Craig re: submission of Tagliaferri claim for reimbursement, with attachment | CGL/WSC 000288-94 | |
| DX-FV | | 10/04/01 | G. Strevell letter to L. Daniels re: questions regarding submission of Tagliaferri claim for reimbursement | CGL/WSC 000287 | |
| DX-FW | | 10/05/01 | L. Daniels letter to G. Strevell re: submission of Tagliaferri claim for reimbursement, with attachment | CGL/WSC 000282-6 | |
| DX-FX | | 11/08/01 | R. Brown letter to S. Schafler re: Keystone occupational illness claims | | 1, 2, 3, 4 |
| DX-FY | | 12/13/01 | A. St. Paul Bland letter to G. Strevell re: applicability of *Prudential Lines* case, with attachment | CGL/WSC 000134-40 | |
| DX-FZ | | 12/13/01 | A. St. Paul Bland letter to G. Strevell re: applicability of *Prudential Lines* case, with attachment | CGL/WSC 000184-7 | |
| DX-GA | | 12/26/01 | R. Brown letter to S. Schafler re: Keystone occupational illness claims | AC0073962-9047 | 1, 2, 3, 4 |
| DX-GB | | 2001-02 | AC Rules and By-Laws | | |
| DX-GC | | 02/11/02 | A. St. Paul Bland letter to G. Strevell re: reimbursement for Brunell, Clark and Tagliaferri claims | CGL/WSC 000130-1 | |
| DX-GD | | 02/11/02 | G. Strevell letter to LMS Shipmanagement, Inc. re: reimbursement for Brunell, Clark and Tagliaferri claims, with attachment | CGL/WSC 000126-9 | |
| DX-GE | | 04/22/02 | S. Kong letter to L. Bowles re: Keystone extension of time to answer AC's counterclaim | | 1, 2, 3, 4 |
| DX-GF | | 04/24/02 | S. Kong letter to R. Brown re: Keystone's time to answer | | 1, 2, 3, 4 |

11

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) of Plaintiff |
|---|---|---|---|---|---|
| | | | AC's counterclaim | | |
| DX-GG | | 05/07/02 | D. Parascandola letter to Aon Risk Services Inc. re: Union Carbide Corporation | | 1, 2, 3, 4 |
| DX-GH | | 05/07/02 | D. Parascandola letter to Union Carbide Co. confirming premium payment | | 1, 2, 3, 4 |
| DX-GI | | 06/13/02 | Kirlin opinion re: closing of insurance year 1998/99 | AC3075500-7 | 4 |
| DX-GJ | | 06/20/02 | Minutes of Board Meeting | AC3075235-45 | 4 |
| DX-GK | | 2002-03 | AC Rules and By-Laws | AC0079048-100 | |
| DX-GL | | 01/13/03 | L. Bowles letter to G. Strevell re: Farrell Lines – C.M. Sledz – Longshoreman's Asbestos/Mesothelioma Case in Baltimore with attached data request letter | FAR 06720-25; FAR 06674-5 | 4 |
| DX-GM | | 01/30/03 | L. Daniels letter to G. Strevell re: forwarding copies of billings for Brunell claim, with attachments | CGL/WSC 000210-33 | 4 |
| DX-GN | Def. Ex. 205 | 06/06/03 | Kirlin opinion re: closing of insurance year 1999/2000 | AC0046407-13 | 4 |
| DX-GO | Def. Ex. 204 | 06/12/03 | Minutes of Board Meeting | AC3076726-34 | 4 |
| DX-GP | | 11/13/03 | R. Quigley e-mail to F. Belinske re: Farley v. Keystone | | |
| DX-GQ | Def. Ex. 233 | 12/31/03 | Annual Statement | KEY022112-44 | 4 |
| DX-GR | Def. Ex. 245 | 12/31/03 | Actuarial review of reserves by Deloitte & Touche | DT002639-787 | 4 |
| DX-GS | Def. Ex. 236 | 2004 | AC Annual Report | from AC Website | 4 |
| DX-GT | | 2004 | Draft Financial Report | AC 84069-85 | 4 |
| DX-GU | | 01/30/04 | G. Strevell e-mail to F. Belinske re: benzene exposure case | | |
| DX-GV | | 02/27/04 | D. Moore fax to F. Belinske re: Farley v. Keystone | | |
| DX-GW | Def. Ex. 72 | 03/31/04 | Schedules of general expenses, income, losses paid and pending and depreciation allocations by policy year for quarter ended 3/31/04 | AC0063056-90 | 4 |
| DX-GX | Def. Ex. 90 | 03/31/04 | G. Strevell e-mail to V. Solarino re: inadequate reserve for asbestos claims | AC0078694 | |
| DX-GY | | 04/16/04 | D. Moore fax to E. Kelbon re: Chelsea/Chilbar, alleged injuries to T. Farley | AC0069346-8 | |
| DX-GZ | | 05/04/04 | F. Belinske e-mail to E. Kelbon re: Captains and Chief Mates | | |
| DX-HA | | 05/17/04 | M. Mitchell fax to E. Kelbon re: Farley v. Keystone | | |
| DX-HB | Def. Ex. 244 | 06/03/04 | V. Solarino letter to NY Insurance Department | AC0084240-9 | 4 |

12

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) of Plaintiff |
|---|---|---|---|---|---|
| DX-HC | | 06/10/04 | Report of the Working Group of the Int'l Group | AC0032163-4; AC0032212-7 | 4 |
| DX-HD | Def. Ex. 69 | 06/11/04 | Kirlin opinion re: closing of insurance year 2000/2001 | AC0043360-9 | 4 |
| DX-HE | Def. Ex. 206 | 06/17/04 | Minutes of Board Meeting | AC3078544-50 | 4 |
| DX-HF | Def. Ex. 70 | 06/17/04 | Kirlin opinion re: closing of insurance year 2000/2001 | AC3079130-9 | 4 |
| DX-HG | Def. Ex. 66 | 07/08/04 | Second Amended Complaint | | |
| DX-HH | Brown Ex. 12 | 07/12/04 | A. Groom e-mail to J. Hughes re: AC declaratory judgment action | RHB00415-6 | |
| DX-HI | Def. Ex. 242 | 07/15/04 | V. Solarino letter to M. Pearl | DT000427-9 | |
| DX-HJ | Brown Ex. 4 | 08/03/04 | L. Bowles letter to R. Brown re: AC application to join the Int'l Group | RHB01394-669 | |
| DX-HK | Def. Ex. 22 | 08/17/04 | J. Hughes memo to the Finance Comm. re: Occupational Disease Claims-The AC's Declaratory Action | AC0032167-8 | |
| DX-HL | Def. Ex. 23 | 08/17/04 | J. Bennett e-mail re: Occupational Disease Claims | AC0071464-6 | |
| DX-HM | Brown Ex. 6 | 08/24/04 | R. Brown letter to L. Bowles re: declaratory judgment complaint | RHB 00708-11 confidential | |
| DX-HN | Def. Ex. 237 | 09/15/04 | Minutes of Finance Comm. Meeting | AC0043070-2 | |
| DX-HO | Def. Ex. 24 | 09/15/04 | Minutes of Finance Comm. Meeting | AC3504548-50 | |
| DX-HP | Def. Ex. 207 | 09/16/04 | Minutes of Board Meeting | AC3079142-53 | |
| DX-HQ | Brown Ex. 5 | 10/15/04 | R. Brown fax to L. Bowles, attaching pages from answer with comments | RHB 00486-502 confidential | |
| DX-HR | Brown Ex. 8 | 10/18/04 | L. Bowles letter to R. Brown enclosing 10/15/04 Thacher, Proffitt opinion | RHB 01353-70 | 3, 4 |
| DX-HS | Def. Ex. 30 | 10/21/04 | Minutes of Finance Comm. Meeting | AC0043066-9 | |
| DX-HT | Def. Ex. 67 | 12/10/04 | AC's Master Reply to all Counterclaims of all Defendants | | |
| DX-HU | Def. Ex. 157 | 12/15/04 | AC Circular 27/04 re: changes to the AC rules for the 2005 policy year | AC0077222-6 | |
| DX-HV | Def. Ex. 247 | 12/31/04 | AC Annual Statement | AC0083885-998 | 4 |
| DX-HW | Def. Ex. 73 | 12/31/04 | AC Actuarial Review of Reserves by Deloitte & Touche | | |
| DX-HX | | 2004-05 | AC Rules and By-Laws | from AC Website | 4 |

13

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) of Plaintiff |
|---|---|---|---|---|---|
| DX-HY | Def. Ex. 1 | 01/10/05 | Keystone's notice of deposition to AC | | |
| DX-HZ | Def. Ex. 63 | 03/16/05 | A. Groom e-mail to J. Hughes re: asbestosis claims, with attachments | AC0078565-6; AC0078560-4 | |
| DX-IA | Def. Ex. 248 | 03/22/05 | V. Solarino letter to Pearl re: representation in connection with review of loss and loss adjustment expense reserves as of 12/31/04 | DT001207-14 | 4 |
| DX-IB | Def. Ex. 65 | 04/21/05 | AC surplus balance for policy years 1940-88 | | |
| DX-IC | | 05/27/05 | AC's Memorandum of Law in Support of Motion for Protective Order | | |
| DX-ID | AC Ex. 200 | 08/01/05 | AC amended notice of 30(b)(6) deposition to APL | | |
| DX-IE | | 08/12/05 | AC's Objections and Responses to Apex Defendants' First Set of Interrogatories | | |
| DX-IF | | 08/12/05 | AC's Objections and Responses to Georgia Pacific's First Set of Interrogatories | | |
| DX-IG | | 08/12/05 | AC's Objections and Responses to Keystone's First Set of Interrogatories | | |
| DX-IH | | 09/30/05 | AC's Objections and Responses to Keystone's Interrogatories in Lieu of Deposition of L. Bowles | | |
| DX-II | | 10/17/05 | AC's Objections and Responses to Keystone's Second Set of Interrogatories | | |
| DX-IJ | | 10/21/05 | Expert Report of T. Coghlin on behalf of various defendants | | Subject to Motion 1, 2, 3, 4 |
| DX-IK | | 02/15/06 | AC's Amended Objections and Responses to Farrell Lines' First Set of Requests for Admission | | |
| DX-IL | | 02/15/06 | AC's Amended Objections and Responses to Keystone's First Set of Requests for Admission | | |

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) of Plaintiff |
|---|---|---|---|---|---|
| DX-IM | | | Chart of Defendant Amerada Hess' Unindemnified Occupational Disease Claims[1] | | 2 |
| DX-IN | | | Chart of Apex Oil Defendants' Partially Indemnified Asbestos Claims | | 2 |
| DX-IO | | | Chart of Apex Oil Defendants' Unindemnified Asbestos Claims | | 2 |
| DX-IP | | | Chart of Occupational Disease Claims Arising from Occurrences during Years and On Vessels Covered by the AC for which APL Has Not Received Indemnity | APL007185-93 | 2 |
| DX-IQ | | | Chart of Additional Monies Owed to APL for Claims due to AC's policy of applying multiple deductibles | APL007305 | 2 |
| DX-IR | | | Chart of all policies issued by AC to Cleveland-Cliffs | | 2 |
| DX-IS | | | Cleveland-Cliffs Chart of Claims Submitted to AC for Reimbursement | | 2 |
| DX-IT | | | Chart of Sabine's occupational disease claims | | 2 |
| DX-IU | | 03/26/06 | Chart of CGL/WSC asbestos claims for which indemnity is sought, including documents referenced as supporting same | | 2 |
| DX-IV | | | Chart of Keystone Claims, based on a single deductible | | 2 |
| DX-IW | | 03/27/06 | MTL Main Claims Paid and Outstanding Billout List | | 2 |
| DX-IX | | | APL Chart of Deductibles in American Club Policy Years | APL 0001-8 | 1, 2, 3, 4 |
| DX-IY | | | APL Chart of Years of Sea Service for Individual Claimants | | 1, 2, 3, 4 |
| | | Various | Pre-1989 Protection and Indemnity Policies Issued by the American Club to Defendants | AC4000001-4057645[2] | |

15

[1] Regarding the charts of claims listed as exhibits IM to IY, the parties have agreed that any party may introduce as exhibits at trial any of the supporting documentation listed in its summary charts, in any event, and even if the chart is deemed inadmissible.

[2] In order to avoid burdening the Court with a voluminous exhibit list of pre-marked insurance policies (which number over hundreds in this case), the parties agree that, to the extent a certain policy or policies require reference at trial, the parties are free to introduce such policies at that time without objection by any other party on grounds of authenticity or hearsay. Should any party wish to introduce a particular policy or policies at trial, an exhibit number will be supplied to such policy or policies at that time.

**Exhibits Submitted by Defendant S.C. Loveland Co., Inc. n/k/a Loveland Holding Company**

| Trial Exhibit | Exhibit Number (Marked at Deposition) | Date | Description | Bates | Objection(s) |
|---|---|---|---|---|---|
| DX-IZ | | 10/27/95 | Loveland's 10/27/95 Final Decree in Bankruptcy | | 1, 2, 3, 4 |
| DX-JA | | 10/13/94 | Order Confirming Debtor's (Loveland's) Amended Plan of Reorganization and Making Related Findings of Fact and Determinations | | 1, 2, 3, 4 |
| DX-JB | | 07/12/94 | Debtor's (Loveland's) Amended Plan of Reorganization | | 1, 2, 3, 4 |
| DX-JC | | 09/27/94 | Order Approving Loveland's Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan Combined with notice Thereof, filed Sept. 27, 1994. | | 1, 2, 3, 4 |
| DX-JD | | On or about September, 1994 | Ballot for Accepting or Rejecting Debtor's (Loveland's) Amended Plan of Reorganization | | 1, 2, 3, 4 |

16

# Appendix 3

**Designations of Deposition Testimony to be used as part of Plaintiff's case in chief with Defendants' Objections and Counterdesignations and Plaintiff's Objections to the Counterdesignations**

### Plaintiff's Deposition Designations, Defendants' Objections and Counterdesignations Thereto, and Plaintiff's Objections to Defendants' Counterdesignations

### Deposition of Charles Achuff
### June 17, 2005

## American Club Deposition Designations

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Defendants' Objections |
| 12 | 3 | 12 | 8 | |
| 12 | 10 | 12 | 10 | |
| 14 | 10 | 14 | 24 | |
| 15 | 1 | 16 | 18 | |
| 17 | 4 | 17 | 11 | |
| 21 | 16 | 21 | 19 | |
| 61 | 25 | 62 | 8 | |
| 83 | 24 | 84 | 6 | 84:4-6: Lacks foundation |
| 84 | 8 | 84 | 13 | 84:10-13: Lacks foundation |
| 84 | 15 | 84 | 21 | 84:17-21: Question lacks foundation and calls for a legal conclusion which this witness is not competent to make |
| 84 | 24 | 85 | 2 | 85:1-2: Question lacks foundation and calls for a legal conclusion which this witness is not competent to make |
| 85 | 4 | 85 | 6 | |
| 88 | 19 | 88 | 21 | Lacks foundation; vague; irrelevant |
| 88 | 23 | 88 | 23 | |
| 101 | 3 | 101 | 13 | 101:9-13: Question lacks |

{N0057182; 1}

| | | | | foundation and calls for a legal conclusion which this witness is not competent to make |
|---|---|---|---|---|
| 101 | 17 | 101 | 22 | 101:19-22: Lacks foundation |
| 101 | 24 | 10 | 12 | 102:2-3: Lacks foundation; 102:5-12: Lacks foundation; improper hypothetical |
| 102 | 15 | 103 | 3 | 102:17-20: Question lacks foundation and calls for speculation; 102:25-103:3: Question lacks foundation and calls for speculation |
| 103 | 6 | 103 | 6 | |
| 103 | 7 | 103 | 9 | Question lacks foundation and calls for speculation |
| 103 | 12 | 103 | 12 | |
| 106 | 18 | 106 | 24 | |
| 107 | 1 | 107 | 4 | 107: 2-3: Question is compound, and to the extent it asks about cancellation, calls for a legal conclusion which this witness is not competent to make |
| 110 | 24 | 111 | 2 | |
| 111 | 10 | 111 | 19 | |
| 129 | 23 | 129 | 25 | Question is |

|  |  |  |  | compound, vague and misleading |
|---|---|---|---|---|
| 130 | 3 | 130 | 5 |  |
| 141 | 5 | 142 | 5 | Irrelevant |
|  |  |  |  |  |

Exhibits in Designations: AC 85

**Defendants' Counter-Designations**

| From | | To | | |
|---|---|---|---|---|
| **Page** | **Line** | **Page** | **Line** | **Plaintiff's Objections** |
| 8 | 1 | 8 | 4 | Relevance |
| 110 | 5 | 110 | 13 | Non-Responsive |

{N0057182; 1}

### *Deposition of John DiPalermo*
### *June 22, 2005*

**American Club Deposition Designations:**

| From | | To | | |
|---|---|---|---|---|
| **Page** | **Line** | **Page** | **Line** | **Defendants' Objections** |
| 27 | 18 | 28 | 10 | |
| 28 | 11 | 29 | 6 | |
| 29 | 8 | 29 | 15 | |
| 33 | 6 | 33 | 9 | |
| 57 | 4 | 57 | 6 | |
| 57 | 8 | 57 | 16 | |
| 57 | 18 | 57 | 25 | |
| 58 | 2 | 58 | 8 | |
| 58 | 10 | 58 | 14 | |
| 58 | 23 | 58 | 24 | |
| 59 | 1 | 59 | 7 | |
| 59 | 10 | 59 | 19 | |
| 59 | 20 | 60 | 4 | |
| 60 | 6 | 60 | 20 | |
| 60 | 25 | 61 | 11 | |
| 61 | 14 | 61 | 19 | |
| 61 | 21 | 62 | 1 | |
| 62 | 4 | 62 | 12 | |
| 62 | 14 | 62 | 18 | 62:17-18: Calls for a legal conclusion |
| 62 | 22 | 63 | 15 | Vague and ambiguous |
| 63 | 17 | 63 | 23 | 63:20-22: Calls for a legal conclusion |
| 64 | 13 | 64 | 24 | Irrelevant |
| | | | | |
| | | | | |

No counter-designations from Defendants at this time.

4

*Deposition of Philip W.J. Fisher*
*June 24, 2005*

**American Club Deposition Designations**

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Defendants' Objections |
| 7 | 3 | 7 | 6 | |
| 8 | 21 | 8 | 25 | |
| 10 | 4 | 10 | 20 | |
| 11 | 5 | 11 | 7 | Vague and misleading; compound |
| 11 | 10 | 11 | 15 | |
| 12 | 20 | 12 | 23 | |
| 57 | 2 | 57 | 19 | Object to Exhibits AC 87A-K and AC 88 A-L as irrelevant |
| 58 | 3 | 58 | 14 | 58:3-7: Irrelevant |
| 61 | 22 | 62 | 18 | 61:22-24: Irrelevant; 62:1-2: vague |
| 160 | 21 | 161 | 7 | 16:21-24: Irrelevant |

Exhibits in Designations: AC 87A, AC 87B, AC 87C, AC 87D, AC 87E, AC 87F, AC 87G, AC 87H, AC 87I, AC 87J, AC 87K, AC 88A, AC 88B, AC 88C, AC 88D, AC 88E, AC 88F, AC 88G, AC 88H, AC 88I, AC 88J, AC 88K, AC 88L

**Defendants' Counter-designations**

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Plaintiff's Objections |
| 148 | 4 | 148 | 19 | Hypothetical, speculative, non-responsive |

{N0057182; 1}

### *Deposition of Ben Gleason*
June 23 -- 24, 2005

**American Club Deposition Designations:**

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Defendants' Objections** |
| 32 | 22 | 33 | 15 | |
| 38 | 7 | 38 | 13 | |
| 51 | 13 | 51 | 15 | |
| 51 | 17 | 51 | 25 | |
| 53 | 12 | 54 | 3 | Irrelevant |
| 56 | 1 | 56 | 3 | |
| 56 | 5 | 56 | 7 | |
| 56 | 9 | 56 | 18 | |
| 56 | 20 | 56 | 22 | |
| 56 | 24 | 57 | 11 | |
| 57 | 13 | 57 | 22 | |
| 63 | 13 | 63 | 14 | Irrelevant |
| 64 | 1 | 64 | 17 | Irrelevant |
| 64 | 19 | 65 | 1 | Irrelevant |
| 65 | 3 | 65 | 6 | Irrelevant |
| 65 | 9 | 65 | 14 | Irrelevant |
| 65 | 18 | 65 | 20 | |
| 66 | 3 | 66 | 5 | |
| 66 | 7 | 66 | 10 | |
| 66 | 13 | 66 | 21 | |
| 66 | 23 | 67 | 2 | Irrelevant |
| 67 | 5 | 67 | 9 | |
| 67 | 18 | 67 | 19 | Irrelevant |
| 67 | 21 | 68 | 1 | Irrelevant |
| 68 | 4 | 68 | 9 | Irrelevant |
| 68 | 12 | 68 | 16 | Irrelevant |
| 68 | 19 | 68 | 22 | |
| 69 | 22 | 70 | 2 | 70:1-2: Lacks foundation; irrelevant |
| 70 | 4 | 70 | 9 | Lacks foundation; irrelevant |
| 70 | 12 | 70 | 15 | |
| 73 | 1 | 73 | 16 | Irrelevant |
| | | | | |

{N0057182; 1}

| From | | To | | | |
|------|------|------|------|------|------|
| Page | Line | Page | Line | | Defendants' Objections |
| 75 | 4 | 75 | 16 | | 75:10-14: Cumulative and irrelevant |
| 75 | 19 | 75 | 25 | | |
| 79 | 23 | 80 | 1 | | |
| 80 | 4 | 80 | 12 | | |
| 82 | 24 | 83 | 1 | | |
| 83 | 3 | 83 | 19 | | |
| 84 | 7 | 84 | 9 | | |
| 84 | 11 | 85 | 10 | | |
| 122 | 9 | 123 | 21 | | Irrelevant |
| 125 | 23 | 126 | 2 | | 125:23-126:2: Vague and ambiguous; irrelevant |
| 126 | 4 | 126 | 6 | | Irrelevant |
| 167 | 3 | 167 | 7 | | Irrelevant |
| 167 | 10 | 167 | 10 | | Irrelevant |
| 174 | 2 | 174 | 5 | | Irrelevant |
| 174 | 7 | 174 | 7 | | Irrelevant |
| 178 | 13 | 178 | 15 | | Irrelevant |
| 178 | 17 | 178 | 21 | | Cumulative; vague and ambiguous; irrelevant |
| 178 | 24 | 178 | 24 | | |
| 181 | 8 | 181 | 11 | | Cumulative; vague and ambiguous; lacks foundation; irrelevant |
| 181 | 14 | 181 | 17 | | |
| 243 | 24 | 243 | 25 | | |
| 244 | 2 | 244 | 20 | | |
| 270 | 22 | 270 | 23 | | Irrelevant |
| 271 | 5 | 271 | 9 | | Irrelevant |
| 271 | 11 | 271 | 12 | | Irrelevant |
| 271 | 16 | 271 | 19 | | Irrelevant |
| 271 | 23 | 272 | 2 | | Attorney-Client Privileged communication; irrelevant |

{N0057182; 1}

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Defendants' Objections |
| 273 | 22 | 274 | 4 | Irrelevant |
| 274 | 6 | 274 | 10 | Irrelevant |
| 274 | 12 | 274 | 13 | Irrelevant |
| 275 | 5 | 275 | 9 | Irrelevant |
| 275 | 12 | | | Irrelevant |

**Defendants' Counter-designations:**

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Plaintiff's Objections |
| 69 | 12 | 69 | 13 | |
| 69 | 17 | 69 | 21 | |
| 96 | 11 | 96 | 19 | |
| | | | | |

Strike Defendants' designation Page 295 Lines 4 through 19.

***Deposition of Marty Gordon***
*September 13, 2005*

**American Club Deposition Designations:**

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Defendants' Objections** |
| 12 | 12 | 16 | 19 | |
| 23 | 18 | 24 | 14 | Irrelevant |
| 26 | 3 | 27 | 4 | Irrelevant |
| 27 | 8 | 27 | 14 | Irrelevant |
| 28 | 1 | 28 | 14 | Irrelevant |
| 29 | 4 | 29 | 8 | Irrelevant |
| 30 | 4 | 31 | 13 | Irrelevant |
| 31 | 24 | 33 | 2 | Irrelevant |
| 56 | 6 | 57 | 24 | Irrelevant |
| 58 | 2 | 58 | 10 | Irrelevant |
| 58 | 18 | 58 | 20 | Irrelevant |
| 60 | 6 | 60 | 8 | Irrelevant |
| 60 | 25 | 61 | 14 | Irrelevant |
| 61 | 19 | 61 | 22 | Irrelevant |
| 61 | 25 | 62 | 20 | Irrelevant |
| 64 | 15 | 64 | 18 | |
| 64 | 23 | 66 | 1 | Irrelevant |
| 99 | 8 | 100 | 18 | |
| 100 | 21 | 101 | 21 | |
| 102 | 2 | 104 | 11 | |
| 104 | 13 | 104 | 19 | |
| 104 | 21 | 106 | 19 | |
| 106 | 21 | 107 | 16 | |
| 107 | 19 | | | |
| 114 | 18 | 117 | 17 | Irrelevant |
| 118 | 9 | 120 | 16 | |
| 123 | 2 | 127 | 23 | |

Exhibits in Designations:

AC 204
AC 205
AC 207
AC 208
AC 209

**Defendants' Counter-designations**

| From | | To | | Plaintiff's Objections |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | |
| 58 | 11 | 58 | 17 | |

Exhibits in Counter-designations:

AC 200

{N0057182; 1}

*Deposition of Richard Gronda*
*September 20, 2005*

**American Club Deposition Designations**

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Defendants' Objections** |
| 19 | 23 | 20 | 6 | Vague and ambiguous |
| 20 | 8 | 21 | 11 | Vague and ambiguous |
| 21 | 13 | 21 | 21 | Vague and ambiguous; cumulative |
| 21 | 23 | 22 | 8 | Vague and ambiguous; irrelevant |

**Defendants' Deposition Counter-designations**

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Plaintiff's Objections** |
| 13 | 5 | 13 | 22 | |
| 14 | 7 | 14 | 11 | |
| 14 | 24 | 15 | 5 | |
| 17 | 16 | 18 | 7 | |
| 24 | 13 | 24 | 24 | |
| 27 | 8 | 27 | 15 | Calls for Legal Conclusion |

Exhibits in Counter-designations:

AC 62

11

***Deposition of Keith Kennedy***
***June 2, 2005***

Pursuant to the Federal Rules and the parties' agreements in this case, Defendants do not concede that Plaintiff has the right to designate testimony of Mr. Kennedy because Defendants intend to produce him as a live witness at trial.   Mr. Kennedy was not deposed as a 30(b)(6) witness, nor is he a current employee of any Defendant.  However, in the event that Mr. Kennedy does not testify then Defendants will agree that Plaintiff may submit the below designations and therefore Defendants have presented objections thereto and counter-designations/designations for their case in chief of Mr. Kennedy's testimony.  All rights to object to any designations of Mr. Kennedy being submitted are reserved should he testify live.

Plaintiff responds that it may use Mr. Kennedy's deposition "for any purpose" pursuant to Rule 32(a)(3) of the Federal Rules of Civil Procedure.  Mr. Kennedy, a resident of Florida, is at a greater distance than 100 miles from the place of trial, and Plaintiff cannot procure the attendance of Mr. Kennedy by subpoena.  See Fed. R. Civ. P. 32(a)(3)(A) & (C).

**American Club Deposition Designations**

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Defendants' Objections** |
| 8 | 20 | 9 | 16 | |
| 15 | 12 | 15 | 15 | |
| 15 | 18 | 16 | 5 | |
| 17 | 10 | 18 | 6 | Note errata on 17:12, I've to I'd |
| 18 | 8 | 19 | 16 | |
| 33 | 13 | 33 | 14 | |
| 33 | 16 | 33 | 18 | |
| 52 | 21 | 52 | 24 | |
| 53 | 2 | 53 | 3 | |
| 53 | 6 | 54 | 1 | 53:23-25: Question is vague and ambiguous |
| 62 | 5 | 62 | 12 | |
| 66 | 16 | 66 | 18 | 66:16-18: Question is compound |
| 66 | 20 | 66 | 21 | Irrelevant |
| 67 | 1 | 67 | 2 | Question is compound; irrelevant |
| 67 | 5 | 67 | 16 | Irrelevant |
| 67 | 18 | 68 | 8 | Irrelevant |

{N0057182; 1}

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Defendants' Objections |
| 68 | 11 | 68 | 23 | Irrelevant |
| 68 | 25 | 69 | 5 | Irrelevant |
| 69 | 18 | 69 | 20 | Irrelevant—no testimony designated and question not later answered with any testimony |
| 69 | 23 | 70 | 4 | Irrelevant |
| 70 | 7 | 70 | 25 | Irrelevant |
| 71 | 2 | 71 | 5 | Irrelevant |
| 71 | 12 | 71 | 17 | Irrelevant |
| 71 | 20 | 72 | 19 | Irrelevant |
| 72 | 21 | 73 | 1 | Irrelevant |
| 73 | 3 | 73 | 15 | Irrelevant |
| 73 | 17 | 73 | 25 | Irrelevant |
| 74 | 8 | 74 | 16 | Irrelevant |
| 78 | 19 | 78 | 20 | Irrelevant |
| 79 | 3 | 79 | 11 | Irrelevant |
| 79 | 13 | 80 | 3 | Irrelevant |
| 80 | 7 | 81 | 8 | Irrelevant |
| 81 | 11 | 81 | 19 | Irrelevant |
| 81 | 21 | 82 | 4 | Irrelevant |
| 82 | 8 | 82 | 11 | Irrelevant |
| 82 | 14 | 82 | 14 | Irrelevant |
| 82 | 16 | 82 | 21 | Irrelevant |
| 95 | 21 | 96 | 5 (3??) | 96:4-5: Cumulative and irrelevant |
| 96 | 7 | 96 | 15 | 96:13-15: Cumulative and Irrelevant |
| 96 | 17 | 97 | 6 | Irrelevant |
| 97 | 8 | 97 | 10 | Irrelevant |
| 97 | 12 | 97 | 17 | Irrelevant |
| 97 | 19 | 97 | 23 | Irrelevant |
| 97 | 25 | 98 | 13 | Irrelevant |
| 103 | 10 | 103 | 19 | Irrelevant |
| 106 | 25 | 107 | 21 | Irrelevant |
| 107 | 24 | 108 | 19 | Irrelevant |
| 112 | 18 | 112 | 20 | Question is vague and |

{N0057182; 1}

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Defendants' Objections** |
| | | | | ambiguous; calls for a legal conclusion which this witness is not competent to make |
| 112 | 23 | 113 | 7 | |
| 133 | 8 | 133 | 20 | |
| 133 | 25 | 134 | 10 | 134:5-9: Question calls for a legal conclusion which this witness is not competent to make |
| 134 | 12 | 134 | 15 | |
| 134 | 18 | 134 | 25 | |
| | | | | |
| | | | | |
| | | | | |

Exhibits in Designations:

AC 12
AC 42
AC 47
AC 48/DX 42
AC 73 (NOT ON CLUB'S EXHIBIT LIST)

DX 46

**Defendants' Counter-designations**

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Plaintiff's Objections** |
| 8 | 1 | 8 | 19 | |
| 19 | 17 | 19 | 21 | |
| 19 | 23 | 20 | 2 | |
| 29 | 25 | 30 | 2 | |
| 30 | 5 | 31 | 3 | |
| 42 | 6 | 42 | 10 | |
| 42 | 12 | 42 | 22 | |

{N0057182; 1}

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Plaintiff's Objections |
| 47 | 10 | 47 | 13 | |
| 87 | 19 | 87 | 21 | |
| 87 | 24 | 88 | 5 | |
| 88 | 10 | 88 | 12 | |
| 88 | 16 | 89 | 2 | |
| 89 | 4 | 89 | 11 | |
| 89 | 13 | 89 | 21 | |
| 90 | 2 | 90 | 5 | |
| 90 | 7 | 90 | 22 | |
| 90 | 24 | 91 | 4 | |
| 91 | 9 | 91 | 15 | |
| 91 | 17 | 92 | 3 | |
| 98 | 24 | 99 | 23 | |
| 99 | 24 | 100 | 2 | |
| 100 | 6 | 100 | 11 | |
| 106 | 9 | 106 | 11 | |
| 106 | 16 | 106 | 19 | |
| 114 | 14 | 114 | 16 | |
| 114 | 18 | 114 | 20 | |
| 114 | 23 | 114 | 25 | |
| 115 | 2 | 115 | 3 | |
| 121 | 17 | 121 | 22 | |
| 122 | 2 | 122 | 15 | |
| 123 | 22 | 124 | 2 | |
| 124 | 9 | 125 | 14 | |
| 132 | 2 | 132 | 19 | |
| 133 | 21 | 133 | 24 | |
| 136 | 4 | 137 | 16 | |
| 137 | 21 | 138 | 4 | |
| 139 | 1 | 139 | 4 | |
| 142 | 14 | 142 | 22 | |
| 142 | 25 | 143 | 8 | |
| 144 | 17 | 144 | 20 | |
| 145 | 7 | 146 | 15 | |
| 147 | 1 | 147 | 18 | |
| 158 | 2 | 158 | 5 | |
| 158 | 10 | 159 | 13 | |
| 159 | 22 | 160 | 1 | Vague, Misleading |
| 160 | 7 | 160 | 16 | Calls for conclusion of law |

{N0057182; 1}

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Plaintiff's Objections** |
| 161 | 24 | 162 | 2 | Leading |
| 162 | 4 | 162 | 14 | Leading |
| 162 | 16 | 162 | 25 | |
| 163 | 1 | 163 | 4 | Leading |
| 163 | 6 | 163 | 6 | |

Additional Exhibits in Counter-designations:

AC 36
AC 36A

**DEFENDANTS' DEPOSITION DESIGNATIONS AND PLAINTIFF'S OBJECTIONS THERETO; PLAINTIFF'S COUNTER-DESIGNATIONS AND DEFENDANTS' OBJECTIONS THERETO**

NOTE REGARDING PLAINTIFF'S OBJECTIONS:  The American Club hereby reserves its right to amend and/or supplement these objections at a later date, as appropriate.

The American Club further states that notwithstanding defendants' references to certain deposition exhibits as part of their designations (as set forth below), nothing herein shall be deemed to waive any objections the American Club may have to the admission of a particular exhibit, all which are expressly reserved hereby, and shall be asserted in the appropriate section of the PTO at the appropriate time.

Table of Objections:

| | |
|---|---|
| Ambiguous | (A) |
| Argumentative | (AM) |
| Asked and Answered | (AA) |
| Assumes Facts not in Evidence | (AF) |
| Confusing | (C) |
| Cumulative | (CM) |
| Hearsay | (H) |
| Hypothetical | (HP) |
| Improper Legal Conclusion | (LC) |
| Improper Opinion Testimony by a Lay Witness | (O) |
| Irrelevant | (IR) |
| Lack of Personal Knowledge | (LPK) |
| Mischaracterizes Document | (MD) |
| Misleading | (ML) |
| Misstates Facts | (MF) |
| Misstates Prior Testimony | (MT) |
| No Foundation | (NF) |
| Not Best Evidence | (BE) |
| Not Responsive | (NR) |
| Speculative | (S) |
| Vague | (V) |
| | |
| Inadmissible Deposition Testimony Under Rule 32 of the Fed. R. of Civ. P. | (FR32) |

### _Deposition of John Di Palermo_
_(One of American President Lines' Fact Witnesses)_
_June 22, 2005_

**Defendants' Deposition Designations**

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| 15 | 5 | 15 | 8 | |
| 27 | 17 | 30 | 1 | |
| 32 | 4 | 33 | 15 | |
| 33 | 24 | 34 | 11 | |
| 37 | 1 | 37 | 16 | |
| 53 | 13 | 53 | 17 | |
| 54 | 1 | 54 | 11 | |
| 57 | 3 | 58 | 3 | |
| 60 | 7 | 60 | 20 | |
| 119 | 21 | 120 | 6 | |
| 143 | 7 | 145 | 15 | |
| 146 | 18 | 151 | 13 | |
| | | | | |
| | | | | |

**Plaintiff's Deposition Counter-Designations**

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| 58 | 4 | 58 | 14 | Improper legal conclusion |
| 60 | 21 | 61 | 6 | Improper legal conclusion |
| 119 | 15 | 119 | 20 | |
| 120 | 7 | 120 | 14 | |
| 145 | 16 | 145 | 21 | |
| 151 | 14 | 152 | 8 | 151:18-22: Irrelevant; privileged |

### *Deposition of C. Bennett Gleason*
#### *(One of American President Lines' Fact Witnesses)*
#### *June 23 and 24, 2005*

**Defendants' Deposition Designations**

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Objections |
| 14 | 5 | 14 | 8 | |
| 22 | 19 | 23 | 8 | |
| 26 | 10 | 26 | 22 | |
| 32 | 22 | 33 | 15 | |
| 38 | 7 | 38 | 13 | |
| 50 | 15 | 50 | 24 | |
| 51 | 13 | 51 | 25 | |
| 73 | 1 | 73 | 16 | |
| 92 | 17 | 94 | 15 | |
| 97 | 1 | 97 | 8 | NR |
| 99 | 3 | 99 | 24 | |
| 100 | 13 | 102 | 5 | |
| 102 | 20 | 104 | 10 | |
| 105 | 6 | 106 | 10 | H |
| 107 | 4 | 108 | 14 | |
| 108 | 22 | 109 | 18 | |
| 110 | 14 | 111 | 21 | |
| 239 | 25 | 240 | 3 | |
| 262 | 23 | 263 | 3 | |
| 264 | 19 | 267 | 24 | |
| 284 | 24 | 285 | 1 | |
| 292 | 4 | 293 | 20 | |
| 294 | 21 | 296 | 9 | |
| 299 | 2 | 299 | 11 | |
| 306 | 4 | 306 | 18 | |

Exhibits in Designation:

Ex. 143

**Plaintiff's Deposition Counter-Designations**

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Objections |
| 23 | 9 | 23 | 11 | |
| 26 | 23 | 27 | 1 | |
| 97 | 9 | 99 | 2 | 98:4-99:2: |

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| | | | | Irrelevant |
| 100 | 1 | 100 | 12 | 100:8-9: Lacks foundation |
| 102 | 6 | 102 | 19 | 102:12-18: Irrelevant |
| 104 | 11 | 105 | 5 | |
| 106 | 11 | 106 | 14 | |
| 108 | 15 | 108 | 19 | |
| 109 | 19 | 110 | 13 | |
| 268 | 1 | 268 | 20 | |
| 293 | 21 | 294 | 20 | Lacks foundation; improper legal conclusion; hypothetical |
| 296 | 10 | 297 | 8 | hypothetical |
| 306 | 21 | 307 | 3 | |

### *Deposition of Joseph Hughes*
### *(Secretary of Plaintiff and One of Plaintiff American Club's 30(b)(6) Witnesses)*
### *June 21 and July 14, 2005*

**Defendants' Deposition Designations**

| From | | To | | |
|------|------|------|------|------------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| 10 | 4 | 10 | 9 | |
| 15 | 17 | 19 | 22 | |
| 39 | 9 | 40 | 1 | V, A |
| 56 | 12 (with DX 193) | 58 | 10 | V, A, C, ML |
| 80 | 3 | 82 | 1 | V |
| 82 | 22 | 83 | 6 | LC |
| 85 | 9 | 86 | 9 | S, H |
| 110 | 11 | 110 | 19 | LC |
| 120 | 25 | 121 | 7 | |
| 121 | 20 | 121 | 23 | |
| 123 | 10 (with DX 194) | 124 | 5 | |
| 125 | 10 | 128 | 1 | |
| 137 | 4 | 138 | 1 | LC |
| 172 | 9 (with DX 148, DX 196, and DX 88) | 182 | 13 | LC, H |
| 211 | 18 | 214 | 17 | LC, S |
| 228 | 22 | 230 | 7 | |
| 281 | 21 (with DX 26) | 283 | 8 | LC |
| 287 | 14 | 287 | 22 | |
| 301 | 16 | 303 | 14 | MT, LC |
| 306 | 9 | 309 | 22 | AF, MT, AM |
| 312 | 17 (with DX 76) | 313 | 13 | |
| 317 | 21 (with DX 151 & DX 107) | 328 | 4 | AF, NF, LC, S, AM |
| 329 | 9 (with DX 113 & DX 209) | 332 | 9 | |
| 354 | 24 (with DX 22) | 356 | 21 | |
| 361 | 2 (with DX 211) | 363 | 21 | H, S |
| 364 | 1 (with DX 212) | 365 | 11 | |
| 373 | 8 (with DX 213) | 377 | 10 | S, NF, AF |
| 378 | 13 (with DX 214) | 380 | 1 | LC |
| 393 | 12 | 399 | 23 | AF, MT, HP, S |

**Plaintiff's Deposition Counter-Designations**

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| 40 | 2 | 42 | 14 | Irrelevant |
| 58 | 14 | 59 | 3 | |
| 59 | 12 | 59 | 19 | |
| 82 | 2 | 82 | 17 | |
| 83 | 18 | 85 | 8 | |
| 110 | 4 | 110 | 8 | |
| 121 | 8 | 121 | 19 | |
| 124 | 11 | 125 | 9 | Improper counter-designation |
| 138 | 2 | 139 | 17 | |
| 204 | 8 | 207 | 21 | |
| 211 | 7 | 211 | 17 | |
| 287 | 23 | 288 | 18 | |
| 304 | 18 | 305 | 22 | |
| 310 | 11 | 312 | 16 | |
| 315 | 24 | 317 | 20 | |
| 357 | 1 | 360 | 10 | |
| 377 | 21 | 378 | 8 | Irrelevant; improper counter-designation |
| 380 | 2 | 382 | 7 | |

<u>Exhibits in Counter-Designations</u>

Ex. 151
Ex. 211

**Deposition of Thomas McGowan**
*(One of Plaintiff American Club's 30(b)(6) Witnesses)*
*February 2, May 3 and May 4, 2005*

**Defendants' Deposition Designations**

| From | | To | | Objections |
|------|------|------|------|------------|
| Page | Line | Page | Line | |
| 11 | 4 | 11 | 7 | |
| 12 | 5 (with DX 1) | 18 | 23 | ML, AM |
| 24 | 2 | 25 | 18 | |
| 28 | 12 | 37 | 8 | |
| 41 | 17 | 42 | 24 | |
| 44 | 15 | 47 | 25 | ML, BE |
| 65 | 9 | 66 | 21 | ML, H, LPK |
| 67 | 25 | 72 | 6 | |
| 73 | 22 | 78 | 19 | ML, V |
| 79 | 9 | 80 | 23 | |
| 82 | 6 | 83 | 25 | H |
| 85 | 1 | 90 | 15 | |
| 90 | 20 | 91 | 14 | |
| 94 | 19 | 95 | 5 | |
| 97 | 11 | 97 | 14 | |
| 98 | 18 | 98 | 25 | |
| 99 | 7 (with DX 4) | 104 | 15 | BE, H |
| 106 | 7 | 120 | 17 | C, V, ML |
| 121 | 2 | 123 | 7 | |
| 125 | 1 | 127 | 23 | ML |
| 131 | 6 | 132 | 10 | V, AM, C, H |
| 133 | 10 (with DX 5) | 139 | 16 | |
| 139 | 25 | 146 | 19 | BE, H |
| 150 | 15 | 152 | 5 | |
| 165 | 10 (with DX 10) | 171 | 25 | ML, H |
| 172 | 11 (with DX 10) | 173 | 22 | |
| 176 | 2 (with DX 10 & DX 11) | 180 | 23 | BE |
| 186 | 16 (with DX 12) | 190 | 8 | BE |
| 192 | 23 (with DX 12 and DX 13) | 200 | 20 | BE, ML |
| 208 | 16 | 208 | 23 | |
| 210 | 1 (with DX 14) | 212 | 2 | |
| 215 | 1 (with DX 15) | 222 | 4 | |
| 248 | 9 (with DX 38) | 251 | 25 | |
| 274 | 11 | 278 | 4 | |
| 289 | 24 | 293 | 20 | |

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Objections |
| 302 | 5 (with DX 39) | 303 | 8 | HP, V, ML, AM, NF |
| 308 | 15 (with DX 39) | 308 | 22 | |
| 309 | 19 (with DX 39) | 311 | 23 | |
| 321 | 5 | 321 | 9 | |
| 328 | 6 | 328 | 19 | |
| 334 | 22 (with DX 6) | 336 | 8 | NF |
| 337 | 13 (with DX 12) | 343 | 15 | NF |
| 344 | 14 (with DX 40) | 346 | 5 | |
| 351 | 5 (with DX 40) | 353 | 10 | |
| 354 | 12 (with DX 40) | 357 | 4 | |
| 359 | 6 (with DX 42) | 360 | 22 | |
| 361 | 24 | 362 | 15 | |
| 367 | 22 (with DX 43 & DX 44) | 374 | 9 | |
| 391 | 11 | 392 | 5 | |
| 392 | 10 | 393 | 8 | |
| 393 | 21 | 394 | 24 | |
| 398 | 20 | 399 | 1 | |
| 404 | 4 (with DX 47) | 406 | 14 | |
| 408 | 16 (with DX 48) | 409 | 23 | |
| 414 | 12 (with DX 49) | 416 | 8 | LC |
| 422 | 5 | 422 | 20 | S |
| 428 | 3 (with DX 55) | 429 | 16 | |
| 440 | 1 | 442 | 19 | |
| 446 | 7 (with DX 59) | 447 | 15 | LC, S |
| 486 | 1 | 489 | 1 | LC |
| 496 | 21 (with DX 62) | 502 | 6 | S |
| 504 | 11 | 504 | 15 | |
| 505 | 10 | 506 | 10 | |
| 511 | 3 | 511 | 12 | |
| 512 | 9 | 512 | 12 | |
| 521 | 17  (with DX 63) | 524 | 2 | |

**Plaintiff's Deposition Counter-Designations**

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Objections |
| 37 | 9 | 38 | 5 | |
| 38 | 23 | 39 | 4 | |
| 40 | 23 | 41 | 16 | |
| 42 | 25 | 44 | 14 | |
| 49 | 12 | 53 | 2 | |

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| 58 | 17 | 60 | 6 | |
| 61 | 1 | 61 | 6 | |
| 78 | 25 | 79 | 8 | |
| 84 | 1 | 84 | 9 | |
| 91 | 15 | 92 | 3 | |
| 93 | 9 | 93 | 22 | |
| 94 | 1 | 94 | 18 | |
| 95 | 6 | 95 | 23 | |
| 96 | 22 | 97 | 10 | |
| 97 | 15 | 98 | 17 | |
| 104 | 16 | 104 | 20 | |
| 120 | 18 | 121 | 1 | |
| 139 | 17 | 139 | 24 | |
| 157 | 9 | 157 | 17 | |
| 173 | 23 | 176 | 15 | |
| 180 | 24 | 181 | 12 | |
| 213 | 17 | 214 | 19 | |
| 243 | 24 | 244 | 13 | Improper counter-designation |
| 299 | 7 | 302 | 4 | Irrelevant |
| 303 | 18 | 305 | 13 | |
| 306 | 1 | 306 | 17 | |
| 307 | 3 | 308 | 14 | |
| 308 | 15 | 309 | 18 | |
| 311 | 24 | 316 | 25 | |
| 318 | 10 | 319 | 11 | |
| 322 | 9 | 328 | 5 | Irrelevant; improper counter-designation |
| 332 | 9 | 333 | 12 | |
| 343 | 16 | 344 | 6 | |
| 346 | 15 | 351 | 1 | Irrelevant |
| 353 | 11 | 354 | 11 | 353:15-20: Non-responsive |
| 357 | 9 | 359 | 2 | |
| 360 | 23 | 361 | 23 | 361:11-23: Hearsay |
| 362 | 16 | 363 | 25 | |
| 385 | 14 | 387 | 18 | |
| 388 | 4 | 389 | 9 | |
| 390 | 18 | 391 | 10 | |

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| 395 | 24 | 396 | 3 | |
| 396 | 16 | 397 | 10 | |
| 414 | 7 | 414 | 11 | |
| 416 | 9 | 416 | 16 | |
| 426 | 16 | 428 | 2 | |
| 445 | 5 | 445 | 14 | |
| 448 | 4 | 449 | 3 | |
| 484 | 20 | 485 | 25 | |
| 489 | 2 | 489 | 8 | |
| 504 | 16 | 504 | 19 | |
| 510 | 18 | 511 | 2 | |
| 511 | 15 | 511 | 22 | |
| 517 | 5 | 517 | 10 | |
| 524 | 24 | 525 | 5 | Irrelevant |
| 537 | 1 | 537 | 22 | Irrelevant |
| 540 | 16 | 540 | 25 | Irrelevant |
| 542 | 8 | 542 | 14 | Irrelevant |
| 549 | 21 | 551 | 4 | |
| 551 | 11 | 552 | 16 | |
| 553 | 3 | 553 | 24 | |
| 564 | 14 | 567 | 3 | |
| 567 | 13 | 567 | 16 | |
| 567 | 19 | 567 | 24 | |
| 568 | 10 | 568 | 20 | |
| 569 | 19 | 572 | 12 | 571:18-21: Question calls for a legal conclusion which this witness is not competent to make<br>572:5-6: Question calls for a legal conclusion which this witness is not competent to make |
| 573 | 4 | 574 | 18 | |
| 574 | 25 | 575 | 19 | |
| 575 | 22 | 577 | 19 | 575:25-576:3: Question calls |

| From | | To | | |
|---|---|---|---|---|
| Page | Line | Page | Line | Objections |
| | | | | for a legal conclusion which this witness is not competent to make |
| 577 | 21 | 580 | 7 | Irrelevant |
| 581 | 5 | 582 | 12 | Irrelevant |
| 582 | 19 | 584 | 12 | Lacks foundation |
| 584 | 18 | 584 | 21 | |
| 585 | 14 | 585 | 16 | |
| 585 | 22 | 586 | 16 | Lacks foundation |
| 586 | 20 | 587 | 8 | Lacks foundation |
| 587 | 24 | 588 | 11 | Lacks foundation |
| 588 | 13 | 590 | 5 | Lacks foundation |
| 590 | 9 | 590 | 19 | Lacks foundation |
| 591 | 1 | 591 | 22 | Lacks foundation |
| 592 | 6 | 592 | 21 | |
| 592 | 23 | 593 | 8 | Irrelevant |
| 594 | 3 | 596 | 1 | Irrelevant |
| 596 | 6 | 596 | 18 | Irrelevant |
| 596 | 22 | 597 | 17 | Irrelevant |
| 597 | 20 | 598 | 1 | Irrelevant |
| 598 | 3 | 598 | 7 | Irrelevant |
| 598 | 9 | 600 | 5 | Irrelevant |
| 600 | 9 | 600 | 12 | Irrelevant |
| 600 | 17 | 601 | 19 | Irrelevant |
| 602 | 8 | 602 | 13 | Irrelevant |
| 603 | 7 | 605 | 22 | Irrelevant |
| 605 | 24 | 606 | 3 | Irrelevant |
| 606 | 22 | 607 | 10 | Irrelevant |
| 609 | 1 | 611 | 4 | Irrelevant |
| 611 | 18 | 612 | 3 | Irrelevant; speculation |
| 612 | 7 | 612 | 19 | Irrelevant; speculation |
| 612 | 22 | 613 | 6 | Irrelevant; speculation |
| 613 | 8 | 613 | 8 | Irrelevant; speculation |
| 614 | 10 | 615 | 10 | |
| 615 | 14 | 616 | 5 | |
| 616 | 7 | 616 | 19 | |

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| 616 | 22 | 616 | 22 | 616:15-19: Vague and ambiguous |
| 618 | 10 | 623 | 10 | Irrelevant |

Exhibits in Counter-Designations

DX-10
DX-39
DX-40
DX-41
DX-42
DX-43
DX-55
AC-11
AC-12
AC-19
AC-22
AC-24
AC-25
AC-26
AC-28
AC-29
AC-39A

***Deposition of Marc Pearl***
*(Non-Party Witness)*
*September 15, 2005*

**Defendants' Deposition Designations**

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| 9 | 4 | 9 | 7 | FR32 |
| 19 | 2 | 19 | 12 | FR32 |
| 20 | 25 | 21 | 17 | FR32, V, A |
| 22 | 5 | 22 | 6 | FR32, V, A |
| 22 | 8 | 22 | 8 | FR32 |
| 22 | 24 | 23 | 11 | FR32, IR, LPK, H |
| 56 | 9 | 56 | 18 | FR32, H |
| 57 | 23 | 57 | 24 | FR32, H |
| 58 | 7 | 58 | 15 | FR32, H, V, A, LPK |
| 61 | 14 | 62 | 19 | FR32, BE, H, LPK |
| 64 | 8 | 65 | 3 | FR32, H, LPK |
| 67 | 3 | 67 | 7 | FR32, BE, MT, ML, H, LPK, CM |
| 72 | 17 | 75 | 22 | FR32, IR, H, LPK, MT, ML |
| 75 | 24 | 76 | 6 | FR32, ML, MT, H, IR |
| 76 | 8 | 76 | 14 | FR32, ML, MT, H, IR |
| 76 | 16 | 76 | 17 | FR32, H, BE |
| 188 | 1 | 189 | 20 | FR32, BE, H, IR |
| 194 | 11 | 195 | 21 | FR32, IR, V, A, AF, ML, LPK, H, BE |
| 206 | 3 | 206 | 17 | FR32, ML, H, BE, LPK |
| 206 | 19 | 207 | 7 | FR32, ML, H, BE, LPK |
| 211 | 13 | 211 | 15 | FR32, V, A, LPK, IR |
| 211 | 19 | 211 | 25 | FR32, V, A, LPK, IR |
| 262 | 17 | 262 | 20 | FR32, V, A, AF, ML, H |

13

| 262 | 22 | 263 | 12 | FR32, V, A, AF, ML, BE, LPK, H |
|-----|----|-----|----|-----|

Note:   Plaintiff objects to the admission of any deposition testimony by Marc Pearl, an employee of Deloitte & Touche LLP, a non-party to this action.  His deposition testimony is inadmissible under Rule 32 of the Fed. R. of Civ. P.

Exhibits in Designations:

Ex. 221
Ex. 245

**Plaintiff's Deposition Counter-Designations**

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| 22 | 7 | 22 | 7 | |
| 24 | 14 | 24 | 16 | |
| 55 | 16 | 55 | 25 | |
| 56 | 2 | 56 | 4 | |
| 56 | 9 | 56 | 23 | |
| 57 | 2 | 57 | 5 | |
| 67 | 8 | 67 | 9 | |
| 70 | 23 | 71 | 18 | |
| 75 | 23 | 75 | 23 | |
| 76 | 7 | 76 | 7 | |
| 76 | 15 | 76 | 15 | |
| 140 | 16 | 141 | 12 | |
| 186 | 22 | 187 | 11 | Irrelevant |
| 190 | 20 | 191 | 8 | |
| 206 | 18 | 206 | 18 | |
| 211 | 16 | 211 | 16 | |
| 214 | 20 | 215 | 1 | |
| 215 | 6 | 215 | 21 | Irrelevant |
| 262 | 21 | 262 | 21 | |
| | | | | |

**Supplemental Designations by Defendants** (solely to make the counter-designations complete as testimony and questions on the same subject and in the same series of questions was surgically omitted).

| From | | To | |
|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** |
| 56 | 24 | 57 | 1 |
| 215 | 2 | 215 | 5 |

***Deposition of Martin Recchuite***
***(One of Plaintiff American Club's 30(b)(6) Witnesses and a Current Director of Plaintiff))***
***February 9 and May 2, 2005***

**Defendants' Deposition Designations**

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| 12 | 5 | 12 | 9 | |
| 14 | 17 | 15 | 3 | IR |
| 16 | 23 | 17 | 4 | |
| 17 | 11 | 17 | 15 (with DX 1) | |
| 17 | 25 | 18 | 9 | |
| 18 | 19 | 19 | 3 | |
| 19 | 21 | 20 | 8 | |
| 27 | 13 | 27 | 23 | IR |
| 32 | 23 | 33 | 10 | |
| 39 | 13 | 41 | 13 | IR |
| 55 | 12 | 55 | 23 | |
| 56 | 24 | 57 | 19 | IR, LPK |
| 71 | 19 | 74 | 4 | IR, LPK, H, BE |
| 76 | 11 | 76 | 18 | IR |
| 81 | 14 | 81 | 18 | |
| 83 | 19 | 84 | 5 | IR, O, LC |
| 84 | 23 | 85 | 6 | IR, O, LC, ML |
| 86 | 13 | 87 | 3 | IR, O, LC, ML, H, BE |
| 87 | 15 | 88 | 20 | IR, O, LC, ML |
| 89 | 13 | 93 | 7 | IR, O, LC, ML |
| 93 | 18 | 93 | 24 | IR, O, LC |
| 95 | 12 | 95 | 21 | |
| 96 | 18 | 96 | 25 | IR, LPK |
| 97 | 20 | 98 | 23 | IR, LPK |
| 100 | 4 | 101 | 8 | IR, O, LC, LPK |
| 101 | 16 | 101 | 21 | IR, O, LC, LPK |
| 102 | 5 | 103 | 22 | IR, O, LC, LPK |
| 105 | 14 | 108 | 17 | IR, O, LC, LPK |
| 116 | 9 | 116 | 12 | IR |
| 117 | 2 | 117 | 4 | IR |
| 126 | 15 | 126 | 21 | |
| 137 | 8 | 139 | 23 | IR, O, LC, LPK, H, BE |
| 154 | 2 (with DX 17) | 154 | 21 | IR, BE |
| 165 | 15 (with DX 20) | 166 | 21 | IR, BE |

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Objections |
| 199 | 7 | 201 | 18 | IR, O, LC, LPK, H, BE |
| 205 | 14 | 205 | 25 | IR |
| 208 | 1 | 208 | 6 | IR |
| 209 | 7 (with DX 21) | 210 | 7 | V, A, ML, MT, O, LC, BE |
| 211 | 4 | 212 | 4 | IR, ML, O, LC, LPK |
| 216 | 5 | 221 | 6 | O, LC, LPK, BE |
| 226 | 5 | 227 | 2 | MT, ML |
| 227 | 23 | 229 | 18 | IR, O, LC, BE |
| 230 | 9 | 230 | 25 | IR, O, LC, BE |
| 232 | 11 (with DX 23) | 233 | 16 | IR, H, BE |
| 234 | 19 | 234 | 19 | |
| 234 | 25 (with DX 24) | 239 | 2 | IR, H, BE |
| 241 | 18 | 242 | 1 | |
| 242 | 6 (with DX 25) | 247 | 11 | IR, BE |
| 248 | 7 (with DX 26) | 250 | 1 | IR, BE |
| 253 | 8 | 253 | 14 | |
| 256 | 25 | 266 | 9 | O, LC, BE |
| 272 | 3  (with DX 30) | 272 | 25 | IR, BE |
| 277 | 1 | 280 | 3 | |
| 283 | 3 | 284 | 12 | |
| 287 | 2 | 290 | 23 | IR, O, LC, LPK, V, A, ML |
| 301 | 17 | 302 | 5 | |
| 302 | 19 | 305 | 24 | |
| 308 | 8  (with DX 15) | 308 | 11 | |
| 309 | 1 | 309 | 18 | |
| 312 | 14 | 312 | 19 | |
| 317 | 11 (with DX 34) | 319 | 22 | BE |
| 327 | 3 | 328 | 4 | O, LC, MT, ML |
| 354 | 8 | 355 | 1 | |
| 358 | 10 | 360 | 10 | IR, LPK, AF |
| 360 | 14 | 362 | 5 | O, LC, ML |
| 362 | 11 | 363 | 25 | O, LC |
| 364 | 12 | 366 | 2 | O, LC, BE, ML, LPK |
| 366 | 5 | 366 | 11 | LPK |
| 366 | 14 | 366 | 19 | |
| 366 | 24 | 368 | 14 | O, LC, ML, LPK |
| 368 | 17 | 369 | 6 | ML, LPK |
| 369 | 11 | 375 | 14 | IR, AM, O, LC, |

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| | | | | ML, LPK |
| 376 | 1 | 382 | 12 | O, LC, ML, MT |
| 382 | 16 | 386 | 14 | O, LC, ML, MT, LPK, BE, AM |

**Plaintiff's Deposition Counter-Designations**

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| 19 | 4 | 19 | 9 | |
| 20 | 9 | 20 | 24 | |
| 21 | 7 | 21 | 17 | |
| 21 | 22 | 21 | 25 | |
| 22 | 20 | 23 | 01 | |
| 26 | 15 | 26 | 19 | |
| 27 | 2 | 27 | 12 | |
| 28 | 8 | 28 | 12 | |
| 28 | 22 | 28 | 25 | |
| 29 | 10 | 30 | 18 | |
| 30 | 21 | 31 | 12 | |
| 33 | 11 | 31 | 14 | |
| 33 | 24 | 34 | 06 | |
| 31 | 10 | 34 | 24 | |
| 41 | 20 | 42 | 14 | |
| 44 | 18 | 45 | 4 | |
| 57 | 20 | 58 | 4 | |
| 58 | 17 | 58 | 19 | |
| 59 | 9 | 59 | 16 | Hearsay; irrelevant |
| 60 | 22 | 62 | 1 | |
| 62 | 13 | 63 | 21 | |
| 65 | 4 | 65 | 12 | |
| 66 | 22 | 67 | 2 | |
| 67 | 14 | 67 | 25 | |
| 68 | 5 | 68 | 14 | |
| 74 | 5 | 74 | 6 | |
| 77 | 18 | 79 | 4 | Hearsay; irrelevant |
| 85 | 7 | 85 | 12 | |
| 88 | 21 | 89 | 9 | Irrelevant |
| 103 | 23 | 104 | 3 | Irrelevant |
| 113 | 2 | 113 | 15 | |
| 114 | 3 | 114 | 22 | |

| From | | To | | |
|------|------|------|------|------------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| 115 | 20 | 115 | 22 | |
| 117 | 5 | 117 | 9 | |
| 147 | 13 | 148 | 10 | |
| 151 | 1 | 152 | 10 | Speculative |
| 194 | 21 | 195 | 24 | |
| 196 | 6 | 197 | 14 | |
| 198 | 23 | 199 | 6 | Irrelevant |
| 210 | 8 | 210 | 10 | Unsworn testimony |
| 212 | 5 | 212 | 25 | Unsworn testimony |
| 247 | 12 | 247 | 13 | |
| 251 | 16 | 252 | 8 | |
| 252 | 20 | 253 | 7 | Speculative |
| 255 | 19 | 256 | 13 | |
| 276 | 6 | 276 | 14 | |
| 280 | 4 | 280 | 7 | Irrelevant; not responsive |
| 290 | 24 | 291 | 20 | Unsworn testimony |
| 325 | 25 | 326 | 23 | |
| 327 | 2 | 327 | 2 | |
| 337 | 16 | 337 | 22 | Irrelevant; argumentative |
| 337 | 25 | 338 | 4 | Irrelevant; argumentative |
| 338 | 7 | 338 | 12 | Irrelevant; argumentative |
| 338 | 15 | 338 | 22 | Irrelevant; argumentative |
| 339 | 1 | 339 | 10 | Irrelevant; argumentative |
| 339 | 13 | 339 | 13 | Irrelevant; argumentative |
| 340 | 17 | 341 | 2 | Irrelevant; argumentative |
| 341 | 20 | 342 | 1 | Irrelevant; argumentative; mischaracterizes facts in evidence |
| 342 | 5 | 342 | 5 | Irrelevant; argumentative |
| 342 | 20 | 343 | 6 | Irrelevant; |

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| | | | | argumentative |
| 343 | 10 | 343 | 10 | Irrelevant; argumentative |
| 351 | 3 | 351 | 20 | Argumentative; mischaracterizes facts in evidence |
| 351 | 23 | 353 | 10 | Argumentative; mischaracterizes facts in evidence |
| 360 | 11 | 360 | 13 | |
| 362 | 7 | 362 | 10 | |
| 366 | 3 | 366 | 4 | |
| 366 | 12 | 366 | 13 | |
| 366 | 20 | 366 | 23 | |
| 368 | 15 | 368 | 16 | |
| 369 | 7 | 369 | 10 | |
| 375 | 15 | 375 | 23 | |
| 382 | 13 | 382 | 14 | |

Exhibits in Counter-Designations

Ex. 1
Ex. 15
Ex. 21
Ex. 26
Ex. 77

*Deposition of Paul Sa*
*(Current Director of Plaintiff American Club)*
*June 8, 2005*

**Defendants' Deposition Designations**

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Objections |
| 6 | 4 | 6 | 7 | |
| 8 | 1 | 8 | 11 | |
| 10 | 16 | 12 | 8 | |
| 17 | 7 | 17 | 8 | |
| 17 | 10 | 18 | 2 | |
| 27 | 23 | 28 | 3 | |
| 30 | 14 | 31 | 2 | V, NF |
| 31 | 4 | 31 | 14 | |
| 34 | 7 | 35 | 17 | |
| 40 | 3 | 40 | 19 | V |
| 40 | 22 | 41 | 2 | V |
| 41 | 5 | 42 | 17 | |
| 49 | 13 | 49 | 14 | V |
| 49 | 16 | 49 | 20 | |
| 56 | 11 | 56 | 25 | |
| 59 | 5 | 59 | 9 | |
| 59 | 19 (with DX 146) | 60 | 2 | |
| 60 | 20 | 61 | 5 | |
| 116 | 8 (with DX 149 & 150) | 117 | 1 | |
| 118 | 19 | 118 | 24 | BE |
| 119 | 2 | 119 | 17 | |
| 124 | 15 | 125 | 11 | |
| 125 | 14 | 125 | 18 | |
| 125 | 20 | 125 | 22 | |
| 131 | 22 (with DX 153) | 132 | 10 | |
| 132 | 23 | 133 | 1 | |
| 133 | 4 | 133 | 13 | |
| 141 | 16 | 141 | 20 | |
| 150 | 22 | 150 | 25 | |
| 151 | 2 | 151 | 4 | |
| | | | | |

**Plaintiff's Deposition Counter-Designations**

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Objections |
| 8 | 12 | 8 | 17 | Irrelevant |
| 9 | 3 | 9 | 5 | Irrelevant |
| 16 | 9 | 16 | 21 | |
| 17 | 9 | 17 | 9 | |
| 20 | 1 | 20 | 4 | |
| 31 | 3 | 31 | 3 | |
| 32 | 8 | 32 | 17 | |
| 32 | 22 | 33 | 15 | |
| 36 | 21 | 37 | 25 | Speculative |
| 40 | 20 | 40 | 21 | |
| 41 | 3 | 41 | 4 | |
| 49 | 15 | 49 | 15 | |
| 58 | 12 | 59 | 4 | |
| 118 | 25 | 119 | 1 | |
| 119 | 24 | 120 | 9 | Non-responsive |
| 121 | 16 | 121 | 23 | Cumulative |
| 125 | 12 | 125 | 13 | |
| 125 | 19 | 125 | 19 | |
| 133 | 2 | 133 | 3 | |
| 141 | 16 | 141 | 23 | |
| 151 | 1 | 151 | 1 | |
| 151 | 5 | 151 | 12 | |
| 155 | 6 | 156 | 7 | Hearsay; irrelevant; improper counter-designation |
| 159 | 16 | 157 | 2 | Non-responsive; improper counter-designation |
| 174 | 8 | 174 | 22 | Non-responsive; improper counter-designation |

*Deposition of Vincent Solarino*
*(One of Plaintiff American Club's 30(b)(6) Witnesses)*
*May 5 and 6, 2005*

**Defendants' Deposition Designations**

| From | | To | | |
|------|------|------|------|------------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| 8 | 5 | 8 | 7 | |
| 10 | 4 | 10 | 13 | |
| 12 | 2 | 12 | 4 | |
| 13 | 1 | 14 | 7 | |
| 17 | 24 | 18 | 18 | |
| 19 | 5 | 19 | 10 | |
| 21 | 1 | 21 | 6 | |
| 26 | 25 | 27 | 10 | |
| 29 | 8 | 29 | 19 | |
| 32 | 15 | 33 | 6 | MT, H |
| 33 | 8 | 34 | 8 | H |
| 37 | 9 | 37 | 15 | |
| 37 | 23 | 38 | 23 | LC |
| 39 | 11 | 43 | 17 | LC |
| 44 | 1 | 44 | 22 | |
| 44 | 25 | 46 | 1 | |
| 72 | 8 | 72 | 18 | |
| 74 | 9 | 79 | 20 | |
| 80 | 2 | 83 | 7 | |
| 83 | 22 | 85 | 19 | AF, MD, ML |
| 85 | 24 | 87 | 15 | S |
| 89 | 16 | 92 | 14 | |
| 92 | 19 | 100 | 24 | |
| 101 | 23 | 105 | 6 | |
| 110 | 13 | 110 | 14 | |
| 111 | 23 | 112 | 9 | |
| 112 | 19 | 112 | 21 | |
| 167 | 25 | 168 | 2 | |
| 171 | 5 | 171 | 25 | |
| 172 | 5 | 179 | 21 | |
| 179 | 23 | 180 | 3 | C |
| 180 | 6 | 183 | 6 | LC |
| 215 | 19 | 219 | 17 | MF, ML, AA |
| 219 | 20 | 219 | 25 | AA |
| 220 | 2 | 223 | 11 | |
| 226 | 6 | 226 | 19 | |
| 227 | 17 | 228 | 5 | |

| 230 | 13 | 230 | 15 |   |
| 232 | 8  | 233 | 19 |   |
| 246 | 17 | 246 | 19 |   |
| 258 | 13 | 259 | 20 |   |
| 267 | 20 | 268 | 9  |   |
| 274 | 2  | 274 | 12 |   |
| 277 | 18 | 279 | 17 |   |
| 280 | 6  | 280 | 21 |   |
| 283 | 1  | 284 | 23 |   |
| 285 | 14 | 285 | 20 |   |
| 286 | 10 | 287 | 16 | H |
| 403 | 6  | 403 | 13 |   |
| 403 | 20 | 404 | 5  |   |

Exhibits in Designations:

Ex. 1
Ex. 32
Ex. 33
Ex. 57
Ex. 65
Ex. 66
Ex. 71
Ex. 74
Ex. 75
Ex. 77
Ex. 92

**Plaintiff's Deposition Counter-Designations**

| From | | To | | |
|------|------|------|------|------|
| **Page** | **Line** | **Page** | **Line** | **Objections** |
| 18  | 23 | 19  | 4  |   |
| 20  | 20 | 20  | 25 |   |
| 21  | 7  | 22  | 13 |   |
| 33  | 7  | 33  | 7  |   |
| 38  | 24 | 38  | 25 |   |
| 43  | 18 | 43  | 25 |   |
| 65  | 25 | 72  | 1  | Irrelevant |
| 85  | 20 | 85  | 23 |   |
| 87  | 16 | 87  | 21 |   |
| 100 | 25 | 101 | 16 | Non-responsive |
| 112 | 22 | 113 | 24 | Irrelevant |
| 172 | 1  | 172 | 4  |   |
| 179 | 22 | 179 | 22 |   |
| 180 | 4  | 180 | 5  |   |

| 219 | 18 | 219 | 19 | |
|-----|----|-----|----|-----|
| 220 | 1  | 220 | 1  | |
| 225 | 3  | 226 | 5  | |
| 233 | 20 | 234 | 21 | |
| 265 | 15 | 267 | 11 | Irrelevant |

*Deposition of James Sweeney*
*(One of Plaintiff American Club's Directors)*
*June 28 2005*

**Defendants' Deposition Designations**

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Objections |
| 6 | 5 | 6 | 7 | |
| 9 | 13 | 9 | 25 | |
| 10 | 24 | 12 | 3 | |
| 22 | 9 | 22 | 11 | |
| 23 | 19 | 26 | 4 | |
| 37 | 5 | 37 | 21 | |
| 73 | 1 | 73 | 8 | H |
| 99 | 22 | 100 | 4 | |
| 131 | 11 | 133 | 15 | HP |
| 133 | 21 (with DX 33) | 134 | 22 | |
| 166 | 25 | 168 | 19 | NF, V |
| 172 | 9 (with DX 204 & DX 205) | 180 | 20 | IR, HP, ML, V, A, AF, LPK, H |

**Plaintiff's Deposition Counter-Designations**

| From | | To | | |
|------|------|------|------|------|
| Page | Line | Page | Line | Objections |
| 78 | 8 | 79 | 6 | |
| 85 | 14 | 89 | 13 | |
| 181 | 13 | 183 | 5 | |
| 183 | 19 | 184 | 6 | Improper counter-designation |

# Exhibit 1

**Representative Insurance Policy Issued by the
American Club to its Members**

**Exhibit 1**

Assessable—1963

Policy No. **A** 5647

# AMERICAN STEAMSHIP OWNERS
# MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.

### NEW YORK, N. Y.

(Herein called the Association)

IN CONSIDERATION OF THE STIPULATIONS HEREIN NAMED

and of   ONE HUNDRED TWENTY ONE THOUSAND SEVEN HUNDRED FIFTY AND
35/100 ($121,750.35)

Dollars being Premium at the rate of

FIVE DOLLARS FIFTY FIVE CENTS             per gross registered ton

DOES INSURE   CHILBAR SHIPPING COMPANY

, Policyholder

and     KEYSTONE SHIPPING CO., CHAS. KURZ & CO., INC.AND
THE UNITED STATES OF AMERICA , AS THEIR RESPECTIVE
INTERESTS MAY APPEAR.

, Additional Assured

(Herein called collectively the Assured)

who in accepting this policy agree that the party described above as "Policyholder" shall exclusively be en-
titled to the rights of a policyholder and member as set forth in the charter and by-laws of the Association;

(Rev. 2/20/72)                                                    Page 1

AC4053451

LOSS, IF ANY, PAYABLE TO CHILBAR SHIPPING COMPANY, OR ORDER, PROVIDED THAT BEFORE PAYING ANY CLAIMS DIRECT TO CHILBAR SHIPPING COMPANY OR ORDER, THE UNDERWRITERS SHALL HAVE RECEIVED SATISFACTORY EVIDENCE THAT THE LIABILITY HAS BEEN PAID OR DISCHARGED. NOTWITHSTANDING THE FOREGOING, IF THE UNDERWRITERS RECEIVE NOTICE FROM THE UNITED STATES OF AMERICA STATING THAT A DEFAULT HAS OCCURRED UNDER THE TERMS OF THE MORTGAGES, ALL CLAIMS WILL BE PAID TO THE SECRETARY OF TRANSPORTATION FOR DISTRIBUTION BY HIM TO HIMSELF, TO THE SHIPOWNER AS THEIR INTERESTS MAY APPEAR.

IN THE INSURED SUM OF AS PER ENDORSEMENT ATTACHED                    DOLLARS
at and from the 20 day of FEBRUARY 1988, at NOON, GREENWICH MEAN     time
until the       20 day of FEBRUARY 1989, at NOON, GREENWICH MEAN     time
against the risks and subject to the terms and conditions hereunder set forth in respect of the vessel called the
CHILBAR                                                of 21,937 gross registered tons or by
whatsoever other names the said vessel is or shall be named or called.

ASSESSABILITY. The Assured are subject to a contingent liability hereunder for assessment without limit of amount for their proportionate share of any deficiency or impairment as provided by law and fixed in accordance with the by-laws of the Association; provided, however, that any such assessment shall be for the exclusive benefit of holders of policies which provide for such a contingent liability, and the holders of policies subject to assessment shall not be liable to assessment in an amount greater in proportion to the total deficiency than the ratio that the deficiency attributable to the assessable business bears to the total deficiency.

THE ASSOCIATION AGREES TO INDEMNIFY THE ASSURED AGAINST ANY LOSS, DAMAGE OR EXPENSE WHICH THE ASSURED SHALL BECOME LIABLE TO PAY AND SHALL PAY BY REASON OF THE FACT THAT THE ASSURED IS THE OWNER (OR OPERATOR, MANAGER, CHARTERER, MORTGAGEE, TRUSTEE, RECEIVER OR AGENT, AS THE CASE MAY BE) OF THE INSURED VESSEL AND WHICH SHALL RESULT FROM THE FOLLOWING LIABILITIES, RISKS, EVENTS, OCCUR-RENCES AND EXPENDITURES:

(1) LIABILITY FOR LIFE SALVAGE, LOSS OF LIFE OF, OR PERSONAL INJURY TO, OR ILLNESS OF ANY PERSON, NOT INCLUDING, HOWEVER, UNLESS OTHERWISE AGREED BY ENDORSE-MENT HEREON, LIABILITY TO AN EMPLOYEE (OTHER THAN HEREAFTER EXCEPTED) OF THE ASSURED, OR IN CASE OF HIS DEATH TO HIS BENEFICIARIES, UNDER ANY COMPENSATION ACT. LIABILITY HEREUNDER WITH RESPECT TO A MEMBER OF THE CREW SHALL INCLUDE LIABILITY ARISING ASHORE OR AFLOAT. LIABILITY HEREUNDER SHALL ALSO INCLUDE BURIAL EXPENSES NOT EXCEEDING $500., WHERE REASONABLY INCURRED BY THE ASSURED FOR THE BURIAL OF ANY SEAMAN.          LOSS OF LIFE, INJURY AND ILLNESS.

(Rev. 2/20/79)                                                      Page 2

AC4053452

(a) Liability hereunder shall include the liability of the Assured for claims under any Compensation Act (other than hereafter excepted), in respect of an employee (i) who is a member of the crew of the insured vessel, or (ii) who is on board the insured vessel with the intention of becoming a member of her crew, or (iii) who, in the event of the vessel being laid up and out of commission, is engaged in the upkeep, maintenance or watching of the insured vessel, or (iv) who is engaged by the insured vessel or its Master to perform stevedoring work in connection with the vessel's cargo at ports in Alaska and ports outside the Continental United States where contract stevedores are not readily available. This insurance, however, shall not be considered as a qualification under any Compensation Act, but, without diminishing in any way the liability of the Association under this policy, the Assured may have in effect policies covering such liabilities. All claims under such Compensation Acts for which the Association is liable under the terms of this policy are to be paid without regard to such other policies.

(b) Liability hereunder shall not cover any liability under the provisions of the Act of Congress approved September 7th, 1916 and as amended, Public Act No. 267, Sixty-fourth Congress, known as the U. S. Employees Compensation Act.

(c) Liability hereunder in connection with the handling of cargo for the insured vessel shall commence from the time of receipt by the Assured of the cargo on dock or wharf, or on craft alongside for loading, and shall continue until due delivery thereof from dock or wharf of discharge or until discharge from the insured vessel on to a craft alongside.

(d) Liability hereunder may, by endorsement hereon, be made payable to an employee of the Assured or in the event of his death to his beneficiaries or estate.

(e) Claims hereunder, other than for burial expenses, are subject to a deduction of $ **25,000.** with respect to each accident or occurrence.

(2) LIABILITY FOR EXPENSES REASONABLY INCURRED IN NECESSARILY REPATRIATING ANY MEMBER OF THE CREW OR ANY OTHER PERSON EMPLOYED ON BOARD THE INSURED VESSEL; PROVIDED, HOWEVER, THAT THE ASSURED SHALL NOT BE ENTITLED TO RECOVER ANY SUCH EXPENSES INCURRED BY REASON OF THE EXPIRATION OF THE SHIPPING AGREEMENT, OTHER THAN BY SEA PERILS, OR BY THE VOLUNTARY TERMINATION OF THE AGREEMENT. WAGES SHALL BE RECOVERABLE HEREUNDER ONLY WHEN PAYABLE UNDER STATUTORY OBLIGATION DURING UNEMPLOYMENT DUE TO THE WRECK OR LOSS OF THE INSURED VESSEL.    REPATRIATION EXPENSES.

(a) Claims hereunder are subject to a deduction of $ **10,000.** with respect to each accident or occurrence.

(3) LIABILITY FOR LOSS OR DAMAGE ARISING FROM COLLISION OF THE INSURED VESSEL WITH ANOTHER SHIP OR VESSEL WHERE THE LIABILITY IS OF A TYPE, CHARACTER, OR KIND WHICH WOULD NOT BE COVERED IN ANY RESPECT BY THE FOLLOWING PORTIONS OF THE FOUR-FOURTHS COLLISION CLAUSE IN THE AMERICAN INSTITUTE HULL CLAUSES (JUNE 2, 1977) FORM.    COLLISION.

"And it is further agreed that:

(a) if the Vessel shall come into collision with any other ship or vessel, and the Assured or the Surety in consequence of the Vessel being at fault shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in respect of such collision, the Underwriters will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as their respective subscriptions hereto bear to the Agreed Value, provided always that their liability in respect to any one such collision shall not exceed their proportionate part of the Agreed Value;

(b) in cases where, with the consent in writing of a majority (in amount) of Hull Underwriters, the liability of the Vessel has been contested, or proceedings have been taken to limit liability, the Underwriters will also pay a like proportion of the costs which the Assured shall thereby incur or be compelled to pay.

(Rev. 2/20/79)

Page 3

AC4053453

When both vessels are to blame, then, unless the liability of the owners or charterers of one or both such vessels becomes limited by law, claims under the Collision Liability clause shall be settled on the principle of Cross-Liabilities as if the owners or charterers of each vessel had been compelled to pay to the owners or charterers of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured in consequence of such collision.

The principles involved in this clause shall apply to the case where both vessels are the property, in part or in whole, of the same owners or charterers, all questions of responsibility and amount of liability as between the two vessels being left to the decision of a single Arbitrator, if the parties can agree upon a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the Assured and one to be appointed by the majority (in amount) of Hull Underwriters interested; two Arbitrators chosen to choose a third Arbitrator before entering upon the reference, and the decision of such single Arbitrator, or of any two of such three Arbitrators, appointed as above, to be final and binding.

Provided that this clause shall in no case extend to any sum which the Assured or the Surety may become liable to pay or shall pay in consequence of, or with respect to:

(a) removal or disposal of obstructions, wrecks or their cargoes under statutory powers or otherwise pursuant to law;

(b) injury to real or personal property of every description;

(c) the discharge, spillage, emission or leakage of oil, petroleum products, chemicals or other substances of any kind or description whatsoever;

(d) cargo or other property on or the engagements of the Vessel;

(e) loss of life, personal injury or illness.

Provided further that exclusions (b) and (c) above shall not apply to injury to other vessels or property thereon except to the extent that such injury arises out of any action taken to avoid, minimize or remove any discharge, spillage, emission or leakage described in (c) above."

PROVIDED, HOWEVER, THAT INSURANCE HEREUNDER SHALL NOT EXTEND TO ANY LIABILITY, WHETHER DIRECT OR INDIRECT, IN RESPECT OF THE ENGAGEMENTS OF OR THE DETENTION OR LOSS OF TIME OF THE INSURED VESSEL.

(a) Claims hereunder shall be settled on the principles of Cross-Liabilities to the same extent only as provided in the four-fourths Collision Clause above mentioned.

(b) Where both vessels are the property, in part or in whole, of the same Owners or Charterers, claims hereunder shall be settled on the basis of the principles set forth in the four-fourths Collision Clause above mentioned.

(c) Claims hereunder shall be separated among and take the identity of the several classes of liability for loss, damage, and expense enumerated in this policy and each class shall be subject to the deductions, inclusions, exclusions and special conditions applicable in respect to such class.

(d) Notwithstanding the foregoing, the Association shall not be liable for any claims hereunder where the various liabilities resulting from such collision, or any of them, have been compromised, settled or adjusted without the written consent of the Association.

AC4053454

(4) LIABILITY FOR LOSS OF OR DAMAGE TO ANY OTHER VESSEL OR CRAFT, OR TO PROPERTY ON BOARD SUCH OTHER VESSEL OR CRAFT, CAUSED OTHERWISE THAN BY COLLISION OF THE INSURED VESSEL WITH ANOTHER VESSEL OR CRAFT.

**DAMAGE CAUSED OTHERWISE THAN BY COLLISION.**

(a) Where such other vessel or craft or property on board such other vessel or craft belongs to the Assured, claims hereunder shall be adjusted as if it belonged to a third person; provided, however, that if such vessel, craft or property be insured, the Association shall be liable hereunder only in so far as the loss or damage, but for the insurance herein provided, is not or would not be recoverable by the Assured under such other insurance.

(b) Claims hereunder are subject to a deduction of $ 10,000. with respect to each accident or occurrence.

(5) LIABILITY FOR DAMAGE TO ANY DOCK, PIER, JETTY, BRIDGE, HARBOR, BREAKWATER, STRUCTURE, BEACON, BUOY, LIGHTHOUSE, CABLE, OR TO ANY FIXED OR MOVABLE OBJECT OR PROPERTY WHATSOEVER, EXCEPT ANOTHER VESSEL OR CRAFT OR PROPERTY ON AN-OTHER VESSEL OR CRAFT, OR TO PROPERTY ON THE INSURED VESSEL UNLESS PROPERTY ON THE INSURED VESSEL IS ELSEWHERE COVERED HEREIN.

**DAMAGE TO DOCKS, BUOYS, ETC.**

(a) Where any such object or property belongs to the Assured, claims hereunder shall be adjusted as if it belonged to a third person; provided, however, that if such object or property be insured, the Association shall be liable hereunder only in so far as the damage, but for the insurance herein provided, is not or would not be recover-able by the Assured under such other insurance.

(b) Claims hereunder are subject to a deduction of $ 25,000. with respect to each accident or occurrence.

(6) LIABILITY FOR COSTS OR EXPENSES OF OR INCIDENTAL TO THE REMOVAL OF THE WRECK OF THE INSURED VESSEL; PROVIDED, HOWEVER, THAT:

**WRECK REMOVAL.**

(a) From such costs and expenses shall be deducted the value of any salvage from or which might have been recovered from the wreck inuring, or which might have inured, to the benefit of the Assured;

(b) The Association shall not be liable for any costs or expenses of a type, character or kind which would be payable under the terms of a policy written on the American Institute Hull Clauses (June 2, 1977) Form and a policy written on the American Institute Increased Value and Excess Liabilities Clauses (November 3, 1977) Form;

(c) In the event that the wreck of the insured vessel is upon property owned, leased, rented, or otherwise occupied by the Assured, the Association shall be liable for any liability for removal of the wreck which would be imposed upon the Assured by law in the absence of contract if the wreck had been upon the property belonging to another, but only for the excess over any amount recoverable under any other insur-ance applicable thereto;

(d) Each claim hereunder is subject to a deduction of $10,000.

(7) LIABILITY FOR LOSS OF OR DAMAGE TO OR IN CONNECTION WITH CARGO OR OTHER PROPERTY (EXCEPT MAIL OR PARCELS POST), INCLUDING BAGGAGE AND PERSONAL EFFECTS OF PASSENGERS, TO BE CARRIED, CARRIED OR WHICH HAS BEEN CARRIED ON BOARD THE INSURED VESSEL; PROVIDED, HOWEVER, THAT NO LIABILITY SHALL EXIST HEREUNDER FOR:

**CARGO.**

(a) Loss, damage or expense incurred in connection with the custody, carriage or de-livery of specie, bullion, precious metals, precious stones, jewelry, silks, furs, currency, bonds or other negotiable documents, or similar valuable property, unless specially agreed to and accepted for transportation under a form of contract approved, in writing, by the Association;

**SPECIE, BULLION, JEWELRY, ETC.**

(Rev. 2/20/79)

Page 5

AC4053455

(b) Loss, damage or expense arising out of or in connection with the care, custody, carriage or delivery of cargo requiring refrigeration, unless the spaces, apparatus and means used for the care, custody and carriage thereof have been surveyed by a classification or other competent disinterested surveyor under working conditions before the commencement of each round voyage and found in all respects fit, and unless the Association has approved in writing the form of contract under which such cargo is accepted for transportation;

REFRIGERATION.

(c) Loss or damage to any passenger's baggage or personal effects, unless the form of ticket issued to the passenger shall have been approved, in writing, by the Association;

PASSENGERS' EFFECTS.

(d) Loss, damage or expense arising from any deviation in breach of the Assured's obligation to cargo, known to the Assured in time to enable him specifically to insure his liability therefor, unless notice thereof has been given the Association, and the Association has agreed, in writing, that such insurance was unnecessary;

DEVIATION.

(e) Loss, damage or expense arising from stowage of under deck cargo on deck, or stowage of cargo in spaces not suitable for its carriage, unless the Assured shall show that every reasonable precaution has been taken by him to prevent such improper stowage;

STOWAGE IN IMPROPER SPACES.

(f) Loss, damage or expense arising from issuance of clean bills of lading for goods known to be missing, unsound or damaged;

BILLS OF LADING.

(g) Loss, damage or expense arising from the intentional issuance of bills of lading prior to receipt of the goods described therein, or covering goods not received at all;

(h) Loss, damage or expense arising from delivery of cargo without surrender of bills of lading;

(i) Freight on cargo short-delivered, whether or not prepaid, or whether or not included in the claim and paid by the Assured;

FREIGHT.

AND PROVIDED FURTHER THAT:

(j) Liability hereunder shall in no event exceed that which would be imposed by law in the absence of contract;

(k) Liability hereunder shall be limited to such as would exist if the charter party, bill of lading or contract of affreightment contained (A) a negligence general average clause in the form hereinafter specified under Paragraph (12); (B) a clause providing that any provision of the charter party, bill of lading or contract of affreightment to the contrary notwithstanding, the Assured and the insured vessel shall have the benefit of all limitations of and exemptions from liability accorded to the owner or chartered owner of vessels by any statute or rule of law for the time being in force; (C) such clauses, if any, as are required by law to be stated therein; (D) and such other protective clauses as are commonly in use in the particular trade;

PROTECTIVE CLAUSES REQUIRED IN CONTRACT OF AFFREIGHTMENT.

(l) When cargo carried by the insured vessel is under a bill of lading or similar document of title subject or made subject to the Carriage of Goods by Sea Act of the United States or a law of any other country of similar import, liability hereunder shall be limited to such as is imposed by said Act or law, and if the Assured or the insured vessel assumes any greater liability or obligation, either in respect of the valuation of the cargo or in any other respect, than the minimum liabilities and obligations imposed by said Act or law, such greater liability or obligation shall not be covered hereunder;

CARRIAGE OF GOODS BY SEA ACT.

(m) When cargo carried by the insured vessel is under a charter party, bill of lading or contract of affreightment not subject or made subject to the Carriage of Goods by Sea Act of the United States or a law of any other country of similar import, liability

LIMIT OF $500. PER PACKAGE.

AC4053456

hereunder shall be limited to such as would exist if said charter party, bill of lading or contract of affreightment contained a clause exempting the Assured and the insured vessel from liability for losses arising from unseaworthiness provided that due diligence shall have been exercised to make said vessel seaworthy and properly manned, equipped and supplied, and a clause effectively limiting the Assured's liability for total loss or damage to goods shipped to $500. per package, or in case of goods not shipped in packages, per customary freight unit, and providing for pro rata adjustment on such basis for partial loss or damage;

(n) In the event cargo is carried under an arrangement not reduced to writing, the Association's liability hereunder shall be no greater than if such cargo had been carried under a charter party, bill of lading or contract of affreightment containing the clauses referred to herein; **ORAL CONTRACT.**

(o) Where cargo on board the insured vessel is the property of the Assured, such cargo shall be deemed to be carried under a contract containing the protective clauses described in clauses (k), (l), and (m) herein; and such cargo shall be deemed to be fully insured under the usual form of cargo policy, and in case of loss of or damage to such cargo the Assured shall be insured hereunder in respect of such loss or damage only to the extent that he would have been if the cargo had belonged to another, but only in the event and to the extent that the loss or damage would not be recoverable from marine insurers under a cargo policy as above specified; **ASSURED'S OWN CARGO.**

(p) No liability shall exist hereunder for any loss, damage or expense in respect of cargo, or baggage and personal effects of passengers being transported on land or while on another vessel or craft unless such loss, damage or expense is caused directly by the insured vessel, her master, officers or crew; **TRANSPORTATION ON LAND OR OTHER CRAFT.**

(q) No liability shall exist hereunder for any loss, damage or expense in respect of cargo, or baggage and personal effects of passengers before loading on or after discharge from the insured vessel caused by flood, tide, windstorm, earthquake, fire, explosion, heat, cold, deterioration, collapse of wharf, leaky shed, theft or pilferage unless such loss, damage or expense is caused directly by the insured vessel, her master, officers or crew; **CARGO ON DOCK.**

(r) A deduction of $ 25,000    shall be made from any claim or claims with respect to each cargo carried, including passengers' baggage and personal effects.

(8) LIABILITY FOR FINES AND PENALTIES FOR THE VIOLATION OF ANY LAWS OF THE UNITED STATES, OR OF ANY STATE THEREOF, OR OF ANY FOREIGN COUNTRY; PROVIDED, HOWEVER, THAT THE ASSOCIATION SHALL NOT BE LIABLE TO INDEMNIFY THE ASSURED AGAINST ANY SUCH FINES OR PENALTIES RESULTING DIRECTLY OR INDIRECTLY FROM THE FAILURE, NEGLECT OR FAULT OF THE ASSURED OR ITS MANAGING OFFICERS TO EXERCISE THE HIGHEST DEGREE OF DILIGENCE TO PREVENT A VIOLATION OF ANY SUCH LAWS. **FINES AND PENALTIES.**

(a) Claims hereunder are subject to a deduction of $ 10,000.    with respect to each fine or penalty.

(9) LIABILITY FOR EXPENSES INCURRED IN RESISTING ANY UNFOUNDED CLAIM BY A SEAMAN OR OTHER PERSON EMPLOYED ON BOARD THE INSURED VESSEL, OR IN PROSECUTING SUCH PERSON OR PERSONS IN CASE OF MUTINY OR OTHER MISCONDUCT; NOT INCLUDING, HOWEVER, COSTS OF SUCCESSFULLY DEFENDING CLAIMS ELSEWHERE PROTECTED IN THIS POLICY. **MUTINY, MISCONDUCT.**

(a) Claims hereunder are subject to a deduction of $ 10,000.    with respect to each occurrence.

AC4053457

(10) LIABILITY FOR EXTRAORDINARY EXPENSES, INCURRED IN CONSEQUENCE OF THE OUT-
BREAK OF PLAGUE OR OTHER DISEASE ON THE INSURED VESSEL, FOR DISINFECTION OF THE
VESSEL OR OF PERSONS ON BOARD, OR FOR QUARANTINE EXPENSES, NOT BEING THE
ORDINARY EXPENSES OF LOADING OR DISCHARGING, NOR THE ORDINARY WAGES OR
PROVISIONS OF CREW OR PASSENGERS: PROVIDED, HOWEVER, THAT NO LIABILITY SHALL
EXIST HEREUNDER IF THE VESSEL BE ORDERED TO PROCEED TO A PORT WHERE IT IS KNOWN
THAT SHE WILL BE SUBJECTED TO QUARANTINE.
**QUARANTINE EXPENSES.**

(a) Each claim hereunder is subject to a deduction of $ 10,000.

(11) LIABILITY FOR PORT CHARGES INCURRED SOLELY FOR THE PURPOSE OF PUTTING IN TO
LAND AN INJURED OR SICK SEAMAN OR PASSENGER, AND THE NET LOSS TO THE ASSURED
IN RESPECT OF BUNKERS, INSURANCE, STORES AND PROVISIONS AS THE RESULT OF THE
DEVIATION.
**PUTTING IN EXPENSES.**

(12) LIABILITY FOR CARGO'S PROPORTION OF GENERAL AVERAGE, INCLUDING SPECIAL
CHARGES, SO FAR AS THE ASSURED IS NOT ENTITLED TO RECOVER THE SAME FROM ANY
OTHER SOURCE: PROVIDED, HOWEVER, THAT IF THE CHARTER PARTY, BILL OF LADING OR
CONTRACT OF AFFREIGHTMENT DOES NOT CONTAIN THE NEGLIGENCE GENERAL AVER-
AGE CLAUSE QUOTED BELOW, THE ASSOCIATION'S LIABILITY HEREUNDER SHALL BE
LIMITED TO SUCH AS WOULD EXIST IF SUCH CLAUSE WERE CONTAINED THEREIN: VIZ.,
**CARGO'S PROPN. G/A.**

"In the event of accident, danger, damage or disaster, before or after commence-
ment of the voyage resulting from any cause whatsoever, whether due to negligence
or not, for which, or for the consequence of which, the Carrier is not responsible, by
statute, contract, or otherwise, the goods, the shipper and the consignee shall con-
tribute with the Carrier in general average to the payment of any sacrifices, losses,
or expenses of a general average nature that may be made or incurred, and shall
pay salvage and special charges incurred in respect of the goods. If a salving ship
is owned or operated by the Carrier, salvage shall be paid for as fully and in the
same manner as if such salving ship or ships belonged to strangers."
**NEGLIGENCE G/A CLAUSE.**

(a) Claims hereunder are subject to a deduction of $ 10,000.     with
respect to each accident or occurrence.

(13) LIABILITY FOR EXPENSES ARISING OUT OF ACTION TAKEN IN COMPLIANCE WITH THE
LAWS OF THE UNITED STATES OR ANY STATE OR SUBDIVISION THEREOF OR OF ANY
COUNTRY TO AVOID DAMAGE FROM, OR TO MINIMIZE OR REMOVE, ANY DISCHARGE,
SPILLAGE, EMISSION OR LEAKAGE OF OIL, PETROLEUM PRODUCTS, CHEMICALS OR OTHER
SUBSTANCES.
**DISCHARGE OF OIL OR OTHER SUBSTANCE.**

(a) Claims hereunder are subject to a deduction of $ 10,000.     with
respect to each accident or occurrence.

(14) LIABILITY FOR COSTS, CHARGES AND EXPENSES REASONABLY INCURRED AND PAID BY
THE ASSURED IN CONNECTION WITH ANY LIABILITY INSURED UNDER THIS POLICY, SUB-
JECT, HOWEVER, TO THE SAME DEDUCTION THAT WOULD BE APPLICABLE UNDER THIS POL-
ICY TO THE LIABILITY DEFENDED; PROVIDED THAT IF ANY LIABILITY IS INCURRED AND PAID
BY THE ASSURED AS AFORESAID, THE DEDUCTION SHALL BE APPLIED TO THE AGGREGATE
OF THE CLAIM AND EXPENSES; AND PROVIDED FURTHER THAT THE ASSURED SHALL NOT
BE ENTITLED TO INDEMNITY FOR EXPENSES UNLESS THEY WERE INCURRED WITH THE
APPROVAL IN WRITING OF THE ASSOCIATION, OR THE ASSOCIATION SHALL BE SATISFIED
THAT SUCH APPROVAL COULD NOT HAVE BEEN OBTAINED UNDER THE CIRCUMSTANCES
WITHOUT UNREASONABLE DELAY, OR THAT THE EXPENSES WERE REASONABLY AND PROP-
ERLY INCURRED; AND PROVIDED FURTHER THAT ANY SUGGESTION OR APPROVAL OF
COUNSEL, OR INCURRING OF EXPENSES IN CONNECTION WITH LIABILITIES NOT INSURED
UNDER THIS POLICY, SHALL NOT BE DEEMED AN ADMISSION OF THE ASSOCIATION'S
LIABILITY.
**EXPENSES OF INVESTIGATION AND DEFENSE.**

AC4053458

(a) It is understood and agreed that the Association may undertake the investigation of any occurrence which might develop into a claim against the Assured, and may undertake the investigation and defense of any claim made against the Assured with respect to which the Assured shall be or may claim to be insured by the Association, and that during such investigation and/or defense the Association may incur expenses, which expenses shall be for the account of the Assured, and such investigation and/or defense shall not be considered as an admission of the Association's liability for such claim or expenses, and the liability of the Association to the Assured for any loss, damage or expense shall not be affected by any acts of the Association prior to formal presentation to the Association of the Assured's claim for reimbursement or indemnity.

(15) EXPENSES WHICH THE ASSURED MAY INCUR UNDER AUTHORIZATION OF THE ASSOCIA-TION IN THE INTEREST OF THE ASSOCIATION.


## GENERAL CONDITIONS AND LIMITATIONS

(16) In the event of any happening which may result in loss, damage or expense for which the Association may become liable, prompt notice thereof, on being known to the Assured, shall be given by the Assured to the Association.   **PROMPT NOTICE OF CLAIM.**

(17) The Association shall not be liable for any claim not presented to the Association with proper proofs of loss within one year after payment by the Assured.

(18) In no event shall suit on any claim be maintainable against the Association unless commenced within two years after the loss, damage or expense resulting from liabil-ities, risks, events, occurrences and expenditures specified under this policy shall have been paid by the Assured.   **TIME FOR SUIT.**

(19) If the Assured shall fail or refuse to settle any claim as authorized or directed by the Association, the liability of the Association to the Assured shall be limited to the amount for which settlement could have been made, or, if the amount is unknown, to the amount which the Association authorized.   **ASSURED'S FAILURE TO SETTLE CLAIMS.**

(20) Whenever required by the Association, the Assured shall aid in securing information and evidence and in obtaining witnesses and shall cooperate with the Association in the defense of any claim or suit or in the appeal from any judgment, in respect of any occurrence as hereinbefore provided.   **DEFENSE OF CLAIMS.**

(21) Unless otherwise agreed by endorsement hereon, the Association's liability shall in no event exceed that which would be imposed on the Assured by law in the absence of contract; provided, however, that the Assured's right of indemnity from the Asso-ciation shall include any loss, damage or expense covered under the provisions of this policy arising as a result of any contract for the employment of tugs where such con-tract is one which is substantially similar to those customarily in use or in force during the currency of this policy. The Assured's right of indemnity hereunder shall not include any liability for loss, damage or expense arising from collision between the insured vessel and another vessel or craft, other than liability consequent on such collision, (a) for removal of obstructions under statutory powers, (b) for damage to any dock,   **ASSUMED CONTRACTUAL LIABILITY.**

(Rev. 2/20/72)   Page 9

AC4053459

pier, jetty, bridge, harbor, breakwater, structure, beacon, buoy, lighthouse, cable or similar structures, (c) in respect of the cargo of the insured vessel and (d) for loss of life, personal injury and illness.

(22) No claim or demand against the Association shall be assigned or transferred without the written consent of the Association, and unless otherwise specifically agreed by endorsement hereon no person other than the Assured or Loss Payee named herein, or a receiver of the property or estate thereof, shall acquire any right against the Association hereunder.

**ASSIGNMENT.**

(23) The Association shall be subrogated to all the rights which the Assured may have against any other person or entity, in respect of any payment made under this policy, to the extent of such payment, and the Assured shall, upon the request of the Association, execute all documents necessary to secure to the Association such rights.

**SUBROGATION.**

(24) The Association shall not be liable for any loss, damage or expense against which, but for the insurance herein provided, the Assured is or would be insured under existing insurance.

**OTHER INSURANCE.**

(25) If and when the Assured under this policy has any interest other than as an owner or bareboat charterer of the insured vessel, in no event shall the Association be liable hereunder to any greater extent than if such Assured were the owner or bareboat charterer and were entitled to all the rights of limitation to which a shipowner is entitled.

**LIMITATION OF LIABILITY.**

(26) If an insured vessel shall be and remain in any safe port for a period of thirty (30) or more consecutive days after finally mooring there (such period being computed from the day of arrival to the day of departure, one only being included) the Association is to return ⁷·⁵ per cent of the initial annual premium, pro-rated daily, for the period the insured vessel shall be laid up without cargo and without crew (other than a skeleton crew) and to return ⁷·⁵ per cent of the initial annual premium, prorated daily, for the period the insured vessel shall be laid up with cargo or crew on board, provided the Assured give written notice to the Association as soon as practicable after the commencement and termination of such lay up period. The Association shall have absolute discretion to determine whether a port is safe and how many crew members constitute a skeleton crew within the meaning of this paragraph.

**LAY-UP RETURNS.**



(27) Liability hereunder in respect of any one accident or occurrence is limited to the amount hereby insured.

**LIMIT OF AMOUNT INSURED.**

CANCELLATION PROVISIONS:

(28) (a) If the insured vessel should be sold or requisitioned, the Association shall have the option to cancel insurance hereunder with respect to the insured vessel, the Association to return 6.875 per cent of the gross annual premium for each thirty (30) consecutive days of the unexpired term of the insurance with respect to said vessel. If the entire management, control and possession of the insured vessel be transferred whether by demise charter or by change in corporate ownership or control of the insured owner, the Association shall have the option to cancel insurance here-under with respect to the insured vessel, the Association to return three (3) percent

**CANCELLATION.**

7.25

(Rev. 2/20/72)

AC4053460

of the gross annual premium for each thirty (30) consecutive days of the unexpired term of the insurance with respect to said vessel. Cancellation shall not relieve the Assured from liability for premiums under this policy and for assessments levied ond to be levied for deficiencies and impairments in respect to the insurance year for which the policy was originally written.

(b) In the event of non-payment of the full premium within sixty (60) days after attachment, or, if installment payment of the premium has been arranged, in the event of non-payment of any installment thereof within twenty (20) days after it is due, this policy may be cancelled by the Association upon five (5) days' written notice being given the Assured. Should this policy be cancelled under the provisions of this clause or otherwise or should the Assured fail to pay any assessment within ten (10) days after it is due or should the Assured or any of them become insolvent or bankrupt or assign its property for the benefit of creditors or suffer the appointment of a receiver for its property or any part thereof or the institution of dissolution proceedings by or against it, the Association shall not be liable for any claims whatsoever under this policy unless within sixty (60) days from the date of such cancellation or the occurrence of such insolvency, bankruptcy, assignment, receivership or dissolution proceedings, there are paid to the Association by or an behalf of the Assured all premiums due, and the payment of any premiums to become due as well as all possible assessments is unconditionally guaranteed by a responsible surety.

(c) In the event that Sections 182 to 189, both inclusive, of U. S. Code, Title 46, or any other existing law or laws determining or limiting liability of shipowners and carriers, or any of them, shall, while this policy is in force, be modified, amended or repealed, or the liabilities of shipowners or carriers be increased in any respect by legislative enactment, the Association shall have the right to cancel said insurance upon giving thirty (30) days' written notice of their intention so to do, and in the event of such cancellation, make return of premium upon a pro rata daily basis.

(29) NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS POLICY, THE ASSOCIATION SHALL NOT BE LIABLE FOR ANY LOSS, DAMAGE OR EXPENSE SUSTAINED, DIRECTLY OR INDIRECTLY, BY REASON OF:    **RISKS EXCLUDED.**

(a) Loss, damage or expense to hull, machinery, equipment or fittings of the insured vessel, including refrigerating apparatus and wireless equipment, whether or not owned by the Assured;

(b) Cancelment or breach of any charter or contract, detention of the vessel, bad debts, insolvency, fraud of agents, loss of freight, passage money, hire, demurrage or any other loss of revenue;

(c) Any loss, damage, sacrifice or expense of a type, character or kind which would be payable under the terms of a policy written on the American Institute Hull Clauses (June 2, 1977) Form and a policy written on the American Institute Increased Value and Excess Liabilities Clauses (November 3, 1977) Form whether or not the insured vessel is fully covered under those policies by insurance and excess insurance sufficient in amount to pay in full and without limit all such loss, damage, sacrifice or expense;

(d) The insured vessel towing any other vessel or craft, unless such towage was to assist such other vessel or craft in distress to a port or place of safety; provided, however, that this exception shall not apply to claims covered under Paragraph (1) of this policy;

(Rev. 2/20/79)    Page 11

AC4053461

(e) For any claim for loss of life, personal injury or illness in relation to the handling of cargo where such claim arises under a contract of indemnity between the Assured and his sub-contractor.

(30) In every case where this policy insures tugs, Clause (b) of Paragraph (6) and Clause (c) of Paragraph (29) shall be deemed to refer to the American Institute Tug Form, August 1, 1976 instead of the American Institute Hull Clauses (June 2, 1977) Form and Paragraph (3) shall be deemed to incorporate the Collision Clause contained in said policy (American Institute Tug Form, August 1, 1976) instead of the Collision Clause quoted in said Paragraph (3) and the following clause shall be substituted for and supersede Clause (d) of Paragraph (29) namely  **TUGS.**

"Loss of or damage to any vessel or vessels in tow and/or their cargoes, whether such loss or damage occurs before, during or after actual towage; provided, that this exception shall not apply to claims under Paragraph (1) of this policy."

(31) Notwithstanding anything to the contrary contained in this policy, the Association shall not be liable for or in respect of any loss, damage or expense sustained by reason of capture, seizure, arrest, restraint or detainment, or the consequences thereof or of any attempt thereat; or sustained in consequence of military, naval or air action by force of arms, including mines and torpedoes or other missiles or engines of war, whether of enemy or friendly origin; or sustained in consequence of placing the vessel in jeopardy as an act or measure of war taken in the actual process of a military engagement, including embarking or disembarking troops or material of war in the immediate zone of such engagement; and any such loss, damage and expense shall be excluded from this policy without regard to whether the Assured's liability therefor is based on negligence or otherwise, and whether before or after a declaration of war.  **WAR RISKS.**

IN WITNESS WHEREOF the Association has caused this Policy to be signed in its behalf this        25        day of        MARCH        , 19    88    

AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY ASSOCIATION, INC.

By Shipowners Claims Bureau, Inc., Manager.

_____
Authorized Signature

(Rev. 2/20/79)                                                                 Page 12

AC4053462

ENDORSEMENT to be attached to and made a part of Policy No.    A-5647
ASSURED    CHILBAR SHIPPING COMPANY

SCHEDULE OF VESSELS

| VESSEL | G.R.T. | RATE | PREMIUM |
|--------|--------|------|---------|
| CHILBAR | 21,937 | $5.55 | $121,750.35 |

All other terms and conditions remaining unchanged.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION
AND INDEMNITY ASSOCIATION, INC.
SHIPOWNERS CLAIMS BUREAU, Inc. Manager

New York,..........MARCH 25......., 19.88.    By.......................
Authorized Signature

FORM No. 3768C  H.F.Co.-3/88

AC4053463

ENDORSEMENT to be attached to and made a part of Policy No.    A-5647
ASSURED         CHILBAR SHIPPING COMPANY

## SUM INSURED

The sum insured hereunder is FOUR HUNDRED AND SIXTY-TWO
MILLION DOLLARS ($462,000,000.); PROVIDED, however, that
recovery shall be limited to FOUR HUNDRED MILLION DOLLARS
($400,000,000.) for each insured vessel, each separate
accident or occurrence in respect of oil pollution liability
including fines, costs and expenses and clean-up, and
damages payable to any other person as may arise in respect
of oil pollution liability;

PROVIDED further that where an insured vessel gives or
attempts to give salvage or other assistance to another ship
following a casualty, any oil pollution liability incurred
by the insured vessel in consequence thereof shall be
aggregated with any oil pollution liability incurred by any
other ships similarly assisting in connection with the same
casualty which are insured in respect of oil pollution
liability either by the Association or by any other
Association which participates in the International Group
Excess Reinsurance Policies, and recovery in respect of the
oil pollution liability of any insured vessel assisting as
aforesaid shall not exceed such proportion of the above
$400,000,000. limit as that vessel's oil pollution liability
bears to the aggregate of the oil pollution liabilities of
all the similarly assisting ships.

All other terms and conditions remaining unchanged.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION
AND INDEMNITY ASSOCIATION, INC.
SHIPOWNERS CLAIMS BUREAU, Inc., Manager

New York, ....MARCH..25............, 19.88.       By..................................................
                                                        Authorized Signature

FORM No. 3768C  H.F.Co.-3/88

AC4053464

ENDORSEMENT to be attached to and made a part of Policy No.     A-5647
ASSURED     CHILBAR SHIPPING COMPANY

## PORT OF LONG BEACH

It is hereby agreed that if by reason of the acceptance of
pilotage under the terms, conditions and provisions of The
Port of Long Beach, California Tariff the Assured becomes
legally liable to indemnify and hold harmless a pilot, the
City of Long Beach, California, Board of Harbor Commissioners
and each of their officers, employees and Pilotage Contractors
in respect of liability arising out of suits or actions
directly brought against the pilot, the City of Long Beach,
California, Board of Harbor Commissioners and each of their
officers, employees and Pilotage Contractors, by third parties
by reason of errors or omissions of the said pilot in the
performance of pilotage services, this Policy shall insure
liability, to the same extent and subject to the same terms
and conditions of the Policy which would be applicable if said
liability were a legal liability for the damages so indemnified,
imposed by law and not by contract, not including, however,
any liability which would in that event be covered under the
"Local Towage Contract Clause" (Revised) dated March 7, 1960,
in current use by the American Hull Insurance Syndicate;
PROVIDED, however, that in any case where the Assured is
entitled to a statutory limitation of liability, the liability
of the Association, under this Policy, shall not be increased
by this endorsement beyond what it would have been if the
Assured's liability for indemnification of the pilot, the City
of Long Beach, California, Board of Harbor Commissioners and
each of their officers, employees and Pilotage Contractors
were subject to such statutory limitation and included in the
liabilities limited hereby.

All other terms and conditions remaining unchanged.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION
AND INDEMNITY ASSOCIATION, INC.
SHIPOWNERS CLAIMS BUREAU, Inc. Manager

New York,......MARCH 25..., 19 88.                    By .................................
                                                          Authorized Signature

FORM No. 3768C  H.F.Co.-3/88

AC4053465

ENDORSEMENT to be attached to and made a part of Policy No.     A-5647
ASSURED      CHILBAR SHIPPING COMPANY

## INDEMNITY FOR PILOTAGE DOCKING AND UNDOCKING

Notwithstanding anything to the contrary contained in Paragraph
(21) of this policy, it is hereby understood and agreed that
the Assured's right of indemnity from the Association shall
include any loss, damage or expense covered under the
provisions of this policy arising as a result of agreements
between the Assured and pilots in regard to the use of pilots'
services when docking or undocking vessels insured hereunder,
which agreements contain clauses reading substantially as
follows:

"PILOT NOT TO BE HELD PERSONALLY LIABLE IN RESPECT TO DOCKING
AND UNDOCKING PILOTED VESSELS: The services of a sea pilot
while engaged or employed on board a piloted vessel in
connection with docking and undocking are accepted on the
understanding that, for that limited and specific service only
the pilot is acting as a servant of the owner(s) and that the
owner(s) of a vessel which is making use of her own propelling
power will not assert any personal liability to respond in
damages, including any rights over against the pilot for any
damage sustained or caused by the piloted vessel, even though
resulting from the pilot's negligence in respect to the
handling of the vessel and in the giving of orders when the
vessel is solely engaged in docking or undocking, in respect
to the handling of such vessel without the use of an assisting
tug or tugs, or in the handling of the vessel and in the
giving of orders to any of the tugs furnished for or engaged
in the assisting services; excepting, however, the personal
liability or any rights over against the pilot for his wilful
misconduct."

All other terms and conditions remaining unchanged.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION
AND INDEMNITY ASSOCIATION, INC.
SHIPOWNERS CLAIMS BUREAU, Inc., Manager

New York,..........MARCH..25......., 19..88..

By.....................................................
Authorized Signature

FORM No. 3768C  H.F.Co.-3/88

AC4053466

ENDORSEMENT to be attached to and made a part of Policy No.    A-5647
ASSURED        CHILBAR SHIPPING COMPANY

## RADIO/COMMUNICATION/AIDS TO NAVIGATION/SAFETY EQUIPMENT

Notwithstanding anything to the contrary contained in Paragraph
(21) of this policy, it is hereby agreed that the Assured's
right of indemnity from the Association shall include any
loss, damage or expense covered under the provisions of the
policy arising as a result of contracts in respect of the
leasing or servicing of radio apparatus or equipment, or
equipment used for purposes of communication or as aids to
navigation or safety devices, which contracts contain
provisions providing in substance as follows:

"SECTION 5: The SHIP COMPANY shall indemnify and save the
RADIOMARINE CORPORATION harmless from any and all claims,
suits, damages, costs or expenses arising from or growing out
of any damage or injury to any person or property or death of
any person, or arising from or growing out of general average,
salvage, or towage, except as otherwise provided in this
Agreement, PROVIDED, HOWEVER, that the provisions of this
Section 5 shall not apply to loss, damage, injury or death
arising from or growing out of mistakes, delays or defaults in
the handling of such radio-telegrams as are not free from ship
station tolls pursuant to this agreement."

All other terms and conditions remaining unchanged.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION
AND INDEMNITY ASSOCIATION, INC.
SHIPOWNERS CLAIMS BUREAU, Inc., Manager

New York,............MARCH 25........,19 88        By.........................................
                                                        Authorized Signature

FORM No. 3768C  H.F.Co.-3/88

AC4053467

ENDORSEMENT to be attached to and made a part of Policy No.

ASSURED       CHILBAR SHIPPING COMPANY                A-5647

## TOWAGE AGREEMENTS

Notwithstanding anything to the contrary contained in Paragraph
(21) of this policy, it is hereby agreed that the Assured's
right of indemnity from the Association shall include any
loss, damage or expense covered under the provisions of the
policy arising as a result of agreements to be entered into
between the Assured and McAllister Brothers, Inc., in regard
to the use of tugs in the Norfolk/Newport New area, which
agreement contains the following provision:

"When any licensed pilot or a captain of any tug furnished to
or engaged in the service of assisting a vessel making use of
or having available her own propelling power, goes on board
such vessel, it is understood and agreed that he becomes the
borrowed servant of the vessel assisted and her owner or
operator for all purposes and in every respect, his services
while so on board being the work of the vessel assisted and
not of the tugboat company and being subject to the exclusive
supervision and control of the ship's personnel.

With respect to vessels that are not owned by the person or
company ordering the tug service, it is understood and agreed
that such person or company warrants that it has authority to
bind the vessel owner to all provisions of the preceding
paragraphs, and agrees to indemnify and hold us harmless, and
also those furnishing the tugs and the tugs, their owners,
agents, charterers, operators and managers, from all damages
and expenses that may be sustained or incurred in the event
and in consequence of such person or company not having such
authority."

All other terms and conditions remaining unchanged.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION
AND INDEMNITY ASSOCIATION, INC.
SHIPOWNERS CLAIMS BUREAU, Inc., Manager

New York,.......MARCH 25......, 19 88    By.......................
                                              Authorized Signature

FORM No. 376BC H.F.Co.-3/88

AC4053468

ENDORSEMENT to be attached to and made a part of Policy No.   A-5647
ASSURED      CHILBAR SHIPPING COMPANY

### INTERNATIONAL TANKER INDEMNITY ASSOCIATION, LTD. CLAUSE

Effective from inception, Paragraph 29 is hereby amended by adding to it the following sub-paragraph:

> "(f) Any loss, damage, sacrifice or expense payable under insurance existing with International Tanker Indemnity Association Limited, and covering the insured vessel, whether or not the insured vessel is fully covered thereunder sufficient in amount to pay in full and without limit all such loss, damage, sacrifice or expense, and whether or not any recovery thereunder is sought or obtained."

All other terms and conditions remaining unchanged.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.
SHIPOWNERS CLAIMS BUREAU, Inc., Manager

New York,..........MARCH 25......, 19 88.

By.........................................................
Authorized Signature

FORM No. 3768C  H.F.Co.-3/88

AC4053469

ENDORSEMENT to be attached to and made a part of Policy No.   A-5647
ASSURED        CHILBAR SHIPPING COMPANY

## NO RECOURSE

There shall be no recourse against the United States of
America for payment of premiums, calls or assessments.

## CANCELLATION NOTIFICATION

In the event of any actual or proposed cancellation at least
ten (10) business days prior written notice shall be given to
the Secretary  of Transporation, United States Department of
Transportation, 400 Seventh Street S.W., Washington, D.C.
20590, Attn: Director, Office of Marine Insurance.

All other terms and conditions remaining unchanged.

                          AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION
                              AND INDEMNITY ASSOCIATION, INC.
                          SHIPOWNERS CLAIMS BUREAU, Inc., Manager

New York,........MARCH 25......., 19..88..        By.....................................
                                                      Authorized Signature

FORM No. 3768C  H.F.Co.-3/88

AC4053470

ENDORSEMENT to be attached to and made a part of Policy No.    A-5647
ASSURED    CHILBAR SHIPPING COMPANY

## EXCESS COLLISION LIABILITY

Coverage under Paragraph (3) of this policy is extended to include the members liability for loss or damage arising from collision of the insured vessel with another ship or vessel which exceeds the amount recoverable under the policies covering Hull and Machinery and Excess Liabilities by reason of such loss or damage exceeding the valuation under the said policies. Provided always that for the purpose of determining any sum recoverable under this paragraph the Association shall have the privilege to determine the proper value at which the insured vessel should have been insured under the Hull Policies and the Association shall only be liable for the excess (if any) of the amount which would have been recoverable under the Hull Policies had the insured vessel been insured thereunder at such value. For the purpose of this endorsement "proper value" is defined as an amount approximately equal to the free uncommitted market value of the insured vessel at the time of the collision.

All other terms and conditions remaining unchanged.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.
SHIPOWNERS CLAIMS BUREAU, Inc., Manager

New York,..........MARCH 25......, 19.88..

By.................................................
Authorized Signature

FORM No. 3768C  H.F.Co.-3/88

AC4053471

ENDORSEMENT to be attached to and made a part of Policy No.  A-5647
ASSURED    CHILBAR SHIPPING COMPANY

## ONE FOURTH COLLISION LIABILITY

Coverage under Paragraph (3) of this policy is extended to
include the one-fourth liability including costs and expenses
incidental thereto which is not covered under the collision
clause of the American Institute Hull Clauses (June 2, 1977)
Form with the American Hull Insurance Syndicate Three-Fourths
Collision Liability Clause (July 9, 1979), attached, PROVIDED
HOWEVER, that insurance hereunder shall not extend to any
liability whether direct or indirect, in respect of the
engagements of or the detention or loss of time of the insured
vessel.

## PROVIDED FURTHER THAT:

a. Claims hereunder shall be settled on the principles of
   Cross-Liabilities to the same extent only as provided
   in the three-fourths Collision Clause above mentioned.

b. Where both vessels are the property, in part or in whole,
   of the same Owners or Charterers, claims hereunder shall
   be settled on the basis of the principles set forth in the
   three-fourths Collision Clause above mentioned.

c. Claims hereunder are subject to a deduction of $10,000.
   with respect to each accident or occurrence.

d. Notwithstanding the foregoing, the Association shall not
   be liable for any claims hereunder where the various liabil-
   ities resulting from such collision, or any of them, have
   been compromised, settled or adjusted without the written
   consent of the Association.

All other terms and conditions remaining unchanged.

---

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION
AND INDEMNITY ASSOCIATION, INC.
SHIPOWNERS CLAIMS BUREAU, Inc., Manager

By

Authorized Signature

New York,..........MARCH 25......., 19 88

FORM No. 3768C  H.F.Co.-3/88

AC4053472

ENDORSEMENT to be attached to and made a part of Policy No.    A-5647
ASSURED       CHILBAR SHIPPING COMPANY

### Excess War Risk Insurance

In consideration of the rates charged herein, it is understood and agreed that clause 31 shall be deemed to be deleted with respect to any loss, damage or expense sustained by a member in excess of underlying war risk P&I insurances or $50,000 any one accident or occurrence any one vessel or craft, whichever is greater, subject to the following terms and conditions:

1.  The special cover provided under this endorsement shall be deemed a separate insurance with a sum insured of $50,000,000.00 any one accident or occurrence any one vessel or craft. Nothing contained in this endorsement shall limit the liability of the Association for claims recoverable under its policy without regard to this endorsement.

2.  At any time or times before, or at the commencement of, or during the currency of any Policy Year, the Association may in its discretion determine that any ports, places, countries, zones or areas (whether of land or sea) be excluded from the insurance provided by this special cover. Save as otherwise provided by the Association this special cover shall cease in respect of such ports, places, countries, zones or areas at midnight on the 7th day following the issue to the Members of notice of such determination. Unless and to the extent that the Association in its discretion otherwise decides there shall be no recovery from the Association under this special cover in respect of any claim howsoever arising out of any event, accident or occurrence within the said area after such date.

3.  Whether or not notice has been given under clause 2 above, this special cover shall terminate automatically:

        (i)  upon the occurrence of any hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter wheresoever or whensoever such detonation may occur, whether or not the insured vessel(s) may be involved, and this insurance excludes loss damage liability or expense arising from such occurrence;

All other terms and conditions remaining unchanged.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION
AND INDEMNITY ASSOCIATION, INC.
SHIPOWNERS CLAIMS BUREAU, INC., Manager

New York,..........MARCH 25.......,19 88..          By.....................................................
                                                              Authorized Signature

FORM No. 3768C  H.F.Co.-3/88

AC4053473

ENDORSEMENT to be attached to and made a part of Policy No.  A-5647
ASSURED    CHILBAR SHIPPING COMPANY

    (ii)  Upon the outbreak of war (whether there be a declaration of war or not) between any of the following countries:

    United Kingdom, United States of America, France, the Union of Soviet Socialist Republics, the People's Republic of China

and this insurance excludes loss damage liability or expense arising from such outbreak of war;

    (iii)  in respect of any vessel, in connection with which cover is granted hereunder, in the event of such vessel being requisitioned either for title or use and this insurance excludes loss damage liability or expense arising from such requisition.

The Association has determined in accordance with clause 2 that with effect from the commencement of the special cover at 12 noon G.M.T. on 20th February, 1987 the area of the Arabian Gulf lying to the north and east of the following line shall be excluded from the insurance provided by the special cover:

29° 23.5'N
48° 24.5'E    Thence 104.5°T to

29° 11.25'N
48° 17.5'E    Thence 151°T to

28° 23'N
49° 47'E    Thence 90°T to

28° 23'N
51° 09'E

Nor shall any vessel be entitled to recover under this special cover if it enter the Arabian Gulf by passing north of latitude 26° N. bound for the area so defined.

4.  With respect to any loss damage or expense insured under this endorsement, clause 29(f) (the "ITIA exclusion clause") shall also be deemed deleted subject to all the terms and conditions of the special cover set out in this endorsement.

All other terms and conditions remaining unchanged.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION
AND INDEMNITY ASSOCIATION, INC.
SHIPOWNERS CLAIMS BUREAU, Inc., Manager

New York,......MARCH 25......, 19.88.

By...........................................
Authorized Signature

FORM No. 3766C H.F.Co.-3/88

AC4053474

ENDORSEMENT to be attached to and made a part of Policy No.  A-5647
ASSURED    CHILBAR SHIPPING COMPANY

## CONFISCATION

In consideration of the rates charged herein coverage under paragraph (8) hereunder is extended to confiscation of an insured vessel by a legally empowered court, tribunal or authority for breach of any customs law or regulation,

PROVIDED that:

recovery shall be limited to the market value of the vessel, free of commitment, at the time of confiscation;

no claim shall be considered in respect of any confiscation which has not remained in effect for a continuous period of 183 days from such time as the assured shall have notified the Association in writing of the confiscation, and if at any time before or after the expiry of the said period terms become available for the return of the vessel on payment of a monetary penalty, the Association may require the assured to accept such terms and make the necessary payment which alone shall then be the subject of recovery from the Association;

the Association in its sole discretion may refuse recovery to any extent whatever in respect of confiscation in circumstances regarded by the Association as involving any element of fault or privity on the part of the assured.

All other terms and conditions remaining unchanged.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.
SHIPOWNERS CLAIMS BUREAU, Inc., Manager

New York,.................AUGUST 17....., 19...88....

By.............................................
Authorized Signature

FORM No. 3768C  H.F.Co.-3/88

AC4053475

# *Exhibit 2*

**Proposed Order Containing Injunctions Submitted by Plaintiff, Version 1**

**Exhibit 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., <br><br> Plaintiff, <br><br> -against- <br><br> ALCOA STEAMSHIP CO., INC., et al., <br><br> Defendants. | 04 Civ. 04309 (LAK)(JCF) <br><br> (ECF CASE) <br><br> **PROPOSED INJUNCTION SUBMITTED BY PLAINTIFF (VERSION 1)** |

Upon consideration of the parties' trial memoranda, the witness affidavits, and the entire record herein, defendants, and their officers, directors, agents, servants, employees, and all persons acting under their permission or authority (collectively, "Defendants"), are hereby permanently ENJOINED from making, or seeking to make, any further claims upon Plaintiff in relation to any Pre-1989 Policy issued by Plaintiff or in relation to any occupational disease claim incurred prior to February 20, 1989 for any reason.

SO ORDERED

Date: _____

_____
Lewis A. Kaplan, U.S.D.J.

Exhibit 2

# Exhibit 3

**Proposed Order Containing Injunctions Submitted by Plaintiff, Version 2**

**Exhibit 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

| | |
|---|---|
| AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., | 04 Civ. 04309 (LAK)(JCF) |
| Plaintiff, | (ECF CASE) |
| -against- | **PROPOSED INJUNCTION SUBMITTED BY PLAINTIFF (VERSION 2)** |
| ALCOA STEAMSHIP CO., INC., et al., | |
| Defendants. | |

------------------------------------------------

       Upon consideration of the parties' trial memoranda, the witness affidavits, and the entire record herein, defendants, and their officers, directors, agents, servants, employees, and all persons acting under their permission or authority (collectively, "Defendants") are hereby mandatorily ENJOINED and COMPELLED to pay assessments without limit of amount to Plaintiff in compliance with Defendants obligations under the Pre-1989 Policies, issued by Plaintiff, for occupational disease claims resulting from claimants' exposures occurring during any one or more of the Pre-1989 insurance years, and any other claims occurring in those years, subject to the deductible in each such policy.

                               SO ORDERED

Date: _____

                               _____
                               Lewis A. Kaplan, U.S.D.J.

Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY ASSOCIATION, INC.,

      Plaintiff,

    -against-

ALCOA STEAMSHIP CO., INC., et al.,

      Defendants.

04 Civ. 04309 (LAK)(JCF)

(ECF CASE)

**PROPOSED ORDER
SUBMITTED BY
DEFENDANTS**

Upon consideration of the parties' trial memoranda, the witness affidavits, and the entire record herein:

Plaintiff American Steamship Owners Mutual Protection and Indemnity Association, Inc. ("Plaintiff") is enjoined as follows:

a.  permanently ENJOINED from making, or seeking to make, any further assessment or assessments against any Defendants in relation to any Pre-1989 Policy issued by Plaintiff or in relation to any occupational disease claim incurred prior to February 20, 1989 for any reason; and

b.  mandatorily ENJOINED and COMPELLED  to provide insurance coverage to Defendants under their respective Pre-1989 Policies, issued by Plaintiff, for occupational disease claims resulting from claimants' exposures occurring during any one or more of the Pre-1989 insurance years, and any other claims occurring in those years, subject to a single deductible of Defendant's choosing.

        SO ORDERED

Date: _____

        _____
        Lewis A. Kaplan, U.S.D.J.
               Exhibit 4