HOLLSTEIN KEATING CATTELL JOHNSON & GOLDSTEIN, PC
Attorneys for Defendant Loveland Holding Company, Inc.
Edward V. Cattell, Jr., Esq. (EC 3968)
8 Penn Center, 20th Floor
1628 J.F. Kennedy Blvd.,
Philadelphia, PA 19103
215-320-2073

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                   :
                   :        04 Civ:04309 (LAK)
                   :
AMERICAN STEAMSHIP OWNERS   :
MUTUAL PROTECTION AND        :
INDEMNITY ASSOCIATION, INC.,  :
                   :
          Plaintiff,    :
                   :
     Against          :
                   :
                   :
                   :
ALCOA STEAMSHIP CO., INC.    :
And Other Entities Listed on Exhibit A :
Hereto,                :
          Defendants. :
-------------------------------------------------------X

## AFFIDAVIT

I, S.C. Loveland, III, having personal knowledge of the facts herein, state as follows:

1.    I am President of Loveland Holding Company, which was formerly known as S.C. Loveland Co., Inc.

2.    I was President of S.C. Loveland Co., Inc. at all times relevant hereto.

3.    S.C. Loveland Co., Inc. ("Loveland") was a member of the American Club from approximately 1987 to approximately 1994.

4.    To my knowledge, there is only one occupational disease claim against Loveland for years alleged to be "closed" by the American Club.

{1068.00002:AGM1927}

5.  That case is venued in Ohio and was filed by the Jacques Admiralty Law firm.

6.  The case is currently dormant.

7.  In 1993, Loveland filed for bankruptcy.

8.  As part of that bankruptcy, Loveland filed an Amended Plan of Reorganization, a true and correct copy of which is attached hereto as Exhibit A.

9.  On or about 10/13/94, the Court issued an Order ("the Order") confirming that amended plan and Making Related Findings and Determinations. A true and correct copy of the Order is attached hereto as Exhibit B.

10.  Paragraph 9 of the order provides, in relevant part, as follows:

> The debtor [Loveland] shall, within 30 days of the Effective Date, establish a segregated escrow fund in an amount sufficient to pay future calls from its insurer, the American Steamship Owners Mutual Protection and Indemnity Association ("The American Club") as such calls may from time to time be estimated by the American Club. The escrow funds shall be utilized solely for the purpose of paying such calls pending resolution or satisfaction of all class 6 claims. To the extent that there is balance remaining in the escrow funds after resolution and satisfaction of all Class 6 claims and payment of all calls, the fund shall revert to the debtor.

11.  The Amended Plan of Reorganization (which was approved by the Court in the Order attached as Exhibit B), defines Class 6 claims as:

> The Allowed Unsecured Claims which are covered by any insurance policies of the debtor, notwithstanding the fact that such claims may be disputed or unliquidated as of the Confirmation Date.

12.  Pursuant to Paragraph 9 of the Order, the American Club proposed a payment amount that would satisfy all calls and/or assessments for any future claims against Loveland.

13.  To the best of my recollection that amount was approximately $175,000.

14.  I recall that it was much higher than I expected and that it seemed very high to cover future calls.

15.    In spite of the very high number, Loveland agreed to it and placed the sum requested by the American Club into escrow as provided in the Order in satisfaction of all future calls.

16.    On 10/27/95, Loveland was discharged from bankruptcy.  A true and correct copy of the Final Decree in Bankruptcy is attached hereto as Exhibit C.

17.    Loveland did receive approximately $3500 back from the escrow account at some point after the payment was made, although I do not recall when.

18.    As is apparent from the above, all future calls by the American Club were satisfied as part of the Club's claim during Loveland's 1993 bankruptcy action.

19.    Accordingly, the American Club is not entitled to assess calls for "closed" years against Loveland, and Loveland is entitled to a defense from the American Club for occupational disease claims incurred in "closed" years, including the dormant case in Ohio described above, based on the doctrine of accord and satisfaction as well as the Order of the Bankruptcy Court.


Pursuant to 28 U.S.C.S § 1746, I certify under penalty of perjury that the foregoing is true and correct to my personal knowledge, information, and belief.

Executed on: June 7, 2006                          _____
                                                                          S.C. Loveland, III

{1068.00002.AGM1927}                              3

DOUGLAS J. SMILLIE, ESQUIRE
Attorney ID No. DS 1052
JENNIFER W. BROWN, ESQUIRE
Attorney ID No. JB 7844
CLARK, LADNER, FORTENBAUGH & YOUNG
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ  08002
(609) 779-0900
Counsel for Debtor

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

IN RE:                         :        CHAPTER 11
                               :
S.C. LOVELAND                  :
                               :
                               :        BANKRUPTCY NO. 93-14587W
                               :

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

Counsel for Debtor:

DOUGLAS J. SMILLIE
JENNIFER W. BROWN

CLARK, LADNER, FORTENBAUGH & YOUNG
Suite 300
Woodland Falls Corporate Park
200 Lake Drive East
Cherry Hill, NJ  08002

VPHILA2\1418_1

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION . . . . . . . . . . . . . . . . . . | 1 |
| II. | DEFINITIONS AND HEADINGS . . . . . . . . . . . . | 1 |
| III. | CLASSIFICATION OF CLAIMS AND INTERESTS . . . . . . | 7 |
| IV. | TREATMENT ACCORDED TO CLAIMS AND EQUITY SECURITY INTERESTS . . . . . . . . . . . . . . . | 9 |
| V. | BAR DATES . . . . . . . . . . . . . . . . . . . | 15 |
| VI. | IMPAIRMENT OF CLAIMS . . . . . . . . . . . . . . | 17 |
| VII. | MEANS FOR EXECUTION OF THE PLAN . . . . . . . . . | 17 |
| VIII. | EFFECT OF CONFIRMATION . . . . . . . . . . . . . | 18 |
| IX. | AMENDMENTS OR MODIFICATIONS . . . . . . . . . . . | 19 |
| X. | MISCELLANEOUS PROVISIONS . . . . . . . . . . . . | 20 |
| XI. | RETENTION OF JURISDICTION . . . . . . . . . . . . | 21 |
| XII. | CONFIRMATION REQUEST . . . . . . . . . . . . . . | 23 |

I.    **INTRODUCTION**

S.C. Loveland Co., Inc. (the "Debtor"), proposes the following Plan of Reorganization, pursuant to 11 U.S.C. 1121.

II.   **DEFINITIONS AND HEADINGS**

For the purposes of construction of this Plan of Reorganization, the following terms will be accorded the meanings set forth below unless a different meaning is clearly required by and explained in the text.

2.1   "Administrative Claim" - A claim for costs or expenses of administration of the Chapter 11 Case entitled to priority in accordance with the provisions of Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, but not limited to, any actual and necessary expenses of preserving the Debtor' estate, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses of professionals to the extent allowed by the Bankruptcy Court pursuant to Sections 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate under Chapter 123 of Title 28 of the United States Code.

2.2   "Affiliates" - The following companies which related to, or which share common ownership with, the Debtor: T&T Towing, Inc.; Riddick Co., Inc.; Holly Beth Towing, Inc.; Miss Emily Towing, Inc.; Hammarberg Towing, Inc.; Mayo Towing, Inc.; Quaker Tugs, Inc.; Towing, Inc.; Tug Leasing, Inc.; and Loveland Ventures.

2.3  "Allowed Claim" - Any Claim against or Equity Interest in the Debtor with respect to which a proof of claim or proof of interest has been timely and properly filed with the Bankruptcy Court pursuant to Bankruptcy Rule 3003, or if no proof of claim has been filed, which has been listed by the Debtor on its schedules as liquidated in amount and not disputed or contingent and, in either case, a Claim or Equity Interest as to which no objection to the allowance thereof has been interposed on or before sixty (60) days after the Confirmation Date or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; or as to which any such objection has been determined by a Final Order, or based on an application for the payment of professional fees or expenses to the extent such application is approved by the Bankruptcy Court. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Claim" shall not include interest on such Claim for the period from and after October 12, 1993, the date of the filing of the Debtor's Chapter 11 Petition.  An Allowed Claim shall include interest on such claim, and any reasonable fees, cost or other charges where such interest and charges are provided for under the agreement under which such claim arose, to the extent that the claim is oversecured and in accordance with section 506 of the Bankruptcy Code.

2.4  "Automatic Stay" - The Automatic Stay, as provided for in Section 362 of the Bankruptcy Code.

2

2.5  "Bankruptcy Code" - The Bankruptcy Reform Act of 1978, 11 U.S.C. $101, et seq., as amended.

2.6  "Bankruptcy Court" - The United States Bankruptcy Court for the District of New Jersey, or such other court as may have jurisdiction over the Chapter 11 Case, including by appeal.

2.7  "Bankruptcy Rules" - The rules of procedure applicable to cases pending before the Bankruptcy Court, as amended.

2.8  "Bar Date" - That date on or before which proofs of claim or applications for allowance of administrative expenses must have been filed in this Chapter 11 Case with the Bankruptcy Court pursuant to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, any Order or Notice of this Court, or Article V of this Plan.

2.9  "Chapter 11 Case" - The case under Chapter 11 which was commenced by the Debtor on October 12, 1993.

2.10 "CIT" - CIT Group.

2.11 "CIT Collateral" - Proceeds of the sale of the Debtor's vessel known as LOVELAND 3401, to the extent of CIT's allowed secured claim.

2.12 "Claim" - Any right to payment from the Debtor that arose on or before the Confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for

3

breach of performance if such right gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.13 "Claimant" - The holder of a Claim.

2.14 "Confirmation Date" - The date of entry of the Confirmation Order.

2.15 "Confirmation Order" - The Order of the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code confirming the Plan and approving the transactions contemplated herein.

2.16 "Debtor" - S.C. Loveland Co., Inc., Debtor and debtor-in-possession in the Chapter 11 Case.

2.17 "Disputed Claim" - Any Claim to which there is an objection that has not been resolved by a Final Order of the Bankruptcy Court, or a Claim listed as disputed, contingent or unliquidated in the Debtor's schedules or any amendments thereto.

2.18 "Equity Interest" - Any equity interest in the Debtor represented by common stock.

2.19 "Effective Date" - That date 10 days after which the Confirmation Order becomes a Final Order.

2.20 "Final Order" - An Order or judgment which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek review or rehearing has expired, and as to which no appeal or petition for review or rehearing is pending, or

4

waived, as a result of which such Order shall have become final in accordance with applicable law.

2.21 "GECC" - General Electric Capital Corporation.

2.22 "GECC Collateral" - Proceeds from the sale of the Debtor's vessel known as LOVELAND 3001 and the Debtor's vessel known as LOVELAND 3403, to the extent of GECC's allowed secured claim.

2.23 "General Unsecured Claims" - All Unsecured Claims which are not secured by a lien on property in which the Debtor has an interest, which are not entitled to priority under the Bankruptcy Code, including Claims arising out of the rejection of executory contracts, and which are not covered by insurance policies of the Debtor.

2.24 "Insider" - An insider of the Debtor as that term is defined under Bankruptcy Code Section 101.

2.25 "Maritime Lien" - A property right of a non-owner in one of the vessels in the Debtor's estate or other maritime property, giving the lienholder the right in admiralty court to have the property sold and the proceeds distributed to the lienholder to satisfy an *in rem* debt of the property. Maritime Liens include liens for wages of seamen and wages due stevedores hired by the vessel, general average, salvage and liens for necessaries and ship mortgages.

2.26 "Maritime Lien Collateral" - The vessel, earned freight, cargo or other maritime property in which the Maritime Lien holder holds its lien.

2.27 "Non-Preferred Maritime Lien" - a Maritime Lien arising after a Preferred Ship Mortgage has been recorded.

2.28 "OTC" - Ocean Transport Corporation.

2.29 "OTC Collateral" - Proceeds from the sale of the Debtor's vessels known as LOVELAND 17, LOVELAND 1952 and LOVELAND 2361, to the extent of OTC's allowed secured claim.

2.30 "Plan" - This Chapter 11 Amended Plan of Reorganization in its present form, or as it may be amended, supplemented or modified.

2.31 "Post-Bankruptcy Period" - The period beginning on October 12, 1993, the date on which the Debtor's case under Chapter 11 of the Bankruptcy Code was commenced.

2.32 "Pre-Bankruptcy Period" - The period prior to October 12, 1993, the date on which the Debtor's case under Chapter 11 of the Bankruptcy Code was commenced.

2.33 "Preferred Maritime Lien" - A lien on Maritime Lien Collateral for damage arising out of maritime tort, wages of a stevedore, wages of the crew of the vessel, general average and salvage, including contract salvage, arising before a Preferred Ship Mortgage in the same Maritime Lien Collateral was recorded.

2.34    "Preferred Ship Mortgage" - A mortgage as defined in 46 U.S.C. §31322(a).

6

2.35 "Reorganized Debtor" - The Debtor after confirmation of the Plan.

2.36 "Secured Claim" - A Claim secured by a perfected lien, security interest or other charge against, or interest in, property in which the Debtor has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the holder of such Allowed Claim in the Debtor's interest in such property, or to the extent of the amount subject to setoff, as the case may be.

2.37 "Unsecured Payment Date" - The date after which all assets of the Debtor have been liquidated and all Secured Claims and Administrative Claims have been paid in full, or the date sufficient assets of the Debtor have been sold such that all Secured Claims and Administrative Claims have been paid in full.

III.

The Claims against the Debtor are classified as follows for purposes of this Plan:

3.1(a)     Class 1(a) - Class 1(a) consists of the Claims of GECC which are secured by a lien in the GECC Collateral.

3.1(b)     Class 1(b) - Class 1(b) consists of all Claims, other than those of GECC, which are secured by a lien in the GECC Collateral.

7

3.2(a)    <u>Class 2(a)</u> - Class 2(a) consists of the Claims of CIT which are secured by a lien in the CIT Collateral.

3.2(b)    <u>Class 2(b)</u> - Class 2(b) consists of all Claims, other than those of CIT, which are secured by a lien in the CIT Collateral.

3.3(a)    <u>Class 3(a)</u> - Class 3(a) consists of the Claims of OTC which are secured by a lien in the OTC Collateral.

3.3(b)    <u>Class 3(b)</u> - Class 3(b) consists of all Claims, other than those of OTC, which are secured by a lien in the OTC Collateral.

3.4    <u>Class 4</u> - Class 4 consists of the Allowed Secured Claims of those entities with Maritime Liens, other than those Claims in Classes 1 through 3.

3.5    <u>Class 5</u> - Class 5 consists of the Allowed Claims of entities entitled to priority as Administrative Claims, in accordance with Sections 503(b) and 507(a)(1) of the Code.

3.6    <u>Class 6</u> - Class 6 consists of the Allowed Unsecured Claims which are covered by any insurance policies of the Debtor, notwithstanding the fact that such claims may be disputed or unliquidated as of the Confirmation Date.

3.7    <u>Class 7</u> - Class 7 consists of General Unsecured Claims, which are not covered by insurance policies of the Debtor, and which are not entitled to priority under the Code, and any deficiency claims held by Claimants in Classes 1 through 5.

8

3.8(a) <u>Class 8(a)</u> - Class 8(a) consists of the Claims of the Affiliates of the Debtor.

3.8(b) <u>Class 8(b)</u> - Class 8(b) consists of the Claims of Officers of the Debtor who are not Equity Interest holders for compensation or severance.

3.9    <u>Class 9</u> - Class 9 consists of interests of the equity holders of the Debtor, as represented by their respective Equity Interests in the Debtor as of the filing date.

IV.    **TREATMENT ACCORDED TO CLAIMS AND EQUITY SECURITY**

4.0    <u>Payment Dates</u> - Secured Claims will be paid on the Effective Date.  To the extent that certain of the Debtor's vessels have been sold and the proceeds of the sale(s) exceed the lien(s) on the vessels, the Debtor has filed or intends to file a motion for authority to pay the lienholders in full from the sale proceeds.  Unsecured Claims, including Claims in the nature of deficiency claims, will be paid on the Unsecured Payment Date other than Claims in Class 6, which shall be paid as set forth in section 4.6, below.

4.1    <u>Treatment of Claims in Classes 1(a) and 1(b)</u> - The Debtor will liquidate and remit to the Claimants in Classes 1(a) and 1(b) the proceeds from the sale of the GECC Collateral until those claims are paid in full or, in the alternative, the Debtor

9

will surrender the GECC Collateral to those Claimants with liens in the GECC Collateral. Claimants in Classes 1(a) and 1(b) will be entitled to an Allowed Claim in Class 7 equal to the amount of any deficiency. To the extent that there is any shortfall of funds available for the payment of Claims secured by liens in the GECC Collateral, the Claims shall be paid out of the proceeds of the liquidation of the GECC Collateral in the following order of priority, with Claims in the Preferred Maritime Lien and Non-Preferred Maritime Lien categories to be paid in reverse chronological order in accordance with applicable law, and any remaining shortfall shall be paid according to the treatment set forth for the particular classes of Claims:

1. Preferred Maritime Liens

2. Preferred Ship Mortgages

3. Non-Preferred Maritime Liens

In the alternative, the Debtor may choose to retain the collateral. In that case, the claims in Classes 1(a) and 1(b) will be paid fully out of the remaining proceeds from liquidation of encumbered and unencumbered assets.

Where a Preferred Ship Mortgage Claimant holds a security interest in more than one vessel, if the proceeds realized from the sale of the vessels permit payment to the Claimant in full, the excess will be made available to junior lienholders in the proportion that the sales price of each vessel bears to the

10

aggregate sales price of all vessels in which the senior secured creditor has a security interest.

4.2    Treatment of Claims in Classes 2(a) and 2(b) - The Debtor has liquidated the CIT Collateral and will remit to the Claimants in Classes 2(a) and 2(b) the proceeds from the sale of the CIT Collateral until those claims are paid in full. Claimants in Classes 2(a) and 2(b) will be entitled to an Allowed Claim in Class 7 equal to the amount of any deficiency. To the extent that there is any shortfall of funds available for the payment of Claims secured by liens in the CIT Collateral, the Claims shall be paid out of the proceeds of the liquidation of the CIT Collateral in the following order of priority, with Claims in the Preferred Maritime Lien and Non-Preferred maritime Lien categories to be paid in reverse chronological order in accordance with applicable law, and any remaining shortfall shall be paid according to the treatment set forth for the particular classes of Claims:

1.    Preferred Maritime Liens

2.    Preferred Ship Mortgages

3.    Non-Preferred Maritime Liens

4.3    Treatment of Claims in Classes 3(a) and 3(b) - The Debtor will liquidate and remit to the Claimants in Classes 3(a) and 3(b) the proceeds from the sale of the OTC Collateral until those claims are paid in full or, in the alternative, the Debtor will surrender the OTC Collateral to those Claimants with liens in the OTC Collateral. Claimants in Classes 3(a) and 3(b) will be

11

entitled to an Allowed Claim in Class 7 equal to the amount of any deficiency. To the extent that there is any shortfall of funds available for the payment of Claims secured by liens in the OTC Collateral, the Claims shall be paid out of the proceeds of the liquidation of the OTC in the following order of priority, with Claims in the Preferred Maritime Lien and Non-Preferred Maritime Lien categories to be paid in reverse chronological order in accordance with applicable law, and any remaining shortfall shall be paid according to the treatment set forth for the particular classes of Claims:

1. Preferred Maritime Liens

2. Preferred Ship Mortgages

3. Non-Preferred Maritime Liens

In the alternative, the Debtor may choose to retain the collateral. In that case, the claim in Classes 3(a) and 3(b) will be paid fully out of the remaining proceeds from liquidation of encumbered and unencumbered assets.

Where a Preferred Ship Mortgage Claimant holds a security interest in more than one vessel, if the proceeds realized from the sale of the vessels permit payment to the claimant in full, the excess will be made available to junior lienholders in the proportion that the sales price of each vessel bears to the aggregate sales price of all vessels in which the senior secured creditor has a security interest.

12

4.4     <u>Treatment of Claims in Class 4</u> -  The Debtor will liquidate all or substantially all vessels and maritime property in its estate.  To the extent that the Class 4 Claimants have liens on that property, the Class 4 Claimants shall be entitled to receive payment in full from the proceeds of the liquidation of those vessels and other property.   The Class 4 Claimants shall be entitled to Allowed Claims in Class 7 equal to the amount of any deficiency.

To the extent that there is any shortfall of funds available for the payment of Claims with liens in the same collateral, those Claims shall be paid out of the proceeds from the liquidation of the collateral in the following order of priority, with Claims in the Preferred Maritime Lien and Non-Preferred Maritime Lien categories to be paid in reverse chronological order in accordance with applicable law, and any remaining shortfall shall be paid according to the treatment set forth for the particular classes of Claims:

1.     Preferred Maritime Liens

2.     Preferred Ship Mortgages

3.     Non-Preferred Maritime Liens

In the alternative, the Debtor may choose to retain any item(s) of the Maritime Lien Collateral.  To the extent that the Debtor retains the collateral securing the Maritime Liens, the Claimants in Class 4 with liens in such collateral shall receive payment from the liquidation of the Debtor's unencumbered assets

13

and encumbered assets to the extent there is surplus after secured and priority claims have been paid, in the full amount of such Claimants' Allowed Secured Claims.

4.5    **Treatment of Claims** in Class 5 - All Claims in Class 5 shall be paid in full on the Effective Date either from the Debtor's cash on hand, or from the proceeds of the liquidation of the Debtor's assets, including maritime and real property, after payment in full of Classes 1 through 4, except to the extent that the holder thereof agrees otherwise. Provided, however, that all interim professional fees approved by the Bankruptcy Court shall be paid in full within thirty (30) days of the entry of an Order allowing the payment of such fees or at such other time as the Debtor and the Claimant may agree.

4.6    **Treatment of Claims in Class 6** - Claims in Class 6 will be accorded relief from the automatic stay to pursue their Claims against any available insurance coverage of the Debtor, but will have no other recovery or payment under this Plan and such Claims shall be discharged subject to the treatment hereunder. The Debtor shall be deemed to have paid any judgment recovered by Class 6 Claimants if such is a requirement for payment of such claims by the insurance carrier. The Debtor expressly reserves the right to defend any such claims.

4.7    **Treatment of Claims in Class 7** - Claims in Class 7 will receive a pro rata share of the net proceeds remaining after

14

payment of Classes 1 through 5, up to 100% of such Claims from the excess proceeds of the liquidation of the Debtor's assets.

    4.8   <u>Treatment of Claims in Classes 8(a) and 8(b)</u> - Claims in Class 8(a) shall receive no distribution under this Plan, other than to the extent that holders of such Claims also qualify under Class 9 of this Plan. Class 8(b) claimants shall receive payments on account of their Allowed Claims for severance in accordance with the Bankruptcy Code, provided all Claims in Classes 1-5 and 7 have been paid in full.

    4.9   <u>Treatment of Claims in Class 9</u> - Claims in Class 9 will retain their respective percentage ownership in the Reorganized Debtor.

    Any excess funds after payment in full of Classes 1 through 5, 7 and 8(b), and all remaining assets of the Debtor will become property of the Reorganized Debtor.

## V.   BAR DATES

### 5.1   Unsecured Claims

    Proofs of claim or interest for pre-petition Unsecured Claims not listed, or listed as disputed, contingent or unliquidated in the Debtor's Schedules, or any amendments thereto, were required to be filed with the Bankruptcy Court by March 7, 1994, in accordance with the Bankruptcy Rules which require proofs of claim to be filed within 90 days after the first date set for the §341(a)

creditors meeting.  Unsecured Claims not timely filed are disallowed and are not entitled to participation under the Plan.

5.2    Administrative Claims

Requests for payment of Administrative Claims, other than requests for allowance of fees and expenses of Debtor's counsel, must be filed with the Bankruptcy Court and served upon counsel for the Debtor within thirty (30) days after the Confirmation Date in order to qualify for payment under the Plan.

5.3

Proofs of claim for damages resulting from the rejection of executory contracts must be filed with the Bankruptcy Court and served upon counsel for the Debtor within thirty (30) days after the Confirmation Date.  All executory contracts to which the Debtor is a party are deemed rejected as of October 12, 1993, or such later date as may be agreed upon between the Debtor and the other party to the agreement.  It is anticipated that there will be no claims against the Debtor's estate arising from the rejection of executory contracts.  Claims not timely filed are disallowed and are not entitled to participation under this Plan.

5.4    Classification and Treatment of Claims Arising
From Rejection of Executory Contracts

Pursuant to Section 365(g)(1) of the Bankruptcy Code, Claims for damages as a result of, or relating to, the Debtor's rejection of executory contracts shall be classified as Class 7 Claims.  Such claims shall be entitled to treatment and participa-

16

tion in the Plan pursuant to Article IV only if proofs of claim are filed with the Bankruptcy Court in accordance with the provisions of Section 5.3.   If such Claims are disputed, treatment and participation in the Plan shall be accorded after allowance, pursuant to the provisions of Section 4.7 hereof.

## VI.     IMPAIRMENT OF CLAIMS

All Classes of Claims, except for Classes 2(a) and 5, may be impaired under this Plan.

## VII.     MEANS FOR EXECUTION OF THE PLAN

Payments to Claimants in all Classes shall be funded by the liquidation or sale of Debtor's assets, including vessels and other maritime and real property, to the highest bidder subject to the terms of this Plan and such Orders of the Bankruptcy Court as may be appropriate, as well as from the Debtor's existing cash on the Confirmation Date.   All funds from the liquidation of the Debtor's assets in accordance with this Plan, will be held by the Debtor in an interest bearing escrow account pending distribution.

### 7.1   Authorization to Liquidate Assets

The Debtor is authorized to take all steps reasonably necessary to liquidate the Debtor's assets pursuant to this Plan. Specifically, the Debtor was authorized to conduct an auction sale of its vessels, which took place on June 14, 1994.  The Debtor is authorized to effectuate a similar sale of its real estate.

17

Pursuant to this Plan, the sale of any asset by the Debtor after the Confirmation Date may be conducted without further Bankruptcy Court approval; provided, however, that the Debtor shall give all known Maritime Lien Claimants or other secured creditors with an interest in the property to be sold 10 days notice of the proposed sale during which objectors may request a hearing on the proposed sale.

### 7.2    Distributions

The Debtor shall, without further Order of the Bankruptcy Court, distribute funds in accordance with the provisions of Article IV of the Plan.   The Reorganized Debtor shall act as disbursing agent for the payment of all Claims in all Classes.

## VIII.    EFFECT OF CONFIRMATION

### 8.1    Binding Effect of Plan Provisions

Pursuant to Section 1141(a) of the Bankruptcy Code, upon confirmation of the Plan, the provisions of the Plan shall bind the Debtor, any creditor of the Debtor, any Equity Interest holder of the Debtor and any other entity affected or whose interests are affected in any manner by the Plan.

### 8.2    Vesting of Property of the Debtor

Upon confirmation of the Plan, all property of the estate not distributed or liquidated pursuant to the provisions of the Plan shall vest in the Debtor, free and clear of all liens, claims and interests of creditors and Equity Interest holders, except as

18

otherwise specifically proved in the Plan, and provided that each Secured Claimant shall retain its lien in collateral pending payment of the Allowed Secured Claim under this Plan.

### 8.3    Discharge

Upon confirmation of the Plan and in accordance with Section 1141(d) of the Bankruptcy Code, the Debtor shall be discharged from the Claims of all creditors, Equity Interest holders and all other entities. The only remaining obligations of the Debtor with respect to such Claims shall be as specified in this Plan.

### 8.4    Reorganized Debtor

After Confirmation of the Plan, the Debtor will continue to exist for limited purposes, including the retention, management and sale of any assets remaining after any auctions or other sales provided for in this Plan. Upon Confirmation of the Plan, the name of the Reorganized Debtor will remain "S.C. Loveland Co., Inc."

### 8.5    Injunction

As an incident to confirmation, all persons or entities holding Claims against the Debtor shall be permanently enjoined and restrained from taking any action to collect, enforce or otherwise pursue such Claims, other than as provided for under this Plan.

## IX.    AMENDMENTS OR MODIFICATIONS

The Debtor may, in accordance with the provisions of the Bankruptcy Code and Bankruptcy Rules, propose amendments or

modifications to the Plan at any time prior to the Confirmation Date. After the Confirmation Date, the Debtor may, with the approval of the Bankruptcy Court, remedy any defect or reconcile any inconsistencies in the Plan, provided that such alterations do not materially or adversely affect the interests of Claimants.

X.     **MISCELLANEOUS PROVISIONS**

10.1

Any payment or distribution required to be made hereunder shall be deemed timely made if mailed within thirty (30) days of the date required.

10.2     **Amendments by Claimants**

Any holder of a Claim under the Plan may amend, or waive compliance with, any term or condition of the Plan relating to or for the benefit of such holder, by consenting to such amendment or waiver in writing.

10.3     **Right to Object to Claims**

Objections to Proofs of Claim must be filed within 60 days after the Confirmation Date. The failure of the Debtor to object to or examine any Claim for purposes of voting shall not be deemed to be a waiver of any party-in-interest's right to object to or to re-examine the Claim in full or in part after Confirmation.

10.4     **Blank Ballots**

20

Any ballot which is executed by the holder of an Allowed Claim, but which does not indicate an acceptance or rejection of the Plan, shall be deemed to be an acceptance of the Plan.

10.5  Prepayment

Notwithstanding anything contained herein, the Debtor may prepay any payment or installment under this Plan without penalty.

10.6  Change of Address/ Undeliverable Payments

It is the duty of each holder of a Claim or Equity Interest to keep the Debtor informed of any change in its address by giving notice of any such change in writing.  Should any person or entity entitled to a distribution under this Plan fail to notify the Debtor of any change of address with the result that the Debtor is no longer able to deliver a dividend to that person or entity by first-class mail, the Debtor shall cancel any checks returned, redeposit the funds, and strike the Claim from the Class and such funds shall be treated under Section 4.9 hereof.  The Debtor will have no liability for payment of any dividend to any holder of a Claim that is stricken in this manner.

XI.  RETENTION OF JURISDICTION

Until this Chapter 11 Case is closed by Final Order of the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over the property of the Debtor and all entities affected by the Plan for all such purposes as may be necessary to aid in the implementation and consummation of the Plan and to

21

ensure that the purpose and intent of the Plan are fulfilled, including, but not limited to the following areas:

1.    To consider any amendment or modification of the Plan.

2.    To hear and determine any controversies, suits and disputes, if any, that may arise in connection with the interpretation or enforcement of the Plan or the Order confirming the Plan.

3.    To hear and determine the merits of any Disputed Claim which has not been resolved prior to the Confirmation Date.

4.    To hear and determine any controversies, suits and disputes, that may arise between the Debtor and any other entities, including, but not limited to, any actions to avoid transfers of property for the benefit of the estate or objections to post-Confirmation sales of assets.

5.    To enforce compliance with the Confirmation Order and with all provisions of the Plan.

6.    To hear and determine any and all adversary proceedings, discovery disputes, and contested matters instituted and pending before the Bankruptcy Court.

7.    To enter appropriate Orders concerning distribution to holders of Allowed Claims.

8.    To resolve all controversies concerning the classification of Claims.

9.    To enter a final decree.

22

XII.

        The Debtor, as proponent of the Plan, requests confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code.

                    Respectfully submitted,

                    S.C.

DATED: _____

23

\PHILA2\14500_1
\PHILA2\14500_1

FILED
JAMES J WALDRON, CLERK

OCT 13 1994

U.S. BANKRUPTCY COURT

DOUGLAS J. SMILLIE, ESQUIRE
ID No. DS 1052
JENNIFER W. BROWN, ESQUIRE
ID No. JB 7844
CLARK, LADNER, FORTENBAUGH & YOUNG
Woodland Falls Corporate Park
200 Lake Drive East, Suite 300
Cherry Hill, NJ  08002
(609) 779-0900
Counsel for Debtor

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| S.C. LOVELAND CO., INC. | : | |
| | : | |
| Debtor | : | BANKRUPTCY NO. 93-14587W |
| | : | HEARING: September 27, 1994 |
| | : | 10:00 a.m. |

## ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION AND MAKING RELATED FINDINGS AND DETERMINATIONS

AND NOW, upon consideration of the evidence and testimony presented by S.C. Loveland Co., Inc. ("the Debtor"), at the hearing on confirmation of the Debtor's Amended Plan of Reorganization ("the Plan"), and after notice, it is hereby found and determined as follows:

### BACKGROUND

1.    The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 12, 1993.  The Debtor has continued in possession of its property, and as debtor-in-possession has continued to operate its maritime transportation business, pursuant to sections 1107 and 1108 of the Bankruptcy Code, since the filing of the petition.

\PHILA2\14399_1

2.    On July 12, 1994, the Debtor filed its Amended Plan of
Reorganization ("Plan"); on July 22, 1994, the Debtor filed its
Modified Disclosure Statement to Accompany Debtor's Amended Plan
of Reorganization.   The Plan was served on all creditors for
voting on August 3, 1994.   Service upon all creditors was
certified in the Affidavit of Voting Materials filed on August 4,
1994.

### FINDINGS RELATED TO NOTICE

3.    A combined Notice of the hearing on approval of the
Debtor's Disclosure Statement, of the time for voting, of the
time for filing objections to confirmation of the Plan and of the
confirmation Hearing (Combined Notice") was served on all
creditors, parties in interest, and persons who requested copies
of notices pursuant to Federal Rule of Bankruptcy Procedure 2002.

4.    The Court entered an Order setting March 7, 1994, as
the Bar Date for filing proofs of claim against the Debtor's
estate.   The Bar Date Order was served upon all creditors and
parties in interest.

5.    The Combined Notice and the Bar Date Order constitute
sufficient and adequate notice in accordance with the Bankruptcy
Code, the Federal Rules of Bankruptcy Procedure and the Local
Rules of this Court.

### FINDINGS RELATING TO JURISDICTION

6.    The Court has jurisdiction over these matters pursuant
to 28 U.S.C. Sections 1134 and 157(a).   These matters are core

2

\PHILA2\14800_1

proceedings within the meaning of 28 U.S.C. Section 157.

7.    Determination of the matters before this Court is appropriate in connection with confirmation of the Plan and is within the powers granted to the Court under sections 1129, 1142 and 105 of the Bankruptcy Code.

## FINDINGS CONCERNING THE PLAN

8.    Concerning the Plan:

a.    The Plan complies with all of the applicable provisions of Title 11 of the United States Code.

b.    The Debtor has complied with the applicable provisions of Title 11 of the United States Code.

c.    The Plan has been proposed in good faith and is not by any means forbidden by law.

d.    Any payment made or promised by the Debtor or a person issuing bonds, notes, instruments, or securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the case, or in connection with the Plan and incident to the case, has been approved by, or is subject to the approval of, the Court as reasonable.

e.    To the extent known, the Debtor has disclosed the identity, qualifications and affiliation of any individual proposed to serve, after confirmation of the Plan, as director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in the Plan, or a successor to the Debtor under the Plan.  The appointment to, or continuance in, such

\PHILA2\14699_1

office by such individual is consistent with the interests of the creditors, equity security holders and with public policy. The Debtor has disclosed the identity of any insider to be employed or retained by the Debtor after confirmation and the nature of any compensation to be paid to each such insider.

f.    The provisions of Section 1129(a)(6) of the Code are not applicable to the Plan.

g.    With respect to Classes 2(a) and 5, such Classes are not impaired as defined in Section 1124 of the Bankruptcy Code.

h.    With respect to all other Classes, such Classes are impaired under the Plan and each such Class has either: (1) accepted the Plan; or (2) will receive or retain under the Plan on account of such claim or interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of Title 11 of the United States Code on such date.

i.    With respect to each Class designated under the Plan, such Class has either: (1) accepted the Plan; or (2) is not impaired under the Plan and is, therefore, deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code; or (3) the Plan does not discriminate unfairly and the Plan is fair and equitable with respect to each Class of claims or interest that is impaired under and has not accepted the Plan.

4

j.    The Plan provides that with respect to each claim of a kind specified in sections 507(a)(1)-(6) of the Bankruptcy Code, the holder of such claim will receive on account of such claim cash equal to the amount of such claim on the later of the Effective Date, or thirty (30) days after the date such claim is allowed by the Court.

k.    At least one impaired class of claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a claim of such class.

l.    Other than as provided for in the Plan, confirmation of the Plan is not likely to be followed by the liquidation, or the need for further reorganization, of the Debtor, or any successor to the Debtor under the Plan.

m.    All fees payable under 28 U.S.C. Section 1930 have been paid.

n.    The Debtor is not obligated to provide retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, past the Effective Date.

o.    Procedures by which the ballots for acceptance or rejection of the Plan were distributed, qualified for voting and tabulated were fair, properly conducted, and comply with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Orders of the Court.

p.    The Plan provides adequate means for its execution.

5

\PHILA2\14698_1

q.   The Plan properly classifies all claims and
interests against the Debtor and does not unfairly discriminate
among the holders of claims or interests.

r.   The Plan provides equal treatment to the holders
of all claims in each Class, unless the holder of such claim has
agreed to lesser treatment, as provided in section 1123(a)(4) of
the Bankruptcy Code.

NOW THEREFORE, it is hereby ORDERED:

1.   The Plan is CONFIRMED;

2.   All objections to the Plan are DENIED;

3.   The Plan and its provisions shall be binding upon the
Debtor, any entity issuing notes, instruments or securities or
acquiring property under the Plan and any holder of a claim or
interest, whether or not the claim or interest has been impaired
under the Plan and whether or not such holder of a claim or
interest has accepted the Plan;

4.   Pursuant to section 1141(d) of the Bankruptcy Code,
except to the extent provided in the Plan, the Debtor is
discharged and released from any and all debts or claims that
arose before the date of confirmation of the Plan and any and all
debts of a kind specified in section 502(g), (h) or (i) of the
Bankruptcy Code, whether or not: (i) a proof of claim based upon
such debt is filed or deemed filed under section 501 of the
Bankruptcy Code; (ii) a claim based upon such debt is allowed
under section 502 of the Bankruptcy Code; or (iii) the holder of

6

\PHILA2\14699_1

a claim based upon such debt has accepted the Plan;

5.    Creditors of the Debtor whose debts, claims, or interests are discharged by the Plan and by this Order are permanently RESTRAINED and ENJOINED from the commencement or continuance of any action or the employment of any process to collect or to enforce such debts, claims or interests from or against the Debtor, other than pursuant to the terms of the Plan and this Order.  The injunction set forth herein shall be binding on all creditors, parties-in-interest, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them;

6.    Any judgment, decree, award or assessment at any time obtained, to the extent that such judgment, decree, award or assessment is a determination of the liability of the Debtor with respect to any debt discharged by the Plan or this Order is void and shall not constitute a lien or charge on the property of the Debtor;

7.    The Debtor's assets shall be vested in the Debtor free and clear of all liens, claims, charges, interests and encumbrances of creditors and/or their successors and assigns, pursuant to section 1141(c) of the Bankruptcy Code, except as expressly provided in the Plan;

8.    The Debtor shall not dissolve or otherwise go out of existence prior to the resolution or satisfaction of all claims in Class 6, as provided for in the Plan;

7

PHILA21489_1

9.    The Debtor shall, within 30 days of the Effective Date,
establish a segregated escrow fund in an amount sufficient to pay
future calls from its insurer, the American Steamship Owners
Mutual Protection and Indemnity Association ("the American
Club"), as such calls may from time to time be estimated by the
American Club.  The escrow funds shall be utilized solely for the
purpose of paying such calls pending resolution or satisfaction
of all Class 6 claims.  To the extent that there is a balance
remaining in the escrow funds after resolution and satisfaction
of all Class 6 claims and payment of all calls, the fund shall
revert to the Debtor;

10.    The Debtor is authorized to execute deeds and to do all
other acts and to execute and deliver any other documents or
instruments necessary to effectuate the terms of the Plan.  The
Debtor is authorized to sell its real estate and any remaining
vessels free and clear of liens, claims and encumbrances, without
further application to this Court in accordance with the Plan.
All such transfers shall be exempt from any local taxes pursuant
to section 1146(c) of the Bankruptcy Code;

11.    Pursuant to the Plan, the Debtor shall act as
disbursing agent and shall comply with the requirements of Local
Bankruptcy Rule 23;

12.    Until these bankruptcy proceedings are closed, this
Court shall retain exclusive jurisdiction over these proceedings
for all purposes, including, but not limited to: (a) considering

8

\PHILA:14600_1

any modification of the Plan under section 1127 of the Bankruptcy Code and/or modification of the Plan after substantial consummation as defined in section 1101(2) of the Bankruptcy Code; (b) hearing and determining all causes of action and all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of the Plan; (c) hearing and determining all requests for compensation and/or reimbursement of expenses which may be made after the Confirmation Date; (d) hearing and determining all objections to claims, controversies, suits and disputes that may be pending at or initiated after the Confirmation Date; (e) considering and acting on the compromise and settlement of any claim against or cause of action on behalf of the Debtor's estate; (f) directing the Debtor and any other necessary parties to perform any act that is necessary for the consummation of the Plan; (g) considering and approving additional sales of assets, (h) enforcing this Confirmation Order; (i) considering and acting on such other matters as may be consistent with the Plan; and for all purposes set forth in the Plan;

13.   No fees to the Clerk of the Court are due under 28 U.S.C. Section 1930; and

VPHILAS\4688_1

    14.  The automatic stay of section 362 of the Bankruptcy
Code shall continue in full force until the Effective Date of the
Plan.

                                        BY THE COURT:

Dated: ___10/13/94___

                                                H.

10

F I L E

B33(Official Form 33)

l.

ln

Jr

Honorable Judith H. Wizmur
United States Bankruptcy Judge

Document Number: 279
          Clerk: jpp