UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X
:
AMERICAN STEAMSHIP OWNERS :
MUTUAL PROTECTION AND :
INDEMNITY ASSOCIATION, INC.,   :   No. 04 Civ. 04309 (LAK) (JCF)
:
          Plaintiff,   :   AFFIDAVIT OF CHARLES K.
vs.   :   DOUGHERTY
:
ALCOA STEAMSHIP, INC., et. al.,   :
          Defendants.   :
:
------------------------------------ X

## DECLARATION OF CHARLES K. DOUGHERTY

CHARLES K. DOUGHERTY declares, pursuant to 28 U.S.C. Section 1746, that:

1. I was employed by Union Carbide Corporation ("UCC") from 1986 to 2001. From 1986 to 1988, I worked as a Senior Analyst; from 1988 to 1992 as Risk Manager; and from 1992 to 2001 as a Risk Management and Insurance Manager. Throughout this time, I had responsibility for procuring and reviewing insurance for UCC from the American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "Club").

2. In February 2001, UCC became a wholly owned subsidiary of The Dow Chemical Company ("Dow Chemical"), and I became an employee of Dow Chemical. From February 2001 through April 2006, I was a Dow Chemical Senior Risk Finance Manager. Since May 2006, I have been employed as Dow Chemical's Manager of Corporate Risk Management. In these positions, I have had responsibility for risk assessment and insurance recoveries related to

Dow Chemical's and UCC's global operations, as well as placement and maintenance of insurance related thereto.

3. In 1975, I received a bachelor's of science degree in mechanical engineering from the University of Massachusetts at Amherst. I also hold an Associate Certification in Risk Management, which I received from the Insurance Institute of America in 1986.

4. The testimony set forth herein is based upon my personal knowledge and review of various documents that have either been produced or marked as trial exhibits (and which are identified herein), and is true to the best of my knowledge, information and belief.

## UNION CARBIDE CORPORATION

5. Starting in the 1940's, UCC owned American flag deepwater chemical ships that were operated for it in the coastwise trade of the United States by Marine Transport Lines ("MTL"), a defendant in this litigation, pursuant to various agreements. Many of these vessels were insured by the Club for P&I liability insurance.

6. UCC purchased various insurance policies from the Club, and has paid all premiums and assessments invoiced to it for the policies it purchased from the Club. Because the years for which UCC purchased insurance from the Club have all been closed by the Club for assessment purposes, and because the Club has released UCC from all further assessment obligations, it is UCC's understanding and belief that it is not subject to any further assessments by the Club.

7. In connection with Dow Chemical's acquisition of UCC in 2001, UCC decided to cease controlling its own ships and to transfer control to MTL, which planned to insure the ships with a different club. In order to avoid the need for extensive research as to the status of various policy years and to eliminate the potential of any liability to the Club, I requested UCC's insurance broker, Aon, to obtain a release for UCC of all further liability to the Club (the "Release").

8. Over the next few months, I made a number of telephone and e-mail inquiries seeking documentation of the Release. I believed that it was good business practice to document an item such as this with a potential for long term application, possibly long after I would be with Dow Chemical Risk Management.

9. I subsequently received a letter dated May 7, 2002 from the Club confirming payment of all amounts requested and that the Release was effective. The cover note (Exhibit DX-GG) on the letter from the Club to Aon stated "As promised, enclosed please find our letter to Union Carbide Corporation confirming receipt of all premium and releasing them from any further obligation to the Club. I trust this letter will meet with your and Union Carbide's requirements."

10. The letter itself (Exhibit DX-GH) from the Club to UCC stated as follows:

> This will confirm that Union Carbide Corporation has paid all premiums – including Release Calls – billed to them by the American Steamship Owners Mutual P&I Association Inc. (American P&I Club).
>
> This will also confirm that, having paid the Release Calls as billed, Union Carbide Corporation is **hereby released from all obligations to the American P&I Club for any future Supplementary Calls, as and when levied, for the policy years in which Union Carbide Corporation was a member of the Club.** (emphasis added).

11. The Club's letter marked as Exhibit DX-GH confirmed that UCC had no further liability to the Club. Nothing in the letter or in any insurance policy issued by the Club affected the Club's obligation to continue to provide coverage to UCC in accordance with the policies.

12. UCC relied on the Club's release as set forth in Exhibit DX-GH in deciding no longer to participate in the Club.

## THE DOW CHEMICAL COMPANY

13. While Dow Chemical has historically shipped products on ships owned and operated by others, it is my understanding that Dow Chemical never owned any ships.

14. After this lawsuit was initiated, Dow Chemical conducted a search of its internal records in order to locate any documents, such as contracts or ownership documents, which would contradict the understanding set forth in paragraph 13. After a diligent search, we were unable to find any such documents. Dow Chemical was also unable to locate any documents that would indicate that that it owned or operated any ships or any documents (such as Club policies or ledgers) that indicated Dow Chemical was a member of the Club or insured by Club policies.

15. I have reviewed a document produced by the Club in this litigation (Exhibit PX-270, bates number AC 0080935 – 0081215). This document is entitled "American Steamship Owners Mutual Protection and Indemnity Association, Inc. Summary of Policies" (referred to herein as the "Summary of Policies"). The Summary of Policies contains nine (9) entries for Dow Chemical during the years December 31, 1952 through December 31, 1958 (see pages AC0080963 – 0080978 of Exhibit PX-270).

16. The Summary of Policies produced by the Club (Exhibit PX-270) lists certain vessels as being associated with Dow Chemical for the years December 31, 1952 through December 31, 1958 (see pages AC0080963 – AC0080978). It is my understanding that these listed ships carried Dow Chemical cargo, and Dow Chemical is unaware of any evidence that these ships were ever owned or operated by Dow Chemical or that Dow Chemical ever employed any crew for these ships.

17. This apparent absence of Dow Chemical ownership or operational responsibility is consistent with the fact that for the years December 31, 1952 through December 31, 1956, the Summary of Policies does not list any assessable premium for Dow Chemical. It is also consistent with the fact that the Summary of Policies produced by the Club lists policies for Dow Chemical for the years December 31, 1952 through December 31, 1956 as having policy

numbers which commence with the letter "N" which appears to indicate that the policies are not assessable against Dow Chemical for additional premiums.

18. In addition to the "N" policies, the Summary of Policies also contains three additional entries for Dow Chemical, for the years December 31, 1956 through December 31, 1958. These policies are shown as having policy numbers beginning with the letter "A." For these years, the Club's Summary of Policies (Exhibit PX-270) indicates that Dow Chemical's Percentage of Assessable Premium is 0.0325% (December 31, 1956 to December 31, 1957); 0.0334% (December 31, 1957 to December 31, 1958); and 0.0309% (December 31, 1958 to December 31, 1959). To the extent that Dow Chemical did not own the ships, it is my belief that Dow Chemical was only listed in the Club's records as an additional assured for vessels owned by others and any designation of these entries on the Summary of Policies as assessable policies is therefore in error.

## CLAIMS

19. Dow and UCC have each had various maritime Occupational Disease Claims (OCDs) asserted against them. Many of these claims are on the federal multi-district litigation docket and have been stayed. Dow and UCC each have counsel which they pay to monitor these claims on their behalf. Both Dow and UCC intend to claim these and any other defense costs for these or future OCD claims, as well as any settlements or judgments on these or future claims under the Club policies to the extent they provide coverage.

## THE CLUB

20. Prior to this litigation, I cannot recall that anyone from the Club ever suggested to me that the Club believed it had the right to re-open insurance years, nor am I aware of the Club making such a suggestion to anyone else at UCC or Dow Chemical prior to this litigation.

21. I cannot recall any instance in which anyone from the Club ever asked for my consent on behalf of UCC or Dow Chemical to close insurance years or to establish reserves for closed years. Nor am I aware of the Club seeking consent from anyone else at UCC or Dow Chemical with regard to these matters.

22. I am unaware of any representative of either UCC nor Dow Chemical having ever served on the Club's Board of Directors.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 12, 2006

*Charles K. Dougherty*