MORGAN, LEWIS & BOCKIUS LLP
Attorneys for Defendant Kimberly Clark Corporation
Lisa M. Campisi (LC 1018)
101 Park Avenue
New York, New York 10178
212.309.6000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., <br><br> Plaintiff, <br><br> against <br><br> ALCOA STEAMSHIP CO., INC. *et al.*, <br><br> Defendants. | 04 Civ: 04309 (LAK) <br><br> **DECLARATION OF RAYMOND J. VAN EPEREN** <br><br> **ECF CASE** |

RAYMOND J. VAN EPEREN, under penalty of perjury, declares and says:

1. The statements set forth below are based upon my personal knowledge and my review of certain various documents in the files of Kimberly-Clark Corporation or that have been either produced or marked as trial exhibits in this action, and are true to the best of my knowledge and belief.

2. I am the Vice President of Risk Management of Kimberly-Clark Corporation ("Kimberly-Clark"), which, as successor to Scott Paper Company, Inc. ("Scott"), has been named a defendant in this action.

3. Prior to my current position at Kimberly-Clark, I previously held the position of Casualty Risk Manager of Global Operations. I worked in Kimberly-Clark's insurance

department when Kimberly-Clark acquired Scott in December 1995. Accordingly, although I never worked at Scott, I am familiar with Scott's historical insurance program prior to the time of Kimberly Clark's acquisition of Scott, including Scott's membership in the American Steamship Owners Mutual Protection Club (the "American Club") and coverage under Protection and Indemnity policies issued by the American Club to Scott.

4. In or about December 1995, Kimberly-Clark acquired Scott. As a result of the acquisition, Kimberly-Clark obtained all rights and obligations Scott may have had under Scott's insurance programs, including the policies Scott purchased from the American Club.

5. Based on historical records, it appears that as respects policy years prior to February 20, 1989, Scott was a member of the American Club for the following years: (a) February 20, 1986 through February 20, 1987; (b) February 20, 1987 through February 20, 1988; and (c) February 20, 1988 through February 20, 1989. It is my understanding that the American Club has represented through documents produced and/or marked as trial exhibits in this action that the percentage of premiums paid by Scott in relation to the total premiums paid to the American Club for these policy years were as follows: (a) February 20, 1986 through February 20, 1987 at 1.3488%; (b) February 20, 1987 through February 20, 1988 at 1.386%; and (c) February 20, 1988 through February 20, 1989 at 1.832%.

6. Scott continued its membership in the American Club through 1996, when it was acquired by Kimberly-Clark. Upon Kimberly-Clark's acquisition, Scott's membership in the Club was terminated, and the operations of Scott and vessels insured under the policies issued by the Club to Scott were sold.

7. To the best of my knowledge, neither Scott not Kimberly-Clark has ever made an occupational disease claim under the policies issued by the American Club. Further, as reflected

in the American Club policies produced and/or marked as trial exhibits in this action, for the years Scott was a member of the Club prior to February 20, 1989, coverage for bodily injuries of crew members of the vessels insured under the American Club policies issued to Scott was deleted by endorsement.

8.  To the best of my knowledge, Scott has paid all premiums and assessments billed to Scott by the American Club under the pre-February 20, 1989 policies, and to the extent of any assessments billed to Scott, such assessments were limited to the percentages set forth in paragraph 5 above. It is also my understanding that the pre-February 20, 1989 policy years have been closed. Kimberly-Clark has relied on the American Club's having closed those policy years, and had no reason to believe or expectation that the American Club would attempt to reopen those years and charge Kimberly-Clark with additional assessments.

9.  To the best of my knowledge, I am not aware of any provision in the policies or bylaws of American Club that allows for the reopening of previously closed policy years and/or reassessment of Kimberly-Clark for occupational disease claims of other members implicating those closed policy years. Accordingly, Kimberly-Clark disputes the American Club's right to reopen such policy years and to assess Kimberly-Clark anything for any claims that may implicate those closed policy years.

I declare under penalty of perjury and subject to the provisions of 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated: Irving, Texas
June 6, 2006

RAYMOND J. VAN EPEREN