UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
AMERICAN STEAMSHIP OWNERS MUTUAL :
PROTECTION AND INDEMNITY :
ASSOCIATION, INC., : (ECF Case)
                     Plaintiff, :
: 04 Civ. 04309 (LAK)
   - against - :
:
ALCOA STEAMSHIP CO., INC., et al., :
:
                     Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF LINDA K. DANIELS

LINDA K. DANIELS declares, pursuant to 28 U.S.C. Section 1746, that:

1.    The facts stated herein are based on my own personal knowledge and/or review of various documents that have either been produced or marked as trial exhibits in this action, and the facts are true to the best of my knowledge, information and belief. I submit this affidavit on behalf of Defendants Central Gulf Lines, Inc. ("Central Gulf") and Waterman Steamship Corporation ("Waterman") in this suit brought against them by the American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club" or the "Club").

2.    I am an administrative assistant in the Insurance and Claims Division of LMS Shipmanagement, Inc. ("LMS"), the agent for Waterman and Central Gulf.

3.    Since 1994, my duties have included secretarial and administrative work and assisting with the handling of occupational disease and hearing loss claims against Waterman and Central Gulf, among other companies. My immediate supervisor is

Andrea St. Paul Bland, Vice President, Loss Prevention and Claims Department.

4. As part of my duties, among other things, I submit claims and proofs of loss to the various insurers of Waterman and Central Gulf for indemnification under the respective insurer's marine P&I insurance policies. I also communicate with representatives of the various insurers regarding the status of reimbursements and questions concerning claim submissions.

5. I am the custodian of the claim files regarding Waterman and Central Gulf.

6. As part of my responsibilities, I have submitted and/or assisted in the submission of occupational disease-related claims to the American Club. In the course of carrying out those responsibilities, I have communicated and corresponded with William Craig and his successor Gary Strevell at Shipowners Claims Bureau, agents for the American Club.

7. During my tenure with LMS, I have assisted or personally submitted five claims to the American Club for indemnification. Those claims are set forth in a summary chart marked as DX-IU, which chart I assisted in the preparation of and checked for accuracy against the claim files maintained in my office. The chart lists the 1) the name of the claimant in the underlying asbestos claim; 2) the amount of the claim allocated to the American Club; 3) the amount indemnified by the American Club, if any, based on the Club's stacking of deductibles; and 4) the damages or amounts owed as a result of the Club's stacking of deductibles as opposed to use of a single deductible, which, in some cases, resulted in no indemnification on the claim.

8.     The chart also gives the bate ranges of supporting documents and the triggered American Club policy numbers. Information concerning vessel identifications, allocations based on sea service, evidence of payments incurred, and claim submissions are contained in the voluminous documents which make up each claim file. I have been advised that those documents were not individually marked as trial exhibits but, as indicated on DX-IU, have been produced to the Club and/or made available for inspection and copying by the Club.

9.     The supporting documentation used to create the chart was the claim files for each of the five claims. The contents of each claim file were documents prepared and maintained in the regular course of LMS' business, as agent for Waterman and Central Gulf, and it was the regular practice of LMS to prepare and/or maintain such documents. Many of the documents contained in the claims files were prepared by me or at my direction or received by me from the American Club.

**Lassiter Claim**

10.    The amount incurred and paid by Central Gulf with respect to settlement and legal fees for the claim of Louis Lassiter and allocated to the American Club was $29,977.75.

11.    The American Club policies issued to Central Gulf covering the period implicated by the Louis Lassiter claim are A-3926 and A-3997. I have learned that each policy has a $15,000 deductible. I submitted the claim with a reservation of rights to select one policy and apply one deductible.[1]

12.    The Club provided no indemnification to Central Gulf for the Louis Lassiter claim.

---

[1] I believe a $10,000 deductible mistakenly was used to calculate the amount claimed.

3

13. Had the Club provided indemnification for the Louis Lassiter claim and applied a single deductible to the claim in the amount of $15,000, Central Gulf would have received indemnification from the Club in the amount of $14,775.75.

**Shaw Claim**

14. The amount incurred and paid by Central Gulf with respect to settlement and legal fees for the claim of William F. Shaw and allocated to the American Club was $58,539.10.

15. The American Club policies issued to Central Gulf covering the period implicated by the William F. Shaw claim are A-3926, A-3997 and A-5003. I have learned that each policy has a $15,000 deductible. I submitted the claim with a reservation of rights to select one policy and apply one deductible.[2]

16. The Club provided no indemnification to Central Gulf for the William F. Shaw claim.

17. Had the Club provided indemnification for the William F. Shaw claim and applied a single deductible to the claim in the amount of $15,000, Central Gulf would have received indemnification from the Club in the amount of $43,539.10.

**Brunell Claim**

18. The amount incurred and paid by Waterman in settlement and legal fees for the claim of Victor D. Brunell and allocated to the American Club for reimbursement was $76,771.93.

19. The American Club policies issued to Waterman covering the period implicated by the Victor D. Brunell claim are A-3868, A-3921 and A-4028. Each policy

---

[2] I believe a $10,000 deductible mistakenly was used to calculate the amount claimed.

has a $25,000 deductible. I submitted the claim with a reservation of rights to select one policy and apply one deductible.

20. Due to the Club's application of multiple deductibles to the Victor D. Brunell claim, as opposed to application of a single deductible, the Club indemnified Waterman in the amount of $23,840.36.

21. Had a single deductible in the amount of $25,000 been applied to the Victor D. Brunell claim, Waterman would have received indemnification from the Club in the amount of $51,771.93.

22. The difference between the amount that the Club indemnified Waterman for the Victor D. Brunell claim and the amount that Waterman would have been indemnified had a single deductible in the amount of $25,000 been applied is $27,931.57.

**Clark Claim**

23. The total amount incurred and paid by Waterman with respect to settlement and legal fees for the claim of Elmer J. Clark and allocated to the American Club for reimbursement was $28,538.64.

24. The American Club policies issued to Waterman covering the period implicated by the Elmer J. Clark claim are A-3868, A-3921 and A-4028. Each policy has a $25,000 deductible. I submitted the claim with a reservation of rights to select one policy and apply one deductible.

25. The Club provided no indemnification to Waterman for the Elmer J. Clark claim.

5

26. Had the Club provided indemnification for the Elmer J. Clark claim and applied a single deductible to the claim in the amount of $25,000, Waterman would have received indemnification from the Club in the amount of $3,538.64.

**Tagliafarri Claim**

27. The total amount incurred and paid by Waterman with respect to settlement and legal fees for the claims of Joseph Tagliafarri and allocated and submitted to the American Club for reimbursement was $90,727.98.

28. The American Club policies issued to Waterman covering the periods implicated by the Joseph Tagliafarri claim are A-3868, A-3921 and A-4028. Each policy has a $25,000 deductible. I submitted the claim with a reservation of rights to select one policy and apply one deductible.

29. Due to the Club's application of multiple policy deductibles to the Joseph Tagliafarri claim, as opposed to application of a single deductible of $25,000, the Club indemnified Waterman $38,445.81.

30. Had a single deductible in the amount of $25,000 been applied to the Joseph Tagliafarri claim, Waterman would have received indemnification from the Club in the amount of $65,726.98.

31. The difference between the amount that the Club indemnified Waterman for the Joseph Tagliafarri claim and the amount that Waterman would have been indemnified had a single deductible in the amount of $25,000 been applied is $27,281.17.

**Amounts Owed**

32.  As a result of the Club's improper allocation among all triggered American Club policies and the application of a full deductible for each triggered policy, the total amount owed Central Gulf is $58,516.85.

33.  As a result of the Club's improper allocation among all triggered American Club policies and the application of a full deductible for each triggered policy, the total amount owed Waterman is $58,751.38.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 9, 2006

*Linda K. Daniels*
Linda K. Daniels