UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
AMERICAN STEAMSHIP OWNERS MUTUAL  :
PROTECTION AND INDEMNITY                      :    No. 04-cv-04309 (LAK)
ASSOCIATION, INC.                                       :
                              Plaintiff,  :    **AFFIDAVIT OF**
   -against-                                                        :    **STEVEN LOWSON**
                                          :
ALCOA STEAMSHIP CO., INC., et al.,                :    (ECF Case)
                                          :
                                Defendants.  :
---------------------------------------------------------------- X

STATE OF NEW YORK         )
                              ) ss.:
COUNTY OF NEW YORK     )

      STEVEN LOWSON, being duly sworn, deposes and says:

    1.    The facts stated herein are based on my own personal knowledge and/or review of various documents that have either been produced or marked as trial exhibits in this action, and the facts are true to the best of my knowledge, information and belief. I submit this affidavit on behalf of Defendant Sabine Towing & Transportation Co., Inc. ("Sabine"), as defined in its answer filed in this action on November 12, 2004, in this suit brought against it by the American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club" or the "Club").

**Background**

    2.    I am currently employed as Vice President and Senior Associate General Counsel of Sequa Corporation. Sabine is wholly owned by Sequa Corporation. I have been employed by Sequa Corporation since 1995 and have been in my current position since 2001.

    3.    I graduated New York University in 1983 with a B.A. degree in Journalism and Political Science, and Temple University of Law in 1987 with a J.D. degree. I practiced at

the law firm of Sullivan & Cromwell after graduating law school and worked there until 1995, when I joined Sequa. Since 1995, I held various positions at Sequa, all in the Legal Department, until I was promoted to my current position in 2001.

**Sabine's Payments for Insurance Coverage**

4. Sabine first purchased an insurance policy from the American Club for the 1977/78 insurance year and continued purchasing insurance policies from the Club through the 1987/88 insurance year. Sabine has paid all premiums and assessments for the policies it purchased from the Club.

**Occupational Disease Claims**

5. Documents produced in this litigation establish that Sabine has been indemnified by the American Club for four different occupational disease claims ("ODCs").

6. It has always been my understanding that the American Club was obligated to indemnify Sabine for ODCs which occurred in years in which Sabine had purchased insurance policies from the American Club. When Sabine sought indemnification for ODCs from the Club, it did so on the basis that the claims were covered by the relevant policies. Sabine has never requested that the Club pay ODCs on a discretionary basis, and as far as I am aware, no one from Sabine has ever been informed by the Club that it was paying ODCs on a discretionary basis or that it reserved the right to deny coverage as to future ODCs.

**Deductibles**

7. I understand that for some period of time when indemnifying its policyholders for ODCs, the American Club applied multiple deductibles when the particular ODC spanned multiple policy years. The Club applied multiple deductibles when it indemnified Sabine for the four claims mentioned in ¶5.

8. Defendants' Exhibit DX-IT sets forth the following information with respect to the four claims Sabine seeks to have recalculated on the basis of a single deductible: (a) the total amount of the claim attributable to American Club policy years, (b) the amount previously indemnified by the Club, (c) the additional amount due to Sabine if only a single deductible is applied and (d) the supporting documentation for the information set forth in DX-IT. I have reviewed DX-IT and the supporting documentation listed therein, and confirm that DX-IT is a truthful representation of the documents from which it is based.

9. As to claimant Bobby Gaylor, the American Club applied 3 deductibles of $5,000 each. Sabine seeks the additional $10,000 it would have received had the claim been indemnified on the basis of a single deductible.

10. As to claimant Oliver Hartman, the Club applied 7 deductibles, ranging from $5,000 to $25,000. Sabine seeks the additional $32,494.62 it would have received had the claim been indemnified on the basis of a single deductible.

11. As to claimant Levi Rollins, the Club applied 7 deductibles, ranging from $5,000 to $25,000. Sabine seeks the additional $36,788.72 it would have received had the claim been indemnified on the basis of a single deductible.

12. As to claimant James Elmer Warren, Jr., the Club applied 7 deductibles, ranging from $5,000 to $25,000. Sabine seeks the additional $30,988.35 it would have received had the claim been indemnified on the basis of a single deductible.

13. In total, Sabine seeks $110,273.19 in damages for the claims listed in ¶¶ 11-14.

14. In addition to the claims listed in ¶¶ 11-14, Sabine is aware of approximately 450 ODCs pending that may be covered in whole or part by American Club policies. The vast majority of these claims are pending in the Northern District of Ohio and have been virtually

inactive for some time. In addition, Sabine is currently defending two cases in Louisiana (involving the claimants Winn and Wilson) and one in Texas (involving the claimant Schaver) which are ODCs and are covered by American Club policies.

15. The Winn suit mentioned in ¶ 14 was filed on May 19, 2003. The American Club was sued as a defendant in that case under the Louisiana direct action statute. The American Club has answered and actively defended the matter but has not raised coverage as a defense to the Winn suit.[1] The Winn suit is still pending, and the plaintiff (Winn's widow) has been deposed.

16. Sabine pays a portion of the yearly legal expense required for the general maintenance of all of the occupational disease claims on the multidistrict litigation docket, which are for the most part currently inactive. Thompson Hine & Flory, the law firm assigned to monitor these claims on Sabine's and certain others' behalf, charges a general legal expense for their services, which is allocated to each shipowner which the firm represents according to their proportion of all of the claims on the docket. For example, Sabine is involved in approximately .4%[2] of the total number of claims on the docket, and therefore is allocated .4% of the total general maintenance expenses for all of the claims on the docket. Those costs will be claimed as covered costs under the American Club policies.

---

[1] The American Club has had separate counsel from Sabine in the Winn matter since May 20, 2005.

[2] This number varies slightly each year as claims are either added to or deleted from the docket.

17. I swear that the foregoing is true to the best of my recollection and knowledge.

_____
Steven Lowson

Sworn to before me this
8 day of June 2006

_____
Notary Public

PRISCILLA CAPPIELLO
Notary Public, State of New York
No. 03-4803134
Qualified in Bronx County
Certificate Filed in New York County
Commission Expires October 31, 2006

5