UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
AMERICAN STEAMSHIP OWNERS MUTUAL :
PROTECTION AND INDEMNITY            :
ASSOCIATION, INC.                   :   No. 04-cv-04309 (LAK)
                                    :
                    Plaintiff,      :   **AFFIDAVIT OF**
    -against-                       :   **PETER N. POPOV**
                                    :
ALCOA STEAMSHIP CO., INC., et al.,  :   (ECF Case)
                                    :
                    Defendants.     :
-------------------------------------------------------------- X

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )

PETER N. POPOV, being duly sworn, deposes and says:

1. The facts stated herein are based on my own personal knowledge and/or review of various documents that have either been produced or marked as trial exhibits in this action and are true to the best of my knowledge, information and belief. I submit this affidavit on behalf of Defendant Marine Transport Lines, Inc. ("**MTL**"), as defined in its answer filed in this action on October 8, 2004 and amended answer filed on February 4, 2005 (mistakenly dated February 4, 2004), in this suit brought against it by the American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "**American Club**" or the "**Club**").

**Background**

2. I am currently employed by Overseas Shipholding Group, Inc. as its Assistant General Counsel.

3. I was employed by MTL as Vice President and General Counsel from 1985 until April 2006.

4. Plaintiff, American Club, named MTL as manager and agent of several entities on Ex. A to its Second Amended Complaint. MTL was neither the manager nor the agent of the entities but responded on behalf of itself and the other named entities to the extent that they were required to respond at all. The other named entities were as follows: (1) Marine Interests Corporation which has been dissolved; (2) Union Marine Transport Company, which has been dissolved; (3) Marine Chemical Navigation Corporation., which is now named Marine Chemical Navigation Company LLC; (4) Marine Sulphur Shipping Corporation, which is now named Marine Sulphur Shipping Company LLC; and (5) Oswego Tanker Corporation which has been dissolved. Plaintiff amended its Complaint to add additional related entities on January 24, 2005. As to those entities, it was averred that Delta Steamship Lines, Inc. and Delta Lines Inc. were formerly wholly owned by Crowley Maritime Corporation and such companies have either been dissolved or merged into other companies and no longer exist. Crowley Maritime Corporation, to the extent it was required to answer for Delta Steamship Lines, Inc. and Delta Lines Inc., answered with MTL and was included in the definition of MTL.

5. Prior to joining MTL, I was an associate at the law firm, Haight Gardner, Poor & Havens.

6. I am a graduate of Tufts University and Georgetown Law School.

**MTL's Payments for Insurance Coverage**

7. MTL purchased insurance policies from the American Club for the insurance years 1944-1971 and for the insurance years 1980-1988 and paid all premiums and assessments for the policies it purchased from the Club. Because the

years for which MTL purchased insurance from the Club have been closed for assessment purposes, I have always understood that the Club could not further assess MTL.

8.    Prior to this litigation, no one from the Club ever suggested to me that the Club believed it had the right to re-open insurance years, nor am I aware of the Club making such a suggestion to anyone else at MTL prior to this litigation.

9.    Although at previous times employees of MTL had been Directors of the American Club, no MTL employee was on the American Club Board of Directors at any point from the time I was first employed at MTL in 1985 until MTL ceased purchasing insurance from the American Club (and no MTL employee has been an American Club Director since MTL ceased purchasing insurance from the Club). I understand that in 1988, the American Club's managers first recommended that the Club consider strengthening its reserves with an additional provision due to occupational disease claims ("**ODCs**"). No employee of MTL sat on the American Club's Board when it considered this new reserve provision.

10.    During the time I was employed by MTL, no one from the Club ever asked for my consent on behalf of MTL regarding the closure of insurance years or the setting of reserve provisions. I am not aware of the Club seeking consent from anyone else at MTL with regard to the closure of an insurance year or the setting of reserve provisions.

**Occupational Disease Claims**

11.    Although MTL's insurance department, rather than its legal department, was responsible for submitting MTL's claims to the American Club, I was generally

aware that MTL was submitting ODCs to the American Club for indemnification. It has always been my understanding that the American Club was obligated to indemnify MTL for ODCs which occurred in years in which MTL purchased insurance policies from the American Club. The basis for this understanding is my understanding of the nature of the policies purchased by MTL, the past practice of the Club and the past practice of MTL. When MTL sought indemnification for ODCs from the Club, it did so on the basis that the claims were covered by the relevant policies. MTL has never requested the Club to pay ODCs on a discretionary basis, and as far as I am aware, no one from MTL has ever been informed by the Club that it was paying ODCs on a discretionary basis or that it reserved the right to deny coverage as to future ODCs.

12. I understand that for some period of time when indemnifying its policyholders for ODCs, the American Club applied multiple deductibles when the particular ODC spanned multiple policy years. The Club applied multiple deductibles when it indemnified MTL for certain ODCs.

13. In July 2004, the American Club unilaterally ceased indemnifying MTL for its ODCs.

14. Defendants' Exhibit DX-IW ("**DX-IW**") is a chart regarding MTL's ODCs which were submitted to the American Club for indemnification. This chart was: (a) maintained in the ordinary course of MTL's business by Mary Cervati from MTL's insurance department; and (b) updated for this trial.

15. DX-IW lists each claimant in alphabetical order. For each claimant, DX-IW lists, among other things, the amounts billed to the American Club, the dates of

such billings, and any amounts which the American Club has paid to MTL.

16.    DX-IW sets forth the amounts for which the American Club has currently refused to pay to MTL ("**Amount O/S**"). As reflected in that column, if claims are calculated on the basis of multiple deductibles, the total amount currently owed to MTL by the Club is $83,824.61. As set forth below, the amount owed to MTL by the Club is substantially larger if claims are calculated on the basis of a single deductible.

17.    The additional amount due to MTL if only a single deductible is applied to MTL's ODC claims is set forth on DX-IW as "**Additional Amount owed if calculated on single deductible basis**". In total, the American Club would owe MTL an additional $113,451.61 if all of MTL's claims are required to be paid on the basis of a single deductible. Thus, the total damages claimed by MTL at this time, excluding costs and attorneys' fees, are $197,276.22.

18.    DX-IW summarizes the contents of voluminous documents which cannot be conveniently examined in court and is submitted pursuant to Federal Rule of Evidence 1006. It is my understanding that all documents supporting the chart will be made available upon the request of the Court or any other party.

19.    DX-IW lists the supporting documentation for the information set forth in DX-IW. I have reviewed DX-IW and the supporting documentation listed therein, and confirm that DX-IW is a truthful representation of the documents upon which it is based.

20.    In addition, MTL has had over 7,000 other ODCs asserted against it[1] which are covered in whole or in part by American Club insurance policies.

---

[1] MTL is a defendant in over 7,000 of the over 40,000 cases pending in the MDL docket in the Eastern District of Pennsylvania.

Although these claims are currently pending against MTL, it has not yet incurred costs to be submitted for indemnification for them.

21. MTL pays a portion of the yearly legal expense required for the general maintenance of all of the occupational disease claims on the multidistrict litigation docket, which are for the most part currently inactive. Thompson Hine & Flory, the law firm assigned to monitor these claims on MTL's and certain others' behalf, charges a general legal expense for their services, which is allocated to each shipowner which the firm represents according to their proportion of all of the claims on the docket. For example, MTL is involved in approximately 7.5%[2] of the total number of claims on the docket, and therefore is allocated 7.5% of the total general maintenance expenses for all of the claims on the docket. Those costs will be claimed as covered costs under the American Club policies.

22. I swear that the foregoing is true to the best of my recollection and knowledge.

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　Peter N. Popov

Sworn to before me this
9th day of June 2006
_____
Notary Public

LISA A. BAUER
Notary Public, State of New York
No. 02BA6050565
Qualified in New York County
Commission Expires Nov. 6, 2006

---

[2] This number varies slightly each year as claims are either added to or deleted from the docket.