UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY ASSOCIATION, INC.,

                       Plaintiff,

           -against-

ALCOA STEAMSHIP CO., INC., et al.,

                    Defendants.

------------------------------------------------------------

04 Civ. 04309 (LAK)
(JCF)

(ECF CASE)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT FARRELL LINES, INC.'S MOTION IN LIMINE

*BROWN RUDNICK BERLACK ISRAELS LLP*
*Seven Times Square*
*New York, New York 10036*
(212) 209-4800

# TABLE OF CONTENTS

Page(s)

Preliminary Statement.................................................................................1

Facts Relevant to this Motion......................................................................2

Argument....................................................................................................4

POINT 1     THIS COURT HAS FULL AUTHORITY TO EXCLUDE THE
            EVIDENCE AT ISSUE IN THIS MOTION......................................4

POINT II    THE CLUB SHOULD BE PRECLUDED FROM INTRODUCING
            THE TESTIMONY OF NON-PERCIPIENT WITNESSES
            AND OTHERS NOT COMPETENT TO TESTIFY UNDER
            FED. R. EVID. 602.................................................................6

POINT III   THE CLUB SHOULD BE PRECLUDED FROM
            INTRODUCING IRRELEVANT AND DIVERSIONARY
            TESTIMONY INTENDED SOLELY TO IMPUGN THE
            JUDGMENT OF PRIOR BOARDS OF DIRECTORS..................10

POINT IV    THE CLUB SHOULD BE PRECLUDED FROM
            INTRODUCING THE IRRELEVANT LEGAL OPINIONS
            OF ITS WITNESSES..............................................................16

POINT V     THE REBUTTAL DECLARATION OF JOSEPH E.M. HUGHES
            SHOULD BE STRICKEN IN ITS ENTIRETY.............................18

POINT VI    THE REPORT AND TESTIMONY OF RICHARD BROWN,
            JR., A LAWYER FOR THE CLUB AND ITS PURPORTED
            "EXPERT" REBUTTAL WITNESS, SHOULD BE EXCLUDED
            IN THEIR ENTIRETY..............................................................20

Conclusion...........................................................................................25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

711 Kings Highway Corp. v. F.I.M.'s Marine Repair Serv., Inc.,
51 Misc. 2d 373, 273 N.Y.S.2d 299 (Sup. Ct. Kings County 1966) .......................... 14

Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.,
No. 01 Civ. 3796 (PKL), 2004 WL 1970144 (S.D.N.Y. Sept. 3, 2004) ...................... 5

Cucchi v. New York City Off-Track Betting Corp.,
818 F. Supp. 647 (S.D.N.Y. 1993) ........................................................................ 14

Daubert v. Merrell Dow Pharm., Inc.,
509 U.S. 579, 113 S. Ct. 2786 (1993) .................................................................... 6

Galef v. Alexander,
615 F.2d 51 (2d Cir. 1980) .................................................................................. 11

Highland Capital Mgmt., L.P. v. Schneider,
379 F. Supp. 2d. 461 (S.D.N.Y. 2005) .............................................................. 5, 16

Hous. Works, Inc. v. Turner,
362 F. Supp. 2d 434 (S.D.N.Y. 2005) ................................................................... 23

Hygh v. Jacobs,
961 F.2d 359 (2d Cir. 1992) ................................................................................ 23

In re Metropolitan Life Derivative Litig.,
935 F. Supp. 286 (S.D.N.Y. 1996) ....................................................................... 12

In re Motel 6 Sec. Litig.,
161 F. Supp. 2d 227 (S.D.N.Y. 2001) ................................................................... 24

In re Rezulin Prod. Liability Litig.,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................................... 23

Lawrence v. Cohn,
197 F. Supp. 2d 16 (S.D.N.Y. 2002), aff'd, 325 F.3d 141 (2d Cir. 2003) ................. 24

Luce v. United States,
469 U.S. 38, 105 S. Ct. 460 (1984) ......................................................................... 4

Marx & Co. v. Diners' Club, Inc.,
550 F.2d 505 (2d Cir. 1977) .......................................................................... 16, 23

Palmieri v. Defaria,
88 F.3d 136 (2d Cir. 1996) ................................................................. 5

Snap-Drape, Inc. v. Comm'r of Internal Revenue,
98 F. 3d 194 (5th Cir. 1996) ............................................................. 24

Turner v. American S.S. Owners' Mut. Prot. & Indem. Ass'n,
16 F.2d 707 (5th Cir. 1927) ............................................................. 11

Wells v. Shearson Lehman/Am. Express,
72 N.Y.2d 11, 530 N.Y.S.2d 517 (1988) .................................................. 6

**Federal Rules**

Fed. R. Evid. 104(a) ......................................................................... 5

Fed. R. Evid. 401 ....................................................................... 5, 18

Fed. R. Evid. 602 .................................................................. 6, 10, 15

Fed. R. Evid. 702 ................................................................ 20, 21, 22

**Statutes**

CPLR 214[4] ................................................................................ 11

CPLR 213[7] ................................................................................ 11

## Preliminary Statement

Defendant Farrell Lines, Inc. ("Farrell") and certain other Defendants (collectively, the "Moving Defendants") move in limine for an order precluding Plaintiff American Steamship Owners Mutual Protection and Indemnity Association, Inc. ("Plaintiff," or the "Club") from introducing unreliable, speculative, and irrelevant evidence at trial.[1]  In particular, the Moving Defendants respectfully request that the Court enter an order:

- Barring the testimony of non-percipient witnesses, in particular, the conclusory, self-serving testimony of Club management about Defendants and their prior Board representatives;

- Precluding testimony regarding the purported "self-dealing" and "bad-faith" of prior Boards of Directors.  The Club makes no claims or defenses relating to the self-dealing or bad-faith of any Director, and, tellingly, named none of the prior Directors as a defendant.  Even if such proposed testimony were relevant (and it is not), it would be so speculative and conclusory as to be bereft of probative value;

- Precluding irrelevant, and incompetent, opinion evidence tailored to support the Club's strained theories of "mutuality" and "equity;"

- Precluding the testimony containing the legal conclusions of the Club's witnesses.  These self-serving (and uniformly insupportable) legal conclusions are of absolutely no probative value and blatantly usurp the Court of its role with respect to matters of law;

---

[1]   The following Defendants join Farrell in this application: Keystone Shipping Company (and related entities), BP America Inc. (and related entities), Marine Transport Lines, Inc. (and related entities), Kirby Inland Marine, LP (as successor to Hollywood Marine Inc.), American Steamship Company, The Cleveland-Cliffs Steamship Company, Ispat Inland Inc., Amerada Hess Corporation, Sabine Towing and Transportation Company, Inc., Alcoa Steamship Co. Inc. (and related entities), APL, Ltd. (as successor to American Mail Line and American President Lines, Inc.), Apex Oil Company, Inc., Trinidad Corporation, Mathiasen's Tankers Industries, Inc. and Crest Tankers, Inc., Central Gulf Lines, Inc., Waterman Steamship Corporation, and KeySpan Corporation.

- Barring, in its entirety, the Rebuttal Declaration of Joseph E.M. Hughes – an abbreviated trial brief dressed up as the averment of a "fact witness;" and

- Barring, in their entirety, the report and the testimony of Richard H. Brown, Jr., the Club's purported "expert rebuttal witness," both of which are comprised of the impermissible legal conclusions of an unqualified witness.

## **Facts Relevant To This Motion**

This case arises out of the decision of the Club to repudiate marine protection and indemnity insurance coverage for more than 100 former and current policyholders for certain occupational disease claims ("ODCs"). Specifically, the Club asserts that its longtime obligation to indemnify its policyholders for ODCs has become "discretionary" as to claims arising from occurrences (like asbestos exposure) that took place in pre-1989 insurance years. It thus seeks a judicial declaration that it is somehow not obligated to indemnify policyholders for ODCs arising out of occurrences that took place prior to 1989. Failing a grant of that remarkable relief, the Club seeks a declaration that it can "reopen" closed insurance years to levy additional assessments on policyholders – notwithstanding the fact that the closure of a year has always been understood to constitute a final release of its members from any additional payments for coverage, both by the Club specifically, and by the mutual marine protection and indemnity industry in general. Additionally, the Club seeks validation of its practice of "stacking deductibles" – allocating an injured employee's claim over all of the years in which the employee served on or about a given policyholder's vessel, and charging the policyholder a separate deductible for each of those years.

The Club does not (and could not) dispute that ODCs fall squarely within the language of the insurance policies at issue.  Nor does the Club claim that the policies are not in effect, or that the policyholders failed to pay the required premiums.  Rather, in attempting to justify the remarkable relief it seeks, the Club maintains that it should not have to fulfill its contractual obligation to indemnify its policyholders because to do so would "violate principles of mutuality," or because the policyholders "knew or should have known" that the assessments levied by the Club might be insufficient to cover future ODCs.  Thus, the Club seeks to introduce testimony from its witnesses about the policyholders' state of mind – testimony too speculative to be probative, even if it were somehow relevant to this straightforward contract dispute.

The Club has also sought to introduce evidence to impugn the business judgment of previous Boards of Directors – arguing that the Directors were acting as surrogates for the policyholders that elected them, and engaged in "self-dealing" when approving the closure of insurance years, and, where appropriate, refunding to members excess funds, as required by the Club's By-Laws and New York law.  No testimony relating to this straw-man argument should be received. First, evidence concerning the Directors' business judgment is plainly irrelevant to the pure contractual question at issue – that is, whether an insurer has the right to disclaim unilaterally its obligations under an otherwise valid policy – and seems solely intended to create a veneer of justification for the Club's breach of contract. In any event, the Club's theory rests on a spurious premise, because the closure of a given policy year was the unilateral decision of the Club, acting through its duly

appointed Board of Directors, in reliance on the expertise of its managers and its legal counsel. Notably, the Club neither named any of its prior directors in this lawsuit, nor made any claims of breach of fiduciary duty. Evidence concerning the business judgment of prior Boards of Directors has no relevance to this contract dispute, and should be excluded in its entirety.

Moreover, a number of the Club's witnesses offer their opinions as to whether the Club's novel theories comport with New York state law. Such testimony is incompetent, speculative, and invades the province of this Court. It should be excluded outright.

Finally, the report and the testimony of Plaintiff's purported "expert rebuttal witness," the Club's longtime counsel, Richard H. Brown, Jr., is facially inadmissible legal argument masquerading as expert rebuttal testimony. Neither Mr. Brown's expert rebuttal report or expert rebuttal affidavit should be received into evidence.

## Argument

### POINT I

### THIS COURT HAS FULL AUTHORITY TO EXCLUDE THE EVIDENCE AT ISSUE IN THIS MOTION

Motions in limine permit the trial court to rule in advance of trial on the admissibility and relevance of certain evidence. See Luce v. United States, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 463 (1984) (recognizing that the practice of making in limine rulings has developed pursuant to the district court's inherent authority to manage the course of trials). "The purpose of an in limine motion is to aid the trial

4

process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (citation and internal quotation marks omitted); accord Highland Capital Mgmt., L.P. v. Schneider, 379 F. Supp. 2d. 461, 467 (S.D.N.Y. 2005) (citation omitted). Thus, "[a] motion in limine to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc., No. 01 Civ. 3796 (PKL), 2004 WL 1970144, at *4 (S.D.N.Y. Sept. 3, 2004) (citing Fed. R. Evid. 104(a)). In limine rulings excluding evidence are appropriate in bench trials. See, e.g., id. at *5 (finding proposed exhibits "irrelevant, such that admitting them even at a bench trial would contravene Rule 401 and serve no purpose").

Evidence should not be admitted where it "do[es] not tend to make the existence of any fact at issue more or less probable." Commerce Funding, 2004 WL 1970144, at *5; see also Fed. R. Evid. 401 ("'[r]elevant evidence' means evidence having any tendency to make the existence of a fact of consequence to the determination of the action more probable or less probable than it would be without

the evidence"). For the reasons set forth herein, the Court should exercise its power to exclude the evidence at issue in this motion in limine.[2]

## POINT II

### THE CLUB SHOULD BE PRECLUDED FROM INTRODUCING THE TESTIMONY OF NON-PERCIPIENT WITNESSES AND OTHERS NOT COMPETENT TO TESTIFY UNDER FED. R. EVID. 602

The Club's witness affidavits are rife with rank speculation, the observations of non-percipient witnesses, and impermissible opinion testimony. Yet "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602; see also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592, 113 S. Ct. 2786, 2796 (1993) ("the usual requirement of firsthand knowledge [is] a rule which represents a most pervasive manifestation of the common law insistence upon the most reliable sources of information") (citation and internal quotations omitted). Nor is there relevance to what the Club's witnesses profess to have "thought," but failed to share with others. See, e.g., Wells v. Shearson Lehman/Am. Express, 72 N.Y.2d 11, 24, 530 N.Y.S.2d 517, 524 (1988) (plaintiff's unexpressed subjective intent not to release defendants does not create an issue of fact).

The affidavits are replete with the musings of witnesses with no personal knowledge of the actions and events to which they testify. Their testimony is unreliable, and should be excluded:

---

[2]    The portions of testimony sought to be excluded are set forth in a compendium appended hereto as Exhibit A. The Moving Defendants also move to exclude in their entirety the Rebuttal Declaration of Joseph E.M. Hughes (see infra Point V) as well as the Rebuttal Expert Report of Richard H. Brown, Jr. and the Rebuttal Expert Affidavit of Richard H. Brown, Jr. (see infra Point VI). Finally, the Moving Defendants seek to exclude Trial Exhibit PX-290, a chart purporting to demonstrate the return to Defendants of apparently excess assessments (see infra Point III).

- "The manager, acting under an assumption that there was coverage despite the lack of assessment in respect of such claims, as I have learned recently, commenced paying them by utilizing funds in the Club's Reserve Account."  Affidavit of Richard Brown ("Brown Aff."[3] ¶ 11, lines 8-11 (speculative testimony; testimony of non-percipient witness).

- "Apparently under the same assumption, on one occasion. [sic] At a meeting on September 9, 1982, the Board approved a settlement in an ODC case substantial enough to require Board approval . . . the minutes do not reflect that I was at that meeting, and I have no recollection of that Board approval."  Brown Aff. ¶ 11, lines 11-15 (speculative testimony; testimony of non-percipient witness).

- "From a number of discussions with my predecessor, Mr. Thomas McGowan, and Club counsel, Richard Brown, Esq., I understood that while many of these claims were attributable to long closed insurance years, the Club had, since long before my arrival, and indeed, I am told, before Mr. McGowan's and Mr. Brown's involvement as President of Shipowners and Club Counsel, respectively allowed their payment out of the Club's reserves.  I have since learned that this practice [paying Closed Year ODCs] commenced without an opinion of counsel and was never the subject of Board discussion or resolution."  Hughes Aff. ¶ 14, lines 5-12 (testimony of non-percipient witness).

- "Given primarily that the claims were the claims of the Club's oldest and most influential members, those being Keystone Shipping Corporation, Farrell Lines and American President Lines, and related entities, all of whom had representatives on the Club's Board, and since the claims had been small and were not perceived to be a significant financial drain on the Club, no objections were made."  Hughes Aff. ¶ 14, lines 12-16 (speculative testimony; testimony of non-percipient witness).

- "I have recently learned that, as the American Club's accounts for most of the pre-1989 years were closed, nothing was reserved for the possibility that unknown claims would later be asserted and that for certain years a nominal sum of only $100,000 was reserved, which the Board was told at the time would likely be inadequate.  I had no information at the time I became aware of this as to how that figure was finally agreed upon."  Hughes Aff. ¶ 15, lines 1-5 (irrelevant testimony; testimony of non-percipient witness).

---

[3]  The testimony of a given fact witness will be cited hereafter as "[witness surname] Aff. ¶ ___ or "[witness surname] Rebuttal Decl. ¶ ___."

- "The fact that [the revised by-law] was characterized as a 'change' from the prior position indicates to me that the previous position was that closed years could be reopened." Hughes Aff. ¶ 28, lines 1-2 (irrelevant and speculative testimony).

- "I believed such a result to be unfair and not 'mutual.' Keystone would be getting insurance for which it had never paid or been assessed, and new members, virtually all of whom had joined after the Club had changed its rules and adopted a Rule Book format, would be paying for claims they had not agreed to pay. Because the Club is a 'mutual,' and the insurance policies are 'fully assessable,' – i.e., each insured is liable to be assessed for claims against itself and all other members of the insurance years in question – this result is unthinkable." Hughes Aff. ¶ 33, lines 1-7 (irrelevant opinion testimony; speculative testimony).[4]

- "However, apparently on the assumption that the Club had a liability to indemnify closed year members regarding Closed Year ODCs, a practice of indemnifying such claims from the Club's Reserve Account had commenced before my time as president of SCB, and I continued the practice without questioning it." McGowan Aff. ¶ 56, lines 1-4 (irrelevant and speculative testimony).

- "The members of the Board of Directors, particularly those representing Keystone Shipping, Farrell Lines and APL, which were seeking and receiving indemnities regarding these closed year ODCs, were obviously fully aware of the practice, and, in my view, as they were the beneficiaries of this practice, they had little interest in inviting debate." McGowan Aff. ¶ 61, lines 1-5 (speculative testimony; irrelevant opinion testimony).

- "The Directors representing [Keystone Shipping, Farrell Lines and American President Lines] made clear that they wanted 'their' money returned to them, regardless of the Club's needs." McGowan Aff. ¶ 81, lines 4-5 (irrelevant and incompetent testimony).

- "While I do not recall anything specific, I am certain that I would have felt that unreported asbestos claims would have fallen into that category [claims paid as an 'accommodation']." Cassedy Aff. ¶ 8, lines 11-13 (speculative testimony; testimony of non-percipient witness).

---

[4]   In addition, this testimony is excludable as the inadmissible legal opinion of a witness. See Point IV, infra.

- "I always believed that payment of 'one off' claims, which would have included the Closed Year ODCs, was something the Board of Directors was entitled to approve of, within their discretion. I never believed the Closed Year ODCs posed a threat to the Club's financial well being because the practice of paying them was discretionary and, should the losses become significant, the Club could, in my view, simply stop paying them. Again, however, to the best of my recollection, this was not something anyone discussed at the time. Cassedy Aff. ¶ 9, lines 1-7 (irrelevant opinion testimony; inadmissible evidence of unexpressed subjective intent).

- "I believe that the Board of Directors acted appropriately in terminating the Discretionary Practice." Sweeney Aff. ¶ 12, lines 5-6 (irrelevant opinion testimony).

- "These ship owners never paid assessments, or knowingly paid assessments that were inadequate, to cover the cost of satisfying Closed Year ODCs." Sweeney Aff. ¶ 13, lines 3-5 (speculative testimony).

- "If the Club is required to continue the Discretionary Practice, it will be forced to pay all such claims, notwithstanding that the members of the pre 1989 years either contributed nothing towards their liabilities or contributed a token, arbitrary amount for several years – an amount which I now understand they were advised would likely be and which has turned out to be insufficient." Solarino Aff. ¶ 24, lines 1-5 (irrelevant opinion testimony; testimony of non-percipient witness).

- "The inequity that will occur in the event defendants prevail will be more dramatic than in past years." Solarino Aff. ¶ 25, lines 1-2 (irrelevant opinion testimony; speculative testimony).

- "As the value of asbestos claims continues to rise, so does the inequitable nature of the relief sought by defendants." Solarino Aff. ¶ 25, lines 4-6 (irrelevant opinion testimony; speculative testimony).

- "In addition to the dramatic increase in the average rate of payout on asbestos claims over time, another factor that highlights the inequity that would ensue if the Club were forced to continue its discretionary practice is the potential amounts of indemnities that could be required to be paid out in the event juries were to award recoveries to seaman [sic] in the millions or tens-of-millions of dollars." Solarino Aff. ¶ 29, lines 1-5 (irrelevant opinion testimony; speculative testimony).

9

- "Were the Club required to continue the Discretionary Practice, and either single or multiple "Farley-type"[5] claims were to result in settlements or judgments in ranges predicted by Keystone's counsel in the Farley matter, the American Club's modest reserves could be substantially depleted, if not wiped out. This would shift the cost of all further indemnity claims regarding Closed year ODC's to the Club's current and future members." Solarino Aff. ¶ 29, lines 10-15 (irrelevant opinion testimony; speculative testimony).

None of the foregoing testimony is admissible; the musings of the Club's fact witnesses are not competent evidence and do not come close to comporting with the requirements of Fed. R. Evid. 602. The testimony should be excluded.

### POINT III

### THE CLUB SHOULD BE PRECLUDED FROM INTRODUCING IRRELEVANT AND DIVERSIONARY TESTIMONY INTENDED SOLELY TO IMPUGN THE JUDGMENT OF PRIOR BOARDS OF DIRECTORS

The Club's witness statements are rife with allegations that are in no way relevant to any of the parties' claims or defenses. Such testimony plainly fails to satisfy the Federal Rules' requirement that admissible evidence must tend "to make the existence of <u>any fact that is of consequence to the determination of the action</u> more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis supplied). This evidence, which would do nothing more than divert attention from the real issues in this case, should be excluded before trial.

The purported bad-faith actions of prior boards of directors are not relevant to any claim or defense in this contract action. As aptly put by Magistrate

---

[5]    The "Farley claim" was a sizable occupational disease claim brought by a seaman named Timothy Farley against defendant Keystone Shipping Company.

Judge Francis: "The complaint in this action asserts no claim remotely resembling breach of fiduciary duty, and no Director has been named as a defendant." September 15, 2005 Order. Nor does the Club make any allegation of a conflict of interest on the part of the Directors, for its own internal policies explicitly provide that it is not a conflict of interest to serve on the Club Board and to hold a position with, or equity interest in, a Club insured. See Trial Exh. DX-AP (Statement of Policy on Conflict of Interest). It is notable, too, that the applicable statutes of limitation for any (unasserted) claims related to bad-faith actions or self-dealing have long since run. See CPLR 214[4] (statute of limitations for breach of fiduciary duty three or six years, depending on relief sought); CPLR 213[7] (statute of limitations for corporate waste six years).[6]

The policy behind the business judgment rule is instructive here: it underscores the principle that actions taken in the informed discretion of a board of directors are accorded great deference by the courts. See, e.g., Galef v. Alexander, 615 F.2d 51, 57 (2d Cir. 1980) (where board's exercise of judgment free of fraud and conflicts of interest, board decisions not second-guessed by courts); Turner v. American S.S. Owners' Mut. Prot. & Indem. Ass'n, Inc., 16 F.2d 707, 709 (5th Cir. 1927) (standard applicable to decisions of mutual insurance company board of directors). Evidence relating to nothing more than the second-guessing of years-old

---

[6]    The American Club closed the 1988/1989 insurance year -- the last insurance year at issue in this litigation – by board resolution on June 10, 1993, eleven years before the complaint was filed commencing this action.

board decisions is simply irrelevant to the contractual obligations at issue in this action.[7]

Likewise irrelevant (and inaccurate) is the Club's contention that Defendants "awarded themselves" millions of dollars in refunds. As the Club well knows, New York law <u>requires</u> the return of funds deemed excess assessments. <u>See</u> N.Y. Ins. Law § 6108(c) (McKinney 1984). Indeed, the refunds at issue were made in accordance with the advice of the Club's own counsel. <u>See</u> Trial Exh. DX-BT (May 31, 1991 Kirlin, Campbell & Keating opinion letter); Defendants' Trial Brief at 4 n.7. The refunds were in no way an "award" – they were understood to be the statutorily mandated return to the policyholders of their own property. The Club's characterization of the refund process as somehow involving self-dealing is unfounded, irrelevant, and grossly misleading. Evidence relating to this cynical and misguided argument should be excluded outright.

The Club's sophistry aside, neither the fact of (nor the amount of) any refunds of excess assessments has any relevance to the litigation. The refunds are unrelated to the Club's obligation to provide coverage, which is solely a function of contract. They are unrelated to the strained equitable theories under which the Club contends closed years can be reopened: the closure of a year is corporate act

---

[7]     That the Club interposed an affirmative defense of lack of good faith and fair dealing compels no different conclusion. The actions of the Club's Directors were taken in their capacities as fiduciaries of the Club, not representatives of Defendants. Indeed, the Club's policyholders do not owe fiduciary duties to the Club. As Magistrate Judge Francis recognized, "the members themselves have no fiduciary duty to the American Club; the relationship between a mutual insurance association and its members is a contractual one." September 15, 2005 Order at 27 (citations omitted); <u>see also</u> <u>In re Metropolitan Life Derivative Litig.</u>, 935 F. Supp. 286, 293 (S.D.N.Y. 1996) (relationship between mutual insurance company and a policyholder "not of a fiduciary nature") (citation omitted). Any purported bad-faith actions of prior directors is thus unrelated to the lack of good faith and fair dealing Plaintiff alleges of Defendants, and as such, are irrelevant, and excludable.

constituting a final release to which notions of "mutuality" and "mistake" do not apply. See Defendants' Trial Brief at 28-32. And even if the return of these excess assessments were somehow related to "mutuality," the subject would still be irrelevant, given that the Club has not even demonstrated that any of the pre-1989 insurance years are in deficiency. See Defendants' Trial Brief at 32-33.[8] Thus, any testimony relating to the refund of excess assessments – much less testimony mischaracterizing the process as somehow untoward – should be excluded. Likewise excludable is any chart purporting to demonstrate the amount, or the recipients, of refunds of excess assessments.

Finally, no testimony suggesting that the former directors were acting ultra vires in voting to close insurance years should be received, because the doctrine of ultra vires has no application in this case. New York law only provides for actions alleging ultra vires in three enumerated situations: (1) a shareholder can bring an action against the corporation to enjoin the doing of a corporate act; (2) the corporation can bring an action to procure a judgment against an incumbent or former officer or director for loss due to unauthorized act; and (3) the attorney general can bring an action. See N.Y. Bus. Corp. Law § 203(a) (McKinney 1986). The Club is not a shareholder, it has sued no officers or directors (former or otherwise) and this is not an Attorney General's action. Because the Club does not have standing to challenge prior corporate acts as ultra vires, evidence relating to acts purportedly ultra vires can have no relevance, and must be excluded. See

---

[8]  Indeed, the balance of the reserve account as of June 30, 1993 – twenty days after the Club closed the 1988/1989 insurance year – was $19,814,267. See Trial Exh. PX-297 at AC086799 (referencing AC3066585).

Cucchi v. New York City Off-Track Betting Corp., 818 F. Supp. 647, 657-58 (S.D.N.Y. 1993) (ultra vires claim must fail where plaintiff satisfies none of the three statutory categories); 711 Kings Highway Corp. v. F.I.M.'s Marine Repair Serv., Inc., 51 Misc. 2d 373, 374, 273 N.Y.S.2d 299, 301 (Sup. Ct. Kings County 1966) ("ultra vires may not be invoked as a sword in support of a cause of action" except in the three limited statutorily recognized actions, none there applicable); see also Defendants' Trial Brief at 27 (explaining Club's inability, as a matter of law, to challenge own corporate acts).

The following specific testimony should be excluded:

- "Exhibit PX-290 shows that for insurance years 1938 - 1988, Club members received over $31 million in refunds and dividends ($25,106,492.63 issued for insurance years 1938 - 1976 and 1978, which were all closed before the end of 1987, plus $6,065,088.29 issued for insurance years 1977 and 1979 - 1988 years, which were all closed on or before June, 1993). The over $6 million in refunds for insurance years 1977 and 1978 – 1888 [sic] were ordered by the then Boards of Directors (which included representatives of Keystone, APL and Farrell Lines), during the same time that those Boards were aware generally that the number of asbestos claims relating to the years they were closing were growing, and that the only amounts being set aside for those claims was $100,000 upon the closing of the year. Indeed, if the refunds and the dividends of over $31 million that had been paid after 1938 had been retained as part of the Club's Reserve Account, rather than returned to members, the Club's Reserve Account today would likely total hundreds of millions of dollars. Having already awarded themselves very substantial benefits from the American Club's Reserve Account, Defendants should not be entitled to any more." Solarino Aff. ¶ 13, lines 1-15 (irrelevant testimony).[9]

- I have a memory of one director, Adolph Kurz, expressing opposition to setting aside any amount for IBNR [incurred, but not reported] ODCs (which I later came to think may have been an action in the best interest of his company rather than the Club's)."

---

[9]    Trial Exh. PX-290, a chart that purports to demonstrate the refund of excess assessments to pre-1989 policyholders should likewise be excluded.

14

Brown Aff. ¶ 23, lines 4-7 (irrelevant testimony).[10]

- "[T]he [current] board determined that past Boards of Directors had availed their companies of millions of dollars in indemnity insurance for Closed Year ODCs for which they were never assessed, and routinely deprived the Club's reserves of infusions of much needed cash by refunding to themselves millions of dollars in alleged "excess" assessments. The Board further determined that the $100,000 reserve set aside in 1988 for the 1977 and later insurance years was arbitrary and inadequate even by reference to what was known at the time, and reflected a consistent tendency by the Club's former board members to favor their employers' finances over those of the Club." Hughes Aff. ¶ 37, lines 1-9 (irrelevant testimony).

- "The costs of these claims are something the former Club members and their representatives on the Board were obliged, but intentionally failed to provide for when the insurance years in question came to be closed." Hughes Aff. ¶ 37, lines 16-18 (irrelevant and speculative testimony concerning the state of mind of former members and their representatives).

- "[T]he defendants had previously awarded themselves almost $6 million in indemnity insurance from the Club for which they never paid." Hughes Aff. ¶ 39, lines 10-11 (irrelevant testimony).

The Club's proposed purported evidence of prior boards' "bad-faith" and "self-dealing" is nothing more than a smokescreen intended to divert attention from what is truly at issue in this action: whether the Club can walk away from its contractual obligations under the relevant insurance policies. The foregoing evidence should be excluded.

---

[10] This testimony is excludable not only because of the irrelevance of evidence relating to purported "self-dealing," but because of the irrelevance of what this non-percipient witness "later came to think." Moreover, this self-serving speculation is incompetent evidence under Fed. R. Evid. 602. See Point II, supra.

## POINT IV

### THE CLUB SHOULD BE PRECLUDED FROM INTRODUCING THE IRRELEVANT <u>LEGAL OPINIONS OF ITS WITNESSES</u>

The Club's witness statements abound with the legal opinions of fact witnesses. It is impermissible for experts to opine on matters of law, much less for lay witnesses to do so. <u>See</u> <u>Highland Capital Mgmt., L.P. v. Schneider</u>, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) ("it is . . . erroneous for a witness to state his opinion on the law of the forum") (citations and internal quotations omitted); <u>see also</u> <u>Marx & Co. v. Diners' Club, Inc.</u>, 550 F.2d 505, 509-10 (2d Cir. 1977) ("[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge"). The legal speculation of the Club's witnesses is probative of nothing. Accordingly, the following testimony should be excluded:

- "The members for any insurance year were, as such, liable only for their proportions of premiums and assessments attributable to that year. Fundamentally, each insurance year was to be self-supporting, and within the insurance year each member was to be liable for his proportion of the premiums and assessments necessary to cover the claims and expenses for that insurance year and not some other. The foregoing mutual arrangement was pursuant to New York statute (Insurance Law § 4111) and the Club's charter, by-laws and insurance policies." Brown Aff. ¶ 7, lines 10-17 (impermissible legal opinion).

- "In numerous paragraphs, [the specimen policy] requires that deductibles apply to 'claims hereunder' or arising during that policy period. Accordingly, for each claim arising under a policy, *i.e.*, occurring within a policy year, a deductible applies. In the case of claims regarding exposure to asbestos occurring over multiple years, a deductible thus applies for each policy year implicated." Craig Aff. ¶ 11, lines 4-9 (impermissible legal analysis of contractual terms; irrelevant testimony).

- "This practice [stacking deductibles] is consistent with the provisions of the insurance policies regarding 'liabilities thereunder'

16

and 'claims thereunder' or liabilities incurred within each policy period, not outside thereof." Craig Aff. ¶ 13, lines 5-7 (impermissible analysis of contractual terms; irrelevant testimony).

- "All prior [insurance] years remained under the old regime, which is that under New York law they could not be reopened." Hughes Aff. ¶ 28, lines 8-10 (inadmissible legal opinion).

- "[I]t is the view of the Club's present Board that the former Club members are not entitled to continued indemnity insurance for which they never paid." Hughes Aff. ¶ 37, lines 18-20 (inadmissible legal opinion; speculative testimony; irrelevant testimony).

- "It was and is my view that as the members of the pre-1989 years never paid for the indemnity insurance they seek, they have no right to such indemnity insurance and certainly they have no right to expect that the Club's current and future members, never having consented to do so, will continue to pay for it." Hughes Aff. ¶ 46, lines 1-4 (inadmissible legal opinion; irrelevant testimony).

- "Were the Court to deny the American Club the relief it seeks and require the Club to indemnify defendants for pre-1989 ODCs that were not reported prior to the close of those years, without the right to assess members for such claims, defendants would receive an inequitable windfall." Solarino Aff. ¶ 21, lines 1-4 (inadmissible legal opinion; speculative testimony; irrelevant testimony).

- "The Fallon Letter[11] . . . sets forth the opinion of the American Club's counsel that, among other things, (a) the closed year reserves belong to the Club (and, by implication, that members in any closed years did not have the right to any reserve funds), (b) that closing of insurance years resulted in a 'final settlement of accounts,' which, among other things, terminated closed year members' right to file claims for insurance years after those insurance years had been closed, and/or that (c) closed years could be reopened." Solarino, Aff. ¶ 65, lines 6-13 (irrelevant opinion; incompetent characterization of document).

The foregoing testimony is relevant to nothing at issue in this lawsuit; it does not have any "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than

---

[11] The "Fallon Letter" is a 1979 opinion letter from the Club's counsel concerning, *inter alia*, the ownership of the Club's reserve account.

it would be without the evidence." Fed. R. Evid. 401. The testimony should be excluded.

## POINT V

### THE REBUTTAL DECLARATION OF JOSEPH E. M. HUGHES SHOULD BE STRICKEN IN ITS ENTIRETY

The rebuttal declaration of Joseph E.M. Hughes – the current Chief Executive Officer of the Club's manager – is nothing more than argument dressed up as fact testimony. The declaration is larded with self-serving, conclusory opinions – so much so, that it is impossible, for all practical purposes, to extricate what little (if any) competent fact testimony it contains.

The declaration is too lengthy to reprint here. (It is appended hereto as Exhibit C.) But one only need review the first sentence of each paragraph of this purported "fact" rebuttal (save for the first paragraph, in which Mr. Hughes provides pedigree testimony) to see that this self-serving essay would more appropriately be included in a reply brief than in the rebuttal declaration of a "fact witness." See Hughes Rebuttal Decl. ¶ 2 ("[t]he Defendants' claim that they were never told that closed years could be reopened is belied by the record"); ¶ 3 ("Defendants' contention that they are entitled to unlimited indemnity insurance simply because they paid all premiums and assessments previously billed to them . . . misconstrues the fundamental nature of the mutual insurance they purchased"); ¶ 4 ("[t]he former Directors' bland assurances that they acted always in reliance upon the managers' advice and acted always in the Club's best interests . . . simply does not comport with the facts"); ¶ 5 "Defendants' contention that the $100,000 per year

'strengthened' the Club's reserves is misleading as it obscures the point that what is needed by the Club was <u>adequate</u> reserves for Defendant's Closed Year ODCs, <u>not</u> the token, nominal sum which the Defendants grudgingly provided"); ¶ 6 ("[e]qually inaccurate is Defendants' claim that they left the Club 'well-positioned' or 'well funded to respond to Defendants' Closed Year ODCs . . . .'"); ¶ 7 ("[i]n this regard, I also suggest that Messrs. Gleason, Gronda and Kurz' claim that they left the Club in sound financial condition . . . is belied by their own initiative to expand the Club in the early 1990s . . . ."); ¶ 8 ([g]iven that the Defendants consistently chose not to assess themselves in any amount even reasonably close to the level required to respond to their unreported Closed Year ODCs with the potential for multi-million dollar verdicts, there is no inequity in terminating their 'free' insurance . . . ."); ¶ 9 ("[t]his characteristically self centered lament ignores the obvious fact that the current Club members have structured their finances in reliance on the understanding – which the former Directors <u>never</u> disputed – that they cannot be assessed to pay for the claims of closed year members, and the current membership at least have the benefit of the policy and by-law terms on their side"); ¶ 10 ("[b]eyond this, I question how any of the former Directors can reasonably claim to have had, much less relied upon such an understanding . . . ."); ¶ 11 ("[t]he former Directors' suggestion that they viewed Mr. Brown's advice as a mere litigation tactic unique to the <u>Prudential</u> and <u>U.S. Lines</u> bankruptcies . . . is disingenuous"); ¶ 12 ("Mr. Gleason's observation that the prospect that closed years could be reopened for assessment would be 'unattractive' to prospective new members . . . is also disingenuous"); ¶ 13 ("Mr. Coghlin takes Mr. Brown, and, by implication, me to task

for allegedly advising the International Group in correspondence with the membership subcommittee that the Club had the ability to assess open year members for deficiencies in closed years even without a rule so providing . . . ."); ¶ 14 ("[m]y point was that, at the time, closed year deficiencies <u>were</u> indirectly being passed on to open year members, who were then largely the closed year members, in modest amounts as a part of the 'discretionary practice,' and while the Club could have, it had not to that point ever reopened a closed year"); ¶ 15 ("[s]everal of the Defendants allege that if they had known earlier that the Club would not indemnify them for their pre-1989 Closed Year ODCs, they would have sought other insurance to cover these claims"); and ¶ 16 ("[w]hile Mr. Coghlin claims to have difficulty accepting the point, the pre-1989 members are in no way being treated unfairly").

The Hughes Rebuttal Declaration is not a declaration at all – it is argument, plain and simple, and should not be received as the testimony of a "fact witness." The Hughes Rebuttal Declaration should be excluded in its entirety.

### POINT VI

### THE REPORT AND TESTIMONY OF RICHARD BROWN, JR., A LAWYER FOR THE CLUB AND ITS PURPORTED "EXPERT" REBUTTAL <u>WITNESS, SHOULD BE EXCLUDED IN THEIR ENTIRETY</u>

The "expert" rebuttal submissions of Richard Brown, Jr., the Club's longtime legal counsel (and a fact witness in this action), are neither expert nor proper rebuttal to the testimony of Defendants' expert witness, Terence Coghlin. They should be excluded in their entirety, because Mr. Brown is not "qualified" within the meaning of Fed. R. Evid. 702, because his testimony is almost entirely comprised of legal conclusions that would not assist the trier of fact, as Fed. R. Evid.

702 requires, and because much of his statements go well beyond the permissible scope of expert rebuttal testimony.[12]

**Mr. Brown Is Not A Qualified Expert**

To testify as an expert, a witness must, _inter alia_, be "qualified as an expert by knowledge, skill, experience, training, or education . . ." Fed. R. Evid. 702. As Mr. Brown has expressly disavowed any expertise in the only subject area that would constitute proper rebuttal of Mr. Coghlin's report, he is not "qualified" within the meaning of Fed. R. Evid. 702, and his testimony as a purported expert should not be allowed.

The expert report of Terence Coghlin makes it clear that Mr. Coghlin's opinions are based on his knowledge of customs and practices of the mutual P&I insurance industry as a whole. _See_ Trial Exh. DX-IJ ¶¶ 1-3. In contrast, Mr. Brown's experience is limited to his work as counsel to, and director of, the Club, prior to which he had no background or training in marine P&I insurance. _See_ Exh. D ¶ 1; Exh. E ¶ 1. Mr. Brown clearly lacks the background and experience needed to testify as an expert in customs and practices in the mutual P&I industry, the subject matter of Mr. Coghlin's report.

Indeed, Mr. Brown has taken pains to disclaim expertise in the very area in which he needs to qualify to testify as an expert in rebuttal of Mr. Coghlin. At the outset of his expert witness deposition, Mr. Brown testified that he does not hold himself out as an expert in customs and practices in the mutual P&I industry beyond

---

[12] On December 30, 2005, Plaintiff submitted the Rebuttal Expert Report of Richard H. Brown, Jr. on Behalf of Plaintiff (the "Brown Report") (appended hereto as Exhibit D). On June 26, 2006, Plaintiff submitted the Rebuttal Expert Affidavit of Richard H. Brown, Jr. (the "Brown Expert Affidavit") (appended hereto as Exhibit E). The Moving Defendants move for the exclusion of both the Brown Report and the Brown Expert Affidavit.

his experience with the Club.  <u>See</u> January 31, 2006 Expert Deposition of Richard H. Brown, Jr. at 9-10 (the "Brown Transcript") (appended hereto as Exh. F).   And properly so; he lacks the breadth of experience and perspective gained by from a career (like Mr. Coghlin's) of managing P&I clubs.  As such, he has no basis to rebut the opinions of Mr. Coghlin, which are based on Mr. Coghlin's knowledge of the practices of the marine P&I insurance industry as a whole, including the Club.

**Mr. Brown's Testimony**
**<u>Would Not Assist The Trier Of Fact</u>**

A second requirement for the admissibility of proposed expert testimony is that the testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  But rather than providing objective expert testimony regarding customs and practices in the mutual P&I industry, Mr. Brown reverts to what experience he does have: acting as counsel to the Club and making legal arguments on its behalf.  Because his legal conclusions will not help this Court understand the customs and practices of mutual P&I clubs, Mr. Brown's testimony should be excluded.

Although styled a "Rebuttal Expert Report," the Brown Report amounts to little more than a legal brief.  It is written in the voice of a lawyer, contains lawyerly summaries of evidence and excerpts of documents, and makes a lawyer's arguments.  <u>See</u>, <u>e.g.</u>, Exh. D ¶¶ 4, 5, 8, 14, 22, 26 (making explicit reference to "New York law"); 7, 25 (citing New York case law); 8, 23 (opining on the legal relevance of Mr. Coghlin's observations); 25 (opining on the legal doctrine of mistake); 23-24 (presenting the Club's alternative claims for relief).  It is argument that, in its entirety, could just as readily be included in Plaintiff's trial brief as in an

"expert report." (It is worth noting, too, that Mr. Brown has acted as an attorney to the Club in this very action. See Brown Transcript, Exh. F at 13 (acknowledging role in drafting of pleadings).[13]

It is black letter law that expert testimony containing legal conclusions and/or instructions on the application of law to the facts must be excluded. See, e.g., Hygh v. Jacobs, 961 F.2d 359, 363 (2d Cir. 1992) ("[t]his circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion") (emphasis supplied); see also Hous. Works, Inc. v. Turner, 362 F. Supp. 2d 434, 448 (S.D.N.Y. 2005) (expert opinion that is "little more than a legal conclusion" beyond the bounds of permissible expert testimony). The rest of the Brown Report, particularly Section V (Exh. D at 8-21) and any corresponding testimony, should be excluded as no more than a narrative of Plaintiff's allegations and certain evidence which the Court as fact finder is equally capable of constructing for itself. See In re Rezulin Prod. Liability Litig., 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (expert testimony providing narrative advocating plaintiffs' version of facts inadmissible).[14]

---

[13]    The Brown Expert Affidavit is likewise comprised almost exclusively of legal argument. See, e.g., Exh. E ¶¶ 3, 32 (analyzing policy terms); 4, 5, 7, 8, 26, 28, 33, 40 (analyzing Club By-Laws); 9-17 (interpreting Board resolutions); 18, 19, 41 (opining on legal relevance of Mr. Coghlin's observations); 34 (opining on "probative value" of Mr. Coghlin's observations); 22-3 (opining on legal relevance of deposition exhibits); 24 (opining on legal doctrine of mistake); 29 (analyzing entitlement to indemnification under policy terms and By-Laws).

[14]    Even if the Brown Report and the Brown Expert Affidavit were not inadmissible as legal argument, they would still be excludable because Mr. Brown does not hold himself out as an expert on New York law as applied to mutual P&I associations such as the Club. See Brown Transcript, Exh. F, pp. 9-10 (acknowledging lack of expertise). Testimony beyond an area in which a witness can claim expertise is inadmissible. See, e.g. Marx & Co., 550 F. 2d at 508-509 (court erred in permitting lawyer called as rebuttal witness by plaintiffs "to give his opinion on the legal obligations of the parties under the contract").

These principles have been applied to exclude the testimony of lawyer experts on ultimate issues regardless of whether the case is before a jury. <u>See Lawrence v. Cohn</u>, 197 F. Supp. 2d, 16, 26 (S.D.N.Y. 2002) (as fact-finder on cross motions for summary judgment, court declined to consider affidavit of lawyer expert as to application of first refusal provision in partnership agreement), <u>aff'd</u>, 325 F.3d 141 (2d Cir. 2003); <u>Snap-Drape, Inc. v. Comm'r of Internal Revenue</u>, 98 F. 3d 194, 198  (5th Cir. 1996) (tax court properly refused to admit testimony of two witnesses amounting only to legal arguments as to deductibility of certain dividends).

Finally, the last section of the Brown Expert Affidavit – which is captioned "Comments on Certain Other Affidavits" – is wholly improper in that it exceeds the scope of Mr. Brown's "rebuttal" expert report. <u>See, e.g.,</u> <u>In re Motel 6 Sec. Litig.</u>, 161 F. Supp. 2d 227, 243 (S.D.N.Y. 2001) (excluding expert affidavit submitted with motion papers, following discovery, where affidavit "contain[ed] evidence beyond the scope of his expert report").  Moreover, the Brown Expert Affidavit violates both the letter and the spirit of Magistrate Judge Francis's order permitting the Club to file only a limited <u>rebuttal</u> expert submission. <u>See</u> November 18, 2005 Order of Magistrate Judge James C. Francis IV (appended hereto as Exh. F) (granting Club right to name a rebuttal expert once the identity and opinions of Defendants' expert were disclosed, but cautioning that the Club was "<u>limited</u> to presenting such evidence <u>in</u> <u>rebuttal</u> to defendants' expert(s)") (emphasis supplied). The Club – having elected not to commit to an expert witness to testify in its case in chief – should not now be permitted to engage in clear gamesmanship by submitting

non-rebuttal expert testimony, long after the completion of expert depositions, and less than two weeks before the due date for final pretrial briefs.

Mr. Brown is not a competent expert witness – rebuttal or otherwise – and his submissions will do nothing to assist the trier of fact (and, indeed, are flagrant incursions into the province of this Court). The Brown Report and the Brown Expert Affidavit should be stricken in their entirety.

### Conclusion

This Court should receive neither incompetent, unreliable, or irrelevant evidence, nor legal evidence that invades the Court's province. For the foregoing reasons, an order should be entered precluding the testimony set forth in Exhibit A; Trial Exhibit PX-290, appended hereto as Exhibit B; the Rebuttal Declaration of Joseph E.M. Hughes appended hereto as Exhibit C; the Rebuttal Expert Report of Richard H. Brown, Jr. appended hereto as Exhibit D; and the Rebuttal Expert Affidavit of Richard H. Brown, Jr. appended hereto as Exhibit E.

Dated: New York, New York
     July 14, 2006

Respectfully submitted,

BROWN RUDNICK BERLACK ISRAELS LLP

By: /s Peter Adelman
    Andrew Dash (AD-7913)
    Peter Adelman (PA-1562)

Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
Fax: (212) 209-4801

Counsel to Defendant Farrell Lines, Inc.

8136869