**MEMO ENDORSED**

# NOURSE & BOWLES, LLP

One Exchange Plaza
at 55 Broadway
New York, NY 10006-3030
Telephone: (212) 952-6200

Facsimile: (212) 952-0345
E-Mail: reception@nb-ny.com
Web site: www.nb-ny.com

Nourse & Bowles, LLP
115 Mason Street
Greenwich, CT 06830-6630
Telephone: (203) 869-7887
Facsimile: (203) 869-4535

Nourse & Bowles
75 Main Street, Suite 205
Millburn, NJ 07041-1322
Telephone: (973) 258-9811
Facsimile: (973) 258-1480

November 10, 2006

RECEIVED NOV 13 2006 JUDGE KAPLAN'S CHAMBERS

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/20/06

**By Hand**
Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1310
New York, New York 10007-1312

Re: American Steamship Owners Mutual
Protection and Indemnity Association, Inc.
v. Alcoa Steamship Co. et al. – 04 CV 4309 (LAK)(JCF)

Dear Judge Kaplan:

We are the attorneys for the American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club" or "Club"), in the captioned matter. As discussed in our letter to the Court dated November 2, 2006 we write to the Court with respect to two motions *in limine*, namely: (1) a motion for an order that defendants bear the burden of proof in this declaratory judgment action, and (2) a motion to bifurcate for purposes of trial the taking and admission of evidence and testimony regarding certain accounting and damages issues raised by defendants that need not be reached in the event the Club prevails on the liability issues in this case. We respectfully request that the Court grant the American Club's motions for the reasons set forth below. In the alternative, the American Club respectfully requests that the Court grant it permission to file more fully briefed motions *in limine* on these issues and set the appropriate briefing schedule.

1.  Burden of Proof

This action is the product of three consolidated suits: (1) a suit filed in 2002 by Keystone Shipping Corp. against the Club alleging that the Club had breached its contracts with it by requiring Keystone to absorb multiple deductibles when the Club indemnified it regarding closed year occupational disease claims (the "Closed Year ODCs"). 02 CV 1477 (LAK)); (2) the instant declaratory judgment action filed by the Club on June 7, 2004 against its former members (including Keystone) for years 1989 and prior seeking declaratory relief with respect to its indemnification obligations, 04 CV 4309 (LAK), and in which various defendants have filed counterclaims seeking damages against the Club; and (3) an action filed by Keystone on June 8, 2004, alleging further breach of contract by the Club and seeking additional damages, 04 CV 4330 (LAK). The Club has not asserted any damage claims against the defendants in any of these actions.

While nominally the plaintiff in its declaratory judgment action, the Club should not bear the burden of proof. The law in this Circuit is that when an insurer commences a declaratory action in anticipation of an insureds' breach of contract action, the burden of proof remains upon the insured to establish the breach. 12 Moores Federal Practice, 3d §57.62[2]d. Preferred Accident Insurance Co. of New York v. Grasso, 186 F.2d 987 (2d Cir. 1951). That burden includes compliance with all conditions precedent found in the insurance contract. Oppenheimer & Co. v. Oppenheim, Appel Dixon & Co., 86 N.Y. 2d 685, 688, 691 (1995). Here, in a case involving a true "mutual" insurance company offering fully assessable indemnity insurance, in which ultimate control over assessment rests with a Club member appointed Board, that burden must include compliance with the assessibility provisions of the policies. Moreover, defendants have filed various counterclaims, for which they clearly have the burden of proof. Under these circumstances, placing the burden of proof on defendants with respect to plaintiff's declaratory judgment claims is appropriate.

2.  Bifurcation

This case raises three issues related to defendants' alleged damages that should be bifurcated from the liability phase of this trial. Consistent with proceedings in other maritime disputes, the damages issues should be bifurcated and presented before a magistrate judge or special master approved by this Court in the event rulings on them are necessary. The Court need not bog itself down in hearing evidence and testimony with respect to the hundreds of individual claims that need not be reached if the Court finds that the Club has no liability for such claims. This is particularly true in cases such as this one, which is based on the Court's admiralty jurisdiction, for which federal law permits interlocutory appeals of the Court's ruling on the liability issues. See 28 U.S.C. §1292(a)(3).

The three damages issues raised by the nominal defendants, each of which should be bifurcated from the liability phase in this action, are:

2

1. The claims by seven or more of the defendants that they have not been indemnified by the Club with respect to thirty-seven or more Closed Year ODCs they say they have paid since the Club ceased paying indemnities regarding such claims in May 2004, pending the results of this declaratory judgment action. These claims need not be examined if the Court rules in the Club's favor with respect to liability.

2. The claims by a number of the defendants regarding recalculations of deductibles involving hundreds of claims from a multiple to a single deductible basis. Each separate claim must be subjected to the Club's defenses, including defenses that such claims are either time-barred or otherwise waived due to acquiescence, waiver, or other equitable defenses based on their specific facts. Assuming a claim survives such defenses, then the amount of claims must be proven as well.

3. The claims by all defendants that, if the Court permits the Club to assess members in the closed years in question, the defendants cannot be assessed unless the accounts of those years are now in "deficiency." The accounting to determine whether an insurance year currently is in "deficiency" as defined by defendants (with which the Club disagrees)[1] would require the Club to investigate and document thousands of transactions involving its Reserve Account, dating back to 1940 or earlier. Because all funds in its Reserve Account have always been deemed to be the Club's property, and the closing of each insurance year has always constituted a final settlement of accounts between the Club and the members of each Year, no accounting regarding the Club's Reserve Account, such as defendants now seek has ever previously been contemplated. Accordingly, the Club did not routinely keep, and does not have, all records supporting all transactions involving its Reserve Account.[2] Thus, any attempted accounting for each and every such transaction over the last sixty or more years would involve massive reconstructions.[3]

---

[1] The Club's position is that all insurance years closed prior to 1988 are automatically in deficiency in respect of unreported ODCs because nothing was set aside for these claims at closing and these years were "zeroed out". All years closed after 1988 are also in deficiency because the arbitrary funds set aside for Closed Year ODCs have been spent. See, PTO §IV(a) p. 4-15; Plaintiff's Trial Memo p. 1-9).

[2] As defendants have been informed, a fire in the Club's document storage area in the early 1980s resulted in the destruction of many old documents and others were routinely purged.

[3] Even assuming the Club could reconstruct its records, the amount of work necessary to conduct the accounting would be formidable. For example, suppose the Club has to determine whether a deficiency currently existed for insurance year 1948. The Club would first have to determine, as of the date of that year's "closing," (1951) what amount of surplus attributable to that year, if any, existed at the time of closing (the "1948 Surplus"). The Club then would have to examine its records for each year from 1951 to identify all transactions that would affect the amount of the 1948 Surplus, including, without limitation, (1) payment of other claims arising out of insurance year 1948, and (2) investment income earned by the Club that could be attributed to the 1948 insurance year. This process would be further complicated by the fact that indemnities for occupational disease claims typically span multiple insurance years.

The above accountings would be required *only if* the Court rules that: (1) The Club is required to indemnify defendants with respect to the claims in dispute; and (2) The Club has the right to assess former members to fund the previously unreported and unreserved for closed year ODCs belatedly arising from those long closed insurance years. In order to require the third accounting identified above – by far the most burdensome and time consuming of the accountings – the Court additionally would have to rule in Defendants' favor that (i) the Club may not assess former members until it can demonstrate that the insurance year(s) being reopened for assessment is/are currently in deficit, (ii) the accounts of such years, when they were closed, were not final statements of account *and* (iii) the accounts were not "zeroed out" upon the year's closing. Put the other way, a ruling in the Club's favor that all closed years are by definition in deficiency in respect of unreported, unreserved for ODCs because for many years nothing was set aside for such claims, obviates any accounting.

These accountings, if necessary, should fall under the auspices of a magistrate judge or special master after liability issues are resolved the need for such accountings is established.

This is an action within the Court's admiralty and maritime jurisdiction. In such cases, the Courts have traditionally bifurcated complicated damage issues pending resolution of liability. As the Eighth Circuit has explained:

> In admiralty, trials were traditionally bifurcated. First there would be a trial before the court on the issue of liability. If there was a finding of liability, there would then be a separate hearing before a special master to ascertain damages. These damages hearings were often both lengthy and costs. Congress intended 28 U.S.C. § 1292(a)(3) to permit parties to appeal the finding of liability on the merits, before undergoing the long, burdensome, and perhaps unnecessary damages proceeding.

*City of Fort Madison v. Emerald Lady*, 990 F.2d 1086, 1089 (8th Cir. 1993) (citation omitted); *see also* 16 Charles Alan Wright et al., *Fedeal Practice & Procedure* § 3927 (1996). Given the complicated and possibly unnecessary nature of the accounting and damages issues regarding particularly the second and third categories of defendants' damages claims presented in this case, we respectfully submit that the Court should bifurcate the above-referenced accounting and damages issues and deal with them after all liability issues have been resolved.

For the foregoing reasons, the American Club respectfully requests that the Court grant the motions set forth above. In the alternative, the American Club respectfully

requests that the Court permit it to file more fully briefed motions *in limine* on the issues identified above and set the appropriate briefing schedules.

                              Respectfully submitted,

                              NOURSE & BOWLES, LLP
                              Attorneys for Plaintiff

By:      /s/ Shaun F. Carroll
                    Lawrence J. Bowles
                    Shaun F. Carroll

                              SULLIVAN & WORCESTER, LLP
                              Of Counsel

cc:     All Counsel

*[Handwritten order:]* Bifurcation denied. No in limine ruling or burden of proof is necessary.

SO ORDERED
_____
LEWIS A. KAPLAN, USDJ
11/20/06